# Attachment H

From: <underwriting@electronicpayments.com>     Page: 2/6     Date: 5/9/2013 2:25:18 PM

WFB

0874



AUTOMATED MERCHANT SERVICES

# Merchant Application

ISN 1306                                 PAGE 1 OF 3                                     BPM1906

| OFFICE USE ONLY | MERCHANT # | | | ISO OFFICE NAME | Automated Merchant Services, Inc. | |
|---|---|---|---|---|---|---|
| | BRANCH CODE 5047 | F.O.S. REF 731 | AGENT # | ISO OFFICE PHONE (516) 887-1797 | | INT'L BRANCH RAP01 |

**ISO USE ONLY** ☐ ☐ ☐ ☐ ☐ ☒ option E ☐

### MERCHANT INFORMATION

| MERCHANT NAME (AS SAME USED DOING BUSINESS AS) Quick Response Alert LLC | MERCHANT'S LEGAL/CORPORATE NAME (IF DIFFERENT FROM DBA) Quick Response Alert LLC |
|---|---|
| DBA/OUTLET LOCATION 266 Merrick Rd. Ste 106 | LEGAL ADDRESS Suite 106 266 Merrick Rd |
| DBA OUTLET CITY, STATE & ZIP Lynbrook, NY 11563 | LEGAL CITY, STATE & ZIP Lynbrook, NY 11563 |
| CONTACT NAME Paule Oliveri | CONTACT TELEPHONE # 516-405-4595 | TAX # | CUSTOMER SERVICE TELEPHONE # 855-885-3689 |
| HTTP:// | | AREA SURROUNDED AND BUSINESS IS: ☐ CORPORATE ADDRESS ☐ BUSINESS ADDRESS | IS THIS A SEASONAL BUSINESS? ☐ YES ☑ NO |
| MERCHANT EMAIL ADDRESS paule.bookkeeping@gmail.com | YOUR BUSINESS ADDRESS IS: ☑ CORPORATE ADDRESS ☐ BUSINESS ADDRESS | MC PROGRAM REGISTRATION # |

### TRUTH IN DISCLOSURE AND FORM W-9

| IRS NAME (EXACTLY AS IT APPEARS ON YOUR INCOME TAX RETURN) Quick Response Alert LLC |
|---|
| FEDERAL TAX ID # (USED TO FILE YOUR INCOME TAX RETURN) ██████6215 | TIN TYPE ☐ SOCIAL SECURITY # ☑ EMPLOYER ID # | ☐ INDIVIDUAL/SOLE PROPRIETOR ☐ C CORPORATION ☐ S CORPORATION |
| ☐ I CERTIFY THAT I AM A FOREIGN ENTITY/NONRESIDENT ALIEN. (IF CHECKED, PLEASE ATTACH IRS FORM W-8.) | YOU MUST CHECK ONE BOX ☐ | ☐ PARTNERSHIP ☐ TRUST/ESTATE |

### OWNERS/OFFICERS/PARTNERS

| NAME (FIRST & LAST) Hing Tack Chen | | % EQUITY OWNERSHIP 100 | | | |
|---|---|---|---|---|---|
| TITLE member | TELEPHONE NUMBER 212- | SOCIAL SECURITY NUMBER ███ | | TITLE | TELEPHONE NUMBER |
| RESIDENTIAL ADDRESS | | | RESIDENTIAL ADDRESS | | |
| CITY, STATE AND ZIP Fresh Meadows NY | COUNTRY | DATE OF BIRTH | CITY, STATE AND ZIP | COUNTRY | DATE OF BIRTH |
| DRIVER'S LICENSE # | | DL STATE | DRIVER'S LICENSE # | | DL STATE |
| * HAS MERCHANT OR ANY PERSON/ALLOWER DISCLOSED ABOVE EVER FILED BANKRUPTCY OR BEEN DISCHARGED FROM A PENDING BANKRUPTCY? ☐ YES ☒ NO (IF YES, EXPLAIN) |

Automated Merchant Services

V 12.522.1

From: <underwriting@electronicpayments.com>     Page: 3/6     Date: 5/9/2013 2:25:18 PM

EPI5300                                                                 Page 2 of 3                                                              EPI5305

## MERCHANT PROFILE AND PROCESSING

| WHERE IS THE SALE TRANSACTED? | | HOW IS THE TRANSACTION COMPLETED? | |
|---|---|---|---|
| STORE FRONT SWIPED | % | ELECTRONIC DATA CAPTURE – CARD SWIPED | % |
| INTERNET | % | MANUAL KEYED WITH CARD | % |
| MAIL ORDER | 100 % | KEYED ENTRY – CARD NOT PRESENT OR IMPRINTED | 100 % |
| TELEPHONE ORDER | % | VOICE AUTH AND CAPTURE | % |
| | 100% | | 100% |

**FINANCIAL DATA** (ROUND TO WHOLE NUMBERS)

| | | |
|---|---|---|
| $1,200,000 — | $ 15,000 — | $ 35 — | $ 420 — |

## BANKING INFORMATION

NAME OF MERCHANT: **Signature Bank**    CONTACT AT MERCHANT: Gary Grossreich    PHONE/FAX NUMBER: 516 · 214 · 0842

ACCOUNT TYPE: ☒ CHECKING ☐ SAVINGS    ABA/ACCOUNT NUMBER: 0464

## EXISTING ACCOUNTS

HAVE YOU PREVIOUSLY HAD AMERICAN EXPRESS ☐ YES ☐ NO    AMERICAN EXPRESS SE #    ENTITY #

## VENDOR/TRADE REFERENCES

| REFERENCE 1 | VENDOR NAME | CONTACT NAME | PHONE NUMBER |
|---|---|---|---|
| | VENDOR ADDRESS | | ACCOUNT # |
| REFERENCE 2 | VENDOR NAME | CONTACT NAME | PHONE NUMBER |
| | VENDOR ADDRESS | | ACCOUNT # |

## MERCHANT LOCATION AND BUSINESS

ARE YOU USING AN OUTSIDE VENDOR FOR FUL ☐ YES ☒ NO

PLEASE DETAIL THE OPERATION OF THE MERCHANDISE: **Medical Alert bracelets Sales**

☐ RETAIL ☐ RESTAURANT ☐ LODGING ☐ PETROLEUM
☐ TRADESHOW ☐ CAR RENTAL ☐ INTERNET ☒ MOTO    LENGTH OR CURRENT OWNERSHIP: **1 year**

☐ CORPORATION ☒ LLC ☐ PARTNERSHIP ☐ GOVT    DATE INCORPORATED: **5/8/12**    STATE OF INCORPORATION: **FL**
☐ SOLE PROPRIETORSHIP ☐ NON-PROFIT ☐ OTHER

AREA ZONED AS ☒ COMMERCIAL ☐ INDUSTRIAL ☐ RESIDENTIAL

SQUARE FOOTAGE ☐ 0-250 ☐ 251-500 ☐ 501-1000 ☐ 1001+

IS THIS BUSINESS LOCATED ☐ ABOVE ☒ 1ST FLOOR    MERCHANT DEPARTMENT/FLOOR: **First**

☒ YES ☐ NO    NUMBER OF EMPLOYEES: **10**    ☐ RESIDENTIAL ☐ COMMERCIAL ☐ COMBINATION

☐ CATALOG ☐ BROCHURE ☐ DIRECT MAIL ☐ TV/RADIO ☐ INTERNET ☐ PHONE

SIGNATURE: **Craig Rossein**    PRINT NAME: **Craig Rossein**    TITLE/POSITION: **RAPO1**    DATE: **5/9/13**

Menjivar Att. H
Page 2 of 4

EP11300 .                                    Page 3 of 3                                    EP11300

## VI. SERVICE SCHEDULE

WE MAY CHOOSE WHICH CARD TYPES TO ACCEPT BUT FOR ANY OBJECTING, THE CHECKBOX, DISCOUNT RATES AND FEES ARE BASED ON GROSS SALES VOLUME.

☒ VISA CREDIT      ☐ VOYAGER      ☒ MASTERCARD CREDIT      ☒ MASTERCARD DEBIT
☒ PIN DEBIT/ATM    ☐ AMERICAN EXPRESS® ONE POINT   ☐ WRIGHT EXPRESS   ☐ EBT   ☒ DISCOVER NETWORK

## VII. DISCOUNT RATES & FEES

☒ PASS THRU PLUS +    %   + $ .06  PER ITEM   AMT/OPTIONS ☐ DUES/ASSESSMENTS ☐ CR VOUCHER ☒ VISA BASE II AC INST

☐ 2 TIER     QUAL    % + $         MID    % + $   ☐ 2 TIER WITH EIRF                QUAL    % + $           EIRF RATE      %
☐ 3 TIER     QUAL    % + $         MID    % + $   NON    % + $                ☐ PASS INTERCHANGE PER ITEM FEES TO MERCHANT
☐ 4 TIER     QUAL    % + $         M-D    % + $   NON    % + $           QUAL    % + $       ☐ EARLY FUNDING CUTOFF
PLEASE REFER TO THE PROGRAM GUIDE FOR ADDITIONAL RATE DESCRIPTIONS. SEE SECTION 1.2 OF THE PROGRAM GUIDE FOR DETAILS REGARDING RATES/DISCOUNT RANGE.

## TRANSACTION AND AUTHORIZATION CHARGES

| | | | | |
|---|---|---|---|---|
| VISA | $         PER ITEM | SEE ABOVE SECTION | PIN-BASED ATM/DEBIT | % + $ |
| MASTERCARD | $         PER ITEM | SEE ABOVE SECTION | BATCH FEE | $         PER BATCH |
| DISCOVER NETWORK | $         PER ITEM | SEE ABOVE SECTION | ADDRESS VERIFICATION FEE | $         PER ITEM |
| AMERICAN EXPRESS ONE POINT | $         PER ITEM | DISCOUNT RATE     % | 591 TRANSACTION FEE | $         PER ITEM |
| PREPAID/GIFT CARD CHARGES AND FEES | SUPERMARKETS  9  0.20  TRANSACTION FEE | ALL OTHER INDUSTRIES  1.55  % DISCOUNT RATE | | |

## RECURRING SERVICE & FEES

☒ MONTHLY SERVICE CHARGE    $ 10.00  PER MONTH       ☐ ONLINE ACCOUNT MAINTENANCE FEE   $         PER MONTH
☐ MONTHLY MINIMUM FEE       $         PER MONTH       ☐ DEBIT ACCESS FEE                $         PER MONTH
☐ ANNUAL PROGRAM MEMBERSHIP FEE  $         PER YEAR    ☐ PCI / SUPPLY / WARRANTY         $         PER MONTH
                                                        MERCHANT ADVANTAGE PROGRAM

## WIRELESS ACCESS FEE
WIRELESS AIRTIME ACCESS PER MONTH AND TRANSACTION   $         ONE TIME SETUP FEE   $         PER TRANSACTION

## MOBILE AUTHORIZATION FEE
MONTHLY GATEWAY FEE PER MONTH AND TRANSACTION   $         ONE TIME SETUP FEE   $         PER TRANSACTION

## D. PERSONAL GUARANTEE(S)

Personal Guarantee: The undersigned guarantees to Electronic Payments, Inc. (EPI) and Wells Fargo Bank ("Bank") the performance of this Agreement, if Applicable, and any subsequent renewal by Client, and in the event of default, hereby waives Notice of Default and agrees to indemnify the undersigned...

X _signature_  5/8/13
_Hing-Jack Chen_

| PRINCIPAL #1 FROM APPLICATION / SIGNATURE | DATE ACCEPTED | PRINCIPAL #2 FROM APPLICATION / SIGNATURE | DATE ACCEPTED |
| PRINT NAME | | PRINT NAME | |

## E. SIGNATURE

Client certifies that all information set forth in the completed Merchant Processing Application is true and correct...

X _signature_  5/8/13
_Hing-Jack Chen   Managing Member_

| PRINCIPAL #1 FROM APPLICATION / SIGNATURE | DATE ACCEPTED | PRINCIPAL #2 FROM APPLICATION / SIGNATURE | DATE ACCEPTED |
| PRINT NAME _Hing-Jack Chen   Managing Member_ | TITLE | PRINT NAME | TITLE |
| ACCEPTED BY ELECTRONIC PAYMENTS, INC. 1181 SCOTT AVE, CALVERTON, NY 11933 | | ACCEPTED BY WELLS FARGO BANK, 12000 MONTANO, WALNUT CREEK, CA 94598 | |

Menjivar Att. H
Page 3 of 4

Please read the Program Guide in its entirety. It describes the terms under which we will provide merchant processing services to you.

From time to time you may have questions regarding the contents of your Agreement with Bank and/or Processor. The following information summarizes portions of your Agreement in order to assist you in answering some of the questions we are most commonly asked.

1. Your discount rates are assessed on transactions that qualify for certain reduced interchange rates imposed by MasterCard, Visa and Discover Network. Any transactions that fail to qualify for these reduced rates will be charged an additional fee (see Section 17 of the Program Guide).

2. We may debit your bank account from time to time for amounts owed to us under the Agreement.

3. There are many reasons why a Chargeback may occur. When they occur we will debit your settlement funds or settlement account. For a more detailed discussion regarding Chargebacks, see Section 19.

4. If you dispute any charge or funding, you must notify us within 60 days of the date of the statement where the charge or funding appears or should have appeared.

5. The Agreement limits our liability to you. For a detailed description of the limitation of liability see Section 19.

6. We have assumed certain Risks by agreeing to provide you with Card processing. Accordingly, we may take certain actions to mitigate our risk including termination of the Agreement, and/or hold monies otherwise payable to you (see Section 22, Term; Events of Default and Section 23, Reserve Account; Security Interest).

7. By executing this Agreement with us you are authorizing us and our Affiliate to obtain financial and credit information regarding your business and the signer and guarantees of the Agreement until all your obligations to us and our Affiliate are satisfied.

8. The Agreement contains a provision that in the event you terminate the Agreement early you may be responsible for the payment of early termination fees as set forth in Section 33, Additional Fee Information.

9. Card Organization Disclosure

Visa and MasterCard Member Bank Information: Wells Fargo Bank, N.A.

The Bank's mailing address is 1200 Montego Way, Walnut Creek, CA 94598, and its phone number is (925) 746-4143.

Important Member Bank Responsibilities:

a) The Bank is the only entity approved to extend acceptance of Visa and MasterCard products directly to a Merchant.

b) The Bank must be a principal (signer) to the Merchant Agreement.

c) The Bank is responsible for educating Merchants on pertinent Visa and MasterCard rules with which Merchants must comply; but this information may be provided to you by Processor.

d) The Bank is responsible for and must provide settlement funds to the Merchant.

e) The Bank is responsible for all funds held in reserve that are derived from settlement.

Important Merchant Responsibilities:

a) Ensure compliance with cardholder data security and storage requirements.

b) Maintain fraud and chargebacks below Card Organization thresholds.

c) Review and understand the terms of the Merchant Agreement.

d) Comply with Card Organization rules.

( Print Client's Business Legal Name: **Quick Response Alert LLC**

By its signature below, Client acknowledges that it received the complete Program Guide [Version EPI1308 ] consisting of 26 pages (including this confirmation).

Client further acknowledges reading and agreeing to all terms in the Program Guide, which shall be incorporated into Client's Agreement. Upon receipt of a signed facsimile or original of this Confirmation Page by us, Client's Application will be processed.

Client understands that a copy of the Program Guide is also available for downloading from the Internet at:

**www.electronicpayments.com/prg/**

NO ALTERATIONS OR STRIKE-OUTS TO THE PROGRAM GUIDE WILL BE ACCEPTED AND, IF MADE, ANY SUCH ALTERATIONS OR STRIKE-OUTS SHALL NOT APPLY.

Client's Business Principal:
Signature (Please sign below):

X _____     Title: Managing Member     Date: 5-8-13

|_____
Please Print Name of Signer

# Attachment I

## LIFEWATCH INC.'S RESPONSE TO CIVIL INVESTIGATIVE DEMAND PURSUANT TO SECTION 20 OF THE FEDERAL TRADE COMMISSION ACT, 15 U.S.C § 57b-1

**PRELIMINARY STATEMENT**

Lifewatch is a family owned, decades-old company that is proud of its reputation for providing high-quality products and services to elderly, seriously ill, and disabled individuals. By simply pressing a button on a Lifewatch product, Lifewatch's customers have immediate access to emergency services. Lifewatch values and promotes diversity and inclusion in every aspect of its business. It has a group of approximately 90 dedicated and hard working employees, all of whom are sincerely committed to the company's customers' well-being. During the process of this investigation, Lifewatch would welcome the FTC to visit its facilities so it can see first-hand the day-to-day operations and how the hard working men and women of Lifewatch serve its customers.

Like all businesses, Lifewatch actively seeks ways to expand its customer base. Lifewatch does not have expertise in marketing, advertising, and customer origination, and so it entered into Purchase Agreements with various outside sales companies. Pursuant to these Purchase Agreements, the outside companies originate customer accounts (through radio, television, internet, and print advertising, as well as telemarketing) and then offer to sell those accounts to Lifewatch--and others--on a non-exclusive basis. Lifewatch does not telemarket and does not and cannot control these companies' conduct. Instead, Lifewatch specifies that the outside sales companies from whom it purchases customers must assure compliance with all applicable state and federal laws, specifically all TCPA laws. When Lifewatch purchases customer accounts from outside companies, Lifewatch becomes solely responsible for completing the sale and then delivering the products and services to the customers. In the process of completing the sale, Lifewatch fully informs all customers of the terms and conditions for the products and services Lifewatch provides. If a customer is unhappy with the product or services for any reason, Lifewatch will provide any customer with a refund upon return of the equipment.

Lifewatch is confident that, given its business practices and disclosures to its customers, no customer has any basis to be confused about pricing or any other matter pertaining to the products and services Lifewatch provides. In response to the FTC's Complaint against companies from whom Lifewatch previously purchased customer accounts, Lifewatch has – in an abundance of caution - initiated the process of offering refunds to any customers who suspect or feel that they were induced to enter into a business relationship with Lifewatch based on the allegations set forth in the FTC's Complaint. Lifewatch provided a draft refund letter for comment to the FTC, and even revised the letter based on the comments it received from the FTC about the letter. Lifewatch is committed to cooperating with the FTC in ridding the personal emergency response system industry of entities and individuals that engage in unfair, deceptive, or abusive tactics and violate federal or state law.

1

The pending CID requests a massive amount of information from Lifewatch. Lifewatch is doing its best to respond to the CID as part of its continuing effort to work with the FTC. Lifewatch's efforts in responding to this CID are consistent with, and supplement, the previous production of thousands of pages of documents to the Receiver working with the FTC in relation to your lawsuit in Florida, even though Lifewatch was under no legal obligation to do so. We trust that you have accessed that mass of voluntary discovery, much of which we feel may be relevant to the issues in the current matter. [1]

Despite its limited resources, and a record keeping system that make retrieval of some of this information very challenging, Lifewatch has been diligently working to obtain responsive information to the CID. Based on our prior communications with you, our understanding is that the FTC's main, or at least most pressing, concern is the potential for ongoing calls in violation of the TCPA laws. In response to this concern, LifeWatch made a priority of providing to the FTC the documents that identify the companies with whom Lifewatch currently has Purchase Agreements and who may be telemarketing. Those Purchase Agreements have already been provided to you. Additionally, many other documents responsive to the CID which may bear on other issues, are being produced to you with this Written Response. Finally, and as previously discussed, other documents responsive to the CID will be provided to you on a rolling basis as they become available, as noted in the Responses below.

## INTERROGATORY RESPONSES

I.1.    Identify the complete legal name of the Company and all other names under which it does or has done business; its corporate mailing address; its date and place of incorporation; and the names of all parent, subsidiary, and affiliate companies.

**RESPONSE:** Lifewatch Inc., was incorporated on December 3, 1996 in the State of New York. Its corporate address is 266 Merrick Road, Lynbrook, NY, 11563. Other related or affiliated companies include: Lifewatch of NJ; Medilock Services Inc.; and Harmonious Enterprises.

I.2.    Identify all officers, directors, principals, and owners of the Company, as well as the number of employees.

**RESPONSE:** Please see the corporate organizational chart (FTC00325). Lifewatch employs approximately 90 people.

I.3.    For the years 2011, 2012, and 2013, and 2014 year-to-date, state the Company's gross and net revenue.

---

[1] Much of the information Lifewatch produced to the Receiver in the Florida action was, apparently, obtained and used against Lifewatch in an unrelated trademark litigation commenced by Life Alert, a business competitor that is attempting to do whatever it can to put Lifewatch out of business. We are, at this time, unsure as to how a private company like Life Alert gained access to materials provided to an FTC Receiver in an action to which Life Alert was not a party.

**RESPONSE:** This information has not yet been prepared for 2013 and 2014, but will be provided as it becomes available. Please refer to the attached financial documentation for 2011 and 2012 (FTC1304-FTC-1326).

I.4.    Identify all products and services marketed or sold by the Company, including any products or services offered through upselling. Include the following information for each such product or service:

>   a.   The dates such products or services were offered for sale or sold;
>   b.   The methods used to market or sell such products or services;
>   c.   The annual gross and net sales of such products or services;
>   d.   The annual number and value of all chargebacks, refunds, or other credits provided to consumers relating to the sales of each such product or service; and
>   e.   All telephone numbers used to market, sell, or provide customer service for such products.

**RESPONSE:**

>   **(a)** Since its inception, Lifewatch has sold various models of personal emergency response systems which are used in homes, hospitals, and nursing homes to alert rescue facilities when needed. Exemplars of two versions of the devices which Lifewatch sells have been forwarded by Lifewatch to the FTC for inspection/examination. Other products/services offered by Lifewatch to its customers through upselling include warranties and lock boxes.
>   **(b)** Various means/methods are used to sell the company's products, including TV advertisements, radio advertisements, print adds, internet, direct mail, referrals, and telemarketing by outside companies whom Lifewatch does not control but requires that they follow all of the relevant TCPA laws and regulations, as set forth in the Purchase Agreements that Lifewatch previously provided to the FTC. (FTC 1 – FTC 324).
>   **(c)** This information has not yet been prepared for 2013 and 2014, but will be provided as it becomes available. Please refer to the attached financial documentation for 2011 and 2012. (FTC 1304-FTC 1326).
>   **(d)** In 2011, refunds/chargebacks totaled approximately $198,528. In 2012, refunds/chargebacks totaled approximately $549,700.63.
>   **(e)** Please see documents FTC 1243- FTC 1245.


I.5.    Identify any and all third parties from whom the Company has obtained customers. Include the following information for each such third party:

>   a.   The total payments made to the third party;
>   b.   Describe how the Company determines the amount of such payments to the third party;

    c. Any complaints from customers relating to representations made by the third party;

    d. The means by which each of these third parties obtained the customer accounts for the Company, e.g., telemarketing, direct mail, media advertisements, etc.

**RESPONSE:** Lifewatch has purchased customers from the following outside companies which it believes may obtain customers through telemarketing and other means:

Alarm Pros
Altitude Marketing
American Innovative Concepts, Inc.
Asian Global Creation Phils
Beltrami Caduceus, Inc.
Bernice S. Catalog
Call Center Transnational
Center Partners
Contact Center Dominica
Contact Center Network
DBOSS
Direct Agent Response
Dream Reach Virtuals
Ellick BPO Solutions
Fifth Wave Communications
Five States
Fresh Fruit and Marketing
Global Interactive Technologies
Inservice America
Instinctive Edge
Invictus
IPS Leads
iSlingshot, Inc.
JAMP Promotions
Javonni, Inc.
Lead Advantage Network
Leadcore
Lifeone Wireless, LLC
Live Response Agent
Marketing King, Inc
Master TMI
Maximum Security Pro
Motivated Marketing, LLC
MSCS, LLC
Multi-Level Marketing
National Life Network
Nick USA

**Menjivar Att. I**
**Page 4 of 16**

OnCall Superior Marketing
Payless
Platinum
QCSS
Safe Alarm Security Corp
SafeGuard Security
Security Alert Inc
Senior Care Alert
Senior Guardian
SSMMSC Management Specialist
The Credit Voice (or Consumer Voice)
The Solution Center
TMI Management Group
Trusted Lead Network
U.S Digest, LLC
US Affiliates
Vertical Connections
Vortext, LLC
VR Advocates
World Wide Info Services

 Lifewatch will supplement this request in the near future to identify any other companies from whom it may have purchased customers.

(a) LIFEWATCH has already provided payment information to the FTC and its Receiver concerning Worldwide Info Services, The Credit Voice, National Life Network, Global Interactive Technologies, and American Innovative Concepts. Many of the customers Lifewatch purchased from these companies were transferred and/or sold to other companies, including Connect America, First Street, VRI, and Philips. These companies would pay Lifewatch for its customers, and in turn, Lifewatch would use that money to pay the companies from whom it purchased customers. Lifewatch is in the process of calculating payments made to the remaining companies identified in response to I.5. It is also in the process of identifying other companies from whom it may have purchased customers. This information will be promptly provided by Lifewatch upon completion of its search.

(b) Given that Lifewatch's competitors have business models similar to that of Lifewatch, the amount of any payments is dictated by the then current industry rate.

(c) Please see attached documentation within FTC 1246- FTC 1294. Moreover, Lifewatch is still in the process of searching for any additional documents responsive to this demand.

(d) See response to I.4 (b). Moreover, it is impossible for Lifewatch to determine the means by which the third-parties obtained these customers.

5

I.6.    Identify all third parties used by the Company in connection with the offering for sale or sale of any product or service, including, but not limited to list brokers, telemarketers, and credit card, ACH, or other merchant processors, including but not limited to:

> a. A description of the products or services provided by the third party;
> b. The volume and dates of such transactions for each such third party; and
> c. All fees or payments made to each such third party.

**RESPONSE:** See response to I.5. In addition to the companies identified in I.5, which may have or are obtaining customers through telemarketing, among other means, Lifewatch is in the process of identifying other third parties in connection with  the sale of its products and will supplement this request accordingly.

> (a) The sellers identified in I.5 sold customers to Lifewatch.  Lifewatch will supplement this demand along with the identities of other companies requested in I.6.  Lifewatch is in the process of obtaining this information for other third-parties with whom it does business and will forward this information upon completion.
> (b) We are in the process of obtaining this information to the extent it exists.
> (c) We are in the process of obtaining this information to the extent it exists.

I.7.    For each telemarketing campaign conducted by the Company or by any third parties from whom the Company has obtained customers, state:

> a. A description of the products or services that were the subject of the campaign;
> b. Whether the campaign involved the use of prerecorded messages and, if so, the content of the messages;
> c. Whether the Company or any entity on behalf of the Company accessed the National Do Not Call Registry prior to or during the campaign and, if so, how often;
> d. Whether the campaign transmitted the telephone number to any caller identification service in use by the recipients of the campaign's telemarketing calls and, if so, the name and telephone number that were transmitted;
> e. The names and addresses of all third parties who initiated or participated in the campaign's telemarketing calls; and
> f. How the telephone numbers that were called in the campaign were obtained.

**RESPONSE:**  Lifewatch does not have any knowledge concerning the requested information. Lifewatch did not control, nor was Lifewatch involved in the day to day business operations of the outside companies from whom it purchased customers.

6

## RESPONSE TO REQUESTS FOR DOCUMENTS

D.1.    All documents identified in your interrogatory responses.

**RESPONSE:** Please see attached documents.

D.2.    The Company's Articles of Incorporation and By-Laws.

**RESPONSE:** Please see FTC 1216-FTC 1242.

D.3.    An organizational chart for the Company and any other documents describing the organization or responsibilities of Company personnel.

**RESPONSE:** Please see FTC 325.

D.4.    The Company's balance sheets, profit and loss statements, and income statements for the relevant time period.

**RESPONSE:** Please see FTC 1304 – FTC 1326.  This information is not yet available for 2013 and 2014, but will be provided as it becomes available.

D.5.    The Company's expenditures on processing and handling, and revenues from processing and handling charges for the relevant time period.

**RESPONSE:** Lifewatch does not charge its customers processing and handling fees.

D.6. All contracts or other agreements between or among the Company and any third parties, including but not limited to telemarketing companies, payment processors, list brokers, or other medical alert providers, relating to the Company's customers, customer accounts or methods of obtaining customers.

**RESPONSE:** Lifewatch has already produced current ongoing Purchase Agreements with third parties it believes conduct telemarketing, among other means, to obtain customers (FTC 1 –FTC 324).

In addition, Lifewatch has produced other business agreements, with Connect America and Philips.  Both companies purchased thousands of customers from Lifewatch. (FTC 326 – FTC 363).  Any additional agreements with other companies will be produced as soon as possible.

D.7.    Any and all advertisements, catalogues, brochures, pamphlets, promotional materials, sales scripts, telemarketing scripts, or documents, written, produced or used by the Company or by any third parties from whom the Company has obtained customers, including drafts or mark-ups, relating to solicitation for sale or sale of any product or service, including but not limited to:

   a.  All printed or recorded advertisements, solicitations, or any other written material through which the Company's products or services were offered for sale;
   b.  All sales or telemarketing scripts, whether official or not, and any related documents, through which the Company's products or services were offered for sale, including, without limitation, all telemarketing scripts,

rebuttal scripts, question and answer scripts, verification scripts, or answering machine scripts; and

c. All audio recordings of prerecorded messages delivered as part of telemarketing campaigns conducted by the Company or by any third parties from whom the Company has obtained customers.

**RESPONSE:**

**(a)** Please see FTC 1074 – FTC 1215.

**(b)** Lifewatch never created or authored any sales scripts. Lifewatch never required outside sellers to use scripts verbatim, nor would it be possible for Lifewatch to do so. However, Lifewatch merely attempted to educate outside sellers about Lifewatch's products, services, and pricing. Lifewatch was aware of the existence of various scripts used by the outside sellers with whom Lifewatch dealt, and upon information and belief, it is believed that such scripts were created by outside companies, including Designer Brands. Lifewatch will provide scripts in its possession to the extent they exist.

**(c)** Lifewatch is not in possession of such documentation

D.8.    All documents relating to the Company's telemarketing methods and selling practices, including but not limited to the monitoring of third parties from which the Company obtains customers.

**RESPONSE:** Lifewatch does not monitor or control the day to day actions of outside sellers from whom the Company may, at some point, purchase customers. However, Lifewatch's agreements with outside sellers require that the outside companies follow all relevant TCPA laws and regulations. Current Purchase Agreements were previously turned over. (FTC 1 – FTC 324). Lifewatch is in the process of gathering older agreements and will promptly produce them upon completion of its search.

D.9.    All documents relating to any correspondence, complaints, or other documents from or to any consumer, or any third party, relating to the Company's policies and practices regarding telemarketing, sales, shipping, payment processing or refunds.

**RESPONSE:** Please see the documents within FTC 0001246- FTC 0001294. Moreover, Lifewatch is in the process of obtaining additional documentation responsive to this request and will promptly produce this information as soon as possible, to the extent any further documentation exists.

D.10.    All documents relating to any complaints regarding telemarketing calls made by the Company or by any third parties from whom the Company has obtained customers.

**RESPONSE**: Please see the documents within FTC 0001246- FTC 0001294. Moreover, Lifewatch is in the process of searching for additional documentation responsive to this request, to the extent it exists, and will promptly produce this information as soon as possible.

D.11.    All documents relating to the Company's procedures for complying with federal and state Do Not Call rules, including how the Company monitors and enforces those procedures.

**RESPONSE:** Please see the Purchase Agreements with outside sellers mandating that they follow all federal and state Do Not Call laws (FTC 1 – FTC 324).

D.12. All recordings, recorded by the Company or any third party, of all or parts of any telephone conversations with or relating to consumers.

**RESPONSE:** Please see attached transcriptions concerning various recordings with third party sellers (FTC 847 – FTC 1073). Lifewatch is in the process of searching for additional documentation responsive to this request, to the extent it exists, and will promptly produce this information as soon as possible.

D.13. All documents relating to any customer who paid for a product or service offered by the Company, including but not limited to all documents that include, refer to, or relate to any of the following:

    a. Customer's name;
    b. Customer's address;
    c. Customer's telephone number;
    d. Date of purchase;
    e. Third party through which the Company obtained the customer, if any;
    f. Any partial or complete transcription or recording of any telephone conversation;
    g. Amount paid by customer;
    h. Customer's method of payment;
    i. Any contracts or agreements signed by the customer;
    j. The product or service provided to the customer;
    k. Notes or records of any telephone contact or conversations with the customer; or
    l. Any customer cancellation, refund or credit requests, including but not limited to:
        i. Date of customer request for cancellation/refund/credit;
        ii. Customer's reason for requesting cancellation/refund/credit;
        iii. Whether the request for cancellation/refund/credit was granted;
        iv. Any correspondence, e-mails, recordings, notes, documentation of telephone conversations, and facsimiles with the customer regarding the request for cancellation/refund/credit;
        v. Any internal correspondence or correspondence with third parties regarding whether to grant any customer's request for cancellation/refund/credit;
        vi. Date of any cancellation/refund/credit;
        vii. Amount of any cancellation/refund/credit;
        viii. If a customer's request for cancellation/refund/credit was granted, the reason for granting the request; or

9

       ix.    If a customer's request for cancellation/refund/credit was denied, the reason for denying the request.

**RESPONSE:** Lifewatch has approximately 60,000 customers. Much of the requested information requires individual review of each individual customer's file, one by one. This process may take many months for a company Lifewatch's size to complete. Lifewatch continues to search for this information and will supplement its response to the Demand accordingly and welcomes further dialogue with the FTC about the best way to provide such information.

Moreover, the effort to identify individual refunds is even more time consuming because Lifewatch has an extremely liberal refund policy (which it considers to be the best in the industry). If a customer requests a refund for any reason, Lifewatch will comply with the request.

D.14.   All documents you provide to customers who purchase any of the Company's products or services, including standard form contracts, questionnaires, and information materials. To the extent the documents have changed during the applicable time period, identify the beginning and ending use date for each document.

**RESPONSE:** Please see FTC 1295 – FTC 1303.

D.15.   All documents relating to the activation process for the Company's products or services.

**RESPONSE:** Please see FTC 1295 – FTC 1303.

D.16.   The Company's written policies, procedures, guidelines, standards, and instructive manuals that address telemarketing, soliciting consumers or customers, customer orders, cancellations, refunds, returns, complaints, and customer service. To the extent the written policies or instructive materials have changed during the applicable time period, identify the beginning and ending date of each such policy or instruction.

**RESPONSE:** No such documents were ever created by Lifewatch regarding telemarketing. Any other documents responsive to his Demand, to the extent they exist, will be produced as soon as possible.

D.17.   All documents relating to any consumer protection or other law enforcement agency, including but not limited to, communications with state attorneys general, Better Business Bureaus, and the Federal Trade Commission.

**RESPONSE:** Please see FTC 362 – FTC 442.

D.18.   All documents relating to any prior or pending litigation, investigation, or other administrative, judicial or quasi-judicial proceeding in which the Company was or is a plaintiff, defendant, target, subject, respondent, deponent, or witness, and which related to the Company's customers, the Company's methods of obtaining customers, the Company's telemarketing practices, or the telemarketing practices of any third parties from whom the Company has obtained customers.

**RESPONSE:** Please see FTC 443 – FTC 846.

D.19.   Any documents relating to the Telemarketing Sales Rule ("TSR"), 16 C.F.R. Part 310.

**RESPONSE:** Lifewatch is not in possession of any such documents.

## CONCLUSION

Lifewatch trusts that this response, the attached 1000 + documents, as well as the many documents previously provided to the FTC both in connection with this investigation and through the Receiver working with the FTC in connection with the Florida situation, sufficiently demonstrate Lifewatch's sincere commitment to complying with its legal obligations and to cooperating with the FTC.

As noted above and discussed in our recent telephone conversations, Lifewatch will continue to work to obtain additional documents and information responsive to the CID and will provide all such information as soon as possible.

We continue to welcome opportunities to discuss this matter with you at any time and trust that you will contact us whenever you wish.

Dated: April 14, 2014

_____
Evan Sirlin
Lifewatch, Inc.

11



### The Sultzer Law Group P.C.

*A Complex Litigation & Trial Practice*

NEW YORK | PENNSYLVANIA | NEW JERSEY | CALIFORNIA

April 28, 2014

**VIA EMAIL**
Marissa J. Reich, Esq.
Federal Trade Commission, Midwest Region
55 West Monroe Street, Suite 1825
Chicago, Illinois 60603

      **Re:**    **Civil Investigative Demand Issued to Lifewatch, Inc.**

Ms. Reich:

Attached are FTC 1332- FTC 1505, which respond to D.6. Further, we supplement Lifewatch's response I.5 to include the following entities:

MD247.com
Legato Services
Cloud Business Solutions
Broadband Corporation
AES International
Global Connect Outsourcing
Global Market Cloud
Outsource BPD
Contact America Acquisition
Global Call Contact Solution
Ancar Data Solutions
Insurance Selection Agency

Feel free to contact us with any questions or concerns.

           Very truly yours,

           **THE SULTZER LAW GROUP P.C.**

           Joseph Lipari

cc:    Jason P. Sultzer, Esq.
       Patrick Cotter, Esq.

**Menjivar Att. I
Page 12 of 16**

# Attachment I
## Page 13 of 16

# Filed Under Seal

# Attachment I
## Page 14 of 16

# Filed Under Seal

# The Sultzer Law Group P.C.

### A Complex Litigation & Trial Practice

NEW YORK | PENNSYLVANIA | NEW JERSEY | CALIFORNIA

June 5, 2014

**VIA EMAIL**
Marissa J. Reich, Esq.
Federal Trade Commission, Midwest Region
55 West Monroe Street, Suite 1825
Chicago, Illinois 60603

> **Re:** **Civil Investigative Demand Issued to Lifewatch, Inc.**

Ms. Reich:

In response to Mr. O'Toole's May 28th email, we attach FTC1987-FTC2002, which includes a profit and loss breakdown for the outside sellers after adjustments and charge-backs.

Additionally, we are supplementing I.5 to include the following outside sellers:

4TY LLC
4TY Marketing Ranae
All Round
Amex Securities
Ariston Marketing
B&B Processing
Beauty Sensations LLC.
BizNet Services, LLC.
Byte Success
Call Center Partnerships
CASF
Cloud Business/Life Protect
Contact America Acquisitions
Designer Brands
Emergency Life Response
Extreme
Flycom
Global Call Contact
Global Concepts Enterprises
Help Now
Intellimark
Intelliworks, Inc.
Irontree
Lifeline

**Menjivar Att. I
Page 15 of 16**



**The Sultzer Law Group P.C.**

*A Complex Litigation & Trial Practice*

NEW YORK | PENNSYLVANIA | NEW JERSEY | CALIFORNIA

Like Marketing
Mark Alliota
Mark Capaz
Marketing Partnerships
MSA
Qualworks
Rare Earth
Regal Marketing
Regent Marketing
Robski
Second Marketing
Teamcorp
The Marketing Source
Trusted Broker Group

Very truly yours,

**THE SULTZER LAW GROUP P.C.**

Jason Sultzer

cc:     Patrick Cotter, Esq.
        David O'Toole, Esq.

77 Water Street, 8th Floor | New York, NY 10005 | Phone: (646) 722-4266 & (646) 722-4267 | Fax: (888) 749-7747 | TheSultzerLawGroup.com

**Menjivar Att. I
Page 16 of 16**

# Attachment J



**VIA FACSIMILE 651-282-2155**

Chuck Ferguson, Esq.
Minnesota Attorney General's Office
445 Minnesota Street, 1400 Bremer Tower
St. Paul, Minnesota 55101-2131

Re: March 3rd Correspondence

Dear Mr. Ferguson:

LifeWatch USA is taking the issues raised in your March 3rd correspondence very seriously. Given that Ms. ▓▓▓ appears to be dissatisfied with her purchase, LifeWatch USA will promptly issue a refund and postage fee reimbursement.

Please note that LifeWatch USA's inquiries reveal that Ms. ▓▓▓ communicated with an outside sales company. By way of background, LifeWatch USA enters into Purchase Agreements with various outside companies. Pursuant to these Purchase Agreements, the outside companies originate customer accounts (through radio, television, internet, and print advertising, as well as telemarketing) and then offer to sell those accounts to LifeWatch USA --and others--on a non-exclusive basis. LifeWatch USA specifies that all outside companies from whom it purchases customer accounts must comply with all state and federal laws – including do-not-call-laws - in originating the accounts. When LifeWatch USA purchases such customer accounts, it becomes responsible for completing the sale and then delivering goods and services to the customers. Notably, LifeWatch USA does not telemarket or employ telemarketers.

The particular outside sales company with whom Ms. ▓▓▓ appears to have communicated (iSlingshot, Inc. 7027 W. Broadway Blvd. #394, Plantation, Florida 33317) is, upon information and belief, defunct.

Given the foregoing, LifeWatch USA does not have copies of prerecorded messages or recordings of Ms. ▓▓▓ telephone communications. Furthermore, LifeWatch USA does not create, disseminate or use scripts. And, if Ms. ▓▓▓ telephone number was included on the do-not-call registry at the time she received a telemarketing call from iSlingshot, LifeWatch USA submits that iSlingshot may have breached its agreement with LifeWatch USA.

Please do not hesitate to contact us with any further questions or concerns.

Sincerely,

Evan Sirlin
President, LifeWatch USA

Menjivar Att. J

FTC00440

# Attachment K

**STATE OF VERMONT**
**OFFICE OF THE ATTORNEY GENERAL**

IN RE: LIFEWATCH, INC.

## Lifewatch Inc.'s Response to Civil Investigative Demand
## Pursuant to 9 V.S.A. § 2460

### General and Continuing Objections

Lifewatch, Inc. objects as the Civil Investigative Demand fails to describe adequately the methods, acts, or practices suspected to constitute statutory violations, and fails to identify the provisions within the various statutes that may have been violated. Lifewatch, Inc. asserts that this lack of information and specificity renders the Investigative Demand violative of, *inter alia,* Section 42-110d, the Uniform Administrative Procedure Act, as well as state and federal due process.

Given the Attorney General's failure to identify the provisions within the referenced statutes that may have been violated, the "questions and requests" propounded upon Lifewatch, Inc. are necessarily overly broad, and are not reasonably calculated to obtain information and materials relevant to an investigation conducted in compliance with 9 V.S.A § 2460.

Lifewatch asserts that the Attorney General does not have jurisdiction over Lifewatch, Inc., which is a New York corporation, because, *inter alia*, Lifewatch has not transacted business within Vermont as defined by 11A V.S.A. § 15.01 and § 15.02. Furthermore, the U.S Constitution precludes the application of state statutes to conduct that occurs wholly outside that state's borders.

Lifewatch's responses do not constitute a waiver of any general or specific objections, nor do they constitute a waiver of Lifewatch's substantive or procedural defenses, or its right to

Dinse,
Knapp & McAndrew, P.C.
209 Battery Street
P.O. Box 988
Burlington, VT
05402-0988
(802) 864-5751

seek a protective order, or to seek other appropriate relief. These responses represent

Lifewatch's present knowledge based upon its inquiry to date, and Lifewatch expressly reserves

its right to supplement its responses and to rely upon any further information that is found.

Lifewatch asserts that the following items are confidential, proprietary materials and/or

constitute trade secrets exempt from disclosure under the Vermont Public Records Act and any

other applicable state and federal Freedom of Information Act statutes: 1) customer lists and

customer contracts; and 2) vendor lists and vendor contracts.

Subject to and without waiving the above general and continuing objections, Lifewatch,

Inc. responds as follows:

### Responses

1.      State your corporate name, street and mailing address, telephone number,

and the jurisdiction where you are incorporated.

**Response: Lifewatch, Inc. is a duly registered New York corporation with its executive office located at: 266 Merrick Road, Lynbrook, New York, 11563. Lifewatch's telephone number is: 888.650.6837.**

2.      For all owners, officers, directors and managers of LIFEWATCH since

January 1, 2008, state:

        a.      their name, home, and business address;

        b.      the position(s) held by each person and the dates they held the

position(s);

        c.      the extent and date of their ownership interest in LIFEWATCH, if any.

**Response:  Lifewatch objects as this interrogatory is overly broad and not reasonably calculated to obtain information and materials relevant to an investigation conducted in compliance with 9 V.S.A § 2460.  Subject to and without waiving said objections, Evan Sirlin has served as Lifewatch, Inc.'s President and CEO since at least January 1, 2008.  In his capacity as President and CEO, Mr. Sirlin creates the corporation's overall vision,**

Dinse,
Knapp & McAndrew, P.C.
209 Battery Street
P.O. Box 988
Burlington, VT
05402-0988
(802) 864-5751

{B1183385.1 14740-0001}

2

formulates the corporation's overall business plan, and oversees business operations. His home address is ███████████████, Hewlett Harbor, NY █████.

    3.      State the name, last-known home address, telephone number and position of all persons employed (whether or not currently employed) by LIFEWATCH, or with whom LIFEWATCH has contracted for services with, from January 1, 2008 to date, to perform responsibilities in each of the following areas, and the dates during which the person held such responsibilities:

        a.     overall business plan;

        b.     marketing;

        c.     legal compliance;

        d.     consumer or customer billing records

**Response: Lifewatch objects as this interrogatory is overly broad and not reasonably calculated to obtain information and materials relevant to an investigation conducted in compliance with 9 V.S.A § 2460. Subject to and without waiving said objections, Lifewatch's President and CEO Evan Sirlin formulates the company's overall business plan and oversees marketing efforts. Lifewatch retains outside legal counsel on an as-needed basis relative to legal compliance issues. Lifewatch's Director of Operations, Sarai Baker, is responsible for overseeing consumer billing.**

    4.      Describe LIFEWATCH's business practices, including but not limited to:

        a.     a description of goods or services offered;

        b.     how sales transactions with consumers are made;

        c.     fees charged for goods or services;

        d.     how you obtain consumers' authorization for payment;

        e.     a copy of the contract provided to the consumer.

**Response: Lifewatch provides personal emergency response systems and services to elderly, handicapped, and seriously ill consumers. Lifewatch seeks clarification relative to the term "sales transactions." Assuming that "sales transactions" refers to the means by which Lifewatch obtains customers, Lifewatch asserts that "sales transactions" are made through various forms of advertising. Customer fees range from $25 to $40 per month.**

Dinse,
Knapp & McAndrew, P.C.
209 Battery Street
P.O. Box 988
Burlington, VT
05402-0988
(802) 864-5751

{B1183385.1 14740-0001}

**Menjivar Att. K
Page 3 of 11
FTC00392**

Customer payment authorization is obtained through in-person sign up or via mail, telephone, or internet. Lifewatch seeks clarification relative to the scope of subsection (e). Specifically, Lifewatch is uncertain as to whether this request seeks blank, standard contracts or copies of executed customer contracts.

5.   Has LIFEWATCH contacted any Vermont consumers by telephone to sell or offer its goods or services from January 1, 2008 to date? If yes, provide, in electronic Excel format, the following information:

   a.   the name, address and telephone number of every Vermont consumer, including all area code 802 consumers, that you contacted;

   b.   the means by which the calls were placed;

   c.   the name, address and telephone number of every Vermont consumer from whom you received any payment for goods or services;

   d.   the date and amount of each payment by the consumer;

   e.   the nature of any goods or services provided to the consumer, and the date provided;

   f.   the method of payment;

   g.   whether the consumer questioned the payment or requested a refund, and

   h.   whether the consumer received the requested refund, the date on which it was provided, and how the refund was provided to the consumer.

**Response: No.**

6.   Provide a copy of any complaints received from consumers identified in Question 5.

**Response: Not applicable.**

Dinse,
Knapp & McAndrew, P.C.
209 Battery Street
P.O. Box 988
Burlington, VT
05402-0988
(802) 864-5751

**Menjivar Att. K
Page 4 of 11**
FTC00393

7. If Lifewatch engaged in telephone solicitations to Vermont consumers from January 1, 2008 to date, provide a written copy and an audio or digital recording of the text of the telephone solicitation made by sales staff.

**Response: Not applicable.**

8. If the answer to Question 5 is yes, has LIFEWATC H obtained a certificate of authority to transact business in Vermont from the VT Secretary of State? If yes, what is the business name listed on your certificate?

**Response: Not applicable.**

9. If the answer to Question 5 is yes, is LIFEWATCH registered as a telemarketer with the Vermont Secretary of State? If yes, under what name or file number is your company registered?

**Response: Not applicable.**

10. If the answer to Question 5 is yes, did LIFEWATCH check to determine if each consumer was registered on the federal DO N OT CALL Registry before calling any Vermont consumer? If yes, provide a list of consumers contacted along with a copy of all documents related to LIFEWATC H's compliance efforts with the DO N OT CALL requirements of the Federal Telemarketing Rule.

**Response: Not applicable**

11. If you used another person or company to sell or offer your goods or services to Vermont consumers from January 1, 2008, provide the following information:

a. the name, address and telephone number of all persons or companies that you contracted or had a business relationship with to perform sales or marketing for your goods or services;

Dinse,
Knapp & McAndrew, P.C.
209 Battery Street
P.O. Box 988
Burlington, VT
05402-0988
(802) 864-5751

{B1183385.1 14740-0001}

5

b.      whether that person or company was registered as a telemarketer

with the Vermont Secretary of State;

c.      whether that person or company has a certificate of authority from

the Vermont Secretary of State authorizing it to transact business in Vermont;

d.      whether and how the person or company complied with the DO NOT

CALL requirements of the Federal Telemarketing Rule;

e.      the services that the person or company provided to LIFEWATCH;

f.      the means by which the person or company provided the services;

g.      the financial arrangement you had with the person or company;

h.      provide the contract or other agreement you had or have with the

person or company.

**Response: Lifewatch does not "use" other persons to sell or offer goods or services to consumers. Specifically, Lifewatch does not telemarket or employ telemarketers. In addition to its own advertising and marketing efforts, Lifewatch enters into Purchase Agreements with various outside companies. Pursuant to these Purchase Agreements, the outside companies originate customer accounts (through radio, television, internet and print advertising, and through telemarketing) and then offer to sell those accounts to Lifewatch--and others--on a non-exclusive basis. Lifewatch specifies that all outside companies with whom it does such business shall comply with all state and federal laws in originating the customer accounts. Lifewatch is in the process of searching for documents reflecting the identities of outside companies that may have conducted advertising in Vermont. This information will be provided as it becomes available. Further information responsive to this request--including purchase agreements with the outside companies--will be provided upon execution of a confidentiality agreement that ensures, inter alia, Lifewatch's competitors cannot avail themselves of the Vermont Public Records Act or analogous statutes in order to gain access to Lifewatch's proprietary information**

12.     Has LIFEWATCH purchased customer lists or accounts from sales agents?

If yes, please identify the name (including corporate name), address, telephone

number, and contact person from the company from whom you have purchased such lists

or accounts since January 1, 2008 to date.

Dinse,
Knapp & McAndrew, P.C.
209 Battery Street
P.O. Box 988
Burlington, VT
05402-0988
(802) 864-5751

{B1183385.1 14740-0001}

6

**Response: As set forth in detail above, Lifewatch is in the process of searching for documents reflecting the identities of outside companies that may have advertised in Vermont. This information will be provided as it becomes available.**

13. For those persons or entities identified in Questions 11 and 12, provide, in electronic Excel format, the information provided to you by the person or entities, including:

    a. the name, address and telephone number of every Vermont consumer, including all area code 802 consumers, who were contacted by the person or entity;

    b. the means by which the contact was made;

    c. describe the goods or services that were offered for sale;

    d. the name, address and telephone number of every Vermont consumer from whom you received any payment for goods or services from January 1, 2008 to date;

    e. the date and amount of each payment by the consumer;

    f. the nature of any goods or services provided to the consumer, and the date provided;

    g. the method of payment;

    h. whether the consumer questioned the payment or filed a complaint about goods or services received;

    i. whether the consumer requested a refund; and

    j. whether the consumer received a refund, the date on which is was provided, and how the repayment was made to the consumer

**Response: Lifewatch objects as this interrogatory is overly broad and not reasonably calculated to obtain information and materials relevant to an investigation conducted in compliance with 9 V.S.A § 2460. Lifewatch's customer information is highly confidential and proprietary. Moreover, Lifewatch has an obligation to its customers to safeguard their private information--an obligation our customers expect us to fulfill. Nevertheless, in the interest of**

Dinse,
Knapp & McAndrew, P.C.
209 Battery Street
P.O. Box 988
Burlington, VT
05402-0988
(802) 864-5751

**cooperating with the Attorney General, upon clarification of the scope of this request, Lifewatch would be willing to enter into a confidentiality agreement that strikes a balance between the Attorney General's need for relevant information, Lifewatch's right to protect its proprietary data, and Lifewatch's responsibilities towards its customers' private information.**

**Lifewatch is confident that, given its business practices and disclosures to customers, none of its customers are confused about pricing or anything else pertaining to the products and services Lifewatch provides.**

14.     For any person or entities identified inn response to Questions 11 and 12,

provide a copy of the written text and an audio or digital recording of the text of the

telephone solicitations that were made to consumers.

**Response: Lifewatch does not, upon information and belief, possess materials responsive to this request.**

15.     Provide a copy of any consumer complaints received about the person or

entities identified in Questions 11 and 12.

**Response: Upon information and belief, Lifewatch received a complaint from a Vermont consumer. Lifewatch is presently searching for documents reflecting the consumer complaint. In the event responsive materials are located, they will be provided.**

16.     State the total amount of money you have collected or received from all

Vermont consumers from January 1, 2008 to date.

**Response: Information responsive to this request will be provided upon execution of a confidentiality agreement that ensures, inter alia, Lifewatch's competitors cannot avail themselves of the Vermont Public Records Act or analogous statutes in order to gain access to Lifewatch's proprietary information.**

17.     List each law enforcement investigation, lawsuit, settlement, or private class

action lawsuit in which you were a target, respondent, or defendant, relating to any

telephonic solicitations or telemarketing activities conducted by you, as well as any goods

or services promised or provided by you, or on your behalf, and:

        a.     describe the nature of the legal action or investigation;

        b.     state the name, address and telephone number of the governmental

agency and/or other party involved;

Dinse,
Knapp & McAndrew, P.C.
209 Battery Street
P.O. Box 988
Burlington, VT
05402-0988
(802) 864-5751

{B1183385.1 14740-0001}

8

c.      state the dates of the initiation of the action or investigation;

d.      describe the outcome of the action;

e.      identify and produce any written charges, settlement documents,

court complaints relating to the action, and final reports of internal investigations.

**Response:** Lifewatch objects as this interrogatory is overly broad, unlimited in time, and not reasonably calculated to obtain information and materials relevant to an investigation conducted in compliance with 9 V.S.A § 2460.  Subject to and without waiving said objections, please see the chart below, which is limited to 2013 and 2014.  Lifewatch is in the process of searching its records for responsive information before 2013.  Lifewatch will supplement this chart in the event additional responsive information is located.  The four settlements listed below are governed by confidentiality agreements.

| TCPA Civil Action | Aronson v Lifewatch | US District Court, Eastern District of Pennsylvania | December 2013 | Settlement |
|---|---|---|---|---|
| TCPA Civil Action | Abramson v Lifewatch | US District Court, Eastern District of Pennsylvania | December 2013 | Settlement |
| Investigation | Connecticut Department of Consumer Protection | N/A | September 2013 | Pending (Inactive) |
| TCPA Civil Action | Connor v Lifewatch | US District Court, District of South Carolina | December 2013 | Pending |
| TCPA Civil Action | Ehat v Lifewatch | US District Court, District of Utah | November 2013 | Settlement |
| TCPA Civil Action | Fitzhenry v Lifewatch | US District Court, District of South Carolina | December 2013 | Pending |
| TCPA Civil Action | Guiley v Lifewatch | Canton Municipal Court, Stark County Ohio | January 2014 | Pending |
| TCPA Civil Action | Indiana Attorney General | Marion Superior Court, State of Indiana | November 2012 | Pending |
| Lanham Act Civil Action | Life Alert v Lifewatch | US District Court, Central District of California | May 2013 | Pending |
| TCPA Civil Action | Salam v Lifewatch | US District Court, Northern District of Illinois | January 2014 | Pending |
| TCPA Civil Action | Sacchi/ Donaca v Lifewatch | US District Court, Central District of California | November 2013 | Pending |

Dinse,
Knapp & McAndrew, P.C.
209 Battery Street
P.O. Box 988
Burlington, VT
05402-0988
(802) 864-5751

{B1183385.1 14740-0001}

**Menjivar Att. K
Page 9 of 11**

FTC00398

| TCPA Civil Action | Shapiro v Lifewatch | US District Court, Eastern District of Pennsylvania | December 2013 | Settlement |
| TCPA Civil Action | Stapleton v Lifewatch | Prince William County Small Claims Court, State of Virginia | September 2013 | Pending |
| TCPA Civil Action | Todd v Lifewatch | US District Court, Northern District of Illinois | January 2014 | Pending |

18.     State the name, address and position of all persons who participated in

responding to this Civil Investigative Demand.

**Response: With the assistance of counsel, Lifewatch's President and CEO Evan Sirlin participated in responding to this demand.**

DATED at Burlington, Vermont, this $\cancel{/3^{\text{th}}}$ day of February, 2014.

DINSE, KNAPP & McANDREW, P.C.

Samuel Hoar, Jr., Esq.
Attorney for Defendant
Lifewatch, Inc.
P.O. Box 988
Burlington, VT  05402-0988
Tel. (802) 864-5751

Dinse,
Knapp & McAndrew, P.C.
209 Battery Street
P.O. Box 988
Burlington, VT
05402-0988
(802) 864-5751

{B1183385.1 14740-0001}

10

**STATE OF VERMONT**
**OFFICE OF THE ATTORNEY GENERAL**

In Re LIFEWATCH, Inc.

## CERTIFICATE OF COMPLIANCE

I, _Evan Sirlin_, hereby certify that I have reviewed the

responses to the Civil Investigative Demand dated 2/13/14, and that they are true and

accurate to the best of my knowledge and belief. I further certify that all of the requested

material within the possession, custody, or control of LIFEWATCH has been produced,

except that for which a privilege has expressly been claimed.

Signature

Subscribed to and sworn to before me at _____ (City),

_____ (State), this _____ day of _____, 2014.


_____

Notary Public. My commission expires:

_____

12

**Menjivar Att. K**
**Page 11 of 11**
**FTC00400**