# PX 50

## DECLARATION OF DIANA MEY
## PURSUANT TO 28 U.S.C. §1746

I, Diana Mey, hereby declare as follows:

1.      My name is Diana Mey. I am over the age of eighteen and I live in Wheeling, West Virginia.

2.      I have personal knowledge of the facts stated in this declaration, and if called as a witness, I could and would competently testify to the facts stated herein.

3.      I have two wireless phone lines, which have been on the National Do Not Call List since 2003 and 2004, respectively. Despite both phones being registered on the National Do Not Call List, I continue to receive telemarketing calls. In an effort to find the responsible parties for making such calls, I routinely route such calls to my personal computer and record the calls in their entirety. I also keep notes of the caller identification information and the time I receive such calls. I provided true and correct copies of the recordings of these calls identified in this declaration to the representatives of the Federal Trade Commission.

4.      On October 23, 2013, at 2:24 p.m., I received a robocall from 212-677-5122 to 304-242-7346, one of two wireless phone lines I have. That line has been on the National Do Not Call List since 2004. I had not requested any information about medical alert devices nor was I interested in receiving or purchasing a medical alert device. I also had not given prior permission to receive prerecorded telemarketing calls. The robocall included an alarmist message offering a medical alert system and a discount pharmacy card. I pressed 1 to speak to a representative. The representative said he was from Senior Life Alarm and that I had been

1

selected to receive a free medical alert system package. He described the system as the same as the one that is advertised on television with an elderly woman who says she's fallen but cannot get up. When I asked what company would charge my credit card, a representative told me to call customer service at 888-998-0821 to get that information. During that conversation, a representative told me the company's name that would charge my credit card would be Lifewatch, located at 266 Merrick Road, Lynbrook, NY 11563.

5.      On August 18, 2014, at 12:39 p.m., I received a robocall from 304-242-1950 to 304-242-7346. The caller identification surprised me since 304-242-1950 was a former phone number of mine. This call included an alarmist message offering a free medical alert system. I pressed 1 to get the free system, as the robocall instructed, but the telemarketer abruptly hung up on me shortly after asking me whether I'd prefer the bracelet or the necklace.

6.      On September 9, 2014, at 11:56 a.m., I received a robocall from 307-316-7473 to my other wireless phone line, 304-242-1943. My understanding is that a contractor for the Federal Trade Commission produced a transcript of this call.   The robocall played what sounded like the same message as the call on August 8, 2014, and I pressed 1 to find out if the program was available in my area, as the robocall instructed. A live representative who identified herself as Lily, #15, from Senior Life Support, came on the line.

7.      On September 9, 2014, I received a follow-up call from 855-796-7524 at 12:19 p.m.. My understanding is that a contractor for the Federal Trade Commission produced a transcript of this call. A representative who identified herself as Carolyn Sullivan said she was calling from the verification department of Senior Life Support.

2

8.      On September 18, 2014, I received a package from Lifewatch, including the

medical alarm system and various other paperwork. Attached as Mey Att. A are photos I took of

the items and paperwork I received in the package. I called the customer service number I had

been given on September 9, 2014 and that was included in the package, 855-796-7524, on 4:35

p.m. that same day. My understanding is that a contractor for the Federal Trade Commission

produced a transcript of this call. A representative who identified herself as Crystal from Senior

Life Support, came on the line. Later, I was transferred to a representative who was identified as

Crystal's supervisor, Misha.


9.      On September 19, 2014, at 11.41 a.m., I received a robocall from 321-209-7177

to my wireless phone, 304-242-1943. The message was the same or substantially the same as the

robocalls described above. As instructed, I pressed 1 to get a free system. I was put on hold for

some time and a recorded message gave periodic updates as to my standing in the queue. A

representative who identified herself as Angela, PLS agent # 108, from Senior Life Support came

on the line and said I had been selected to receive a medical alert system. Approximately two

minutes fifty three seconds into the call, the call abruptly disconnected.


10.     On September 27, 2014, at 11:51 a.m., I received a call from 708-529-4774 to my

wireless phone, 304-242-1943. My understanding is that a contractor for the Federal Trade

Commission produced a transcript of this call. The message was the same or substantially the

same as the robocalls described above. As instructed, I pressed 1 to get my free system. A

representative who identified himself as Eric, #809, came on the line. Eric identified his

company as Medical Alert, with the Senior Life Support Assistance program. Later in the call, I

3

was transferred to a woman who Eric said was his supervisor and who identified herself as Ms. Michelle. She said the name of their company was Senior Life Support.

11.     On September 27, 2014, at 12:10 p.m., I received a call from 360-322-1124 to my wireless phone 304-242-1943. My understanding is that a contractor for the Federal Trade Commission produced a transcript of this call. The representative I had talked to a few minutes earlier, Eric, said he was calling back to verify some information. During that call, a woman who did not give her name but identified herself as a floor supervisor, came on the line and said the verification department would call me back in 30-45 minutes.

12.     On September 27, 2014, at 12:31 p.m., I received a call from 855-796-7524 to my wireless phone 304-242-1943. My understanding is that a contractor for the Federal Trade Commission produced a transcript of this call. A representative who identified herself as Carolyn Sullivan from Senior Life Support said she was calling back from the verification department. During that call, she said she would have to put me on hold for 4 minutes to process the transaction, and I asked her to call back instead.

13.     On September 27, 2014, at 12:39 p.m., I received a call from 855-796-7524 to my wireless phone 304-242-1943. My understanding is that a contractor for the Federal Trade Commission produced a transcript of this call. The representative I had talked to a few minutes earlier, Carolyn Sullivan from Senior Life Support, said that the transaction was declined and offered to postdate the transaction for the Med Alert necklace and gifts they had promised me earlier in the day.

14.     On October 1, 2014, at 11:41 a.m., I received a robocall from 708-529-4774 to my wireless phone, 304-242-1943. The message was the same or substantially the same as the robocalls described above. I did not press 1 as instructed in the robocall message and the call discontinued shortly after the message ended.

15.     On October 3, 2014, at 10:57 a.m., I received a robocall from 708-529-4774 to my wireless phone, 304-242-1943. My understanding is that a contractor for the Federal Trade Commission produced a transcript of this call. The message was the same or substantially the same as the robocalls described above. As instructed, I pressed 1 to get a free system. A representative who identified herself as Ms. Rodell, agent ID 955, from Senior Life Support came on the line. She said she was located in the registration department in Albany, New York. Later, the call was transferred to a representative who identified herself as Sherry, one of the supervisors.

16.     On October 3, 2014, at 11:20 a.m., I received a call from 855-796-7524 to my wireless phone, 304-242-1943. My understanding is that a contractor for the Federal Trade Commission produced a transcript of this call. A representative who identified herself as Bella with the verification department of Senior Life Support was on the line. Later in the call, after I asked to speak to Bella's supervisor, a representative who identified herself as Michelle came on the line. She explained that all of the products they sold were from Lifewatch.

17.     On October 4, 2014, at 3:23 p.m., I received a robocall from 708-529-4744 to my wireless phone, 304-242-1943. The message was the same or substantially the same as the

robocalls described above. I did not press 1 as instructed in the robocall message and the call discontinued shortly after the message ended.

18.     On October 7, 2014, at 2:31 p.m., I received a robocall from 303-465-2218 to my wireless phone, 304-242-1943. The message was the same or substantially the same as the robocalls described above. As instructed, I pressed 1 to get a free system. A representative who identified herself as Stephanie, PLS agent #962, from Senior Life Support came on the line and said I would receive a free medical alert system, a $50 restaurant card monthly from restaurant.com, and $3000 in grocery coupons, if I agreed to sign up for the medical alert monitoring for $29.95 per month. She said there were no contracts and if I cancelled, I could keep the coupons and everything else was completely free. She said she was in Albany, New York, in a secure facility. She transferred the call to a representative who identified herself as Sherry, one of the managers, who also said she was in Albany, New York. I complained to her about calling me even though I was on the National Do Not Call list and had frequently asked them not to call me, at which point she hung up on me.

19.     On October 8, 2014, at 6:34p.m., I received a robocall from 303-465-2218 to my wireless phone, 304-242-1943. The message was the same or substantially the same as the robocalls described above. As instructed, I pressed 1 to get a free system. A representative who identified himself as John, Agent # 103, came on the line, but the call disconnected shortly after he said hello.

20.     On October 10, 2014, at 11:09 a.m., I received a robocall from 303-465-2218 to my wireless phone, 304-242-1943. The message was the same or substantially the same as the robocalls described above. As instructed, I pressed 1 to get a free system. A male representative came on the line and identified himself as agent #66, but I could not understand his name. The call disconnected shortly thereafter.

21.     On October 14, 2014, at 10:53 a.m., I received a robocall from 303-465-2218 to my wireless phone, 304-242-1943. My understanding is that a contractor for the Federal Trade Commission produced a transcript of this call. The message was the same or substantially the same as the robocalls described above. As instructed, I pressed 1 to get a free system. A representative who identified himself as Andrew Smith from Senior Life Support came on the line. He transferred the call to a woman he described as his manager, who did not provide her name but identified herself as the floor supervisor for Senior Life Support.

22.     On October 14, 2014, at 11:05 a.m., I received a call from 360-322-1124 to my wireless phone, 304-242-1943. My understanding is that a contractor for the Federal Trade Commission produced a transcript of this call. The representative who had identified himself as Andrew Smith during the earlier call that day, was on the line.

23.     On October 27, 2014, at 11:42 a.m., I received a robocall from 757-644-3695 to my wireless phone, 304-242-1943. My understanding is that a contractor for the Federal Trade Commission produced a transcript of this call. The message was the same or substantially the same as the robocalls described above. As instructed, I pressed 1 to get a free system. A

representative who identified himself as Mr. Addison with Senior Life Savings came on the line. Later, a representative who identified herself as Trenisha from the verification department of Senior Life Savers came on the line, although she indicated that Lifewatch would bill me and that Senior Life Savers was just a small branch of Lifewatch.

24. On October 27, 2014, at 11:59 a.m., I received a call from 855-849-1855 to my wireless phone, 304-242-1943. My understanding is that a contractor for the Federal Trade Commission produced a transcript of this call. The representative who had identified herself as Trenisha from Senior Life Savers during the earlier call that day, was on the line.

25. On October 31, 2014, at 11:34 a.m., I received a robocall from 757-644-3695 to my wireless phone, 304-242-1943. My understanding is that a contractor for the Federal Trade Commission produced a transcript of this call. The message was the same or substantially the same as the robocalls described above. As instructed, I pressed 1 to get a free system. A representative who did not give me his name but said he was from Senior Life Savers came on the line. He said he was transferring the call to what he described as their verification department, but I hung up after nobody picked up the phone.

26. On October 31, 2014, at 11.44 a.m., I received a call from 855-849-1855 to my wireless phone, 304-242-1943. My understanding is that a contractor for the Federal Trade Commission produced a transcript of this call. A representative who identified as Gerry from the verification department of Senior Life Savers came on the line.

27.     On November 3, 2014, I received a letter from Lifewatch USA dated October 28, 2014. A copy of the letter is attached hereto as Mey Att. B.

28.     On November 6, 2014, at 10:30 a.m., I called the telephone number listed on the letter I received from Lifewatch USA on November 3, 2014, 800-716-1433. My understanding is that a contractor for the Federal Trade Commission produced a transcript of this call. While on hold, there was a recorded message thanking me for calling Medical Alarm Systems. After a brief pause, a representative who identified himself as Howard from Medical Alarm Systems came on the line.

29.     On November 19, 2014, at 11:41 a.m., I received a robocall from 515-207-3384 to my wireless phone, 304-242-1943. My understanding is that a contractor for the Federal Trade Commission produced a transcript of this call. The message was the same or substantially the same as the robocalls described above. As instructed, I pressed 1 to get a free system. A representative who identified herself as Tanisha, agent number 107, from the Senior Life Saver assistance program came on the line and said I had been selected to receive a medical alert system.

30.     On November 19, 2014, at 11:53 a.m., I received a call from 352-535-8784 to my wireless phone, 304-242-1943. A representative who identified himself as Michael, one of the managers on the floor at Senior Life Savers, came on the line. Later in the call, a representative who identified himself as Jason, one of the regional managers at Senior Life Savers, came on the line.

31.     On December 4, 2014, at 5:21 p.m., I received a call from 800-716-1433 to my wireless phone, 304-242-1943. My understanding is that a contractor for the Federal Trade Commission produced a transcript of this call. A representative who identified himself as Terry R. from Lifewatch in Connecticut, told me that my credit card had been declined for the medical alert system I had purchased from them.

32.     On January 5, 2015, at 12:38 p.m., I received a robocall from 651-388-4121 to my wireless phone, 304-242-1943. My understanding is that a contractor for the Federal Trade Commission produced a transcript of this call. As instructed, I pressed 1 to get a free system. A representative who identified himself as James, agent # 210, from Nationwide Ventures, came on the line. Later, a representative James identified as his supervisor, who said his name was Willie, came on the line.

33.     On January 5, 2015, at 3:29 p.m., I received a robocall from 918-570-5402 to my wireless phone, 304-242-1943. My understanding is that a contractor for the Federal Trade Commission produced a transcript of this call. As instructed, I pressed 1 to get a free system. A representative who identified herself as Dedra, # 2043, from Senior Life Support Assistance in Orlando, came on the line. Later in the call, she switched me to a representative she described as her manager who identified himself as Randy, who identified himself as a manager and also said he was Dedra's manager.

10

34.     On January 8, 2015, at 10:02 a.m., I received a call from 800-615-8364 to my wireless phone, 304-242-1943. My understanding is that a contractor for the Federal Trade Commission produced a transcript of this call. A representative who identified herself as Vanessa from Lifewatch USA in Middletown, Connecticut, came on the line and said she was calling to verify my order from Nationwide Ventures on January 5, 2015. She put me on hold and a recorded message identifying the company as Safe Home Security played in the background. When Vanessa came back on the line, she told me that Safe Home Security is a different department of the company.

35.     On January 13, 2015, at 12:51 p.m., I received a robocall from 607-900-1973 to my wireless phone, 304-242-1943. My understanding is that a contractor for the Federal Trade Commission produced a transcript of this call. As instructed, I pressed 1 to get a free system. A representative who identified himself as Sambre, PLS agent # 9415, from Senior Life Support, came on the line.

36.     On January 22, 2015, at 5:11 p.m., I received a robocall from 517-295-8547 to my wireless phone, 304-242-7346. The robocall message was similar to many I have received in the past, stating "Hello seniors. Due to new health care regulations, you are now eligible to receive a personal medical alert system at no cost to you. Since you've already been referred by a friend or family member, we have a system waiting to be shipped out to you. Press one now to receive your personal medical alert system. And by taking advantage today, you'll also receive $1000 in grocery saving coupons, plus a 75% prescription discount card."

37.     On January 23, 2015, at 5:24 p.m., I received a robocall from 517-295-8547 to my wireless phone, 304-242-7346. The robocall message was similar to many I have received in the past, stating "Hello seniors. Due to new health care regulations, you are now eligible to receive a personal medical alert system at no cost to you. Since you've already been referred by a friend or family member, we have the system waiting to be shipped out to you. Press one now to receive your personal medical alert system. And by taking advantage today, you'll also receive $1000 in grocery saving coupons, plus a 75% prescription discount card."

38.     On January 27, 2015, at 4:18 p.m., I received a robocall from 870-463-8589 to my wireless phone, 304-242-7346. The robocall message was similar to many I have received in the past, stating "Hello seniors. Due to new health care regulations, you are now eligible to receive a personal medical alert system at no cost to you. Since you've already been referred by a friend or family member, we have the system waiting to be shipped out to you. Press one now to receive your personal medical alert system. And by taking advantage today, you'll also receive $1000 in grocery saving coupons, plus a 75% prescription discount card."

39.     On January 28, 2015, at 5:27 p.m., I received a robocall from 870-463-8589 to my wireless phone, 304-242-7346. The robocall message was similar to many I have received in the past, stating "Hello seniors. Due to new health care regulations, you are now eligible to receive a personal medical alert system at no cost to you. Since you've already been referred by a friend or family member, we have the system waiting to be shipped out to you. Press one now to receive your personal medical alert system. And by taking advantage today, you'll also receive $1000 in grocery saving coupons, plus a 75% prescription discount card."

40.     On January 30, 2015, at 2:12 p.m., I received a robocall from 870-463-8589 to my wireless phone, 304-242-7346. The robocall message was similar to many I have received in the past, stating "Hello seniors. Due to new health care regulations, you are now eligible to receive a personal medical alert system at no cost to you. Since you've already been referred by a friend or family member, we have the system waiting to be shipped out to you. Press one now to receive your personal medical alert system. And by taking advantage today, you'll also receive $1000 in grocery saving coupons, plus a 75% prescription discount card."

41.     On February 4, 2015, at 11:13 a.m., I received a robocall from 913-674-8956 to my wireless phone, 304-242-7346. The robocall message was similar to many I have received in the past, stating "Hello seniors. Due to new health care regulations, you are now eligible to receive a personal medical alert system at no cost to you. Since you've already been referred by a friend or family member, we have the system waiting to be shipped out to you. Press one now to receive your personal medical alert system. And by taking advantage today, you'll also receive $1000 in grocery saving coupons, plus a 75% prescription discount card."

42.     On February 7, 2015, at 2:44 p.m., I received a robocall from 870-463-8589 to my wireless phone, 304-242-7346. The robocall message was similar to many I have received in the past, stating "Hello seniors. Due to new health care regulations, you are now eligible to receive a personal medical alert system at no cost to you. Since you've already been referred by a friend or family member, we have the system waiting to be shipped out to you. Press one now to receive

13

your personal medical alert system. And by taking advantage today, you'll also receive $1000 in grocery saving coupons, plus a 75% prescription discount card."

I declare under penalty of perjury that the foregoing is true and correct.

Executed on ___March 5___, 2015.

Diana Mey

14

# MEY ATTACHMENT A

US POSTAGE AND FEES PAID

**PRIORITY MAIL**
Sep 15 2014
Mailed from ZIP 11563
Priority Mail
Regional Rate Box A

CommercialBasePrice



071V00920779

endicia.com

# PRIORITY MAIL 2-DAY

Medical Alarm System
266 Merrick Road
Lynbrook NY 11563

R006     **0004**

657962720

**SHIP**  Diana Mey
**TO:** ██████████████

Wheeling WV ████████████

## USPS TRACKING #







# Medical Alarm Systems

**Providing Safety and Security**
*at the Press of a Button*

*"I feel safe and secure while keeping my independence."*

# WELCOME to Medical Alarm Systems.
## *OPEN RIGHT AWAY!*
(Please read all documents inside before testing system)

Mey Att. A
Page 4 of 9

CONGRATULATIONS ON YOUR
GROCERY
TRIPLE REWARD!

Unlimited Printable + $3000 in Coupons at + Thousands of
Grocery Coupons    My Grocery Dough    Extra Savings

*Save at thousands of grocery stores like:

Kroger
Publix.
Winn Dixie
Walmart ⅗
TARGET ◎
save a lot
IGA
SAFEWAY ◯

See reverse for
Redemption PIN
and complete details...

## GROCERY TRIPLE REWARD CERTIFICATE
## ONLINE REDEMPTION INSTRUCTIONS & TERMS
### - PLEASE READ CAREFULLY -

Congratulations on your reward! This certificate allows you members-only access to the My Grocery Dough program, where you have instant access to three great benefits, including (1) $3,000.00 in your choice of grocery coupons, (2) unlimited print-at-home grocery coupons, and (3) thousands of extra savings. Grocery Triple Reward certificates are the sole obligation of My Grocery Dough, and may be redeemed online only at www.mygrocerydough.com. Grocery Triple Reward certificates have no cash value, are not gift cards, and are not redeemable for cash or at any store at any time.

### YOUR GROCERY TRIPLE REWARD REDEMPTION PIN IS:

# MYGDLF265881461

HOW TO REDEEM: To redeem, just follow the instructions below:

1. Visit www.mygrocerydough.com.
2. You'll be asked to enter your Redemption PIN (above).
3. You'll then register a member account and select a username and password.
4. Once you've registered, you will be given instant access to a wide variety of members-only benefits, including your $3,000.00 coupon account.
5. You can access your My Grocery Dough benefits as often as you would like, 24 hours a day.

ADDITIONAL TERMS AND CONDITIONS APPLY: For the clipped coupon benefit, because coupons must be hand-clipped and personally mailed to you, there is a small processing fee of ten percent (10%) of the face value of the coupon, plus a flat fee of seventy five cents ($0.75) per order. As a courtesy, My Grocery Dough will bonus back your processing fee in the form of additional coupons added to your order. For complete redemption instructions, terms, frequently asked questions, and other resources regarding My Grocery Dough, please visit our website at www.mygrocerydough.com. Redemption of your Redemption PIN signifies your understanding and acceptance of the My Grocery Dough terms and conditions. My Grocery Dough is not the provider of any of the member benefits to which you will be given access, and does not control their availability. Special terms and conditions from the provider of the benefit(s) you use may apply. You are subject to the benefit provider's terms as well.

MEMBER SUPPORT: We look forward to supporting you in every way possible. My Grocery Dough provides online customer service only. Please visit our website if you need assistance of any kind. We're glad to assist you in any way we can.

PROGRAM RESPONSIBILITIES: With this certificate, registration of your Redemption PIN and participation in My Grocery Dough are free. As disclosed above, the clipped coupon benefit does require a processing fee. My Grocery Dough is not affiliated with the business that provided this reward to you. My Grocery Dough did not sell you anything and did not promise you anything regarding this reward.

QUESTIONS?: Visit us at www.mygrocerydough.com.

* Third party logos and trademarks used are the property of their respective owners and are used for demonstration purposes only.

### THIS CERTIFICATE IS NOT REDEEMABLE AT STORES
### THIS CERTIFICATE HAS NO CASH VALUE

Dear Customer,

# How To Test:

1. Please call our Testing Hotline at 1-855-484-0235
2. Recorded message will say "Welcome to the Lifewatch Home Test Line
3. "We have identified your device. Do you wish to now place this device on test for the next fifteen minutes? Please say yes or no".
4. *You will be asked to state your name for our records.* You will hear "Your device has been placed on test for the next fifteen minutes. You can now hang up and test the device".
5. Now press button.
6. System will activate and say "we have just received a home test alarm. In order to test your microphone, please speak your full name for our records".
7. State your name.
8. "Thank you. You will now hear your voice played back to you from the test. If you did not hear your voice played back, or you experienced any other issues during this test, please call Lifewatch at 1-800-716-1433 using your regular telephone for further assistance. As a reminder, this device will remain on test for approximately (Remaining Time) more minutes, at which time it will automatically be set back to normal operation. This call is now complete. Have a great day".

## Monitoring Agreement

Subscriber #1 Name: __Diana Mey__

Subscriber #2 (if applicable) Name: _____  Male ___ / Female ___ Birth Date ___/___/___

Street Address: _____  Male ___ / Female ___ Birth Date ___/___/___

City: __Wheeling__  State: __WV__  Zip: _____

Household Telephone #: __(304)_____

Cross Streets: _____  Email: _____

Hidden Key/Lockbox location: _____ Lockbox Code: _____  Township (TX, PA, NJ Only): _____

Private Home ___ / Apartment ___

**Medical Information (Subscriber #1)**

Allergies: _____

Medications: _____

Physical Limitations: _____

Major Illnesses/Surgeries: _____

Blood Type: _____

Preferred Hospital: _____

**Medical Information (Subscriber #2 – if applicable)**

Allergies: _____

Medications: _____

Physical Limitations: _____

Major Illnesses/Surgeries: _____  Blood Type: _____

**Responder Information**

Phone Codes: C = Cell Phone, H = Home Phone, W = Work Phone

| IN ORDER OF PRIORITY | PHONE #1 | PHONE CODE | PHONE #2 | PHONE CODE | RELATIONSHIP | Must Notify Y/N | Responder Y/N | Keys Y/N |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

*"Must notify" means must be contacted every time signal is received. *"Responder" means has ability to respond to residence if needed.*

**Check One:**

If no communication  ___ Dispatch EMS First or  ___ Call Responders First

**Responsible Party:**

I designate _____

Phone: _____ Relationship: _____

Medical Power of Attorney: _____ Yes  or _____ No

This person is the only person that can make changes on my Responder Form, and will be responsible for returning equipment if I am unable to do so, and settle any finances pertaining to my account.

Subscriber: _____ Date: ____

Price Guarantee Program: ___ 12mth ___24mth

**Rental Agreement:**

| | |
|---|---|
| Introductory Rate: | $ 29.95 |
| Additional Button/Monitoring | $ |
| Fall Detector/Smoke Detector | $ |
| Anywhere Alert 911 | $ |
| Medilok Lockbox | $ |
| All Inclusive Program | $ |
| Installation / Shipping Fee | $ |
| Refundable Deposit | $ |
| Activation Fee | $ |
| Total Paid | $ 29.95 |

## AUTHORIZATION AGREEMENT

On 9/9/2014 I authorized Medical Alarm Systems (Company) to charge my credit card or to electronically debit $29.95 from my (check one)

___ Credit Card # ending in 003 Exp Date: 10/2017

___ Bank name account ending in

The monthly payments I am authorizing today shall be in the amount of $29.95

I authorize the first payment to be withdrawn from my bank or charged to my credit card, indicated above, beginning on 10/26/2014 and continuing each month thereafter on the same date each month.

I (we) hereby authorize THE COMPANY to initiate entries to my (our) credit card or checking/savings accounts at the FINANCIAL INSTITUTION listed in BANK NAME above and, if necessary, initiate adjustments for any transactions credited/debited in error. This authority will remain in effect until THE COMPANY is notified by me (us) in writing to cancel in such time as to afford THE COMPANY and THE FINANCIAL INSTITUTION a reasonable opportunity to act on it. If at any time you wish to revoke this authorization and cancel any scheduled debit to your account, you must notify The Company at 800.716.1433 between the hours of 9:00am-6:00pm EST at least 3 business days prior to any scheduled debit date. In the unlikely event your payment is returned unpaid, we may elect to electronically (or by paper draft) re-present your payment up to two more times.

THIS AGREEMENT IS SUBJECT TO ALL PROVISIONS ON THIS FORM. SUBSCRIBER ACKNOWLEDGES HAVING READ THIS ENTIRE AGREEMENT AND HAS NO QUESTIONS REGARDING THE TERMS AND CONDITIONS THEREOF AND AGREES THERETO. IT IS THE SUBSCRIBER'S RESPONSIBLITIY TO TEST THE UNIT ON A MONTHLY BASIS.

THE UNDERSIGNED HAVE READ, UNDERSTAND, AND AGREE TO ALL TERMS OF THIS AGREEMENT (Subject to acceptance by The Company)

Subscriber has provided The Company with above information and acknowledges that it is accurate. Subscriber must notify The Company's

**LIFEWATCH INC**
**WWW.LIFEWATCH-USA.COM**

**MEDICAL ALARM SYSTEM LEASE AND MONITORING SERVICE AGREEMENT**

Agreement dated _____ , by and between Lifewatch Inc (hereinafter referred to as "Lifewatch" or "ALARM COMPANY")

and _____ (hereinafter referred to as "Subscriber", "You" or "Purchaser") Phone: _____

The parties hereto agree that:

**1. MEDICAL ALARM SYSTEM IS LEASED AND REMAINS PERSONAL PROPERTY OF ALARM COMPANY:** ALARM COMPANY shall lease, instruct the Subscriber in the proper use of the Medical Alarm System (hereinafter referred to as "System" or "equipment"), provide self installation instructions for the Subscriber to self install the System at Subscriber's location including all necessary devices and equipment, for the duration of this agreement, with the understanding that the entire System is and shall always remain the sole personal property of ALARM COMPANY and shall not be considered a fixture or a part of the realty, or an addition to, alteration, conversion, improvement, modernization, remodeling, repair or replacement of any part of the realty, and Subscriber shall not permit the attachment thereto of any apparatus not furnished by ALARM COMPANY.

**2. MEDICAL ALARM MONITORING SERVICES / DOCUMENTATION / COMMENCEMENT OF SERVICES:** Medical Alarm Monitoring services shall commence upon Lifewatch's receipt of this Agreement signed by Subscriber. Commencement of monitoring services shall constitute Lifewatch's acceptance of this Agreement. This Agreement includes other documents which are to be signed and returned to Lifewatch by Subscriber. These documents include: Lifewatch Financial Form, Lifewatch Subscriber Information and Responder Form and Primary Response Directive. Subscriber acknowledges receiving Lifewatch's Welcome Notice, Instructions how to test and use the Lifewatch System and Installation instructions.

**3. CANCELLATION:** Subscriber may cancel this agreement and all services on 30 days notice to ALARM COMPANY. If Subscriber cancels this agreement pursuant to any statutory authority ALARM COMPANY will, within 10 days or within such time as such statute specifies, upon such cancellation and return of equipment refund to Subscriber any amount paid for the equipment and any advance payment for services not yet rendered. Your statutory right to cancel may vary from state to state and Lifewatch will comply with your state's requirements

**4. LEASE, MONITORING, AND SERVICE CHARGES:** Subscriber agrees to pay ALARM COMPANY as provided in the Lifewatch Financial Form, plus tax if any, payable in advance for the lease, monitoring, and service of the System for the term of this agreement commencing on the day Subscriber receives the System, and continuing monthly thereafter until Subscriber returns Lifewatch's system.

This contract will automatically renew every month after the initial term, unless either party gives written notice of its intent to cancel. Failure to return all equipment in satisfactory condition will result in a charge ($350 for base unit, $125 for pendant). In addition, your account will continue to be billed at the monthly monitoring fee as indicated on the Lifewatch Financial Form until our equipment is returned in good working order. TO: ALARM COMPANY at 266 Merrick Road, Suite 104 Lynbrook, NY 11563

**5. TERM OF AGREEMENT/RENEWALS:** The term of this agreement shall be for a period of 30 DAYS. This agreement shall renew itself month to month thereafter under the same terms and conditions, unless either party gives written notice to the other by fax, email or written correspondence of their intention not to renew the contract at least 30 days prior to the expiration of any term.

**6. INCREASE OF MONTHLY CHARGE:** ALARM COMPANY shall be permitted to increase the charges provided for herein at any time or times after the expiration of one year from the date hereof and Subscriber agrees to pay such increase.

**7. MEDICAL ALARM SYSTEM CENTRAL OFFICE MONITORING:** Upon receipt of a signal, ALARM COMPANY or its designated central office, shall make every reasonable effort to notify Subscriber and the appropriate municipal police or fire department or emergency personal response service designated by Subscriber. Subscriber acknowledges that signals which are transmitted over telephone lines, internet, VOIP, or other modes of communication pass through communication networks beyond the control of ALARM COMPANY and are not maintained by ALARM COMPANY, except ALARM COMPANY may own the radio network, and therefore ALARM COMPANY shall not be responsible for any equipment failure which prevents transmission signals from reaching the central office monitoring center or damages arising as a result thereof, or for data corruption, theft or viruses to Subscriber's computers if connected to the PERS communication equipment. Subscriber agrees to furnish ALARM COMPANY with a written list of names and telephone numbers of those persons Subscriber wishes to receive notification of emergency conditions together with a list of all medication, allergies and medical conditions Subscriber wishes to be available to all PERS personnel and medical personnel. All changes and revisions shall be supplied to ALARM COMPANY in writing. Subscriber acknowledges that ALARM COMPANY provides no response to a System signal except notification to the appropriate party, and that the provisions of this agreement exculpating and limiting ALARM COMPANY's liability are fully applicable to the Medical Alarm System service. ALARM COMPANY may, without prior notice, suspend or terminate its services, in event of Subscriber's default in performance of this agreement or in event designated central office facility or communication network is nonoperational or Subscriber's system is sending excessive communication. ALARM COMPANY is authorized to record all telephone conversations and shall own such recordings.

**8. SUBSCRIBER'S CARE OF EQUIPMENT: REPAIRS AND ADDITIONS:** Subscriber agrees not to tamper with, remove or otherwise interfere with the System. Subscriber agrees to bear the cost of repairs or replacement to the System made necessary as a result of any damage, including damage caused by unauthorized intrusion to the premises, lightning or electrical surge, except for ordinary wear and tear, in which event repair or replacement shall be made by ALARM COMPANY without additional charge. Batteries, electrical surges, lightning damage, obsolete components and components exceeding manufacturer's useful life are not included in service and will be repaired or replaced at Subscriber's expense.

**9. TELEPHONE SERVICE IS NECESSARY AND SUBSCRIBER'S RESPONSIBILITY:** Subscriber acknowledges that the MEDICAL ALARM System Transmitter plugs into a standard telephone jack and communicates over standard telephone lines using two way voice communication. The transmitter may not work with VOIP Internet connection.

**10. SUBSCRIBER'S DUTY TO SUPPLY ELECTRIC AND TELEPHONE SERVICE:** Subscriber agrees to furnish, at Subscriber's expense, all 110 Volt AC power and electrical outlets and receptacles, telephone hook-ups, RJ31x Block or equivalent, as deemed necessary by ALARM COMPANY or MEDICAL ALARM equipment manufacturer.

**11. DELAY IN INSTALLATION:** ALARM COMPANY shall not be liable for any damage or loss sustained by Subscriber as a result of delay in installation of equipment, equipment failure, or for interruption of service due to electric failure, transmission failure, acts of God, or other causes, including ALARM COMPANY's negligence in the performance of this agreement, and Subscriber shall not be relieved from payments due under this agreement for such period.

**12. TESTING AND SERVICE OF MEDICAL ALARM SYSTEM:** The parties hereto agree that the SYSTEM, once installed, is in the exclusive possession and control of the Subscriber, and it is Subscriber's sole responsibility to test the operation of the SYSTEM and to notify ALARM COMPANY if it is in need of repair or replacement. During the contract period and so long as Subscriber is current in payment, ALARM COMPANY shall service or replace the System if returned by the Subscriber to ALARM COMPANY at ALARM COMPANY's address. ALARM COMPANY will upon Subscriber's request arrange pick up and delivery, at Subscriber's expense by UPS or US Postal Service. If ALARM COMPANY fails to repair or replace the SYSTEM within 7 days after receipt of said written notice, Subscriber shall not be obligated to pay any amount for service from date said written notice is given, until the SYSTEM is restored to working order unless ALARM COMPANY determines that the equipment is operational and the system failure was electrical or telephone service related at Subscriber's premises, in which event Subscriber shall pay ALARM COMPANY's cost of shipping and inspection charge of $75.00 or if Alarm Company determines that the equipment was damaged by other than ordinary wear and tear, in which event Subscriber shall be charged $350 for a replacement system and $125 for a replacement pendant.

**13. SUBSCRIBER TO INSURE ALARM COMPANY'S EQUIPMENT:** Subscriber shall insure ALARM COMPANY's equipment against fire and casualty and Subscriber agrees to name ALARM COMPANY in said insurance policy as "loss payee" to the extent of the value of the equipment as set forth hereinabove. Subscriber shall be responsible for any loss occasioned by fire or casualty and the cost of replacing or restoring the Medical Alarm System.

**14. AUDIO LISTEN IN AND FORCIBLE ENTRY:** The system includes two-way audio and is meant to be heard under optimal conditions throughout most of the house. In the event that the two way audio is not clear, or the central station does not hear audio, subscriber authorizes company and central station to follow emergency response procedures. Company will notify 911 first, unless otherwise told in writing. Subscriber authorizes the Company in its sole discretion to authorize forcible entry to gain access to Subscriber's premises in the event the System emits a signal to the Central Station and the Subscriber cannot be heard throughout the unit's microphone nor does the Subscriber answer the telephone. Subscriber does hereby release the Company and Central Station from any and all liability whatsoever as a result of said forcible entry.

**15. LIFEWATCH 911 UNIT:** If Subscriber chooses to add an Alert 911 unit, it is understood that this product calls 911 direct and scrubscriber must be able to give their name and location to the 911 operator. There is no GPS locator. All other Terms and Conditions below apply.

**16. MOBILE ALERT SYSTEM:** If you have our Mobile Alert System, monitoring service will not begin and Company and the Central Station will have no obligation to notify emergency personnel or other persons identified as emergency contacts until (1) Company has received your emergency contact information and (2) you have called to activate system and sent a test signal from the system which was successfully received by the Central Station. Please note you must have adequate cellular coverage in the area where system is being used. You are responsible for testing your mobile device everywhere you go. Subscriber also understands that their physical location will be used in connection with providing the service that authorized caregivers may request your current location via our secure web portal. You hereby agree that the Company and the Central Station may provide the Responders and any other necessary third parties, as determined by us and the Central Station in our reasonable discretion, with access to your physical location. You hereby release the Company and the Central Station of any liability which may arise out of disclosure of such information to Responders and any other necessary third parties. If the Central Station is unable to locate the mobile unit, the Company is not responsible for damages. The System and the services rely on the availability of the cellular network coverage and the availability of Global Positioning System ("GPS") data to operate properly. These systems are provided by a third party and the services controlled by Company. There is always a chance that the System may fail to operate properly. The 911 emergency services line is an alternative. And the services.

**17. MEDICAL OR RELATED EXPENSES:** In the event the Subscriber utilizes the System by giving the Central Station a signal, the Subscriber is hereby authorize the

# MEY ATTACHMENT B

**LIFE** *Watch* USA
PERSONAL CARING SERVICE SINCE 1980

October 28, 2014

RE: Unpaid billing cycle 657982720

Dear Diana Mey,

███████████████

Wheeling, WV ███████

Your payment in the amount of $29.95 has recently become overdue for payment. We would appreciate you making this payment as soon as possible.

If payment has been made, please contact our Collections Department immediately so that the matter can be rectified.

If you no longer have a need for our service or if there is a problem paying this owed amount, please contact our Collections Department so that an alternative arrangement for payment can be made.

Yours sincerely,

LifeWatch-USA Collections Department

(800) 716-1433

Please be advised that the amount stated above represents one declined payment, and may not be the complete balance due on your account.

*Lifewatch-USA.* Collections Department 266 Merrick Rd. Suite 104, Lynbrook, NY, 11563

PERSONAL CARING SERVICE SINCE 1980

Mey Att. B