**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| FEDERAL TRADE COMMISSION, and | |
| STATE OF FLORIDA, OFFICE OF THE ATTORNEY GENERAL, DEPARTMENT OF LEGAL AFFAIRS | Case No. 15 CV 5781 |
| Plaintiff, | Judge Feinerman |
| v. | Magistrate Judge Gilbert |
| LIFEWATCH INC., a New York Corporation, also d/b/a LIFEWATCH USA and MEDICAL ALARM SYSTEMS, and | |
| EVAN SIRLIN, individually and as an officer or manager of LIFEWATCH, INC. | |
| Defendants. | |

**DEFENDANT LIFEWATCH'S CROSS-MOTION**
**FOR PROTECTIVE ORDER**

Defendant LIFEWATCH, INC. ("Lifewatch"), through its attorneys, opposes Plaintiffs'

motion to unseal, and respectfully cross-moves this Court for an order entering a protective order

relative to certain categories of documents and materials, which constitute trade secrets.

**I.     PRELIMINARY STATEMENT**

Lifewatch provides emergency monitoring equipment (e.g. pendants, bracelets,

monitoring units) and services to its elderly and seriously ill customers.  Lifewatch's products

and services save lives.  The FTC's complaint pertains to third party telemarketing activities.

There are no allegations that Lifewatch's products or services are defective or somehow

injurious to the public.

On March 12, 2014, the FTC served Lifewatch with a Civil Investigative Demand

("CID") in order to determine whether third party sales companies -- that entered into purchase

1

agreements with Lifewatch-- had engaged in unfair trade practices relating to telemarketing. The FTC also served Lifewatch with a resolution issued by the FTC's commissioners, entitled "Resolution Directing Use of Compulsory Process in a Non-Public Investigation of Telemarketers, Sellers, Suppliers, or Others." The CID required Lifewatch to respond to documents and interrogatories. Between April 14, 2014 and June 2015, Lifewatch complied with the CID by producing thousands of pages of documents to the FTC.

In order to respond to the CID, Lifewatch was required to produce highly detailed profit and loss statements and other financial data were included within Lifewatch's voluminous document production. At Lifewatch's request, the FTC filed certain documents produced by Lifewatch in response to the CID under seal when it moved for a preliminary injunction. The FTC now seeks to unseal these documents. These documents contain highly sensitive business information itemizing every expenditure, every asset, every liability, and every source of income and itemizing them with specificity.

Given the granular level of detail found within the documents that Plaintiffs now seek to introduce into the public record, if these documents are made public, Lifewatch's competitors would be given a roadmap for ascertaining, for instance, Lifewatch's economic vulnerabilities, marketing strategies, vendor identities, and vendor payment terms. In moving to unseal these financial documents, the FTC asserts that these documents "are nothing more than historical financial information about Lifewatch." Not so. These profit and loss statements cover fiscal years 2011 through 2014. These documents are valuable to Lifewatch's competitors as a tool through which to reverse engineer a 2015 profit and loss statement and then calibrate their own business practices to gain an unfair competitive advantage. Moreover, Lifewatch's vendors could use these documents as a playbook for negotiating better terms with Lifewatch. Placing

these proprietary materials into the public domain will not, in any way, serve the public interest. It will, however, cause Lifewatch serious and irreparable competitive harm.

For these reasons and the reasons set forth below, the FTC's motion to unseal should be denied, and Lifewatch's cross-motion for a protective order should be granted.

## II.    LEGAL ARGUMENTS

15 USCS § 57b-2 and 16 C.F.R. § 4.10 dictate that when an entity provides documents to the FTC pursuant to compulsory process, those documents are afforded confidential treatment and are exempt from disclosure under the Freedom of Information Act.  Until the moment that the FTC initiated suit against Lifewatch, the FTC was bound to treat Lifewatch's responsive documents as confidential.  Once the matter progressed from a CID into litigation, the FTC could only disclose the documents after affording Lifewatch the opportunity to move for a protective order.  See *FTC v. Abbvie Prods. LLC*, 713 F.3d 54, 59 (11th Cir. Ga. 2013) ("The FTC may disclose documents received during an investigation in judicial proceedings, provided that the FTC gives the submitter notice and an opportunity to seek a protective order from the court."). Lifewatch has acted timely to do so. Lifewatch submits that the financial data submitted under seal by the FTC should remain under seal.    Further, the proposed protective order annexed hereto as Exhibit A, should be entered by the court.

## 1. LIFEWATCH'S FINANCIAL DATA MUST REMAIN UNDER SEAL

Upon a showing of good cause, "a court may order that trade secrets, confidential materials or other commercial information produced during discovery be protected from public disclosure. The result of such an order is to place court records under seal." *In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litigation*, 101 F.R.D. 34, 40-41 (C.D. Cal. 1984).  A "balancing must take place between the interests in access and the interests in

3

confidentiality. The weight to be accorded each may vary depending upon what purposes the documents serve in litigation." Id.

Here, the financial data -- including detailed profit and loss statements -- that were submitted under seal by the FTC should remain under seal. This is because the financial data are highly confidential and proprietary and the disclosure of this data would provide an unfair advantage to Lifewatch's competitors, vendors, and business partners. A plain review of the documents at issue, and the attached affidavit of Lifewatch's director of operations, demonstrate that the highly detailed financial data within the profit and loss statements have never been publically disclosed and provide a veritable road map for competitors and vendors interested in determining Lifewatch's economic vulnerabilities, marketing strategies, vendor identities, and vendor payment terms. Armed with this information, Lifewatch's competitors can harm Lifewatch by, for instance, duplicating Lifewatch's marketing strategy, disrupting Lifewatch's marketing efforts, contacting Lifewatch's vendors, or disrupting Lifewatch's vendor relationships. Further, Lifewatch's competitors could develop industry strategies designed to exploit perceived economic vulnerabilities that are only ascertainable from Lifewatch's financial data.

The FTC's exhibits in support of their motion for preliminary injunction demonstrate that Lifewatch's competitors and vendors are not only actively monitoring this litigation, but some are ostensibly working hand-in-glove with the FTC. By way of example, Lifewatch's monitoring vendor VRI, Inc., submitted an affidavit to the FTC. (PX 12 in Support of Motion for Preliminary Injunction). And, Lifewatch's direct competitor, Connect America submitted an affidavit to the FTC (PX 13 in Support of Motion for Preliminary Injunction). While Lifewatch's financial data would be directly and immediately beneficial to, for instance, VRI and

4

Connect America. Indeed, Plaintiffs argue that Lifewatch has many competitors and that the field is thus higly competitive. Sharing Lifewatch's highly confidential financial information does not serve any legitimate public interest but, instead, would benefit Lifewatch's competitors and damge Lifewatch even before it is afforded an opportunity to defend itself on the merits. The disclosure sought by Plaintiffs would not serve the public interest.

Indeed it has long been recognized that a compelling reason for sealing exists when release of confidential business information may become a vehicle for an improper purpose or cause a competitive harm. *Nixon v. Warner Communications,* 435 U.S. 589, 597, 98 S. Ct. 1306, 55 L. Ed. 2d 570 (1978) ("courts have refused to permit their files to serve as ... sources of business information that might harm a litigant's competitive standing."). See also, *Bauer Bros. LLC v. Nike, Inc*., No. 09cv500-WQH-BGS, 2012 WL 1899838, at *3-4 (S.D. Cal. May 24, 2012) (sealing deposition testimony and documents containing cost analysis relating to sales, advertising and marketing, product development, and profits: "the financial data sought to be sealed by Nike could be used for improper purposes of Nike's business competitors, as it includes . . . business sales and accounting data . . . and costs analysis"); see also *Bracco Diagnostics, Inc. v. Amersham Health Inc.*, 2007 WL 2085350, at *6 (D.N.J. July 18, 2007) (sealing customer sales information due to the harm defendant would suffer in the marketplace as a result of disclosure); *Erwin v. Waller Capital Partners LLC*, 2012 WL 3528976, at *2 (D.N.J. Aug. 14, 2012) (granting a motion to seal testimony that contained "confidential internal information regarding the [defendant's] revenue, expenses, profits, [and] losses" because the court was "persuaded that [the defendant] may suffer a competitive disadvantage if such information were disclosed to the public."); *Bean v. John Wiley & Sons, Inc.,* No CV 11-08028–PCT–FJM, 2012 WL 1078662, at *6-7 (D. Ariz. Mar. 30, 2012) ("precise revenue information

results" and "exact sales and production numbers" which could be used by competitors to calibrate their pricing and distribution methods to undercut defendant also provide compelling reasons for sealing) (sealing charts summarizing defendant's sales and revenue figures broken out by product); *TriQuint Semiconductor v. Avago Techs., Ltd.*, Case No. CV 09-1531-PHX-JAT, 2011 U.S. Dist. LEXIS 143942, at *10-12 (D. Az. Dec. 13, 2011) (documents showing the volume of the party's sales, market analysis, capital expenditures, cost, and manufacturing capacity met the "compelling reasons" standard for sealing).

Lifewatch provides a product and service and service with high social utility. The allegations in the complaint pertain to third-party marketing practices. There are no allegations that Lifewatch's products or services are, in any way, injurious to the public. Nor are there allegations that pertain to public health and safety. Accordingly, there is no compelling reason for Lifewatch's financial data to be made publically available.

Further, the FTC's motion for a preliminary injunction -- which is, of course, non-dispositive -- seeks only to enjoin Lifewatch from violating the FTC Act and the TSR and from destroying documents. Courts have long recognized that an exception to the general presumption of public access to judicial records is triggered when the documents are associated with non-dispositive motions. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33, 104 S. Ct. 2199, 81 L. Ed. 2d 17 (1984). Given that the FTC's preliminary injunction motion is not dispositive, the public has even less of a cognizable interest in Lifewatch's sensitive financial documents.

Lifewatch is not making a blunderbuss proposal to seal all documents pertaining to Lifewatch. Rather, Lifewatch requests only that its highly sensitive financial data remain under seal so that its competitors, vendors, and business partners do not use the data to competitively disadvantage Lifewatch. For these reasons, the FTC's motion to unseal must be denied.

## 2. A PROTECTIVE ORDER MUST BE ENTERED SO THAT LIFEWATCH CAN PROTECT ITS SENSITIVE BUSINESS INFORMATION AND TRADE SECRETS

Lifewatch seeks a protective order that will prevent its sensitive financial data and its customer identities and information from being publically disclosed.

The Seventh Circuit Court of Appeals has stated that "[d]istrict courts have broad discretion in matters relating to discovery." *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002). Under Federal Rule of Civil Procedure 26(c), a court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." *Star Scientific, Inc. v. Carter*, 204 F.R.D. 410, 413-14 (S.D. Ind. 2001). "The movant bears the burden of showing good cause." *Patt v. Family Health Sys., Inc.*, 189 F.R.D. 518, 522 (E.D. Wis. 1999).

"The most commonly accepted definition of trade secrets," is found in comment b to section 757 of the First Restatement of Torts. *Aronson v. Quick Point Pencil Co.*, 440 U.S. 257, 266 (1979). The Restatement defines "trade secret" as "any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it." RESTATEMENT OF TORTS § 757, cmt. b (1939) (emphasis added). To determine whether a given piece of information is a trade secret, the Restatement suggests considering factors such as: (1) the extent to which the information is known outside of [the holder's] business; (2) the extent to which it is known by employees and others involved in his business; (3) the extent of measures taken by him to guard the secrecy of the information; (4) the value of the information to him and to his

competitors; (5) the amount of effort or money expended by him in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others. Id. These considerations cover all data that "relate[s] to the sale of goods or to other operations in the business," including "lists of customers" or a "method of bookkeeping or other office management." Id.

Here, a plain review of the documents at issue, and the attached affidavit of Paule Oliveri,[1] Lifewatch's Chief Financial Officer, demonstrate that the financial data within the profit and loss statements are trade secrets and should be shielded from public disclosure. Further, the Oliveri affidavit demonstrates that Lifewatch's customer information is a trade secret that should be shielded from public disclosure.[2] The Oliveri affidavit explains how public disclosure of these trade secrets will inevitably harm Lifewatch's competitive position. The Oliveri affidavit explains that the financial data and customer information: a) are not publically known or knowable absent disclosure; b) are highly valuable to Lifewatch and would be highly valuable to its competitors and vendors; and c) are carefully safeguarded within the organization (and limited within the organization).

Courts routinely and uniformly enter protective orders that enable parties to shield sensitive financial information from public disclosure. See, *Trading Techs. Int'l, Inc. v. eSpeed, Inc.*, 2008 U.S. Dist. LEXIS 92557, *18-19 (N.D. Ill. May 23, 2008) ("Entering a protective order listing several types of confidential financial documents that may be designated as 'highly confidential' revenue from sales/licenses of products, net and gross revenue, profit and loss statements, earnings statements and accounts receivable/payable statements.") *See Feed.Ing BV*

---

[1] A copy of the Oliveri Affidavit is attached as Exhibit B.

[2] The FTC itself acknowledged during the July 27th presentment hearing on the motion to unseal, that the FTC considered Lifewatch's customer information to be a trade secret.

*v. Principle Solutions LLC,* 2015 U.S. Dist. LEXIS 2464, *13 (E.D. Wis. Jan. 8, 2015)

("Principal's profit and loss statements for the fiscal years ending December 2012, 2011, 2010, and 2009, provide: (i) a breakdown of Principle's income and expenses for that year, including specific amounts allotted under the costs related to goods sold (such as ingredient purchases), samples, storage and transportation and (ii) commission amounts, discounts/credit adjustments and related information. Principal states that these figures give a detailed picture of its business model...The Court finds good cause for allowing this material to be sealed.") See, *United States v. Autumn Ridge Condo. Ass'n*, 265 F.R.D. 323 (N.D. Ind. 2009) (Entered a protective Order, providing that any discovery material designated as "Confidential Material" by either party can only be disclosed to counsel of record for the parties in this action...and that "Confidential Material" refers to "documents containing personal data identifiers, income tax returns, profit and loss statements, and other corporate financial records, home addresses, or other personal information."); *HomeVestors of Am., Inc. v. Duane Legate & House Buyer Network, Inc*., 2013 U.S. Dist. LEXIS 93391, *14 (N.D. Tex. July 3, 2013) ("The Court is mindful that sensitive information may be contained in HBN's balance sheets and profit and loss statements. Therefore, the Court orders that all financial documents produced by HBN shall be treated as confidential information and governed by the Protective Order entered by this Court."); *SMD Software, Inc. v. EMove, Inc*., 2013 U.S. Dist. LEXIS 35970 (E.D.N.C. Mar. 15, 2013) (Entered an order sealing plaintiffs' profit and loss statements given that they contained business information potentially harmful to the party's competitive standing).

Moreover, courts routinely and uniformly enter protective orders that enable parties to shield customer and vendor information from public disclosure. See *AFMS LLC v. UPS*, 2012 U.S. Dist. LEXIS 106925 (S.D. Cal. July 27, 2012) ("The court is satisfied that [the party] has

shown the [customer information] is a trade secret or confidential commercial information"); *See Drexel Heritage Furnishings, Inc. v. Furniture USA, Inc.,* 200 F.R.D. 255, 261 (M.D.N.C. 2001) (ordering disclosure of supplier and customer lists subject to protective order); *Geophysical Sys. Corp. v. Raytheon Co. Inc.,* 117 F.R.D. 646, 649 (C.D.Cal. 1987) (ordering disclosure of defendant's customer lists subject to protective order); *Russ Stonier, Inc. v. Droz Wood Co.,* 52 F.R.D. 232, 234 (E.D. Pa. 1971) (ordering disclosure of defendant's manufacturers, dealers and distributors to plaintiff subject to protective order); *Nutratech, Inc. v. Syntech Int'l, Inc.*, 242 F.R.D. 552 (C.D. Cal. 2007) (ordering disclosure of supplier and customer lists subject to protective order).

Here, Lifewatch has discharged its burden of showing that good cause exists for entry of a protective order that will shield Lifewatch's financial data and customer information.

## III.    CONCLUSION

For the reasons set forth herein, the FTC's motion to unseal should be denied and Lifewatch cross-motion for a protective order should be granted.

Respectfully submitted,

GREENSFELDER, HEMKER & GALE, P.C.

/s/          David B. Goodman

David B. Goodman #6201242 dbg@greensfelder.com
Thadford A. Felton #6224896 taf@greensfelder.com
Patrick J. Cotter #6202681 pcotter@greensfelder.com
Greensfelder, Hemker & Gale, P.C.
200 West Madison Street, Suite 2700
Chicago, Illinois  60606
Direct:  (312) 345-5006
Telephone:  (312) 419-9090
Facsimile:  (312) 419-1930
Attorneys for Lifewatch, Inc.

# EXHIBIT A

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| FEDERAL TRADE COMMISSION, and | |
| STATE OF FLORIDA, OFFICE OF THE ATTORNEY GENERAL, DEPARTMENT OF LEGAL AFFAIRS | Case No. 15 CV 5781 |
| Plaintiff, | Judge Feinerman |
| v. | Magistrate Judge Gilbert |
| LIFEWATCH INC., a New York Corporation, also d/b/a LIFEWATCH USA and MEDICAL ALARM SYSTEMS, and | |
| EVAN SIRLIN, individually and as an officer or manager of LIFEWATCH, INC. | |
| Defendants. | |

[PROPOSED] Confidentiality Order

1.      Scope.   All materials produced in response to the Civil Investigative Demand or adduced in the course of discovery, including initial disclosures, responses to discovery requests, deposition testimony and exhibits, and information derived directly therefrom (collectively, the "documents"), shall be subject to this Order concerning Confidential Information as defined below. This Order is subject to the Local Rules of this District and the Federal Rules of Civil Procedure on matters of procedure and calculation of time periods.

2.      "Confidential Information" shall refer to information (regardless of how generated, stored or maintained) or tangible things that qualifies for protection under standards developed under F.R.Civ.P. 26(c) and that contains or constitutes the following:

         a)      business plans, strategic plans, and marketing strategies or plans;

1

b)    non-public market research, including market surveys and customer surveys;

c)    non-public financial and sales data, budgets and projections, and information relating to revenues, costs, profits, losses, cash flow, assets and liabilities, and reports containing such information;

d)    the financial terms of agreements other than sales to the general public;

e)    information required to be kept confidential pursuant to an agreement or understanding with nonparties;

f)    any commercially sensitive and/ or confidential business or financial information (including without limitation confidential nonpublic contracts, profitability reports or estimates, sales reports, and sales margins);

g)    vendor, supplier, independent contractor identities and terms and agreements;

h)    identifying customer information, including but not limited to name, address, telephone number, email address, financial data; and,

i)    trade secrets and any other category of material or information hereinafter given "Confidential" treatment by the Court.

3.    <u>Designation</u>.

(a)    A party may designate a document as Confidential Information for protection under this Order by placing or affixing the words "CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER" on the document and on all copies in a manner

2

that will not interfere with the legibility of the document. As used in this Order, "copies" includes electronic images, duplicates, extracts, summaries or descriptions that contain the Confidential Information. The marking "CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER shall be applied prior to or at the time the documents are produced or disclosed. Applying the marking "CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER" to a document does not mean that the document has any status or protection by statute or otherwise except to the extent and for the purposes of this Order. Any copies that are made of any documents marked "CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER" shall also be so marked, except that indices, electronic databases or lists of documents that do not contain substantial portions or images of the text of marked documents and do not otherwise disclose the substance of the Confidential Information are not required to be marked.

(b)     The designation of a document is a certification by an attorney or a party appearing pro se that the document contains Confidential Information as defined in this order.

4.     Depositions.     Deposition testimony is protected by this Order only if designated as "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" on the record at the time the testimony is taken. Such designation shall be specific as to the portions that contain Confidential Information. Deposition testimony so designated shall be treated as Confidential Information protected by this Order until fourteen days after delivery of the transcript by the court reporter to any party or the witness. Within fourteen days after delivery of the transcript, a designating party may serve a Notice of Designation to all

3

parties of record identifying the specific portions of the transcript that are designated Confidential Information, and thereafter those portions identified in the Notice of Designation shall be protected under the terms of this Order. The failure to serve a timely Notice of Designation waives any designation of deposition testimony as Confidential Information that was made on the record of the deposition, unless otherwise ordered by the Court.

     5.     <u>Protection of Confidential Material</u>.

     (a)     General Protections. Confidential Information shall not be used or disclosed by the parties, counsel for the parties or any other persons identified in subparagraph (b) for any purpose whatsoever other than in this litigation, including any appeal thereof.

     (b)     Limited Third-Party Disclosures. The parties and counsel for the parties shall not disclose or permit the disclosure of any Confidential Information to any third person or entity except as set forth in subparagraphs (1)-(9). Subject to these requirements, the following categories of persons may be allowed to review "Confidential Information":

     (1)     Counsel. Counsel for the parties and employees of counsel who have responsibility for the action;

     (2)     Parties. Individual parties and employees of a party but only to the extent counsel determines in good faith that the employee's assistance is reasonably necessary to the conduct of the litigation in which the information is disclosed;

     (3)     The Court and its personnel;

     (4)     Court Reporters and Recorders. Court reporters and recorders engaged for depositions;

4

(5) Contractors. Those persons specifically engaged for the limited purpose of making copies of documents or organizing or processing documents, including outside vendors hired to process electronically stored documents;

(6) Consultants and Experts. Consultants, investigators, or experts employed by the parties or counsel for the parties to assist in the preparation and trial of this action but only after such persons have completed the certification contained in Attachment A, Acknowledgment of Understanding and Agreement to Be Bound;

(7) Witnesses at depositions. During their depositions, witnesses in this action to whom disclosure is reasonably necessary. Witnesses shall not retain a copy of documents containing Confidential Information, except witnesses may receive a copy of all exhibits marked at their depositions in connection with review of the transcripts. Pages of transcribed deposition testimony or exhibits
to depositions that are designated as Confidential Information pursuant to the process set out in this Order must be separately bound by the court reporter and may not be disclosed to anyone except as permitted under this Order.

(8) Author or recipient. The author or recipient of the document (not including a person who received the document in the course of litigation); and

(9) Others by Consent. Other persons only by written consent of the producing party or upon order of the Court and on such conditions as may be agreed or ordered.

(c) Control of Documents. Counsel for the parties shall make reasonable efforts to prevent unauthorized or inadvertent disclosure of "Confidential Information" Counsel shall maintain the originals of the forms signed by persons acknowledging their obligations under this Order for a period of three years after the termination of the case.

6. <u>Inadvertent Failure to Designate</u>. An inadvertent failure to designate a document as "Confidential Information" does not, standing alone, waive the right to so designate the document; provided, however, that a failure to serve a timely Notice of

5

Designation of deposition testimony as required by this Order, even if inadvertent, waives any protection for deposition testimony. If a party designates a document as "Confidential Information" after it was initially produced, the receiving party, on notification of the designation, must make a reasonable effort to assure that the document is treated in accordance with the provisions of this Order. No party shall be found to have violated this Order for failing to maintain the confidentiality of material during a time when that material has not been designated "Confidential Information", even where the failure to so designate was inadvertent and where the material is subsequently designated "Confidential Information".

7.    Filing of Confidential Information.    This Order does not, by itself, authorize the filing of any document under seal. Any party wishing to file a document designated as Confidential Information in connection with a motion, brief or other submission to the Court must comply with LR 26.2.

8.    No Greater Protection of Specific Documents. Except on privilege grounds not addressed by this Order, no party may withhold information from discovery on the ground that it requires protection greater than that afforded by this Order unless the party moves for an order providing such special protection. The parties agree that a designation of information as Confidential is not intended to be and shall not be construed as an admission that the Confidential Information is relevant or is reasonably calculated to lead to the discovery of admissible evidence or is not subject to an applicable privilege or protection.

9.    Challenges by a Party to Designation as Confidential Information. The designation of any material or document as Confidential Information is subject to challenge by any party. The following procedure shall apply to any such challenge.

6

(a)  Meet and Confer.  A party challenging the designation of Confidential Information must do so in good faith and must begin the process by conferring directly with counsel for the designating party.  In conferring, the challenging party must explain the basis for its belief that the confidentiality designation was not proper and must give the designating party an opportunity to review the designated material, to reconsider the designation, and, if no change in designation is offered, to explain the basis for the designation.  The designating party must respond to the challenge within five (5) business days.

(b)  Judicial Intervention.  A party that elects to challenge a confidentiality designation may file and serve a motion that identifies the challenged material and sets forth in detail the basis for the challenge.  Each such motion must be accompanied by a competent declaration that affirms that the movant has complied with the meet and confer requirements of this procedure.  The burden of persuasion in any such challenge proceeding shall be on the designating party.  Until the Court rules on the challenge, all parties shall continue to treat the materials as Confidential Information under the terms of this Order.

10.  Action by the Court.  Applications to the Court for an order relating to materials or documents designated Confidential Information shall be by motion. Nothing in this Order or any action or agreement of a party under this Order limits the Court's power to make orders concerning the disclosure of documents produced in discovery or at trial.

11.  Use of Confidential Documents or Information at Trial.  Nothing in this Order shall be construed to affect the use of any document, material, or information at any trial

7

or hearing. A party that intends to present or that anticipates that another party may present Confidential information at a hearing or trial shall bring that issue to the Court's and parties' attention by motion or in a pretrial memorandum without disclosing the Confidential. The Court may thereafter make such orders as are necessary to govern the use of such documents or information at trial.

12. Confidential Information Subpoenaed or Ordered Produced in Other Litigation.

(a) If a receiving party is served with a subpoena or an order issued in other litigation that would compel disclosure of any material or document designated in this action as Confidential Information the receiving party must so notify the designating party, in writing, immediately and in no event more than three court days after receiving the subpoena or order. Such notification must include a copy of the subpoena or court order.

(b) The receiving party also must immediately inform in writing the party who caused the subpoena or order to issue in the other litigation that some or all of the material covered by the subpoena or order is the subject of this Order. In addition, the receiving party must deliver a copy of this Order promptly to the party in the other action that caused the subpoena to issue.

(c) The purpose of imposing these duties is to alert the interested persons to the existence of this Order and to afford the designating party in this case an opportunity to try to protect its Confidential Information in the court from which the subpoena or order issued. The designating party shall bear the burden and the expense of seeking

8

protection in that court of its Confidential Information, and nothing in these provisions should be construed as authorizing or encouraging a receiving party in this action to disobey a lawful directive from another court. The obligations set forth in this paragraph remain in effect while the party has in its possession, custody or control Confidential Information by the other party to this case.

13. <u>Challenges by Members of the Public to Sealing Orders</u>. A party or interested member of the public has a right to challenge the sealing of particular documents that have been filed under seal, and the party asserting confidentiality will have the burden of demonstrating the propriety of filing under seal.

14. <u>Obligations on Conclusion of Litigation</u>.

(a) Order Continues in Force. Unless otherwise agreed or ordered, this Order shall remain in force after dismissal or entry of final judgment not subject to further appeal.

(b) Obligations at Conclusion of Litigation. Within sixty-three days after dismissal or entry of final judgment not subject to further appeal, all Confidential Information and documents marked "CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER" under this Order, including copies as defined in ¶ 3(a), shall be returned to the producing party unless: (1) the document has been offered into evidence or filed without restriction as to disclosure; (2) the parties agree to destruction to the extent practicable in lieu of return; or (3) as to documents bearing the notations, summations, or other mental impressions of the receiving party, that party elects to destroy the documents and certifies to the producing party that it has done so.

(c)     Retention of Work Product and one set of Filed Documents. Notwithstanding the above requirements to return or destroy documents, counsel may retain (1) attorney work product, including an index that refers or relates to designated Confidential Information so long as that work product does not duplicate verbatim substantial portions of Confidential Information, and (2) one complete set of all documents filed with the Court including those filed under seal.   Any retained Confidential Information shall continue to be protected under this Order.   An attorney may use his or her work product in subsequent litigation, provided that its use does not disclose or use Confidential Information.

(d)     Deletion of Documents filed under Seal from Electronic Case Filing (ECF) System.   Filings under seal shall be deleted from the ECF system only upon order of the Court.

15.     Order Subject to Modification. This Order shall be subject to modification by the Court on its own initiative or on motion of a party or any other person with standing concerning the subject matter.

16.     No Prior Judicial Determination. This Order is entered based on the representations and agreements of the parties and for the purpose of facilitating discovery. Nothing herein shall be construed or presented as a judicial determination that any document or material designated Confidential Information by counsel or the parties is entitled to protection under Rule 26(c) of the Federal Rules of Civil Procedure or otherwise until such time as the Court may rule on a specific document or issue.

10

17.     Persons Bound.   This Order shall take effect when entered and shall be binding upon all counsel of record and their law firms, the parties, and persons made subject to this Order by its terms.

So Ordered.


Dated:                                    _____
                                          U.S. District Judge

ATTACHMENT
A

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF
ILLINOIS

| | | |
|---|---|---|
| FEDERAL TRADE COMMISSION, and | ) | |
| | ) | |
| STATE OF FLORIDA, OFFICE OF THE | ) | |
| ATTORNEY GENERAL, DEPARTMENT | ) | Case No. 15 CV 5781 |
| OF LEGAL AFFAIRS | ) | |
| | ) | |
| Plaintiff, | ) | Judge Feinerman |
| | ) | |
| v. | ) | |
| | ) | Magistrate Judge Gilbert |
| LIFEWATCH INC., a New York Corporation, | ) | |
| also d/b/a LIFEWATCH USA and MEDICAL | ) | |
| ALARM SYSTEMS, and | ) | |
| | ) | |
| EVAN SIRLIN, individually and as an officer | ) | |
| or manager of LIFEWATCH, INC. | ) | |
| | ) | |
| Defendants. | ) | |

ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND

The undersigned hereby acknowledges that he/she has read the Confidentiality Order

dated _____ in the above-captioned action and attached hereto,

understands the terms thereof, and agrees to be bound by its terms. The undersigned submits to

the jurisdiction of the United States District Court for the Northern District of Illinois in

matters relating to the Confidentiality Order and understands that the terms of the

Confidentiality Order obligate him/her to use materials designated as Confidential Information

in accordance with the Order solely for the purposes of the above-captioned action, and not to

disclose any such Confidential Information to any other person, firm or concern.

_____

# EXHIBIT B

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION, and | Case No.: 15-cv-5781 |
| STATE OF FLORIDA, OFFICE OF THE ATTORNEY GENERAL, DEPARTMENT OF LEGAL AFFAIRS | DECLARATION OF PAULE OLIVERI |
| Plaintiff, | |
| v. | |
| LIFEWATCH INC., a New York Corporation, also d/b/a LIFEWATCH USA and MEDICAL ALARM SYSTEMS, and | |
| EVAN SIRLIN, individually and as an officer or manager of LIFEWATCH, INC. | |
| Defendants. | |

I, Paule Oliveri, of full age, declare as follows:

1. I am Lifewatch, Inc.'s Chief Financial Officer. I have personal knowledge of the facts set forth herein, which are known to me to be true and correct.

2. In my capacity as Chief Financial Officer, I am responsible for, among other things, finance activities, including financial planning and forecasting, accounting, cash management, tax planning and compliance. I am thus intimately familiar with the types and nature of financial data generated by Lifewatch, how the data are used within Lifewatch, and how they could be used by Lifewatch's competitors if publically disclosed. Given my role within the organization, I am also intimately familiar with how Lifewatch safeguards its financial data and customer information.

3. I make these statements in opposition to the FTC's motion to unseal financial data, and in support of Lifewatch's motion for entry of a protective order.

**Financial Data**

4. Lifewatch considers the financial data provided to the FTC in response to the Civil Investigative demand – including Lifewatch's profit and loss statements – to be highly confidential.

5. Lifewatch does not publically share this financial information, and this information is not publically known.

6. This financial information is not disseminated within the company, and Lifewatch takes a number of steps to ensure that this information is available only to a core group of high-level Lifewatch employees on a restricted, need-to-know basis.

7. Unsealing the financial disclosures is the only conceivable way that Lifewatch's competitors could acquire or ascertain the specific information within the financial disclosures.

8. The financial data include, without limitation, detailed and itemized information about the following highly sensitive financial information:

   a. Assets;
   b. Liabilities and Equity;
   c. Income and Expense;
   d. Profit;
   e. Cost of Goods Sold
   f. Lifewatch's banking account numbers, locations, and amounts within each account;
   g. The identity and amounts paid to Lifewatch's vendors, including monitoring companies;
   h. An itemization (including company identities, publication names, and amounts paid) of Lifewatch's overall marketing;

9. Disclosure of this data would cause Lifewatch significant competitive harm and would damage Lifewatch's market position within the personal emergency response system industry.

10. If this information is made publically available, Lifewatch's competitors will have inside information relative to, among other things, Lifewatch's economic vulnerabilities, marketing strategies, vendor identities, and vendor payment terms.

11. Disclosure would allow Lifewatch's competitors (including but not limited to Connect America, Life Alert, and Philips Lifeline) to undercut Lifewatch. By giving competitors unique insight into Lifewatch's business practices and economic strengths and vulnerabilities, competitors can easily calibrate their own business and marketing practices to gain an unfair competitive advantage over Lifewatch. This may result in a diminished market presence for Lifewatch.

12. If this information is made publically available, Lifewatch's vendors, suppliers, and business partners would gain unfair leverage in future pricing and supply agreement negotiations.

13. Unless Lifewatch's financial disclosures remain under seal, Lifewatch will be competitively harmed.

**Customer Information**

14. Lifewatch's customers are the lifeblood of the organization.

15. Lifewatch does not publically share its customer information, and this information is not publically known.

16. Lifewatch's existence depends largely on its proprietary and highly valuable customer database.

17. This database, developed over many years through the expenditure of countless man hours and significant resources is encrypted and password protected.

18. Only a core group of high-level Lifewatch employees has full – versus restricted – access to the database.

19. Lifewatch only enables those core employees the ability to export data from the database. Lifewatch takes these measures to guard against its employees improperly competing with Lifewatch or providing customer information to Lifewatch's competitors.

20. Further, Lifewatch's customers have a reasonable expectation that Lifewatch will protect their privacy interests. Lifewatch cares greatly about its customers' privacy and has implemented the above-referenced safeguards to ensure that its customers' information is protected.

21. If Lifewatch's customer lists were made available to Lifewatch's competitors, then Lifewatch would suffer great financial harm and would likely be put out of business.

22. This is because Lifewatch's competitors would contact Lifewatch's customers and attempt to undercut Lifewatch and otherwise steal Lifewatch's customers.

Dated:

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

_Paule Oliveri_

Paule Oliveri