**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

_____

| | |
|---|---|
| FEDERAL TRADE COMMISSION, and | ) |
| | ) |
| STATE OF FLORIDA, OFFICE OF THE | ) |
| ATTORNEY GENERAL, DEPARTMENT | ) |
| OF LEGAL AFFAIRS, | ) |
| | ) Case No. 15cv5781 |
| Plaintiffs, | ) Judge Feinerman |
| | ) Magistrate Judge Gilbert |
| v. | ) |
| | ) |
| LIFEWATCH INC., a New York corporation, | ) |
| also d/b/a LIFEWATCH USA and MEDICAL | ) |
| ALARM SYSTEMS, and | ) |
| | ) |
| EVAN SIRLIN, individually and as an officer | ) |
| or manager of Lifewatch Inc., | ) |
| | ) |
| Defendants. | ) |

_____)

## JOINT OCTOBER 14, 2015 REPORT ON DEFENDANTS' PROPOSED DEPONENTS

Plaintiffs, Federal Trade Commission and State of Florida, Office of the Attorney General, Department of Legal Affairs, and Defendants Lifewatch, Inc., a New York corporation, and Evan Sirlin, individually and as an officer or manager of Lifewatch, Inc., submit the following Joint Report on Defendants' Proposed Deponents pursuant to this Court's October 8, 2015 order (Doc. 75).

Defendants have identified eighteen individuals who they anticipate deposing based on the declarations submitted by Plaintiffs in support of Plaintiffs' Motion for Preliminary Injunction. Plaintiffs do not object to the depositions of three of these individuals, Michael Hilgar, Joseph Settecase, or Cathy Ann Amberson, on the condition that Plaintiffs are given sufficient time during each deposition to conduct adequate cross-examination of the witness.

1

Plaintiffs object to the depositions of the remaining fifteen individuals Defendants have identified. As requested by the Court, below are the parties' positions on each of these individuals.

**Plaintiffs' General Position:**

Defendants have not established the requisite "good cause" needed to justify as part of expedited discovery the excessive number of depositions they now seek. *See Hard Drive Prods., Inc. v. Doe*, 283 F.R.D. 409, 410 (N.D. Ill. 2012) (a party must establish "good cause" to justify a request for expedited discovery); *Ibarra v. City of Chicago*, 816 F. Supp. 2d, 541, 554 (N.D. Ill. 2011); *see also Merrill Lynch, Pierce, Fenner & Smith, Inc. v. O'Connor*, 194 F.R.D. 618, 623 (N.D. Ill. 2000) ("[C]ourts should not grant such leave without some showing of the necessity for the expedited discovery."). In fact, in asking for eighteen expedited depositions – far more than the number allowed under Federal Rule of Civil Procedure 30 for the entire case – they even admit as much, telling the court they want to depose the individuals "to see what they have to say about Lifewatch, the allegations against it, the basis for what they say in their declarations, and the foundation for the thousands of pages of materials submitted to this Court." (Doc. 73 at 4.) In that the basis for what declarants say and the foundation are all clearly articulated either in the declarations themselves or in the documents Plaintiffs have already produced to Defendants, the only remaining motive for taking these depositions is simply to seek general testimony relating to Lifewatch's activities. While such broad-based inquiries may justify a deposition during general merits discovery pursuant to Federal Rule of Civil Procedure 26(b), it is not a sufficient reason to delay the preliminary injunction hearing, especially in light of the fact that the illegal practices are ongoing.

Furthermore, the individuals Defendants seek to depose simply do not merit delaying a

preliminary injunction hearing. Most of these people do nothing more than provide foundation for the documents attached to their declarations, while others offer testimony that Defendants have been aware of – and had the opportunity to examine – for over a year. Defendants also have personal knowledge about much of the evidence they are now seeking to "test." While Defendants have every reason to delay a preliminary injunction hearing as long as possible in order to continue profiting off the illegal telemarketing, Plaintiffs ask this Court to limit the depositions to the three individuals to which the parties have already stipulated – the only three declarants Defendants propose to depose whose testimony Defendants can fairly claim is new to them and who offer any evidence beyond the documents attached to their declarations.

**Defendants' General Position:**

Pursuant to this Court's direction, Defendants advised Plaintiffs of their intent to depose the 18 individuals identified below in order to prepare Defendants' substantive response to Plaintiffs' Motion For Preliminary Injunction ("Motion"). Plaintiffs submitted the declarations of 88 people, including investigators, competitors, consumers and telemarketers, as the underpinning of the factual basis for the relief sought by Plaintiffs in their Motion. Defendants advised Plaintiffs that Defendants intend to depose a cross-section of 18 of these 88 people who provided the factual predicates on which Plaintiffs' Motion rests, through statements incorporated in the declarations, documents submitted through those witnesses, or through a combination of both.

Much of the evidence submitted by Plaintiffs in support of their Motion appears to be tied in some manner to telemarketing activities undertaken by third-party telemarketers that were the subject of litigation between Plaintiffs and the telemarketers in *FTC v. Worldwide Info Services, Inc.*, No. 6:14-cv-8-ORL-28-DAB (M.D. Fla. Filed Jan. 6, 2014)(the "Worldwide Litigation").

Defendants were not parties to that case and the operations of the telemarketing operations that were the subject of that case were terminated in 2012. Based on the declarations and documents that Plaintiffs have submitted in support of their Motion, it appears that the relief sought by the Plaintiffs through their Motion rests on the conduct of the third parties that occurred prior to 2013 and that was the focus of the Worldwide Litigation.

The depositions that Defendants intend to take are tied to the materials submitted by Plaintiffs purporting to document the factual basis for the relief sought in their Motion. The scope of oral discovery required by Defendants to meet Plaintiffs' submissions is driven by the evidence that the Plaintiffs have submitted in support of their Motion. Plaintiffs have declined to withdraw any of the declarations or other materials that they submitted to this Court as the factual support for their Motion, but if Plaintiffs were to withdraw any of the declarations and/or documents, such an action would presumably narrow discovery and Defendants would reconsider the scope that depositions that it needs to respond to Plaintiffs' Motion.

One way that the oral discovery could be narrowed would be for Plaintiffs to withdraw the evidence submitted by them that is tied to conduct prior to 2013. For example, much of the evidence submitted by Plaintiffs is tied to conduct that was at issue in the Worldwide Litigation. To the extent that the relief sought by Plaintiffs rests on conduct addressed in the Worldwide Litigation, Defendants seek to take depositions of the people tied to that past conduct to demonstrate that the past conduct does not provide a basis for relief against Defendants on a going forward basis.

Defendants also anticipate that the depositions will provide evidence showing the unreliability of the assertions incorporated in Plaintiffs' submissions. For example, Plaintiffs purport to tie Lifewatch to telemarketing activities through materials that Plaintiffs acquired in

the course of investigations of certain third-party telemarketers. Defendants expect that the depositions will demonstrate that the assumptions through which Plaintiffs purport to tie Lifewatch to these telemarketers are flawed and unreliable. Defendants also anticipate that the depositions will demonstrate that assumptions on which Plaintiffs' claims are predicated are inaccurate, rest on exaggerations or mischaracterizations or were the result of improper entrapment. Finally, Defendants expect that the depositions will generate evidence that will show that the evidence submitted by Plaintiffs does not support the relief sought by Plaintiffs.

**1.      Roberto C. Menjivar (PX 1 and PX 85)**

**Plaintiffs' Position:**

Mr. Menjivar is an investigator at the FTC and serves as a custodian of records for the FTC. (Doc. 14-1 at 2). His two declarations attach documents that Plaintiffs rely upon in support of their Motion for Preliminary Injunction and, where necessary, provide limited foundation for those documents.[1] Mr. Menjivar's first declaration also describes searches he conducted in the FTC's Consumer Sentinel database, and the results of those searches. *Id.* at 18-20.

With the exception of the Consumer Sentinel searches, Mr. Menjivar's declarations do nothing more than authenticate documents received from third parties. If Defendants want to

---

[1] Specifically, Mr. Menjivar's initial declaration (PX 1) attaches: (1) documents FTC and Florida Attorney General staff found on-site at the business premises of one of Defendants' telemarketing operations, Worldwide Info Services (*id.* at 3-5, Atts. A-C); (2) documents the FTC received in response to two subpoenas it issued in connection with the FTC and Florida Attorney General's action against the Worldwide Info Services telemarketing operation (*id.* at 5-8, Atts. D-H); (3) documents the FTC received from Defendant Lifewatch in response to a Civil Investigative Demand (*id.* at 8-11, Atts. I-V); (4) transcripts of recorded telephone calls that certain consumers provided to the FTC (*id.* at 11-16, Atts. W-CCC); (5) documents voluntarily provided to the FTC by VRI, Inc., a home medical monitoring solutions company that has worked with Lifewatch since 2008 (*id.* at 16-17, Att. DDD); (6) correspondence between attorneys for Lifewatch and Life Alert Emergency Response, Inc. ("Life Alert"), a competing medical alert device company, and documents attached to and discussed in the correspondence (*id.* at 17, Atts EEE-HHH); and (7) portions of Defendant Lifewatch's website, Lifewatch-USA.com. *Id.* at 17-18, Atts. III-JJJ. Mr. Menjivar's second declaration (PX 85) attaches documents the FTC received from Grasshopper Group, LLC, pursuant to a Civil Investigative Demand and voluntarily. (Doc. 52-2 at 3-5, Att. A.)

challenge the authenticity of the documents, or inquire as to information within them, Mr.
Menjivar will not be able to answer their questions. They will need to go to the people who
created the documents – most often Defendants themselves or their business partners. Even in
those instances where the documents are not Defendants' own documents, Defendants already
have many of the documents attached to his declaration (*e.g.*, the VRI documents, which were
previously provided to Defendants in response to a subpoena in another lawsuit, and the
correspondence including Defendants' counsel), and know more about the documents than Mr.
Menjivar. As for the documents that came from the Worldwide business premises, beyond
describing the procedures for collecting the documents attached to his declaration, he cannot
provide details about the information located on-site, or even how the documents attached to his
declaration were selected. Nothing in his declaration suggests that he has any level of familiarity
with documents not attached to his declaration. Given Defendants' broad interpretation of what
is discoverable at this stage in the litigation, any deposition of Mr. Menjivar is likely quickly to
delve into areas where privileges apply, resulting in yet another discovery sideshow and further
delay. And, while Mr. Menjivar's declaration already details his searches on Consumer Sentinel,
Plaintiffs already provided Defendants with all of the details surrounding those searches.
Defendants' additional questions relate to the technical details about how Consumer Sentinel
works, on which Mr. Menjivar cannot likely shed any light. In any event, Plaintiffs have already
agreed to provide the additional information in response to Defendants' written questions.

**Defendants' Position:**

Mr. Menjivar is employed by the FTC as an investigator in its Chicago, Illinois office.
His declaration indicates that he is employed by the FTC to interview people in connection with
its investigations; to gather and review documents; financial records and other evidence obtained

by the FTC in connection with FTC investigations; and to act as a custodian of records obtained during the course of the agency's investigations. Mr. Menjivar specifically states that he participated in the FTC's investigation of Defendants, and his declaration indicates that he is the custodian of certain documents and records related to that investigation. Based on the date of his declaration, Mr. Menjivar's declaration appears to have been prepared specifically for use in Plaintiffs' Motion.

Plaintiffs cite Mr. Menjivar's declaration at least thirty-eight (38) times in their Motion, and it appears that they rely on him for the introduction of the results of research he undertook concerning consumer complaints relating to Defendants and telemarketing, generally. It appears that Plaintiffs rely on Mr. Menjivar for the introduction of documents obtained in the Worldwide Litigation, documents obtained in response to third-party subpoenas, documents obtained from "consumers," and documents obtained from Lifewatch's competitors. And it appears that Plaintiffs rely on the documents that they seek to introduce through Mr. Menjivar to establish conduct that they attribute to Lifewatch. These documents include "scripts" that Lifewatch allegedly uses or provides to third-parties for use in communications with consumers.

Specifically, Mr. Menjivar's declaration discusses something known as the "Consumer Sentinel," a collaboration between governmental agencies and organizations relating to consumer complaints. His declaration addresses documents relating to the Consumer Sentinel database and his actions to cull information from that database and that he attributes to Lifewatch, as well as about other entities that telemarket products and services that compete with the products sold by Lifewatch. It appears from Plaintiffs' submissions that they rely on Mr. Menjivar's research as a basis of their claims about the volume, nature, and scope of complaints about Lifewatch. His deposition will address that research, the foundation for that research, and

7

the complaints attributed by him and Plaintiffs to Lifewatch as well as about the conclusions drawn from his research that are set out in Plaintiffs' Motion. It will also provide information about the reliability of the foundation of that information and provide information about telemarketing activities by and about Lifewatch's competitors.

Mr. Menjivar participated in fact gathering in connection with the Worldwide Litigation. Mr. Menjivar gathered various documents relating to telemarketing activities by certain third-parties following the entry of an *ex parte* restraining order in the Worldwide Litigation. Plaintiffs have offered documents that Mr. Menjivar says he collected or that were presented to him after a receiver took possession of sites at which the third-party telemarketers, who were the targets of the Worldwide Litigation, conducted their businesses.

Mr. Menjivar's declaration asserts that he obtained recordings of certain telemarketing calls made by third-parties as well as transcripts of such calls and verified the accuracy of the transcriptions of calls. In addition, Mr. Menjivar spoke with three of the other consumer Declarants (deLoca (PX 31), James (PX 41 and Mey (PX 50)) to obtain these transcripts.

Mr. Menjivar's declaration says that the FTC obtained documents relating to Lifewatch from VRI, Inc., an entity that provides home monitoring products and "solutions." His declaration says that the materials were provided to the FTC on a voluntary basis.

Mr. Menjivar's declaration says that the FTC obtained documents relating to Lifewatch from Life Alert, one of Lifewatch's competitors. According to Mr. Menjivar's declaration, the documents relate to litigation between Life Alert and Lifewatch. It is not clear how FTC obtained the documents or the nature and substance between FTC and Life Alert relating to these documents.

While Plaintiff's Motion rests on documents that Mr Menjivar and others gathered in

connection with the Worldwide Litigation, as well as documents for which he is identified as FTC's custodian, his declaration is not clear concerning the extent of his involvement in the gathering of the documents or the nature and extent of his communications with others about the documents. For example, in some instances, Mr. Menjivar may have communicated with the source of the documents or others about the documents. At a minimum, Mr. Menjivar's deposition will address the facts and circumstances under which Plaintiffs obtained the documents submitted through him as well as address his communications with third-parties concerning Lifewatch and its industry

In addition, with regard to this research, his declaration is not clear in terms of how he undertook the research he undertook, the reliability of the materials he considered, how he accounted for the unreliability of the underlying materials, or how he made the judgments that are then incorporated as "fact" in the Motion. Mr. Menjivar's deposition will also address the research that he undertook concerning complaints about telemarketers by or for products that Lifewatch and its competitors sell.

## 2.    Joseph F. Einikis III (PX 80)

**Plaintiffs' Position:**

Mr. Einikis is an investigator at the FTC and serves as a custodian of records for the FTC. (Doc. 26-16 at 2). His declaration attaches documents that were found at the business premises associated with a telemarketing operation that the FTC and Florida Attorney General's office sued in June 2015 in *FTC v. All Us Marketing LLC, et al.*, Case No. 6:15-cv-01016-JA-GJK (M.D. Fla., filed June 22, 2015) ("All Us Marketing Litigation"). *Id.* at 2-4, Atts. A-D. These documents included Senior Life Support telemarketing scripts, order forms, and sales

information.  *Id.* at 4, Atts. A, B, D.  Mr. Einikis's declaration also attaches emails that appear to be from an employee at Lifewatch, which were located at one of the telemarketing operation's offices.  (Doc. 26-16 at Att. C).

Like Mr. Menjivar, Mr. Einikis's testimony is limited to providing foundation for the documents attached to his declaration.  To the extent he was involved in searches of the telemarketing rooms, his declaration sufficiently lays out where the documents were found, and who (FTC and Florida Attorney General staff) found them.  Deposing Mr. Einikis will not shed any additional light on the searches themselves.  Furthermore, Plaintiffs only cite to Mr. Einikis's declaration *once* in their memorandum in support of their Motion for Preliminary Injunction, only to note that the attached documents were found on the premises of the telemarketers' operation.  (Doc. 10 at 25 n.63).  Defendants do not need to depose Mr. Einkis to confirm that the telemarketing operation did not work exclusively for Lifewatch because Plaintiffs do not make that allegation – like many of Lifewatch's telemarketers, they were involved in a variety of scams not involving medical alert devices.   As with Mr. Menjivar, any deposition of Mr. Einikis is likely quickly to delve into areas where privileges apply, resulting in further delay.  There is no justification for allowing an expedited deposition to proceed based on this minimal evidence.

**Defendants' Position:**

Mr. Einikis is employed by the FTC as an investigator in its Chicago, Illinois office. His declaration indicates that he is employed to monitor and investigate people and businesses suspected of engaging in unfair or deceptive practices in violation of the laws and rules over that the FTC enforces. He is also the custodian of the documents and records gathered by the FTC in the course of the investigations to which he is assigned.

Mr. Einikis' declaration indicates that he was involved in an investigation of illegal telemarketing including robocalling by various telemarketers in a matter known as *FTC v. All Us Marketing LLC, et al*, Case No. 6:15-cv-01016-JA-GJK (M.D. Fla., filed June 22, 2015)(the "All Us Marketing Litigation"). Plaintiffs have offered Mr. Einikis' declaration to suggest that evidence gathered in the course of this investigation links Lifewatch to the telemarketing conduct by the targets of the All Us Marketing Litigation. Mr. Einikis' declaration was drafted specifically to support Plaintiffs' Motion. His declaration suggests that he was directly involved in the investigation and monitoring that developed the factual basis for the All Us Marketing Litigation. His declaration states that he acquired personal knowledge about the information gathered in the investigation as well as concerning the materials that were gathered in the course of that investigation that he would prepared to testify about.

Plaintiffs purport to establish a link between telemarketing conducted under certain generic names, such as Senior Life Support, and Lifewatch through Mr. Einikis and the documents submitted through him. The evidence submitted through Mr. Einikis purports to suggest that sales under generic names on behalf of Lifewatch did not end with the Worldwide Litigation but are ongoing. Clearly, Plaintiffs would have this Court believe that the documents submitted through Mr. Einikis demonstrate the need for the injunctive relief sought by them. Defendants seek to depose Mr. Einikis to develop a record that will establish that the assumptions that Plaintiffs have drawn from the materials gathered in the course of the All Us Marketing Litigation and investigation are not well-founded and do not afford a factual basis for the injunctive relief sought by them.

Defendants would re-evaluate their position in the event that Plaintiffs withdrew the Einikis declaration and the documents submitted through him so that this evidence and

references to this evidence would not be in the record (including in the briefs submitted by them).

### 3.    Mirisasha Velez (PX 4)

**Plaintiffs' Position:**

Ms. Velez is a Senior Financial Investigator with the Florida Department of Agriculture and Consumer Services ("FDACS") and serves as a custodian of records for the FTC.  (Doc. 22-1 at 2).  In her declaration, Ms. Velez explains that businesses conducting telemarketing in Florida must be licensed as Commercial Telephone Sellers with the FDACS and describes the process for obtaining such a license.  *Id.* at 2-4.   Much of Ms. Velez's declaration is devoted to attaching and describing documents that Lifewatch and various telemarketers provided to the FDACS in applying for, or maintaining, their telemarketing licenses.  The FDACS is also authorized to conduct unannounced visits on telemarketers in Florida (*id.* at 4), and Ms. Velez's declaration includes information about such visits that the FDACS (not necessarily Ms. Velez herself) made to various telemarketing rooms, and attaches related documents.  Finally, Ms. Velez's declaration describes communications she had with a landlord who contacted the FDACS after becoming concerned that the telemarketing company leasing her office space was not complying with the law.  *Id.* at 19-20.

Deposing Ms. Velez would be fruitless, because her declaration is entirely transparent; her testimony does nothing but lay the foundation for the documents attached to her declaration. To the extent that her declaration suggests she had communications with the various telemarketers identified in her declaration, in most cases those communications are the documents themselves.  To the limited extent Ms. Velez's statement does not directly cite to

12

documents attached to her declaration, Plaintiffs have already produced the additional documents in response to Defendants' discovery requests.

**Defendants' Position:**

Ms. Velez is a Senior Financial Investigator with the Florida Department of Agriculture and Consumer Services ("FDACS"). Her declaration indicates that she is responsible for investigating matters under the FDACS's Division of Consumer Services and is the custodian of records for the FDACS. Telemarketing falls within that division. And her declaration addresses communications between FDACS's Division of Consumer Services with Lifewatch about telemarketing undertaken by it or on its behalf. Her declaration addresses materials exchanged in the course of those communications.

Ms. Velez' declaration was drafted specifically for the purposes of this litigation and, presumably, for inclusion in the Motion. It addresses various investigations that have been undertaken by FDACS's Division of Consumer Services into illegal telemarketing activities in Florida and identifies documents gathered in the course of those investigations. Plaintiffs rely upon Ms. Velez' investigations of these telemarketing activities as well as the documents gathered in the course of these investigations as providing factual support for the injunctive relief sought in their Motion For Preliminary Injunction.

Through Ms. Velez' declaration, as well as through the hundreds of pages of documents appended to Ms. Velez' declaration, Plaintiffs purport to establish links between Lifewatch and various telemarketers. Ms. Velez would be deposed, among other things, to develop evidence that demonstrates that the assumptions Plaintiffs ask this Court to draw in support of their Motion are untrue. To do that, Defendants anticipate questioning Ms. Velez on her investigations and the fact-gathering undertaken in those investigations.

13

But Ms. Velez' declaration suggests that her involvement is not just as a records custodian but also as an investigator. Her declaration includes conclusions drawn by her from the documents that she gathered that purport to link Lifewatch with telemarketers operating under various generic names. She will be questioned about those conclusions and the factual analysis on which those are based.

Ms. Velez' declaration addresses her oral communications with the landlord of a telemarketing operation that marketed products and services similar to those that are provided by Lifewatch. Plaintiffs' Motion relies heavily on statements incorporated in the declaration of Michael Hilgar (PX 14), and Ms. Velez' declaration indicates that she was directly involved in the investigation of Mr. Hilgar and his telemarketing businesses. Her declaration recounts the investigation and steps that were ultimately taken to shut down those telemarketing operations. Her declaration also addresses her communications with the employees of other telemarketing operations that Plaintiffs purport to link to Lifewatch. Defendants anticipate that her deposition will cover those communications and the basis of the conclusion that Lifewatch is linked to their conduct.

Her declaration also purports to link Lifewatch and Defendant Evan Sirlin to a telemarketer through papers filed by that telemarketer. The declaration indicates that the papers submitted by that telemarketer were later withdrawn presumably eliminating that link, yet discussion of this was included in Ms. Velez declaration. Her deposition would likely address this issue, including her investigation into the submission and recantation. The deposition will also likely cover her investigation of the various telemarketers identified in her declaration and the factual basis, if an, linking them to Lifewatch or Defendant Sirlin.

Defendants would re-evaluate their position in the event that Plaintiffs withdrew the

Velez declaration and the documents submitted through her so that this evidence and references to this evidence would not be in the record (including in the briefs submitted by them).

### 4.   Bill Smith (PX 6)

**Plaintiffs' Position:**

Mr. Smith is an investigator with the Better Business Bureau serving Eastern Missouri and Southern Illinois.  (Doc. 24-2 at 2).  His declaration describes his investigation of an illegal telemarketing operation selling medical alert devices.  Mr. Smith contacted Lifewatch after discovering that Lifewatch was the only medical alert company whose description matched the company described during the telemarketing call.  *Id.* at 4.  As described in his declaration and reflected in the email communications attached to it, Mr. Smith communicated with, among others, Defendant Sirlin.  *Id.* at 4-6, Atts. A-C.  Mr. Smith concludes in his declaration that he "did not feel that [he] had enough evidence to confirm that Lifewatch was the company responsible for the call."  *Id.* at 6.

It is unclear why Defendants feel it is necessary to depose Mr. Smith on an expedited basis prior to the Preliminary Injunction hearing.  Defendants seem to want him to concede that he could not confirm that Lifewatch was responsible for the illegal telemarketing, but his declaration already makes that concession.  Furthermore, all of his email communications with Sirlin and other Lifewatch employees are attached to his declaration.

**Defendants' Position:**

Mr. Smith is an investigator with the Better Business Bureau ("BBB") serving Eastern Missouri and Southern Illinois. His declaration discusses an investigation that he undertook to respond to consumer complaints concerning telemarketing activities that may have been linked

15

to Lifewatch. Mr. Smith's declaration indicates that as a consequence of his investigation, he was not able to link Lifewatch to the generic telemarketing that had precipitated his investigation.

Mr. Smith's declaration addresses his investigation including his discussions with people who had contacted BBB complaining of telemarketing of products of the type sold by Lifewatch. His deposition will cover the BBB investigatory process, generally, and address the various communications that led to the commencement of his investigation, his investigation, and the basis of the conclusions reached by him. . Additionally, since his declaration is from 2013, the deposition will address follow up since that date.


5.    **Susan Cuomo (PX 7)**

**Plaintiffs' Position:**

Ms. Cuomo is a Senior Manager in the Information and Investigations Department at the Better Business Bureau of Metropolitan New York, Long Island, and the Mid-Hudson Region. (Doc. 24-3 at 2).  Ms. Cuomo is also custodian of records for the BBB.  *Id.*  Ms. Cuomo's declaration describes the BBB's complaint process, states the number of complaints the BBB has received about Defendant Lifewatch, and attaches some of the Lifewatch complaints the BBB has received in 2015.  *Id.* at 2-3, Att. A.

Ms. Cuomo cannot offer any additional information beyond what is in her declaration. The BBB does not play an active role in mediating consumer complaints, and Ms. Cuomo does not have personal knowledge about Lifewatch or the complaints filed against the company. Furthermore, because the BBB forwards all complaints to the relevant company, all of the documents that Ms. Cuomo refers to are already in Lifewatch's possession and, as is apparent from the complaints attached to Ms. Cuomo's declaration, Lifewatch has already had an

opportunity to respond to them.

**Defendants' Position:**

Ms. Cuomo is a Senior Manager in the Investigations Department at the Better Business Bureau of Metropolitan New York ("BBB"). Her declaration was created specifically for this litigation and purports to quantify the number of "complaints" received by BBB about Lifewatch including in the current year. Plaintiffs seek to introduce information concerning consumer complaints about Lifewatch including communications from consumers, responses from Lifewatch, and the ultimate resolution of these inquiries through Ms. Cuomo. Plaintiffs have offered examples of the written communications from Ms. Cuomo in addition to the data included in her declaration.

Defendants anticipate that a deposition of Ms. Cuomo will address the process that BBB follows in investigations, generally, as well as in the present case involving Lifewatch. It will address Ms. Cuomo's communications with consumers as well as the nature of the consumer complaints that are referenced in her declaration and that are cited in Plaintiffs' Motion. The deposition will develop information that Defendants believe will demonstrate that the information that Plaintiffs have offered through her does not support the injunctive relief sought by them.

6.      **Lewis Kinard (PX 9)**

**Plaintiffs' Position**:

Defendants have not demonstrated "good cause" for deposing Kinard in advance of a preliminary injunction hearing.  Kinard is a Senior Attorney at the American Heart Association. (Doc. 24-5 at 2; PX 9 at 1.)  He testified, under the penalty of perjury, that the AHA does not

endorse products, including medical alert devices.  (*Id.*)  He also testified that AHA received

over 550 complaints or inquiries about robocalls for medical alert devices that claim to be

endorsed by the AHA.  (*Id.*)  So many, in fact, that the AHA placed a fraud warning on its

website warning consumers that the AHA does not endorse any medical alert systems.  (*Id.* at 3;

*id.* at 2.)

Defendants indicated during the meet and confer that the purpose of deposing Kinard is

to establish that the AHA was not able to connect the complaints the AHA received to Lifewatch

directly.  But Kinard already says this in his declaration in paragraph 4: "[T]he AHA has been

unable to identify the company responsible for these telemarketing calls."  (*Id.*)  Deposing him

certainly will not illuminate this issue further and it will only serve to delay the resolution of the

pending preliminary injunction motion.

Indeed, the focus on Kinard seems to be nothing but a distraction, considering that

Defendants have admitted that their product is not endorsed by the AHA.  (Doc. 60 at 8

("Defendants admit that the American Heart Association, the American Diabetes Association,

the National Institute on Aging, the AARP, the American Red Cross have not specifically

endorsed the 'Lifewatch medical alert system' . . . .")).  Defendants are free to argue that

Plaintiffs are wrong in connecting Lifewatch to the complaints that the AHA has received, but

further discovery of Kinard will not aid Defendants in making this argument, nor will it aid the

Court in the resolution of the preliminary injunction motion.

**Defendants' Position:** [2]

Mr. Kinard is an attorney employed by the American Heart Association ("AHA").

Plaintiffs have offered his declaration to support their assertion that Lifewatch has engaged in

---

[2] A more substantive explanation of the need for Mr. Kinard's deposition can be found in Defendants' Response to Plaintiff's Motion for a Protective Order.  (Doc. 76).

improper telemarketing including concerning the truth of the assertions allegedly made in the course of telemarketing communications. Defendants seek to depose Mr. Kinard to explore certain statements made in his declaration that they believe are false or misleading. Additionally, his declaration suggests that the AHA had received over 550 complaints in 2012 about the telemarketing referenced in his declaration. He will likely be asked about AHA's investigation into the complaints and the results of those investigations and why it is that AHA did not conclude that Lifewatch was responsible for the telemarketing that resulted in the complaints. Additionally, since his declaration is dated in 2013, he will likely be asked about complaints to the AHA since 2013. He will also likely be questioned about AHA's endorsement process and communications to the public about products and services.

**7.  Christopher Hendriksen (PX 12)**

**Plaintiffs' Position:**

Mr. Hendriksen is the Chief Executive Officer of VRI, Inc., a provider of in home medical monitoring solutions.  (Doc. 24-8 at 2.)  Mr. Hendriksen, in his declaration, describes his company's operations, and the services it provides.  *Id*. at 2-5.  Mr. Hendriksen states in his declaration that VRI has worked with Lifewatch since 2008 and, at the time the declaration was signed in May 2015, provided monitoring services for approximately 2000 Lifewatch customers. *Id*. at 5.

Plaintiffs cite to Mr. Hendriksen's declaration only once in their memorandum in support of their Motion for Preliminary Injunction.  In his declaration, he explains that VRI operates a monitoring center, at which representatives respond to users who push the button on their medical alert devices.  *Id*. at 3.  Plaintiffs cite to Mr. Hendriksen's declaration for the non-

controversial point that VRI is able to determine if a medical alert device that VRI is monitoring has been properly hooked up for use, and that they convey that information to the companies they work for. (Doc. 10 at 22 n.51.) There is no reason to depose Mr. Hendriksen over this point.

During Plaintiffs' investigation of Defendants, Mr. Hendriksen provided the FTC with certain VRI documents, some of which are attached to Mr. Menjivar's declaration. These documents, however, do not provide a basis for an expedited deposition of Mr. Hendriksen. First, Defendants already have long had these documents in their possession – in fact, they were all previously produced to Defendants by VRI in response to a subpoena that was issued in the previous *Life Alert* lawsuit. (Docs. 14-1 at 16-17; 21-1 at 74-103.) Furthermore, most of these documents are communications between VRI and Sirlin or other Lifewatch employees. (*See, e.g.,* Doc. 21-1 at 75-65, 79-86, 94-95 (emails on which Sirlin is included)). Defendants have no reason to need to "test" their own documents or communications to which they were a party.

**Defendants' Position:**

Mr. Hendriksen is the Chief Executive Officer of VRI, Inc. ("VRI"). His declaration asserts that VRI is one of the largest providers of in home medical monitoring services in the United States. He says that he is responsible for all operational aspects of VRI's business and has held his position since 2007. VRI is one of Lifewatch's competitors in addition to providing monitoring services to some of Lifewatch's customers.

Mr. Hendriksen's declaration makes reference to the fact that he has engaged in communications with various people affiliated with Lifewatch, including Defendant Sirlin, Mitchel May, who he identifies as Lifewatch's Chief Operating Officer, as well as Sarai Baker, who he identifies as Lifewatch's Chief Operating Officer. Although Mr. Hendriksen's

declaration says that he has engaged in communications with these people, he does not identify the nature of those communications including the circumstances in which those communications allegedly took place. Consequently, since this declaration was presumably drafted for the purposes of Plaintiffs' Motion, Defendants would likely question Mr. Hendriksen about the communications.

Mr. Hendriksen's declaration also describes his company's marketing model, cancellation rates, the autotest function and process through which VRI allegedly monitors whether devices sold to consumers are in operation, the cost of monitoring, and the cost of the devices. Presumably, this declaration, crafted for Plaintiffs' Motion, is offered as the basis of assumptions that Plaintiffs will ask the Court to draw based on insights into a competitor of Lifwatch. Mr. Hendriksen will likely be asked about the basis of his opinions and assumptions that can be drawn or cannot be drawn from his knowledge about VRI concerning its competitors like Lifewatch.


8.      **Kenneth Gross (PX 13)**

**Plaintiffs' Position:**

Mr. Gross is the Executive Chairman of Connect America.com, LLC, a medical alert monitoring company similar to Lifewatch, and the President of the Medical Alert Monitoring Association ("MAMA"). (Doc. 24-9 at 2, 6). He, individually, and Connect America, were both co-defendants in the *Life Alert* lawsuit, and Mr. Gross's declaration is nearly identical to a declaration he provided in that case in March 2014. Mr. Gross's declaration describes how, between approximately September 2012 and March 2013, Lifewatch obtained customers for Connect America through, among other methods, telemarketing. *Id.* at 2. Mr. Gross recounts

several conversations he had with Mr. Sirlin, in which Mr. Sirlin indicates that Lifewatch monitors and controls the telemarketing, and is aware that its telemarketers use robocalls. *Id.* at 3-7. Mr. Gross also attaches transcripts of two telemarketing calls between consumers and Lifewatch's telemarketers, and communications between Connect America and Lifewatch. *Id.* at Atts. A-D.

Defendants have been well aware of Mr. Gross's testimony for over a year, and have had ample opportunity to examine him. To claim now that they need to examine his claims on an expedited basis is nothing but a delay tactic. But, moreover, Mr. Gross and his company *worked directly with Lifewatch*. Defendants are already well aware of the foundation for Mr. Gross's testimony, and do not need to depose him in order to "test" it.

**Defendants' Position:**

Mr. Gross is the Executive Chairman of Connect America, LLC ("Connect America"). Connect America is a direct competitor of Lifewatch. It is unlikely that Defendants would have decided to depose Mr. Gross but for the fact his declaration has been submitted by Plaintiffs as a factual basis for the relief they seek against Lifewatch and Mr. Sirlin.

Mr. Gross' declaration addresses prior business dealings with Lifewatch, and it is anticipated that his deposition will delve into that relationship and the termination of that relationship. His declaration talks about the leads that Connect America purchased from Lifewatch and purports to distance itself from telemarketing. It is anticipated that his deposition will address Connect America's marketing in light of criticisms voiced by Mr. Gross. His declaration purports to summarize direct communications he allegedly had with Mr. Sirlin, and his deposition will likely address those communications.

Mr. Gross also references a robocall complaint that Connect America received from Life

Alert Emergency Response, another competitor. Mr. Gross says that Connect America determined that the robocall that was the subject of the complaint came from Lifewatch. He will likely be questioned about the investigation of that call.

Mr. Gross' declaration talks about the steps undertaken by Connect America to monitor the telemarketing that resulted in the generation of the leads it purchased from Lifewatch. He will likely be asked about that monitoring. Further, his declaration suggests that he had communications with the FTC about Lifewatch telemarketing. His deposition will likely address his communications with the FTC about Lifewatch, a direct competitor.

Mr. Gross' declaration purports to separate Connect America from the practices of which Plaintiffs' complain. However, Defendants anticipate that his deposition will demonstrate otherwise.

### 9.    Michael Hilgar (PX 14)

**Plaintiffs' Position:**

Plaintiffs have stipulated to a deposition of Michael Hilgar and, pursuant to the Court's order directing the parties to state their positions on the "fifteen disputed deponents," did not prepare a written position on the appropriateness of the deposition of this declarant.  Plaintiffs may revisit their stipulation, however, in light of Defendants' stated position on the "good cause" justifying the deposition.

**Defendants' Position:**

Mr. Hilgar's declaration was prepared specifically for this litigation. Mr. Hilgar was a defendant in an individual capacity in the Worldwide Litigation. He entered in a settlement with the plaintiffs in the Worldwide Litigation. The deposition will likely explore the terms and

conditions of that settlement and the connection between the settlement and the declaration that Plaintiffs extracted from Mr. Hilgar.

Mr. Hilgar gave a declaration in litigation between Lifewatch that he understood was to be used in connection with litigation brought by the State of Indiana. Mr. Hilgar was one of the target defendants in the Worldwide Litigation discussed above. For reasons that will be explored in his deposition, after communicating with Plaintiffs, Mr. Hilgar dramatically altered his position on significant facts that he asserted in his prior declaration concerning Lifewatch and its marketing and telemarketing. For example, Mr. Hilgar's new declaration states that Lifewatch oversaw and controlled the telemarketing undertaken by his companies. His prior declaration states the opposite.

Mr. Hilgar's declaration references communications with Defendant Sirlin about telemarketing. He will likely be questioned about those communications as well as about communications with Lifewatch, generally.

Mr. Hilgar's declaration addresses the source of scripts used by his company and attributes the scripts to either Lifewatch or to some other individual. It is anticipated that he will be questioned about the scripts that his companies used. He makes statements about how his companies undertook telemarketing for which Plaintiffs purport to hold Lifewatch accountable. He will likely be questioned on the operations of those businesses; the telemarketing in which they engaged; the services and products telemarketed by them; and will likely develop information that counters the factual assumptions Plaintiffs ask this Court to make about stale conduct, actions about which Mr. Hilgar's testimony has vacillated widely, as a basis for the injunctive relief sought in their Motion.

Plaintiffs do not oppose the Hilgar deposition. Defendants would re-evaluate their

position concerning their need to depose Mr. Hilgar in the event that Plaintiffs withdraw the Hilgar declaration and the documents submitted through him so that this evidence and references to this evidence would not be in the record (including in the briefs submitted by them).

**10.  Joseph Settecase (PX 15)**

**Plaintiffs' Position:**

Plaintiffs have stipulated to a deposition of Joseph Settecase and, pursuant to the Court's order directing the parties to state their positions on the "fifteen disputed deponents," did not prepare a written position on the appropriateness of the deposition of this declarant.  Plaintiffs may revisit their stipulation, however, in light of Defendants' stated position on the "good cause" justifying the deposition.

**Defendants' Position:**

Mr. Settecase's declaration was specifically prepared for this litigation. Mr. Settecase was a defendant in an individual capacity in the Worldwide Litigation. He was the principal in a company that provided IT support to various telemarketing firms including those implicated in the Worldwide Litigation. He entered in a settlement with the plaintiffs in the Worldwide Litigation. The deposition will likely explore the terms and conditions of that settlement and the connection between the settlement and the declaration that Plaintiffs extracted from Mr. Settecase.

Mr. Settecase's declaration provides a description of IT services that he and his company apparently provided to third-parties and about his interaction with third-parties. He does not attest to having had direct contact with Lifewatch. However, Mr. Settecase asserts that he believes that the IT services that he provided were tied to marketing specific to Lifewatch.

Consequently, the deposition will explore the basis, if any, for Mr. Settecase's allegations about Lifewatch. As is the case with the Hilgar declaration, Plaintiffs purport to use Mr. Settecase' declaration, concerning activities undertaken by him on behalf of entities other than Lifewatch more than two years ago to suggest that Lifewatch was involved in some manner in that conduct. And the deposition will explore the basis of those contentions.

The declaration suggests a connection between Mr. Settecase and other individuals and telemarketing firms that Mr. Settecase avers were tied to the telemarketing on which Plaintiffs' Motion is predicated. His deposition will explore the factual basis of Mr. Settecase' assertions, his bias and interest, and also explore the temporal period in which he engaged in the conduct described in his declaration and whether that conduct is ongoing.

Plaintiffs' Motion rests on a foundation predicated on statements made in the Settecase declaration. Defendants anticipate exploring that foundation and exposing flaws in the assumptions Plaintiffs ask this Court to make based on statements in Mr. Settecase' declaration. Plaintiffs have been able to obtain a declaration from Mr. Settecase, perhaps as a term of their settlement with him. To address and clarify the statements made in that declaration, Defendants will need to depose him

Plaintiffs do not oppose the Settecase deposition. Defendants would re-evaluate their position concerning their need to depose Mr. Settecase in the event that Plaintiffs withdraw the Settecase declaration and the documents submitted through him so that this evidence and references to this evidence would not be in the record (including in the briefs submitted by them).

11.      **Brick Kane (PX 16)**

**Plaintiffs' Position:**

Mr. Kane is the President and Chief Operating Officer of Robb Evans & Associates LLC, the Receiver appointed in *FTC v. Worldwide Info Servs. Inc.,* Civ. No. 6:14-cv-8-ORL-28DAB (M.D. Fla. Filed on Jan. 6, 2014). (Doc. 24-12 at 2). The defendants in the *Worldwide* matter ran an illegal telemarketing operation that sold medical alert devices. *Id.* at Att. A. Mr. Kane's declaration attaches the Report of the Receiver's Activities for January 9, 2014 through January 30, 2014 that was filed in the *Worldwide* matter. The report states that Lifewatch was "the medical device and alert response provider and is the entity that processes charges to consumers after the consumers are solicited by the receivership defendants." *Id.* at 10. Mr. Kane also states in his declaration that Lifewatch was the only medical alert provider to have paid the *Worldwide* defendants.

The Receiver's Report attached to Mr. Kane's declaration provides sufficient foundation for the information within it. Furthermore, Defendants have been aware of the Receiver's Report and in contact with the Receiver since before the report was even filed over a year ago. In fact, Lifewatch provided documents to the Receiver that the Receiver relied on in carrying out its duties in the *Worldwide* matter. If Lifewatch had any concerns about the information in the Receiver's Report, it has had more than sufficient time to raise those concerns with the Receiver or the Plaintiffs.

**Defendants' Position:**

Mr. Kane is the President and Chief Operating Officer of Robb, Evans & Associates, LLC and is the receiver in the Worldwide Litigation. Mr. Kane's declaration appears to have been created specifically for the present litigation and to provide a predicate for connecting the

defendants in the Worldwide Litigation, a matter that is predicated on conduct that ended more than two years ago, to Lifewatch. But Mr. Kane's declaration is offered by Plaintiffs to provide a foundation for facts alleged in their Motion including quantitative information. Defendants require the opportunity to depose Mr. Kane in order to evaluate and develop information to contest the factual predicates asserted by them in their Motion.

Plaintiffs offered Mr. Kane's declaration as an instrument through which to introduce documents that they contend connect Lifewatch to the telemarketing that was at issue in the Worldwide Litigation. Plaintiffs have purported to rest their claim to injunctive relief in their Motion on the activity that was addressed in the Worldwide Litigation and submitted into the record through Mr. Kane. Consequently, since Plaintiffs' Motion rests on statements in Mr. Kane's declaration and materials submitted through that declaration, Defendants intend to depose him so that they can evaluate the evidence, the foundation for the evidence, and the putative connection between the evidence and Lifewatch. Further, the intend to explore the temporal relevance to the evidence submitted through Mr. Kane and the injunctive relief sought by Plaintiffs that rests on what appears on its face to be stale evidence.

Defendants would re-evaluate their position concerning their need to depose Mr. Kane in the event that Plaintiffs withdraw the Kane declaration and the documents submitted through him so that this evidence and references to this evidence would not be in the record (including in the briefs submitted by them).

## 12.    Barry Gates (PX 35 and PX 71)

**Plaintiffs' Position:**

Mr. Gates is a consumer who works for Life Alert, a competitor of Lifewatch.  He is on

the National Do Not Call list, but received a telemarketing call selling a medical alert device in January 2013. (Docs. 25-3 at 2; 26-7 at 3). In order to learn who was behind the telemarketing call, he purchased the device. (Docs. 25-3 at 4; 26-7 at 3-4). In his two declarations, Mr. Gates describes the telemarketing call and what occurs subsequent to his purchase. His declarations also attach photographs of the device he received, the documentation that came with the device, and invoices that were sent to him. (Docs. 25-3 at Atts. A-J; 26-7 at Atts. A-K).

There is nothing in Mr. Gates's declarations to justify an expedited deposition. Mr. Gates submitted a declaration in the Life Alert case, so Defendants have been well aware of Mr. Gates's testimony for over a year and have had more than sufficient opportunity to "test" this evidence. Furthermore, while Defendants may hope to poke holes in Mr. Gates's testimony during a deposition, any weaknesses in his declarations are already apparent and available for Defendants to point out in argument. For instance, Mr. Gates makes no secret of the fact that he works for Life Alert, and even admits that part of his interest in ordering the device was because "I work for Life Alert, which is a company that offers the type of medical alert device being advertised through these telemarketing calls, and I have received several complaints from people who thought Life Alert was the company making these telemarketing calls." (Doc. 25-3 at 2). That Mr. Gates received a Connect America device also does not justify a deposition. The letter that came with his device is signed by both the President of Connect America *and* "Evan Sirlin, CEO, LifeWatch USA." (Doc. 26-7 at 4, Att. E). Plaintiffs have also submitted other evidence establishing that Lifewatch conducted telemarketing on behalf of Connect America during this time period. *See* Doc. 24-9 at 2 (PX 13, Gross Dec. ¶¶ 4-6).

**Defendants' Position:**

Mr. Gates is an employee of Life Alert, one of Lifewatch's direct competitors. Plaintiffs offer his declaration in an effort to establish Lifewatch's culpability for telemarketing that was at issue in litigation prosecuted by Life Alert against Lifewatch. Defendants seek to depose Mr. Gates to explore the basis for the claims asserted by him, his bias and interest, and the circumstances of the telemarketing calls that Plaintiffs would have this Court find were caused by Lifewatch. Defendants believe that the matters alleged in Mr. Gates' declaration are stale as his declaration is from 2013. Defendants anticipate that they would test, among other things, the temporal relevance of the matters averred in his declaration in the context of the Motion through which his declaration is offered in light of the passage of time.

Defendants would re-evaluate their position concerning their need to depose Mr. Gates in the event that Plaintiffs withdraw the Gates declaration and the documents submitted through him so that this evidence and references to this evidence would not be in the record (including in the briefs submitted by them).

**13.    Paul deLoca (PX 31 and PX 82)**

**Plaintiffs' Position:**

Mr. deLoca is a consumer whose telephone number is on the National Do Not Call List. (Doc. 24-27 at 2). He has received several telemarketing robocalls that could ultimately be tied to Defendant Lifewatch. (*Id.* at 3-5.) Mr. deLoca recorded his telephone conversations with the telemarketers and Lifewatch representatives, and transcripts of several of these calls are attached to Mr. Menjivar's declaration (PX 1) as Attachments W through Z. (Docs. 14-1 at 12; 16-2 at 21-45; 17-1 at 1-72). Mr. deLoca continued receiving medical alert device telemarketing calls,

and eventually provided Plaintiffs with a second declaration, with additional attached transcripts of telemarketing calls that can also be tied to Defendant Lifewatch. (Doc. 51-2 at 2-10).

Beyond establishing that he is on the National Do Not Call List, Mr. deLoca's declarations do nothing but lay the foundation for the transcripts attached to both Mr. Menjivar's and his own declarations. The transcripts themselves, and not his declarations, detail what occurred during the calls. Defendants have been given the recordings for each of the calls described in Mr. deLoca's declaration. Unless Defendants challenge the authenticity of the recordings, there is simply no reason for Mr. deLoca to be deposed.

**Defendants' Position:**

Mr. deLoca is identified by Plaintiffs as a consumer who received telemarketing calls that Plaintiffs purport to attribute to Lifewatch. Defendants seek to depose Mr. deLoca to develop evidence that challenges the putative connection between Lifewatch and the calls of which Plaintiffs complain. Based on the date of the declaration, it appears that Mr. DeLoca gave his declaration to Plaintiffs for this litigation. Plaintiffs have submitted it as evidence on which they rely for the injunctive relief sought in their Motion as well as in their Reply. Defendants anticipate exploring the circumstances of the calls that Mr. deLoca attributes to Lifewatch and his communications concerning Lifewatch. Defendants anticipate exploring the circumstances in which Plaintiffs obtained Mr. deLoca's declaration as well as his bias.

Defendants would re-evaluate their position concerning their need to depose Mr. deLoca in the event that Plaintiffs withdraw the deLoca declaration and the documents submitted through him so that this evidence and references to this evidence would not be in the record (including in the briefs submitted by them).

14.     **William James (PX 41)**

**Plaintiffs' Position:**

Like Mr. deLoca, Mr. James is a consumer whose telephone number is on the National Do Not Call List.  (Doc. 25-9 at 2).  Mr. James received several telemarketing robocalls that were ultimately tied to Defendant Lifewatch.  *Id.* at 3-5.  Mr. James recorded his telephone conversations with the telemarketers and Lifewatch representatives, and his transcripts of these calls are attached to Mr. Menjivar's declaration (PX 1) as Attachments AA through FF.  (Docs. 14-1 at 12-13; 17-2 at 1-76; 18-1 at 1-56).

Like Mr. deLoca, Mr. James's declaration does nothing but establish that he is on the National Do Not Call List and lay the foundation for the transcripts attached to Mr. Menjivar's declaration.  The transcripts themselves detail what occurred during the calls.  Defendants have been given the recordings for each of the calls described in Mr. James's declaration.  Unless Defendants challenge the authenticity of the recordings, there is simply no reason for Mr. James to be deposed.

**Defendants' Position:**

Mr. James is identified by Plaintiffs as a "consumer" who was illegally contacted by telemarketers that they attribute to Defendants. However, it also appears that Mr. James holds himself out as an advocate on behalf of those who oppose telemarketing. Mr. James' declaration appears to have been created for this litigation. Plaintiffs have placed Mr. James testimony squarely at issue in their Motion, and Defendants seek to depose him in order to develop facts that they believe will show that his testimony is unreliable. It appears that Plaintiffs are relying on Mr. James' declaration to establish that Defendants are currently engaged in improper telemarketing. Defendants seek to depose him to develop testimony that can be submitted in

response to his declaration.

Among other things, Defendants seek to depose Mr. James to explore the facts and circumstances underlying the claims allegedly received by him. Defendants believe that there are likely to be misrepresentations incorporated in the declaration, but need an opportunity to question him under oath to evaluate those representations, including the representations about the circumstances under which he has been contacted and to explore the connections, if any, between the calls he claims to have received and Defendants. Defendants intend to explore the foundation underlying the matters asserted by him in his declaration.

## 15.    Diana Mey (PX 50, PX 83 and PX 86)

**Plaintiffs' Position:**

Ms. Mey is a consumer whose two wireless telephone numbers are on the National Do Not Call List.  (Doc. 25-18 at 2).  Ms. Mey received several telemarketing robocalls that could ultimately be tied to Defendant Lifewatch.  During one call, she even purchased the medical alert device, and received a Lifewatch device in the mail.  *Id.* at 1-27.  Ms. Mey recorded her telephone calls with the telemarketers and Lifewatch representatives, and transcripts of many of these calls are attached to Roberto C. Menjivar's declaration (PX 1) as Attachments GG through CCC.  (Docs. 14-1 at 13-14; 18-1 at 57-71; 18-2 at 1-79; 19-1 at 1-77; 19-2 at 1-86; 20-1 at 1-73).  Ms. Mey continued receiving telemarketing calls despite repeatedly telling the callers that she was on the National Do Not Call list (*see, e.g.,* Doc. 25-18 at 7), and eventually provided Plaintiffs with two supplemental declarations, with additional attached transcripts of telemarketing calls that can be tied to Defendant Lifewatch.  (Doc. 51-3 at 2-4).

As with Mr. deLoca and Mr. James, the only testimony Ms. Mey provides in her declarations is that she is on the National Do Not Call List. Beyond that, Ms. Mey's declarations simply lay the foundation for the transcripts attached to both Mr. Menjivar's and her own declarations. The transcripts themselves detail what occurred during the calls. Defendants have been given the recordings for each of the calls described in Ms. Mey's declaration. Unless Defendants challenge the authenticity of the recordings, there is simply no reason for Ms. Mey to be deposed. Ms. Mey also attaches some documents to her declaration related to her purchase of the Lifewatch device but unless Defendants want to argue that documents bearing Lifewatch's logo or a device stamped with the Lifewatch name are not authentic, there is no justification for deposing Ms. Mey on an expedited basis.

**Defendants' Position:**

Ms. Mey is identified by Plaintiffs as a "consumer" who was illegally contacted by telemarketers that they attribute to Defendants. Ms. Mey holds herself out as an "advocate." However, it also appears that Ms. Mey holds herself out as an advocate on behalf of those who oppose telemarketing and appears to be an active class action litigant. Ms. Mey's declaration appears to have been created for this litigation. Plaintiffs have placed Ms. Mey's testimony squarely at issue in their Motion, and Defendants seek to depose her in order to develop facts that they believe will show that her testimony is unreliable. In fact, it appears that she may be engaged in barratry related to telemarketing, an issue that may be probed at her deposition.

It appears that Plaintiffs are relying on Ms. Mey's declaration to establish that Defendants are currently engaged in improper telemarketing. Defendants seek to depose her to develop testimony that can be submitted in response to her declaration. At a minimum, Defendants believe that the transcripts that have been submitted are deceptive and seek to depose her to

explore certain statements incorporated in the transcripts.

Among other things, Defendants seek to depose Ms. Mey to explore the facts and circumstances underlying the telemarketing calls allegedly received by her. They believe that she may take proactive steps to solicit telemarketing and that this has bearing on the declaration submitted to this Court. Defendants believe that there are likely to be misrepresentations incorporated in her declaration and seek the opportunity to depose her so that they may question her under oath to evaluate those representations, including the representations about the circumstances under which she has been contacted and to explore the connections, if any, between the calls she claims to have received and Defendants. Defendants intend to explore the foundation underlying the matters asserted by her in her declaration.

**16.    Cathy Ann Amberson (PX 65)**

**Plaintiffs' Position:**

Plaintiffs previously indicated they would stipulate to a deposition of Cathy Ann Amberson and, pursuant to the Court's order directing the parties to state their positions on the "fifteen disputed deponents," did not prepare a written position on the appropriateness of the deposition of this declarant. Plaintiffs may revisit their stipulation, however, in light of Defendants' stated position on the "good cause" justifying the deposition.

**Defendants' Position:**

Ms. Amberson's declaration indicates that she was employed by a telemarketing operation that was a defendant in the Worldwide Litigation. Her husband appears to have been a principal in that telemarketing operation. And based on her declaration, it appears that she has material information about telemarketers and the principals and managers of telemarketers who

are alleged to have engaged in conduct on which the claims against Defendants appear to be founded.

Plaintiffs have offered Ms. Amberson's declaration as part of the factual foundation for the Motion. Through her, they purport to tie Defendants to telemarketing about which they complain. Plaintiffs have placed Ms. Amberson's declaration at issue by submitting it to this Court as part of the foundation of their Motion. Defendants seek to depose her in part to be able to evaluate and respond to assertions made in that declaration.

Plaintiffs entered into settlement agreements with at least certain of the telemarketers and individuals discussed in Ms. Amberson's declaration. Defendants anticipate that her deposition will inquire into the circumstances in which she executed the declaration, her bias, and the foundation for the assertions incorporated in her declaration on which Plaintiffs' Motion appears to rest.

Ms. Amberson's declaration indicates that she had communications with unidentified Lifewatch employees. Defendants expect that those communications would be among the things addressed in her deposition, including who she spoke with, when the conversations took place, and what was discussed. Her declaration raises a number of foundational issues including statements such as those relating to what she and other employees were allegedly told to say including what they were allegedly told to say about Lifewatch without identifying who made those statements, when they were made, who was present, as well as other information about those statements.

Defendants would re-evaluate their position concerning their need to depose Ms. Amberson in the event that Plaintiffs withdraw the Amberson declaration and the documents submitted through her so that this evidence and references to this evidence would not be in the

36

record (including in the briefs submitted by them).

**17.     Terrance Lancaster (PX 66)**

**Plaintiffs' Position:**

Mr. Lancaster worked as a telemarketer for a medical alert device telemarketing company from May 2013 to August 2013.  (Doc. 26-1 at 2).  In his declaration, Mr. Lancaster describes his training and the telemarketing calls in which he participated.  *Id*. at 2-8.  His declaration also attaches the scripts he used while working for the telemarketer, as well as documents titled "Deal Tracker" and "Disposition Log" and two paychecks.  *Id*. at Atts. A-E. Mr. Lancaster identifies the company that he worked for as Arcagen, Inc. (one of the *Worldwide* defendants), and his declaration makes no mention of Defendant Lifewatch.  *Id.*

Mr. Lancaster does not say that he worked for Lifewatch, and Defendants do not need to depose Mr. Lancaster to confirm that he did not know which medical alert company he was telemarketing on behalf of.  Nothing else in Mr. Lancaster's declaration addresses any of the defenses Defendants have raised at this point in the litigation.  Thus, there is no need to depose him prior to the preliminary injunction hearing.

**Defendants' Position:**

Mr. Lancaster's declaration indicates that he was employed by a telemarketing operation that was a defendant in the Worldwide Litigation. Mr. Lancaster's declaration focuses on conduct by the telemarketers who were the defendants in the Worldwide Litigation including people through whom Plaintiffs purport to establish a factual basis for the injunctive relief they seek against Defendants. Plaintiffs placed Mr. Lancaster's testimony at issue by submitting his declaration to provide a factual predicate for the relief sought by them. Defendants intend to

explore, among other things, the circumstances under which Plaintiffs obtained Mr. Lancaster's declaration.

Defendants believe that there are substantial foundational flaws in Lancaster's declaration and underlying the assertions that Plaintiffs have offered in support of their Motion through the Lancaster declaration, including concerning the putative connections to Lifewatch to the conduct described in the Lancaster declaration. Defendants seek to depose him so that they will be in a position to respond to the matters asserted by Plaintiffs through Mr. Lancaster's declaration. Mr. Lancaster's declaration addresses the conduct of individuals whose conduct is material to Plaintiffs' claims in their Motion against Defendants. Defendants seek to depose Mr. Lancaster to explore his knowledge about the conduct of those people and his knowledge about Lifewatch.

Defendants would re-evaluate their position concerning their need to depose Mr. Lancaster in the event that Plaintiffs withdraw the Lancaster declaration and the documents submitted through him so that this evidence and references to this evidence would not be in the record (including in the briefs submitted by them).

## 18. Leslie Steinmetz (PX 76)

**Plaintiffs' Position:**

In support of their Motion for Preliminary Injunction, Plaintiffs submitted a declaration of Leslie Steinmetz that had previously been filed in Life Alert's action against Lifewatch. Plaintiffs played no role in creating this document, and have not spoken with Mr. Steinmetz. According to his declaration, Mr. Steinmetz worked with Defendants Lifewatch and Sirlin "developing new business including the use of telemarketing." (Doc. 26-12 at 3-5). He also testifies in his declaration about Lifewatch's close oversight over telemarketing done on its

behalf. *Id.*

Defendants have been in possession of Mr. Steinmetz's declaration for over a year and have already had more than ample time to examine Mr. Steinmetz's testimony. There is no reason to delay the preliminary injunction hearing now for this purpose. Furthermore, because Mr. Steinmetz's declaration describes his relationship with Defendants, Defendants are already in possession of whatever evidence they could possibly need from Mr. Steinmetz, and should be able to counter his declaration with their own testimony.

**Defendants' Position:**

Plaintiffs have offered the declaration of Mr. Steinmetz that was filed in litigation between Lifewatch and a competitor. That litigation settled before Mr. Steinmetz could be questioned concerning the matters asserted in his declaration. It would appear that Plaintiffs have offered Mr. Steinmetz' declaration to suggest that Lifewatch was actively involved in the oversight of telemarketers and to assert that Lifewatch actually employs telemarketers. Defendants intend to depose Mr. Steinmetz to establish the falsity of the matters asserted by him in his declaration; his bias against and antipathy toward Lifewatch and Mr. Sirlin; and to demonstrate the foundational flaws in the assertions made by him in his declaration.

Defendants would re-evaluate their position concerning their need to depose Mr. Steinmetz in the event that Plaintiffs withdraw the Steinmetz declaration and the documents submitted through him so that this evidence and references to this evidence would not be in the record (including in the briefs submitted by them).

Respectfully submitted,

Dated:  October 14, 2015

  s/Marissa J. Reich
David A. O'Toole – dotoole@ftc.gov
Marissa J. Reich – mreich@ftc.gov
Rozina C. Bhimani – rbhimani@ftc.gov

Federal Trade Commission, Midwest Region
55 West Monroe Street, Suite 1825
Chicago, Illinois  60603
Telephone:  (312) 960-5634
Facsimile:  (312) 960-5600

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

PAMELO JO BONDI
Attorney General
State of Florida

  s/ Kristen Johnson
DENISE BEAMER
KRISTEN JOHNSON
Assistant Attorney General
Florida Bar #69369
Office of the Attorney General
Consumer Protection Division
135 W. Central Blvd., Suite 1000
Orlando, Florida 32801
Telephone:  (407) 245-0833
Facsimile:  (407) 245-0365

Attorney for Plaintiff
STATE OF FLORIDA
OFFICE OF THE ATTORNEY GENERAL

  s/David B. Goodman
David B. Goodman – dbg@greensfelder.com
Patrick Cotter – pcotter@greensfelder.com
Courtney A. Adair – cadair@greensfelder.com
Greensfelder Hemker & Gale, P.C.
200 West Madison Street, Suite 2700
Chicago, Illinois  60606
Telephone:  (312) 419-9090
Facsimile:  (312) 419-1930

Attorneys for Defendants
LIFEWATCH, INC.
EVAN SIRLIN

<u>**CERTIFICATE OF SERVICE**</u>

I, Marissa J. Reich, hereby certify that on October 14, 2015, I electronically filed the **JOINT OCTOBER 14, 2015 REPORT ON DEFENDANTS' PROPOSED DEPONENTS**, with the Court using the CM/ECF system, which will automatically send copies to any attorney of record in the case.

Respectfully Submitted,

 s/ Marissa J. Reich
MARISSA J. REICH
Federal Trade Commission
55 W. Monroe Street, Ste. 1825
Chicago, Illinois 60603
Voice: (312) 960-5623; Fax:  (312) 960-5600
email: mreich@ftc.gov

41