UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION, and ) <br> ) <br> STATE OF FLORIDA, OFFICE OF THE ) <br> ATTORNEY GENERAL, DEPARTMENT ) <br> OF LEGAL AFFAIRS, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> LIFEWATCH INC., a New York corporation, ) <br> also d/b/a LIFEWATCH USA and MEDICAL ) <br> ALARM SYSTEMS, and ) <br> ) <br> EVAN SIRLIN, individually and as an officer ) <br> or manager of Lifewatch Inc., ) <br> ) <br> Defendants. ) | Case No. 15 CV 5781 <br><br> Judge Feinerman <br><br> Magistrate Judge Gilbert |

**DEFENDANTS' MOTION TO STRIKE
ATTACHMENTS D AND E TO PLAINTIFFS' EXHIBIT 87**

Defendants LIFEWATCH INC. ("Lifewatch") and EVAN SIRLIN (collectively "Defendants"), through their undersigned counsel, respectfully move the Court to strike Attachments D and E (Doc. #95) to Plaintiffs' Exhibit 87 ("PX 87"; Doc. #94-2) pursuant to Federal Rule of Civil Procedure 12(f). In support of this motion, Defendants state as follows:

**I.  Introduction.**

Plaintiffs seek to introduce two documents, Attachments D and E to PX 87, which purport to summarize consumer complaints stored in the Consumer Sentinel. The Consumer Sentinel is a database of consumer complaints that is maintained by the FTC. Defendants object to the introduction of these summaries for two reasons. First, the summaries contain inaccurate and misleading information and conclusions and prejudicial argument in violation of the Federal

1

Rules of Evidence governing the admissibility of summaries as evidence. Second, Plaintiffs have not done anything to review, evaluate, or verify the accuracy of the content of the 16,937 documents underlying the summaries included in the subset of the Consumer Sentinel offered by them. The documents underlying the summaries are not independently admissible. Nothing has been done to test, let alone, verify the reliability of the underlying documents. For both of these reasons, Defendants seek to strike Attachments D and E to PX 87.

Should the Court decide to allow this evidence into the record, Defendants respectfully request that the Court fully consider the underlying 16,937 documents on which the inaccurate summaries are based. Plaintiffs produced the underlying documents only after the witness through whom the summaries were offered was deposed. And they produced the underlying documents in a manner that makes the documents very difficult to review and evaluate. However, even a cursory evaluation of the underlying documents shows that the Outside Sellers through which Lifewatch purchases accounts in practice market medic alert devices on a non-exclusive basis. Such a review confirms that the Outside Sellers sell and or market medical alert devices for a variety of companies (including many of Lifewatch's competitors), and that the Outside Sellers sell and or market non-medical alert device products and services for other companies in addition to Lifewatch. The numerous unrelated complaints that the FTC attempts to attribute to the Outside Sellers provide further evidence showing that the Outside Sellers from which Lifewatch purchases customer accounts are not agents of Lifewatch.

**II.     The FTC Failed to Analyze or Verify the Documents Underlying Attachments D and E.**

Plaintiffs seek to introduce Attachments D and E to PX 87, Roberto C. Menjivar's ("Menjivar") third declaration in this matter, into evidence in support of its motion for preliminary injunction. Menjivar is employed as an investigator with the FTC, and is generally

responsible for gathering information and reviewing documents, financial records, and other evidence in connection with FTC investigations. (PX 87 at ¶¶ 1-2). As part of his duties pertaining to the FTC's investigation into Lifewatch, Menjivar relied on the Consumer Sentinel database, which "is a database of complaints received from consumers, directly or through law enforcement agencies, U.S. federal agencies, state agencies, local agencies, foreign agencies, and other organizations." (*Id*. at ¶ 13).

As described more fully in the Declaration of Sarai Baker (DX 2; Doc. # 87-2), Lifewatch identified to Plaintiffs the names of seven outside sales companies ("Outside Sellers")(Doc. 93, Att. E) from which Lifewatch currently purchases customer accounts. Lifewatch enters into purchase agreements with these Outside Sellers. These Outside Sellers originate customer accounts through various means, and then offer to sell those accounts to Lifewatch, among other companies, on a non-exclusive basis. (*Id*. at ¶¶ 4-5).

In November 2015, Menjivar conducted searches in the Consumer Sentinel seeking to identify complaints filed about the seven Outside Sellers. (PX 87 at ¶ 14). As described in Menjivar's declaration, and as summarized in Attachment D to PX 87, Menjivar began his search by using the business names, fictitious names, or a slight variation of the business names of the seven Outside Sellers. (*Id*.). Menjivar's search demonstrated that there were no complaints made about four of the seven Outside Sellers. Menjivar found that in the past year, there were a total of 28 complaints about three of the seven Outside Sellers. (*Id*. at ¶¶ 14-15). Menjivar created a "summary" in which he identified his search terms and purported to document his results in Attachment D to PX 87.

Next, Menjivar looked at the phone numbers used by the Outside Sellers to make the phone calls that drew the 28 consumer complaints described in Attachment D to PX 87. Menjivar

concluded that several phone numbers "appear[ed] to be associated with the three outside sellers." (*Id*. at ¶ 16). Menjivar ran supplemental searches in the Consumer Sentinel using the associated phone numbers. (*Id*.). These searches resulted in "thousands" of complaints related to the telephone numbers that "appear to be associated with the three outside sellers." (*Id*.). Without further analysis of the data in the Consumer Sentinel database, including the products offered by the telemarketers in the calls about which there were complaints or about the identities of the sellers identified by the consumers in their complaints, Menjivar attributed the "thousands" of complaints tied to these phone numbers to the three Outside Sellers, attributed all of these complaints to Lifewatch, and crafted a table that identified the telephone numbers searched and attributed business names to these numbers even though in many cases, the consumers identified different business names to the callers, and offered this "summary" as Attachment E to PX 87.

Menjivar was deposed by counsel for Defendants on December 4, 2015. (A transcript of Menjivar's deposition has been filed with the Court as Doc. #100-1). Menjivar testified that when he was conducting searches in the Consumer Sentinel and preparing Attachments D and E:

- Menjivar did nothing to verify the accuracy of the information stored within the Consumer Sentinel database (Menjivar Tr. 46:20-23);

- Menjivar did not know if the information in the Consumer Sentinel database as reported by consumers was accurate (*Id*. at 47:17-20);

- Menjivar did not know if anybody from the FTC or elsewhere verifies whether the complaints logged in the Consumer Sentinel database are accurate (*Id*. at 47:21-24);

- Menjivar did nothing to verify the accuracy of the of the identity of callers that consumers reported in the Consumer Sentinel database, and he was not aware of anybody who verified this information (*Id*. at 49:9-23);

- Menjivar did not know if the information relating to robocalls stored in the Consumer Sentinel database was accurate (*Id*. at 53:53:1-17);

4

- After reviewing the consumer complaints that are summarized in Attachment E, Menjivar did not know whether the Outside Sellers sold products other than medical alert devices, but admitted that it was possible that they did (*Id*. at 107:7-21; 118:10-13).

On December 8, 2015, Plaintiffs produced a PDF containing 16,937 pages to Defendants. (FTC-LW15-0001362 to FTC-LW15-0018298). This production contains printouts from the searches of the Consumer Sentinel database undertaken by Menjivar that are referenced in Attachments D and E to Menjivar's most recent affidavit. Upon review of the FTC's production, it became clear that not only are the summaries marked as Attachments D and E inaccurate and misleading, but the summaries do not meet the standards required by Fed. R. Evid. 1006 as the underlying data contained in the production does not support, and in fact contradicts, the FTC's position.

**III. Attachment E is an Inaccurate Summary of the Underlying Data, and Therefore Must be Struck.**

Pursuant to Federal Rule of Evidence 1006, a party may introduce information in a summary exhibit in order to "to prove the content of voluminous writings . . . that cannot be conveniently examined in court." Fed. R. Evid. 1006. If admitted under Rule 1006, the summary itself is substantive evidence, and the party is not obligated to introduce the underlying voluminous documents. *U.S. v. White*, 737 F.3d 1121, 1135 (7th Cir., 2013). "Because a Rule 1006 exhibit is supposed to substitute for the voluminous documents themselves, however, the exhibit must accurately summarize those documents. It must not misrepresent their contents or make arguments about the inferences the jury should draw from them." *Id*.; *see also U.S. v. Milkiewicz*, 470 F.3d 390, 398 (1st Cir., 2006) ("Charts admitted under Rule 1006 are explicitly intended to reflect the contents of the documents they summarize and typically are substitutes in

evidence for the voluminous originals. Consequently, they must fairly represent the underlying documents and be accurate and nonprejudicial." (citations omitted)).

Attachment E to PX 87 is not an accurate summary of the underlying data contained in the 16,937 pages of Consumer Sentinel complaints. Attachment E purports to connect the phone numbers responsible for making "thousands" of calls that drew consumer complaints. In doing so, the first column of Attachment E assigns a "business name" to the phone numbers used as search terms, and each of the "business names" is purported to be one of the three Outside Sellers that Menjivar found complaints about and described in Attachment D to PX 87. Assigning the "business name" to the phone number is not only inaccurate, but misleading. Menjivar assumed, without doing anything to verify or confirm, that the phone numbers associated with the Outside Sellers were exclusively used with regard to procuring sales on behalf of Lifewatch. However, contrary to Menjivar's assumption, a review of the complaints reveals that the Outside Sellers procure sales for Lifewatch on a non-exclusive basis, and sell and or market medical device products for other companies and sell and or market other products and services for other companies. The underlying documents offer names supplied by the consumers and that differ from those identified in the "summary" offered by Menjivar. Contrary to Menjivar's blanket assumption, the phone numbers associated with the Outside Sellers are frequently used with regard to many other products, including, among other things, medical alert devices for other companies besides Lifewatch,[1] credit card interest rate reduction, insurance

---

[1] The following names, which appear to sell medical devices unrelated to Lifewatch or its Outside Sellers, appear in the "comments" section or the "company name" section of the Consumer Sentinel records produced by Plaintiffs: "Lifeline"; "Life Alert"; "Medical Alert Systems"; "Medical Alert"; "Medic Alert"; "Senior Assist"; "Rescue Me Alert"; "Med Alert"; "Senior Alert"; "USA Alert Systems"; "Free Call Alert"; "Rescue Medical Alert"; "Medical Alert Service"; "Free Call Alert"; "Clase P"; "Senior Health Alert"; "Medical Alert"; "First Alert"; and "Senior Care." *See* Exhibit A, a chart partially analyzing the 16,937 Consumer Sentienal complaints, and Exhibit B, a list of companies selling medical alert devices identified in the Consumer Sentinel complaints, attached hereto.

6

products, pharmacies, Google ad optimization and vacations.[2] A chart partially analyzing the 16,937 Consumer Sentinel complaints inaccurately referred to and summarized by Menjivar in Attachment E is attached hereto as Exhibit A. While counsel for Defendants have not been able to review each of the 16,937 Consumer Sentinel Complaint, which is contained in Exhibit A was created based on a partial and incomplete review of the underlying data.[3]

Moreover, if the Outside Sellers had made the "thousands" of calls described in Attachment E, then the same number of complaints would have appeared in Attachment D, which summarized complaints naming the three Outside Sellers. However, Attachment D shows that the three Outside Sellers – when calling from the businesses from which Lifewatch purchased accounts – only drew a total of 28 complaints.

Accordingly, as Attachment E to PX 87 does not accurately summarize the underlying documents, but rather misrepresents their contents and makes prejudicial arguments to the Court about what the underlying documents represent, it should be struck. *See White*, 737 at 1135; *Milkiewicz*, 470 F.3d at 398.

### IV. The Underlying Documents Are Inadmissible, and Therefore Attachments D and E Must Be Struck.

In order for a summary to be admissible pursuant to Fed. R. Evid. 1006, the summary must not only be accurate, but the documents underlying the summary must be admissible. "The

---

[2] The following names, which appear to sell products unrelated to medical devices, appear in the "comments" section or the "company name" section of the Consumer Sentinel records produced by Plaintiffs: "Epilepsy pick up"; "Lowering an interest rate on a credit card"; "Cardholder services"; "The recording claimed it was the IRS calling and that I had committed a crime"; "Sometimes I just hung up and other times they claim IRS or Medical Alert Systems Inc."; "Google representative"; "My Google specialist"; "Google ads"; "Back brace"; "Doctor's network"; "Mossbacher pro"; "Survey card services"; "Canadian pharmacy"; "Google"; "Customer communication management system"; "Gulfstream"; "American Institute of Aging"; "National Institute for Aging"; "Elderly benefits"; "Unknown solar"; "Clase P – You won a free trip."; "US Pharmacy"; "Lower your credit card interest rate and payments"; "Cardholder services"; "Credit assistance program"; "Info survey"; "Cardholder services." *See* Exhibit A.

[3] Defendants do not have access to the Consumer Sentinel database. And the documents were produced in a manner that makes searching them to be very difficult and time-consuming.

7

admission of a summary under Fed. R. Evid. 1006 requires a proper foundation as to the admissibility of the material that is summarized and a showing that the summary is accurate." *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 382 (7th Cir. 2008) (citations and quotations omitted).

As shown by Menjivar and the FTC's failure to review the results of the searches Menjivar conducted in the Consumer Sentinel database, or to verify the accuracy of the information therein in any way whatsoever, Attachments D and E are inadmissible and must be struck. The unverified complaints stored within the Consumer Sentinel database are nothing more than unreliable hearsay statements made, in many instances, by unidentified and unnamed consumers. Menjivar and the FTC have failed to lay a proper foundation as to the admissibility of the underlying complaints, and therefore Attachments D and E, which purport to summarize these complaints, are inadmissible and must be struck.

**V.     If the Court Admits Attachments D and E to PX 87, It Should Fully Consider the Underlying Data.**

If the Court denies Defendants' Motion to Strike, then it should fully consider the underlying data in addition to the summaries submitted as Attachments D and E. Specifically, by looking past Plaintiffs' mischaracterizations of the underlying data in Attachments D and E, the Court will find that the Consumer Sentinel database complaints support Defendants' position that Lifewatch engages its Outside Sellers on a non-exclusive basis, and that the Outside Sellers sell medical alert devices and other products and services for other companies in addition to Lifewatch. The complaints made about phone numbers associated with Outside Sellers, but not related to Lifewatch, provide further evidence showing that the Outside Sellers from which Lifewatch purchases customer accounts are not agents of Lifewatch. The FTC attempts to inaccurately attribute all phone calls made from the phone numbers associated with the Outside

8

Sellers to Lifewatch, reference to the Consumer Sentinel database actually shows that these Outside Sellers do not sell contracts to Lifewatch, including contracts relating to medical alert devices, to Lifewatch. It shows that Lifewatch does not control the marketing by them and that Lifewatch does not control the companies with which they choose to work. When one examines the evidence submitted by the FTC, as opposed to the FTC's contorted and false assertions regarding that evidence in Attachment E to PX 87, one sees that Lifewatch cannot be held accountable for the actions of the Outside Sellers, from which it purchases contracts.

**VI. Conclusion.**

For the reasons described in detail above, Defendants respectfully request that the Court strike Attachments D and E to PX 87 pursuant to Federal Rule of Civil Procedure 12(f), and for such other relief as the Court deems just.

Respectfully submitted,

GREENSFELDER, HEMKER AND GALE, P.C.

By:   /s/ David B. Goodman
      One of Its Attorneys

David B. Goodman #6201242 dbg@greensfelder.com
Thadford A. Felton #6224896 taf@greensfelder.com
Patrick J. Cotter #6202681 pcotter@greensfelder.com
Greensfelder, Hemker & Gale, P.C.
200 West Madison Street, Suite 2700
Chicago, Illinois 60606
Direct: (312) 345-5008
Telephone: (312) 419-9090
Facsimile: (312) 419-1930

*Attorneys for Defendants*

**CERTIFICATE OF ELECTRONIC SERVICE**

      I, David B. Goodman, an attorney, hereby certify that on December 14, 2015, I electronically filed the foregoing Motion to Strike, with the Court using the CM/ECF system, which will automatically send copies to all attorneys of record in the case.

      /s/ David B. Goodman

      David B. Goodman #6201242 dbg@greensfelder.com
      Greensfelder, Hemker & Gale, P.C.
      200 West Madison Street, Suite 2700
      Chicago, Illinois 60606
      Telephone: (312) 419-9090
      Facsimile: (312) 419-1930