UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION, and ) | |
| ) | |
| STATE OF FLORIDA, OFFICE OF THE ) ATTORNEY GENERAL, DEPARTMENT ) OF LEGAL AFFAIRS, ) | |
| ) | Case No. 15 CV 5781 |
| Plaintiffs, ) | |
| ) | Judge Feinerman |
| v. ) | |
| ) | Magistrate Judge Gilbert |
| LIFEWATCH INC., a New York corporation, ) also d/b/a LIFEWATCH USA and MEDICAL ) ALARM SYSTEMS, and ) | |
| ) | |
| EVAN SIRLIN, individually and as an officer ) or manager of Lifewatch Inc., ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS' MOTION TO STRIKE CERTAIN EXHIBITS SUBMITTED BY PLAINTIFFS FOR THEIR MOTION FOR PRELIMINARY INJUNCTION**

Defendants LIFEWATCH INC. ("Lifewatch") and EVAN SIRLIN (collectively "Defendants"), through their undersigned counsel, respectfully move the Court to strike Exhibits PX 86, 87, 90, and 96. Defendants state as follows in support of their motion:

**I. Introduction.**

Plaintiffs' Motion for Preliminary Injunction (the "PI Motion") rests on exaggeration and mischaracterizations. They have quoted selectively from transcripts ignoring inconvenient evidence inconsistent with their arguments.[1] And they have mischaracterized evidence submitted by them either by ignoring the context or, as in the case of their "summaries"

---

[1] For example, Plaintiffs assert that a telemarketer who spoke with Ms. Mey identified himself as an employee of Lifewatch. In fact, the telemarketer clarified to Ms. Mey that he and his company are not actually employed by Lifewatch but do get a fee from selling transactions to Lifewatch. See Ex. 86, Att. G, pp. 4:24-5:15.

1

incorporated in PX 87, ignoring the substance of the documents that they purport to summarize. The defects in their submissions highlight the weakness of their case.

As an example, in PX 87, Plaintiffs submitted the transcript of a surreptitiously recorded telephone call contending that it includes admissions by an individual that he had been a Lifewatch telemarketer. *See* Doc. 104, p. 10. But this is a gross mischaracterization of the 40 page transcript in which the word "Lifewatch" was mentioned twice. At most, the putative "admission" referenced by Plaintiffs in their sur-reply constitutes hearsay.

Plaintiffs' mischaracterizations and campaign of improper innuendo do not end there. They offer PX 90, a second "Hilgar" declaration for the false assertion that Lifewatch "bought" evidence. But this document plainly rests on hearsay, and the declarant does not even offer *anything* to suggest that this is even remotely reliable.

On December 11, 2015, Plaintiffs submitted a list of exhibits for the Court's consideration in connection with their Motion For Preliminary Injunction (the "PI Motion"). *See* Doc. No. 104. Plaintiffs' December 11, 2015 exhibit list includes most, but not all, of the declarations and exhibits to the declarations offered by Plaintiffs with their PI Motion.[2] The Court denied Defendants' August 2015 Motion To Strike without prejudice to their renewal of the motion at the time of the preliminary injunction hearing. *See* Doc. No. 64. As the Court explained, this approach would allow it to consider only those exhibits on which Plaintiffs were relying for their PI Motion.

Defendants have renewed their Motion To Strike Exhibits. Additionally, Defendants filed a motion to strike attachments to PX 87 that was submitted with Plaintiffs' supplemental

---

[2] Defendants moved to strike certain exhibits submitted by Plaintiffs to the Court with the initial PI Motion. *See* Doc. No. 45. That motion was fully briefed by the parties. *See* Doc. Nos. 53 and 56. On September 8, 2015, the Court entered an order denying Lifeatch's Motion To Strike without prejudice to the Defendants' renewing the motion at the time of the preliminary injunction hearing. *See* Doc. No, 64.

motion for preliminary injunction. *See* Doc. No. 111. Through the present motion, Defendants move to strike certain exhibits identified in the exhibit list filed by Plaintiffs December 11, 2015 that were not addressed in Defendants' initial Motion To Strike.

Plaintiffs' exhibit list omits several exhibits offered by Plaintiffs in connection with their prior filings in connection with the PI Motion, including an additional declaration by Roberto Menjivar (PX85) and a report concerning discovery in the litigation between Life Alert and Lifewatch (PX 84). Plaintiffs cited to these documents and the attachments to them in briefs filed by them after their initial PI Motion. Defendants are not addressing materials submitted by Plaintiffs in briefs filed by them after the filing of their initial PI Motion and that are not identified on Plaintiffs' exhibit list with the understanding that Plaintiffs' exhibit list was to be comprised of the materials they were submitting in support of their PI Motion.

The weakness of Plaintiffs' case is amplified by their reliance on unreliable evidence. This Court should disregard the evidence that is not identified by Plaintiffs in their December 11, 2015 exhibit list. And it should strike exhibits 86, 87, 90, and 96 for the reasons discussed in this brief.

**A.     The Court Should Not Consider Inadmissible Evidence.**

There is no authority that suggests that the Court must consider unreliable evidence in passing on a preliminary injunction. A declaration submitted in support of a motion may not include the following categories of statements:  (1) conclusory allegations absent supporting evidence; (2) legal argument; (3) self-serving statements without factual support in the record; (4) inferences or opinions not grounded in observation or other first-hand experience; and (5) mere speculation or conjecture.  *Mitchel v. Buncich*, 2013 WL 275592 *5 (N.D. Ind. Jan. 24, 2013).  Statements made by unidentified individuals cannot be admissions of a party-opponent

3

under Federal Rule of Evidence 801(d)(2)(D). *Tomanovich v. City of Indianapolis*, No. 1:02CV01446-RLY-WTL, 2005 WL 4692616, at *1 (S.D. Ind. Feb. 10, 2005) aff'd, 457 F.3d 656 (7th Cir. 2006).

The evidence addressed in this Motion lacks the indicia of reliability. It consists of hearsay or evidence manufactured from unreliable sources resting on assertions that run contrary to an objective analysis of the contents. These exhibits should be stricken.

**B.      The Menjivar Declaration (PX 87) And The Documents On Which It Rests Are Unreliable.**

Plaintiffs use PX 87 as a device through which to offer "summaries" created by Menjivar for the assertion that the outside sellers from which Lifewatch currently purchases contracts have generated at least 16,700 do not call complaints in the past few months. *See* Doc. 101, p.15.[3] Plaintiffs have asserted that these outside sellers, to the extent that they were marketing medical alert devices, did so *only* on behalf of Lifewatch. *See* Doc. 94, pp. 10-11. As addressed in Lifewatch's December 14, 2015 Motion To Strike (Doc. No. 111), the "summaries" offered by Plaintiffs do not accurately report the information included in the documents they allegedly "summarize."

Menjivar, himself, concedes that the summaries omitted information such as entities specifically identified by the consumers about which they were complaining – such as Lifewatch's competitors and also link the telemarketing to products or services unrelated to medical alert devices. *See* PX 90, pp: 118:6-124:16. But reference to the documents on which Mr. Menjivar's "summaries" purport to be based include consumer complaints that the outside sellers that Plaintiffs attribute to Lifewatch were calling to offer products on behalf of

---

[3] The citations are to the page of the document as opposed to the page in the ECF. For example, in this instance, page 15 of Plaintiffs' Supplemental Brief is Doc. 101, p. 19 of 23.

Lifewatch's competitors such as Phillips Lifeline or Life Alert (Ex. 1, FTC-LW15-0004839), or to market credit card debt reduction. (Ex. 2, FTC-LW15-0014459; FTC-LW15-0014452; and FTC-LW15-0014410). Yet, Mr. Menjivar did not bother to review the actual complaints in the database to see whether they identified the products that were being telemarketed in the calls (PX 90, pp. 119:20-124:19).

The Menjivar declaration is an example of an instance in which Plaintiffs manufactured evidence to suggest a result while deliberately ignoring information found inconsistent with their argument. They argue that there is no evidence that the telemarketers that sold transactions to Lifewatch also sold transactions to its competitors. *See* Doc. 94, p. 7. But even a cursory review of the documents underlying Mr. Menjivar's declaration demonstrates that many consumers who complained of the calls specifically identified Lifewatch's *competitors* as being responsible for the calls that Plaintiffs would have this Court believe are tied to telemarketers from which Lifewatch purchased contracts. *See* Doc. 111, Exhibits, A and B.[4]

Plaintiffs also use PX 87 to offer a recorded telephone call between an individual and an unidentified informant as "evidence" that one of the speakers as one of "Lifewatch's telemarketers…." Doc. No, 94, p. 10. Within the 40 page transcript, there is a statement to an unidentified person that at some unidentified point in time, the speaker sold some transactions to Lifewatch. *See* Doc. 94, p. 10, fn 31, PX 87, Att. A, pp. 6 and 8. This statement is plainly hearsay, and there is clearly *nothing* about it to suggest that there is *anything* reliable about it. It should be disregarded.

---

[4] Plaintiffs produced these materials to Lifewatch only after Mr. Menjivar was deposed (a few days prior to the hearing) and in a manner that made them difficult to search.

### C. Hilgar's Second Declaration (PX 90) Is Patently Unreliable Hearsay.

Plaintiffs have offered a declaration executed by Michael Hilgar on December 1, 2015 as "evidence" that Lifewatch purchased his testimony. *See* Doc. No. 101, p. 8. Mr. Hilgar did not contend that he received payment from Lifewatch, directly. Lifewatch denies that it paid him anything – directly or indirectly – for his testimony. And critically, Mr. Hilgar does not even contend that he was paid to testify in an untruthful manner. At most, Mr. Hilgar contends, as he did in his first declaration (PX 14, ¶ 12) that he simply did not review the declaration that he signed before reading it. And any money that Mr. Hilgar claims to have received, according to him, came from an individual named Roderic Boling. The putative "connection" to Lifewatch rests on hearsay without *any* indicia of reliability.

Mr. Hilgar concedes contends that he does not even recall what was said by Boling, and he simply drew the conclusion that "Boling indicated to me that the money had come from Lifewatch." PX 90, ¶ 7. Mr. Hilgar also asserts that he "understood" that Mr. Boling received money from Lifewatch for getting Mr. Hilgar to sign the declaration, but fails to offer *any* basis for that contention. Mr. Hilgar's assertion as to the source of money he alleges he received rests on hearsay, and the declaration is not probative of anything. The exhibit should be stricken. *See Mitchel v. Buncich*, 2013 WL 275592 *5; *Epelbaum v. Chicago Sch. Reform Bd. of Trustees,* No. 98 C 3423, 2001 WL 123781, at *1 (N.D. Ill. Feb. 12, 2001)(striking affidavits to the extent they contain inadmissible opinions, speculation, conclusions, irrelevant facts, or refer to immaterial matters); *Smith v. Allstate Ins. Corp.*, No. 99 C 0906, 2002 WL 485374 (N.D. Ill. March 29, 2002)(striking self-serving irrelevant statements and conclusions that are not supported by adequate facts); *Morissette v. Ghosh*, 08

6

C 2545, 2010 WL 1251443, at *2 (N.D. Ill. March 23, 2010)(striking affidavits when affiants had no personal knowledge of the facts of the case).

**D.** **Exhibit C To The Gates Deposition Transcript Is Inadmissible Hearsay.**

Plaintiffs offer Exhibit C to the Gates Deposition as Exhibit 96. Exhibit C is comprised of: a) Mr. Gates' handwritten notes in connection with a telemarketing call for a medical alert device that he received from one of Lifewatch's competitors, Connect America; b) printouts from Lifewatch's website; c) drafts of Mr. Gates' declaration; and d) medical alert product and service documentation. Gates Transcript, pp. 7-12. Mr. Gates is employed by Life Alert Emergency Response, Inc., one of Lifewatch's competitors. PX 95, p. 8:7-13.

Given Mr. Gates' deposition testimony about the printouts incorporated into Exhibit C, those internet search printouts should be stricken. Specifically, Mr. Gates testified that he "did a search" after receiving a telemarketing call for a medical alert device that he subsequently received from Connect America, one of Lifewatch's competitors. PX 95, pp. 8:22-9:25. The implication from the inclusion of these documents as an exhibit is that the documents somehow tie Lifewatch to the call that Mr. Gates contends he received.

At his deposition, Mr. Gates explained the documents, testifying that while "doing an internet search" for the customer service number he received while he was on the telephone with a telemarketer, his search "brought up" Lifewatch's webpage. PX 95, p. 9:15-22. Mr. Gates acknowledged that while he conducted an internet search using the search term "(800) 717-9295," that number appears nowhere within the Lifewatch internet printouts included within Exhibit C. PX 95, p. 9:15-22. Presumably, Plaintiffs' objective in the inclusion of these materials is to suggest to the Court a connection between the telephone call and the web search notwithstanding the fact that none exists. Accordingly, these pages within Exhibit C

7

should be stricken as no foundation has been laid connecting Lifewatch or its website to the telemarketing calls that Mr. Gates allegedly received.

**E.     Exhibit 86 Rests On Hearsay, Conjecture, And Speculation And Should Be Stricken.**

Ms. Mey's third declaration in connection with this litigation, PX 86, should be stricken in that it is offered as unfounded "evidence" of a direct connection between Lifewatch and a telemarketer from which Ms. Mey apparently received a call. Ms. Mey is a professional litigant. She is currently involved in at least 11 pending class actions involving telemarketers (PX 92, pp. 28: 23-29-11); she has individually filed several lawsuits against telemarketers; and while during her deposition she refused to divulge how much money she had made suing telemarketers, her only source of income for the last five years, in addition to the occasional Ebay sale, has been settlements that she has received from suing telemarketers. (PX 92, pp. 16:21- 17: 2).

Attached to Ms. Mey's third Declaration are transcripts of telephone calls that occurred on August 20, 2015, August 21, 2015, September 10, 2015, and September 11, 2015. Ms. Mey acknowledges that in the course of the telephone calls set forth in these transcripts, she speaks with telemarketers that are attempting to sell her a medical alert device and admits that in both instances, she attempted to purchase the devices offered to her. After agreeing to purchase the devices, the people with whom Ms. Mey spoke advised that they would transfer the call to a person who would process her credit card. In each instance, after Ms. Mey's call was transferred, the individual(s) with whom she spoke advised her that the order she sought to place would be filled by Lifewatch and that the charge on her credit card would be in the name of Lifewatch. However, there is no evidence that Ms. Mey ever spoke with an employee of Lifewatch in any of the transcribed calls.

8

Despite this, Plaintiffs, citing Ms. Mey's Declaration (Doc. 77-1, pp. 4-5, 66-69), assert that "in more recent transactions, consumers have been transferred immediately to Lifewatch for verification." The transcripts do not support this assertion. During a conversation about what the name of the company is that is going to charge Ms. Mey's credit card, an individual says "we're Lifewatch, yes, Medical Alarms Lifewatch" (Doc. 77-1, p. 66-67), but that individual later clarifies her statement by saying that "we're Medical Alarms when we – our customers (inaudible) Medical Alarms, our products say Lifewatch, USA." (Doc. 77-1, p. 69). In a subsequent follow-up call, the individual with whom Ms. Mey spoke explained that "there's two separate companies that – that you're dealing with when we speak with you" and that Lifewatch has nothing to do with the solicitation of Mey. (Doc. 77-1, p. 80). To cast even greater doubt on the relevance and reliability of these transcripts, Ms. Mey concedes that she does not know whether anything that she is told by the people that she speaks with on the phone is true.[5] (PX 92, pp. 37: 22-38:1 and pp. 40: 18- 41: 5).

Clearly, Ms. Mey's third declaration, PX 86, is being offered for the truth of the matters asserted in it: that the telemarketers from whom she received the calls of which she complains were either from Lifewatch or calling for Lifewatch. But just as clearly, the declaration rests on hearsay and speculation. It should be stricken.

WHEREFORE, Defendants ask that the objectionable declarations and exhibits and portions of the declarations and exhibits referenced in this Motion be stricken and for such other relief as this Court deems appropriate.

---

[5] Ms. Mey concedes that even when the person on the other end of the line says that they are associated with Lifewatch or that they calling from Lifewatch that she has no idea of whether they are telling the truth or not. (PX 92, pp. 37: 22- 38 1;pp. 40: 18- 41: 5).

Respectfully submitted,

GREENSFELDER, HEMKER & GALE, P.C.


  /s/    David B. Goodman

David B. Goodman
dbg@greensfelder.com
Patrick Cotter
pcotter@greensfelder.com
Thadford A. Felton
taf@greensfelder.com
Courtney A. Adair
cadair@greensfelder.com
Greensfelder Hemker & Gale, P.C.
200 West Madison Street, Suite 2700
Chicago, Illinois 60606
Telephone: (312) 419-9090
Facsimile: (312) 419-1930

Jason P. Sultzer
sultzerj@thesultzerlawgroup.com
Joseph Lipari
lipari@thesultzerlawgroup.com
The Sultzer Law Group
85 Civic Center Plaza Suite 104
Poughkeepsie, New York 12601
(646) 722-4266

*Attorneys for Defendants*

**CERTIFICATE OF ELECTRONIC SERVICE**

I hereby certify that I caused a true and correct copy of the foregoing to be served upon the following on December 22, 2015, by the United States District Court's ECF system:

Marissa J. Reich, mreich@ftc.gov
Rozina Cynthia Bhimani, rbhimani@ftc.gov
David A. O'Toole, dotoole@ftc.gov
Denise Kim beamer, denise.beamer@myfloridalegal.com

/s/ David B. Goodman