UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION, and | ) |
| | ) |
| STATE OF FLORIDA, OFFICE OF THE | ) |
| ATTORNEY GENERAL, DEPARTMENT | ) |
| OF LEGAL AFFAIRS, | ) Case No. 15cv5781 |
| | ) |
| Plaintiffs, | ) Judge Gary Feinerman |
| | ) |
| v. | ) Mag. Judge Jeffrey T. Gilbert |
| | ) |
| LIFEWATCH INC., a New York corporation, | ) |
| also d/b/a LIFEWATCH USA and MEDICAL | ) |
| ALARM SYSTEMS, | ) |
| | ) |
| SAFE HOME SECURITY, INC., a | ) |
| Connecticut corporation, | ) |
| | ) |
| MEDGUARD ALERT, INC., a Connecticut | ) |
| corporation, | ) |
| | ) |
| EVAN SIRLIN, individually and as an officer | ) |
| or manager of Lifewatch Inc., | ) |
| | ) |
| MITCHEL MAY, individually and as an officer or | ) |
| manager of Lifewatch Inc., and | ) |
| | ) |
| DAVID ROMAN, individually and as an officer | ) |
| or manager of Lifewatch Inc., Safe Home Security, | ) |
| Inc., and Medguard Alert, Inc. | ) |
| | ) |
| Defendants. | ) |
| | ) |

**PLAINTIFFS' OPPOSITION TO DEFENDANT SAFE HOME SECURITY, INC., MEDGUARD ALERT, INC., MITCHEL MAY, AND DAVID ROMAN'S MOTIONS TO DISMISS**

Plaintiffs Federal Trade Commission and State of Florida, by and through their undersigned counsel, hereby submit their Opposition to Defendant Safe Home Security, Inc. ("Safe Home"), Medguard Alert, Inc. ("Medguard"), Mitchel May ("May"), and David Roman's ("Roman") (collectively "Defendants") Motions to Dismiss the Complaint.

**I.    Introduction**

The Court already passed on these issues when it granted Plaintiffs' Motion to File an Amended Complaint.  Just as the Court found unpersuasive the arguments of Defendants Lifewatch and Sirlin in their Opposition to Plaintiffs' Motion to Amend (Doc. 160) then, it should find the identical arguments unpersuasive now.  First, applying the heightened pleading standard of Fed. R. Civ. P. 9(b) to Plaintiffs' Amended Complaint would defeat the underlying consumer protection purpose of the Federal Trade Commission Act ("FTC Act"), the Telemarketing Sales Rule ("TSR"), and the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").  Second, regardless of whether Rule 9(b) applies, Plaintiffs' Amended Complaint provides sufficient factual detail to defeat a motion to dismiss.  Third, the evidence already in the record supports the Amended Complaint's well-pled allegations.  Accordingly, the Court should deny Defendants' Motions to Dismiss.

**II.   The Heightened Pleading Requirements of Rule 9(b) Do Not Apply to FTC Act, TSR, and FDUTPA Claims.**

The Court should reject Defendants' argument that the heightened pleading requirements of Rule 9(b) apply to Plaintiffs' claims under the FTC Act, the TSR, and FDUTPA.  In a single paragraph, with no analysis whatsoever, Defendants assert that the Court should ignore the vast majority of courts - including the lone circuit court to address this issue and several decisions

from courts in this district - that have found that Rule 9(b) does not apply to Section 5 claims,[1] and should, instead, follow a single district court decision from the Central District of California. *See FTC v. Lights of Am., Inc.*, 760 F. Supp. 2d 848 (C.D. Cal. 2010) (granting defendants' motion to dismiss with leave to replead). The Court should reject Defendants' perfunctory argument and join the overwhelming majority of courts finding that Rule 9(b) does not apply in this context.

First, requiring FTC Act, TSR, and FDUTPA claims to meet the heightened pleading requirements of Rule 9(b) would undermine the purpose of those statutes – to protect consumers. *See FTC v. Colgate-Palmolive Co.*, 380 U.S. 374, 384, 85 S. Ct. 1035, 13 L. Ed. 2d 904 (1965) (calling Congress' amendment of the FTC Act in 1938 to extend the FTC's jurisdiction to include unfair or deceptive acts or practices in commerce "a significant amendment showing Congress' concern for consumers as well as for competitors.") Courts have been reluctant to impose upon the FTC requirements that would frustrate the FTC's consumer protection mission. For example, and most relevant, courts in this Circuit, and numerous other courts, have consistently found that in establishing a FTC Act violation, the FTC need not prove elements traditionally required in a common law fraud case. *See FTC v. Bay Area Bus. Council, Inc.*, 423 F.3d 627, 635 (7th Cir. 2005) (proof of intent to deceive not required); *FTC v. World Media*

---

[1] *See FTC v. Freecom Comms., Inc*., 401 F.3d 1192, 1204, n.7 (10th Cir. 2005) ("§5 claim simply is not a claim of fraud as that term is commonly understood or as contemplated by Rule 9(b)…"); *FTC v. AFD Advisors, LLC*, No. 13 CV 6420, 2014 U.S. Dist. LEXIS 8870, at *5 (N.D. Ill. Jan. 24, 2014) (Zagel, J.) *(*denying motion to dismiss and stating that Rule 9(b) did not apply); *FTC v. Sterling Precious Metals,* No. 12-80597-CIV-MARRA, 2013 U.S. Dist. LEXIS 20879 (S.D. Fla. Feb. 14, 2013) *(*finding reasoning in *Freecom* persuasive as to the heightened pleading requirement of 9(b) beinginapplicable); *FTC v. Med. Billers Network, Inc.*, 543 F. Supp. 2d 283, 314-15 (S.D.N.Y. 2008) (argument that Fed. R. Civ. P. 9(b) applied to §5 claims was "likely without merit"); *FTC v. Skybiz.com, Inc.*, No. 01-cv-396-K(E), 2001 U.S. Dist. LEXIS 26314, at *11 (N.D. Okla. Aug. 2, 2001) (Fed. R. Civ. P. 9(b) does not apply to claim under Section 5(a) because it is not a claim for fraud or mistake); *FTC v. Communidyne*, No. 93 C 6043, 1993 U.S. Dist. LEXIS 18708, at *4 (N.D. Ill. Dec. 3, 1993) (Conlon, J.) (denying motion to dismiss)(citing *FTC v. Amy Travel Serv., Inc.*, 875 F.2d 564, 574 (7th Cir. 1989)).

*Brokers*, 415 F.3d 758, 763 (7th Cir. 2005) (same).[2] Instead, the FTC need only demonstrate that a corporation made material representations or omissions likely to mislead a reasonable consumer. *See Bay Area*, 423 F.3d at 635 (setting forth elements); *World Media Brokers*, 415 F.3d at 763 (same); *Amy Travel*, 875 F.2d at 573 (same).

Further, courts permit a presumption of reliance in actions brought under the FTC Act and the TSR. *See FTC v. Blue Hippo Funding, LLC*, 762 F.3d 238, 244 (2d Cir. 2014) (collecting cases); *FTC v. Figgie Int'l*, 994 F.2d 595, 605 (9th Cir. 1993) (applying presumption); *FTC v. Security Rare Coin & Bullion*, 931 F.2d 1312, 1316 (8th Cir. 1991) (same); *Kraft Inc. v. FTC*, 970 F.2d 311, 323 (7th Cir. 1992) (applying a materiality presumption to support violations of Sections 5 and 12 of the FTC Act). It would be incongruous to relax the proof needed to demonstrate violations of the FTC Act and allow presumptions in the FTC's favor on the one hand, yet require the higher pleading standard of Rule 9(b) on the other hand.

In any event, the reasoning of the district court in *Lights of Am., Inc*. does not apply here. Acknowledging that the defendants did not argue that the FTC's complaint alleged fraud as an essential element of its claim, or that the complaint made allegations of fraudulent conduct,[3] the

---

[2] *See also FTC v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997) (proof of intent to defraud not required); *Removatron Int'l Corp. v. FTC*, 884 F.2d 1489, 1495 (1st Cir. 1989) (proof of "a willful, knowing or deliberate act" not required); *AFD Advisors*, 2014 U.S. Dist. LEXIS 8870, at *6 ("Unlike establishing a claim for fraud, the plaintiff is not required to allege intent to deceive under § 5 of the FTC Act."); *FTC v. Nat'l Testing Servs.*, No. 3:05-0613, 2005 U.S. Dist. LEXIS 46485, at *4 (M.D. Tenn. Aug. 18, 2005) ("intent to deceive the consumer is not an element of the Section 5 violation"); *FTC v. Five-Star Auto Club*, 97 F. Supp. 2d 502, 526 (S.D.N.Y. 2000) (proof of intent to defraud or deceive not required*); Communidyne*, 1993 U.S. Dist. LEXIS 18708, at *2 ("no intent to deceive is required"); *FTC v. Kitco of Nev., Inc.*, 612 F. Supp. 1282, 1293 (D. Minn. 1985) (unlike common law fraud, proof of subjective reliance by each individual consumer not required).

[3] Defendants in this case also do not argue that the conduct alleged in the Amended Complaint constitutes fraud. Instead, like the defendants in *Lights of Am., Inc.*, Defendants here summarily assert that Plaintiffs' claims "aver fraudulent behavior," but do not provide any reasoning or analysis for their assertion. Nor can they - Plaintiffs' claims are not fraud claims. Specifically, unlike a fraud claim, a Section 5 deception claim does not require proving intent to deceive, consumer reliance, or consumer injury. *See FTC v. Trudeau*, 579 F.3d 754, 779 n. 15 (7th Cir. 2009) ("FTC is not required to prove individual customer reliance on defendants' misrepresentations."); *Bay Area*, 423 F.3d at 635 ("FTC is not required…to prove

3

district court in *Lights of Am., Inc.* reasoned that because the FTC alleged a "unified course of fraudulent conduct," and relied "entirely on that course of conduct as the basis of" a single FTC Act claim, the FTC's claims "sounded in fraud" and Rule 9(b) applied. 760 F. Supp. 2d at 853. Recognizing that "fraud" is not an element of an FTC Act claim, the court drew an analogy between claims brought under the FTC Act and claims brought under common law negligent misrepresentation and California's consumer protection statues – both of which district courts in the Ninth Circuit have found to require pleading with particularity under Rule 9(b) (citing *Neilson v. Union Bank of California*, 290 F. Supp. 2d 1101, 1141 (C.D. Cal. 2003) (stating Rule 9(b) applies to claims of negligent misrepresentation) and citing *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (finding that Rule 9(b) applies to claims brought pursuant to the California consumer protection statutes). However, even if such an analogy were appropriate, it would not apply in this case since neither Illinois nor Florida law requires such heightened pleading.[4]

---

intent to deceive); *World Media Brokers*, 415 F.3d at 763 (setting forth elements of a Section 5 claim); *Freecom Comms.,* 401 F.3d at 1203 ("[n]either proof of consumer reliance nor consumer injury is necessary to establish at § 5 violation."); *AFD Advisors,* 2014 U.S. Dist. LEXIS 8870, at *5 ( "[u]nlike establishing a claim for fraud, the plaintiff is not required to allege intent to deceive under § 5 of the FTC Act."); *Communidyne*, 1993 U.S. Dist. LEXIS 18708, at *4 ("There is no scienter or reliance requirement, as would be required to prove fraud."). The Tenth Circuit said it best in *Freecom*, a Section 5 claim "is not a claim of fraud as that term is commonly understood or as contemplated by Rule 9(b)." *Id.* at 1204, n.7. There, the court reasoned that unlike a common law fraud claim, the FTC Act does not require proof of scienter, reliance, or injury. *Id.* The court went on to say that, "[t]he FTC's action…was not a private or common law fraud action designed to remedy a singular harm, but a government action brought to deter deceptive acts and practices aimed at the public to obtain redress on behalf of a large class of third-party consumers who purchased defendants' products and services over an extended period of time." *Id.*
[4] S*ee Tricontinental Indus. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 833 (7th Cir. 2007) ("We therefore must examine the necessary elements of a negligent misrepresentation claim under Illinois law. This claim is not governed by the heightened pleading standard of Rule 9(b)."); *Deere Constr., LLC v. Cemex Constr. Materials, Fla.*, LLC, No. 15-24375-CIV-ALTONGA/O'Sullivan, 2016 U.S. Dist. LEXIS 111145, at *24 (S.D. Fla. July 26, 2016) (denying motion to dismiss claim). *See also U.S. Bank Nat'l Ass'n v. Capparelli*, No. 13-80323-CIV-MARRA-MATTHEWMAN, 2014 U.S. Dist. LEXIS 84284, at *16 (S.D. Fla. Jun. 19, 2014) (*citing Fonte v. AT&T Wireless Services, Inc.,* 903 So.2d 1019, 1024 (Fla. 4th DCA 2005)) (Rule 9(b) did not apply to FDUTPA, stating "[b]ecause the FDUTPA is a consumer and

Similarly, while courts in this Circuit recognize a "sounds in fraud" argument in other contexts, *see Borsellinoi v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 509 (7th Cir. 2007), it is telling that no court in this Circuit has applied a "sounds in fraud" analysis to Section 5 claims. And, indeed, every court outside of this Circuit, excepting certain district courts in the Ninth Circuit, has rejected applying such a "sounds in fraud" analysis to Section 5 claims.[5] In fact, even in the few district court opinions which have applied a "sounds in fraud" analysis, only the *Lights of Am., Inc.* court dismissed plaintiffs' claims on 9(b) grounds based on complaint language similar to the instant case. The vast majority of the district courts have found similar complaint language sufficient to satisfy the requirements of Rule 9(b).[6]

## III. The Amended Complaint States Claims for Violations of the FTC Act, the TSR, and FDUTPA.

Regardless of which pleading standard applies, Plaintiffs have pled facts sufficient to state a claim for violations of the FTC Act, the TSR, and FDUTPA. In deciding a motion to dismiss pursuant to Rule 12(b)(6), the court should "view [the complaint] in the light most favorable to the plaintiff, taking as true all well-pleaded factual allegations and making all possible inferences from the allegations in the plaintiffs' favor." *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2007) (reversing district court's granting of motion to dismiss). Here,

---

business protection statute that is remedial in nature, this Court is inclined to align with the courts that construe the FDUTPA liberally in favor of consumers.").

[5] *See FTC v. Wyndham Worldwide Corp.*, 10 F. Supp. 3d 602, 628 (D.N.J. 2014) (same); *FTC v. E.M.A. Nationwide, Inc.*, No. 1:12-CV-2394, 2013 U.S. Dist. LEXIS 86112, at * 6 n. 19 (N.D. Ohio June 19, 2013) (same); *FTC v. Consumer Health Benefits Ass'n*, No. 10 Civ. 3551 (ILG) (RLM), 2012 U.S. Dist. LEXIS 72161, at *18-19 (E.D.NY. May 21, 2012) (same).

[6] *See FTC v. Lunada Biomedical, Inc.*, No. CV-15-3380-MWF (PLA), 2016 U.S. Dist. LEXIS 123518 (C.D. Cal. Feb. 23, 2016) (denying motion to dismiss); *FTC v. ELH Consulting*, LLC, No. CV 12-02246-PHK-FJM, 2013 U.S. Dist. LEXIS 126110 (D. Az. Sep. 4, 2013) (denying judgment on the pleadings); *FTC v. AMG Servs.*, No. 2:12-CV-00536-GMN-VCF, 2012 U.S. Dist. LEXIS 183159 (D. Nev. Dec. 28, 2012) (denying motion to dismiss); *FTC v. Ivy Capital, Inc.*, No. 2:11-CV-283 JCM (GWF), 2011 U.S. Dist. LEXIS 57035 (D. Nev. May 25, 2011) (same); *FTC v. Lights of Am., Inc.*, No. SACV 10-1333 JVS (MLGx), 2011 U.S. Dist. LEXIS 40678 (C.D. Cal. Mar. 31, 2011) (same); *FTC v. Benning*, No. C 09-03814 RS, 2010 U.S. Dist. LEXIS 64030 (N.D. Cal. Jun. 28, 2010) (same).

viewing the Complaint in the light most favorable to Plaintiffs, and taking all of Plaintiffs well-pled factual allegations as true, it is clear that Plaintiffs have stated a claim for individual liability against Defendants May and Roman, and a claim for corporate liability against Safe Home and Medguard under the FTC Act, the TSR, and FDUTPA.

### A. Plaintiffs Have Pled Individual Liability as to Roman and May.

In order to state a claim for individual liability under the FTC Act, Plaintiffs must first allege corporate deceptive acts or practices involving material misrepresentations or omissions likely to mislead consumers acting reasonably under the circumstances.[7] *See Bay Area*, 423 F.3d at 635 (stating elements); *World Media Brokers*, 415 F.3d at 763 (same); *FTC v. QT, Inc.*, 448 F. Supp. 2d 908, 957 (N.D. Ill. 2006) (same). Once corporate liability is established, individuals are liable where (1) the defendant participated directly in, or had some measure of control over, a corporation's deceptive practices, and (2) had actual or constructive knowledge of the practices. *See World Media Brokers*, 415 F.3d at 764 (setting forth elements); *Bay Area*, 423 F.3d at 636 (same); *Amy Travel*, 875 F.2d at 573-574 (same). "Authority to control the company can be evidenced by active involvement in business affairs and the making of corporate policy, including assuming the duties of a corporate officer." *World Media Brokers*, 415 F.3d at 764 (citing *Amy Travel*, 875 F.2d at 573); *FTC v. Nat'l Urological Group, Inc.*, 645 F. Supp. 2d 1167 (N.D. Ga. 2008) ("If a defendant was a corporate officer of a small, closely-held corporation, that individual's status gives rise to a presumption of ability to control the corporation.") The knowledge requirement is satisfied by a showing that the defendant (1) had actual knowledge of the deceptive acts or practices, (2) was recklessly indifferent to the truth or falsity of the representations, or (3) had an awareness of a high probability of fraud coupled with an intentional avoidance of the truth. *World Media Brokers,* 415 F. 3d at 764*; Bay Area*, 423 F.3d

---

[7] The deceptive conduct alleged also applies to Plaintiffs' TSR and FDUTPA claims.

at 636; *Amy Travel*, 875 F.2d at 573. An individual's "degree of participation in business affairs is probative of knowledge." *World Media Brokers*, 415 F.3d at 574.

     In the instant case, Plaintiffs have pled facts specific to the deceptive acts and practices of the corporate defendants, including Safe Home and Medguard, as well as to Defendant Roman and May's role in those deceptive acts and practices. Paragraphs 17 through 32 give a detailed recitation of the Defendants' business practices. In particular, Plaintiffs allege that since at least 2012, Defendants have marketed their medical alert systems to consumers throughout the United States using various means, including unsolicited telemarketing calls. (Doc. 165 at ¶ 17.) Defendants engaged numerous telemarketers to conduct these unsolicited telemarketing calls. (Doc. 165 at ¶ 18.) Paragraphs 35, 36, 54, 68, and 69 allege specific misrepresentations Defendants have made:

- that a friend, family member, health care provider, or other acquaintance of the consumer referred the consumer to Defendants, or purchased the medical alert system for the consumer when, in fact, no one had referred the consumer to the Defendants or purchased it on their behalf;

- that Defendants' medical alert system is endorsed by reputable organizations when, in fact, no reputable organizations have endorsed Defendants' medical alert system;

- that consumers would not be charged the first monitoring fee until they received and activated the medical alert system when, in fact, customers were charged the first monitoring fee before they had received the medical alert system ; and

- that consumers could cancel the monitoring service at any time without any further financial obligation when, in fact, consumers could not cancel the monitoring service at any time without further financial obligation.

(Doc. 165 at ¶¶ 35, 36, 54, 68, 69).

     Paragraphs 56, 58, 59, 60, 61, 63, and 65 further allege the specific conduct in which Defendants are alleged to have participated in violation of the Telemarketing Sales Rule including having:

7

- provided substantial assistance or support to sellers or telemarketers whom Defendants knew or consciously avoided knowing induced consumers to pay for goods and services through the use of false or misleading statements (Doc. 165 at ¶ 56)

- engaged, or caused a telemarketer to engage, in initiating an outbound telephone call to a person's telephone number on the National Do Not Call Registry (Doc. 165 at ¶ 58);

- engaged, or caused a telemarketer to engage, in initiating an outbound telephone call to a person who previously has stated that he or she does not wish to receive an outbound telephone call made by or on behalf of the seller whose goods or services are being offered (Doc. 165 at ¶ 59);

- failed to transmit, or cause to be transmitted, the telephone number and name of the telemarketer or of the seller to any caller identification service in use by a recipient of a telemarketing call (Doc. 165 at ¶ 60);

- made, or caused others to make, outbound telephone calls that delivered a prerecorded message to induce the purchase of goods or services when the persons to whom these telephone calls were made had not signed an express agreement, in writing, authorizing the seller to place prerecorded calls to such person (Doc. 165 at ¶ 61);

- made, or caused others to make, outbound telephone calls that deliver a prerecorded message in which the telemarketer or message failed to disclose the identity of the seller, that the purpose of the call was to sell goods or services, and the nature of the goods or services (Doc. 165 at ¶ 63); and

- provided substantial assistance or support to sellers or telemarketers whom Defendants knew, or consciously avoided knowing, were in engaged in violations of the TSR (Doc. 165 at ¶ 65).

Finally, paragraphs 13, 14, and 15 allege facts demonstrating May and Roman's individual liability. The Amended Complaint alleges that they are officers of the corporate defendants and, acting alone or with others, controlled, had the authority to control, or participated in, the acts and practices set forth in the Complaint. (Doc. 165 at ¶ 14.) The Amended Complaint goes on to allege that Safe Home and Medguard (wholly-owned by Roman) are part of the common enterprise that operated this scheme and that Roman and May, as owners and officers of Lifewatch, Safe Home, and Medguard, have controlled, had the authority to

8

control, or participated in, the acts and practices of Lifewatch, Safe Home, and Medguard that constitute the common enterprise. (Doc. 165 at ¶ 15.)

Defendants' knowledge argument simply ignores the clear case law. As described above, Plaintiffs may satisfy the knowledge requirement in multiple ways, and knowledge may be inferred from Defendants' participation in business affairs. Plaintiffs have alleged that May and Roman are officers of the corporate defendants, and participated in and had the ability to control the deceptive acts and practices alleged in the Complaint. (Doc. 165 at ¶¶ 13 and 14.) Nothing more is required.

Defendants' "lumping" argument is also a nonstarter. Plaintiffs have alleged that all of the Defendants are part of a common enterprise that worked collectively to market Lifewatch's medical alert systems. The entities comprising a common enterprise are jointly and severally liable -- i.e., the acts of one are attributable to all. *See FTC v. Tax Club, Inc.*, 994 F. Supp. 2d 461, 469 (S.D. N.Y. Jan. 17, 2014) (group pleading allowed where common enterprise alleged). Accordingly, "grouping" the Defendants and applying all of the allegations of the complaint to all defendants is permissible.[8] *See Consumer Health Benefits Ass'n*, 2012 U.S. Dist. LEXIS

---

[8] Even without a claim of common enterprise, group pleading is appropriate where multiple defendants are alleged to have participated in a single scheme and information that would facilitate greater particularity is "exclusively within possession of a defendant." *See Hawk Mt. LLC v. Mirra*, Civ. No. 13-2083-SLR/SRF, 2016 U.S. Dist. LEXIS 117182, at * 7 (D. Del. Aug. 31, 2016) (group pleading "is permissible where…information that would permit greater particularity is exclusively within the possession of a defendant, and defendants are alleged to have acted together to facilitate a general scheme."); *FTC v. Hayes*, No. 4:96 cv 2162 SNL, 1997 U.S. Dist. LEXIS 8086, at * 4 (E.D. Mo. Feb. 18, 1997) (denying motion to dismiss where complaint pled facts as to all defendants and movant was a corporate officer). Even those courts that have applied the heightened pleading standard of Rule 9(b) to Section 5 claims acknowledged that group pleading is permissible where the defendants are alleged to have participated in a single scheme. Where there are several defendants, it is not necessary for the plaintiffs to identify "false statements made by each and every defendant." *FTC v. ELH Consulting, LLC*, No. CV 12-02246-PHX-FJM, 2013 U.S. Dist. LEXIS, at *5 (D. Az. Sep. 4, 2013) (denying motion for judgment on the pleadings and quoting *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989) ("Courts may relax Rule 9(b)'s particularity requirements in circumstances where plaintiff will not have personal knowledge of all of the underlying facts.")). *See FTC v. Centro Natural Corp.*, No. 14-23879-CIV, 2014 U.S. Dist. LEXIS 180549 (S.D. Fla. Dec. 10, 2014) (denying motion to dismiss

72161, at *37-38 (denying defendants' motion to dismiss).[9] All that is required is that Plaintiffs provide enough detail to put Defendants on fair notice of the claims against them.[10]

Finally, Contrary to Defendants' assertion, "the buck does not stop" solely with Defendant Sirlin. That this Court found Defendant Sirlin to have authority to control Lifewatch's business practices (Doc. 130) does not settle whether Roman or May *also* had the ability to control Lifewatch, Safe Home, and Medguard's business practices. The requirement is not, as Defendants argue, whether the individual defendant was a "central figure" in the challenged corporate activity, but whether the individual defendant had the ability to control the corporate defendants' deceptive practices and had actual or constructive knowledge of those business practices. *See World Media Brokers*, 415 F.3d at 764 (stating standard); *Bay Area*, 423 F.3d at 636 (same); *Amy Travel*, 875 F.2d at 573-574 (same). Courts routinely find that multiple individual defendants had the requisite control and knowledge to be held individually liable

---

complaint as to several defendants); *FTC v. AMG Servs.*, No. 2:12-CV-00536-GMN-VCF, 2012 U.S. Dist. 183159, at * 9 (D. Nev. Dec. 28, 2012) (same); *FTC v. Johnson*, No. 2:10-cv-02203-MMD-GWF, 2013 U.S. Dist. LEXIS 80341, at *27-28 (D. Nev. Jun. 6, 2013) (same).

[9] *See also FTC v. Consumer Health Benefits Ass'n*, No. 10-CV-3551 (ILG), 2011 U.S. Dist. LEXIS 92389 (E.D.N.Y. Aug. 18, 2011) (granting plaintiff's motion to amend to add new defendants); *FTC v. Hayes*, No. 4:96 cv 2162 SNL, 1997 U.S. Dist. LEXIS 8086, at *4 (E.D. Mo. Feb. 18, 1997) (denying motion to dismiss); *United States ex rel. Trombetta v. Emsco Billing Servs.*, No. 96 C 226; 99 C 151, 2002 U.S. Dist. LEXIS 28463, at *11 (N.D. Ill. Dec. 5, 2002) (Gottschall, J.) (denying defendants' motion to dismiss).

[10] *See Sanders v. JGWPT Holdings, Inc.*, No. 14 C 9188, 2016 U.S. Dist. LEXIS 97722, at *38 (N.D. Ill. July 26, 2016) (Ellis, J.) (group allegations specific enough to put defendants on notice of claims against them); *Vandenburgh v. Ogden*, No. 15 C 6191, 2016 U.S. Dist. LEXIS 12493, at * 16-17 (N.D. Ill. Feb. 3, 2016) (Ellis, J.) (same); *Harris v. Kruger*, No. 13-cv-8584, 2015 U.S. Dist. LEXIS 109306, at *9 (N.D. Ill. Aug. 19, 2015) (same); *Frazier v. US Bank Nat'l Ass'n*, No. 11 C 8775, 2013 U.S. Dist. LEXIS 45330, at *10-11 (N.D. Ill. Mar. 29, 2013) (St. Eve, J.) (same). Defendants' reliance on *FTC v. Swish Mktg.*, No. 09-03814 RS, 2010 U.S. Dist. LEXIS 15016, (N.D. Cal. Feb. 22, 2010); *FTC v. Wellness Support Network*, No. C-10-04879 JCS, 2011 U.S. Dist. LEXIS 36453 (N.D. Cal. Apr. 4, 2011), *FTC v. Innovative Mktg., Inc.*, 654 F. Supp. 2d 378 (D. Md. 2009), and *Benning*, 2010 U.S. Dist. LEXIS 64030, is misplaced. None of those cases involved allegations of a common enterprise. Thus, the allegations as to each individual defendant rested on their own, rather than incorporating all of the allegations of the complaint as to each defendant.

under the FTC Act.[11] *See World Media Brokers*, 415 F.3d 758 (holding multiple defendants liable under the FTC Act); *Bay Area*, 423 F.3d 627 (same).[12]

> B.  **Plaintiffs Have Pled Common Enterprise as to Defendants Safe Home, Medguard, May, and Roman.**

Plaintiffs have also adequately pled a common enterprise among Defendants Lifewatch, Safe Home, Medguard, Sirlin, May, and Roman. The FTC Act disregards the corporate form "if the structure, organization and operation of a business venture among separate corporate entities reveal a common enterprise or a 'maze of interrelated companies.'" *Consumer Health Benefits Ass'n*, 2012 U.S. Dist. LEXIS 72161, at *15 (quoting *Del. Match Co. v. FTC*, 332 F.2d 745, 746 (2d Cir. 1964)). Courts look to a variety of factors when determining the existence of a common enterprise, including: (1) common officers and employees; (2) common control; (3) shared offices; (4) commingling of funds; and (5) shared advertising and marketing. *See FTC v. Wyndham Worldwide*, No. 13-1887, 2014 U.S. Dist. LEXIS 84913, at *13 (D.N.J. June 23, 2014) (denying defendants' motion to dismiss where FTC pled "specific facts relating to common control, share of office space, and lack of distinction between the defendants.").

In the instant case, Plaintiffs have pled more than just conclusory allegations of the Defendants' roles in the illegal activities and the common enterprise. Paragraph 15 states that Defendants have conducted their business practices: (1) through an interrelated network of companies; (2) with common ownership; (3) common business functions; (4) common office locations; (5) commingling funds; and (6) being controlled by the same individuals. It is

---

[11] Indeed, should the Court decide that Plaintiffs' should file a Second Amended Complaint, Plaintiffs are prepared to name additional individuals and entities to this action, including other corporate officers, based on their roles in the common enterprise and sharing in its process.

[12] *See also AFD Advisors, LLC*, 2014 U.S. Dist. LEXIS 8870 (denying motion to dismiss in multi-defendant action under FTC Act); *Tax Club, Inc.*, 994 F. Supp. 2d 461 (same); *FTC v. Centro Natural Corp.*, No. 14-23879-CIV, 2014 U.S. Dist. LEXIS 180549 (S.D. Fla. Dec. 10, 2014) (same); *Nat'l Urological Group, Inc.*, 645 F. Supp. 2d 1167 (granting summary judgment on FTC Act claims against multiple defendants).

important to note that paragraph 15 incorporates the allegations specific to the scheme where it states, "each of them is jointly and severally liable for the acts and practices alleged below." (Doc. 165 at ¶ 15.) Thus, the myriad of specific allegations that define the misconduct are incorporated into paragraph 15 – each misrepresentation and bad act is attributable to all Defendants.[13] Moreover, the Amended Complaint states facts specifically related to the elements of the common enterprise. *See* Doc. 165, at ¶¶ 12, 13, 14 (alleging common officers and common control), ¶¶ 10 and 11 (alleging shared offices), and ¶¶ 17 and 18 (shared marketing). These allegations are more than sufficient to "state a claim that is plausible on its face" and to place the Defendants on fair notice of the claims against them. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (reversing denial of motion to dismiss).[14]

### C. Plaintiffs' Evidence Reinforces the Amended Complaint's Well-Pled Allegations.

Given the voluminous evidence already admitted in this matter, it strains credulity for Defendants to argue that they do not have fair notice of Plaintiffs' allegations. Unlike the moving party, who cannot use evidence outside the complaint to support its motion to dismiss, "a party opposing a Rule 12(b)(6) motion may submit materials outside the pleadings to illustrate the facts the party expects to be able to prove." *Geinosky v. City of Chicago*, 675 F.3d 743, 745

---

[13] Defendants' reliance on *FTC v. Ameridebt,* 343 F. Supp. 2d 451 (D. Md. 2004) and *FTC v. Tax Club, Inc.* 994 F. Supp. 2d 461 (S.D.N.Y. 2014), to support their argument that Plaintiffs have failed to adequately plead common enterprise is mystifying. Neither of those complaints provide any greater detail than the Amended Complaint in this matter, and both were found sufficient by the courts.

[14] *See also Tax Club, Inc.*, 994 F. Supp. 2d at 469 (denying defendants' motion to dismiss common enterprise claim)*; Consumer Health Benefits Ass'n*, 2012 U.S. Dist. LEXIS 72161, at *15 (denying defendants' motion to dismiss plaintiffs' complaint based on a theory of common enterprise; plaintiffs were not required to meet the heightened pleading requirements of 9(b)); *County of Cook v. HSBC N. Am. Holdings, Inc.,* 136 F. Supp. 3d 952, 967 (N.D. Ill. 2015) (denying defendants' motion to dismiss for failure to state a claim for common enterprise where plaintiffs alleged facts establishing the corporate structure and pled in a single paragraph that "Defendants collectively had operated as a common enterprise.").

12

n.1 (7th Cir. 2012) (collecting cases); *Santiago v. United Air Lines, Inc.*, No. 11 C 9109, 2012 WL 2049486, at *1 (N.D. Ill. June 6, 2012) (Feinerman, J.) (denying motion to dismiss). Here, Plaintiffs have numerous additional materials upon which they can rely to support the facts they expect to be able to prove. For example:

- Beginning in November 2012, a series of legal actions were commenced against Lifewatch by State Attorneys General, competitors, and private litigants, all based on the same facts Plaintiffs alleges in the Amended Complaint. (Doc. 165, Plaintiffs' Exhibit ("PX") 1, Declaration of Roberto Menjivar ("Menjivar Dec.") Attachment ("Att.") K at 1, 9, 10, and Att. L. at 2.)

- In March 2013, Defendants Sirlin, May, and Roman were present at a dinner meeting during which Ken Gross, the Executive Chairman of Connect America (a competitor of Defendant Lifewatch's that was purchasing a significant number of customer contracts from Lifewatch at the time) expressed his opinion that robocalls were damaging the entire medical alert device industry. Sirlin responded by telling Gross that Lifewatch's telemarketing was so successful that the company would continue telemarketing until it was forced to stop. (Doc. 24-9, PX 13, Gross Dec. at ¶¶ 12-13.)

- In April 2013, Connect America terminated its relationship with Lifewatch, explaining in an email to Sirlin, May, and Roman, that Connect America had determined that the customers it was acquiring from Lifewatch had been contacted by misleading robocalls and that the corresponding telemarketing scripts used by the call centers included various misrepresentations. (Doc. 24-9, PX 13, Gross Dec., at ¶ 16, Att. D.)

- In May 2013, May communicated with a Better Business Bureau investigator about consumer complaints related to Lifewatch's telemarketing, including illegal robocalling and identified himself as the Chief Operating Officer of Lifewatch. (Doc. 24-2, PX 6, Smith Declaration, at ¶ 9.)

- Lifewatch responded, in detail, to the FTC's Civil Investigation Demand, which outlined the nature and scope of the FTC's investigation. (Doc. 15-1, PX 1, Menjivar Dec., Att. I.)

- Plaintiffs subsequently filed a detailed complaint against Lifewatch in this Court resulting in expedited discovery, a preliminary injunction hearing, and the entry of a 47-page Memorandum Opinion and Order detailing the reasons why Plaintiffs had demonstrated a likelihood of success on the merits of their FTC Act, TSR, and FDUTPA claims. (Doc. 1 and 130.)

- Roman is the chairman of Lifewatch, and the CEO of Defendant Safe Home. (Preliminary Injunction Hearing Transcript ("Tr.") at 187-88.)

- Roman finances Lifewatch. (Doc. 24-8, PX 12, Hendrickson Dec. at ¶ 15.)

- Roman owns 72% of Lifewatch, and owns 90% of both Medguard, and Safe Home. May owns 10% of Lifewatch through a family trust.

- May and Roman are vice-presidents of Lifewatch. (Doc. 15-2, PX 1, Menjivar Dec. Att. M.)

- May was the person who made the decision in 2012 for Lifewatch to ramp up its telemarketing through Worldwide. (Doc 100-4 at 107-8.)

- May is described as essentially running Lifewatch. (Doc. 24-8, PX 12, Hendricksen Dec. at ¶ 15.)

- Lifewatch's financial statement lists more than $34 million in sales of customer contracts to Safe Home, and nearly $ 8 million in sales of customer contracts to Medguard. (Doc. 16-2, PX 1, Menjivar Dec., Att. V (redacted).)

- Medguard conducted customer service on Lifewatch's behalf by taking verification calls from the telemarketers, aided Lifewatch in fulfilment of customer contracts, and charged consumers for medical alert systems supplied by Lifewatch. (Tr. at 79, 82-83, 118, 146, 173; Doc. 24-22, PX 26, Cavic Dec. at ¶¶ 4, 5; Doc. 25-2, PX 34, Felker Dec. at ¶ 6; Doc. 25-27, PX 59, Thill Dec. at ¶¶ 8; Doc. 21, PX 3, Tyndall Dec. at ¶ 8, Att. E.)

- Medguard was enjoined from engaging in the same illegal conduct as Lifewatch in *Life Alert v. ConnectAmerica.com*, LLC, No. 2:13-CV-03455-JAK SS (C.D. Cal.).

- Customer service calls to t Lifewatch are frequently handled by representatives identifying themselves as Safe Home's employees. (Doc. 25-18, PX 50, Mey Dec. at ¶ 34; Doc. 20-1, PX 1, Menjivar Att. BBB, at pp. 6-7, lines 25-4; (Doc. 25-9, PX 41, James Dec. at ¶ 6, Doc. 17-2, PX 1, Menjivar Dec. Att. CC, at p. 5-6, lines 22-)

- Lifewatch's customer service department moved to Safe Home's headquarters in Cromwell, Connecticut sometime in 2015. (Doc. 25-9, PX 41, James Dec. at ¶¶ 5, 6; Doc. 17-2, PX 1, Menjivar Dec. Atts. BB, CC; Doc. 25-18, PX 50, Mey Dec. at ¶¶ 31, 34; Doc. 20-1, PX 1, Menjivar Dec. Att. YY, BBB.)

- Safe Home's employees have told consumers that Lifewatch was purchased by, or is now a "division" of, Safe Home. (Doc. 25-18, PX 50, Mey Dec. at ¶ 34; Doc. 20-1, PX 1, Menjivar Att. BBB (transcript of call between Mey and Lifewatch.)

- The complaint in *Bank v. Lifewatch, Inc., et al.*, No. 1:15-cv-2278 (E.D.N.Y. filed April 22, 2015), alleges that a telemarketer gave Safe Home's address as the headquarters of the seller of the medical alert device being offered.

All of this evidence supports the Amended Complaint's allegations that Defendants operated an illegal telemarketing scheme.

## IV. Conclusion

For all of the foregoing reasons, Plaintiffs request that the Court deny Defendants' Motion to Dismiss.

                                                Respectfully Submitted,
                                                DAVID C. SHONKA
                                                Acting General Counsel

Dated: September 21, 2016        /s/Samantha Gordon
                                                DAVID A. O'TOOLE
                                                SAMANTHA GORDON
                                                Federal Trade Commission, Midwest Region
                                                55 West Monroe Street, Suite 1825
                                                Chicago, Illinois 60603
                                                Telephone: (312) 960-5623
                                                Facsimile: (312) 960-5600

                                                Attorneys for Plaintiff
                                                FEDERAL TRADE COMMISSION

                                                PAMELA JO BONDI
                                                Attorney General
                                                State of Florida

Dated: September 21, 2016        /s/Kristen Johnson
                                                DENISE BEAMER
                                                KRISTEN JOHNSON
                                                Assistant Attorney General
                                                Florida Bar # 69369
                                                Office of the Attorney General
                                                Consumer Protection Division
                                                135 West Central Boulevard, Suite 1000
                                                Orlando, Florida 32801
                                                Telephone: (407) 245-0833
                                                Facsimile: (407) 245-0365

                                                Attorney for Plaintiff
                                                STATE OF FLORIDA
                                                OFFICE OF THE ATTORNEY GENERAL

## **CERTIFICATE OF SERVICE**

    I, Samantha Gordon, hereby certify that on September 21, 2016, I electronically filed PLAINTIFFS' OPPOSITION TO DEFENDANT SAFE HOME SECURITY, INC., MEDGUARD ALERT, INC., MITCH MAY, and DAVID ROMAN'S MOTIONS TO DISMISS, with the Court using the CM/ECF system, which will automatically send copies to any attorney of record in the case.

                                              Respectfully Submitted,

                                              s/ Samantha Gordon
                                              SAMANTHA GORDON
                                              Federal Trade Commission
                                              55 West Monroe Street, Suite 1825
                                              Chicago, Illinois 60603
                                              Voice: (312) 960-5623
                                              Fax:   (312) 960-5600
                                              email: sgordon@ftc.gov