UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br>STATE OF FLORIDA, OFFICE OF THE<br>ATTORNEY GENERAL, DEPARTMENT<br>OF LEGAL AFFAIRS,<br><br>            Plaintiffs,<br><br>            v.<br><br>LIFEWATCH INC., a New York corporation,<br>also d/b/a LIFEWATCH USA and MEDICAL<br>ALARM SYSTEMS,<br><br>SAFE HOME SECURITY, INC., a<br>Connecticut corporation,<br><br>MEDGUARD ALERT, INC., a Connecticut<br>corporation,<br><br>EVAN SIRLIN, individually and as an officer<br>or manager of Lifewatch Inc.,<br><br>MITCHEL MAY, individually and as an officer or<br>manager of Lifewatch Inc., and<br><br>DAVID ROMAN, individually and as an officer<br>or manager of Lifewatch Inc., Safe Home Security,<br>Inc., and Medguard Alert, Inc.<br>            Defendants. | Case No. 15cv5781<br><br>Judge Gary Feinerman |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MITCHEL MAY'S**

**MOTION TO DISMISS THE AMENDED COMPLAINT**

1

Defendant Mitchel May ("May"), through counsel and pursuant to Fed. R. Civ. P. 12(b)(6), respectfully moves to dismiss the Amended Complaint in full as to May.

I. **PRELIMINARY STATEMENT**

Two years after serving their Civil Investigative Demand on Lifewatch, one year after initiating suit, and many months after obtaining an injunction, the FTC amended its Complaint to add new parties whose identities and relationships to defendants were well-known to the FTC since 2014 and 2015. As to Mitchel May, that Amended Complaint contained only threadbare recitals of the elements, but *zero* allegations setting forth anything specific May is accused of doing. In their memorandum in opposition to the defendants' motions to dismiss, plaintiffs argue that the FRCP 9(b) pleading standard is inapplicable. Plaintiffs also argue that record evidence "supports the Amended Complaint's allegations." But, these arguments cannot save the fatal flaws in plaintiffs' defective Amended Complaint.[1]

First, while there is ample case law support for the proposition that the FRCP 9(b) pleasing standard applies,[2] even if, *arguendo*, this court determines that the heightened pleading requirements of FRCP 9(b) do not apply in this FTC Act case, plaintiffs' allegations do not satisfy the lesser – but still demanding – requirements of FRCP 8.

Second, while the Seventh Circuit permits a plaintiff opposing a motion to dismiss to submit affidavits illustrating in greater detail the facts alleged in the complaint (so long as the additional facts are consistent with those in the complaint), the record documents to which plaintiffs cite are, in any event, insufficient to "nudge the claims…across the line from conceivable to plausible" as is required under *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

---

[1] Notably, plaintiffs assert that if the court rules against them on the motion to dismiss they "are prepared" to name additional individuals and entities in this action. (R. Doc. 193, FN11).

[2] *See e.g., FTC v. Lights of Am., Inc.*, 760 F. Supp. 2d 848 (C.D. Cal. 2010) (concluding that "Rule 9(b) applies to claims for violation of the FTC Act"); *See also FTC v. ELH Consulting, LLC*, 2013 U.S. Dist. LEXIS 126110 (D. Ariz. Sept. 4, 2013) (same); *FTC v. Ivy Capital, Inc.*, 2011 U.S. Dist. LEXIS 57035 (D. Nev. May 25, 2011) (same).

2

Accordingly, plaintiffs' Amended Complaint must be dismissed as to Mitchel May.

## II. LEGAL ARGUMENTS

1. **Plaintiffs' Amended Complaint Fails To Assert Facts Sufficient To State A Claim**

The Amended Complaint alleges only that May is a corporate officer of Lifewatch and that he "formulated, directed, controlled, had the authority to control, *or* participated in the acts and practices set forth in this Complaint." This is, standing alone, insufficient as a matter of law to state any claim against May in his individual capacity. *See FTC v. Swish Mktg.*, 2010 U.S. Dist. LEXIS 15016 (N.D. Cal. Feb. 22, 2010). In their opposition brief, plaintiffs argue that the Court should make all possible inferences from the allegations in plaintiffs' favor and cites to *AnchorBank, FSB v. Hofer*, 649 F.3d 610 (7th Cir. Wis. 2011). But, a review of the *Anchor Bank* opinion serves only to highlight the defectiveness of plaintiffs' pleading in the matter *sub judice*. Unlike in the case at bar, Anchor Bank did much more than simply cut-and-paste the claim elements into the complaint.[3]

Further, plaintiffs' inadequate Amended Complaint cannot be saved by simply lumping May in with the five other named defendants through the expediency of pleading that the "defendants" collectively are equally liable for the ten separate claims. Notwithstanding the abundance of authority cited in defendants' moving papers, plaintiffs argue that their "lump pleading" is permissible. And, in support of this argument, plaintiffs cite to *FTC v. Tax Club, Inc.*, 994 F. Supp. 2d 461 (S.D.N.Y. 2014)[4]. But, that case is of no moment in determining

---

[3] As the court explained, the Amended Complaint included, inter alia, the following detailed factual narrative: "Between September 2008 and June 2009, Hofer engaged in 36 collusive trades with his co-conspirators, and…the trades represented 100% of the Fund's daily trading activity. These synchronized trades were not coincidental. Before or during each of the coordinated transactions, Hofer communicated with the other co-conspirators either in person, by phone, or by email. And on several occasions Hofer would forward the Fund's electronic unit trade confirmation to his coconspirator, or the co-conspirator would forward the confirmation to Hofer." Id at 616. (internal quotations and citations omitted).

[4] The plaintiffs also cite to *Moore v. Kayport Package Express*, 885 F.2d 531 (9th Cir. Cal. 1989), but in that case the court affirmed the dismissal of plaintiffs' second amended complaint for failure to allege defendants were

whether plaintiffs' claims against the individual defendants can survive FRCP 12(b)(6) scrutiny. Moreover, in that case, the court did not, as plaintiffs contend, simply hold that "group pleading [is] allowed where common enterprise [is] alleged." Rather, the court held that "so long as the Amended Complaint adequately alleges wrongdoing by the common enterprise, *as well as facts supporting a finding that the entity in question is part of the common enterprise*, it is immaterial whether the Amended Complaint alleges that each Corporate Defendant specifically engaged in deceptive telemarketing practice[s]." (emphasis added) *Id*. at 470. In other words, before plaintiffs can permissibly collectivize defendants, plaintiffs must first, as a threshold matter, assert facts from which it can reasonably be inferred that a particular defendant actually belongs in the case. Here, May is an individual defendant (not a corporate defendant), and there is no factual support for the proposition that May actually belongs in this case. Thus, it is improper to lump May in with the other defendants simply because plaintiffs have advanced a common enterprise theory against the corporate defendants. *See Sears v. Likens*, 912 F. 2d 889, 893 (7th Cir. 1990) ("A complaint that attributes misrepresentations to all defendants, lumped together for pleading purposes, generally is insufficient.") (applying Rule 9(b) in context of a misrepresentation theory; internal quotes omitted). *See also Atuahene v. Hartford*, 2001 WL 604902 at \*\*1 (2d Cir., May 31, 2001) (noting that "[b]y lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct, [plaintiff's] complaint failed to satisfy [Rule 8's] minimum standard").

Indeed, the Amended Complaint is devoid of any facts from which it can reasonably be inferred that May knew about, participated in, or had some measure of control over the allegedly

---

motivated by financial gain, affirmed the denial of leave to file a third amended complaint as plaintiffs had failed to plead fraud with specificity.

4

offending corporate activities. Plaintiffs do not deny this. In fact, they have doubled-down[5] and argued: "Plaintiffs have alleged that May and Roman are officers of the corporate defendants, and participated in and had the ability to control the deceptive acts and practices alleged in the Complaint. Nothing more is required." (R. Doc. 193, p. 10).

But, as is evident from a plain review of the cases cited in defendant's moving papers, more is indeed required in order to properly plead individual liability. *See e.g., FTC v. Swish Mktg.*, 2010 U.S. Dist. LEXIS 15016 (N.D. Cal. Feb. 22, 2010); *FTC v. Wellness Support Network, Inc.*, 2011 U.S. Dist. LEXIS 36453 (N.D. Cal. Apr. 4, 2011). Moreover, a defendant must be given fair notice of the claims and the grounds upon which the claims rest, and a mere boilerplate recitation of the elements is insufficient to survive motion to dismiss scrutiny. *See Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013) ("Each defendant is entitled to know what he or she did that is asserted to be wrongful. A complaint based on a theory of collective responsibility must be dismissed.").

2. **The Additional Facts within the Opposition Brief are Insufficient to State a Claim**

Plaintiff's boilerplate recitation of facts as to individual liability are not entitled to an assumption of truth. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1951 (U.S. 2009). Ostensibly, plaintiffs recognize this and so they "hedge their bets" by referring to a hodgepodge of disputed record evidence. As set forth in *Santiago v. United Air Lines, Inc.*, 2012 U.S. Dist. LEXIS 81095, *2 (N.D. Ill. June 6, 2012), a court must consider additional facts included in the plaintiff's opposition brief, so long as those facts "are consistent with the pleadings." Here, even if the court were to treat plaintiffs' "additional facts" as integrated within the Amended Complaint for purposes of the FRCP 12(b)(6) motion, plaintiffs' Amended Complaint would still be

---

[5] At the motion presentment hearing, the FTC stated that it would not amend the Amended Complaint because if it did defendants would probably just file another motion to dismiss anyway.

5

insufficient as a matter of law. This is because many of the additional factual allegations are not supported by the record documents cited by Plaintiff. And, even if the additional factual allegations were supported by the record documents, they do not plausibly show that May participated directly in the alleged deceptive acts, controlled or had authority to control them, or had knowledge of them.

As to their allegations against May, plaintiffs now chiefly rely on the affidavits of Christopher Hendriksen, Ken Gross, and Bill Smith, and the deposition transcript of Leslie Steinmetz. Plaintiffs have opted against simply citing "hypothetical facts,[6]" and have instead cited directly to the record. Accordingly, those extraneous materials (i.e. the affidavits and deposition transcripts) should be evaluated as if they were exhibits to the Amended Complaint. See *Safety Solutions, Inc. v. City of Chi.*, 2011 U.S. Dist. LEXIS 92347, *7 (N.D. Ill. Aug. 18, 2011) ("In ruling on a Rule 12(b)(6) motion, courts may consider exhibits attached to the pleadings if the complaint refers to the document at issue…"). See *Massey v. Merrill Lynch & Co.*, 464 F.3d 642 (7th Cir. Ind. 2006) ("a party may plead itself out of court" through using exhibits to a complaint.). Here, the exhibits do not support -- and, in many instances, undermine -- plaintiffs' allegations against May.

**Hendriksen Affidavit**

Plaintiffs assert that the affidavit of Christopher Hendriksen, principal of the medical monitoring vendor VRI, describes May as "essentially running Lifewatch." At best, this is a complete mischaracterization of the affidavit. The affidavit merely sets forth information about how medical monitoring works, and then concludes with the statement that "I most regularly speak with Mitchel May…" In any event, these facts do not plausibly show that

---

[6] See *Pioneer Elecs. v. Erazmus*, 1998 U.S. Dist. LEXIS 4019, *5 (N.D. Ill. Mar. 27, 1998) (discussing consideration of hypothetical facts versus extraneous materials within the context of a motion to dismiss).

6

May participated directly in the alleged deceptive acts, controlled or had authority to control them, or had knowledge of them.

**Gross Affidavit**

Plaintiffs cite to paragraphs 12 and 13 in the affidavit of Ken Gross (the principal of Lifewatch's competitor and former business partner). But, these paragraphs indicate only that May attended a dinner meeting and that at some point during the dinner meeting Gross somehow "expressed his beliefs" about the damage that "robocalls" were doing to the industry. In response to Gross' expression of his beliefs, co-defendant Sirlin is alleged to have told Gross that Lifewatch was obtaining customers through "telemarketing call centers" and "would continue to do so." Plainly, within these two paragraphs, Sirlin is not alleged to have said anything about violative telemarketing practices. And, there is no indication that May participated in this discussion or was even present during this part of the "dinner meeting."

Plaintiffs also cite to paragraph 16 in the affidavit of Ken Gross, and Exhibit D thereto. But, this email is nothing more than a business partner endeavoring to terminate a business agreement purportedly based on unknown sources and unknown things "[they] are hearing" about telemarketing. Moreover, there is no indication that Mr. May responded to this email – if indeed he even received it.

Thus, as with the Hendriksen affidavit, these facts do not plausibly show that May participated directly in the alleged deceptive acts, controlled or had authority to control them, or had knowledge of them.

**Smith Affidavit**

Plaintiffs also cite to paragraph 9 of the affidavit of Bill Smith (a BBB investigator). A plain reading of this affidavit shows simply that, based on a hunch, Smith called Lifewatch and inquired about its relationship with "Senior Medical Alarm." May returned the call, provided

7

Smith with a statement about Lifewatch's business (including that Dick Van Patten was the spokesman) and agreed to look into whether Lifewatch purchased certain customer accounts (apparently based on telephone numbers provided by Smith). May advised Smith that he found no information about the telephone numbers, and then spoke generally about the industry. These facts do not plausibly show that May participated directly in the alleged deceptive acts, controlled or had authority to control them, or had knowledge of them.

**Steinmetz Testimony**

And, plaintiffs cite to the deposition of Leslie Steinmetz for the proposition that "May was the person who made the decision in 2012 for Lifewatch to ramp up its telemarketing through Worldwide." But, Steinmetz did not make this statement, nor can this statement be reasonably inferred from Steinmetz's incoherent testimony.

**Other Exhibits**

The remainder of the exhibits and new factual averments do not, in any way, enable plaintiffs to bolster their individual liability allegations as to May. Specifically, plaintiffs cite: a) Roberto Menijivar's declaration relative to lawsuits being initiated against Lifewatch; b) Lifewatch's response to the CID; c) the court's preliminary injunction opinion; d) Lifewatch's financial statements; e) affidavits pertaining to MedGuard's business relationship with Lifewatch; f) a consent injunction entered in a California trademark case; g) declarations pertaining to customer service; and h) the *Bank v Lifewatch* complaint, which was filed in the Eastern District of New York. Again, none of these facts or documents plausibly show that May participated directly in the alleged deceptive acts, controlled or had authority to control them, or had knowledge of them.

### III.   CONCLUSION

For the reasons set forth herein, Mitchel May respectfully requests that the Amended Complaint be dismissed against him with prejudice.

DATED: October 5, 2016

                          By: Joseph Lipari
                          **/s/  Joseph Lipari**
                          One of Mitchel May's Attorneys
                          Jason Sultzer, Esq. *(pro hac vice)*
                          Joseph Lipari, Esq. (*pro hac vice*)
                          THE SULTZER LAW GROUP, P.C.
                          14 Wall Street, 20th Floor
                          New York, New York 10005
                          (212) 618-1938 / Fax: (888) 749-7747