**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| FEDERAL TRADE COMMISSION; and STATE OF FLORIDA, OFFICE OF THE ATTORNEY GENERAL, DEPARTMENT OF LEGAL AFFAIRS, | ) ) ) ) ) |
| Plaintiffs, | ) Case No. 15 cv 5781 |
| v. | ) ) Honorable Gary Feinerman |
| LIFEWATCH INC., a New York corporation, also d/b/a LIFEWATCH USA and MEDICAL ALARM SYSTEMS; SAFE HOME SECRUITY INC., a Connecticut corporation; MEDGUARD ALERT, INC., a Connecticut corporation; EVAN SIRLIN, individually and as an officer or manager of Lifewatch Inc.; MITCHEL MAY, individually and as an officer or manager of Lifewatch Inc.; and DAVID ROMAN, individually and as an officer or manager of Lifewatch Inc., Safe Home Security, Inc., and Medguard Alert, Inc. | ) ) ) ) ) ) ) ) ) ) ) ) |

**DEFENDANTS SAFE HOME SECURITY, INC., MEDGUARD
ALERT, INC., AND DAVID ROMAN'S ANSWER AND AFFIRMATIVE
DEFENSES TO PLAINTIFFS' AMENDED COMPLAINT FOR
<ins>PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF</ins>**

Defendants, Safe Home Security, Inc., MedGuard Alert, Inc., and David Roman (collectively, "Defendants"), for their answer to plaintiffs' Amended Complaint for Permanent Injunction and Other Equitable Relief, state as follows:

1.      The FTC brings this action under Sections 13(b) and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b) and 57b, and the Telemarketing and Consumer Fraud and Abuse Prevention Act ("Telemarketing Act"), 15 U.S.C. §§ 6101-6108, to obtain temporary, preliminary, and permanent injunctive relief, rescission or reformation of contracts, restitution, the refund of monies paid, disgorgement of ill-gotten monies, and other equitable relief for Defendants' acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and in violation of the FTC's Trade Regulation Rule entitled "Telemarketing Sales Rule" ("TSR"), 16 C.F.R. Part 310.

**ANSWER:**  Defendants admit plaintiff FTC purports to state claims under the statutes identified in this paragraph and have requested the Court enter the relief enumerated in this paragraph.  Defendants deny there is a factual basis for the claims asserted against them or that plaintiff is entitled to the relief requested by them and deny the remaining allegations of this paragraph.

2.      The State of Florida brings this action pursuant to the Telemarketing and Consumer Fraud and Abuse Prevention Act ("Telemarketing Act"), 15 U.S.C. §§ 6101-6108 and the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Chapter 501, Part II, Florida Statutes (2014), to obtain temporary and permanent injunctions, consumer restitution, civil penalties and other equitable relief, and reimbursement of costs and attorneys' fees for Defendants' acts or practices in violation of the TSR and FDUTPA.  The State of Florida has conducted an investigation, and the head of the enforcing authority, Attorney General Pamela Jo Bondi, has determined that an enforcement action serves the public interest as required by FDUPTA Section 501.207, Florida Statutes (2014).

**ANSWER:**  Defendants admit plaintiff State of Florida purports to state claims under the statutes identified in this paragraph and have requested the Court enter the relief enumerated in this paragraph.  Defendants deny there is a factual basis for the claims asserted against them or that plaintiff is entitled to the relief requested by them and deny the remaining allegations of this paragraph.

## Jurisdiction and Venue

3.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345, and 15 U.S.C. §§ 45(a), 53(b), 57b, 6102(c), and 6105(b).

**ANSWER:**  Defendants neither admit nor deny the legal conclusions set forth in this paragraph.

4.      This Court has supplemental jurisdiction over the State of Florida's claims pursuant to 28 U.S.C. § 1367.

**ANSWER:**  Defendants neither admit nor deny the legal conclusions set forth in this paragraph.

5.      Venue is proper in this district under 28 U.S.C. § 1391(b)(1) and (2), (c)(1) and (2), and (d), and 15 U.S.C. § 53(b).

**ANSWER:**  Defendants neither admit nor deny the legal conclusions set forth in this paragraph; to the extent the allegations set forth in this paragraph can be construed as facts, they are denied.

## Plaintiffs

6.      The FTC is an independent agency of the United States Government created by statute. 15 U.S.C. §§ 41-58.  The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce.  The FTC also enforces the Telemarketing Act, 15 U.S.C. §§ 6101-6108.  Pursuant to the Telemarketing Act, the FTC promulgated and enforces the TSR, 16 C.F.R. Part 310, which prohibits deceptive and abusive telemarketing acts or practices.

**ANSWER:**  Defendants admit the allegations of this paragraph.


7.      The FTC is authorized to initiate federal district court proceedings, by its own attorneys, to enjoin violations of the FTC Act and the TSR and to secure such equitable relief as may be appropriate in each case, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies.  15 U.S.C. §§ 53(b), 56(a)(2)(A), 56(a)(2)(B), 57b, 6102(c) and 6105(b).

**ANSWER:**   Defendants deny there is any basis for plaintiff FTC to pursue this action against them but admit the agency is authorized generally to pursue actions to enjoin violations of the FTC Act and the TSR and to secure such equitable relief as may be appropriate in each case, including rescission or reformation of contracts, restitution, and the refund of monies paid, and the disgorgement of ill-gotten monies.  Defendants deny the relief enumerated in this paragraph is appropriate against Defendants.


8.      The State of Florida is the enforcing authority under FDUTPA pursuant to Florida Statutes Section 501.203(2) and is authorized to pursue this action to enjoin violations of the TSR, and in each such case, to obtain damages, restitution, and other compensation on behalf of Florida residents.  The State of Florida is authorized to pursue this action to enjoin violations of FDUTPA and to obtain legal, equitable or other appropriate relief including rescission or reformation of contracts, restitution, the appointment of a receiver, disgorgement of ill-gotten monies, or other relief as may be appropriate. §501.207, Fla. Stat.

**ANSWER:**   Defendants deny there is any basis in fact for plaintiff State of Florida to pursue this action against them but admit that the agency is authorized generally to pursue actions to enjoin violations of the FDUTPA and the TSR and to secure such equitable relief as may be appropriate in each case, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies.  Defendants deny that the relief enumerated in this paragraph is appropriate against Defendants.


## Defendants

9.      Defendant Lifewatch Inc. ("Lifewatch"), also doing business as Lifewatch USA and Medical Alarm Systems, is a New York corporation with its principal place of business at 266

Merrick Road, Lynbrook, New York 11563. Lifewatch transacts or has transacted business in this district and throughout the United States.

**ANSWER:** This allegation is not directed at the answering Defendants and so no response is required.

10. Defendant Safe Home Security, Inc. ("Safe Home Security"), is a Connecticut corporation with its principal place of business at 55 Sebethe Drive, Cromwell, Connecticut 06416. Safe Home Security transacts or has transacted business in this district and throughout the United States.

**ANSWER:** Defendants admit the allegations contained in the first sentence of this paragraph. Defendants neither admit nor deny the legal conclusions set forth in the second sentence of this paragraph, and hereby move to strike them from plaintiffs' amended complaint pursuant to Federal Rule of Civil Procedure 12(f)(2).

11. Defendant Medguard Alert, Inc. ("Medguard"), is a Connecticut corporation with its principal place of business at 55 Sebethe Drive, Cromwell, Connecticut 06416. Medguard transacts or has transacted business in this district and throughout the United States.

**ANSWER:** Defendants admit the allegations contained in the first sentence of this paragraph. Defendants neither admit nor deny the legal conclusions set forth in the second sentence of this paragraph, and hereby move to strike them from plaintiffs' amended complaint pursuant to Federal Rule of Civil Procedure 12(f)(2).

12. Defendant Evan Sirlin ("Sirlin") is the President of Lifewatch. At all times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint. Defendant Sirlin, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

**ANSWER:** This allegation is not directed at the answering Defendants and so no response is required.

13. Defendant Mitchel May ("May") is a Vice-President of Lifewatch. At all times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint. Defendant May, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

**ANSWER:** This allegation is not directed at the answering Defendants and so no response is required.

4

14.     Defendant David Roman ("Roman") is a Vice-President and Chairman of Lifewatch, and President, CEO, and Treasurer of Safe Home Security and Medguard.  At all times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint.  Defendant Roman, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

**ANSWER:**   Defendants admit the allegations contained in the first sentence of this paragraph.  Defendants deny the allegations contained in the second sentence of this paragraph. Defendants neither admit nor deny the legal conclusions set forth in the third sentence of this paragraph, and hereby move to strike them from plaintiffs' amended complaint pursuant to Federal Rule of Civil Procedure 12(f)(2).

15.     Defendants Lifewatch, Safe Home Security, and Medguard (collectively, the "Corporate Defendants") have operated as a common enterprise while engaging in the deceptive and unfair acts and practices and other violations of law alleged below.  Defendants have conducted the business practices described below through an interrelated network of companies that have common ownership, business functions, and office locations, and that have commingled funds. Because the Corporate Defendants have operated as a common enterprise, each of them is jointly and severally liable for the acts and practices alleged below.  Defendants Sirlin, May, and Roman have formulated, directed, controlled, had the authority to control, or participated in the acts and practices of the Corporate Defendants that constitute the common enterprise.

**ANSWER:**   Defendants deny the allegations of this paragraph.

## Commerce

16.     At all times material to this Complaint, Defendants have maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

**ANSWER:**   Defendants deny the allegations of this paragraph.

## Defendants' Business Practices

17.     Since at least 2012, Defendants have sold medical alert systems to consumers throughout the United States and Canada. Defendants market their medical alert systems to consumers through various means, including through unsolicited telemarketing calls.

**ANSWER:**   Defendants deny the allegations of this paragraph.

18.     Defendants have engaged numerous telemarketers to conduct unsolicited telemarketing calls marketing Defendants' medical alert systems.  Among the telemarketers whom Defendants have engaged are Worldwide Info Services, Inc. and its affiliates, which were sued by the FTC and the State of Florida, relating to their marketing of Defendants' medical alert systems in the case captioned *FTC, et al. v. Worldwide Info Services, Inc., et al.*, Case No. 6:14-CV-8-ORL 28DAB (M.D. Fla. filed Jan. 6, 2014).

**ANSWER:**   Defendants admit that Worldwide Info Services, Inc. and others were sued by the FTC and the State of Florida, relating to their marketing of a medical alert system in the case captioned *FTC, et al. v. Worldwide Info Services, Inc., et al.*, Case No. 6:14-CV-8-ORL 28DAB (M.D. Fla. filed Jan. 6, 2014).  Defendants deny the remaining allegations of this paragraph.


19.     Defendants, directly or through one or more intermediaries, initiate telephone calls to consumers throughout the United States and Canada to induce sales of Defendants' medical alert systems.  In numerous instances, the telemarketing calls have been initiated using a telemarketing service that delivers prerecorded voice messages through telephone calls.  This service is known as "voice broadcasting" or "robocalling."

**ANSWER:**  Defendants deny the allegations of this paragraph.


20.     Many of the consumers who receive these unsolicited calls are elderly, live alone, and have limited or fixed incomes.  They often are in poor health, suffer from memory loss or dementia, and rely on family members, friends, or health professionals to manage their finances and to make financial or health related decisions for them.

**ANSWER:**  Defendants deny the allegations of this paragraph.


21.     In numerous instances, the prerecorded messages have purported to be from "John from the shipping department of Emergency Medical Alert," and have informed consumers that a medical alert system has been purchased for them.  The recording has indicated that consumers will receive the system at "no cost to you whatsoever," and that the shipping costs have also already been paid.  The message has instructed consumers to press a number on their telephone to schedule delivery, and it also has given consumers the option to press a different number to decline shipment of the medical alert system.

**ANSWER:**  Defendants deny the allegations of this paragraph.


22.     Defendants sometimes have used other prerecorded messages, but those messages also have indicated that the medical alert system is available to senior citizens for free.  In numerous instances, Defendants' messages have stated that the American Heart Association, American Diabetes Association, and/or other nonprofit organizations or health care providers are

urging senior citizens to obtain medical alert systems, and that these systems are available for free. All of these messages instruct consumers to press a number for more information, or to press a different number to be removed from Defendants' calling list.

**ANSWER:** Defendants deny the allegations of this paragraph.

23. When consumers press the number to speak to a live operator, they have been connected to telemarketers, who tell consumers that the medical alert system has a value of over $400, but that consumers will receive the system for free. Defendants' telemarketers sometimes have told consumers that the system is free because a friend, family member, health care provider, or acquaintance referred the consumer to Defendants. In other instances, Defendants' telemarketers have told consumers that the system is free because a friend, family member, health care provider, or acquaintance purchased the medical alert system for the consumer. When asked, Defendants' telemarketers have cited confidentiality concerns in refusing to provide the name of the person who referred the consumer to Defendants, or who purchased the medical alert system for the consumer.

**ANSWER:** Defendants deny the allegations of this paragraph.

24. Defendants' telemarketers explain that the medical alert system consists of a necklace or bracelet that enables consumers to receive help during emergencies. Defendants' telemarketers have touted that their medical alert system has been recommended by the American Heart Association, the American Diabetes Association, the National Institute on Aging, the AARP, the American Red Cross, other reputable organizations, and/or health care providers.

**ANSWER:** Defendants deny the allegations of this paragraph.

25. In fact, the American Heart Association, the American Diabetes Association, the National Institute on Aging, the AARP, the American Red Cross, other reputable national nonprofit organizations, and other health care providers do not endorse Defendants' medical alert system.

**ANSWER:** Defendants admit that the American Heart Association, the American Diabetes Association, the National Institute on Aging, the AARP, the American Red Cross have not specifically endorsed the "Lifewatch medical alert system," and deny the remaining allegations of this paragraph.

26. Although the medical alert system was originally represented as being free, at the end of the call Defendants' telemarketers inform consumers for the first time that there is a monthly monitoring fee of between $29.95 and $39.95. To cover this monthly fee, consumers are required to provide their credit card or bank account information, but they have been assured that the billing cycle does not start until consumers receive and activate the system. Defendants' telemarketers

frequently tell consumers that if the consumers sign up for Defendants' medical alert system, the consumers will be given opportunities to receive discounts on other products the consumers typically purchase, which will offset the monthly monitoring fees. For example, Defendants' telemarketers frequently tell consumers they will receive $1000 or $3000 in grocery coupons that the consumers can use for their everyday purchases at their regular grocery stores, a $50 restaurant discount card monthly, and/or a 75% prescription discount card, if the consumers sign up for Defendants' medical alert system.

**ANSWER:** Defendants deny the allegations of this paragraph.

27. If consumers tell Defendants' telemarketers that they need time to think about whether to get the system, or that they want to speak with their family before agreeing to provide their payment information, Defendants' telemarketers have responded that consumers will only receive the system if they sign up that day. Defendants' telemarketers also frequently tell consumers that if they decide to cancel the service, consumers will have no further obligation and Defendants will pay for return shipping of the medical alert system.

**ANSWER:** Defendants deny the allegations of this paragraph.

28. In numerous instances, after providing Defendants with their credit card or bank account information, consumers have discovered that nobody they know referred them to Defendants or purchased a medical alert system for them. In addition, consumers usually have been charged the first monitoring fee within a day of receiving the telephone call, before they have received and activated the system.

**ANSWER:** Defendants deny the allegations of this paragraph.

29. Many consumers subsequently have tried to cancel their accounts, either because they realize that Defendants' telemarketers lied to them or for other reasons. Consumers often have had difficulty canceling, however. Some consumers have had trouble reaching customer service representatives, while others have reached representatives who either claim not to have the authority to issue cancellations or try to keep the consumers from cancelling by aggressively re-pitching the product or offering special deals. Consumers are told that in order to cancel, they must return the medical alert system and pay for return shipping, or pay $400 if they do not return the medical alert system. Consumers also are told that they will continue to be billed the monthly service fee until Defendants receive the medical alert system.

**ANSWER:** Defendants deny the allegations of this paragraph.

30. While telemarketing their medical alert systems, Defendants, acting directly or through one or more intermediaries, have made numerous calls to telephone numbers on the National Do Not Call Registry ("Registry"), as well as to consumers who have previously asked

Defendants not to call them again. In some instances, Defendants or their telemarketers also have "spoofed" their calls by transmitting phony Caller Identification information so that call recipients do not know the true source of the calls.

**ANSWER:** Defendants deny the allegations of this paragraph.


31. In numerous instances, Defendants, acting directly or through one or more intermediaries, have initiated telemarketing calls that failed to disclose truthfully, promptly, and in a clear and conspicuous manner to the person receiving the call: the identity of the seller; that the purpose of the call is to sell goods or services; or the nature of the goods or services. In numerous instances, Defendants, acting directly or through one or more intermediaries, have initiated prerecorded telemarketing calls to consumers that failed to promptly make such disclosures, or to immediately thereafter disclose the mechanism for asserting a Do Not Call request.

**ANSWER:** Defendants deny the allegations of this paragraph.


32. In numerous instances, Defendants, acting directly or through one or more intermediaries, have made outbound prerecorded calls that delivered messages to induce the sale of goods or services when the persons to whom these telephone calls were made had not expressly agreed, in writing, to authorize the seller to place prerecorded calls to such persons.

**ANSWER:** Defendants deny the allegations of this paragraph.


## Violations of the FTC Act

33. Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

**ANSWER:** Defendants neither admit nor deny the legal conclusions set forth in this paragraph, and hereby move to strike them from plaintiffs' amended complaint pursuant to Federal Rule of Civil Procedure 12(f)(2).


34. Misrepresentations or deceptive omissions of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act. 15 U.S.C. § 45(a).

**ANSWER:** Defendants neither admit nor deny the legal conclusions set forth in this paragraph, and hereby move to strike them from plaintiffs' amended complaint pursuant to Federal Rule of Civil Procedure 12(f)(2).

**Count One**
**Misrepresentation of Material Facts**
**(By Plaintiff FTC)**

35.     In numerous instances, in connection with the advertising, marketing, promotion, offering for sale, or sale of medical alert systems, Defendants have represented, directly or indirectly, expressly or by implication, that:

A.     A friend, family member, health care provider, or other acquaintance of the consumer referred the consumer to Defendants, or purchased the medical alert system for the consumer;

B.     Defendants' medical alert system is endorsed by reputable organizations, including, but not limited to, the American Heart Association, the American Diabetes Association, the National Institute on Aging, the AARP, the American Red Cross, and/or health care providers;

C.     Consumers will not be charged the first monitoring fee until they have received and activated the medical alert system; and

D.     Consumers may cancel the monitoring service at any time without any further financial obligation.

**ANSWER:**     Defendants deny the allegations of this paragraph, 35(A) through (D) inclusive.

36.     In truth and in fact, in numerous instances in which Defendants have made the representations set forth in Paragraph 35 of this Complaint:

A.     A friend, family member, health care provider, or other acquaintance of the consumer did not refer the consumer to Defendants, or purchase the medical alert system for the consumer;

B.     Defendants' medical alert system was not endorsed by reputable organizations, including, but not limited to, the American Heart Association, the American Diabetes Association, the National Institute on Aging, the AARP, the American Red Cross, and/or health care providers;

C.     Consumers were charged the first monitoring fee before they had received and activated the medical alert system; and

D.     Consumers could not cancel the monitoring service at any time without further financial obligation.

**ANSWER:**     Defendants deny the allegations of this paragraph, 36(A) through (D) inclusive.

37.     Therefore, Defendants' representations as set forth in Paragraph 35 of this Complaint are false and misleading and constitute deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C.§ 45(a).

**ANSWER:** Defendants neither admit nor deny the legal conclusions set forth in this paragraph; to the extent the allegations set forth in this paragraph can be construed as facts, they are denied.

## The Telemarketing Sales Rule

38.     Congress directed the FTC to prescribe rules prohibiting abusive and deceptive telemarketing acts or practices pursuant to the Telemarketing Act, 15 U.S.C. §§ 6101-6108. The FTC adopted the original Telemarketing Sales Rule in 1995, extensively amended it in 2003, and amended certain provisions thereafter. 16 C.F.R. Part 310.

**ANSWER:** Defendants neither admit nor deny the legal conclusions set forth in this paragraph, and hereby move to strike them from plaintiffs' amended complaint pursuant to Federal Rule of Civil Procedure 12(f)(2).

39.     Defendants are "seller[s]" and/or "telemarketer[s]" engaged in "telemarketing," and Defendants have initiated, or have caused telemarketers to initiate, "outbound telephone call[s]" to consumers to induce the purchase of goods or services, as those terms are defined in the TSR, 16 C.F.R. § 310.2(v), (aa), (cc), and (dd).

**ANSWER:** Defendants neither admit nor deny the legal conclusions set forth in this paragraph; to the extent the allegations set forth in this paragraph can be construed as facts, they are denied.

40.     Under the TSR, an "outbound telephone call" means a telephone call initiated by a telemarketer to induce the purchase of goods or services or to solicit a charitable contribution.  16 C.F.R. § 310.2(v).

**ANSWER:** Defendants neither admit nor deny the legal conclusions set forth in this paragraph, and hereby move to strike them from plaintiffs' amended complaint pursuant to Federal Rule of Civil Procedure 12(f)(2).

41.     The TSR prohibits sellers and telemarketers from misrepresenting, directly or by implication, in the sale of goods or services, any material aspect of the nature or terms of the seller's refund, cancellation, exchange, or repurchase policies.  16 C.F.R. § 310.3(a)(2)(iv).

**ANSWER:** Defendants neither admit nor deny the legal conclusions set forth in this paragraph, and hereby move to strike them from plaintiffs' amended complaint pursuant to Federal Rule of Civil Procedure 12(f)(2).

42.     The TSR prohibits sellers and telemarketers from misrepresenting, directly or by implication, in the sale of goods or services, a seller's or telemarketer's affiliation with, or endorsement or sponsorship by, any person or government entity.  16 C.F.R. § 310.3(a)(2)(vii).

**ANSWER:**   Defendants neither admit nor deny the legal conclusions set forth in this paragraph, and hereby move to strike them from plaintiffs' amended complaint pursuant to Federal Rule of Civil Procedure 12(f)(2).

43.     The TSR prohibits sellers and telemarketers from making a false or misleading statement to induce any person to pay for goods or services.  16 C.F.R. § 310.3(a)(4).

**ANSWER:**   Defendants neither admit nor deny the legal conclusions set forth in this paragraph, and hereby move to strike them from plaintiffs' amended complaint pursuant to Federal Rule of Civil Procedure 12(f)(2).

44.     The TSR, as amended in 2003, established a "do-not-call" registry (the "National Do Not Call Registry" or "Registry"), maintained by the FTC, of consumers who do not wish to receive certain types of telemarketing calls.  Consumers can register their telephone numbers on the Registry without charge either through a toll-free telephone call or over the Internet at www.donotcall.gov.

**ANSWER:**   Defendants neither admit nor deny the legal conclusions set forth in this paragraph, and hereby move to strike them from plaintiffs' amended complaint pursuant to Federal Rule of Civil Procedure 12(f)(2).

45.     Consumers who receive telemarketing calls to their registered numbers can complain of Registry violations the same way they registered, through a toll-free telephone call or over the Internet at www.donotcall.gov, or by otherwise contacting law enforcement authorities.

**ANSWER:**   Defendants lack sufficient information to form a belief as to the truth of the allegations of this paragraph and therefore deny the same.

46.     The TSR prohibits sellers and telemarketers from initiating an outbound telephone call to telephone numbers on the Registry.  16 C.F.R. § 310.4(b)(1)(iii)(B).

**ANSWER:**   Defendants neither admit nor deny the legal conclusions set forth in this paragraph, and hereby move to strike them from plaintiffs' amended complaint pursuant to Federal Rule of Civil Procedure 12(f)(2).

47.     The TSR prohibits sellers and telemarketers from initiating an outbound telephone call to any person when that person previously has stated that he or she does not wish to receive

an outbound telephone call made by or on behalf of the seller whose goods or services are being offered.  16 C.F.R. § 310.4(b)(1)(iii)(A).

**ANSWER:**  Defendants neither admit nor deny the legal conclusions set forth in this paragraph, and hereby move to strike them from plaintiffs' amended complaint pursuant to Federal Rule of Civil Procedure 12(f)(2).

48.     The TSR requires that sellers and telemarketers transmit or cause to be transmitted the telephone number and, when made available by the telemarketer's carrier, the name of the telemarketer, to any caller identification service in use by a recipient of a telemarketing call, or transmit the customer service number of the seller on whose behalf the call is made and, when made available by the telemarketer's seller, the name of the seller.  16 C.F.R. § 310.4(a)(8).

**ANSWER:**  Defendants neither admit nor deny the legal conclusions set forth in this paragraph, and hereby move to strike them from plaintiffs' amended complaint pursuant to Federal Rule of Civil Procedure 12(f)(2).

49.     The TSR requires telemarketers in an outbound telephone call to disclose truthfully, promptly, and in a clear and conspicuous manner, the following information:

> A.     The identity of the seller;
> B.     That the purpose of the call is to sell goods or services; and
> C.     The nature of the goods or services.

16 C.F.R. § 310.4(d).

**ANSWER:**  Defendants neither admit nor deny the legal conclusions set forth in this paragraph, and hereby move to strike them from plaintiffs' amended complaint pursuant to Federal Rule of Civil Procedure 12(f)(2).

50.     As amended, effective December 1, 2008, the TSR prohibits a telemarketer from engaging, and a seller from causing a telemarketer to engage, in initiating an outbound telephone call that delivers a prerecorded message to induce the purchase of any good or service unless the message promptly discloses:

> A.     The identity of the seller;
> B.     That the purpose of the call is to sell goods or services; and
> C.     The nature of the goods or services.

16 C.F.R. § 310.4(b)(1)(v)(B)(ii).

**ANSWER:** Defendants neither admit nor deny the legal conclusions set forth in this paragraph, and hereby move to strike them from plaintiffs' amended complaint pursuant to Federal Rule of Civil Procedure 12(f)(2).

51. As amended, effective September 1, 2009, the TSR prohibits initiating a telephone call that delivers a prerecorded message to induce the purchase of any good or service unless the seller has obtained from the recipient of the call an express agreement, in writing, that evidences the willingness of the recipient of the call to receive calls that deliver prerecorded messages by or on behalf of a specific seller. The express agreement must include the recipient's telephone number and signature, must be obtained after a clear and conspicuous disclosure that the purpose of the agreement is to authorize the seller to place prerecorded calls to such person, and must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service. 16 C.F.R. § 310.4(b)(1)(v)(A).

**ANSWER:** Defendants neither admit nor deny the legal conclusions set forth in this paragraph, and hereby move to strike them from plaintiffs' amended complaint pursuant to Federal Rule of Civil Procedure 12(f)(2).

52. It is a violation of the TSR for any person to provide substantial assistance or support to any seller or telemarketer when that person knows or consciously avoids knowing that the seller or telemarketer is engaged in any practice that violates Sections 310.3(a), (c) or (d), or 310.4 of the TSR. 16 C.F.R. § 310.3(b).

**ANSWER:** Defendants neither admit nor deny the legal conclusions set forth in this paragraph, and hereby move to strike them from plaintiffs' amended complaint pursuant to Federal Rule of Civil Procedure 12(f)(2).

53. Pursuant to Section 3(c) of the Telemarketing Act, 15 U.S.C. § 6102(c), and Section 18(d)(3) of the FTC Act, 15 U.S.C. § 57a(d)(3), a violation of the TSR constitutes an unfair or deceptive act or practice in or affecting commerce, in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

**ANSWER:** Defendants neither admit nor deny the legal conclusions set forth in this paragraph, and hereby move to strike them from plaintiffs' amended complaint pursuant to Federal Rule of Civil Procedure 12(f)(2).

WHEREFORE, defendants Safe Home Security, Inc., MedGuard Alert, Inc., and David Roman, ask for judgment in their favor and against plaintiffs on Count One of plaintiffs' amended complaint and for such other relief as this Court deems just and appropriate.

**Violations of the Telemarketing Sales Rule**

**Count Two**
**Misrepresentations in Violation of the TSR**
**(By Both Plaintiffs)**

54.     In numerous instances, in connection with the telemarketing of goods and services, Defendants have misrepresented, directly or by implication, that:

A.     A friend, family member, health care provider, or other acquaintance of the consumer referred the consumer to Defendants, or purchased the medical alert system for the consumer;

B.     Defendants' medical alert system is endorsed by reputable organizations, including, but not limited to, the American Heart Association, the American Diabetes Association, the National Institute on Aging, the AARP, the American Red Cross, and/or health care providers;

C.     Consumers will not be charged the first monitoring fee until they have received and activated the medical alert system; and

D.     Consumers may cancel the monitoring service at any time without any further financial obligation.

**ANSWER:**  Defendants deny the allegations of this paragraph.

55.     Defendants' acts and practices, as described in Paragraph 54 above, are deceptive telemarketing acts or practices that violate the TSR, 16 C.F.R. §§ 310.3(a)(2)(iv), (a)(2)(vii) and (a)(4).

**ANSWER:**  Defendants neither admit nor deny the legal conclusions set forth in this paragraph; to the extent the allegations set forth in this paragraph can be construed as facts, they are denied.

WHEREFORE, defendants Safe Home Security, Inc., MedGuard Alert, Inc., and David Roman, ask for judgment in their favor and against plaintiffs on Count Two of plaintiffs' amended complaint and for such other relief as this Court deems just and appropriate.

**Count Three**
**Assisting and Facilitating Deceptive Telemarketing Acts or Practices**
**(By Both Plaintiffs)**

56.     In numerous instances, Defendants have provided substantial assistance or support to sellers or telemarketers whom Defendants knew or consciously avoided knowing induced

15

consumers to pay for goods and services through the use of false or misleading statements, in violation of the TSR, 16 C.F.R. §§ 310.3(a)(2)(vii) and (a)(4).

**ANSWER:** Defendants deny the allegations of this paragraph.

57. Defendants' acts or practices as described in Paragraph 56 above, are deceptive telemarketing acts or practices that violate the TSR, 16 C.F.R. § 310.3(b).

**ANSWER:** Defendants neither admit nor deny the legal conclusions set forth in this paragraph; to the extent the allegations set forth in this paragraph can be construed as facts, they are denied.

WHEREFORE, defendants Safe Home Security, Inc., MedGuard Alert, Inc., and David Roman, ask for judgment in their favor and against plaintiffs on Count Three of plaintiffs' amended complaint and for such other relief as this Court deems just and appropriate.

## Count Four
## Violation of the National Do Not Call Registry
## (By Both Plaintiffs)

58. In numerous instances, in connection with telemarketing, Defendants have engaged, or caused a telemarketer to engage, in initiating an outbound telephone call to a person's telephone number on the National Do Not Call Registry in violation of the TSR, 16 C.F.R. § 310.4(b)(1)(iii)(B).

**ANSWER:** Defendants neither admit nor deny the legal conclusions set forth in this paragraph; to the extent the allegations set forth in this paragraph can be construed as facts, they are denied.

WHEREFORE, defendants Safe Home Security, Inc., MedGuard Alert, Inc., and David Roman, ask for judgment in their favor and against plaintiffs on Count Four of plaintiffs' amended complaint and for such other relief as this Court deems just and appropriate.

### Count Five
### Failure to Honor Do Not Call Requests
### (By Both Plaintiffs)

59.     In numerous instances, in connection with telemarketing, Defendants have engaged, or caused a telemarketer to engage, in initiating an outbound telephone call to a person who previously has stated that he or she does not wish to receive an outbound telephone call made by or on behalf of the seller whose goods or services are being offered, in violation of the TSR, 16 C.F.R. § 310.4(b)(1)(iii)(A).

**ANSWER:**   Defendants neither admit nor deny the legal conclusions set forth in this paragraph; to the extent the allegations set forth in this paragraph can be construed as facts, they are denied.

WHEREFORE, defendants Safe Home Security, Inc., MedGuard Alert, Inc., and David Roman, ask for judgment in their favor and against plaintiffs on Count Five of plaintiffs' amended complaint and for such other relief as this Court deems just and appropriate.

### Count Six
### Failure to Transmit Caller Identification
### (By Both Plaintiffs)

60.     In numerous instances, in connection with telemarketing, Defendants have failed to transmit, or cause to be transmitted, the telephone number and name of the telemarketer or of the seller to any caller identification service in use by a recipient of a telemarketing call, in violation of the TSR, 16 C.F.R. § 310.4(a)(8).

**ANSWER:**   Defendants neither admit nor deny the legal conclusions set forth in this paragraph; to the extent the allegations set forth in this paragraph can be construed as facts, they are denied.

WHEREFORE, defendants Safe Home Security, Inc., MedGuard Alert, Inc., and David Roman, ask for judgment in their favor and against plaintiffs on Count Six of plaintiffs' amended complaint and for such other relief as this Court deems just and appropriate.

## Count Seven
## Initiation of Unlawful Prerecorded Messages On or After September 1, 2009
## (By Both Plaintiffs)

61.     In numerous instances on or after September 1, 2009, Defendants have made, or caused others to make, outbound telephone calls that delivered prerecorded messages to induce the purchase of goods or services when the persons to whom these telephone calls were made had not signed an express agreement, in writing, authorizing the seller to place prerecorded calls to such person.

**ANSWER:**  Defendants deny the allegations of this paragraph.

62.     Defendants' acts and practices, as described in Paragraph 61 above, are abusive telemarketing acts or practices that violate the TSR, 16 C.F.R. § 310.4(b)(1)(v)(A).

**ANSWER:**   Defendants neither admit nor deny the legal conclusions set forth in this paragraph; to the extent the allegations set forth in this paragraph can be construed as facts, they are denied.

WHEREFORE, defendants Safe Home Security, Inc., MedGuard Alert, Inc., and David

Roman, ask for judgment in their favor and against plaintiffs on Count Seven of plaintiffs'

amended complaint and for such other relief as this Court deems just and appropriate.

## Count Eight
## Failure to Make Required Oral Disclosures
## (By Both Plaintiffs)

63.     In numerous instances, including on or after December 1, 2008, in the course of telemarketing goods and services, Defendants have made, or caused others to make, outbound telephone calls that deliver a prerecorded message in which the telemarketer or message failed to disclose truthfully, promptly, and in a clear and conspicuous manner to the person receiving the call:

      A.      The identity of the seller;
      B.      That the purpose of the call is to sell goods or services; and
      C.      The nature of the goods or services.

**ANSWER:**  Defendants deny the allegations of this paragraph.

64.     Defendants' acts and practices, as described in Paragraph 63 above, are abusive telemarketing acts or practices that violate the TSR, 16 C.F.R. §§ 310.4(b)(1)(v)(B)(ii) and (d).

**ANSWER:**   Defendants neither admit nor deny the legal conclusions set forth in this paragraph; to the extent the allegations set forth in this paragraph can be construed as facts, they are denied.

WHEREFORE, defendants Safe Home Security, Inc., MedGuard Alert, Inc., and David Roman, ask for judgment in their favor and against plaintiffs on Count Eight of plaintiffs' amended complaint and for such other relief as this Court deems just and appropriate.

**Count Nine**
**Assisting and Facilitating Abusive Telemarketing Acts or Practices**
**(By Both Plaintiffs)**

65.     In numerous instances, Defendants have provided substantial assistance or support to sellers or telemarketers whom Defendants knew, or consciously avoided knowing, were engaged in violations of § 310.4 of the TSR.

**ANSWER:**   Defendants neither admit nor deny the legal conclusions set forth in this paragraph; to the extent the allegations set forth in this paragraph can be construed as facts, they are denied.

66.     Defendants' acts or practices as described in Paragraph 65 above are deceptive telemarketing acts or practices that violate the TSR, 16 C.F.R. § 310.3(b).

**ANSWER:**   Defendants neither admit nor deny the legal conclusions set forth in this paragraph; to the extent the allegations set forth in this paragraph can be construed as facts, they are denied.

WHEREFORE, defendants Safe Home Security, Inc., MedGuard Alert, Inc., and David Roman, ask for judgment in their favor and against plaintiffs on Count Nine of plaintiffs' amended complaint and for such other relief as this Court deems just and appropriate.

### Violations of the Florida Deceptive and Unfair Trade Practices Act

67.     Section 501.204 of the Florida Deceptive and Unfair Trade Practices Act, Chapter 501, Part II, Florida Statutes, prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce."

**ANSWER:**   Defendants neither admit nor deny the legal conclusions set forth in this paragraph, and hereby move to strike them from plaintiffs' amended complaint pursuant to Federal Rule of Civil Procedure 12(f)(2).

### Count Ten
### Florida Deceptive and Unfair Trade Practices Act Violation by all Defendants
### (By Plaintiff State of Florida)

68.     In numerous instances, in connection with the advertising, marketing, promotion, offering for sale, or sale of medical alert systems, Defendants have represented, directly or indirectly, expressly or by implication, that:

      A.     A friend, family member, health care provider, or other acquaintance of the consumer referred the consumer to Defendants, or purchased the medical alert system for the consumer;

      B.     Defendants' medical alert system is endorsed by reputable organizations, including, but not limited to, the American Heart Association, the American Diabetes Association, the National Institute on Aging, the AARP, the American Red Cross, and/or health care providers;

      C.     Consumers will not be charged the first monitoring fee until they have received and activated the medical alert system; and

      D.     Consumers may cancel the monitoring service at any time without any further financial obligation

**ANSWER:**   Defendants deny the allegations of this paragraph.

69.     In truth and in fact, in numerous instances in which Defendants have made the representations set forth in Paragraph 68 of this Complaint:

      A.     A friend, family member, health care provider, or other acquaintance of the consumer did not refer the consumer to Defendants, or purchase the medical alert system for the consumer;

      B.     Defendants' medical alert system was not endorsed by reputable national nonprofit organizations, including, but not limited to, the American Heart Association, the American Diabetes Association, the National Institute on Aging, the AARP, the American Red Cross, and/or health care providers;

      C.     Consumers were charged the first monitoring fee before they had received and activated the medical alert system; and

D.      Consumers may not cancel the monitoring service at any time without further financial obligation.

**ANSWER:**   Defendants deny the allegations of this paragraph.

70.      Defendants' representations as set forth in Paragraph 68 of this Complaint are false and misleading and likely to mislead consumers acting reasonably, and consumers within the State of Florida and elsewhere were actually misled by Defendants' misrepresentations in violation of Section 501.204 of the FDUTPA.

**ANSWER:**   Defendants neither admit nor deny the legal conclusions set forth in this paragraph; to the extent the allegations set forth in this paragraph can be construed as facts, they are denied.

## Consumer Injury

71.      Consumers have suffered and will continue to suffer substantial injury as a result of Defendants' violations of the FTC Act, the TSR, and FDUPTA.  In addition, Defendants have been unjustly enriched as a result of their unlawful acts or practices.  Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers, reap unjust enrichment, and harm the public interest.

**ANSWER:**   Defendants neither admit nor deny the legal conclusions set forth in this paragraph; to the extent the allegations set forth in this paragraph can be construed as facts, they are denied.

## This Court's Power to Grant Relief

72.      Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court to grant injunctive and such other relief as the Court may deem appropriate to halt and redress violations of any provision of law enforced by the FTC.  The Court, in the exercise of its equitable jurisdiction, may award ancillary relief, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies, to prevent and remedy any violation of any provision of law enforced by the FTC.

**ANSWER:**   Defendants neither admit nor deny the legal conclusions set forth in this paragraph, and hereby move to strike them from plaintiffs' amended complaint pursuant to Federal Rule of Civil Procedure 12(f)(2).

73.      Section 19 of the FTC Act, 15 U.S.C. § 57b, and Section 6(b) of the Telemarketing Act, 15 U.S.C. § 6105(b), authorize this Court to grant such relief as the Court finds necessary to

redress injury to consumers resulting from Defendants' violations of the TSR, including the rescission or reformation of contracts, and the refund of money.

**ANSWER:** Defendants neither admit nor deny the legal conclusions set forth in this paragraph, and hereby move to strike them from plaintiffs' amended complaint pursuant to Federal Rule of Civil Procedure 12(f)(2).

74. Section 4(a) of the Telemarketing Act, 15 U.S.C. § 6103(a), empowers this Court to grant the State of Florida injunctive and such other relief as the Court may deem appropriate to halt violations of the TSR and to redress injury to consumers, including the award of damages, restitution, or other compensation.

**ANSWER:** Defendants neither admit nor deny the legal conclusions set forth in this paragraph, and hereby move to strike them from plaintiffs' amended complaint pursuant to Federal Rule of Civil Procedure 12(f)(2).

75. Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction to allow Plaintiff State of Florida to enforce its state law claims against Defendants in this Court for violations of the FDUPTA, and to grant such relief as provided under state law, including injunctive relief, restitution, civil penalties, costs and attorneys' fees, and such other relief to which the State of Florida may be entitled.

**ANSWER:** Defendants neither admit nor deny the legal conclusions set forth in this paragraph, and hereby move to strike them from plaintiffs' amended complaint pursuant to Federal Rule of Civil Procedure 12(f)(2).

WHEREFORE, defendants Safe Home Security, Inc., MedGuard Alert, Inc., and David Roman, ask that judgment be entered in their favor on each of the counts of plaintiffs' amended complaint and for such other relief as this Court deems just and appropriate.

## AFFIRMATIVE DEFENSES

Defendants, Safe Home Security, Inc., MedGuard Alert, Inc., and David Roman, for their affirmative defenses to plaintiffs' Complaint for Permanent Injunction and Other Equitable Relief, state as follows:

1.      Plaintiffs' claims are barred, in whole or in part, to the extent that the claims are predicated on actions taken outside the applicable limitations periods.

2.      Plaintiffs' claims under the Federal Trade Commission Act and the Telemarketing Sales Rule ("TSR") are barred inasmuch as these statutes are unconstitutional and deprive Defendants of substantive and procedural due process.

3.      Plaintiffs' causes of action constitute rulemaking in violation of the Administration Procedures Act ("APA").  Plaintiffs' causes of action constitute *ad hoc* adjudications in violation of the APA.  Plaintiffs' interpretation of the terms "substantial assistance" and "support" under the TDR are clearly erroneous and constitute abuses of discretion.

4.      Plaintiffs' claims are barred, in whole or in part, by the TSR's "Safe Harbor" provision, or other applicable safe harbor defenses.

5.      The Court lacks personal jurisdiction over the defendant David Roman.

WHEREFORE, defendants Safe Home Security, Inc., MedGuard Alert, Inc., and David Roman, ask that judgment be entered in their favor on each of the counts in plaintiffs' amended complaint and for such other relief as this Court deems just and appropriate.

Safe Home Security, Inc.; MedGuard
Alert, Inc.; and David Roman


By:____ */s/* Thomas J. Verticchio _____
        One of their attorneys

Brian W. Bell, Esq. (ARDC #0160431)
Thomas J. Verticchio, Esq. (ARDC #6190501)
Joelle M. Shabat, Esq. (ARDC #6313951)
Thomas J. Verticchio, Esq.
Swanson, Martin & Bell, LLP
330 North Wabash Avenue, Suite 3300
Chicago, Illinois  60611
(312) 321-9100
(312) 321-0990 – Fax