**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| FEDERAL TRADE COMMISSION,<br>STATE OF FLORIDA, OFFICE OF THE<br>ATTORNEY GENERAL, DEPARTMENT<br>OF LEGAL AFFAIRS, | ) ) ) ) | Case No. 15cv5781 |
| Plaintiffs, | ) ) ) | Judge Gary Feinerman |
| v. | ) ) ) | |
| LIFEWATCH INC., a New York corporation,<br>also d/b/a LIFEWATCH USA and MEDICAL<br>ALARM SYSTEMS, | ) ) ) ) | |
| SAFE HOME SECURITY, INC., a<br>Connecticut corporation, | ) ) ) | **ORAL ARGUMENT REQUESTED** |
| MEDGUARD ALERT, INC., a Connecticut<br>corporation, | ) ) ) | |
| EVAN SIRLIN, individually and as an officer<br>or manager of Lifewatch Inc., | ) ) ) | |
| MITCHEL MAY, individually and as an officer or<br>manager of Lifewatch Inc., and | ) ) ) | |
| DAVID ROMAN, individually and as an officer<br>or manager of Lifewatch Inc., Safe Home Security,<br>Inc. and MedGuard Alert, Inc.<br>Defendants. | ) ) ) ) ) | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT BY DEFENDANT**
**MITCHEL MAY**

# TABLE OF CONTENTS

TABLE OF CONTENTS…………………………..…………………………………………..I-II

TABLE OF AUTHORITIES……………………………...............................................III – VIII

PRELIMINARY STATEMENT…………………………………………………………..…1

FACTUAL/PROCEDURAL BACKGROUND………………………………………………..2

SUMMARY JUDGEMENT STANDARD………………………………………………………5

LEGAL ARGUMENTS…………………………………………………………………...6

   I.     The FTC ACT (Counts One-Eight)……………………………………………....7

       1.    Unfair Practices under Section 5 of the FTC Act……………………………...7

     A.  Substantial Injury…………………………………………………………………8

     B.  Any Injury Was Reasonably Avoidable After Charges Were Incurred…………………..9

       2.    Deceptive Practices under Section 5 of the FTC Act………………………………..11

       3.    Individual Liability under the FTC Act…………………………………………...16

   II.     TELEMARKETING SALE RULE (Counts Two through Nine)……………………….19

       1.    TSR Causes of Action Asserted by the FTC…………………………………....19

       2.    TSR violations asserted by the State of Florida…………………………………..22

   III.    FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT (Count Ten)…...22

       1.    Limitations on FDUPTA's Application……………………………………………...22

   IV.    PRAYERS FOR RELIEF……………………………………………………………..24

       1.    Disgorgement, Restitution, Refunds and Rescission are not Statutorily-Authorized Remedies under 15 U.S.C. § 53(b) or 15 U.S. C. § 6105(b)……………………...24

       2.    Disgorgement, Restitution, Refunds and Rescission are Subject to the Three-Year statute of limitations enacted under U.S.C. 57(b)…………………………………30

CONCLUSION……………………………………………………………………………30

# **TABLE OF AUTHORITIES**

**Page(s)**

## Cases

*Am. Fin. Servs. Ass'n v. FTC*,
   767 F.2d 957 (D.C. Cir. 1985) ........................................................................7

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986) ...................................5, 6

*Baron v. City of Highland Park*,
   195 F.3d 333 (7th Cir. 1999) ..........................................................................6

*Basic v. Levinson*
   485 US 224 (1988) .......................................................................................15

*Blackie v. Barrack*,
   524 F. 2d 891 (9th Cir. 1975), cert. denied, 429 U. S. 816 (1976) ...................14, 15

*Celotex Corp. v. Catrett*,
   477 U.S. 317, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986) ...................................6

*Coastal Physician Servs., Inc. v. Ortiz*,
   764 So. 2d 7 (Fla. Dist. Ct. App. 1999) ..........................................................22

*Coro v. Federal Trade Commission*,
   338 F.2d 149 (1st Cir. 1964), cert denied, 380 U.S. 954(1965) .........................19

*Davis v. HSBC Bank Nevada, N.A.*
   691 F.3d 1152 (9th Cir. 2012) ......................................................................9, 10

*Derby Indus. v. Chestnut Ridge Foam, Inc.*,
   202 F. Supp. 2d 818 (N.D. In. 2002) .............................................................12

*FTC v. Inc21.com Corp.*,
   688 F. Supp. 2d 927, 939 (N.D. Cal. 2010)…………………………………………...10

*FTC v. Affiliate Strategies, Inc.*,
   849 F. Supp. 2d 1085 (D. Kan. 2011) ............................................................14

*FTC v. Affiliate Strategies, Inc.*,
   No. 09-4104-JAR, 2011 U.S. Dist. LEXIS 105072 (D. Kan. Sep. 16, 2011)..........21

*FTC v. Am. Standard Credit Sys., Inc.*,
   874 F. Supp. 1080 (C.D. Cal. 1994) ..............................................................16

*FTC v. AMREP Corp.*,
   705 F. Supp. 119 (S.D.N.Y. 1988) ...................................................................18

*FTC v. Amy Travel Serv., Inc.*,
   875 F.2d 564 (7th Cir. 1989) ..................................................................16, 18

*FTC v. Bronson Partners*,
   LLC, 654 F.3d 359 (2d Cir. 2011) ..........................................................29, 30

*FTC v. Consumer All., Inc.*,
   No. 02 C 2429, 2003 U.S. Dist. LEXIS 17423 (N.D. Ill. Sep. 29, 2003) ...............................20

*FTC v. Crescent Pub. Grp., Inc.*,
   129 F. Supp. 2d 311 (S.D.N.Y. 2001) .....................................................10, 16

*FTC v. Direct Mktg. Concepts, Inc.*,
   569 F. Supp. 2d 285 (D. Mass. 2008) .....................................................11, 14

*FTC v. Febre*,
   128 F.3d 530 (7th Cir. 1997) ...................................................................29

*FTC v. Garvey*,
   383 F.3d 891 (9th Cir. 2004) ...................................................................17

*FTC v. Gem Merchandising Corp.*,
   87 F.3d 466 (11th Cir. 1996) .............................................................29, 30

*FTC v. Glenn W. Turner*,
   1983-1 ........................................................................................18

*FTC v. Grant Connect, LLC*,
   763 F.3d 1094 (9th Cir 2014) ..................................................................16

*FTC v. Growth Plus Int'l Mktg., Inc.*,
   2001 U.S. Dist. LEXIS 1215, No. 00 C 7886, 2001 WL 128139 (N.D. Ill. Jan.
   9, 2001) .....................................................................................20

*FTC v. Ideal Fin. Sols., Inc.*,
   2015 WL 4032103, at *8 (D. Nev. June 30, 2015)............................................................10

*FTC v. International Diamond Corp.*,
   1983-2 ...................................................................................14, 15

*FTC v. John Beck Amazing Profits, LLC*,
   865 F. Supp. 2d 1052 (C.D. Cal. 2012) .......................................................11

*FTC v. Johnson*,
   96 F. Supp. 3d 1110 (D. Nev. 2015)...........................................................11

*FTC v. Kennedy*,
574 F. Supp. 2d 714 (S.D. Tex. 2008) ..............................................................9, 10

*FTC v. Lalonde*,
545 Fed. App'x 825 (11th Cir. 2013) ...................................................................23

*FTC v. Liberty Supply Co.*,
2016 U.S. Dist. LEXIS 99224 (E.D. Tex. Jul 29, 2016)......................................17

*FTC v. LoanPointe, LLC*,
525 Fed. App'x. 696 (10th Cir. 2013) (unpublished) .....................................29, 30

*FTC v. MacMillan, Inc*.,
1983-2 .....................................................................................................................18

*FTC v. Med. Billers Network, Inc.*,
543 F. Supp. 2d 283 (S.D.N.Y. 2008)..............................................................16, 17

*FTC v. Neovi, Inc*.,
598 F. Supp. 2d 1104 (S.D. Cal. 2008)....................................................................9

*FTC v. Pantron I Corp.*,
33 F.3d 1088 (9th Cir. 1994) .................................................................................11

*FTC v. Patriot Alcohol Testers*,
798 F. Supp. 851 (D. Mass. 1992) ...................................................................17, 18

*FTC v. Publ'g Clearing House, Inc*.,
104 F.3d 1168 (9th Cir. 1997) ...............................................................................16

*FTC. v. Stefanchik*,
559 F.3d 924 (9th Cir. 2009) .................................................................................11

*FTC v. Sterling Precious Metals*,
LLC, No 12-80597-CIV, 2013 U.S. Dist. LEXIS 20879, 2013 WL 595713
(S.D. Fla. Feb. 15, 2013)........................................................................................23

*FTC v. Student Aid Ctr., Inc.*,
No. 16-21843-CIV-MORE, 2016 U.S. Dist. LEXIS 173658 (S.D. Fla. Dec.
14, 2016) ................................................................................................................23

*FTC v. Swish Mktg.*,
2010 U.S. Dist. LEXIS 15016 (N.D. Cal., Feb. 22, 2010) ...................................17

*FTC v. Wyndham Worldwide Corp*.,
799 F.3d 236 (3d Cir. 2015)......................................................................................8

*Great-West Life & Annuity Ins. Co. v. Knudson*,
    534 U.S. 204 (2002) .................................................................................26

*In re Int'l Harvester Co.*,
    104 F.T.C. 949 (1984) ................................................................................7

*In re J.B. Williams Co.*,
    68 F.T.C. 481 (1965), *aff'd*, 381 F.2d 884 (6th Cir. 1967) ...................11

*KC Leisure, Inc. v. Haber*,
    972 So.2d 1069 (Fla. 5th DCA 2008) ....................................................24

*Kokesh v. S.E.C.*,
    137 S. Ct. 1635 (2017) ...........................................................26, 27, 28, 29, 30

*In re LabMD, Inc.*,
    No. 9357, 2015 WL 7575033 (Nov. 13, 2015) .......................................8

*Meghrig v. KFC Western, Inc.*,
    516 U.S. 479 (1996) ................................................................................26

*Middlesex County Sewerage Authority v. National Sea Clammers Assn.*,
    453 U. S. 1 (1981) ...................................................................................26

*North American Clearing, Inc. v. Brokerage Computer Systems, Inc.*,
    666 F.Supp.2d 1299 (M.D. Fla. 2009) ...................................................24

*Novartis Corp. v. FTC*,
    223 F.3d 783, 343 U.S. App. D.C. 111 (D.C. Cir. 2000) ......................11

*Orkin Exterminating Co. v. FTC*,
    849 F.2d 1354 (11th Cir. 1988) ...............................................................9

*Owner-Operator Indep. Drivers v. Landstar System*,
    622 F.3d 1307 (11th Cir. 2010) .............................................................26

*Pfizer, Inc. v. Miles, Inc.*,
    868 F. Supp. 437 (D. Conn. 1994) .........................................................12

*Schering-Plough Healthcare Prods. v. Schwarz Pharma, Inc.*,
    547 F. Supp. 2d 939 (E.D. WI. 2008) ....................................................12

*SEC v. Gentile*,
    2017 U.S. Dist. LEXIS 204883 (D,N.J. Dec. 13, 2017) ........................29

*Smith v. Allstate Ins. Corp.*,
    No. 99 C 4240, 2001 U.S. Dist. LEXIS 24482 (N.D. Ill. Sep. 17, 2001) .................6

*Southland Sod Farms v. Stover Seed Co.*,
  108 F.3d 1134 (9th Cir. 1997) ...................................................................................13

*Stein v. Marquis Yachts, LLC*,
  No. 14-24756-CIV, 2015 U.S. Dist. LEXIS 35088 (S.D. Fla. Mar. 20, 2015) .....................22

*TemPay, Inc. v. Biltres Staffing of Tampa Bay, Ltd. Liab. Co.*,
  945 F. Supp. 2d 1331 (M.D. Fla. 2013) ........................................................................24

*Thompson Med.*,
  104 F.T.C. 648 ........................................................................................................11

*United States v. Philip Morris USA, Inc.*,
  396 F.3d 1190 (D.C. Cir. 2005) ..................................................................................26

**Statutes**

U.S.C. 57(b) ..............................................................................................................30

15 U.S.C. § 45(n) .........................................................................................................8

15 U.S.C. § 53(b) ........................................................................................24, 25, 28, 30

15 U.S.C. § 57b ...........................................................................................................30

15 U.S.C. § 57b(a)(2) ...................................................................................................18

15 U.S.C. §§ 6101-6108 ................................................................................................6

15 U.S.C. § 6103(a) .....................................................................................................22

15 U.S.C. § 6105(b) .....................................................................................24, 25, 26, 28

28 U.S.C. § 2462 .....................................................................................................27, 29

16 C.F.R. Part 310 .........................................................................................................6

16 C.F.R. § 310.3(b) ....................................................................................................20

16 C.F.R. § 310.4(b) ....................................................................................................19

Defendant, Mitchel May, by and through counsel, pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.1, moves this Court for Summary Judgment. In support of this Motion, Defendant adopts and incorporates by reference arguments made in opposition to the FTC's Motion for Preliminary Injunction, and Defendant relies upon all prior proceedings and filings and the within Memorandum of Law, Statement of Undisputed Material Facts, and annexed exhibits.

## PRELIMINARY STATEMENT

The core allegations in this suit pertain to and arise out of Lifewatch Inc.'s 2012 and 2013 business relationship with non-party entity, Worldwide Info Services. As set forth in the Amended Complaint, Plaintiffs seek to hold Mr. May individually liable -- under the FTC Act, the TSR, and the Florida consumer protection statute, FDUPTA -- for his own acts and the acts of Lifewatch.

Even if, *arguendo*, plaintiffs could demonstrate that Lifewatch is liable under the TSR, the FTC Act, and FDUTPA, any conduct before May 31, 2013 cannot be imputed to Mr. May in his individual capacity given that May Trust 2013 -- of which Mr. May is the executor, trustee, or administrator -- first acquired shares in Lifewatch on May 31, 2013, and before that date Mr. May's role with respect to Lifewatch was largely confined to performing inventory consultation services as a 1099 contractor.[1] The evidence shows that May Trust 2013 acquired an interest in Lifewatch after Lifewatch had an established business relationship with Worldwide Info Services.[2] The evidence adduced shows that during the approximately 7 months between May Trust 2013's acquisition of a portion of Lifewatch's shares and the cessation of operations by Worldwide Info Services, Inc. in January 2014 (or thereafter, insofar as it is alleged to have

---

[1] Statement of Facts, paragraphs 19, 20, 24, 26.
[2] Id.

continued), Mr. May participated in aspects of the business, but he did not participate in the allegedly violative acts nor did he possess the requisite knowledge of the allegedly violative acts.[3]

As explained in more detail herein, there is insufficient evidence with respect to many of plaintiffs' allegations and plaintiffs have no legal or factual basis for several of the asserted prayers for relief.

## FACTUAL/PROCEDURAL BACKGROUND

Lifewatch Inc. is a New York corporation that has, at all relevant times, provided emergency monitoring products and services to elderly, seriously ill, and disabled individuals. By simply pressing a button on Lifewatch-provided equipment, Lifewatch's customers have immediate access to emergency services.[4] Lifewatch provides free equipment to its customers to allow them access to Lifewatch's services. And, in conjunction with providing the free equipment, Lifewatch engages third-party monitoring companies to respond to emergency signals sent by Lifewatch's customers.[5] Lifewatch undisputedly provides life-saving equipment and life-saving services. There are no allegations in this case that the equipment is faulty or that the monitoring services are deficient.

Lifewatch actively sought ways to expand its customer base, and so, it entered into agreements with various independent sales companies. It also entered into a Marketing Alliance Agreement and an Amended Marketing Alliance Agreement with non-party Connect America.com LLC. in 2012 and 2013.[6] Pursuant to Lifewatch's agreements with the

---

[3] Statement of Facts, paragraphs 25, 34-40.
[4] Statement of Facts, paragraphs 1-3.
[5] Statement of Facts, paragraphs 4-5.
[6] Statement of Facts, paragraph 6-7.

independent sales companies, the independent sales companies originated customer accounts through radio, television, internet, and print advertising, as well as telemarketing. These independent sales companies then offered to sell those accounts to Lifewatch -- and other emergency monitoring companies -- on a non-exclusive basis.  Lifewatch's agreements with these independent sales companies explicitly provided that the independent companies are contractually obligated to comply with all applicable state and federal telemarketing laws. Furthermore, within these agreements, the independent companies warrant and represent to Lifewatch that these laws are followed.[7]  Pursuant to the two Marketing Alliance Agreements with non-party Connect America, Lifewatch and Connect America combined marketing efforts and Connect America provided Lifewatch with a non-transferable license to use its trademarks. Indeed, in their combined customer welcome letter, Connect America and Lifewatch included both of their logos and acknowledged the companies' partnership and a joint customer service department.[8]

In approximately 2012, the FTC and State Attorneys General made public their investigations into various telemarketing companies serving the emergency monitoring industry. Those investigations resulted in a number of civil enforcement actions taken by the FTC (e.g. *FTC and State of Florida, Office of the Attorney General, Department of Legal Affairs v Worldwide Info Services, Inc*. et al., United States District Court for the Middle District of Florida, 6:14-cv-8-ORL-28DAB).  Among the independent companies investigated and sued by the FTC and others were companies with whom Lifewatch had transacted business, i.e. Worldwide Info Services, Inc.  In March 2014, the FTC served Lifewatch with a Civil Investigative Demand ("CID"), and in June 2015, the FTC filed suit.  (R. Doc 1).

---

[7] Statement of Facts, paragraphs 8-10.
[8] Statement of Facts; paragraphs 11-12.

May Trust 2013, of which defendant Mitchell May is executor, administrator, or trustee, acquired an interest in Lifewatch by way of a Share Purchase Agreement executed on May 31, 2013 -- less than 10 months before the CID was issued.[9]  Before that time, Mr. May worked as a 1099 contractor for Lifewatch and his role with Lifewatch was largely confined to consulting with respect to inventory, shipping, and order fulfillment.[10]  The FTC's CID was issued and suit was initiated based largely -- if not entirely -- on Lifewatch's acquisition of customer accounts (pursuant to the Marketing Alliance Agreement with Connect America and the Purchase Agreement with Worldwide Info Services) in 2012 and 2013 from Worldwide Info Services, Inc., which ceased doing business in January 2014.

The evidence shows that Lifewatch's relationship with Worldwide Info Services, Inc. was an unmitigated financial catastrophe for Lifewatch.  Indeed, as a result of this relationship, Lifewatch sustained nearly ten million dollars in losses, refunded approximately three million dollars to customers, and effectively "gave away" to customers medical alert equipment with a retail value totaling approximately fourteen million dollars.[11]  Moreover, in approximately April 2014, as a result of the allegations made by the FTC and the Florida Attorney General in the Florida enforcement proceedings filed against Worldwide Info Services, Lifewatch voluntarily created a customer refund program to address Worldwide's alleged violations to the extent they impacted existing Lifewatch customers.[12]  As part of this refund program, Lifewatch provided its customers with information about the Florida litigation and offered and provided full refunds to customers who had purchased Lifewatch's products or services based on, *inter alia*, any of the allegedly false and misleading statements of the independent companies cited by the FTC and the

---

[9] Statement of Facts paragraph 16.
[10] Statement of Facts, paragraphs 20-22.
[11] Statement of Facts, paragraphs 15-17.
[12] Statement of Facts, paragraphs 29 – 31.

Florida Attorney General in their legal action. Through this refund program, Lifewatch sent letters to its customers, and those who responded were issued a refund.[13]

In June 2015, the FTC and the Florida Attorney General filed a Complaint against Lifewatch Inc. and its chief executive officer, Evan Sirlin, alleging violations of the FTC Act, the TSR, and FDUTPA. (R. Doc. 1). A preliminary injunction was entered in March 2016. (R. Doc. 129). In July 2016, the FTC filed an Amended Complaint that, for the first time, named Mitchel May. (R. Doc. 165).

## SUMMARY JUDGMENT STANDARD

According to Federal Rule of Civil Procedure 56(b) ("Rule 56"), the Court will grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(b). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986). The moving party of summary judgment has the initial burden of showing that no issue of material fact exists in the case. Pursuant to Rule 56, when a properly supported motion for summary judgment is made, the non-movant must set forth specific facts showing there is a genuine issue of material fact and that the moving party is not entitled to judgment as a matter of law. *Anderson,* 477 U.S. at 250. Accordingly, the non-movant must go beyond the pleadings and support his contentions with proper documentary evidence, and, thus, may not rest on mere allegations in the pleadings or upon conclusory statements in affidavits. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 91 L. Ed. 2d 265, 106 S. Ct.

---

[13] Statement of Facts, paragraphs 29 – 31.

2548 (1986).  The Court does not weigh the evidence or determine the truth of matter asserted when considering the submissions of the parties. *Anderson,* 477 U.S. at 249. The Court "must view the facts, and all reasonable inferences drawn therefrom, in a light most favorable to the nonmoving party." *Baron v. City of Highland Park,* 195 F.3d 333, 337 (7th Cir. 1999). Summary judgment must be granted to the moving party unless a reasonable jury could find for the nonmoving party. *Anderson,* 477 U.S. at 249; *Smith v. Allstate Ins. Corp.*, No. 99 C 4240, 2001 U.S. Dist. LEXIS 24482, at *31-33 (N.D. Ill. Sep. 17, 2001).  As set forth herein, summary judgment in favor of the defendant should be granted.

## LEGAL ARGUMENTS

The FTC has filed suit under Sections 13(b) and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b) and 57b, and the Telemarketing and Consumer Fraud and Abuse Prevention Act ("Telemarketing Act"), 15 U.S.C. §§ 6101-6108, and requested temporary, preliminary, and permanent injunctive relief, rescission or reformation of contracts, restitution, the refund of monies paid, disgorgement, and other equitable relief for alleged violations of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and the FTC's Trade Regulation Rule entitled "Telemarketing Sales Rule" ("TSR"), 16 C.F.R. Part 310.

The State of Florida has filed suit pursuant to the Telemarketing and Consumer Fraud and Abuse Prevention Act ("Telemarketing Act"), 15 U.S.C. §§ 6101-6108 and the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Chapter 501, Part II, Florida Statutes (2014), and requested temporary and permanent injunctions, consumer restitution, civil penalties and other equitable relief, and reimbursement of costs and attorneys' fees for violations of the TSR and FDUTPA.

Plaintiffs assert violations of the FTC Act in Count One (Misrepresentations of Material Facts). Plaintiffs assert violations of the TSR in Counts Two (Misrepresentations); Three (Assisting and Facilitating Deceptive Telemarketing Acts or Practices); Four (Violations of the DNC); Five (Failure to Honor Do Not Call Requests); Six (Failure to Transmit Caller Identification); Seven (Initiation of Unlawful Prerecorded Messages after September 1, 2009); Eight (Failure to Make Required Oral Disclosures); and Nine (Assisting and Facilitating Abusive Telemarketing Acts or Practices). Plaintiffs also contend that violations of the TSR as set forth in Counts Two through Nine also constitute unfair or deceptive acts or practices affecting commerce in violation of Section 5(a) of the FTC Act. In Count Ten, Plaintiff, State of Florida, asserts a claim under FDUTPA regarding the same representations that are alleged to violate the FTC Act in Count One. As set forth below, summary judgment must be granted as to each of these counts.

## I.      The FTC ACT (Counts One – Eight)

### 1.      Unfair Practices under Section 5 of the FTC Act

In 1980 Congress suspended the FTC's rulemaking authority over commercial advertising practices. *Am. Fin. Servs. Ass'n v. FTC*, 767 F.2d 957, 969 (D.C. Cir. 1985). Thereafter, the FTC outlined three limitations to which it would adhere when exercising its authority to challenge allegedly "unfair" practices, as set forth in a policy statement "delineating the Commission's view of the boundaries of its consumer unfairness jurisdiction." FTC Policy Statement on Unfairness, appended to *In re Int'l Harvester Co.,* 104 F.T.C. 949, *76 (1984) (emphasis added).

These three requirements limiting the FTC's enforcement authority were eventually codified: "The Commission shall have no authority . . . to declare unlawful an act or practice on

the grounds that such act or practice is unfair unless the act or practice causes or is likely to

cause: 1) substantial injury to consumers which is 2) not reasonably avoidable by consumers

themselves and 2) not outweighed by countervailing benefits to consumers or to competition." 15

U.S.C. § 45(n) (emphasis added). Although courts often cite the three identified requirements as

the elements of an unfair-practices claim, Section 5(n) establishes necessary but not sufficient

prerequisites for unfairness. See *FTC v. Wyndham Worldwide Corp*., 799 F.3d 236, 244 (3d Cir.

2015) ("While the provision forbids the FTC from declaring an act unfair 'unless' the act

satisfies the three specified requirements, it does not answer whether these are the only

requirements for a finding of unfairness."); *In re LabMD, Inc*., No. 9357, 2015 WL 7575033,

\*37-\*38 (Nov. 13, 2015) (citing *Wyndham* and explaining that the three prongs of Section 5(n)

"establish an outer limit to the Commission's authority to declare an act or practice unfair" and

constitute "a legal precondition" to finding a defendant liable for unfair conduct).

Even if, arguendo, the Court were to conclude that the provisions of Section 5(n) fully

define rather than limit when a business practice is unfair, the Court should nevertheless find that

the FTC cannot demonstrate unfair practices under the FTC Act in this case.

A. Substantial Injury

The FTC cannot demonstrate substantial injury because: (1) customers who wanted

refunds obtained refunds; and (2) in many instances, customers not only received refunds but

received free equipment at Lifewatch's expense.[14] The evidence shows that refunds were issued

upon request prior to issuance of the CID.[15] And, after issuance of the CID, Lifewatch began

issuing refunds to customers who felt they had been deceived.[16] Evidence also shows that up to

---

[14] Statement of Facts, paragraphs 29-31; 39
[15] Statement of Facts, paragraphs 29-31; 39
[16] Id.

50% of the medical alert equipment that Lifewatch had purchased from third-parties and sent to customers was never returned to Lifewatch.[17]   In other words, the customers kept the equipment at Lifewatch's expense.  As such, the FTC cannot satisfy the substantial injury prong.  See *FTC v. Kennedy*, 574 F. Supp. 2d 714, 720 (S.D. Tex. 2008) (substantial injury shown when consumers requested refunds but did not receive them).

      B.  Any Injury Was Reasonably Avoidable After Charges Were Incurred

      Courts have held that under Section 5 of the FTC Act, a practice is not unfair if consumers can reasonably avoid the injury either before or after the fact, including where the consumer can address the injury through post-purchase mitigation efforts – for example, by seeking a refund. *Davis v. HSBC Bank Nevada, N.A*. 691 F.3d 1152 (9th Cir. 2012) ("An injury is reasonably avoidable . . . if consumers are aware of, and are reasonably capable of pursuing, potential avenues toward mitigating the injury after the fact."); *FTC v. Neovi, Inc*., 598 F. Supp. 2d 1104, 1115, 1158 (S.D. Cal. 2008) (reviewing the district court's analysis of pre- and post-harm reasonable avoidability); see also *Orkin Exterminating Co. v. FTC*, 849 F.2d 1354, 1365 (11th Cir. 1988) ("Consumers may . . . seek to mitigate the damage afterward if they are aware of potential avenues toward that end.").

      Courts have routinely evaluated whether an alleged injury was reasonably avoidable by considering the availability of a refund.  In *Davis*, the court held that even if the consumer could not have avoided the credit-card fee before enrolling, he could have reasonably avoided it after because "the annual fee was completely refundable if [plaintiff] closed his account within 90 days without using the card." 691 F.3d at 1169.  Even though closing the account to obtain the refund would have a "negative impact" on the consumer's credit score, the question of post-harm

---

[17] Statement of Facts, paragraph 39.

reasonable avoidability "was not whether subsequent mitigation was convenient or costless, but whether it was 'reasonably possible.'" Id. (emphasis added). The ability to defend against an FTC charge by providing refunds or other post harm relief exists for good reason: companies should be encouraged to voluntarily remedy consumer harm. Like the concept of standing, where there is no injury there is no harm to redress.

Here, Lifewatch's refund practices stand in stark contrast to those determined insufficient in other FTC unfair-practices cases. In *FTC. v. Inc21.com Corp.*, the injury was not reasonably avoidable after the fact because "consumers, even after recognizing that they are being charged by [defendants], cannot cancel their services or obtain refunds from defendants despite reasonable efforts." 688 F. Supp. 2d 927, 939 (N.D. Cal. 2010) (emphasis added). And in *FTC v. Ideal Fin. Sols., Inc.*, the defendant's customer-service staff "were instructed to push the financial services that the consumers had purchased and avoid refunds or chargebacks." 2015 WL 4032103, at *8 (D. Nev. June 30, 2015) (emphasis added); see also *FTC v. Kennedy*, 574 F. Supp. 2d 714, 720-21 (S.D. Tex. 2008) (finding that "consumers were forced to expend substantial time and effort to obtain refunds and cancellation of the service" and that "[w]hen consumers requested refunds, they did not immediately receive them."); *FTC v. Crescent Pub. Grp., Inc.*, 129 F. Supp. 2d 311, 322 (S.D.N.Y. 2001) ("[C]onsumers have had difficulty in avoiding or reversing defendants' bills. Some consumers have been unable to determine who was billing them, what they were being billed for, and how to contest the charges.").

Again, refunds were issued upon request prior to issuance of the CID, and, after issuance of the CID, Lifewatch began issuing refunds to customers who felt they had been deceived.

Moreover, the pool of customers acquired through Worldwide ultimately obtained -- at no cost to the consumers -- valuable equipment at Lifewatch's expense.[18]

## 2. Deceptive Practices under Section 5 of the FTC Act

The Amended Complaint alleges deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a). An act or practice is deceptive if: (1) there is a representation, omission, or practice; (2) that is likely to mislead consumers acting reasonably under the circumstances; and (3) the representation, omission, or practice is material. *FTC. v. Stefanchik*, 559 F.3d 924, 928 (9th Cir. 2009) (citation omitted). The FTC can prove a representation is likely to mislead consumers by establishing either: 1) actual falsity of express or implied claims ("falsity" theory); or 2) that the advertiser lacked a reasonable basis for asserting that the message was true ("reasonable basis" theory). *FTC v. Pantron I Corp.*, 33 F.3d 1088, 1096 (9th Cir. 1994) (citing *Thompson Med.*, 104 F.T.C. 648); *FTC v. John Beck Amazing Profits, LLC*, 865 F. Supp. 2d 1052, 1067 (C.D. Cal. 2012).

Information is material where it "concerns the purpose, safety, efficacy, or cost, of the product or service." *FTC v. Direct Mktg. Concepts, Inc.*, 569 F. Supp. 2d 285, 308 (D. Mass. 2008) (citing *Novartis Corp. v. FTC*, 223 F.3d 783, 786, 343 U.S. App. D.C. 111 (D.C. Cir. 2000) (quoting *FTC Policy Statement on Deception*); *In re J.B. Williams Co.*, 68 F.T.C. 481, 546 (1965), *aff'd*, 381 F.2d 884 (6th Cir. 1967)). *FTC v. Johnson*, 96 F. Supp. 3d 1110, 1119-21 (D. Nev. 2015).

In the case at bar, the FTC has alleged that Lifewatch -- through its third party sellers -- made the following misrepresentations in contravention of the FTC Act:

---

[18] Statement of Facts, paragraphs 29-31; 39-40.

1. A friend, family member, health care provider, or other acquaintance of the consumer referred the consumer to Defendants, or purchased the medical alert system for the consumer;

2. Defendants' medical alert system is endorsed by reputable organizations, including, but not limited to, the American Heart Association, the American Diabetes Association, the National Institute on Aging, the AARP, the American Red Cross, and/or health care providers;

3. Consumers will not be charged the first monitoring fee until they have received and activated the medical alert system;

4. Consumers may cancel the monitoring service at any time without any further financial obligation

R. Doc. 165.

As an initial matter, the Court can rule, as a matter of law, that the representations made were not false, misleading, or material. *See Derby Indus. v. Chestnut Ridge Foam, Inc.*, 202 F. Supp. 2d 818 (N.D. In. 2002) (finding, in the context of the Lanham Act, that representations regarding the testing of mattresses were neither literally false, nor misleading, and that plaintiff had not shown the representations to be material to reasonable customers); *Schering-Plough Healthcare Prods. v. Schwarz Pharma, Inc.*, 547 F. Supp. 2d 939, 943 (E.D. WI. 2008) (holding that labeling of certain medications as "prescription only" did not constitute false advertising because a reasonable fact finder could conclude that the statements only refer to the specific products on which the they appear, not to the entire product line, as plaintiff alleged); *Pfizer, Inc. v. Miles, Inc.*, 868 F. Supp. 437, 446 (D. Conn. 1994) (holding that claims that defendant's drug was less expensive than plaintiff's were not misleading even where the drugs were not

bioequivalent). Here, the evidence demonstrates that representations three and four are not false or misleading as a matter of law because the equipment was ready to use upon receipt and there is no evidence that consumers were unable to cancel the services or that there was a continuing obligation after cancellation.[19]

In reviewing allegedly false and misleading statements, courts are to read the statements in their entirety and in context to determine whether they are actionable. *See, e.g., Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997) ("When evaluating whether an advertising claim is literally false, the claim must always be analyzed in its full context.").

Here, in view of the equipment being undisputedly free for the consumer, statement number one is not actionably false or material. The court can also rule that inasmuch as statement number two plainly has no bearing on the purpose, safety, efficacy, or cost of the product or service, it is not material. In any event, as set forth in detail during the preliminary injunction briefings and the hearing, at least on a generic basis, monitoring devices and monitoring services substantially the same as those offered by Lifewatch have been endorsed by a number of organizations to protect older adults and infirm people from certain risks.[20] The court can also rule as a matter of law that statement number three is not false or without a reasonable basis because the evidence shows Lifewatch's consumers are charged in conjunction with receiving medical alert systems, which are already active and ready to be used because Lifewatch engages monitoring centers for each customer before the devices are even sent.[21] Finally, there is no evidence that consumers were unable to cancel the services or that after cancellation, consumers had a continuing financial obligation.[22]

---

[19] Statement of Facts, Paragraph 36-39; 41.
[20] Statement of Facts, Paragraph 35.
[21] Statement of Facts, paragraph 37.
[22] Statement of Facts, paragraphs 36-39; 40-41.

Further, in order to obtain consumer redress (such as restitution) in connection with allegedly deceptive acts, the FTC must show that consumers "actually relied on the entity's deceptive acts or practices to their detriment." *FTC v. Affiliate Strategies, Inc.*, 849 F. Supp. 2d 1085, 1120-21 (D. Kan. 2011); *FTC v. Direct Mktg. Concepts, Inc.*, 569 F. Supp. 2d 285, 308 (D. Mass. 2008). It has been held that to raise a presumption of reliance, the FTC must show: "(1) the business entity made material misrepresentations likely to deceive consumers, (2) those misrepresentations were widely disseminated, and (3) consumers purchased the entity's products." But, this "rebuttable presumption," which equates causation with reliance, was primarily derived from securities law's fraud-on-the-market ("FOTM") theory. This presumption is based, however, on a misunderstanding and misapplication of the case law; moreover, the FOTM concept has been largely undermined.

The reliance presumption was first articulated in *FTC v. International Diamond Corp*., 1983-2 Trade Cases Par. 65, 506 (N.D. Cal. 1983). In determining whether the FTC had to show that each purchaser subjectively relied on the defendant's material misrepresentations, *International Diamond* drew heavily from *Blackie v. Barrack*, 524 F. 2d 891 (9th Cir. 1975), cert. denied, 429 U. S. 816 (1976), the first case to apply FOTM. *Blackie* held that "plaintiffs could be relieved of the burden of proving subjective reliance in open market trading transactions where the purchasers relied on the prices set in the market and where defendants' misrepresentation constituted a fraud on the market." *Int'l Diamond* at *6. Based on *Blackie*, the *International Diamond* court incorrectly concluded that proof of materiality establishes causation because while "misrepresentations [are] a traditional prerequisite to recovery under common law fraud actions, . . . [s]ubjective reliance is not a distinct element of proof in class actions." Id. at *5. After *International Diamond* was decided, the U.S. Supreme Court approved FOTM in

*Basic v. Levinson* 485 US 224 (1988), however, the *Basic* Court rejected *Blackie's* FOTM version, i.e, the exact version *International Diamond* used to justify its reliance presumption. Justice White, in writing for the dissent said he agreed with the majority in rejecting a version of the theory which equates "causation" with "reliance" and permits recovery by a plaintiff who claims merely to have been harmed by a material misrepresentation . . . notwithstanding proof that the plaintiff did not in any way rely on [the misrepresentation]. . . . A nonrebuttable presumption of reliance would effectively convert Rule 10b-5 into 'a scheme of investor's insurance.'" A reliance presumption in this case would do exactly what Justice White and the *Basic* Court rejected: "equat[ing] causation with reliance," and allowing the FTC to claim consumers have been harmed without proving that even one consumer relied on an alleged misrepresentation.

While requiring proof of subjective reliance by each consumer would arguably thwart prosecution of redress actions, the FTC should be required to proffer a representative sample of consumers for each claimed misrepresentation. Even if *Blackie* were considered good law, *International Diamond* misunderstood and misapplied the case. According to *International Diamond*, "Blackie held that the requisite causation is established by proof of purchase and the materiality of the misrepresentation." *Int'l Diamond* at *6. This is not entirely accurate, because the purchase must be made on a well-developed market. FOTM is based on the efficient-market hypothesis where the misrepresentation is factored into the price of the security. See *Basic, supra*. This same principle does not translate to FTC consumer redress actions. If causation does not equal reliance in a 10b-5 context, with the backdrop of the efficient market to bolster the claim, then causation cannot possibly equal reliance in a consumer redress action. Because the reliance presumption is based on a case that is no longer good law, and the entire underlying

theory has been discredited, the FTC should be required to show at least a representative sample of consumers on each claimed material misrepresentation. Absent such evidence, summary judgment is appropriately granted in movants' favor.

### 1. Individual Liability under the FTC Act

An individual defendant may be held liable for corporate acts or practices only if, after the corporate defendant is found liable under the FTC Act, the individual defendant is found to have: (1) participated in the underlying violative acts or had authority to control the corporate defendant and (2) knew of the violative acts or practices. *FTC v. Crescent Publ'g Group, Inc.,* 129 F. Supp. 2d 311, 324 (S.D.N.Y. 2001); *FTC v. Amy Travel Serv., Inc.,* 875 F.2d 564, 574 (7th Cir. 1989). *FTC v. Med. Billers Network, Inc.*, 543 F. Supp. 2d 283, 320 (S.D.N.Y. 2008).

In order to hold an individual liable for restitution as a result of the misconduct of a corporation, the FTC must also show that the individual had knowledge that the corporation engaged in dishonest or fraudulent conduct, that the misrepresentations were the type upon which a reasonable and prudent person would rely, and that consumer injury resulted*." FTC v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1170–71 (9th Cir. 1997) quoting *FTC v. Am. Standard Credit Sys., Inc.*, 874 F. Supp. 1080, 1089 (C.D. Cal. 1994).

The knowledge requirement is satisfied by "actual knowledge of material misrepresentations, reckless indifference to the truth or falsity of such misrepresentations, or an awareness of a high probability of fraud along with an intentional avoidance of the truth." *Amy Travel,* 875 F.2d at 574; *Med. Billers Network, Inc.* 543 F. Supp. 2d at 320. The FTC has not, and cannot demonstrate that May was aware that the alleged representations were being made to consumers. *See FTC v. Grant Connect, LLC*, 763 F.3d 1094, 1104 (9th Cir 2014) (finding that a defendant could not be individually liable for violations of Section 5(a) of the FTC Act where

there was no evidence that he knew of or directly participated in the violative scheme); *FTC v. Swish Mktg.*, 2010 U.S. Dist. LEXIS 15016 at * (N.D. Cal., Feb. 22, 2010) (dismissing a cause of action for individual liability under the FTC Act where the only allegation concerning the individual defendant's knowledge of the scheme was his role as CEO).

The FTC served an affidavit by Roderic Boling, a convicted criminal with several aliases turned confidential informant (in order to obtain a lenient sentencing recommendation), who accuses Mr. May of being involved in all facets of the Worldwide transactions. But, even setting aside Boling's serious credibility issues, the Court should not consider the allegations contained in Mr. Boling's affidavit because, among other things, Mr. Boling repeatedly evaded defendant's subpoena,[23] and as a consequence, defendant has been unable to cross-examine Mr. Boling or obtain any discovery from him. *See Yarus v. Walgreen Co.*, 2015 U.S. Dist. LEXIS 86247 at n. 9 (E.D. Pa. 2015) "it seems fundamentally unfair to allow a third party witness to dodge service of (or simply ignore) discovery subpoenas, and then magically appear and testify in response to a trial subpoena." *See also*, *Van Beek v. Robinson*, 2013 U.S. Dist. LEXIS 13708 at * (E.D. Mich. Feb. 1, 2013) (precluding witnesses who were not produced for deposition and holding that making those witnesses available following the close of discovery was an insufficient remedy); *Scozzari v. City of Clare*, 2012 U.S. Dist. LEXIS 77030 at * 5 (E.D. Mich. June 4, 2012) (precluding plaintiff's witness from testifying at trial when he refused to be deposed while discovery was still open and defendants were diligent in attempting to pursue the witness's deposition).; *JAT, Inc. v. Nat'l City Bank of the Midwest*, 2008 U.S. Dist. LEXIS 32759 *11 (E.D. Mich. April 22, 2008) (E.D. Mich. April 22, 2008) " 'A court surely can bar the testimony of a witness who refuses to submit to a deposition or to produce the materials he reviewed prior

---

[23] Statement of Facts, paragraph 42.

to testifying.' " (citing *Northbrook Excess and Surplus Insurance Co. v. The Procter and Gamble Co.*, 1988 U.S. Dist LEXIS 14895, *3-4 (N.D. Ill. Dec. 28, 1988).

Further, even had May been aware of the representations, he nevertheless had a good-faith basis to believe those representations were not misleading.[24]  An individual defendant's good-faith belief in the truth of a representation, while not relevant to the question of whether the representation violates the FTC Act, is considered with respect to whether that defendant can be held individually liable for the misrepresentations. *See FTC v. Patriot Alcohol Testers*, 798 F. Supp. 851 at 860 n.3 (D. Mass. 1992). ("Although . . . Prall's purported good-faith belief about the validity of the representations concerning insurance discounts is not material in determining whether such representations violate [Section 5(a) of the FTC Act], it is material in determining whether he can be held personally liable for such representations."); *FTC v. Medical Billers Network, Inc.*, 543 F. Supp. 2d 283 (S.D.N.Y. 2008) ("Because of the knowledge requirement for individual liability, a defendant's good-faith belief in the truth of the representation . . . may be relevant to whether that defendant can be held individually liable for these misrepresentations."); *see also FTC v. Liberty Supply Co.*, 2016 U.S. Dist. LEXIS 99224 at * 15 (E.D. Tex. Jul 29, 2016) (declining to strike defendant's defense of good faith as legally insufficient under the FTCA).

In *FTC v. Garvey*, 383 F.3d 891 (9th Cir. 2004) the court held that an endorser of a weight loss product could not be held individually liable because he had a good faith belief that his representations regarding the product were true based on his own experience with the product and written materials he had received from the defendant corporation.  Here as set forth in the May affidavit, May had a good faith belief in the representations.[25]  These facts are in stark

---

[24] Statement of Facts, paragraphs 35-41.
[25] Id.

contrast to those in *Amy Travel*, where the defendants were themselves the authors of the misleading sales scripts and were bombarded by a high volume of customer complaints, and *Patriot Alcohol Testers*, where the individual defendant personally placed the violative advertisements in various publications.

Further, an "unfair or deceptive" trade practice under Section 5 does not necessarily describe a "dishonest or fraudulent" one under Section 19. To establish liability under Section 19, the FTC must prove that the act or practice was one which a reasonable man would have known under the circumstances was dishonest or fraudulent. 15 U.S.C. § 57b(a)(2). And, courts have held that this standard requires scienter. *See FTC v. Glenn W. Turner*, 1983-1 Trade Cas. (CCH) para 65,244 (M.D. Fla. 1982); *FTC v. MacMillan, Inc*., 1983-2 Trade Cas. (CCH) para 65,553 (N.D. Ill. 1983). The defendant must have had the specific intent to defraud, or at least engaged in conduct "reasonably calculated to deceive persons of ordinary prudence and comprehension." *FTC v. MacMillan, Inc*. at para. 68,757; *FTC v. AMREP Corp.*, 705 F. Supp. 119, 127 (S.D.N.Y. 1988). In the case at bar, Mr. May could only be held individually liable after, *inter alia*, the corporate defendant is found liable and after Mr. May's knowledge and intent is demonstrated. The FTC has not adduced evidence sufficient to meet this burden.

The evidence adduced indicates that Mr. May only assumed a management role within the Lifewatch operation after execution of a May 31, 2013 share purchase agreement.[26] Further, the evidence adduced -- and upon exclusion of the Boling affidavit -- shows that even if Mr. May had the authority to assert control after May 31, 2013, he did not have knowledge of any pervasive or continuing violative acts or practices following May 31, 2013.[27]

---

[26] Statement of Facts, paragraphs 22-26.
[27] Id.

Mr. May cannot be held liable simply by virtue of his position within Lifewatch. An individual's corporate status, standing alone, is insufficient to support individual liability for a violation of the FTCA. *Coro v. Federal Trade Commission*, 338 F.2d 149 (1st Cir. 1964), cert denied, 380 U.S. 954(1965) (refusing to find individual liability for corporation's president, chairman of the board and largest stockholder for unlawful trade practices). Where it is not shown that an individual knew, should have known, or was recklessly indifferent to the violation, that individual cannot be held liable regardless of the corporate position held by that individual. In *Coro*, 338 F.2d at 154, the court found that there was no basis to hold an officer and shareholder individually responsible for violations of the FTC Act even where he admitted that he "had overall corporate responsibility and responsibility for the acts and practices of the corporation." Notwithstanding that admission, the Court held that "[i]n the absence of evidence of personal involvement in [the corporate entity's] unlawful conduct", the complaint against the individual officer and shareholder should be dismissed. Id. Similarly, the claims against Mr. May must be dismissed.

## II.     TELEMARKETING SALE RULE (Counts Two through Nine)

### 1.     TSR Causes of Action Asserted by the FTC

The TSR prohibits telemarketers from engaging in, and sellers from causing a telemarketer to engage in, certain abusive telemarketing practices. 16 C.F.R. § 310.4(b). These practices include: (1) initiating any outbound call to a person who has previously said he does not wish to be called, *id.* § 310.4(b)(1)(iii)(A); (2) initiating any outbound call to a person on the DNC registry, *id.* § 310.4(b)(1)(iii)(B); and (3) initiating any outbound calls that deliver a prerecorded message, *id.* § 310.4(b)(1)(v)(A). The TSR also requires sellers and

telemarketers to transmit the name of the telemarketer or the name of the seller to any caller identification service used by the telephone call recipient. *Id.* § 310.4(a)(8).

The regulations further require telemarketers "to disclose truthfully, promptly, and in a clear and conspicuous manner" the identity of the seller, that the purpose of the call is to sell goods or services, and the nature of the goods or services. *Id.* § 310.4(d). And, the TSR prohibits any person from providing "substantial assistance or support to any seller or telemarketer when that person knows or consciously avoids knowing that the seller or telemarketer is engaged" in an abusive practice. *Id.* § 310.3(b). *FTC v. Growth Plus Int'l Mktg., Inc.*, 2001 U.S. Dist. LEXIS 1215, No. 00 C 7886, 2001 WL 128139, at *3 (N.D. Ill. Jan. 9, 2001). *FTC v. Consumer All., Inc.*, No. 02 C 2429, 2003 U.S. Dist. LEXIS 17423, at *16 (N.D. Ill. Sep. 29, 2003).

Given that, as plaintiffs assert in their Amended Complaint, the alleged violations of the TSR encompassed within Counts Two through Nine also constitute unfair or deceptive acts or practices affecting commerce in violation of Section 5(a) of the FTC Act, an individual can be held individually liable for violations of the TSR based on the same elements for individual liability under the FTC Act. These elements are set forth and addressed in Section I above. For the same reasons Mr. May cannot be held individually liable under the FTC Act, he cannot be held liable under the TSR.

Plaintiffs also assert two counts for "assisting and facilitating" violations of the TSR, i.e. "it is a deceptive telemarketing act or practice and a violation of [the TSR] for a person to provide substantial assistance or support to any seller or telemarketer when that person knows or consciously avoids knowing that the seller or telemarketer is engaged in any act or practice that violates §§ 310.3(a), (c), or (d), or § 310.4 of [the TSR]." 16 C.F.R. § 310.3(b).

The FTC has provided the following business guidance with respect to assisting and facilitating under the TSR:

> It is a violation of the Rule to substantially assist a seller or telemarketer while knowing — or consciously avoiding knowing — that the seller or telemarketer is violating the Rule…For example, a third party who provides sellers or telemarketers with mailing lists, help in creating sales scripts or direct mail pieces, or any other substantial assistance while knowing or deliberately avoiding knowing that the seller or telemarketer is engaged in a Rule violation may be violating the Rule.

Moreover, in *FTC v. Affiliate Strategies, Inc.*, No. 09-4104-JAR, 2011 U.S. Dist. LEXIS 105072, at *25-27 (D. Kan. Sep. 16, 2011), the court recognized that examples (provided by the FTC) of conduct that may give rise to "assisting and facilitating" liability include:

> Providing lists of contacts to a seller or telemarketer that identify persons over the age of 55, persons who have bad credit histories, or persons who have been victimized previously by deceptive telemarketing or direct sales; providing any certificate or coupon which may later be exchanged for travel related services; providing any script, advertising, brochure, promotional material, or direct marketing piece used in telemarketing; or providing an appraisal or valuation of a good or service sold through telemarketing when such an appraisal or valuation has no reasonable basis in fact or cannot be substantiated at the time it is rendered.

Here, there is no evidence that Mr. May provided call lists to telemarketers, created sales scripts, or otherwise assisted telemarketers in violating the TSR.[28]  Moreover, the FTC cannot establish -- as it must -- that Mr. May assisted or facilitated while also knowing or deliberately avoiding knowing that the seller or telemarketer is engaged in a Rule violation.

### 2.  TSR violations asserted by the State of Florida

Florida jointly asserts causes of action for violations of the TSR. The Telemarketing Act provides, in relevant part:

> Whenever an attorney general of any State has reason to believe that the interests of *the residents of that State* have been or are being threatened or adversely affected because any person has engaged or is engaging in a pattern or practice of telemarketing which violates any rule of the Commission under section 6102 of

---

[28] Statement of Facts, paragraph 25.

this title [which includes the TSR], the State, as *parens patriae*, may bring a civil action *on behalf of its residents* in an appropriate district court of the United States to enjoin such telemarketing, to enforce compliance with such rule of the Commission, to obtain damages, restitution, or other compensation *on behalf of residents of such State*, or to obtain such further and other relief as the court may deem appropriate. 15 U.S.C. § 6103(a) (emphasis added).

Under the plain language of the statute, the State can bring an action for violations of the TSR only on behalf of residents of Florida. As such, Florida's joint TSR claims are necessarily limited to Florida residents, which, in any event, must be dismissed as to Mr. May for the reasons asserted above.

## III. FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT (Count Ten)

### 1. Limitations on FDUPTA's Application

As a threshold matter, while Florida has asserted in the Amended Complaint that "consumers within the state of Florida and elsewhere were actually misled…in violation of…FDUTPA," FDUPTA's applicability is limited to Florida consumers. *Coastal Physician Servs., Inc. v. Ortiz*, 764 So. 2d 7 (Fla. Dist. Ct. App. 1999); *Stein v. Marquis Yachts, LLC*, No. 14-24756-CIV, 2015 U.S. Dist. LEXIS 35088 (S.D. Fla. Mar. 20, 2015). As such Florida's FDUTPA claims are limited, as a matter of law, to Florida consumers.

To establish liability for FDUTPA violations based on deceptive acts or trade practices in an enforcement action, the Attorney General must show: 1) there was a representation; 2) the representation was likely to mislead customers acting reasonably under the circumstances; and 3) the misrepresentation was material. *FTC v. Sterling Precious Metals*, LLC, No 12-80597-CIV, 2013 U.S. Dist. LEXIS 20879, 2013 WL 595713, at *13 (S.D. Fla. Feb. 15, 2013) (quoting FTC v. USA Financial LLC, 415 Fed. App'x 970, 973 (11th Cir. 2011)); *FTC v. Lalonde*, 545 Fed.

App'x 825, 837 (11th Cir. 2013)); *FTC v. Student Aid Ctr., Inc.*, No. 16-21843-CIV-MORE, 2016 U.S. Dist. LEXIS 173658, at \*18 (S.D. Fla. Dec. 14, 2016).

As set forth in the FTC Act section above, the court can rule as a matter of law that the alleged misrepresentations were not actionably false or material. Moreover, as set forth above, plaintiff should be required to show at least a representative sample of Florida consumers on each claimed material misrepresentation. Absent such evidence, summary judgment is appropriate.

While piercing the corporate veil is not necessary to hold an individual liable under FDUTPA, plaintiff must show that the individual was a "direct participant in the improper dealings." *North American Clearing, Inc. v. Brokerage Computer Systems, Inc.*, 666 F.Supp.2d 1299, 1311 (M.D. Fla. 2009) (quoting *KC Leisure, Inc. v. Haber*, 972 So.2d 1069, 1074 (Fla. 5th DCA 2008)); *TemPay, Inc. v. Biltres Staffing of Tampa Bay, Ltd. Liab. Co.*, 945 F. Supp. 2d 1331, 1346 (M.D. Fla. 2013). Even if plaintiff could demonstrate material misrepresentations likely to mislead reasonable consumers, as set forth in detail in the preceding section, plaintiff cannot establish that Mr. May was a direct participant in these improper dealings. As set forth in detail above, the evidence shows just the opposite.

## IV. PRAYERS FOR RELIEF

1. <u>**Disgorgement, Restitution, Refunds and Rescission are not Statutorily-Authorized Remedies under 15 U.S.C. § 53(b) or 15 U.S.C. § 6105(b)**</u>

The Defendants are entitled to summary judgment as to plaintiffs' request for disgorgement, restitution, refunds, and rescission or reformation of contracts, because these equitable remedies are unavailable for the violations of the 15 U.S.C. § 53(b) and 15 U.S.C. § 6105(b) alleged in the Complaint.

In the Amended Complaint, the FTC relies on § 53(b) and § 6105(b) in support of its claim for disgorgement. However, these statutes and the framework of the FTC Act plainly undercut the FTC's contention that these statutes authorize the remedies sought.

Section 53(b) states, in pertinent part, that:

> Whenever the Commission has reason to believe
>
> (1) that any person, partnership, or corporation is violating, or is about to violate, any provision of law enforced by the Federal Trade Commission, and
>
> (2) that the enjoining thereof pending the issuance of a complaint by the Commission and until such complaint is dismissed by the Commission or set aside by the court on review, or until the order of the Commission made thereon has become final, would be in the interest of the public
>
> the Commission by any of its attorneys designated by it for such purpose may bring suit in a district court of the United States to enjoin any such act or practice. Upon a proper showing that, weighing the equities and considering the Commission's likelihood of ultimate success, such action would be in the public interest, and after notice to the defendant, a temporary restraining order or a preliminary injunction may be granted without bond: Provided, however, That if a complaint is not filed within such period (not exceeding 20 days) as may be specified by the court after issuance of the temporary restraining order or preliminary injunction, the order or injunction shall be dissolved by the court and be of no further force and effect: Provided further, That in proper cases the Commission may seek, and after proper proof, the court may issue, a permanent injunction . . .

53(b) is devoid of any reference to restitution, rescission, refunds or disgorgement as authorized forms of relief. Section 53(b) only authorizes a court to "enjoin an act or practice." See 15 U.S.C. § 53(b). Despite this clear statutory language, the FTC has pled that § 53(b) "empowers this Court to grant injunctive and other such relief as the Court may deem appropriate to halt and redress violations of any provision of law enforced by the FTC." R. Doc. 165, paragraph 72.

The FTC further asserts "The Court in its exercise of the equitable jurisdiction, may award ancillary relief, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies . . ." Id. But, the FTC's characterization

of the court's ability to order the equitable remedies of restitution or disgorgement goes far

beyond the plain statutory text.

Consistent with § 53(b), under 15 U.S.C. § 6105(b):

> The Commission shall prevent any person from violating a rule of the
> Commission under section 6102 of this title in the same manner, by the same
> means, and with the same jurisdiction, powers, and duties as though all applicable
> terms and provisions of the Federal Trade Commission Act (15 U.S.C. 41 et seq.)
> were incorporated into and made a part of this chapter. Any person who violates
> such rule shall be subject to the penalties and entitled to the privileges and
> immunities provided in the Federal Trade Commission Act in the same manner,
> by the same means, and with the same jurisdiction, power, and duties as though
> all applicable terms and provisions of the Federal Trade Commission Act were
> incorporated into and made a part of this chapter.

15 U.S.C. § 6105(b).  Although there is no mention of any form of equitable relief in this statute,

the FTC again asserts that § 6105(b) authorizes this Court to grant such equitable relief as

disgorgement, rescission, the reformation of contracts, and the refund of money. (R. Doc. 165,

paragraph 73. This is incorrect.

It is "an elemental canon of statutory construction that where a statute expressly provides

a particular remedy or remedies, a court must be chary of reading others into it." *Meghrig v. KFC

Western, Inc*., 516 U.S. 479, 488 (1996) (quoting *Middlesex County Sewerage Authority v.

National Sea Clammers Assn.*, 453 U. S. 1, 14 (1981)).  Accordingly, where a "statute has a

'comprehensive and reticulated' remedial scheme," courts "are reluctant to authorize additional

remedies." *United States v. Philip Morris USA, Inc*., 396 F.3d 1190, 1200 (D.C. Cir. 2005)

(quoting *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 209 (2002)). That is

because "Congress' care in formulating such a 'carefully crafted and detailed enforcement

scheme provides strong evidence that Congress did not intend to authorize other remedies that it

simply forgot to incorporate expressly.'" Id. Even where a statute permits injunctive relief, it

does not follow that other forms of equitable relief, such as restitution or disgorgement, are

available. *Owner-Operator Indep. Drivers v. Landstar System*, 622 F.3d 1307, 1323 (11th Cir. 2010).

While courts have previously permitted the FTC to seek equitable remedies such as disgorgement and restitution as part of its claim for injunctive relief, a recently decided United States Supreme Court case, *Kokesh v. S.E.C.,* 137 S. Ct. 1635, 1640 (2017), casts doubt as to the continuing viability of conferring the equitable remedies sought here where the statute is silent on a district court's authority to do so.

In *Kokesh*, the United States Supreme Court rejected the Government's sweeping claims regarding the authority of federal district courts to award disgorgement where the acts fell outside the operative statute of limitations. *Kokesh*, 137 S. Ct. at 1640. The Securities and Exchange Commission ("S.E.C.") argued that it was entitled to disgorgement of funds the defendant had received more than five years before the action, despite the five-year statute of limitations applicable to "penalties" under 28 U.S.C. § 2462. The district court and the Tenth Circuit agreed with that analysis and concluded that disgorgement was an equitable form of relief, and not a penalty. Id. at 1641. In a unanimous decision, the Supreme Court reversed. It noted that "disgorgement is a form of '[r]estitution measured by the defendant's wrongful gain.'" *Kokesh*, 137 S. Ct. at 1640 (quoting Restatement (Third) of Restitution and Unjust Enrichment § 51, Comment a, p. 204 (2010) (Restatement (Third)). "Disgorgement requires that the defendant give up 'those gains . . . properly attributable to the defendant's interference with the claimant's legally protected rights.'" Id.

The Supreme Court also approvingly cited the Restatement (Third) of Restitution and Unjust Enrichment § 51, Comment h, at 216, for the "general rule," that the defendant is entitled to a "deduction for all marginal costs incurred in producing the revenues that are subject to

disgorgement. Denial of an otherwise appropriate deduction, by making the defendant liable in excess of net gains, results in a punitive sanction that the law of restitution normally attempts to avoid." Id. at 1645. Thus, the form of disgorgement sought by the S.E.C. constituted a "penalty" and was therefore subject to the five-year statute of limitations found in § 2462.

Although the Supreme Court left open the question of whether courts possess the inherent authority, as courts of law and equity, to order disgorgement in agency enforcement actions where disgorgement is not a statutorily-conferred remedy, the discussion that took place during oral argument suggests that the Court harbored serious doubts about the availability of such relief.[29]

Critically, in the *Kokesh* opinion, the Supreme Court included what one commentator referred to as an "ominous footnote." See Expert Analysis, Chad M. Clamage, Esq., Mayer Brown LLP, Supreme Court's SEC Decision Could Limit Other Federal Agencies, WESTLAW JOURNAL DERIVATIVES at 3 (June 29, 2017). That footnote states: "Nothing in this opinion should be interpreted as an opinion on whether courts possess authority to order disgorgement in SEC enforcement proceedings or on whether courts have properly applied disgorgement principles in this context." *Kokesh*, 137 S. Ct. at 1642 n.3. According to Clamage, "[i]n the Supreme Court's vernacular, that [footnote] is a strong signal that the court doubts whether the

---

[29] At one point, Chief Justice John Roberts commented that "the S.E.C. devised this remedy or relied on this remedy without any support from Congress. If Congress had provided, here's a disgorgement remedy, you would expect them, as they typically do, to say, here's a statute of limitations that goes with it." See Exhibit A, *Kokesh v. S.E.C.*, Tr. of Oral Argument at 31. Justice Anthony Kennedy asked: "Is it clear that the district court has statutory authority to do this? . . . . Is there specific statutory authority that makes it clear that the district court can entertain this remedy?" Id. at 7-8. The S.E.C. conceded that there was no statutory authority. Id. at 8. Likewise, Justice Samuel Alito said that "in order to understand what [disgorgement] is, it would certainly be helpful and maybe essential to know what the authority for it is." Id. at 13. Similarly, Justice Sotomayor pointedly asked, "Can we go back to the authority?" Id. at 9. She cited a 1990 amendment to the securities laws that authorized civil penalties but not disgorgement as "the only authority" she could discern. Id. She then asked, "How could that be the basis of disgorgement?" Id.

SEC may obtain disgorgement at all." Clamage, supra. As such, it is far from clear that this Court has the statutory authority to order disgorgement, restitution, rescission, or refunds under 15 U.S.C. § 53(b) or 15 U.S.C. § 6105(b), as these statutes are silent as to whether these forms of relief are available.

There is every reason to believe that the Court's reasoning in *Kokesh* applies to the FTC Act and limits, or eliminates the FTC's ability to seek disgorgement under the Act.  In fact, the SEC itself warned that classifying SEC disgorgement as a penalty would have consequences beyond SEC enforcement actions, stating that "the adverse practical consequences of construing [the 5-year statute of limitations] to encompass disgorgement would not be confined to securities-law cases, since the government regularly seeks disgorgement in other contexts as well, under general statutory grants of authority to give equitable relief." Brief for the Respondents at 48.  The government specifically cited monetary relief under the FTC Act as something that would be affected by this ruling. *Id.*  Indeed, the courts have already begun to expand the reasoning of *Kokesh*, beyond SEC disgorgement.  *See SEC v. Gentile*, 2017 U.S. Dist. LEXIS 204883 at * (D. N.J. Dec. 13, 2017) (the five year statute of limitations under 28 USCS § 2462 barred the SEC from seeking an injunction, which the court concluded was a penalty under the logic of *Kokesh*).

Disgorgement under the FTCA has all the characteristics of a penalty under *Kokesh*. First, FTC Act disgorgement seeks to remedy a public wrong, not a wrong to individual consumers.  *See FTC v. Bronson Partners*, LLC, 654 F.3d 359, 372-373 (2d Cir. 2011). ("disgorgement is a distinctly public-regarding remedy … a regulatory agency seeking disgorgement need not identify specific victims to whom payment is due … as it would be required to do if seeking to impose a constructive trust").  Second, disgorgement seeks a punitive

and deterrent purpose.  *See FTC v. LoanPointe, LLC*, 525 Fed. App'x. 696, 702 (10th Cir. 2013) (unpublished) (emphasis added) ("a remedy that serves two purposes … stripping the wrongdoer of ill-gotten gains and deterring improper conduct"); *FTC v. Gem Merchandising Corp.*, 87 F.3d 466, 470 (11th Cir. 1996) ("We conclude that section 13(b) permits a district court to order a defendant to disgorge illegally obtained funds. To hold otherwise would permit … unjust enrichment and undermine the deterrence function of section 13(b)").  Finally, disgorged funds often do not go directly to the victims under the FTC Act.  *See FTC v. Febre*, 128 F.3d 530, 537 (7th Cir. 1997) ("the FTC often requests orders directing equitable disgorgement of the excess money to the United States Treasury.");  *FTC v. Bronson Partners* at 373 ("agencies may, as a matter of grace, attempt to return as much of the disgorgement proceeds as possible, [however] the remedy is not, strictly speaking, restitutionary at all, in that the award runs in favor of the Treasury, not of the victims"); *FTC v. Gem Merchandising Corp*. at 470 ("because it is not always possible to distribute the money to the victims of defendant's wrongdoing, a court may order the funds paid to the United States Treasury"); *FTC v. LoanPointe* at 698 ("government agencies are not required to return disgorged profits to the victims of a scheme").

2. <u>**Disgorgement, Restitution, Refunds and Rescission are Subject to the Three-Year statute of limitations enacted under U.S.C. 57(b)**</u>

The FTC has also invoked 15 U.S.C. § 57b in the operative complaint.  The Court should impose 57b's three-year statute of limitations with respect to any claims for disgorgement, restitution, refunds, and/or rescission under 57b.  Holding otherwise would effectively allow the FTC to circumvent the statute of limitations under 15 U.S.C. § 57b by seeking relief under 15 U.S.C. § 53(b), which contains no statute of limitations. Relieving the FTC of a statute of limitations would run afoul of the holding in *Kokesh*, where the Supreme Court rejected the claim that disgorgement is not subject to a statute of limitations.

## CONCLUSION

For the reasons set forth herein, defendant's motion for summary judgment must be granted in his favor.

DATED: December 27, 2017

<div style="margin-left: 40%;">

By: Joseph Lipari
**/s/  Joseph Lipari**
One of Mitchel May's Attorneys
Jason Sultzer, Esq. *(pro hac vice)*
Joseph Lipari, Esq. *(pro hac vice)*
THE SULTZER LAW GROUP, P.C.
14 Wall Street, 20th Floor
New York, New York 10005
(212) 618-1938 / Fax: (888) 749-7747

</div>