UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION, STATE OF FLORIDA, OFFICE OF THE ATTORNEY GENERAL, DEPARTMENT OF LEGAL AFFAIRS, <br><br> Plaintiffs, <br><br> v. <br><br> LIFEWATCH INC., a New York corporation, also d/b/a LIFEWATCH USA and MEDICAL ALARM SYSTEMS, <br><br> SAFE HOME SECURITY, INC., a Connecticut corporation, <br><br> MEDGUARD ALERT, INC., a Connecticut corporation, <br><br> EVAN SIRLIN, individually and as an officer or manager of Lifewatch Inc., <br><br> MITCHEL MAY, individually and as an officer or manager of Lifewatch Inc., and <br><br> DAVID ROMAN, individually and as an officer or manager of Lifewatch Inc., Safe Home Security, Inc., and Medguard Alert, Inc. <br> Defendants. | Case No. 15cv5781 <br><br> Judge Gary Feinerman |

**STATEMENT OF UNDISPUTED FACTS ASSOCIATED WITH THE
MOTION FOR SUMMARY JUDGMENT BY DEFENDANT
MITCHEL MAY**

Defendant, Mitchel May, by and through counsel, pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.1, states as follows with respect to the Undisputed Material Facts:

1. Lifewatch, Inc. is a New York personal emergency response system business that was incorporated in 1996. (Exhibit A, Baker Affidavit ¶ 2; Exhibit B, NY Corporate Documents, p. 8; Exhibit C, Sirlin Affidavit dated November 10, 2015, ¶11).

2. Since its inception, Lifewatch has provided emergency monitoring products and services to elderly, seriously ill, and disabled individuals. (Exhibit A, Baker Affidavit ¶ 2; Exhibit B, NY Corporate Documents; Exhibit C, Sirlin Affidavit dated November 10, 2015, ¶2).

3. By pressing a button on Lifewatch-provided equipment, Lifewatch's customers have immediate access to emergency services. (Exhibit A, Baker Affidavit ¶ 2; Exhibit C, Sirlin Affidavit dated November 10, 2015, ¶4).

4. Lifewatch has provided free equipment to its customers to allow them access to Lifewatch's services. (Exhibit A, Baker Affidavit ¶ 37, Exhibit D, Preliminary Injunction Hearing Transcript, p. 147; Exhibit O, Sirlin deposition Transcript p. 11; Exhibit P, Sirlin December 26, 2017 Affidavit).

5. In conjunction with providing the free equipment, Lifewatch engages third-party monitoring companies to respond to emergency signals sent by Lifewatch's customers. (Exhibit D, FTC Hearing Transcript, p. 147, p. 83; Exhibit E, Monitoring Contracts; Exhibit O, Sirlin deposition Transcript p. 11; Exhibit L, May Affidavit; Exhibit P, Sirlin December 26, 2017 affidavit).

6. Lifewatch actively sought ways to expand its customer base, and so, it entered into agreements with various independent sales companies, including Worldwide Info

Services, Inc., beginning in approximately 2012. (Exhibit C, Sirlin Affidavit, ¶ 9; Exhibit F, Worldwide Contract)

7. Lifewatch also entered into a Marketing Alliance Agreement and an Amended Marketing Alliance Agreement with non-party Connect America.com LLC. in 2012 and 2013. (Exhibit G, Marketing Alliance Agreement; Exhibit H, Amended Marketing Alliance Agreement).

8. Pursuant to Lifewatch's purchase agreements with the independent sales companies, the independent sales companies originated customer accounts through radio, television, internet, and print advertising, as well as telemarketing. (Exhibit F, Worldwide Contract).

9. Pursuant to Lifewatch's purchase agreements, the independent sales companies offered to sell accounts to Lifewatch -- and other emergency monitoring companies -- on a non-exclusive basis. Lifewatch's agreements with these independent sales companies explicitly provided that the independent companies are contractually obligated to comply with all applicable state and federal telemarketing laws. (Exhibit F, Worldwide Contract).

10. Furthermore, pursuant to Lifewatch's purchase agreements, the independent companies warrant and represent to Lifewatch that these laws are followed. (Exhibit F, Worldwide Contract, Section 4.2, 6.6, 6.7 (a-n)).

11. Pursuant to the two Marketing Alliance Agreements with non-party Connect America, Lifewatch and Connect America combined marketing efforts and Connect America provided Lifewatch with a non-transferable license to use its trademarks. (Exhibit G, Marketing Alliance Agreement; Exhibit H, Amended Marketing Alliance Agreement).

12. In their combined customer welcome letter, Connect America and Lifewatch included both of their logos and acknowledged the companies' partnership and a joint customer service department. (Exhibit I, Welcome Letter).

13. The customer accounts acquired by Lifewatch and Connect America under the Marketing Alliance Agreements originated from Worldwide Info Services, Inc. (Exhibit C, Sirlin Affidavit dated November 10, 2015, paragraphs 23-24).

14. Entities affiliated with Worldwide Info Services, Inc. included American Innovative Concepts, Inc., National Life Network, The Credit Voice, and Global Interactive Technologies. Exhibit J, Worldwide Permanent Injunction Order, paragraph 3).

15. As a result of Lifewatch's relationship with Worldwide Info Services and the affiliated entities, Lifewatch sustained at least $8.77 million in losses. (Exhibit K, Flaherty Report, p. 16; Exhibit P, Sirlin December 26, 2017 Affidavit).

16. As a result of Lifewatch's relationship with Worldwide Info Services and the affiliated entities, Lifewatch refunded $2,999,628 dollars to customers. (Exhibit K, Flaherty Report, p.16; Exhibit P, Sirlin December 26, 2017 Affidavit).

17. As a result of Lifewatch's relationship with Worldwide Info Services and the affiliated entities, Lifewatch "gave away" to customers medical alert equipment that Lifewatch paid for and which had a retail value totaling $14 million. (Exhibit K, Flaherty Report, p. 4; Exhibit P, Sirlin December 26, 2017 Affidavit).

18. Before May 31, 2013, Lifewatch sold accounts to non-parties including Connect America, Philips Lifeline, Valued Relationships Inc., First Street, and Security Partners. (Exhibit L, May Affidavit).

19. Mitchel May began working as a consultant for Lifewatch Inc. sometime in 2012 after meeting Evan Sirlin, Lifewatch's CEO. (Exhibit L, May Affidavit).

20. When Mitchel May arrived as a consultant at Lifewatch, Lifewatch was already transacting business with Worldwide Info Services, Inc. pursuant to written agreements. (Exhibit L, May Affidavit; Exhibit F, Worldwide Contract).

21. As a consultant, Mitchel May was primarily involved in: purchasing medical alert devices from third-parties for use by Lifewatch's customers; monitoring and maintaining an adequate inventory of medical alert devices; and streamlining the process of shipping medical alert devices to customers. (Exhibit L, May Affidavit).

22. Mitchel May was paid as a 1099 contractor up until July 1, 2015, when he transitioned to W2 status. (Exhibit L, May Affidavit).

23. Mitchel May's interactions with Worldwide during this time were primarily about ensuring adequate inventory. (Exhibit L, May Affidavit).

24. While Mitchel May's role within Lifewatch, Inc. changed after May Trust 2013's acquisition of the shares on May 31, 2013, he did not have knowledge or awareness before or after May 31, 2013 as to Lifewatch engaging in dishonest, fraudulent, unfair, deceptive, or violative conduct as alleged in the Amended Complaint. (Exhibit L, May Affidavit).

25. Mitchel May did not provide call lists to telemarketers, create sales scripts, or otherwise assist third parties in engaging in violative conduct as alleged in the Amended Complaint. (Exhibit L, May Affidavit).

26. On May 31, 2013, May Trust 2013, of which Mitchel May is executor, administrator, or trustee, acquired a 10% stake in Lifewatch pursuant to a Share Purchase Agreement. As

such, May never had an individual ownership interest in Lifewatch. (Exhibit L, May Affidavit; Exhibit M, Share Purchase Agreement).

27. Pursuant to the Share Purchase Agreement, 125 shares (out of 1250) in Medguard Alert, Inc. were provided to May Trust 2013, of which May is executor, administrator, or trustee. (Exhibit L, May Affidavit; Exhibit M, Share Purchase Agreement).

28. May has never had an individual ownership interest in Medguard Alert, Inc. (Exhibit L, May Affidavit; Exhibit M, Share Purchase Agreement).

29. In April 2014, as a result of the allegations made by the FTC and the Florida Attorney General in the Florida enforcement proceedings filed against Worldwide Info Services, Lifewatch voluntarily created a customer refund program to address Worldwide's alleged violations to the extent they impacted existing Lifewatch customers. (Exhibit C, Sirlin Affidavit dated November 10, 2015, paragraph 17; Exhibit A, Baker Affidavit, paragraph 9; Exhibit D, Preliminary Injunction Hearing Transcript, p. 78:14-21).

30. As part of this refund program, Lifewatch provided its customers with information about the Florida litigation and offered and provided full refunds to customers who had purchased Lifewatch's products or services based on, *inter alia*, any of the allegedly false and misleading statements of the independent companies cited by the FTC and the Florida Attorney General in their legal action. (Exhibit A, Baker Affidavit, paragraph 9; Exhibit C, Sirlin Affidavit dated November 10, 2015, paragraph 17; Exhibit D, Preliminary Injunction Hearing Transcript, p. 78).

31. Through this Lifewatch refund program, Lifewatch sent letters to its customers, and those who responded were issued a refund. (Exhibit A, Baker Affidavit, paragraph 9; Exhibit

C, Sirlin Affidavit dated November 10, 2015, paragraph 17; Exhibit D, Preliminary Injunction Hearing Transcript, p. 78).

32. Medguard Alert, Inc., a Connecticut company, incorporated in 2011 provides personal emergency response equipment and services to customers. (Exhibit L, May Affidavit).

33. Medguard Alert, Inc. had a pool of customers beginning in approximately January 2013, after having purchased those customer accounts, in bulk, from a non-party entity. (Exhibit L, May Affidavit).

34. The FTC has alleged the following statements were made by third-party sellers in connection with selling Lifewatch's services:

- A friend, family member, health care provider, or other acquaintance of the consumer referred the consumer to Defendants, or purchased the medical alert system for the consumer;

- Defendants' medical alert system is endorsed by reputable organizations, including, but not limited to, the American Heart Association, the American Diabetes Association, the National Institute on Aging, the AARP, the American Red Cross, and/or health care providers;

- Consumers will not be charged the first monitoring fee until they have received and activated the medical alert system;

- Consumers may cancel the monitoring service at any time without any further financial obligation

R. Doc. 165.

35. In fact medical alert systems have been endorsed by reputable organizations and health care providers.[1]    (Exhibit L, May Affidavit).

36. Lifewatch's consumers could and can cancel without further financial obligation. (Exhibit A, Baker Affidavit; Exhibit D, Preliminary Injunction Hearing Transcript, pp. 88 and 175; Exhibit P, Sirlin December 27, 2017 Affidavit).

37. Lifewatch's consumers are charged in conjunction with receiving medical alert systems, which are already active and ready to be used because Lifewatch engages monitoring centers for each customer before the devices are even sent.  (Exhibit D, Preliminary Injunction Hearing Transcript, p. 83; Exhibit P, Sirlin Affidavit dated December 26, 2017).

38. The customer is not charged for use of the device, and, therefore the device is free to the customer. (Exhibit A, Baker Affidavit ¶ 37; Exhibit D, Preliminary Injunction Hearing Transcript, p. 147; Exhibit O, Sirlin deposition Transcript p. 11; Exhibit P, Sirlin Affidavit dated December 26, 2017).

39. During the time in which Lifewatch provided equipment at no cost to customers acquired from the Worldwide entities throughout 2012 and 2013, approximately 50% of the customers who received the equipment and cancelled did not return the equipment to Lifewatch.  These customers received a refund and kept the equipment at Lifewatch's expense.  (Exhibit P, Sirlin Affidavit dated December 26, 2017; Exhibit K, Flaherty Report).

---

[1] https://www.aarp.org/health/doctors-hospitals/info-11-2010/medical_alert_systems.html ;
https://www.aarp.org/caregiving/home-care/info-2017/medic-alert-systems-options.html   ;
https://www.nia.nih.gov/health/aging-place-growing-old-home ; https://www.redcrossstore.org/dp.aspx?pgid=609

40. Mitchel May has believed and understood that medical alert systems have been endorsed by reputable organizations and health care providers. (Exhibit L, Mitchel May Affidavit).

41. Mitchel May has believed and understood that Lifewatch's consumers can cancel without further financial obligation and that Lifewatch's consumers are charged in connection with receiving medical alert systems, which are already active and ready to be used because Lifewatch engages monitoring centers for each customer before the devices are even sent. (Exhibit L, Mitchel May Affidavit).

42. Defendants attempted several times to serve the FTC's witness Roderic Boling with a subpoena. Mr. Boling was not served with the subpoena despite these attempts. (Exhibit N, Affidavit of Non-Service as to Boling).

DATED: December 27, 2017

        By: Joseph Lipari
        **/s/ Joseph Lipari**
        One of Mitchel May's Attorneys
        Jason Sultzer, Esq. (*pro hac vice*)
        Joseph Lipari, Esq. (*pro hac vice*)
        THE SULTZER LAW GROUP, P.C.
        14 Wall Street, 20th Floor
        New York, New York 10005
        (212) 618-1938 / Fax: (888) 749-7747