UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION, STATE OF FLORIDA, OFFICE OF THE ATTORNEY GENERAL, DEPARTMENT OF LEGAL AFFAIRS,<br><br>Plaintiffs,<br><br>v.<br><br>LIFEWATCH INC., a New York corporation, also d/b/a LIFEWATCH USA and MEDICAL ALARM SYSTEMS,<br><br>SAFE HOME SECURITY, INC., a Connecticut corporation,<br><br>MEDGUARD ALERT, INC., a Connecticut corporation,<br><br>EVAN SIRLIN, individually and as an officer or manager of Lifewatch Inc.,<br><br>MITCHEL MAY, individually and as an officer or manager of Lifewatch Inc., and<br><br>DAVID ROMAN, individually and as an officer or manager of Lifewatch Inc., Safe Home Security, Inc., and Medguard Alert, Inc.<br>Defendants. | Case No. 15cv5781<br><br>**AFFIDAVIT OF MITCHEL MAY** |

I, Mitchel May, of full age and being duly sworn, say:

1. I am a New York resident and I am over the age of 18. I have personal knowledge of the facts set forth herein and if called as a witness, I could and would competently testify to the facts set forth herein.

2. I began working as a consultant for Lifewatch Inc. sometime in 2012 after I met Evan Sirlin, Lifewatch's CEO.

3. When I arrived as a consultant at Lifewatch, Lifewatch was already transacting business with Worldwide Info Services, Inc. pursuant to written agreements.

4. As a consultant, I was primarily involved in: purchasing medical alert devices from third-parties for use by Lifewatch's customers; monitoring and maintaining an adequate inventory of medical alert devices; and streamlining the process of shipping medical alert devices to customers. I was paid as a 1099 contractor up until July 1, 2015, when I transitioned to W2 status.

5. My interactions with Worldwide during this time were primarily about monitoring the sales figures to ensure adequate inventory.

6. On May 31, 2013, May Trust 2013, of which I am executor, administrator, or trustee, acquired a 10% stake in Lifewatch pursuant to a Share Purchase Agreement. As such, I have never had an individual ownership interest in Lifewatch.

7. Additionally, pursuant to the Share Purchase Agreement, 125 shares (out of 1250) in Medguard Alert, Inc. were provided to May Trust 2013, of which I am executor, administrator, or trustee. As such, I have never had an individual ownership interest in Medguard Alert, Inc.

8. Medguard Alert, Inc. is a Connecticut corporation formed in 2011 that, like Lifewatch, Inc., provides personal emergency response equipment and services to customers.

9. It is my understanding that Medguard Alert, Inc. had customers beginning in approximately January 2013, after having purchased those customer accounts, in bulk, from a non-party entity.

10. Through the Share Purchase Agreement, Medguard Alert, Inc. obtained additional customers by buying bulk accounts from Lifewatch Inc.

11. After the Share Purchase Agreement, Medguard Alert, Inc. also purchased customer accounts in 2014 from non-party entities.

12. I understand that before the Share Purchase Agreement, Lifewatch sold accounts to non-parties including Connect America, Philips Lifeline, Valued Relationships Inc., First Street, and Security Partners – not just to MedGuard Alert, Inc.

13. MedGuard Alert, Inc.'s office has always been located in Connecticut and, up until May 31, 2013, MedGuard Alert, Inc. did not share office space, officers, or personnel with Lifewatch.

14. While my role within Lifewatch, Inc. changed after May Trust 2013's acquisition of the shares on May 31, 2013, I did not have knowledge or awareness before or after May 31, 2013 as to Lifewatch engaging in dishonest, fraudulent, unfair, deceptive, or violative conduct as alleged in the Amended Complaint.

15. Moreover, I did not provide call lists to telemarketers, create sales scripts, or otherwise assist third parties in engaging in violative conduct as alleged in the Amended Complaint.

16. After the FTC filed suit against the *Worldwide* defendants in 2014, I was involved in implementing a quality control program, which included:

    a) Arranging for a refund program to customers who believed they were induced to purchase products and services based on misrepresentations by the Worldwide defendants;

    b) Requiring third-party sellers to present valid business licenses;

    c) Insisting that outside sellers sign affidavits affirming they will follow Lifewatch's guidelines and will not make the statements at issue in this case (i.e. those set forth in the Amended Complaint) to prospective customers;

    d) Designating a Lifewatch employee to request and receive audio-recordings and conduct spot checks to ensure compliance with Lifewatch's guidelines and purchase agreements.

17. I was also involved in directing Lifewatch's director of operations, Sarai Baker to immediately terminate Lifewatch's relationship with any third-party entities thought to be deviating from Lifewatch's guidelines set forth in the purchase agreements.

18. I understand the FTC has alleged the following statements were made by third-party sellers in connection with selling Lifewatch's services:

- A friend, family member, health care provider, or other acquaintance of the consumer referred the consumer to Defendants, or purchased the medical alert system for the consumer;

- Defendants' medical alert system is endorsed by reputable organizations, including, but not limited to, the American Heart Association, the American Diabetes Association, the National Institute on Aging, the AARP, the American Red Cross, and/or health care providers;

- Consumers will not be charged the first monitoring fee until they have received and activated the medical alert system;
- Consumers may cancel the monitoring service at any time without any further financial obligation

19. I am unaware of those specific statements having been made in connection with selling Lifewatch's services. Nevertheless, it has been my belief and understanding that medical alert systems have been endorsed by reputable organizations and health care providers. In fact, it has been my understanding that the Red Cross and PERS company, Philips Lifeline (which purchased accounts from Lifewatch) entered into a PERS partnership. Further, it has been my understanding that Lifewatch's consumers can cancel without further financial obligation and that Lifewatch's consumers are charged in connection with receiving medical alert systems, which are already active and ready to be used because Lifewatch engages monitoring centers for each customer before the devices are even sent.

20. I am unaware of those specific statements or the practices of the third-party sellers having caused harm to consumers given that Lifewatch has provided a product and service that unquestionably works and given that unsatisfied consumers already obtained full refunds or had the ability to obtain full refunds.

21. I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated: 12/27/17

_____
Mitchel May