**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

_____

| | |
|---|---|
| FEDERAL TRADE COMMISSION, and | ) |
| | ) |
| STATE OF FLORIDA, OFFICE OF THE | ) |
| ATTORNEY GENERAL, DEPARTMENT | ) |
| OF LEGAL AFFAIRS, | ) Case No. 15cv5781 |
| | ) |
| Plaintiffs, | ) Judge Gary Feinerman Mag. |
| | ) |
| v. | ) Judge Jeffrey T. Gilbert |
| | ) |
| LIFEWATCH INC., a New York corporation, | ) [REDACTED] |
| also d/b/a LIFEWATCH USA and MEDICAL | ) |
| ALARM SYSTEMS, | ) |
| | ) |
| SAFE HOME SECURITY, INC., a | ) |
| Connecticut corporation, | ) |
| | ) |
| MEDGUARD ALERT, INC., a Connecticut | ) |
| corporation, | ) |
| | ) |
| EVAN SIRLIN, individually and as an officer | ) |
| or manager of Lifewatch Inc., | ) |
| | ) |
| MITCHEL MAY, individually and as an officer or | ) |
| manager of Lifewatch Inc., and | ) |
| | ) |
| DAVID ROMAN, individually and as an officer | ) |
| or manager of Lifewatch Inc., Safe Home Security, | ) |
| Inc., and Medguard Alert, Inc. | ) |
| | ) |
| Defendants. | ) |

_____

**PLAINTIFFS' STATEMENT OF MATERIAL FACTS**
**AS TO WHICH THERE IS NO GENUINE ISSUE**

Pursuant to Local Rule 56.1(a)(3), Plaintiffs Federal Trade Commission and State of

Florida, Office of the Attorney General, Department of Legal Affairs, submit the following

Statement of Material Facts as to which there is no genuine issue.

# TABLE OF CONTENTS

**Page**

1.    Lifewatch, Inc. is a New York corporation with its principal place of business in New York ……………………..………………………………………………………………. 1

2.    Safe Home Security, Inc. is a Connecticut corporation with its principal place of business in Connecticut ……………...………………………………………………………………. 1

3.    Medguard Alert, Inc. is a Connecticut corporation with its principal place of business in Connecticut………………………………………………………………………………. 1

4.    Sirlin is President of Lifewatch, Inc. and has an ownership interest in Lifewatch and MedGuard Alert………………………………………………………………………………..1

5.    May is Vice President of Lifewatch, Inc., and has an ownership interest in Lifewatch and MedGuard Alert …………………………………………………………………………..2

6.    Roman is Vice-President and Chairman of Lifewatch, is President, Treasurer and CEO of MedGuard Alert, Inc. and Safe Home Security, and is majority owner of Lifewatch, MedGuard Alert, and Safe Home Security…………………..………………………………………………..2

7.    Defendants have transact business in this district and throughout the United States …….3

8.    Worldwide was Defendants' largest telemarketer and marketer, and was shut down in January 2014 ………………………………………………………..…………………………4

9.    Defendants and their telemarketers have told consumers that they can receive a medical alert system for free because a friend, family member, health care provider, or acquaintance referred the consumer to Defendants, or because a friend, family member, health care provider, or acquaintance purchased the medical alert system for the consumer …......................................6

10.    No friend, family member, health care provider, or acquaintance paid for a device or referred consumers to Defendants …………………………………………………………..8

11.    Defendants are aware that their telemarketers have told consumers that a friend, family member, health care provider, or acquaintance has paid for a device or referred consumers to Defendants …………………………………………………………………………..9

12.    Defendants' scripts say that a friend, family member, health care provider, or acquaintance has paid for a device or referred consumers to Defendants ………………….....11

13.    Defendants and their telemarketers have told consumers that Defendants' medical alert system has been recommended by the American Heart Association, the American Diabetes Association, the National Institute on Aging, the AARP, the American Red Cross, other reputable organizations, and/or health care providers…….………………………………..…11

# TABLE OF CONTENTS

**Page**

14.     Defendants' medical alert system has not been recommended by the American Heart Association, the American Diabetes Association, the National Institute on Aging, the AARP, the American Red Cross, other reputable organizations, and/or health care providers ................12

15.     Defendants are aware that their telemarketers have told consumers that Defendants' medical alert system has been recommended by the American Heart Association, the American Diabetes Association, the National Institute on Aging, the AARP, the American Red Cross, other reputable organizations, and/or health care providers ……………………………………..12

16.     Defendants' scripts say that Defendants' medical alert system has been recommended by the American Heart Association, the American Diabetes Association, the National Institute on Aging, the AARP, the American Red Cross, other reputable organizations, and/or health care providers…………………………………………………………………………... 13

17.     Defendants and their telemarketers have told consumers that they will not be charged until they receive the device and activate it …………………………………………… 16

18.     Defendants charge consumers prior to consumers activating their devices, and even if they never activate their device……………..…………………………………………….... 17

19.     Defendants are aware their telemarketers have told consumers that they will not be charged until they receive the device and activate it ….…………………………………… 18

20.     Defendants' scripts say consumers will not be charged until they receive the device and activate it …………………………..……………..……………………………………... 20

21.     Defendants and their telemarketers have told consumers they are under no obligation if they cancel Defendants' service …………...………………………………………….... 21

22.     Defendants charge consumers even if they cancel Defendants' service ……………...22

23.     Defendants are aware their telemarketers have told consumers they are under no obligation if they cancel Defendants' service ……………………………………...….... 23

24.     Defendants' scripts say that consumers they are under no obligation if they cancel Defendants' service ………………………………………...……………………….... 24

25.     Defendants' chargeback rate has been substantially greater than the industry norm …...26

26.     Defendants and their telemarketers have called consumers on the National Do Not Call Registry …………………………………………………………………………….30

27.     Defendants are aware their telemarketers have called consumers on the National Do Not Call Registry …………………………………………………………………………….32

# TABLE OF CONTENTS

**Page**

28.    Defendants and their telemarketers have not accessed and downloaded the National Do Not Call Registry prior to calling consumers ……………………..…………………………33

29.    Defendants and their telemarketers have called consumers after the consumers ask to be placed on their Do Not Call lists....…………………………..…………………………………34

30.    Defendants are aware that their telemarketers have called consumers who have requested to be placed on their Do Not Call lists……….…………………………………35

31.    Defendants and their telemarketers have engaged in widespread caller identification spoofing ………………………………………………………………………………………35

32.    Defendants are aware that their telemarketers have engaged in widespread caller identification spoofing ……………………………………………………….………………36

33.    Defendants and telemarketers have employed widespread robocalling ………………..37

34.    Defendants are aware that their telemarketers have employed widespread robocalling ..38

35.    Robocalls blasted by Defendants and telemarketers have not disclosed the identity of the seller ..……………………………………………………………………………….42

36.    Robocalls blasted by Defendants and telemarketers have not disclosed that the purpose of the call is to sell goods or services …………………………………………………….....46

37.    Robocalls blasted by Defendants and telemarketers have not truthfully disclosed the nature of the goods or services being offered ………………………………………………...48

38.    Defendants have been the targets of multiple lawsuits and governmental investigations since August 2012…………………………………………………………………………52

39.    The illegal conduct of Defendants and their telemarketers continued after Worldwide was shut down in January 2014 ………………………………………………………………...52

40.    Defendants have hired hundreds of telemarketers ………………………………………...54

41.    Defendants' agreements with their sellers expressly state or contemplate that the sellers would be engaged entirely or primarily on outbound telemarketing ……………………………54

42.    Defendants' competitors' agreements with their marketers do not focus on telemarketing …………………………………………………………………………....56

43.    Defendants' sales have been primarily as a result of telemarketing ……………………56

44.    Defendants' "outside sellers" have been engaged almost exclusively in telemarketing.. 57

# TABLE OF CONTENTS

**Page**

45.     Defendants know they have been responsible for most telemarketing of PERS in the United States ……………………………………………………………………………………57

46.     At least 96.4% of Defendants' PERS sales since 2012 have resulted from telemarketing ………………………………………………………………….……………57

47.     Defendants require that their telemarketers not disclose Defendants as the seller ….....58

48.     Defendants manage the terms of deals offered by their telemarketers to consumers …...58

49.     Defendants have instructed their telemarketers to use sales scripts provided by Defendants ………………………………………………………………………………60

50.     Defendants have instructed their telemarketers who to call and in which states they should call consumers ………………………………………………………………...62

51.     Defendants have managed the internal operations of their telemarketers ……………...62

52.     Defendants' telemarketers enter customer information directly into Defendants' CRM………………………………………………………………………… 63

53.     Defendants have required telemarketers strictly follow confirmation scripts provided by Defendants ………………………………………………………………………………63

54.     Defendants' telemarketers have live-transferred calls to Defendants for verification ….64

55.     Defendants have represented to telemarketers that brokers such as Leslie Steinmetz, Aaron Modugno, and Matt Eggen are authorized to act on its behalf …………………………..65

56.     Worldwide were expressly exclusive agents of Defendants for the sales of PERS …….66

57.     Worldwide telemarketing resulted in 93,746 customer accounts for Defendants, 39,501 customer accounts Defendants sold to Connect America, and 4000 customer accounts Defendants sold to Phillips Lifeline………….……………………………………………………67

58.     Telemarketers other than Worldwide have identified Defendants as the only PERS provider for whom they telemarket ………………………………………..……………..69

59.     Defendants have drafted and edited the scripts used by their telemarketers in the sale of PERS ……………………………………………………………………………….…70

60.     Defendants uniquely promote certain attributes of their PERS, including being a company with 30+ years of experience in the industry, offering a PERS with a 1500 foot range, providing a 5 day battery backup, exclusively employing an EMT-certified monitoring center, conducting periodic test calls, offering a MediLok lockbox, providing an Away from Home card, offering a Daily Wellness Check, or employing Dick Van Patten as spokesman …………………………74

iv

## TABLE OF CONTENTS

61.    Scripts filed by telemarketers for licensing, or found on their premises, have contained the product attributes Defendant-specific product descriptions ……………………………………76

62.    Telemarketers have promoted Defendant-specific product descriptions in their sales calls to consumers ……………………………………………………………………………………….78

63.    Defendants have provided financing for various telemarketers …………….………..81

64.    Defendants have encouraged telemarketers to set up new telemarketing companies and call centers after increased scrutiny by law enforcement and financial institutions ……..……..82

65.    Defendants have continued to work with telemarketers even after learning of the telemarketers' deceptive and abusive practices ……………………………………….…...83

66.    Defendants' October 2014 Quality Control Program did not curb the illegal conduct of Defendants' telemarketers …………………………………………………………………....85

67.    Roman has formulated business strategies and set the corporate agenda for the Corporate Defendants …………………………………………………………………...87

68.    Roman has supervised employees and all personnel decisions for the Corporate Defendants ……………………………………………………………………………88

69.    Roman has supervised marketing and telemarketing for the Corporate Defendants ……88

70.    Roman has closely monitored Defendants' telemarketers ……………………………90

71.    Roman has supervised customer service for the Corporate Defendants ……………...96

72.    Roman has supervised provision of services and back office support for the Corporate Defendants ………………………………………………...…………………………96

73.    Roman has supervised payments, collections, chargebacks, and refunds for the Corporate Defendants ……………………………………………………...………97

74.    Roman has supervised all financial decisions for the Corporate Defendants …………..98

75.    Roman knew of regulatory actions against Lifewatch prior to his purchase ….…..…101

76.    Roman knows that Defendants' telemarketers have engaged in deceptive acts and practices …………………………………………………………………………..101

77.    Roman knows that Defendants' telemarketers have engaged in abusive acts and practices …………………………………………………………………………..103

## TABLE OF CONTENTS

**Page**

78.    Roman managed Defendants' response to WWIS being shut down ……………….…104

79.    Roman knows Defendants' illegal activity continued after WWIS was shut down ..…105

80.    Sirlin devised the strategy for Lifewatch to rely on telemarketing ………………....106

81.    Sirlin has formulated Defendants' telemarketing practices ……………………………107

82.    Sirlin has supervised Defendants' telemarketers ………………………………………109

83.    Sirlin has managed the telemarketing for customer accounts being sold to third-parties ……………………………………………………………………………111

84.    Sirlin knows that Defendants' telemarketers have engaged in deceptive acts and practices ……………………………………………………………………………111

85.    Sirlin knows that Defendants' telemarketers have engaged in abusive acts and practices ……………………………………………………………………………116

86.    Sirlin knew that WWIS was shut down ………………………………………………122

87.    Sirlin knows Defendants' illegal acts and practices continued after WWIS was shut down ……………………………………………………………………………122

88.    May has formulated the business practices of Lifewatch and Medguard …………...…123

89.    May has supervised the day-to-day business activities of Lifewatch and Medguard ….123

90.    May knew of regulatory actions against Lifewatch prior to his joining ………………125

91.    May knows that Defendants' telemarketers engaged in deceptive acts and practices ……………………………………………………………………………125

92.    May knows that Defendants' telemarketers engaged in abusive acts and practices ……………………………………………………………………………128

93.    May knows Defendants' illegal activities continued after WWIS was shut down …….130

94.    Lifewatch, Medguard, and Safe Home Security are jointly owned and controlled by a small circle of the same people …………………………………………………...…130

95.    Individuals identifying themselves as SHS employees have managed Lifewatch's and MedGuard's business activities ………………………………………………………130

96.    The Corporate Defendants share employees ………………………………………...…133

## TABLE OF CONTENTS

**Page**

97. The Corporate Defendants share office space ……………………………………....135

98. The  business operations and activities of the Corporate Defendants are intertwined ...135

99. The Corporate Defendants interchangeably bill the same customers for the same services …………………………………………………………………………………137

100. The Corporate Defendants perform customer service for the same customers ………..139

101. The Corporate Defendants collectively market products and services ………………...140

102. Employees of the Corporate Defendants use the same CRM databases ………………141

103. The Corporate Defendants commingle funds ………………………………………….141

104. Defendants marketed customer accounts at 30-50 times the monthly rate ("RMR") paid by consumers …………………………………………………………………………144

105. Medguard's purchases of Lifewatch customer accounts were below market rate ……..145

106. Defendants' revenue from the sale of PERS was $ ███████ in 2011, and at least $ ███████ in 2012, $ ███████ in 2013, $ ███████ in 2014, $ ███████ in 2015, and $ ███████ in 2016 …………………………………………………………..…..145

**1.      Lifewatch, Inc. is a New York corporation with its principal place of business in New York.**[1]

Dkt. 171 at 5 (Defendants Lifewatch and Sirlin admit).

**2.      Safe Home Security, Inc. is a Connecticut corporation with its principal place of business in Connecticut.**

Dkt. 200 at 4 (Defendants Safe Home Security, MedGuard Alert, and Roman admit).

**3.      Medguard Alert, Inc. is a Connecticut corporation with its principal place of business in Connecticut.**

Dkt. 200 at 4 (Defendants Safe Home Security, MedGuard Alert, and Roman admit).

**4.      Sirlin is President of Lifewatch, Inc. and has an ownership interest in Lifewatch and MedGuard Alert.**

Dkt. 171 at 6 (Defendants Lifewatch and Sirlin admit President).



FTC-LW17-313 – 314, Deposition Transcript of Matthew Eggen by the Texas Attorney General (broker describing "investment" by Sirlin and Hing-Tack Chen, owner of Harmonious Enterprises d/b/a Medwatch USA, a Lifewatch "affiliate");

---

[1] For ease of reference, Plaintiffs will not repeat the full names and titles of various employees and other individuals working with Defendants. In particular: (a) Craig Cleasby ("Cleasby") is Lifewatch Treasurer (*see* Dkt. 15-2 at 11, PX 1, Menjivar Dec. Att. M (Organization Chart submitted by Lifewatch in response to FTC Civil Investigative Demand dated 3/12/14), ███████████████), is a minority owner of Lifewatch and MedGuard (*see* PX 99, Transcript of Deposition of Roman on July 31, 2017, at 23 – 24, 29); (b) Sarai Baker ("Baker") is Lifewatch Director of Operations (*see* Dkt. 87-2, DX 2, DX2, Baker Decl.; (c) Lauren Vandewater ("Vandewater") is or was a Lifewatch employee (*see* Dkt. 87-3, DX3, Vandewater Dec.), sometimes described herself as "████████ ████); (d) Paule Oliveri is or was Lifewatch Controller (*see* Dkt. 15-2 at 11, PX 1, Menjivar Dec. Att. M (Organization Chart submitted by Lifewatch in response to FTC Civil Investigative Demand dated 3/12/14) and Accounting Manager (*see* FTC-LW16-1006 (Lifewatch Organization Chart dated October 2012); (e) Pam Cohen is or was Lifewatch Sales Manager (*see id.*); (f) Gerardo Duran is or was Lifewatch CRM Manager (*see* Dkt. 15-2 at 11, PX 1, Menjivar Dec. Att. M (Organization Chart submitted by Lifewatch in response to FTC Civil Investigative Demand dated 3/12/14); (g) Doug Hallowell describes himself as "█████████████████ ████████████████████████████████████); and (h) Ed Wajdowicz describes himself as ████████████████████████████████).

1

FTC-LW17-450 – 452, Deposition Transcript of Housein Karachopan (Lifewatch broker, Eggen's partner, describing "investment" and loans by Sirlin and Chen in broker, lead generator, and dialer);

PX 99, Transcript of Deposition of Roman on July 31, 2017, at 23 - 24 (May, Sirlin, and Cleasby all have an ownership interest in MedGuard Alert);

PX 99, Transcript of Deposition of Roman on July 31, 2017, at 29 (May, Sirlin, and Cleasby all have an ownership interest in Lifewatch).


**5.      May is Vice President of Lifewatch, Inc., and has an ownership interest in Lifewatch and MedGuard Alert.**

Dkt. 202 at 4 (Defendant May admits Vice-President).



PX 99, Transcript of Deposition of Roman on July 31, 2017, at 23 - 24 (May, Sirlin, and Cleasby all have an ownership interest in MedGuard Alert);

PX 99, Transcript of Deposition of Roman on July 31, 2017, at 29 (May, Sirlin, and Cleasby all have an ownership interest in Lifewatch);

PX 100, Transcript of Deposition of May on July 26, 2017, at 8-9 (May testifying that he was Vice-President of Lifewatch from 2013 until middle of 2016).


**6.      Roman is Vice-President and Chairman of Lifewatch, is President, Treasurer and CEO of MedGuard Alert, Inc. and Safe Home Security, and is majority owner of Lifewatch, MedGuard Alert, and Safe Home Security.**

Dkt. 200 at 5 (Defendants Safe Home Security, MedGuard Alert, and Roman admit Roman is officer of corporate defendants).



Transcript of Preliminary Injunction Hearing on December 14, 2015, at 188 (Sirlin stating that Roman is the chairman of Lifewatch);

2

Transcript of Preliminary Injunction Hearing on December 14, 2015, at 187 (Sirlin stating that Roman is the CEO of SHS);

PX 99, Transcript of Deposition of Roman on July 31, 2017, at 9 (Roman owns a 90% interest in Safe Home Security);

PX 99, Transcript of Deposition of Roman on July 31, 2017, at 10 (Roman is the President of Safe Home Security);

PX 99, Transcript of Deposition of Roman on July 31, 2017, at 10 (Roman is on the Board of Directors of Safe Home Security);

PX 99, Transcript of Deposition of Roman on July 31, 2017, at 23 (Roman has an ownership interest in MedGuard Alert);

PX 99, Transcript of Deposition of Roman on July 31, 2017, at 23-24 (May, Sirlin, and Cleasby all have an ownership interest in MedGuard Alert);

PX 99, Transcript of Deposition of Roman on July 31, 2017, at 24 (Roman is an officer of MedGuard Alert);

PX 99, Transcript of Deposition of Roman on July 31, 2017, at 29 (Roman owns shares in Lifewatch);

PX 99, Transcript of Deposition of Roman on July 31, 2017, at 29 (May, Sirlin, and Cleasby all have an ownership interest in Lifewatch);

PX 99, Transcript of Deposition of Roman on July 31, 2017, at 29–30 (Roman, May, and Sirlin are on the board of directors at Lifewatch);

PX 99, Transcript of Deposition of Roman on July 31, 2017, at 30 (Roman is the director of Lifewatch's Board of Directors).

## 7. Defendants have transacted business in this district and throughout the United States.

Dkt. 20-2 at 32, PX 1 Menjivar Dec. Att. III (Lifewatch website contact page stating Lifewatch has regional office in Illinois);

Dkt. 94-3 at 2, PX 88, Hall Affidavit (Lifewatch signed Purchase Agreement and required execution of affidavit by Chicago-based call center);

Dkt. 171 at 5, Lifewatch Inc.'s and Evan Sirlin's Answer to Amended Complaint for Permanent Injunction and Other Equitable Relief and Affirmative Defenses ¶ 9 (Defendants Lifewatch and Sirlin admit Lifewatch transacted business in United States and in this district.);





*Mulvey v. Medguard Alert, Inc., and David Roman*, No. 16-cv-10933, Dkt. 11 at 2, Defendant Medguard Alert, Inc.'s Answer and Affirmative Defenses to Plaintiff's Complaint for Statutory Damages and Injunctive Relief for Violations of the Telephone Consumer Protection Act; 47 USC, Section 227, ¶ 4 (Medguard Alert admit it has transacted business in Illinois);
*Mulvey v. Medguard*, Dkt. 24 at 5-9, Plaintiff's Motion for Discovery Ex. A (UCC financing statements filed by Chicago bank as to Roman);
PX 97, Al-Najjar Dec. ¶ 13 (review of customer list of 11/6/15 showing 2873 customers in Illinois, 2802 of whom were identified as purchasing from Defendants' outside marketers).

**8.     Worldwide was Defendants' largest telemarkter and marketer, and was shut down in January 2014.**

*See FTC, et al. v. Worldwide Info Services, Inc., et al.*, Case No. 6:14-CV-8-ORL 28DAB (M.D. Fla. Filed Jan. 6, 2014) (Worldwide consisted of multiple entities including Worldwide Info Services, Inc. dba The Credit Voice, Elite Information Solutions, Inc. dba The Credit Voice, Absolute Solutions Group, Inc. dba The Credit Voice, Global Interactive Technologies, Inc. dba The Credit Voice, Inc., Global Service Providers, Inc., The Credit Voice, Inc. dba TCV, Live Agent Response 1 LLC dba LAR, Arcagen, Inc. dba ARI, American Innovative Concepts, Inc., Unique Information Services, Inc., and National Life Network, Inc.);
PX 93, Boling Dec. ¶ 32 ("Worldwide rebranded as American Innovative Concepts, Inc., National Life Network, and U.S. Affiliates.  Sirlin and May negotiated with the call centers so that when a call center would wind down Sirlin and May would agree to work with the "new" call center.");







[redacted]

[redacted]

PX 97, Al-Najjar Dec. ¶ 14 (Lifewatch reported 93,746 customers from Worldwide, excluding totals of US Affiliates).

**9. Defendants and their telemarketers have told consumers that they can receive a medical alert system for free because a friend, family member, health care provider, or acquaintance referred the consumer to Defendants, or because a friend, family member, health care provider, or acquaintance purchased the medical alert system for the consumer.**

Dkt. 21-2 at 41, PX 3, Tyndall Dec. Att. B ("…already referred by a friend or family member, we have a system waiting to be shipped to you");

Dkt. 24-2 at 2-3, PX 6, Smith Dec. ¶ 4 (consumers reported that messages indicated device had already been purchased for consumer);

Dkt. 24-3 at 32, PX 7, Cuomo Dec. ¶ 5, Att. A at 28 (elderly father told that "a family member wanted him to have this alarm unit");

Dkt. 24-15 at 2, PX 19, Beyer Dec. ¶ 4 (elderly consumer convinced to purchase device because telemarketer claimed his doctor said he needed it);

Dkt. 24-18 at 3, PX 22, Bourne Dec. ¶ 4 (telemarketer said "friends and family had gotten together and pre-paid for a medical alert devic on my behalf");

Dkt. 24-19 at 2, PX 23, Bristow Dec. ¶ 4 (doctor, friend or family member recommended consumer get the device, and no charge because it had already been paid for);

Dkt. 24-20 at 3, PX 24, Carson Dec. ¶ 4 (telemarketer said "a friend or relative probably ordered the device on my behalf");

Dkt. 24-21 at 2, PX 25, Cattie Dec. ¶ 3 ("I repeated that I did not want a medical alert device, but the man told me that the person giving the gift would lose their money if I did not accept . . . .");

Dkt. 24-23 at 2, PX 27, Clawson Dec. ¶ 3 ("you have been referred by a friend or relative to receive a free medical alert system");

Dkt. 24-25 at 3, PX 29, D'Addario Dec. ¶¶ 5-7 (telemarketer said system already paid for);

Dkt. 24-26 at 2, PX 30, Daniel Dec. ¶ 3 (multiple calls in which telemarketer said "a friend or family member had purchased a medical alert device as a gift for me");

Dkt. 24-27 at 5, Dkt. 17-1 at 29, PX 31, deLoca Dec. ¶¶ 12, 13, 18, 19, 20 (received robocalls stating "Since you've already been referred by a medical professional, you are eligible for a personal medical alert system at no cost to you.");

Dkt. 25-4 at 2, PX 36, Girard Dec. ¶ 4 (telemarketer said someone had already paid for device);

Dkt. 25-5 at 2-3, PX 37, Gordon Dec. ¶¶ 4,5 (multiple robocalls saying "family member or friend" ordered device for me and telemarketer said company had gotten consumer's name from a family member);

Dkt. 25-7 at 2, PX 39, Grigorian Dec. ¶ 3 ("medical professional had recommended me, or someone else in my family, for a medical alert device…device was already paid for");

Dkt. 25-9 at 4, Dkt. 18-1 at 5, PX 41, James Dec. ¶ 8 ("Since you've already been referred by a friend or family member, we have a system waiting to be shipped out to you.");

Dkt. 25-9 at 4-5, Dkt. 18-1 at 38, PX 41, James Dec. ¶ 9 (same);

Dkt. 25-10 at 3, PX 42, Jensen Dec. ¶¶ 5-6 (system already paid for);

Dkt. 25-11 at 3, PX 43, Jones Dec. ¶ 5 ("device already has been ordered…and paid for by a friend or family member");

Dkt. 25-17 at 3, PX 49, Meehl Dec. ¶ 5 (telemarketer said friend or family member gave company my information);

Dkt. 25-18 at 11, Dkt. 20-1 at 15, PX 50, Mey Dec. ¶ 32 ("Since you've already been referred by a medical professional, you're eligible for a personal medical alert system at no cost to you.");

Dkt. 25-18 at 11, Dkt. 20-1 at 15, PX 50, Mey Dec. ¶ 33 (same);

Dkt. 25-18 at 12-13, PX 50, Mey Dec. ¶¶ 36-42 (same);

Dkt. 25-20 at 3-4, PX 52, Monaghan Dec. ¶¶ 5 & 7 (calls stating system already paid for);

Dkt. 25-22 at 3, PX 54, Pierce Dec. ¶ 5 (same);

Dkt. 25-24 at 2-4, PX 56, Rench Dec. ¶¶ 3-6 (telemarketer said that somebody had purchased it, and then specifically that hospice had paid for it);

Dkt. 25-25 at 2, PX 57, Rivard Dec. ¶ 3 (dad told that someone had signed him up);

Dkt. 25-26 at 2-3, PX 58, Savagian Dec. ¶¶ 4,5 ("a medical alert device had been ordered and paid for by a friend or family member" and telemarketer said device already paid for by a friend or family member);

Dkt. 25-28 at 4, PX 60, Veysey Dec. ¶ 8 (telemarketer claimed to have gotten consumer's name from family member or friend);

Dkt. 25-29 at 2, PX 61, Wagler Dec. ¶ 4 (same);

Dkt. 51-1 at 21, PX 81 Braver Dec. Att. C (robocall from Lifewatch telemarketer received on 8/10/15 stating "Because you were referred by your doctor or primary care physician, your medical alert system has already been paid for"; to opt out of the call, the robocall states "Press five to notify your health care provider you have refused shipment");

Dkt. 77-1 at 42, PX 86 Mey Dec. Att. E (consumer received robocall from Lifewatch telemarketer on 9/10/15 stating "Since you've already been referred to by a friend or family member, we have a system waiting to be shipped out to you.").

## 10. No friend, family member, health care provider, or acquaintance paid for a device or referred consumers to Defendants.

Dkt. 21-2 at 41, PX 3, Tyndall Dec. Att. B (undercover call recorded by FTC investigator);

Dkt. 24-15 at 2, PX 19, Beyer Dec. ¶ 4 (elderly consumer convinced to purchase device because telemarketer falsely claimed his doctor said he needed it);

Dkt. 24-18 at 3, PX 22, Bourne Dec. ¶ 4 (telemarketer said "friends and family had gotten together and pre-paid for a medical alert devic on my behalf"; consumer knew it was not true);

Dkt. 24-21 at 2-3, PX 25, Cattie Dec. ¶¶ 3-4 (not true that someone referred consumer);

Dkt. 24-23 at 2, PX 27, Clawson Dec. ¶ 3 (could not have been referred to the company as a senior because he is not one);

Dkt. 24-25 at 3, PX 29, D'Addario Dec. ¶ 6 (nobody referred consumer);

Dkt. 24-26 at 2-3, PX 30, Daniel Dec. ¶ 4 (contacted all family member and nobody had referred consumer);

Dkt. 24-27 at 5, Dkt. 17-1 at 29, PX 31, deLoca Dec. ¶¶ 12, 13, 18, 19, 20 (never referred);

Dkt. 25-4 at 2-3, PX 36, Girard Dec. ¶¶ 4, 5 (consumer's daughter had already signed consumer up for different medical alert service);

Dkt. 25-5 at 3, PX 37, Gordon Dec. ¶ 5 (not true that company had gotten consumer's name from a family member);

Dkt. 25-7 at 2-3, PX 39, Grigorian Dec. ¶¶ 3,4 (not true that consumer had been referred);

Dkt. 25-9 at 4-5, PX 41, James Dec. ¶¶ 8, 9 (falsely told consumer had been referred);

Dkt. 25-11 at 3-4, PX 43, Jones Dec. ¶ 6 (misleading to say it has already been ordered and paid for by a friend or family member);

Dkt. 25-17 at 3, PX 49, Meehl Dec. ¶ 5 (not true that friend or family member gave company my information);

Dkt. 25-18 at 11, PX 50, Mey Dec. ¶¶ 32, 33, 36-42 (not true that consumer had been referred);

Dkt. 25-24 at 3, PX 56, Rench Dec. ¶ 6 (hospice had not paid for or referred consumer as telemarketer had said);

Dkt. 25-25 at 3, PX 57, Rivard Dec. ¶ 4 (nobody had signed consumer up);

Dkt. 25-26 at 2-3, PX 58, Savagian Dec. ¶ 4 (same);

Dkt. 25-29 at 3, PX 61, Wagler Dec. ¶ 5 (same);

Dkt. 96-1 at 8-10, PX 89, Einikis Dec. Att. A (5/18/15 email from Vandewater at Lifewatch to undisclosed call centers stating "[Y]ou know that a doctor or family member did not refer them to get the system, so you should not be telling customers that...These are all things that have been coming up lately and the reps need to be reminded that they cannot do that. This is a general email that is going to everybody so please go over this information with your sales/verification/CS reps.");

Dkt. 96-1 at 6, PX 89, Einikis Dec. Att. A (5/29/15 email from Vandewater at Lifewatch to undisclosed call centers stating "They say they are getting a call that they were referred by a doctor or friend…Please make sure that these numbers are not called and that you are not telling customers a friend or family or ANYBODY referred the unit for them because thats [sic] not true and misleading.");

Dkt. 96-1 at 27, PX 89, Einikis Dec. Att. A (10/13/14 email from Vandewater at Lifewatch to undisclosed call centers stating "I have been hearing a lot of complaints lately from the customer service dept that customers are being told that 'the billing does not start until you plug in and activate the unit.' I know I have said NUMEROUS times that the reps under NO circumstance can say that to customers but it is still being done.");

FTC-LW09-1528 (5/9/13 Sirlin email to Worldwide, forwarding 5/9/13 email from Baker saying Lifewatch is "still getting complaints and cancels due to customers being told by reps that their 'loved one' recommended the product"; threatening to go BBB and sue "because we're lying and tricking them into something.").

**11.    Defendants are aware that their telemarketers have told consumers that a friend, family member, health care provider, or acquaintance has paid for a device or referred consumers to Defendants.**

Dkt. 96-1 at 6, PX 89, Einikis Dec. Att. A (5/29/15 email from Vandewater at Lifewatch to undisclosed call centers stating "They say they are getting a call that they were referred by a doctor or friend…Please make sure that these numbers are not called and that you are not telling customers a friend or family or ANYBODY referred the unit for them because thats [sic] not true and misleading.");

FTC-LW09-1528 (5/9/13 Sirlin email to Worldwide, forwarding 5/9/13 email from Baker saying Lifewatch is "still getting complaints and cancels due to customers being told by reps that their 'loved one' recommended the product"; threatening to go BBB and sue "because we're lying and tricking them into something.");

FTC-LW09-1530 – 31 (5/15/13 email from Sirlin to Worldwide  forwarding complaint tied to Worldwide (US Affiliates) of customer being told family member had given product to him);

FTC-LW09-1544 – 45 (6/6/13 email from Sirlin to Worldwide regarding complaint tied to Worldwide and forwarded to Sirlin and May, in which customer was "told the same things as previous accounts," that "'a family member paid 400 for unit'");

FTC-LW09-1555 (6/14/13 email from Sirlin forwarding complaint to Worldwide from consumer complaining that he was told someone had paid for his device);

FTC-LW09-1556 – 59 (6/18/13 email from Sirlin to Worldwide, asking for information and to add a number to DNC, forwarding customer service email to Sirlin and May from customer who received robocall tied to Lifewatch, and noting she found 24 similar complaints, stating that someone had purchased device for her; customer service representative stated she told customer "Of course I said all the right things—we have nothing to do with them, blah blah blah, and she

believes me and feels 'bad' for our company that this will damage our reputation if this other company keeps making these calls lol!");
FTC-LW09-1563 (6/19/13 email from Sirlin to Worldwide forwarding complaint sent to Sirlin and May from consumer told device was already paid for);
[redacted]



**12.    Defendants' scripts say that a friend, family member, health care provider, or acquaintance has paid for a device or referred consumers to Defendants.**

Dkt. 14-3 at 23, PX 1, Menjivar Dec. Att. B (rebuttal script found at Worldwide office states "you were referred to us by either by a friend, a family member, a company, or maybe someone you know, and because you were referred, the system is completely free to you");

Dkt. 26-2 at 3-4, PX 66, Lancaster Dec. ¶ 10 (ex-employee of telemarketer stating that many consumers believed device was already paid for);

Dkt. 26-4 at 6, 81,  PX 68, Shultz Dec. ¶ 25, Exs. F-G (scripts for telemarketer changed to say consumer was "referred to us by either by a friend, a family member or maybe someone you know");

Dkt. 26-5 at 5, PX 69, Stenger Dec. ¶ 9 (telemarketer instructed to say that friend, family member, or someone else they knew" had referred consumer);

Dkt. 26-6 at 7, 24, PX 70, Stevens Dec. ¶ 32, Ex. C (scripted rebuttal telemarketer was instructed to use stated "you were referred to us by either by a friend, a family member, a company, or maybe someone you know, and because you were referred, the system is completely free to you").

**13.    Defendants and their telemarketers have told consumers that Defendants' medical alert system has been recommended by the American Heart Association, the American Diabetes Association, the National Institute on Aging, the AARP, the American Red Cross, other reputable organizations, and/or health care providers.**

Dkt. 21-1 at 14, PX 2, France Dec. Att. A (telemarketer states "our device is trusted by more than 65,000 health care professionals");

Dkt. 21-2 at 12, 42, PX 3, Tyndall Dec. Att. A (telemarketer states "our device is actually trusted by thousands of hospitals and 65,000 health care professionals") & Att. B (telemarketer states device recommended by 65,000 health care professionals);

Dkt. 24-1 at 132, PX 5, Bradley Dec. ¶ 5, Att. D (telemarketer said "our device has been recommended by the American Heart Association, the American Diabetes Association, the National Institute of Aging…");

Dkt. 24-27 at 3, Dkt. 16-2 at 27, PX 31 deLoca Dec. ¶ 7 (telemarketer said "our device has been recommended by the American Heart Association, the American Diabetes Association, the National Institute of Aging, and is trusted by thousands of hospitals and more than 65,000 health care professionals");

Dkt. 24-27 at 3-4, Dkt. 17-1 at 7, PX 31 deLoca Dec. ¶ 8 , (same);

Dkt. 25-3 at 3, PX 35, Gates Dec. ¶ 5 (telemarketer said endorsed by American Heart Association);

Dkt. 25-9 at 4-5, Dkt. 18-1 at 40, PX 41 James Dec. ¶ 9 (telemarketer said trusted by thousands of hospitals and more than 65,000 health care professionals);

Dkt. 25-10 at 3, 10, PX 42, Jensen Dec. ¶ 6, Att. A (robocall states system has "been recommended by thousands of hospitals and medical professionals");
Dkt. 25-15 at 4, PX 47, McCourt ¶ 8 (telemarketer mentioned American Heart Association); Dkt. 25-18 at 8-9, Dkt. 19-1 at 64, PX 50 Mey Dec. ¶ 23 (telemarketer said trusted by thousands of hospitals and more than 65,000 health care professionals);
Dkt. 25-18 at 10, Dkt. 19-2 at 4, PX 50 Mey Dec. ¶ 29 (same);
Dkt. 25-18 at 11, Dkt. 20-1 at 17, PX 50 Mey Dec. ¶ 32 (same);
Dkt. 25-18 at 12, Dkt. 20-1 at 67, PX 50 Mey Dec. ¶ 35 (same);
Dkt. 25-20 at 3-4, PX 52, Monaghan Dec. ¶¶ 5, 7 ("recommended by thousands of hospitals and medical professionals");
Dkt. 25-23 at 2, PX 55, Primm Dec. ¶¶ 3, 4 (robocalls and telemarketers claim endorsement by American Heart Association);
Dkt. 26-8 at 8, PX 72, Levine Dec. Ex. B (telemarketer stated "our device has been recommended by the American Heart Association, the American Diabetes Association, the National Institute of Aging, and is trusted by thousands of hospitals and more than 65,000 health care professionals");
Dkt. 26-8 at 17, PX 72, Levine Dec. Att. C (same);
Dkt. 51-1 at 15-17, PX 81 Braver Dec. Att. B (5/7/12 letter from consumer to Sirlin informing him of three robocalls he received on behalf of Lifewatch, with spoofed caller IDs,that his number was registered on the DNC list, that the calls claimed endorsement by American Heart Association and American Diabetic Association, that the telemarketer eventually admitted he was working for Lifewatch, and that the robocalls failed to disclose the seller, purpose of the call, or the nature of the goods or services offered);
Dkt. 77-1 at 42, PX 86 Mey Dec. Att. E (consumer received robocall from Lifewatch telemarketer on 9/10/15, telemarketer stated recommended by AARP and trusted by "thousands of doctors and hospitals around the country").

**14.    Defendants' medical alert system has not been recommended by the American Heart Association, the American Diabetes Association, the National Institute on Aging, the AARP, the American Red Cross, other reputable organizations, and/or health care providers.**

Dkt. 171 at 11, Answer of Defendants Lifewatch and Sirlin (Defendants Lifewatch and Sirlin admit that the American Heart Association, the American Diabetes Association, the National Institute on Aging, the AARP, and the American Red Cross have not specifically endorsed the ''Lifewatch medical alert system.").
Dkt. 200 at 7, Answer of Defendants SHS, MedGuard Alert, and Roman (Defendants Safe Home Security, MedGuard Alert, and Roman admit that the American Heart Association, the American Diabetes Association, the National Institute on Aging, the AARP, and the American Red Cross have not specifically endorsed the ''Lifewatch medical alert system.").
Dkt. 202 at 7, Answer of Defendant May (Defendant May admits admit that the American Heart Association, the American Diabetes Association, the National Institute on Aging, the AARP, and the American Red Cross have not specifically endorsed the ''Lifewatch medical alert system.").

**15.    Defendants are aware that their telemarketers have told consumers that Defendants' medical alert system has been recommended by the American Heart**

**Association, the American Diabetes Association, the National Institute on Aging, the AARP, the American Red Cross, other reputable organizations, and/or health care providers.**

Dkt. 51-1 at 15-17, PX 81 Braver Dec. Att. B (5/7/12 letter from consumer to Sirlin informing him of three robocalls he received on behalf of Lifewatch, with spoofed caller IDs,that his number was registered on the DNC list, that the calls claimed endorsement by American Heart Association and American Diabetic Association, that the telemarketer eventually admitted he was working for Lifewatch, and that the robocalls failed to disclose the seller, purpose of the call, or the nature of the goods or services offered);



16.     **Defendants' scripts say that Defendants' medical alert system has been recommended by the American Heart Association, the American Diabetes Association, the National Institute on Aging, the AARP, the American Red Cross, other reputable organizations, and/or health care providers.**

Dkt. 14-2 at 2, PX 1, Menjivar Dec. Att. A (Arcagen inbound script stating "Our device has been recommended by the American Heart Association, the American Diabetes Association, the National Institute of Aging, and is trusted by thousands of hospitals and more than 65,000 health care professionals");
Dkt. 22-2 at 11, PX 4, Velez Dec. Att. B (script from Lifewatch USA Call Center Welcome Package provided to Florida Department of Agriculture and Consumer Services by Lifewatch, stating recommended by American Diabetes Association, National Institute of Aging, and "many hospitals and healthcare organizations");
Dkt. 22-2 at 76, Att. K (US Digest script stating recommended by American Diabetes Association and national Institute of Aging);
Dkt. 22-2 at 94  Att. L (script provided by U.S. Digest stating recommended by American Diabetes Association);
Dkt. 22-3 at 22, PX 4, Velez Dec. Att. Q (Direct Agent Response script stating "Our device has been recommended by AARP, the American Red Cross, the National Institute of Aging and is trusted by thousands of hospitals and more than 65,000 healthcare professionals");

Dkt. 22-3 at 50, Att. T at 1 (Senior Medical Alert script stating thousands of hospitals and more than 65,000 healthcare professionals);

Dkt. 22-3 at 125, Att. GG (Oasis Money Group script stating thousands of hospitals and more than 65,000 healthcare professionals);

Dkt. 22-3 at 140, Att. II (Payless Solutions script stating 65,000 healthcare professionals);

Dkt. 22-3 at 154, Att. KK (script from Payless Solutions Enterprise stating "Our device has been recommended by the American Heart Association, the American Diabetes Association, the National Institute of Aging, and is trusted by thousands of hospitals and more than 65,000 health care professionals");

Dkt. 22-3 at 171, Att. MM (Miranda Money Group script stating thousands of hospitals and more than 65,000 healthcare professionals);

Dkt. 23-1 at 33, PX 4, Velez Dec. Att. RR (script from Lifewatch USA Call Center Welcome Package provided by Personal Security Shopper stating recommended by American Diabetes Association, the National Institute of Aging, "along with many hospitals and healthcare organizations");

Dkt. 23-1 at 64, Att. UU (Total Security Vision script stating thousands of hospitals and more than 65,000 healthcare professionals);

Dkt. 23-1 at 99, Att. XX (Alertlink script stating over 65,000 healthcare professionals);

Dkt. 23-1 at 124, Att. CCC at 1 (Alertlink script stating thousands of hospitals and more than 65,000 healthcare professionals);

Dkt. 23-1 at 158, Att. GGG (Live Response Agent script stating recommended by American Diabetes Association);

Dkt. 23-1 at 160, Att. HHH (Live Response Agent script stating "Our device has been recommended by the American Heart Association, the American Diabetes Association, the National Institute of Aging, and is trusted by thousands of hospitals and more than 65,000 health care professionals");

Dkt. 23-1 at 189, Att. NNN (Worldwide script listing American Heart Association, American Diabetes Association, and National Institute of Aging);

Dkt. 23-1 at 209, Att. OOO (Elite Information script stating "Our device has been recommended by the American Heart Association, the American Diabetes Association, the National Institute of Aging, and is trusted by thousands of hospitals and more than 65,000 health care professionals");

Dkt. 23-1 at 234, Att. RRR (Worldwide script stating recommended by American Heart Association and American Diabetics Association);

Dkt. 23-1 at 245, Att. TTT (The Credit Voice script stating "Our device has been recommended by the American Heart Association, the American Diabetes Association, the National Institute of Aging, and is trusted by thousands of hospitals and more than 65,000 health care professionals");

Dkt. 23-1 at 262, Att. WWW (Live Agent Response "Inbound" Script stating "Our device has been recommended by the American Heart Association, the American Diabetes Association, the National Institute of Aging, and is trusted by thousands of hospitals and more than 65,000 health care professionals");

Dkt. 23-1 at 275, Att. ZZZ (Arcagen script stating "Our device has been recommended by the American Heart Association, the American Diabetes Association, the National Institute of Aging, and is trusted by thousands of hospitals and more than 65,000 health care professionals");

Dkt. 23-1 at 286, Att. BBBB (American Innovative script stating "Our device has been recommended by the American Heart Association, the American Diabetes Association, the

National Institute of Aging, and is trusted by thousands of hospitals and more than 65,000 health care professionals");

Dkt. 26-2 at 11, PX 66, Lancaster Dec. Att. A (Worldwide script stating "Our device has been recommended by the American Heart Association, the American Diabetes Association, the National Institute of Aging, and is trusted by thousands of hospitals and more than 65,000 health care professionals");

Dkt. 26-3 at 9, PX 67, Rowells Dec. Att. A ("Our device is trusted by thousands of hospitals and more than 65,000 healthcare professionals.");

Dkt. 26-4 at 10, PX 68, Shultz Dec. Ex. A (Worldwide script stating "Our device has been recommended by the American Heart Association, the American Diabetes Association, the National Institute of Aging, and is trusted by thousands of hospitals and more than 65,000 health care professionals");

Dkt. 26-5 at 11, PX 69, Stenger Dec. Att. A (Worldwide script stating "Our device has been recommended by the American Heart Association, the American Diabetes Association, the National Institute of Aging, and is trusted by thousands of hospitals and more than 65,000 health care professionals");

Dkt. 26-16 at 9, PX 80 Einikis Dec. Att. A (Royal Holdings of America/Payless script stating "trusted by thousands of hospitals and more than 65,000 healthcare professionals");

Dkt. 26-16 at 25, Att. B (Global Marketing Enterprise/Payless script stating "trusted by thousands of hospitals and more than 65,000 healthcare professionals");

Dkt. 26-16 at 65, Att. D (Payless script stating "trusted by thousands of hospitals and more than 65,000 healthcare professionals");

FTC-LW09-1029-41 (4/5/12 email from broker to Worldwide, copying Lifewatch, providing Call Center Welcome Package, including sales script, rebuttals, and Frequently Asked Questions script says Lifewatch USA and includes misrepresentations of endorsement by American Diabetes Association, American Hospital Association, and National Institute of Aging);

FTC-LW09-1043-56 (same, dated 4/20/12);

FTC-LW09-1067-80 (same, dated 5/2/12, including updated script);

FTC-LW09-1103-16 (same, dated 5/10/12, updating script);

FTC-LW09-1117-30 (same, dated 5/22/12, updating script);

FTC-LW09-1132-1145 (same, dated 5/31/12);

FTC-LW09-1153-1170 (same, dated 7/5/12);

FTC-LW09-1220-1236 (same, dated 8/9/12);

FTC-LW16-373 (6/12/12 email from Sirlin to Steinmetz, forwarding email from Lifewatch



**17.    Defendants and their telemarketers have told consumers that they will not be charged until they receive the device and activate it.**

Dkt. 21-2 at 43, PX 3, Tyndall Dec. Att. B at 6 ("the billing cycle, it doesn't start until you receive your equipment");

Dkt. 14-3 at 2 PX 1, Menjivar Dec. Att. B (notes of consumer complaint to Worldwide "Agent told customer's daughter she could activate the system months down the road and would not be charged.");

Dkt. 14-3 at 3 (notes of consumer complaint to Worldwide that consumer "was told I don't pay until I receive it");

Dkt. 14-3 at 35 (notes of consumer complaint to Worldwide "Customer was told by Rep that she did not have to pay anything until after she tried out the system.");

Dkt. 14-3 at 36 (notes of consumer complaint to Worldwide "Rep told consumer that she didn't have to pay today only when activated");

Dkt. 15-2 at 24, PX 1, Menjivar Dec. Att. O (5/3/12 email from Lifewatch to Worldwide, copying Sirlin and Baker, discussing the "growing" problem of customers being told that they would not be charged until a later time);

Dkt. 24-3 at 13, PX 7, Cuomo Dec. Att. A (consumer never received device, but told must return it or pay $475 to cancel service);

Dkt. 24-27 at 3, Dkt. 16-2 at 29, PX 31, deLoca Dec. ¶ 7, (telemarketer said "billing cycle doesn't start until you receive the system and activate it.");

Dkt. 25-16 at 3, PX 48, McCraw Dec. ¶ 5 (understanding was that she would only be charged after activation);

Dkt. 25-18 at 4-5, Dkt. 18-2 at 38, Mey Dec. ¶ 10 ("your billing cycle would start when you receive it and activate it");

Dkt. 25-18 at 11, Dkt. 20-1 at 17-18, Mey Dec. ¶ 32 ("The ... medical system is free. The only thing we do is need to have your card on file so once you get it, you can talk to our representative and let you know, give you the confirmation number and tracking number and it will be right there.");

Dkt. 25-18 at 47-48, Mey Dec. ¶ 33 ("The first month does not start until you receive [the device] and activate it.");

Dkt. 25-19 at 2, PX 51, Miller ¶ 4 (told he would not be charged until received and activated device);

Dkt. 26-8 at 8, PX 72, Levine Dec. Exs. B (telemarketer said "billing cycle does not start until you receive this system and activate it");

Dkt. 26-8 at 17, Att. C ("your billing cycle does not statrt until you receive your system and activate it");

Dkt. 26-8 at 28, Att. D ("[W]e just send out the system to you right now and then when you are financially ready to pay for it, ma'am, you can plug it in and that's when the activation fee starts to do [sic].").

16

**18.     Defendants charge consumers prior to consumers activating their devices, and even if they never activate their devices.**

Dkt. 24-1 at 129, 138, PX 5, Bradley Dec. ¶ 5, Att. D (consumer billed same day as call);
Dkt. 24-3 at 5, PX 7, Cuomo Dec. ¶ 5, Att. A (consumer complaint that mom paid over $2000 for unused service);
Dkt. 24-3 at 5-7, PX 7, Cuomo Dec. Att. A (Lifewatch refused to cancel account of woman with dementia because son cannot find device to return it; demanding $475 as alternative);
Dkt. 24-3 at 11, PX 7, Cuomo Dec. Att. A (consumer could not afford to pay return postage);
Dkt. 24-3 at 13, PX 7, Cuomo Dec. Att. A (consumer paid monthly fee for several months for unused service);
Dkt. 24-3 at 15-16 , PX 7, Cuomo Dec. Att. A (consumer's father paid over $130 for unused service);
Dkt. 24-3 at 23, PX 7, Cuomo Dec. Att. A (consumer's mother paid monthly fee for over a year for unused service);
Dkt. 24-3 at 35, PX 7, Cuomo Dec. Att. A (consumer's sister paid for 7 months of fees for unused service);
Dkt. 24-3 at 38, PX 7, Cuomo Dec. Att. A (consumer's father paid monthly fee for several months of unused service);
Dkt. 24-3 at 40, PX 7, Cuomo Dec. Att. A (consumer's mother billed over $400 for unused service);
Dkt. 24-3 at 42, PX 7, Cuomo Dec. Att. A (consumer's elderly parents paid approximately $700 for unused service);
Dkt. 24-22 at 3, PX 26, Cavic Dec. ¶ 8 (mother charged for unactivated device for nearly a year);
Dkt. 25-2 at 3, PX 34, Felker Dec. ¶ 6 (charged monthly fees for a system that was never received);



██████████████████████████

**19.** **Defendants are aware their telemarketers tell consumers that they will not be charged until they receive the device and activate it.**

Dkt. 14-3 at 2 PX 1, Menjivar Dec. Att. B (notes of consumer complaint to Worldwide "Agent told customer's daughter she could activate the system months down the road and would not be charged."),

Dkt. 14-3 at 3 (notes of consumer complaint to Worldwide that consumer "was told I don't pay until I receive it"),

Dkt. 14-3 at 35 (notes of consumer complaint to Worldwide "Customer was told by Rep that she did not have to pay anything until after she tried out the system."),

Dkt. 14-3 at 36 (notes of consumer complaint to Worldwide "Rep told consumer that she didn't have to pay today only when activated");

Dkt. 14-3 at 46, PX 1, Menjivar Dec. Att. B (8/20/13 email from Sirlin to Baker and Worldwide, responding to 8/20/13 email from Baker to Sirlin and May stating "here is a dispute where customer was told she wouldn't have to pay until she activates it. i have gotten others like this. was rick told to remove this from his pitch?");

Dkt. 24-1 at 129, 138, PX 5, Bradley Dec. ¶ 5, Att. D (consumer billed same day as call);

Dkt. 24-3 at 5, PX 7, Cuomo Dec. ¶ 5, Att. A (consumer complaint that mom paid over $2000 for unused service);

Dkt. 24-3 at 13, PX 7, Cuomo Dec. Att. A (consumer paid monthly fee for several months for unused service);

Dkt. 24-3 at 15-16, PX 7, Cuomo Dec. Att. A (consumer's father paid over $130 for unused service),;

Dkt. 24-3 at 23, PX 7, Cuomo Dec. Att. A (consumer's mother paid monthly fee for over a year for unused service);

Dkt. 24-3 at 35, PX 7, Cuomo Dec. Att. A (consumer's sister paid for 7 months of fees for unused service);

Dkt. 24-3 at 38, PX 7, Cuomo Dec. Att. A (consumer's father paid monthly fee for several months of unused service);

Dkt. 24-3 at 40, PX 7, Cuomo Dec. Att. A (consumer's mother billed over $400 for unused service);

Dkt. 24-3 at 42, PX 7, Cuomo Dec. Att. A (consumer's elderly parents paid approximately $700 for unused service);

Dkt. 26-1 at 11-12, PX 65, Amberson Dec. ¶ 21 ("Almost every day we also heard from customers who would demand cancellations because of confusion over billing issues. Specifically, customers would complain about being billed the monthly monitoring fee before they had received or activated the medical alert systems. Based on what they had been told during the initial sales calls, they thought they would not be billed until they actually received and plugged in the system.");

18

Dkt. 96-1 at 8-10, PX 89, Einikis Dec. Att. A (5/18/15 email from Vandewater at Lifewatch to undisclosed call centers stating "A rep cannot tell a customer that 'billing starts once you activate the system' or you wont (sic) be billed until you test the unit…These are all things that have been coming up lately and the reps need to be reminded that they cannot do that. This is a general email that is going to everybody so please go over this information with your sales/verification/CS reps.");

Dkt. 96-1 at 27-28, PX 89, Einikis Dec. Att. A (10/13/14 email from Vandewater at Lifewatch to undisclosed call centers stating that ("I have been hearing lots of complaints lately from the customer service dept that customers are being told that 'the billing does not start until you plug in and activate the device.' I know I have said NUMEROUS times that the reps under NO circumstance (sic) can say that to customers but it is still being done…It is false and misleading information and I am not sure why reps were saying it in the first place but it must stop immediately.");

FTC-LW09-1473 (3/12/13 email from Worldwide to Baker, copying Sirlin, responding to 3/11/13 Baker email stating that, based on recordings Lifewatch has listened to, confirmation call should no longer say "'you will not be billed until your unit is activated'" because that "doesn't create the sense of urgency that we want our customers to have.");

FTC-LW09-2019-20 (9/26/11 email from Sirlin to broker and telemarketer confirming that consumers are not billed for their second month until 30 days after they activate the device, and they can get their money back if they never activate the device);



███████████████████████████████

**20.** **Defendants' scripts say consumers will not be charged until they receive the device and activate it.**

Dkt. 14-3 at 8, PX 1 Menjivar Dec. Att. B at 7 (Rebuttal script found at Worldwide call center stating: "We charge your card or account TODAY for your first month's emergency medical monitoring fee, but your billing cycle does not start until you receive the system and activate it, which means you don't start using the money until you actually activate the system.");

Dkt. 22-1 at 4-6, 22-2 at 37, PX 4, Velez Dec. ¶¶ 10 & 13, Atts. E & H (Lifewatch provided scripts to FDACS in November 2012 and January 2015 stating "billing cycle doesn't start until you receive the system and activate it.");

Dkt. 22-3 at 23, Att. Q (Direct Agent Response script stating "billing cycle doesn't start until you receive the system and activate it.");

Dkt. 22-3 at 172, Att. MM (Miranda Money Group script stating "billing cycle doesn't start until you receive the system and activate it.");

Dkt. 23-1 at 161, Att. HHH (Live Response Agent script stating "billing cycle doesn't start until you receive the system and activate it.");

Dkt. 23-1 at 190, Att. NNN (Elite Information Systems script stating "billing cycle doesn't start until you receive the system and activate it.");

Dkt. 23-1 at 210, Att. OOO (same);

Dkt. 23-1 at 263, Att. WWW (Live Agent Response script stating "billing cycle doesn't start until you receive the system and activate it.");

Dkt. 23-1 at 287, Att. BBBB (American Innovative Concepts script stating "billing cycle doesn't start until you receive the system and activate it.");

Dkt. 26-2 at 12, PX 66, Lancaster Dec. Att. A (Worldwide script stating "billing cycle doesn't start until you receive the system and activate it.");

Dkt. 26-4 at 11, PX 68 Shultz Dec. Att. A (same);

Dkt. 26-5 at 12, PX 69 Stenger Dec. Att. A (same);

Dkt. 26-6 at 16, PX 70 Stevens Dec. Att. B (same);

Dkt. 26-16 at 25, Att. B (Global Marketing Enterprise/Payless script stating "The billng cycle starts when you receive the system and activate it.");

Dkt. 26-16 at 65, Att. D (Payless script stating "The billing cycle doesn't start until you receive the system")

FTC-LW09-1212 – 1215 (8/6/12 email from Sirlin to Worldwide and Steinmetz sending sample Lifewatch script for Connect America, including claim that "billing cycle doesn't start until you receive the system and activate it");

FTC-LW16-23 – 26, 14 - 22 (7/6/11 email from Baker to Steinmetz, copying Sirlin, responding to Steinmetz email informing telemarketer that he will provide him with the scripts and contract and instructing Baker to forward, attaching script dated 7/1/11, stating billing cycle will not begin until activated and service does not start until consumer receives device);

███████████████████████████████



**21.     Defendants and their telemarketers have told consumers they are under no obligation if they cancel Defendants' service.**

Dkt. 21-1 at 17-18, PX 2, France Dec. Att. A ("You can cancel at any time with no cancellation fees and no questions asked . . . because you're not under any contracts"; ("the only thing that you will be agreeing to today is just to try out the system for a month"; "return the equipment at no cost to you");

Dkt. 21-1 at 59, Att. F ("You understand there's no contract. You can cancel at any time…if you choose after that first month that you don't want to use it anymore, you just simply put it all back in the box, send it back and you would no longer have any charge.");

Dkt. 21-2 at 44, PX 3, Tyndall Dec. Att. B ("They pay for the [return] shipping, don't worry.") & Att. G at 11 ("there's no shipping fee back");

Dkt. 24-1 at 133, PX 5, Bradley Att. D ("Also, there's no contract whatsoever and you can cancel at any time with no cancellation fees.");

Dkt. 24-2 at 3, PX 6, Smith Dec. ¶ 6 (telemarketer said "the company even paid for return shipping.");

Dkt. 24-27 at 3, Dkt. 16-2 at 29, 44, PX 31 deLoca Dec. ¶ 7 ("there is absolutely no contract whatsoever, and you can cancel at any time with no cancellation fee"; "[I]f you don't like the system you can always return it.…And we'll pay for the shipping.");

Dkt. 24-27 at 4, Dkt. 17-1 at 21, PX 31 deLoca Dec. ¶ 9 ("remember, you can cancel at any time with no – with no questions asked");

Dkt. 24-27 at 5, Dkt. 17-1 at 30, PX 31 deLoca Dec. ¶ 13 ("You're not signing any contracts. There's no contracts to sign.");

Dkt. 24-27 at 5-6, Dkt. 17-1 at 57, PX 31 deLoca Dec. ¶ 15 ("because there's no commitment, so you could send it back at any time…

[t]he shipment's free"; "there is no contract, and you can cancel at any time with no cancellation fee");

Dkt. 25-2 at 4, PX 34, Felker Dec. ¶ 8 ("The representatives told me that I could only cancel our account with the company if I sent back the two devices at my own expense. I was not told during the initial sales call that I would have to pay to ship the devices back.");

Dkt. 25-9 at 3, Dkt. 17-2 at 6, PX 41 James Dec. ¶ 4 ("there's no contract against you or cancellation fees");

Dkt. 25-9 at 4, Dkt. 18-1 at 13, PX 41 James Dec. ¶ 8 ("There are absolutely no contracts. You can cancel at any time with no cancellation fees and everything else is completely free...there's no contract or cancellation fee.");

Dkt. 25-9 at 4-5, Dkt. 18-1 at 41, PX 41 James Dec. ¶ 9 (same);

Dkt. 25-18 at 3, Dkt. 18-1 at 62, PX 50, Mey Dec. ¶ 6 ("You're not on a contract, so you don't have to keep it all. If you don't like it for any reason, that's fine. You can simply call the 1-800 number and cancel.");

Dkt. 25-18 at 4-5, Dkt. 18-2 at 34, 44, PX 50, Mey Dec. ¶ 10 ("absolutely no contracts whatsoever"; return label will come with package so "All you do is go ahead and put the label on there and ship it back to us, okay?");

Dkt. 25-18 at 6, Dkt. 19-1 at 7, PX 50, Mey Dec. ¶ 15 ("no contract, ma'am, no cancellation fees...You have the option to cancel at any given time you choose, no questions asked...We also send you out the return label, so that way you can do that.");

Dkt. 25-18 at 7, PX 50, Mey Dec. ¶ 18 (told no contract);

Dkt. 25-18 at 8, Dkt. 19-1 at 41, 42, PX 50, Mey Dec. ¶ 21 ("we're so confident with our services that we do not keep any contracts. This allows you to cancel at any time with no cancellation fees and with no penalties"; "you call us up, we pay for shipping, we send you the shipping labels and the shipping box, and you simply send it back completely free of charge...Would you like to go ahead and test out this system for one month, and if you're not satisfied, send it back, completely free of charge?");

Dkt. 25-18 at 5-6, Dkt. 19-1 at 65, PX 50, Mey Dec. ¶ 23 ("there ain't no contracts and it can be canceled at any given time with no cancellation fees");

Dkt. 25-18 at 11, Dkt. 20-1 at 18-19, PX 50, Mey Dec. ¶ 32 ("You can try it out for 30 days, and if you don't like it, you can send it back with no cancellation fee.");

Dkt. 25-18 at 12, Dkt. 20-1 at 68, PX 50, Mey Dec. ¶ 32 ("the only thing you are agreeing with us today is to try it out for at least a month or two.");

Dkt. 25-18 at 4, Dkt. 18-2 at 21, PX 50 Mey Dec. ¶ 8 (telemarketer said "as long as you keep the equipment, you're continuously going to be charged");

Dkt. 25-30 at 3, PX 62, Westerbrook Dec. ¶ 8 ("They never told me during the original sales call that I would have to pay to ship the equipment back to get the charges to stop.");

Dkt. 51-3 at 28, PX 83, Mey Dec. Att. B (telemarketer on 7/29/15, stated "There's no cancellation fees and no contract.");

Dkt. 77-1 at 45, PX 86 Mey Dec. Att. E (consumer received robocall from Lifewatch telemarketer on 9/10/15, telemarketer stated "there are no cancellation fees, and you may cancel at any time that you choose");

PX 95, Declaration of Forest Horne ¶ 3 (on 9/14/17, consumer received robocall to his cell phone from telemarketer who admitted he was working for Lifewatch, promising free medical alert device).

**22.     Defendants charge consumers even if they cancel Defendants' service.**

Dkt. 24-3 at 25-29, PX 7, Cuomo Dec. Att. A (mother never agreed to service or received device, but told must return it or pay $475 to cancel service);

Dkt. 24-3 at 38, PX 7, Cuomo Dec. Att. A (cannot find device supposedly sent to elderly father, but told must return it or pay $425 to stop monthly charges);

Dkt. 24-3 at 43, PX 7, Cuomo Dec. Att. A (Lifewatch claimed it did not receive returned device, continued billing);

Dkt. 25-14 at 3, PX 46, Lifshitz Dec. ¶ 6 ("He also said that [Lifewatch] would only cancel my account after I mailed the device back at my own expense. I had previously been told that there would be no cost to returning the device.");

Dkt. 25-18 at 6, Dkt. 19-1 at 28, PX 50 Mey Dec. ¶ 16 (if do not return device, charged $475);

Dkt. 25-18 at 11, Dkt. 20-1 at 6, PX 50, Mey Dec. ¶ 31 ("Well, then, you know, we can't close out the account unless we get the equipment back…I said the collection efforts will continue.");

Dkt. 25-24 at 4, PX 56, Rench Dec. ¶ 7 (consumer told he was responsible for paying return shipping until consumer threatened to "trash the device");

██████████████████████████████████████

**23. Defendants are aware their telemarketers have told consumers they are under no obligation if they cancel Defendants' service.**

Dkt. 15-2 at 24, PX 1, Menjivar Dec. Att. O (5/3/12 email from Lifewatch to Worldwide, copying Sirlin and Baker, discussing the "growing" problem of customers being told that they would not be charged until a later time);

Dkt. 96-1 at 8-10, PX 89, Einikis Dec. Att. A (5/18/15 email from Vandewater at Lifewatch to undisclosed call centers stating "I have heard on recordings reps telling customers that we will send a prepaid label to send the unit back, we will not be doing that even if you ask, so please do not offer it as an option...These are all things that have been coming up lately and the reps need to be reminded that they cannot do that. This is a general email that is going to everybody so please go over this information with your sales/verification/CS reps.");

FTC-LW09-1219 (8/7/12 email from Steinmetz to Worldwide and Sirlin, instructing Worldwide to remove word "free" from script);

FTC-LW09-1297 (8/28/12 email from Sirlin to Worldwide asking whether script still says Lifewatch, Lifewatch-Connect America, or Medical Alarm company, and whether it still says device is free; states that Worldwide should stop telemarketing in Pennsylvania because of complaints);





**24.    Defendants' scripts say that consumers they are under no obligation if they cancel Defendants' service.**

Dkt. 14-2 at 2, PX 1, Menjivar Dec. Att. A (Arcagen inbound script found at Worldwide location promotes "FREE medical alert system package");

Dkt. 14-2 at 3, PX 1, Menjivar Dec. Att. A (Arcagen inbound script found at Worldwide location script states "Also, there is no contract whatsoever and you can cancel at any time with no cancellation fees.");

Dkt. 14-3 at 9, Menjivar Dec. Att. B (scripted rebuttal found at Worldwide location states "But if you and your (Son/daughter/husband/kids) decide you don't want to keep it, then there is no contract, no cancellation fees, and we will pay to ship it back to us.");

Dkt. 14-3 at 23, Att. Q (Direct Agent Response script states "Also, there is no contract whatsoever and you can cancel at any time with no cancellation fees.");

Dkt. 14-3 at 126, Att. GG (Oasis Money Group script states "There is no contract whatsoever and you can cancel at any time with no cancellation fees.");

Dkt. 14-3 at 172, Att. MM (Miranda Money Group script states "There absolutely no contracts. You can cancel at any time with no cancellation fees.");

Dkt. 23-1 at 65, Velez Dec. Att. UU (Total Security Vision script twice states "There absolutely no contracts. You can cancel at any time with no cancellation fees.");

Dkt. 23-1 at 125, Att. CCC (Alertlink script states "Also, there is no contract whatsoever and you can cancel at any time with no cancellation fees.");

Dkt. 23-1 at 161, Att. HHH (Live Response Agent script states "There absolutely no contracts. You can cancel at any time with no cancellation fees.");

Dkt. 23-1 at 190, Att. NNN (Elite Information Systems script states "Also, there is no contract whatsoever and you can cancel at any time with no cancellation fees.");

Dkt. 23-1 at 209-210, Att. OOO (Elite Information Systems script states "Also, there is no long term contract whatsoever and you can cancel at any time with no cancellation fees.");

Dkt. 23-1 at 262-263, Att. WWW (Live Agent Response script states "Also, there is no long term contract whatsoever and you can cancel at any time with no cancellation fees.");

Dkt. 23-1 at 286-287, Att. BBBB (American Innovative Concepts script states "Also, there is no long term contract whatsoever and you can cancel at any time with no cancellation fees.");

Dkt. 22-3 at 2, PX 4, Velez Dec. Att. N (Multi Level Marketing script states "The entire unit is absolutely free");

Dkt. 22-3 at 23, Att. Q (Direct Agent Response script states "The system is COMPLETELY FREE");

Dkt. 22-3 at 51, Att. T (Senior Medical Alert script states "the equipment is at NO COST");

Dkt. 22-3 at 125-126, Att. GG (Oasis Money Group script twice states "at NO COST");

Dkt. 22-3 at 171-172, Att. MM (Miranda Money Group script twice states "at NO COST");

Dkt. 23-1 at 64-65, Velez Dec. Att. UU (Total Security Vision script twice states "at NO COST");

Dkt. 23-1 at 125, Att. CCC (Alertlink script states "The equipment is COMPLETELY FREE");

Dkt. 23-1 at 161-162, Att. HHH (Live Response Agent script says "NO COST" and "The equipment is COMPLETELY FREE");

Dkt. 23-1 at 189-190, Att. NNN (Elite Information Systems script states "FREE medical alert system package" and "The system is COMPLETELY FREE");

Dkt. 23-1 at 209-210, Att. OOO (same);

Dkt. 23-1 at 262-263, Att. WWW (Live Agent Response script states "FREE medical alert system package" and "The system is COMPLETELY FREE");

Dkt. 23-1 at 286-287, Att. BBBB (American Innovative Concepts script states "FREE medical alert system package" and "The system is COMPLETELY FREE");

Dkt. 26-2 at 11-12, PX 66, Lancaster Dec. Ex. A (Worldwide script states "FREE medical alert system package" and "The system is COMPLETELY FREE");

Dkt. 26-2 at 12, PX 66, Lancaster Dec. Ex. A (Worldwide script states "Also, there is no contract whatsoever and you can cancel at any time with no cancellation fees.");

Dkt. 26-3 at 9-10, PX 67 Rowells Dec. Att. A (Payless script twice states "at NO COST");

Dkt. 26-3 at 10, PX 67, Rowells Dec., Att. A (Payless script stating: "There are absolutely NO contracts. You can cancel at any time with no cancellation fees.").

Dkt. 26-4 at 10-11, PX 68, Shultz Dec. Ex. A (Worldwide script states "Also, there is no contract whatsoever and you can cancel at any time with no cancellation fees.");

Dkt. 26-4 at 10-11, PX 68, Shultz Dec. Ex. A (Worldwide script states "FREE medical alert system package" and "The system is COMPLETELY FREE");

Dkt. 26-5 at 11-12, PX 69, Stenger Dec. Att. A (Worldwide script states states "FREE medical alert system package" and "The system is COMPLETELY FREE");

Dkt. 26-5 at 12, PX 69, Stenger Dec. Ex. A (Worldwide script states "Also, there is no contract whatsoever and you can cancel at any time with no cancellation fees.");

Dkt. 26-6 at 15-16, PX 70 Stevens Dec. Att. B (Worldwide script states states "FREE medical alert system package" and "The system is COMPLETELY FREE");

Dkt. 26-6 at 16, PX 70 Stevens Dec. Ex. B (Worldwide script states "Also, there is no contract whatsoever and you can cancel at any time with no cancellation fees.");

Dkt. 26-16 at 9, PX 80 Einikis Dec. Att. A (Royal Holdings of America/Payless script stating "Ther are absolutely NO contracts. You can cancel at any time with no cancellation fees."; "Medical Alert System at NO COST");

Dkt. 26-16 at 24, 25, Att. B (Global Marketing Enterprise/Payless script stating "Medical Alert System at NO COST" and "The system is AT NO COST"; "There are absolutely NO contracts. You can cancel at any time with no cancellation fees.");

Dkt. 26-16 at 65, 66, Att. D (Payless script stating "Medical Alert System  at NO COST" and "The system is AT NO COST"; "There is no contract whatsoever and you can cancel at any time with no cancellation fees.").

FTC-LW09-1212 – 1215 (8/6/12 email from Sirlin to Worldwide and Steinmetz sending sample Lifewatch script for Connect America, including claim that system is free, that "billing cycle doesn't start until you receive the system and activate it," and instruction that telemarketer "PITCH UPSELL");

FTC-LW09-1435 (11/6/12 email from Baker to Worldwide stating she and Evan need Worldwide to change script regarding 30 day trial);



PX 91, Robinson Dec. ¶ 19 (former telemarketer and telemarketing supervisor stating that robocall employed by Lifewatch call center said "You've recently been qualified to receive a medical alert system at no cost to you.").

**25.   Defendants' chargeback rate is substantially greater than the industry norm.**

Dkt. 24-8 at 5, PX 12, Hendricksen Dec. ¶ 13 (president of PERS company that sells to consumers and also monitors accounts for its own customers and other PERS companies, including Lifewatch, stating that industry averages 5% cancellation rate in first 90 days and after that, 2-3% per month);

FTC-LW09-1495 (4/11/13 email from May email to Worldwide, Sirlin, Baker, and other Lifewatch employee, agreeing with Sirlin that they should use 2 or more credit card processors going forward "to spread chargebacks out," which would require Worldwide agents to log in from different companies);
[redacted]









[redacted]

[redacted]

[redacted]

PX 93, Boling Dec. ¶ 31 (Lifewatch reported chargebacks at 30-50%)
PX 93, Boling Dec. ¶ 32 (when chargebacks became excessive, Worldwide entities would "rebrand" with new corporate identity and Lifewatch would then agree to work with new entity); PX 98, Transcript of Deposition of Sirlin on July 25, 2017, at 88-90 (Sirlin testifying that he encouraged Roman to do "a lot of stuff" with Boling "routing business through another dealer to bypass chargebacks").

**26. Defendants and their telemarketers have called consumers on the National Do Not Call Registry.**

Dkt. 24-3 at 20-21, PX 7, Cuomo ¶ 5, Att. A (multiple calls to consumer on DNC list and failure to honor subsequent DNC requests);

Dkt. 24-13 at 2-3, PX 17 Bangasser Dec. ¶¶ 3-5 (received calls despite being on DNC list);

Dkt. 24-14 at 2, PX 18, Barker Dec. ¶ 4 (same);

Dkt. 24-16 at 2, PX 20, Bird Dec. ¶ 3 (same);

Dkt. 24-17 at 2-3, PX 21, Bliss Dec. ¶¶ 3-6 (same);

Dkt. 24-18 at 2, PX 22, Bourne Dec. ¶ 3 (same);

Dkt. 24-19 at 2, PX 23, Bristow Dec. ¶ 3 (same);

Dkt. 24-20 at 3, PX 24, Carson Dec. ¶ 5 (same);

Dkt. 24-21 at 5, PX 25, Cattie Dec. ¶ 10 (same);

Dkt. 24-24 at 2, PX 28, Cummings Dec. ¶ 3 (same);

Dkt. 24-27 at 2, PX 31, deLoca Dec. ¶ 3 (same);

Dkt. 25-1 at 2, PX 33, Featherston Dec. ¶ 3 (same);

Dkt. 25-2 at 2, PX 34, Felker Dec. ¶ 3 (same);

Dkt. 25-3 at 2, PX 35, Gates Dec. ¶ 3 (same);

Dkt. 25-5 at 2, PX 37, Gordon Dec. ¶ 3 (same);

Dkt. 25-7 at 3, PX 39, Grigorian Dec. ¶ 4 (same);

Dkt. 25-8 at 2, PX 40, Haselbauer Dec. ¶ 3 (same);

Dkt. 25-9 at 2, PX 41, James Dec. ¶ 3 (same);

Dkt. 25-10 at 2, PX 42, Jensen Dec. ¶ 3 (same);

Dkt. 25-11 at 2, PX 43, Jones Dec. ¶ 3 (same);

Dkt. 25-13 at 2, PX 45, Kulas Dec. ¶ 3 (same);

Dkt. 25-15 at 4, PX 47, McCourt Dec. ¶ 10 (same);

Dkt. 25-16 at 2, PX 48, McCraw Dec. ¶ 3 (same);

Dkt. 25-18 at 2-3, PX 50, Mey Dec. ¶¶ 3-4 (same);

Dkt. 25-19 at 3, PX 51, Miller Dec. ¶ 5 (same);

Dkt. 25-20 at 2, PX 52, Monaghan Dec. ¶ 3 (same);

Dkt. 25-21 at 2, PX 53, Nielson Dec. ¶ 3 (same);

Dkt. 25-22 at 2, PX 54, Pierce Dec. ¶ 3 (same);

Dkt. 25-23 at 2, PX 55, Primm Dec. ¶ 4 (same);

Dkt. 25-26 at 2, PX 58, Savagian Dec. ¶ 3 (same);

Dkt. 25-28 at 2, PX 60, Veysey Dec. ¶ 3 (same);

Dkt. 25-29 at 3, PX 61, Wagler Dec. ¶ 5 (same);

Dkt. 25-31 at 2, PX 63, Whaley Dec. ¶ 3 (same);

Dkt. 51-1 at 15-17, PX 81 Braver Dec. Att. B (5/7/12 letter from consumer to Sirlin informing him of three robocalls he received on behalf of Lifewatch, with spoofed caller IDs, that his number was registered on the DNC list, that the calls claimed endorsement by American Heart Association and American Diabetic Association, that the telemarketer eventually admitted he was working for Lifewatch, and that the robocalls failed to disclose the seller, purpose of the call, or the nature of the goods or services offered);

Dkt. 51-3 at 2, PX 83, Mey Dec. ¶¶ 3-4 (robocall received from Lifewatch telemarkter on 7/14/15 to consumer on DNC Registry and who repeatedly requested to be put on Lifewatch's internal DNC list);

Dkt. 51-3 at 2, PX 83, Mey Dec. ¶¶ 3, 5 (robocall received from Lifewatch telemarkter on 7/29/15 to consumer on DNC Registry and who repeatedly requested to be put on Lifewatch's internal DNC list);

31

Dkt. 51-3 at 8, PX 83, Mey Dec. Att. A (robocall received from Lifewatch telemarkter on 7/14/15 to consumer on DNC Registry and who repeatedly requested to be put on Lifewatch's internal DNC list);

Dkt. 77-1 at 2-3, PX 86 Mey Dec. ¶¶ 3-4 (consumer received telemarketing call from Lifewatch telemarketer on 8/20/15, despite being on DNC Registry and making repeated requests to be put on Lifewatch's internal DNC List);

Dkt. 77-1 at 2-3, PX 86 Mey Dec. ¶¶ 3, 8 (consumer received robocall from Lifewatch telemarketer on 9/10/15, despite being on DNC Registry and making repeated requests to be put on Lifewatch's internal DNC List);

PX 95, Declaration of Forest Horne ¶ 3 (on 9/14/17, consumer received robocall to his cell phone from telemarketer who admitted he was working for Lifewatch; consumer's number was registered on DNC Registry).

**27.     Defendants are aware their telemarketers have called consumers on the National Do Not Call Registry.**

Dkt. 24-11 at 3, PX 15, Settecase Dec. ¶ 7 (never instructed to, and did not, scrub call lists against DNC Registry);

Dkt. 25-18 at 10, Dkt. 19-2 at 78, PX 50, Mey Dec. ¶ 30 (regional manager of telemarketer calling on behalf of Lifewatch says he receives "enough" complaints about "people being called days and days and days and days and days and days and  days and days and days and days in a row");

Dkt. 26-2 at 6-7, 31-37, PX 66, Lancaster Dec. ¶¶ 20-22, Ex. C (ex-employee of telemarketer told that company called repeatedly as "advertising strategy" and and attaches dozens of examples on "disposition logs" marked "DNC");

Dkt. 26-3 at 4, PX 67, Rowells Dec. ¶ 7 (ex-employee of telemarketer stated 90% of calls she answered were from consumers complaining about robocalls, asking to be put on DNC list, and/or saying they were already on DNC list);

Dkt. 26-4 at 5, 33-55, PX 68, Shultz Dec. ¶ 18, Ex. C (ex-employee of telemarketer states that 50% of consumers complaining to Worldwide were on DNC Registry, attaching hundreds of examples on "disposition logs" marked "Do Not Call");

Dkt. 26-5 at 8, PX 69, Stenger Dec. ¶ 15 (consumer complained because he was on DNC list);

Dkt. 26-6 at 6, PX 70, Stevens Dec. ¶¶ 23-25 & 27 (4-5 customers out of 10-15 customers spoken to per hour complained about being called despite being on DNC Registry).





[redacted]

**28. Defendants and their telemarketers have not accessed and downloaded the National Do Not Call Registry prior to calling consumers.**

Dkt. 24-11 at 2, PX 15, Settecase Dec. ¶ 7 (Worldwide was not instructed to, and did not, run call list against National DNC Registry);
Dkt. 87 at 15, Defendants' Response to Motion for Preliminary Injunction (filed Nov. 10, 2015) (Defendants admit they have "no ability to determine" whether telemarketers contacted consumers on National DNC Registry);
Dkt. 87-2 at 10, DX 2, Declaration of Sarai Baker ¶¶ 42-43 (executed and filed on Nov. 10, 2015) (acknowledging that Lifewatch does not have independent knowledge as to whether complaining customers are on National DNC Registry);
[redacted]



PX 93, Boling Dec. ¶ 14 (Worldwide never subscribed to national DNC Registry and nobody did so on Worldwide's behalf).

**29.      Defendants and their telemarketers have called consumers after the consumers ask to be placed on their Do Not Call lists.**

Dkt. 24-3 at 20-21, PX 7, Cuomo ¶ 5, Att. A (multiple calls to consumer on DNC list and failure to honor subsequent DNC requests);

Dkt. 24-11 at 4, PX 15, Settecase Dec. ¶ 10 (Worldwide kept own internal DNC list, but was not instructed to, and did not, transmit to Lifewatch or anyone else);

Dkt. 24-18 at 2, PX 22, Bourne Dec. ¶ 3 (pressed number to not be contacted any more on multiple calls but continued to receive calls;

Dkt. 24-19 at 3, PX 23, Bristow Dec. ¶ 5 (pressed number to stop calls but transferred to live operator instead);

Dkt. 24-23 at 5, PX 27, Clawson Dec. ¶ 10 ("I am frustrated that I keep getting these telemarketing calls and frustrated that federal laws regarding telemarketing are being ignored. I have requested multiple times to be put on the Do Not Call lists to no avail, and even the company profiting from the calls now claims it cannot do anything to stop them.");

Dkt. 24-24 at 3, PX 28, Cummings Dec. ¶ 5 (pressed number after more than one call and continued to receive calls);

Dkt. 25-11 at 2-3, PX 43, Jones Dec. ¶ 4 (pressed number but continued to get calls);

Dkt. 25-18 at 10, Dkt. 19-2 at 77-78, PX 50, Mey Dec. ¶ 30 (regional manager of telemarketer working on behalf of Lifewatch admits he knows consumers continuing to get called despite requesting to be taken off call list);

Dkt. 25-22 at 3-4, PX 54, Pierce Dec. ¶ 6 (pressed number after 2 calls but continued to receive calls);

Dkt. 51-2 at 2-3, 8, PX 82, deLoca Dec. ¶ 4, Att. A (robocall received on 6/25/15 from Lifewatch telemarketer to consumer on DNC Registry and who had made repeated requests to be put on internal DNC list);

Dkt. 51-3 at 2-3, PX 83, Mey Dec. ¶¶ 3-4 (robocall received from Lifewatch telemarkter on 7/14/15 to consumer on DNC Registry and who repeatedly requested to be put on Lifewatch's internal DNC list);

Dkt. 51-3 at 2-3, PX 83, Mey Dec. ¶¶ 3, 5 (robocall received from Lifewatch telemarkter on 7/29/15 to consumer on DNC Registry and who repeatedly requested to be put on Lifewatch's internal DNC list);

Dkt. 77-1 at 2-3, PX 86 Mey Dec. ¶¶ 3-4 (consumer received telemarketing call from Lifewatch telemarketer on 8/20/15, despite being on DNC Registry and making repeated requests to be put on Lifewatch's internal DNC List);

Dkt. 77-1 at 2-3, PX 86 Mey Dec. ¶¶ 3, 8 (consumer received robocall from Lifewatch telemarketer on 9/10/15, despite being on DNC Registry and making repeated requests to be put on Lifewatch's internal DNC List);

PX 91, Robinson Dec. ¶ 9 (former telemarketer and telemarketing supervisor stating that Lifewatch call centers did not remove numbers from call lists if consumer requested to be removed from list).

**30.     Defendants are aware that their telemarketers have called consumers who have requested to be placed on their Do Not Call lists.**

Dkt. 24-23 at 3-4, PX 27, Clawson Dec. ¶¶ 8-9 (consumer complained to Lifewatch directly but still received calls);

Dkt. 26-2 at 6-7, 31-37, PX 66, Lancaster Dec. ¶¶ 20-22, Ex. C (ex-employee of telemarketer told that company called repeatedly as "advertising strategy" and dozens of "disposition logs" marked "DNC");

Dkt. 26-3 at 4, PX 67, Rowells Dec. ¶ 7 (ex-employee of telemarketer stated 90% of calls she answered were from consumers complaining about robocalls, asking to be put on DNC list, and/or saying they were already on DNC list; instructed to hang up with DNC requests were made);

Dkt. 26-4 at 5, 33-55, PX 68, Shultz Dec. ¶¶ 18, 19, Ex. C (ex-employee of telemarketer states that 50% of callers on DNC Registry; states "There were times when I would speak to the same customer again after requesting that they not be called," and attaches hundreds of examples on "disposition logs" marked "Do Not Call");

Dkt. 26-6 at 5-6, PX 70, Stevens Dec. ¶¶ 23 & 27 (ex-employee of telemarketer spoke with numerous customers who had already asked to be put on DNC list);

███████████████████████████████████
███████████████████████████████████
███████████████████████████████████
███████████████████████████████████

**31.     Defendants and their telemarketers have engaged in widespread caller identification spoofing.**

Dkt. 24 at 2-3, 6, PX 6, Smith Dec. ¶¶ 4 & 14 (BBB complaints about robocalls from local numbers);

Dkt. 24-1 at 131, PX 5, Bradley Dec. ¶ 5, Att. E at 1 (Oklahoma resident's caller ID indicated local area code and the name "Oklahoma City OK");

Dkt. 24-11 at 3-4, PX 15, Settecase Dec. ¶ 8 (manipulated information that would appear on consumers' caller ID to display local telephone number; "It was common knowledge in the industry that consumers are more likely to answer telephone calls made from a local number");

Dkt. 24-13 at 3, PX 17 Bangasser Dec. ¶ 6 (appeared to be local number);

Dkt. 24-18 at 2-3, PX 22, Bourne Dec. ¶ 4 (same);

Dkt. 24-20 at 2, PX 24, Carson Dec. ¶ 3 (same);

Dkt. 24-25 at 3, PX 29, D'Addario Dec. ¶ 7 (consumer "thought she could trust the caller because she saw the telephone number that appeared on the caller ID, and it was a local number");

Dkt. 24-27 at 3, PX 31, deLoca Dec. ¶ 5 (caller ID identified robocall displayed Katonah-Lewisboro School District name and telephone number);

Dkt. 25-5 at 3-4, PX 37, Gordon Dec. ¶ 6 (same);

Dkt. 25-7 at 3-4, PX 39, Grigorian Dec. ¶ 7 (called number back, notified number not in service);

Dkt. 25-9 at 3, Dkt. 17-2 at 43, PX 41, James Dec. ¶ 6 (consumer called Caller ID number back and "the number is no good");

Dkt. 25-11 at 3-4, PX 43, Jones Dec. ¶ 6 (same);

Dkt. 25-19 at 2, PX 51, Miller Dec. ¶ 3 (caller ID showed "FIA Card Serv");

Dkt. 25-22 at 2-5, PX 54, Pierce Dec. ¶¶ 4, 8 & 9 (caller ID appeared to be local number and later calls said "Walmart");

Dkt. 25-31 at 2, PX 63, Whaley Dec. ¶ 3 (caller ID said "Bank of America");

Dkt. 26-1 at 9-10, PX 65, Amberson Dec. ¶ 17 (consumers often complained of false caller ID information);

PX 91, Robinson Dec. ¶ 19 (former telemarketer and telemarketing supervisor stating that all 5 call centers he worked at spoofed caller IDs on all calls, sometimes changing the caller ID at Lifewatch's insistence);

PX 93, Boling Dec. ¶ 41 (Worldwide spoofed caller IDs);

PX 95, Declaration of Forest Horne ¶¶ 3, 4 (on 9/14/17, consumer received robocall to his cell phone from telemarketer who admitted he was working for Lifewatch with spoofed caller ID).

**32.     Defendants are aware that their telemarketers have engaged in widespread caller ID spoofing.**

Dkt. 51-1 at 15-17, PX 81 Braver Dec. Att. B (5/7/12 letter from consumer to Sirlin informing him of three robocalls he received on behalf of Lifewatch, with spoofed caller IDs, that his number was registered on the DNC list, that the calls claimed endorsement by American Heart Association and American Diabetic Association, that the telemarketer eventually admitted he was working for Lifewatch, and that the robocalls failed to disclose the seller, purpose of the call, or the nature of the goods or services offered);



PX 91, Robinson Dec. ¶ 19 (former telemarketer and telemarketing supervisor stating that all 5 call centers he worked at spoofed caller IDs on all calls, sometimes changing the caller ID at Lifewatch's insistence);

PX 93, Boling Dec. ¶ 41 (Lifewatch aware that caller ID number "was not the actual callback number for Worldwide or Lifewatch. I participated in several telephone conversations with Sirlin and other Lifewatch personnel during which they said they did not care what description appeared on the caller identification for Worldwide telemarketing calls as long as it did not trace back to Lifewatch.").

**33. Defendants and telemarketers have employed widespread robocalling.**

Dkt. 24-11 at 3, PX 15, Settecase Dec. ¶¶ 6, 7 (Worldwide telemarketing was exclusively outbound robocalls for Lifewatch, totaling 2 million calls per day at peak).
Dkt. 24-13 at 2, PX 17 Bangasser Dec. ¶ 4;
Dkt. 24-16 at 2, 4, PX 20 Bird Dec. ¶ 3, 9;
Dkt. 24-17 at 2-3, PX 21 Bliss Dec. ¶¶ 3-4 (at least 15 robocalls);
Dkt. 24-18 at 2-3, PX 22 Bourne Dec. ¶¶ 3, 4 (multiple robocalls);
Dkt. 24-19 at 2, PX 23 Bristow Dec. ¶ 4 (at least 6 robocalls);
Dkt. 24-20 at 3, PX 24 Carson Dec. ¶ 5 (at least 15 robocalls);
Dkt. 24-21 at 2, PX 25 Cattie Dec. ¶ 3;
Dkt. 24-23 at 2, PX 27 Clawson Dec. ¶ 3 (several calls a week, 2-3 calls a day for 6 months);
Dkt. 24-24 at 2-4, PX 28 Cummings Dec. ¶¶ 4, 7-9 (multiple robocalls);
Dkt. 24-27 at 2-7, PX 31 deLoca Dec. ¶¶ 3-20 (multiple robocalls);
Dkt. 24-28 at 2, 6, PX 32 Eden Dec. ¶¶ 3, 16 (multiple calls over several months);
Dkt. 25-1 at 2, PX 33 Featherston Dec. ¶ 3;
Dkt. 25-3 at 2, PX 35 Gates Dec. ¶ 3;
Dkt. 25-5 at 2, 5, PX 37 Gordon Dec. ¶¶ 3, 10 (multiple robocalls);
Dkt. 25-7 at 2, PX 39 Grigorian Dec. ¶ 3;
Dkt. 25-8 at 2, 4, PX 40 Haselbauer Dec. ¶¶ 3, 4, 9 (at least 3 robocalls);
Dkt. 25-9 at 2, PX 41 James Dec. ¶ 3 (multiple robocalls);
Dkt. 25-10 at 5, PX 42 Jensen Dec. ¶ 9 (at least 30 robocalls regarding medical alert devicesfrom "John from the shipping department");
Dkt. 25-11 at 2, PX 43 Jones Dec. ¶ 3 (multiple calls for several months);
Dkt. 25-16 at 2, 4, PX 48 McGraw Dec. ¶¶ 3, 9 (multiple calls);
Dkt. 25-17 at 2-3, PX 49 Meehl Dec. ¶¶ 3, 4 (at least 2 robocalls);
Dkt. 25-18 at 2-15, PX 50 Mey Dec. ¶¶ 4-42 (dozens of robocalls);
Dkt. 25-20 at 2-5, PX 52 Monaghan Dec. ¶¶ 4-11 (more than 10 robocalls);
Dkt. 25-22 at 3-5, PX 54 Pierce Dec. ¶¶ 4-9 (more than a dozen robocalls);
Dkt. 25-23 at 2, PX 55 Primm Dec. ¶ 4;
Dkt. 25-26 at 2-3, PX 58 Savagian Dec. ¶¶ 4-5 (multiple robocalls);
Dkt. 25-31 at 2, PX 63 Whaley Dec. ¶ 3;
Dkt. 51-2 at 2-3, 8, PX 82, deLoca Dec. ¶ 4, Att. A (robocall received on 6/25/15 from Lifewatch telemarketer to consumer on DNC Registry and who had made repeated requests to be put on internal DNC list);

Dkt. 51-3 at 8, PX 83, Mey Dec. Att. A (robocall received from Lifewatch telemarkter on 7/14/15 to consumer on DNC Registry and who repeatedly requested to be put on Lifewatch's internal DNC list);

Dkt. 51-3 at 27, PX 83, Mey Dec. Att. B (robocall received from Lifewatch telemarkter on 7/29/15 to consumer on DNC Registry and who repeatedly requested to be put on Lifewatch's internal DNC list);

Dkt. 77-1 at 2-3, PX 86 Mey Dec. ¶¶ 3, 8 (consumer received robocall from Lifewatch telemarketer on 9/10/15, despite being on DNC Registry and making repeated requests to be put on Lifewatch's internal DNC List);

PX 91, Robinson Dec. ¶ 9 (former telemarketer and telemarketing supervisor stating that all 5 call centers he worked at for Lifewatch from April 2014 to June 2016 exclusively used robocalls);

PX 93, Boling Dec. ¶ 13 (Worldwide made 15-25 million robocalls a day for Lifewatch at its peak);

PX 95, Declaration of Forest Horne ¶¶ 3, 5 (received robocall to his cell phone from telemarketer who admitted he was working for Lifewatch on 9/14/17; Lifewatch representative called him back when credit card did not process).

## 34. Defendants are aware that their telemarketers have employed widespread robocalling.

Dkt. 26-12 at 4-5, PX 76, Steinmetz Dec. ¶ 8 (Lifewatch broker stating that "Mr. Sirlin knew that LifeWatch was using telemarketers and that robo-calls were being used by its telemarketers to sell LifeWatch's medical alert systems. Indeed, he and I frequently discussed these issues during the time I worked with LifeWatch. Mr. Sirlin indicated to me that LifeWatch would continue to employ telemarketers that were using robo-calls as long as it could so.");

Dkt. 51-1 at 15-17, PX 81 Braver Dec. Att. B (5/7/12 letter from consumer to Sirlin informing him of three robocalls he received on behalf of Lifewatch, with spoofed caller IDs,that his number was registered on the DNC list, that the calls claimed endorsement by American Heart Association and American Diabetic Association, that the telemarketer eventually admitted he was working for Lifewatch, and that the robocalls failed to disclose the seller, purpose of the call, or the nature of the goods or services offered);

Dkt. 100-4 at 70, 86, Deposition Transcript of Leslie Steinmetz (volume of sales Worldwide was doing for Lifewatch "were impossible without robo-dialing"; confirming conversation in which Sirlin said Lifewatch would continue to use robocalls.);

FTC-LW09-1057-64 (4/24/12 email from broker to Boling at Worldwide transmitting 4/11/12 letter and Verified Complaint filed against Lifewatch for robocalling and failure to properly identify seller, in violation of Telephone Consumer Protection Act);

FTC-LW09-1081-1099 (5/3/12 email from broker to Worldwide forwarding various lawsuits and threats to sue Lifewatch relating to robocalling, failure to identify seller, caller ID spoofing);

FTC-LW09-1100 (5/3/12 email from Worldwide to broker responding to email forwarding various lawsuits and threats to sue Lifewatch relating to robocalling, failure to identify seller, caller ID spoofing);

FTC-LW09-1307 – 31 (9/17/12 email from Sirlin to Worldwide and Baker at Lifewatch, forwarding 12 complaints from Pennsylvania Attorney General, including multiple robocall complaints, DNC violations, inaccurate caller ID information, violations of DNC requests);

FTC-LW09-1333 – 57 (9/17/12 email from Baker to Worldwide, copying Sirlin, instructing Worldwide to "PLEASE STOP CALLING PENNSYLVANIA IMMEDIATELY!!!!; attaching 12 complaints to Worldwide on 9/17/12 from Pennsylvania Attorney General, including multiple robocall complaints, DNC violations, inaccurate caller ID information, violations of DNC requests);

FTC-LW09-1383 (9/28/12 email from Sirlin to Worldwide, copying Steinmetz and Modugno, informing them of lawsuit for robocalling by Worldwide to consumer on National Do-Not-Call Registry in New Jersey, who complained of 5 robocalls and went through order process to identify Lifewatch; Sirlin offered $5000, but consumer demanded $30,000);

FTC-LW09-1404 – 8 (10/9/12 email from Sirlin to Worldwide forwarding complaint from Tennessee Regulatory Authority enclosing 43 violations of state Do-Not-Call Register);

FTC-LW09-1523 – 24 (4/22/13 email from Sirlin to Worldwide forwarding 4/22/13 email from Connect America CEO to Lifewatch stating "This just keeps getting worse?");

FTC-LW09-1526 (5/7/13 email from Sirlin to Worldwide forwarding 5/7/13 Medical Alarm Monitoring Association (MAMA) "consumer alert" regarding "illegal and fraudulent telemarketing including . . . 'robo-calling'" targeting seniors in sale of medical alert devices);

FTC-LW09-1538 (5/22/13 email from Sirlin instructing Worldwide "Also Wisconsin is giving us trouble-I would not sell there," and forwarding email from Lifewatch customer service to Sirlin, May, and Baker, about "John" robocalls from 5 spoofed caller IDs; customer service representative stated she told customer that "We, at Lifewatch USA, do not make cold calls, do not call out to anyone. Blah blah blah-He finally believed me.");

FTC-LW09-1546 - 1550 (6/10/13 email from Sirlin to Worldwide, forwarding 6/10/13 email from Connect America CEO to Sirlin and Roman, regarding 2 lawsuits and additional BBB inquiries related to robocalling tied to Lifewatch; ordering Lifewatch "to put a stop to these illegal calls . . . These reckless actions by this call center are costing us money in legal and labor fees and damaging the industry.");

FTC-LW09-1556 – 59 (6/18/13 email from Sirlin to Worldwide, asking for information and to add a number to DNC, forwarding customer service email to Sirlin and May from customer who received robocall tied to Lifewatch, and noting she found 24 similar complaints, stating that someone had purchased device for her; customer service representative stated she told customer "Of course I said all the right things—we have nothing to do with them, blah blah blah, and she believes me and feels 'bad' for our company that this will damage our reputation if this other company keeps making these calls lol!");

FTC-LW09-1560 – 62 (6/18/13 email from Sirlin to Worldwide asking for "outgoing message" consumer would have heard, and forwarding 6/18/13 email from Lifewatch customer service representative to Sirlin, May, and Baker regarding consumer's complaint about Lifewatch DNC violations);

FTC-LW09-1571 – 74 (6/20/13 email from Sirlin to Worldwide forwarding complaint from North Dakota Attorney General's office, "Do you info to give outside for worldwide-I know doesn't exist anymore but if you can find original info that be great");







[redacted]

[redacted]

PX 91, Robinson Dec. ¶ 20 (former telemarketer and telemarketing supervisor stating that all 5 call centers he worked at for Lifewatch, outgoing robocall message was changed on constant basis, often with changes ordered by Lifewatch);

PX 93, Boling Dec. ¶ 3 ("Lifewatch was aware of the pre-recorded message because Settecase uploaded Sirlin and May's cell phone numbers to the predictive dialer so it would call them and they could hear the pre-recorded message.");

PX 93, Boling Dec. ¶ 46 ("I had multiple conversations with Sirlin and May about call center operations including the use of predictive dialers and pre-recorded messages also called 'voice broadcasting' or 'robocalling.'");

PX 95, Declaration of Forest Horne ¶¶ 3, 5 (on 9/14/17, consumer received robocall to his cell phone from telemarketer who admitted he was working for Lifewatch; Lifewatch representative called him back when credit card did not process);

PX 96, Supplemental Declaration of Forest Horne ¶ 4 (consumer who received robocall to his cell phone on 9/14/17 from telemarketer who admitted he was working for Lifewatch never consented to receive robocalls from Lifewatch).

**35.     Robocalls blasted by Defendants and telemarketers have not disclosed the identity of the seller.**

Dkt. 21-1 at 15, PX 2, France Dec. Att. A ($50 gift card every month; did not disclose seller, purpose of call was to sell goods or services, or nature of goods or services),

Dkt. 21-1 at 58, Att. F at 6 (same);

Dkt. 21-2 at 11, PX 3, Tyndall Dec. Att. A  ($1000 in grocery savings coupons, plus a 75% prescription card; did not disclose seller, purpose of call was to sell goods or services, or nature of goods or services);

Dkt. 21-2 at 69, PX 3, Tyndall Dec. Att. C ($1000 in grocery savings coupons, plus a 75% prescription card; did not disclose seller, purpose of call was to sell goods or services, or nature of goods or services);

Dkt. 21-2 at 116, PX 3, Tyndall Dec. Att. F ($3000 in grocery certificates and a $50 card; did not disclose seller, purpose of call was to sell goods or services, or nature of goods or services);

Dkt. 21-2 at 143, PX 3, Tyndall Dec. Att. H ("$3000 worth of grocery discount coupons…you can use at any grocery store to buy the exact same products you purchase every week"; did not disclose seller, purpose of call was to sell goods or services, or nature of goods or services);

Dkt. 21-2 at 161, PX 3, Tyndall Dec. Att. I ($3000 worth of coupons; did not disclose seller, purpose of call was to sell goods or services, or nature of goods or services);

Dkt. 24-1 at 132, PX 5, Bradley Dec. Att. D (telemarketer stated "free medical alert system package," did not disclose seller, purpose of call was to sell goods or services, or nature of goods or services);

Dkt. 24-10 at 3, PX 14, Hilgar Dec. ¶ 6 ("The telemarketers also were not allowed to disclose Lifewatch's name during telemarketing calls.");

Dkt. 24-13 at 2, PX 17, Bangasser Dec. ¶ 4 (robocall promised $3000 in free groceries; did not disclose seller, purpose of call was to sell goods or services, or nature of goods or services);

Dkt. 24-27 at 2, PX 31 deLoca Dec. ¶ 4 (robocall promised $3000 in free grocery saving certificates);

Dkt. 24-27 at 3-4, deLoca Dec. ¶ 8 (robocall promised $3000 in free grocery saving certificates that can be used at over 100 major grocery chains across the U.S.; did not disclose seller, purpose of call was to sell goods or services, or nature of goods or services);

Dkt. 24-27 at 3, Dkt. 16-2 at 26, PX 31, deLoca Dec. ¶ 7 (robocall says "free medical alert system package," did not disclose seller, purpose of call was to sell goods or services, or nature of goods or services);

Dkt. 24-27 at 4, Dkt. 17-1 at 6, PX 31, deLoca Dec. ¶ 9 (same);

Dkt. 24-27 at 4, Dkt. 17-1 at 5, PX 31 deLoca Dec. ¶ 10 (robocall promises $3000 in saving certificates; did not disclose seller, purpose of call was to sell goods or services, or nature of goods or services);

Dkt. 24-27 at 4, PX 31 deLoca Dec. ¶ 11 (robocall promised 75% off prescription discount card; did not disclose seller, purpose of call was to sell goods or services, or nature of goods or services);

Dkt. 24-27 at 5-7, PX 31 deLoca Dec. ¶¶ 12, 18-20 (4 robocalls promising $1000 in grocery saving coupons and a 75% prescription drug card; did not disclose seller, purpose of call was to sell goods or services, or nature of goods or services);

Dkt. 24-27 at 5-6, Dkt. 17-1 at 53, PX 31, deLoca Dec. ¶ 15 (robocall stated "The Federal Government is shipping you a free medical alert system.");

Dkt. 24-27 at 6, PX 31, deLoca Dec. ¶ 18 ("Due to new health care regulations, we have the system waiting to be shipped out to you"; did not disclose seller, purpose of call was to sell goods or services, or nature of goods or services);

Dkt. 24-27 at 7 (two calls stating "Due to new health care regulations, we have the system waiting to be shipped out to you"; did not disclose seller, purpose of call was to sell goods or services, or nature of goods or services);

Dkt. 25-8 at 2, PX 40, Haselbauer Dec. ¶¶ 3-4 (robocall promised $3000 in free grocery coupons; did not disclose seller, purpose of call was to sell goods or services, or nature of goods or services);

Dkt. 25-9 at 3, Dkt. 17-2 at 5, James Dec. ¶ 4 ("free Life Alert system"; did not disclose seller, purpose of call was to sell goods or services, or nature of goods or services);

Dkt. 25-9 at 4, Dkt. 17-2 at 55, James Dec. ¶ 7 (robocall states "Due to new health care regulations, you are now eliegible to receive a personal medical alert system at not cost to you";

did not disclose seller, purpose of call was to sell goods or services, or nature of goods or services);

Dkt. 25-9 at 4-5, Dkt. 18-1 at 5 (same);

Dkt. 25-9 at 5, Dkt. 18-1 at 38 (same);

Dkt. 25-9 at 4, Dkt. 18-1 at 5, PX 41 James Dec. (robocall promising $1000 in grocery saving coupons and a 75% prescription drug card; did not disclose seller, purpose of call was to sell goods or services, or nature of goods or services);;

Dkt. 25-14 at 2, PX 46, Lifshitz Dec. ¶ 3 (telemarketer promised $3000 in grocery coupons; did not disclose seller, purpose of call was to sell goods or services, or nature of goods or services);

Dkt. 25-18 at 3, Dkt. 18-1 at 61, PX 50 Mey Dec. ¶ 6 (robocall offers "free medical emergency alert system"; did not disclose seller, purpose of call was to sell goods or services, or nature of goods or services);

Dkt. 25-18 at 7, PX 50 Mey Dec. ¶ 18 (same);

Dkt. 25-18 at 11, Dkt. 20-1 at 32, Mey Dec. ¶ 33  (same);

Dkt. 25-18 at 11, Dkt. 20-1 at 15, Mey Dec. ¶ 32 (robocall stating "personal medical alert system at no cost to you"; did not disclose seller, purpose of call was to sell goods or services, or nature of goods or services);

Dkt. 25-18 at 11, Dkt. 20-1 at 32, PX 50 Mey Dec. ¶ 33 (robocall promises $1000 in grocery saving coupons and a 75% prescription drug card; did not disclose seller, purpose of call was to sell goods or services, or nature of goods or services);

Dkt. 25-18 at 12-14, PX 50, Mey Dec. ¶¶ 36-42 (7 robocalls promising $1000 in grocery saving coupons and a 75% prescription drug card; did not disclose seller, purpose of call was to sell goods or services, or nature of goods or services);

Dkt. 25-18 at 12-15, PX 50, Mey Dec. ¶¶ 36-42 (7 calls stating "Due to new health care regulations, we have the system waiting to be shipped out to you"; did not disclose seller, purpose of call was to sell goods or services, or nature of goods or services);

Dkt. 25-22 at 5, PX 54, Pierce Dec. ¶ 9 (robocall promising $3000 saving certificate; did not disclose seller, purpose of call was to sell goods or services, or nature of goods or services);

Dkt. 26-8 at 7, PX 72, Levine Dec. Ex. B (telemarketer stated "free medical alert system package"; did not disclose seller, purpose of call was to sell goods or services, or nature of goods or services);

Dkt. 26-8 at 16, Att. C (same);

Dkt. 26-8 at 25, Att. D (same);

Dkt. 26-10 at 3, PX 74, Holley Dec. ¶ 4 ($3000 grocery voucher; did not disclose seller, purpose of call was to sell goods or services, or nature of goods or services).

Dkt. 51-1 at 15-17, PX 81 Braver Dec. Att. B (5/7/12 letter from consumer to Sirlin informing him of three robocalls he received on behalf of Lifewatch, with spoofed caller IDs,that his number was registered on the DNC list, that the calls claimed endorsement by American Heart Association and American Diabetic Association, that the telemarketer eventually admitted he was working for Lifewatch, and that the robocalls failed to disclose the seller, purpose of the call, or the nature of the goods or services offered);

Dkt. 51-1 at 21, PX 81 Braver Dec. Att. C (robocall from Lifewatch telemarketer received on 8/10/15 stating "Because you were referred by your doctor or primary care physician, your medical alert system has already been paid for"; to opt out of the call, the robocall states "Press five to notify your health care provider you have refused shipment"; did not disclose seller, purpose of call was to sell goods or services, or nature of goods or services);

Dkt. 51-2 at 2-3, 8, PX 82, deLoca Dec. ¶ 4, Att. A (robocall received on 6/25/15 states "Since you're already eligible to receive your medical alert system at not cost to you"; did not disclose seller, purpose of call was to sell goods or services, or nature of goods or services);

Dkt. 51-3 at 8, 14, PX 83, Mey Dec. Att. A (robocall received from Lifewatch telemarkter on 7/14/15 states "Since you're already eligible to receive your medical alert system… at not cost to you"; telemarketer states "you're getting the unit for free"; did not disclose seller, purpose of call was to sell goods or services, or nature of goods or services);

Dkt. 51-3 at 28, PX 83, Mey Dec. Att. B (telemarketer on 7/29/15, stated  "no cost to you"; did not disclose seller, purpose of call was to sell goods or services, or nature of goods or services);

Dkt. 77-1 at 44, PX 86 Mey Dec. Att. E (consumer received robocall from Lifewatch telemarketer on 9/10/15, telemarketer stated "you pay absolutely nothing for the equipment and you never will"; did not disclose seller, purpose of call was to sell goods or services, or nature of goods or services);

Dkt. 96-1 at 4, Einikis Dec. Att. A (6/5/15 email from Vandewater at Lifewatch to undisclosed call centers stating that "sales reps are NEVER allowed to Lifewatch or that they work for Lifewatch, I have said this so many times already but yet it is still happening");

Dkt. 96-1 at 8-10, PX 89, Einikis Dec. Att. A (5/18/15 email from Vandewater at Lifewatch to undisclosed call centers stating that call centers should not be giving out Lifewatch name; "These are all things that have been coming up lately and the reps need to be reminded that they cannot do that. This is a general email that is going to everybody so please go over this information with your sales/verification/CS reps.");

Dkt. 96-1 at 21, PX 89, Einikis Dec. Att. A (12/24/14 email from Vandewater at Lifewatch to undisclosed call centers stating customers are reporting that they are being called by Lifewatch and that "You should not have ANYTHING saying that you are Lifewatch.");



PX 91, Robinson Dec. ¶¶ 19-20 (former telemarketer and telemarketing supervisor stating that all 5 call centers he worked at for Lifewatch never used Lifewatch's name in robocall message, and did not include purpose of call or nature of goods and services in robocall);

PX 93, Boling Dec. ¶ 39-40 (Lifewatch instructed call centers to never use Lifewatch's name, "so Lifewatch could deny a connection between it and the call centers if a consumer inquired…[d]uring multiple telephone conversations, Sirlin expressed his view that Worldwide telemarketing on behalf of Lifewatch was structured to, in his words, "insulate" Lifewatch from any legal liability for the violations.");

PX 95, Declaration of Forest Horne ¶¶ 3, 5 (on 9/14/17, consumer received robocall to his cell phone from telemarketer who admitted he was working for Lifewatch, but robocall did not identify Lifewatch as seller).

**36.    Robocalls blasted by Defendants and telemarketers have not disclosed that the purpose of the call is to sell goods or services.**

Dkt. 21-1 at 15, PX 2, France Dec. Att. A ($50 gift card every month; did not disclose seller, purpose of call was to sell goods or services, or nature of goods or services),

Dkt. 21-1 at 58, Att. F at 6 (same);

Dkt. 21-2 at 11, PX 3, Tyndall Dec. Att. A ($1000 in grocery savings coupons, plus a 75% prescription card; did not disclose seller, purpose of call was to sell goods or services, or nature of goods or services);

Dkt. 21-2 at 69, PX 3, Tyndall Dec. Att. C ($1000 in grocery savings coupons, plus a 75% prescription card; did not disclose seller, purpose of call was to sell goods or services, or nature of goods or services);

Dkt. 21-2 at 116, PX 3, Tyndall Dec. Att. F ($3000 in grocery certificates and a $50 card; did not disclose seller, purpose of call was to sell goods or services, or nature of goods or services);

Dkt. 21-2 at 143, PX 3, Tyndall Dec. Att. H ("$3000 worth of grocery discount coupons…you can use at any grocery store to buy the exact same products you purchase every week"; did not disclose seller, purpose of call was to sell goods or services, or nature of goods or services);

Dkt. 21-2 at 161, PX 3, Tyndall Dec. Att. I ($3000 worth of coupons; did not disclose seller, purpose of call was to sell goods or services, or nature of goods or services);

Dkt. 24-1 at 132, PX 5, Bradley Dec. Att. D (telemarketer stated "free medical alert system package," did not disclose seller, purpose of call was to sell goods or services, or nature of goods or services);

Dkt. 24-13 at 2, PX 17, Bangasser Dec. ¶ 4 (robocall promised $3000 in free groceries; did not disclose seller, purpose of call was to sell goods or services, or nature of goods or services);

Dkt. 24-27 at 2, PX 31 deLoca Dec. ¶ 4 (robocall promised $3000 in free grocery saving certificates; did not disclose seller, purpose of call was to sell goods or services, or nature of goods or services);

Dkt. 24-27 at 3, Dkt. 16-2 at 26, PX 31, deLoca Dec. ¶ 7 (robocall says "free medical alert system package," did not disclose seller, purpose of call was to sell goods or services, or nature of goods or services);

Dkt. 24-27 at 3-4, deLoca Dec. ¶ 8 (robocall promised $3000 in free grocery saving certificates that can be used at over 100 major grocery chains across the U.S.; did not disclose seller, purpose of call was to sell goods or services, or nature of goods or services);

Dkt. 24-27 at 4, Dkt. 17-1 at 6, PX 31, deLoca Dec. ¶ 9 (same);

Dkt. 24-27 at 4, Dkt. 17-1 at 5, PX 31 deLoca Dec. ¶ 10 (robocall promises $3000 in saving certificates; did not disclose seller, purpose of call was to sell goods or services, or nature of goods or services);

Dkt. 24-27 at 4, PX 31 deLoca Dec. ¶ 11 (robocall promised 75% off prescription discount card; did not disclose seller, purpose of call was to sell goods or services, or nature of goods or services);

Dkt. 24-27 at 5-7, PX 31 deLoca Dec. ¶¶ 12, 18-20 (4 robocalls promising $1000 in grocery saving coupons and a 75% prescription drug card; did not disclose seller, purpose of call was to sell goods or services, or nature of goods or services);

Dkt. 24-27 at 5-6, Dkt. 17-1 at 53, PX 31, deLoca Dec. ¶ 15 (robocall stated "The Federal Government is shipping you a free medical alert system.");

Dkt. 24-27 at 6, PX 31, deLoca Dec. ¶ 18 ("Due to new health care regulations, we have the system waiting to be shipped out to you"; did not disclose seller, purpose of call was to sell goods or services, or nature of goods or services);

Dkt. 24-27 at 7 (2 calls stating "Due to new health care regulations, we have the system waiting to be shipped out to you"; did not disclose seller, purpose of call was to sell goods or services, or nature of goods or services);

Dkt. 25-8 at 2, PX 40, Haselbauer Dec. ¶¶ 3-4 (robocall promised $3000 in free grocery coupons; did not disclose seller, purpose of call was to sell goods or services, or nature of goods or services);

Dkt. 25-9 at 3, Dkt. 17-2 at 5, James Dec. ¶ 4 ("free Life Alert system"; did not disclose seller, purpose of call was to sell goods or services, or nature of goods or services);

Dkt. 25-9 at 4, Dkt. 17-2 at 55, James Dec. ¶ 7 (robocall states "Due to new health care regulations, you are now eliegible to receive a personal medical alert system at not cost to you"; did not disclose seller, purpose of call was to sell goods or services, or nature of goods or services);

Dkt. 25-9 at 4-5, Dkt. 18-1 at 5 (same);

Dkt. 25-9 at 5, Dkt. 18-1 at 38 (same);

Dkt. 25-9 at 4, Dkt. 18-1 at 5, PX 41 James Dec. (robocall promising $1000 in grocery saving coupons and a 75% prescription drug card; did not disclose seller, purpose of call was to sell goods or services, or nature of goods or services);;

Dkt. 25-14 at 2, PX 46, Lifshitz Dec. ¶ 3 (telemarketer promised $3000 in grocery coupons; did not disclose seller, purpose of call was to sell goods or services, or nature of goods or services);

Dkt. 25-18 at 3, Dkt. 18-1 at 61, PX 50 Mey Dec. ¶ 6 (robocall offers "free medical emergency alert system"; did not disclose seller, purpose of call was to sell goods or services, or nature of goods or services);

Dkt. 25-18 at 7, PX 50 Mey Dec. ¶ 18 (same);

Dkt. 25-18 at 11, Dkt. 20-1 at 15, Mey Dec. ¶ 32 (robocall stating "personal medical alert system at no cost to you"; did not disclose seller, purpose of call was to sell goods or services, or nature of goods or services);

Dkt. 25-18 at 11, Dkt. 20-1 at 32, PX 50 Mey Dec. ¶ 33 (robocall promises $1000 in grocery saving coupons and a 75% prescription drug card; did not disclose seller, purpose of call was to sell goods or services, or nature of goods or services);

Dkt. 25-18 at 12-14, PX 50, Mey Dec. ¶¶ 36-42 (7 robocalls promising $1000 in grocery saving coupons and a 75% prescription drug card; did not disclose seller, purpose of call was to sell goods or services, or nature of goods or services);

47

Dkt. 25-18 at 11, Dkt. 20-1 at 32, Mey Dec. ¶ 33  (same);

Dkt. 25-18 at 12-15, PX 50, Mey Dec. ¶¶ 36-42 (7 calls stating "Due to new health care regulations, we have the system waiting to be shipped out to you"; did not disclose seller, purpose of call was to sell goods or services, or nature of goods or services);

Dkt. 25-22 at 5, PX 54, Pierce Dec. ¶ 9 (robocall promising $3000 saving certificate; did not disclose seller, purpose of call was to sell goods or services, or nature of goods or services);

Dkt. 26-8 at 7, PX 72, Levine Dec. Ex. B (telemarketer stated "free medical alert system package"; did not disclose seller, purpose of call was to sell goods or services, or nature of goods or services);

Dkt. 26-8 at 16, Att. C (same);

Dkt. 26-8 at 25, Att. D (same);

Dkt. 26-10 at 3, PX 74, Holley Dec. ¶ 4 ($3000 grocery voucher; did not disclose seller, purpose of call was to sell goods or services, or nature of goods or services);

Dkt. 51-1 at 21, PX 81 Braver Dec. Att. C (robocall from Lifewatch telemarketer received on 8/10/15 stating "Because you were referred by your doctor or primary care physician, your medical alert system has already been paid for"; to opt out of the call, the robocall states "Press five to notify your health care provider you have refused shipment"; did not disclose seller, purpose of call was to sell goods or services, or nature of goods or services);

Dkt. 51-2 at 2-3, 8, PX 82, deLoca Dec. ¶ 4, Att. A (robocall received on 6/25/15 from Lifewatch telemarketer to consumer on DNC Registry and who had made repeated requests to be put on internal DNC list, call did not disclose the seller, that purpose of call was to sell goods or services, or the nature of the goods or services);

Dkt. 51-3 at 8, PX 83, Mey Dec. Att. A (robocall received from Lifewatch telemarkter on 7/14/15 to consumer on DNC Registry and who repeatedly requested to be put on Lifewatch's internal DNC list, did not disclose the seller, the purposed of the call was to sell goods or services, or the nature of the goods or services);

Dkt. 51-3 at 27, PX 83, Mey Dec. Att. B (robocall received from Lifewatch telemarkter on 7/29/15 to consumer on DNC Registry and who repeatedly requested to be put on Lifewatch's internal DNC list, did not disclose the seller, the purposed of the call was to sell goods or services, or the nature of the goods or services);

Dkt. 77-1 at 2-3, PX 86 Mey Dec. ¶¶ 3, 8 (consumer received robocall from Lifewatch telemarketer on 9/10/15, despite being on DNC Registry and making repeated requests to be put on Lifewatch's internal DNC List, did not disclose the seller, the purposed of the call was to sell goods or services, or the nature of the goods or services);

PX 91, Robinson Dec. ¶¶ 19-20 (former telemarketer and telemarketing supervisor stating that all 5 call centers he worked at for Lifewatch never used Lifewatch's name in robocall message, and did not include purpose of call or nature of goods and services in robocall).

**37.    Robocalls blasted by Defendants and telemarketers have not truthfully disclosed the nature of the goods or services being offered.**

Dkt. 21-1 at 15, PX 2, France Dec. Att. A ($50 gift card every month; did not disclose seller, purpose of call was to sell goods or services, or nature of goods or services),

Dkt. 21-1 at 58, Att. F at 6 (same);

Dkt. 21-2 at 11, PX 3, Tyndall Dec. Att. A ($1000 in grocery savings coupons, plus a 75% prescription card; did not disclose seller, purpose of call was to sell goods or services, or nature of goods or services);

Dkt. 21-2 at 69, PX 3, Tyndall Dec. Att. C ($1000 in grocery savings coupons, plus a 75% prescription card; did not disclose seller, purpose of call was to sell goods or services, or nature of goods or services);

Dkt. 21-2 at 116, PX 3, Tyndall Dec. Att. F ($3000 in grocery certificates and a $50 card; did not disclose seller, purpose of call was to sell goods or services, or nature of goods or services);

Dkt. 21-2 at 143, PX 3, Tyndall Dec. Att. H ("$3000 worth of grocery discount coupons…you can use at any grocery store to buy the exact same products you purchase every week"; did not disclose seller, purpose of call was to sell goods or services, or nature of goods or services);

Dkt. 21-2 at 161, PX 3, Tyndall Dec. Att. I ($3000 worth of coupons; did not disclose seller, purpose of call was to sell goods or services, or nature of goods or services);

Dkt. 24-1 at 132, PX 5, Bradley Dec. Att. D (telemarketer stated "free medical alert system package," did not disclose seller, purpose of call was to sell goods or services, or nature of goods or services);

Dkt. 24-13 at 2, PX 17, Bangasser Dec. ¶ 4 (robocall promised $3000 in free groceries; did not disclose seller, purpose of call was to sell goods or services, or nature of goods or services);

Dkt. 24-27 at 2, PX 31 deLoca Dec. ¶ 4 (robocall promised $3000 in free grocery saving certificates; did not disclose seller, purpose of call was to sell goods or services, or nature of goods or services);

Dkt. 24-27 at 3-4, deLoca Dec. ¶ 8 (robocall promised $3000 in free grocery saving certificates that can be used at over 100 major grocery chains across the U.S.; did not disclose seller, purpose of call was to sell goods or services, or nature of goods or services);

Dkt. 24-27 at 4, Dkt. 17-1 at 5, PX 31 deLoca Dec. ¶ 10 (robocall promises $3000 in saving certificates; did not disclose seller, purpose of call was to sell goods or services, or nature of goods or services);

Dkt. 24-27 at 4, PX 31 deLoca Dec. ¶ 11 (robocall promised 75% off prescription discount card; did not disclose seller, purpose of call was to sell goods or services, or nature of goods or services);

Dkt. 24-27 at 5-7, PX 31 deLoca Dec. ¶¶ 12, 18-20 (4 robocalls promising $1000 in grocery saving coupons and a 75% prescription drug card; did not disclose seller, purpose of call was to sell goods or services, or nature of goods or services);

Dkt. 24-27 at 3, Dkt. 16-2 at 26, PX 31, deLoca Dec. ¶ 7 (robocall says "free medical alert system package," did not disclose seller, purpose of call was to sell goods or services, or nature of goods or services);

Dkt. 24-27 at 4, Dkt. 17-1 at 6, PX 31, deLoca Dec. ¶ 9 (same);

Dkt. 24-27 at 5-6, Dkt. 17-1 at 53, PX 31, deLoca Dec. ¶ 15 (robocall stated "The Federal Government is shipping you a free medical alert system.");

Dkt. 24-27 at 6, PX 31, deLoca Dec. ¶ 18 ("Due to new health care regulations, we have the system waiting to be shipped out to you"; did not disclose seller, purpose of call was to sell goods or services, or nature of goods or services);

Dkt. 24-27 at 7 (two calls stating "Due to new health care regulations, we have the system waiting to be shipped out to you"; did not disclose seller, purpose of call was to sell goods or services, or nature of goods or services);

49

Dkt. 25-9 at 3, Dkt. 17-2 at 5, James Dec. ¶ 4 ("free Life Alert system"; did not disclose seller, purpose of call was to sell goods or services, or nature of goods or services);

Dkt. 25-9 at 4, Dkt. 17-2 at 55, James Dec. ¶ 7 (robocall states "Due to new health care regulations, you are now eliegible to receive a personal medical alert system at not cost to you"; did not disclose seller, purpose of call was to sell goods or services, or nature of goods or services);

Dkt. 25-9 at 4-5, Dkt. 18-1 at 5 (same);

Dkt. 25-9 at 5, Dkt. 18-1 at 38 (same);

Dkt. 25-8 at 2, PX 40, Haselbauer Dec. ¶¶ 3-4 (robocall promised $3000 in free grocery coupons; did not disclose seller, purpose of call was to sell goods or services, or nature of goods or services);

Dkt. 25-9 at 4, Dkt. 18-1 at 5, PX 41 James Dec. (robocall promising $1000 in grocery saving coupons and a 75% prescription drug card; did not disclose seller, purpose of call was to sell goods or services, or nature of goods or services);

Dkt. 25-14 at 2, PX 46, Lifshitz Dec. ¶ 3 (telemarketer promised $3000 in grocery coupons; did not disclose seller, purpose of call was to sell goods or services, or nature of goods or services);

Dkt. 25-18 at 3, Dkt. 18-1 at 61, PX 50 Mey Dec. ¶ 6 (robocall offers "free medical emergency alert system"; did not disclose seller, purpose of call was to sell goods or services, or nature of goods or services);

Dkt. 25-18 at 7, PX 50 Mey Dec. ¶ 18 (same);

Dkt. 25-18 at 11, Dkt. 20-1 at 32, Mey Dec. ¶ 33  (same);

Dkt. 25-18 at 11, Dkt. 20-1 at 32, PX 50 Mey Dec. ¶ 33 (robocall promises $1000 in grocery saving coupons and a 75% prescription drug card; did not disclose seller, purpose of call was to sell goods or services, or nature of goods or services);

Dkt. 25-18 at 12-14, PX 50, Mey Dec. ¶¶ 36-42 (7 robocalls promising $1000 in grocery saving coupons and a 75% prescription drug card; did not disclose seller, purpose of call was to sell goods or services, or nature of goods or services);

Dkt. 25-22 at 5, PX 54, Pierce Dec. ¶ 9 (robocall promising $3000 saving certificate; did not disclose seller, purpose of call was to sell goods or services, or nature of goods or services);

Dkt. 26-8 at 7, PX 72, Levine Dec. Ex. B (telemarketer stated "free medical alert system package"; did not disclose seller, purpose of call was to sell goods or services, or nature of goods or services);

Dkt. 26-8 at 16, Att. C (same);

Dkt. 26-8 at 25, Att. D (same);

Dkt. 26-10 at 3, PX 74, Holley Dec. ¶ 4 ($3000 grocery voucher; did not disclose seller, purpose of call was to sell goods or services, or nature of goods or services).

Dkt. 51-1 at 21, PX 81 Braver Dec. Att. C (robocall from Lifewatch telemarketer received on 8/10/15 stating "Because you were referred by your doctor or primary care physician, your medical alert system has already been paid for"; to opt out of the call, the robocall states "Press five to notify your health care provider you have refused shipment"; did not disclose seller, purpose of call was to sell goods or services, or nature of goods or services);

Dkt. 51-2 at 2-3, 8, PX 82, deLoca Dec. ¶ 4, Att. A (robocall received on 6/25/15 states "Since you're already eligible to receive your medical alert system at not cost to you"; did not disclose seller, purpose of call was to sell goods or services, or nature of goods or services);

Dkt. 51-3 at 8, 14, PX 83, Mey Dec. Att. A (robocall received from Lifewatch telemarkter on 7/14/15 states "Since you're already eligible to receive your medical alert system… at not cost to

you"; telemarketer states "you're getting the unit for free"; did not disclose seller, purpose of call was to sell goods or services, or nature of goods or services);

Dkt. 51-3 at 28, PX 83, Mey Dec. Att. B (telemarketer on 7/29/15, stated "no cost to you"; did not disclose seller, purpose of call was to sell goods or services, or nature of goods or services);

Dkt. 77-1 at 44, PX 86 Mey Dec. Att. E (consumer received robocall from Lifewatch telemarketer on 9/10/15, telemarketer stated "you pay absolutely nothing for the equipment and you never will"; did not disclose seller, purpose of call was to sell goods or services, or nature of goods or services);

Dkt. 96-1 at 34, PX 89, Einikis Dec. Att. A (10/6/14 email from Vandewater at Lifewatch to Payless stating that she heard rep on recording of sales call say "its (sic) a government funded program…He absolutely cannot say that because that is not true.");



PX 91, Robinson Dec. ¶¶ 19-20 (former telemarketer and telemarketing supervisor stating that all 5 call centers he worked at for Lifewatch used robocall also promising consumers free prescription discount savings card);

PX 93, Boling Dec. ¶ 22-23 ("Lifewatch directed Worldwide to offer certain "upsells" such as identity theft protection, security systems, and smoke alarms. Lifewatch had final approval on all upsells Worldwide offered… Lifewatch directed Worldwide to offer certain incentives such as coupons and prescription drug cards. It is my understanding that Lifewatch received a kickback on every prescription drug card the telemarketers upsold.").

**38. Defendants have been the targets of multiple lawsuits and governmental investigations since August 2012.**

*State of Indiana v. Elite Information Solutions Inc.*, Cause No. 49D06-1208-MI-032415 (Marion Sup. Ct. Ind., filed on August 16, 2012, amended Nov. 13, 2012);
*Whitman v. Lifewatch Corp.*, No. 4:12cv3765 (S.D. Tex. filed Dec. 31, 2012);
*Abramson v. Lifewatch Inc.*, No. 2:13cv1495 (W.D. Penn. removed Oct. 15, 2013);
*Shapiro v. Lifewatch*, *Inc.*, No. 2:13cv1496 (W.D. Penn. filed Oct. 16, 2013);
*Donaca v. Lifewatch, Inc.*, No. EDCV-13-2064-JGB (C.D. Cal. filed Nov. 8, 2013);
*Aronson v. Lifewatch, Inc.*, No. 2:13cv1624 (W.D. Penn. filed Nov. 13, 2013);
*Connor v. Lifewatch, Inc., et al.*, No. 2:13cv3507 (D.S.C. removed Dec. 17, 2013);
*Fitzhenry v. Lifewatch, Inc., et al.*, No. 2:13cv3508 (D.S.C. removed Dec. 17, 2013);
*Salam v. Lifewatch, Inc.*, No. 13-cv-09305 (N.D. Ill. filed Dec. 30, 2013);
*Todd v. Lifewatch, Inc., et al*, No. 1:14cv509 (N.D. Ill. Filed Jan. 23, 2014);
*Guiley v. Lifewatch USA*, No. 5:14cv350 (N.D. Ohio removed Feb. 18, 2014);
*Reynolds v. Lifewatch, Inc.*, No. 7:14cv3575 (S.D.N.Y. filed May 19, 2014);
*Bank v. Lifewatch, Inc., et al.*, No. 1:15-cv-02278-JG-VMS (E.D.N.Y. filed Apr. 22, 2015);
PX 1, Menjivar Dec. Att. K at 1 (Lifewatch response to Civil Investigative Demand by Vermont Attorney General);
 PX 1, Menjivar Dec. Att. K at 9-10 (Lifewatch providing list of pending cases and investigations relating to its telemarketing practices in which it was a target or defendant);
PX 1, Menjivar Dec. Att. L at 2 (Lifewatch response to Investigative Demand by Connecticut Dept. of Consumer Protection).

**39. The illegal conduct of Defendants and their telemarketers continued after Worldwide was shut down in January 2014.**

Dkt. 51-1 at 21, PX 81 Braver Dec. Att. C (robocall from Lifewatch telemarketer received on 8/10/15 stating "Because you were referred by your doctor or primary care physician, your medical alert system has already been paid for"; to opt out of the call, the robocall states "Press five to notify your health care provider you have refused shipment");
Dkt. 51-2 at 2-3, 8, PX 82, deLoca Dec. ¶ 4, Att. A (robocall received on 6/25/15 from Lifewatch telemarketer to consumer on DNC Registry and who had made repeated requests to be put on internal DNC list);
Dkt. 51-3 at 8, PX 83, Mey Dec. Att. A (robocall received from Lifewatch telemarkter on 7/14/15 to consumer on DNC Registry and who repeatedly requested to be put on Lifewatch's internal DNC list);
Dkt. 51-3 at 27, PX 83, Mey Dec. Att. B (robocall received from Lifewatch telemarkter on 7/29/15 to consumer on DNC Registry and who repeatedly requested to be put on Lifewatch's internal DNC list);
Dkt. 77-1 at 2-3, PX 86 Mey Dec. ¶¶ 3, 8 (consumer received robocall from Lifewatch telemarketer on 9/10/15, despite being on DNC Registry and making repeated requests to be put on Lifewatch's internal DNC List);
Dkt. 77-1 at 42, PX 86 Mey Dec. Att. E (consumer received robocall from Lifewatch telemarketer on 9/10/15 stating "Since you've already been referred to by a friend or family member, we have a system waiting to be shipped out to you.");





[redacted]

PX 91, Robinson Dec. ¶¶ 4-20 (former telemarketer and telemarketing supervisor stating that all 5 call centers he worked at for Lifewatch from April 2014 to June 2016 exclusively used robocalls, did not download DNC Registry updates, did not remove consumers phone numbers who asked to be removed from call lists, spoofed caller IDs, called cell phones, never had a sale rejected for any reason other than incorrect address information, and never sent Lifewatch any sales recordings except for the verification portion of the call);

PX 95, Declaration of Forest Horne ¶¶ 3- 5 (on 9/14/17, consumer received robocall to his cell phone from telemarketer who admitted he was working for Lifewatch; caller ID was spoofed, number was registered on DNC registry, and robocall said medical alert device was free).

**40.    Defendants have hired hundreds of telemarketers.**

Dkt. 15-1 at 10-11, 18, 21-22, PX 1, Menjivar Dec. Att. I (Lifewatch response to CID identifying more than 100 call centers Lifewatch had employed by June 5, 2014);



**41.    Defendants' agreements with their sellers expressly state or contemplate that the sellers would be engaged entirely or primarily on outbound telemarketing.**

LW-FTC-160-186 (Purchase Agreement with Tele America Response Inc., dated 9/15/15, requiring that "Seller" not contact any customer on any local, federal or state "do not call" registry, and containing more than 3 pages of compliance obligations, and no specific obligations for sale by direct mail, radio or television advertising, print advertising,  or door-to-door or in-person sales);

LW-FTC-708-731 (Virtue Point Marketing LLC, dated 6/30/14, requiring that "Seller" not contact any customer on any local, federal or state "do not call" registry, and containing more than 3 pages of compliance obligations, and no specific obligations for sale by direct mail, radio or television advertising, print advertising,  or door-to-door or in-person sales)

LW-FTC-756-780 (SHMS Marketing Solutions LLC, dated 8/27/15, requiring that "Seller" not contact any customer on any local, federal or state "do not call" registry, and containing more than 3 pages of compliance obligations, and no specific obligations for sale by direct mail, radio or television advertising, print advertising,  or door-to-door or in-person sales);

FTC-LW16-7310-7328 (6/12 Telemarketing Services Agreement with Trusted Lead Network,





[redacted]

[redacted]

**42. Defendants' competitors' agreements with their marketers do not focus on telemarketing.**

LW-FTC-01413 – 1439 (12/1/15 email from Isaac Cohen, broker for 2 sales offices Sirlin described at preliminary injunction hearing, attaching his contracts with Medical Guardian and Connect America, both containing single provision regarding possible telemarketing: sales company "agrees that, in fulfilling its duties and obligations hereunder, it will comply with all applicable laws and legal requirements, including any applicable consumer protection act, licensing requirements, telemarketing laws, not use any registered or trademarked key words….").

**43. Defendants' sales have been primarily as a result of telemarketing.**

FTC-LW09-2021 (9/29/11 email from Sirlin responding to broker email to Sirlin, copying lead generators and telemarketers, asking "if there are any states that LIFEWatch is not allowed to/or does not wish to market in utilizing outbound telemarketing?"; Sirlin responds "Absolutely every state and Canada.");

[redacted]

**44.    Defendants' "outside sellers" have been engaged almost exclusively in telemarketing.**

Dkt. 87-2 at 6, DX 2, Declaration of Sarai Baker ¶ 20 (executed and filed on Nov. 10, 2015) (stating that Lifewatch does not provide marketers with access to CRM database until after it has received signed and notarized affidavit from marketer);
LW-FTC-00234-256 (Purchase Agreement and Insertion Order entered into between Lifewatch and Prodigy Consulting Group executed on 8/26/15, on same day Prodigy Consulting swears that 0% of the accounts they have sold to Lifewatch originated through outbound telemarketing);
PX 91, Robinson Dec. ¶ 21 (former telemarketer and telemarketing supervisor stating that Lifewatch could listen to any active telemarketing call taking place at the call center, in addition to having access to real time reports);
Transcript Preliminary Injunction Hearing dated December 14, 2015, at 103-7 (Baker testifying that affidavits submitted to Lifewatch by "outside sellers" stating the percentage of customer accounts they obtained through "outbound telemarketing" were executed simultaneously with Purchase Agreements prior to when they began selling for Lifewatch);
PX 98, Transcript of Deposition of Sirlin on July 25, 2017, at 12-13 (Sirlin testifying that any customers purchasing Lifewatch medical alert devices or service as a result of television, radio, or internet advertising contact Lifewatch directly and not through outside marketers).

**45.    Defendants know they have been responsible for most telemarketing of PERS in the United States.**



**46.    At least 96.4% of Defendants' PERS sales since 2012 have resulted from telemarketing.**

PX 97, Al-Najjar Dec. ¶ 12 (

Dkt. 66 at 19-20, 26-27, PX 1, Menjivar Dec. Att. V (Redacted) (Lifewatch Profit & Loss statements for 2013 and January – August 2014, showing 96% of the total amount Lifewatch spent on "Advertising" went to "Outside Sellers");

PX 98, Transcript of Deposition of Sirlin on July 25, 2017, at 12-13 (Sirlin testifying that any customers purchasing Lifewatch medical alert devices or service as a result of television, radio, or internet advertising contact Lifewatch directly and not through outside marketers).

**47.    Defendants require that their telemarketers not disclose Defendants as the seller.**

Dkt. 24-10 at 3, PX 14, Hilgar Dec. ¶ 6 ("The telemarketers also were not allowed to disclose Lifewatch's name during telemarketing calls.");

FTC-LW09-1200 (8/2/12 email from Boling at Worldwide to Sirlin email confirming script changes, and noting that Worldwide is no longer using particular pseudonym at Lifewatch's request);



PX 91, Robinson Dec. ¶ 19 (former telemarketer and telemarketing supervisor stating that);

PX 93, Boling Dec. ¶ 39-40 (Lifewatch instructed call centers to never use Lifewatch's name, "so Lifewatch could deny a connection between it and the call centers if a consumer inquired…[d]uring multiple telephone conversations, Sirlin expressed his view that Worldwide telemarketing on behalf of Lifewatch was structured to, in his words, "insulate" Lifewatch from any legal liability for the violations.");

PX 93, Boling Dec. ¶ 41 (Lifewatch aware that caller ID number "was not the actual callback number for Worldwide or Lifewatch. I participated in several telephone conversations with Sirlin and other Lifewatch personnel during which they said they did not care what description appeared on the caller identification for Worldwide telemarketing calls as long as it did not trace back to Lifewatch.").

**48.    Defendants manage the terms of deals offered by their telemarketers to consumers.**

Dkt. 26-16 at 13, 22, PX 80 Einikis Dec. Att. A (Royal Holdings of America/Payless script including restaurant gift card upsell, "prescr. Card (Rx)" upsell, $3000 grocery coupon upsell);

Dkt. 26-16 at 66, Att. D (Payless script including prescription savings card upsell);

Dkt. 96-1 at 54 (PX 89, Einikis Dec. Att. A) (3/28/14 email from Lifewatch employee forwarding Sirlin 3/26/14 email, copying May and Baker, to telemarketer instructing telemarketing room on upsells, including restaurant.com, grocery coupons, pharmacy discount cards, and smoke alarms);

FTC-LW09-1212 – 1215 (8/6/12 email from Sirlin to Worldwide and Steinmetz sending sample Lifewatch script for Connect America, including claim that system is free, that "billing cycle doesn't start until you receive the system and activate it," and instruction that telemarketer "PITCH UPSELL");

FTC-LW09-1279 (8/10/12 email from Worldwide email to Sirlin and Steinmetz including certificates and directions on how to redeem grocery coupon upsells);

FTC-LW09-1280 (8/11/12 email from Sirlin to Boling at Worldwide asking whether they have discontinued particular upsell, offering change in commissions relating to upsell, and suggesting change in script);

FTC-LW09-1302 (9/10/12 email from Worldwide to Sirlin responding to request for script relating to grocery coupon upsell);

FTC-LW09-1303 (9/10/12 email from Sirlin to Worldwide requesting script relating to grocery coupon upsell);

FTC-LW09-1304 (9/11/12 email from Worldwide email to Sirlin, Steinmetz, and other Lifewatch employees, proposing script relating to grocery coupon upsell);

FTC-LW09-1306 (9/11/12 email from Worldwide email to Sirlin, Baker, and Steinmetz, with proposed letter going to grocery coupon upsell customers of Lifewatch);

FTC-LW09-1379 - 80 (9/25/12 Sirlin email to Worldwide stating "please stop the coupons for NOW-we can't determine which go to them etc etc-so for all," forwarding threat from Connect America president that they will "terminate" program because of complaints);

FTC-LW09-1381 – 82 (9/28/12 email from Sirlin to Worldwide suggesting alternative upsell, and forwarding email from Connect America president to Sirlin and Steinmetz saying that "NO matter what you say Les, people interpret the offer differently");

FTC-LW09-1384 – 85 (9/30/12 email from Sirlin to Worldwide forwarding request from Connect America COO to Sirlin and Steinmetz for list of customers promised grocery vouchers);

FTC-LW09-1386 (9/30/12 Worldwide internal email to Boling attaching 9/30/12 email from Lifewatch to Worldwide stating they "are being flooded with calls regarding the coupons that are being promised");

FTC-LW09-1389 (10/3/12 email from Sirlin to Worldwide stating that they should change upsell until Connect America is "comfortable with coupons");

FTC-LW09-1427 (10/16/12 email from Steinmetz to Boling at Worldwide, Sirlin, and Baker, describing problems with grocery coupon upsells);

FTC-LW09-1428 (10/16/12 email from Boling at Worldwide to Sirlin, Steinmetz, and Baker, providing detailed explanation of grocery coupon upsell);

FTC-LW09-1430 – 32 (10/20/12 Sirlin email to Boling at Worldwide, copying Baker, regarding recordings for Phillips sales indicating problems with gift card vouchers and robocalls);

FTC-LW09-1434 (10/26/12 email from Sirlin to Worldwide, copying Steinmetz, saying must stop grocery coupon upsell for Connect America because they are "giving us shit");

FTC-LW09-1493 (3/22/13 email from Baker to Boling at Worldwide instructing Worldwide to immediately start "pitching Hydroxatone" as upsell. "The company is ready to start working with us on this");

FTC-LW09-1515- 20 (4/16/13 email from Baker to Worldwide, providing information and script for Hydroxatone upsell);

FTC-LW09-1542 (5/31/13 email from Sirlin to Worldwide, copying May, suggesting upsells and possible pricing options; "Dave doesn't need the extra cash- I am just trying to think of ways to make more upfront money for you guys with out the pressure of increasing sales");

FTC-LW09-1564 (6/19/13 Sirlin email to Worldwide suggesting upsells and pricing opportunity);



PX 93, Boling Dec. ¶ 22-23 ("Lifewatch directed Worldwide to offer certain "upsells" such as identity theft protection, security systems, and smoke alarms. Lifewatch had final approval on all upsells Worldwide offered... Lifewatch directed Worldwide to offer certain incentives such as coupons and prescription drug cards. It is my understanding that Lifewatch received a kickback on every prescription drug card the telemarketers upsold.").

**49.     Defendants have instructed their telemarketers to use sales scripts provided by Defendants.**

Dkt. 16-1 at 2, PX 1, Menjivar Dec. Att. Q (Lifewatch contract with MD247.COM, INC., dated 9/24/12, providing that "Telemarketer shall only use scripts identified by [Lifewatch] as approved, which approval shall be in [Lifewatch's] sole discretion");

FTC-LW09-1029-41 (4/5/12 email from broker to Worldwide, copying Lifewatch, providing Call Center Welcome Package, including sales script, rebuttals, and Frequently Asked Questions script says Lifewatch USA and includes endorsement misrepresentations; FAQ says equipment is provided "absolutely free"; new "Quality Control section" states "Scripts and Rebuttals must be approved by LifeWatch USA");

FTC-LW09-1171-1190 (7/8/12 email from Modugno to Boling, copying Sirlin, Baker, and Steinmetz, enclosing Telemarketing Agreement with Worldwide "drawn up by Lifewatch" stating that Worldwide "shall only use scripts identified by [Lifewatch] as approved");

FTC-LW09-1237 – 1255 (7/9/12 email from Worldwide enclosing signed version of Worldwide Telemarketing Agreement stating that "all contact between the Telemarketer and any person on

behalf of [Lifewatch] shall be primarily by outbound telemarketing" and Worldwide "shall only use scripts identified by [Lifewatch] as approved.");
FTC-LW09-1361 – 1378 (9/25/12 email from Baker to Worldwide, copying Sirlin, enclosing Telemarketing Services Agreement, providing that "all contact between the Telemarketer and any person on behalf of [Lifewatch] shall be primarily by outbound telemarketing," and requiring Worldwide to "only use scripts identified by [Lifewatch] as approved, which approval shall be in the company's sole discretion");
FTC-LW09-1515- 20 (4/16/13 email from Baker to Worldwide, providing information and script for Hydroxatone upsell);
FTC-LW09-2004-5 (8/26/11 email from Baker to broker, copying telemarketers, approving Call Center Welcome Package and scripts, after stating in 8/24/11 email that Sirlin "definitely wants to get this rolling. What else are you needing/missing from us that I can help with?");
FTC-LW16-55 (10/25/11 email from Baker to broker, copying telemarketer, approving Spanish language script with one change);
[redacted]





PX 93, Boling Dec. ¶ 35 ("Lifewatch provided all of the original telemarketing scripts to Worldwide, and Worldwide had to get Lifewatch's approval before making any changes. At various times the call centers suggested edits and modifications to the scripts, but Lifewatch would not allow the call centers to use any language until Lifewatch approved it.").

**50. Defendants have instructed their telemarketers who to call and in which states they should call consumers.**

FTC-LW09-1297 (8/28/12 email from Sirlin stating that Worldwide should stop telemarketing in Pennsylvania because of complaints);
FTC-LW09-1538 (5/22/13 email from Sirlin to Worldwide instructing Worldwide "Also Wisconsin is giving us trouble-I would not sell there," and forwarding email from Lifewatch customer service to Sirlin, May, and Baker, about "John" robocalls from 5 spoofed caller IDs; "We, at Lifewatch USA, do not make cold calls, do not call out to anyone. Blah blah blah-He finally believed me.");
FTC-LW09-2269 (12/5/13 email from Sirlin to broker, Modugno, copying another Lifewatch employee, noting that Lifewatch is no longer supplying telemarketing leads to US Digest);
FTC-LW09-2269 (12/5/13 email from Sirlin to broker, Modugno, copying another Lifewatch employee, noting that Lifewatch is no longer supplying telemarketing leads to US Digest);
FTC-LW17-292 - 293, Deposition Transcript of Matthew Eggen by the Texas Attorney General (broker stating that Lifewatch purchased and supplied leads to telemarketing room);
FTC-LW17-402 - 405, Deposition Transcript of Housein Karachopan (Lifewatch broker, Eggen's partner, stating that Lifewatch purchased and supplied leads for at least two telemarketing rooms);
PX 91, Robinson Dec. ¶ 6 (former telemarketer and telemarketing supervisor stating that Vandewater, May and Sirlin discussed what states telemarketer should call).

**51. Defendants have managed the internal operations of their telemarketers.**

FTC-LW09-1065 (4/25/12 email from Steinmetz to Worldwide, copying multiple Lifewatch employees, including Sirlin, offering incentive from Lifewatch for top sales person at call center, and promising to gather information from "our other call centers");

FTC-LW09-1150-1 (6/27/12 email from Sirlin to Boling at Worldwide promising discussion with Worldwide and Steinmetz the following day "about all things," Connect America deals, billing issues, and high returns);

FTC-LW09-1152 (7/2/12 email from Sirlin to Worldwide and Steinmetz noting rise in returns when they discontinued follow-up calls after orders, promising further discussion, and suggesting solutions);

FTC-LW09-1191 (7/18/12 email from Boling at Worldwide to Sirlin and Steinmetz regarding details of residuals, back payments, and upcoming wire transfer);

FTC-LW09-1237 – 1255 (7/9/12 email from Worldwide enclosing signed version of Worldwide Telemarketing Agreement stating that "all contact between the Telemarketer and any person on behalf of [Lifewatch] shall be primarily by outbound telemarketing" and Worldwide "shall only use scripts identified by [Lifewatch] as approved.");

FTC-LW09-1429 (10/16/12 email from Sirlin to Worldwide, copying Baker, coaching Boling on how to answer questions bank will ask in connection with their telemarketing for Lifewatch);

PX 91, Robinson Dec. ¶ 6 (former telemarketer and telemarketing supervisor stating that Vandewater, May and Sirlin discussed changing scripts, what states telemarketer should call, changing autodialer or caller ID, and changing outgoing robocall message).

**52.    Defendants' telemarketers enter customer information directly into Defendants' CRM.**

Dkt. 87-2 at 8, DX 2, Declaration of Sarai Baker ¶ 30 (executed and filed on Nov. 10, 2015) (telemarketers given access to Lifewatch CRM to enter customer information);

FTC-LW16-146 (3/5/12 email from Baker to Modugn regarding getting CRM log ins for Worldwide);



**53.    Defendants have required telemarketers strictly follow confirmation scripts provided by Defendants.**

Dkt. 22-1 at 8-9, PX 4, Velez Dec. ¶¶ 25-29, Atts. S-AA, Dkt. 22-3 at 34-77 (Senior Medical Alert systems application stating it is attaching all sales scripts but including only scripts describing Lifewatch product and service, including Lifewatch's dba, Medical Alarm, in confirmation script, employees confirming that calls were all on behalf of Lifewatch, and license being changed to include Sirlin and May as officers);

Dkt. 87-2 at 5-6, DX 2, Declaration of Sarai Baker ¶¶ 18, 19 (executed and filed on Nov. 10, 2015) (stating that all Lifewatch marketers must sign an affidavit affirming that they will "properly recite the ACH or Credit Card Processing script" provided by Defendants);

Dkt. 87-3 at 2-3, DX3, Vandewater Dec. ¶¶ 3,4 (stating that she listens to audiotapes provided by Lifewatch marketers to determine if they comply with Lifewatch guidelines, including "properly reciting the ACH or Credit Card Processing script" and that her understanding is that Lifewatch terminates its contracts with those failing to do so);

FTC-LW09-1287 - 1293 (8/27/12 email from Sirlin to Worldwide detailing program for Phillips, attaching "whole script," including claim that their system is "recommended by over 65,000 healthcare professionals," and confirmation script);

FTC-LW09-1436 – 39 (11/19/12 email from Medguard to Boling at Worldwide and Baker, copying Sirlin, enclosing quality control script to Worldwide for live transfers);

FTC-LW09-1451 – 58 (12/3/12 email from Medguard to Worldwide providing script and activation guide);

FTC-LW09-1462 – 63 (2/8/13 email from Baker email to Worldwide, copying Sirlin, enclosing Activation Script);



Transcript Preliminary Injunction Hearing dated December 14, 2015, at 91 (Baker testifying that Lifewatch provides ACH and verification scripts to telemarketers because it is required to do so pursuant to NACHA guidelines.).

**54.     Defendants' telemarketers have live-transferred calls to Defendants for verification.**

Dkt. 21-1 at 36, PX 2, France Dec. Att. B ("Senior Life Support" telemarketer transferred call for confirmation to Medical Alarm Systems, a Lifewatch dba);

Dkt. 21-1 at 87, PX 2, France Dec. Att. B ("Senior Life Support" telemarketer transferred call for confirmation to Medical Alarm Systems, a Lifewatch dba);

Dkt. 21-2 at 59-60, Tyndall Dec. ¶ 4, Att. B (telemarketer stated credit card would be billed by "Medical Alarm," a Lifewatch dba);

Dkt. 24-27 at 6, PX 31 deLoca Dec. ¶ 15 ("Senior Life Support" telemarketer transferred call to Jennifer from "Medical Alarms," a Lifewatch dba);

Dkt. 25-9 at 4, PX 41, James Dec. ¶ 8 (Telemarketer from Senior Life Support transferred call to someone identifying herself as Laverne from the confirmation department at Lifewatch.);

Dkt. 25-9 at 4, Dkt. 17-2 at 72, PX 41, James Dec. ¶ 7 ("Medical Alarms" telemarketer transferred call to Lifewatch for confirmation);

Dkt. 25-9 at 4, Dkt. 18-1 at 26-30, PX 41, James Dec. ¶ 8 ("Senior Life Support" telemarketer transferred call to Medical Alarms, Lifewatch's dba, for confirmation);

Dkt. 51-3 at 3, 18, PX 83, Mey Dec. ¶ 4, Att. A ("Medical Alerts" telemarketer transferred call for confirmation to Med Alarms, a Lifewatch dba);

Dkt. 51-3 at 3-4, 41, PX 83, Mey Dec. ¶ 5, Att. B ("Med Alert Assistance" telemarketer transferred call for confirmation to Medical Alarms, a Lifewatch dba);

Dkt. 77-1 at 4, 61, 66-69, PX 86, Mey Dec. ¶ 9, Att. F ("Agent Med Alert" telemarketer said credit card would be charged by Medical Alarms, a Lifewatch dba, and transferred call to Lifewatch for confirmation);

Dkt. 96-1 at 19, PX 89, Einikis Dec. Att. A (12/23/14 email from Vandewater responding to email from Mark Nonsant, Director of Operations at Payless, in which Nonsant states that they "are no longer verifying on our end," but have begun "doing the live transfer.").

FTC-LW09-1440 (11/26/12 Baker email to Boling at Worldwide asking if live transferring to Medguard yet);

PX 92, James Supp. Dec. ¶ 6 ("Medical Alert" telemarketer transferred call to representative from "MedWatch" for confirmation; MedWatch representative said distribution center has same physical address as Lifewatch);

Transcript Preliminary Injunction Hearing dated December 14, 2015, at 82 (Baker testifying that all sales calls are transferred to Medguard to verify the customer information and "that the customer understands they're going to be charged immediately.").

**55.    Defendants have represented to telemarketers that brokers such as Leslie Steinmetz, Aaron Modugno, and Matt Eggen are authorized to act on its behalf.**

FTC-LW09-1024 (3/8/12 email from Lifewatch broker to Worldwide, copying Lifewatch, noting that Lifewatch customer service sent him an email that "they were receiving a lot of next day cancels.");

FTC-LW09-1042 (4/16/12 email from Boling at Worldwide to Steinmetz confirming that Worldwide has and will continue to work exclusively for Lifewatch responding to 4/16/12 email from Steinmetz arranging for new insertion order from Lifewatch, negotiating call center commission, and seeking confirmation of exclusivity; Steinmetz signed email as "Director LIFE WATCH USA");

FTC-LW09-1065 (4/25/12 email from Steinmetz to Worldwide, copying multiple Lifewatch employees, including Sirlin, offering incentive from Lifewatch for top sales person at call center, and promising to gather information from "our other call centers");

FTC-LW09-1081-1099 (5/3/12 email from broker to Worldwide forwarding various lawsuits and threats to sue Lifewatch relating to robocalling, failure to identify seller, caller ID spoofing);

FTC-LW09-1100 (5/3/12 email from Worldwide to broker responding to email forwarding various lawsuits and threats to sue Lifewatch relating to robocalling, failure to identify seller, caller ID spoofing);

FTC-LW09-1131 (5/23/12 email from Worldwide to Steinmetz and Sirlin, sent at Steinmetz's request, confirming new commission payouts for Worldwide);

FTC-LW09-1171-1190 (7/8/12 email from Modugno to Boling at Worldwide, copying Sirlin, Steinmetz, and Baker, forwarding contract and retroactive insertion order "drawn up by Lifewatch");

FTC-LW09-1202 (8/5/12 email from Steinmetz to Hilgar at Worldwide, and Sirlin, confirming telephone call to finalize script for First Street/Phillips);

FTC-LW09-1205 - 9 (8/6/12 email from Steinmetz forwarding First Street/Phillips script to Worldwide and Sirlin);

FTC-LW09-1212 – 1215 (8/6/12 email from Sirlin to Worldwide and Steinmetz sending sample Lifewatch script for Connect America, including claim that system is free, that "billing cycle doesn't start until you receive the system and activate it," and instruction that telemarketer "PITCH UPSELL");

FTC-LW09-1219 (8/7/12 email from Steinmetz to Worldwide and Sirlin, instructing Worldwide to remove word "free" from script);

FTC-LW09-1381 – 82 (9/28/12 email from Sirlin to Worldwide suggesting alternative upsell, and forwarding email from Connect America president to Sirlin and Steinmetz saying that "NO matter what you say Les, people interpret the offer differently");

FTC-LW09-1427 (10/16/12 email from Steinmetz to Boling at Worldwide, Sirlin, and Baker, describing problems with grocery coupon upsells);

FTC-LW09-2237-2238 (9/10/13 email from Sirlin to broker, Modugno, copying May, stating that it would be a conflict for broker to work for any other seller of medical alert sales, even if not telemarketing);



PX 98, Transcript of Deposition of Sirlin on July 25, 2017, at 48 (Sirlin testifying that he "delegated to Les Steinmetz" the task of dealing with Worldwide).

**56.    Worldwide were expressly exclusive agents of Defendants for the sales of PERS.**

Dkt. 24-10 at 4-5, PX 14, Hilgar Dec. ¶ 11 (all of the telemarketing conducted by Worldwide and its related entities was on behalf of Lifewatch);

Dkt. 24-11 at 2-3, PX 15, Settecase Dec. ¶ 5 (Worldwide medical alert telemarketing was exclusively on behalf of Lifewatch);

Dkt. 24-12 at 3, PX 16, Kane Dec. ¶ 4 (court-appointed Receiver concluded that Lifewatch was the only medical alert service provider that ever paid Worldwide);

Dkt. 101-3 at 8-9 (Transcript of December 2, 2015 Deposition of Brick Kane) (court-appointed Receiver found no evidence showing Worldwide worked for any medical alert provider other than Lifewatch);

FTC-LW09-1042 (4/16/12 email from Boling at Worldwide to Steinmetz confirming that Worldwide has and will continue to work exclusively for Lifewatch);

FTC-LW09-1148 (6/26/12 email from Sirlin to Worldwide, forwarding earlier email in which Sirlin describes Worldwide to accountant as "our biggest marketing partner");
FTC-LW09-1191 (7/18/12 email from Boling at Worldwide to Sirlin and Steinmetz regarding details of residuals, back payments, and upcoming wire transfer; promising followup email confirming that Worldwide will work exclusively for Lifewatch);
FTC-LW09-1192 (7/18/12 email from Boling at Worldwide to Sirlin and Steinmetz confirming "express written commitment" to working exclusively with Lifewatch on medical alerts for three years);



PX 93, Declaration of Roderic Boling ¶ 44 ("Lifewatch requested that Worldwide telemarket exclusively for Lifewatch.").

**57.      Worldwide telemarketing resulted in at least 93,746 customer accounts for Defendants, 39,501 customer accounts Defendants sold to Connect America, and 4000 customer accounts Defendants sold to Phillips Lifeline.**

Dkt. 24-9 at 3-4, PX 13 Gross Dec. ¶ 9 (Connect America President stating that Lifewatch represented that its own employees were conducting the telemarketing on accounts sold to Connect America);
FTC-LW09-1147 (6/26/12 email from Sirlin to Boling at Worldwide stating that he will handle Connect America "billing issues," and directing customer service director to work with Worldwide on customer retention);
FTC-LW09-1150-1 (6/27/12 email from Sirlin to Boling at Worldwide promising discussion with Worldwide and Steinmetz the following day "about all things," Connect America deals, billing issues, and high returns);
FTC-LW09-1193-96 (7/25/12 email from Worldwide to Steinmetz and Sirlin enclosing Phillips script);
FTC-LW09-1201 (8/2/12 email from Sirlin to Worldwide, copying Steinmetz, confirming that he forwarded script to Connect America);
FTC-LW09-1202 (8/5/12 email from Steinmetz to Hilgar at Worldwide, and Sirlin, confirming telephone call to finalize script for First Street/Phillips);

FTC-LW09-1205 - 9 (8/6/12 email from Steinmetz forwarding First Street/Phillips script to Worldwide and Sirlin);

FTC-LW09-1212 – 1215 (8/6/12 email from Sirlin to Worldwide and Steinmetz sending sample Lifewatch script for Connect America, including claim that system is free, that "billing cycle doesn't start until you receive the system and activate it," and instruction that telemarketer "PITCH UPSELL");

FTC-LW09-1286 (8/23/12 email from Sirlin to Worldwide, copying Steinmetz and Baker, detailing program for Phillips, including price, volume, terms, procedures, payment, and confirmations);

FTC-LW09-1287 - 1293 (8/27/12 email from Sirlin to Worldwide detailing program for Phillips);

FTC-LW09-1297 (8/28/12 email from Sirlin to Worldwide asking whether script still says Lifewatch, Lifewatch-Connect America, or Medical Alarm company, and whether it still says device is free; states that Worldwide should stop telemarketing in Pennsylvania because of complaints);

FTC-LW09-1300 – 1 (8/31/12 email from Steinmetz to Boling at Worldwide, copying First Street representatives, and Baker and Oliveri at Lifewatch, stating that Worldwide should direct questions to Lifewatch about commissions for sales done for First Street since First Street's relationship was with Lifewatch);

FTC-LW09-1358 (9/20/12 email from Sirlin to Worldwide, copying Baker and another Lifewatch employee, regarding order taking, prices, timing of charges, limiting volume of sales, and payment from Phillips);

FTC-LW09-1379 - 80 (9/25/12 Sirlin email to Worldwide stating "please stop the coupons for NOW-we can't determine which go to them etc etc-so for all," forwarding threat from Connect America president that they will "terminate" program because of complaints);

FTC-LW09-1381 – 82 (9/28/12 email from Sirlin to Worldwide suggesting alternative upsell, and forwarding email from Connect America president to Sirlin and Steinmetz saying that "NO matter what you say Les, people interpret the offer differently");

FTC-LW09-1384 – 85 (9/30/12 email from Sirlin to Worldwide forwarding request from Connect America COO to Sirlin and Steinmetz for list of customers promised grocery vouchers);

FTC-LW09-1387 (10/1/12 email from Sirlin to Worldwide including guidelines and limits for Connect America and Phillips sales);

FTC-LW09-1389 (10/3/12 email from Sirlin to Worldwide stating that they should change upsell until Connect America is "comfortable with coupons");

FTC-LW09-1401 (10/8/12 email from Baker to Worldwide and Steinmetz, stating that Sirlin wants Boling, Mark Harmon, and Steinmetz on call with him with Connect America to discuss future partnership);

FTC-LW09-1433 (10/22/12 email from Sirlin to Worldwide regarding Phillips sales, Phillips capping sales at "a little over" 4000 orders);

FTC-LW09-1430 – 32 (10/20/12 Sirlin email to Boling at Worldwide, copying Baker, regarding recordings for Phillips sales indicating problems with gift card vouchers and robocalls);

FTC-LW09-1434 (10/26/12 email from Sirlin to Worldwide, copying Steinmetz, saying must stop grocery coupon upsell for Connect America because they are "giving us shit");

FTC-LW09-1461 (1/9/13 email from Sirlin to May and Boling at Worldwide regarding Connect America retaining "no good deals" but "still charge us back – WTF");

FTC-LW09-1546 - 1550 (6/10/13 email from Sirlin to Worldwide, forwarding 6/10/13 email from Connect America CEO to Sirlin and Roman, regarding 2 lawsuits and additional BBB inquiries related to robocalling tied to Lifewatch; ordering Lifewatch "to put a stop to these illegal calls . . . These reckless actions by this call center are costing us money in legal and labor fees and damaging the industry.");

PX 94, Gross Suppl. Dec.  ¶ 3 (Connect America purchased 39,501 accounts obtained through telemarketing from Lifewatch from May 2012 to April 2013);

PX 97, Al-Najjar Dec. ¶ 14 (Defendants report 93,746 customers fromWorldwide telemarketing, not including any customers resulting from US Affiliates' telemarketing).

## 58.   Telemarketers other than Worldwide have identified Defendants as the only PERS provider for whom they telemarket.

Dkt. 22-1 at 6, PX 4, Velez Dec. ¶¶ 16 - 17, Atts. J-L, Dkt. 22-2 at 67-105 (U.S. Digest LLC application stating it is attaching all sales scripts but including only Lifewatch Call Center Welcome Packages);

Dkt. 22-1 at 7, PX 4, Velez Dec. ¶¶ 19-21, Atts. M-O, Dkt. 22-2 at 106-112, 22-3 at 1-8 (Multilevel Marketing LLC application listing Life Watch as a fictitious name it uses and stating it is attaching all sales scripts but including only Lifewatch script);

Dkt. 22-1 at 8, PX 4, Velez Dec. ¶ 22, Atts. P-R, Dkt. 22-3 at 9-33 (Direct Agent Response, Inc. application stating it is attaching all sales scripts and information sent to purchaser, but including only Senior Life Alarm script describing Lifewatch product and service, and Lifewatch subscriber forms and contract);

Dkt. 22-1 at 8-9, PX 4, Velez Dec. ¶¶ 25-29, Atts. S-AA, Dkt. 22-3 at 34-77 (Senior Medical Alert systems application stating it is attaching all sales scripts but including only scripts describing Lifewatch product and service, including Lifewatch's dba, Medical Alarm, in confirmation script, employees confirming that calls were all on behalf of Lifewatch, and license being changed to include Sirlin and May as officers);

Dkt. 22-1 at 10-11, PX 4, Velez Dec. ¶¶ 30-33, Atts. BB-FF, Dkt. 22-3 at 78-123 (TMI Marketing Group application stating it is attaching all sales scripts but only including multiple scripts identifying seller as Lifewatch, and listing Lifewatch as only company for which it would telemarket);

Dkt. 22-1 at 11-12, PX 4, Velez Dec. ¶¶ 34-36, Att. GG, Dkt. 22-3 at 124-130 (Oasis Money Group LLC operating from same location as at least three other Lifewatch telemarketers, Payless Solutions Inc., Payless Soutions Enterprises LLC, and Miranda Money Group LLC, using script describing Lifewatch product and service, and principal and employees admitted to telemarketing for Lifewatch);

Dkt. 22-1 at 12, PX 4, Velez Dec. ¶¶ 37-39, Atts. HH-II, Dkt. 22-3 at 131-141 (Payless Solutions Inc., a/k/a Global Marketing Enterprises, Inc., operating out of same location as at least three other Lifewatch telemarketers, Oasis Money Group LLC, Payless Solutions Enterprises LLC, and Miranda Money Group LLC; application stating it is attaching all sales scripts but including only one script for medical alert devices describing Lifewatch product and service);

Dkt. 22-1 at 12-13, PX 4, Velez Dec. ¶¶ 40-41, Atts. JJ-KK, Dkt. 22-3 at 142-157 (Payless Solutions Enterprises LLC operating out of same location as at least three other Lifewatch telemarketers, Oasis Money Group LLC, Payless Solutions Inc., and Miranda Money Group

LLC; application stating it is attaching all sales scripts but including only one script for medical alert devices describing Lifewatch product and service);

Dkt. 22-1 at 13, PX 4, Velez Dec. ¶¶ 42-43, Atts. LL-PP, Dkt. 22-3 at 158-173, Dkt. 23-1 at 1-22 (Miranda Money Group LLC operating out of same location as at least three other Lifewatch telemarketers, Oasis Money Group LLC, Payless Solutions Inc., and Payless Solutions Enterprises LLC; application stating it is affiliated with Lifewatch Inc., and that "All fulfillments are done by Lifewatch Inc."; application states it is attaching all sales scripts but includes only one script for medical alert devices describing Lifewatch product and service; FAQs describe Lifewatch product and service; only ACH payment authorization script specifies Lifewatch Inc. as entity making debit);

Dkt. 22-1 at 14, PX 4, Velez Dec. ¶¶ 44-45, Atts. QQ-RR, Dkt. 23-1 at 23-47 (Personal Security Shopper Inc., d/b/a MD24/7.com, application states it uses Life Watch as a fictitious name; application stating it is attaching all sales scripts but only including Lifewatch Call Center Welcome Package);

Dkt. 22-1 at 14-15, PX 4, Velez Dec. ¶¶ 46-48, Atts. SS-VV, Dkt. 23-1 at 48-89 (Total Security Vision Inc. application stating it is attaching all sales scripts but including only scripts and FAQs describing Lifewatch product and service);

Dkt. 22-1 at 15-17, PX 4, Velez Dec. ¶¶ 49-54, Atts. WW-EEE, Dkt. 23-1 at 90-150 (Alertlink application stating it is attaching all sales scripts but including only scripts and FAQs describing Lifewatch product and service; parent company's admission that it is "Affiliated with Lifewatch-USA" and listing Lifewatch's address as its principal place of business);

Dkt. 22-1 at 17, PX 4, Velez Dec. ¶¶ 55-58, Atts. FFF-HHH, Dkt. 23-1 at 151-162 (Live Response Agent Inc. application stating that Life Watch USA is its parent and its fictitious name, and stating it is attaching all sales scripts but including only scripts describing Lifewatch product and service);

Dkt. 94-3 at 2, PX 88, Hall Dec. ¶ 3 (QCSS never did business with any other medical alert company);

FTC-LW09-2237-2238 (9/10/13 email from Sirlin to broker, Modugno, copying May, stating that it would be a conflict for broker to work for any other seller of medical alert sales, even if not telemarketing);

FTC-LW17-114, Deposition Transcript of Alberto Montes by Office of Texas Attorney General (owner of call center Medco Networks testifying that they sold medical alert devices exclusively for Lifewatch);

PX 91, Declaration of Michael Robinson ¶¶ 3-5, 7 (former telemarketer and telemarketing supervisor stating that Alertlink in Margate, Florida, Agent Answering Assistance and Better Life Systems in Fort Lauderdale, Florida, and Nationwide Ventures in Las Vegas, sold medical alert devices exclusively for Lifewatch; Constant Connectivity in Altamonte Springs, Florida, sold for a different company also, but alternated weeks so they were never marketing for both during the same week).

**59.     Defendants have drafted and edited the scripts used by their telemarketers in the sale of PERS.**

Dkt. 14-3 at 52-53, PX1, Menjivar Dec. Att. B (6/10/13 email from Baker at Lifewatch to Worldwide attaching new script guidelines);

Dkt. 26-11 at 3-4, 6, Small Dec. ¶ 6 and Ex. A (10/4/12 email from Lifewatch employee to Connect America, confirming that Lifewatch is "updating the script" for all its telemarketers).

Dkt. 26-12 at 4, PX 76, Steinmetz Dec. ¶ 6 (Lifewatch broker stating that "LifeWatch reviewed and approved scripts that were used by its telemarketers.");

Dkt. 96-1 at 19, PX 89, Einikis Dec. Att. A (12/23/14 email from Vandewater responding "Not a problem, thank you," to email from Mark Nonsant, Director of Operations at Payless, in which Nonsant writes, "[W]e are revising our sales script. As soon as it's done, I will send it to you for your approval.").

Dkt. 96-1 at 46-47, PX 89, Einkis Dec. Att. A (6/5/14 email from Vandewater, attaching revised sales script for Payless, forwarding earlier email in which she explains "I took that one line out about billing but I added a few things where they are saying its [sic] free (its [sic] free to use) so that avoids confusion with the customers and avoid compliance issues"; script repeats that system is FREE multiple times);

Dkt. 100-4 at 65, 77, 81, Deposition Transcript of Leslie Steinmetz (Lifewatch approved all scripts used by Worldwide; "Sirlin and I would look at scripts, and he would do the final approval"; Sirlin provided scripts to Steinmetz and "used to write scripts as well");

FTC-LW09-1025-27 (3/27/12 Worldwide email to Modugno stating that "All of the scripts that we use were provided to us from Lifewatch");

FTC-LW09-1026-27 (Worldwide email to broker stating that "All of the scripts that we use were provided to us from Lifewatch");

FTC-LW09-1029-41 (4/5/12 email from broker to Worldwide, copying Lifewatch, providing Call Center Welcome Package, including sales script, rebuttals, and Frequently Asked Questions script says Lifewatch USA and includes endorsement misrepresentations; FAQ says equipment is provided "absolutely free"; new "Quality Control section" states "Scripts and Rebuttals must be approved by LifeWatch USA");

FTC-LW09-1043-56 (same, dated 4/20/12, including updated script stating "you can cancel at any time");

FTC-LW09-1067-80 (same, dated 5/2/12, including updated script);

FTC-LW09-1103-16 (same, dated 5/10/12, updating script);

FTC-LW09-1117-30 (same, dated 5/22/12, updating script, adding upsells);

FTC-LW09-1132-1145 (same, dated 5/31/12);

FTC-LW09-1153-1170 (same, dated 7/5/12);

FTC-LW09-1171-1190 (7/8/12 email from Modugno to Boling, copying Sirlin, Baker, and Steinmetz, enclosing Telemarketing Agreement with Worldwide "drawn up by Lifewatch" stating that Worldwide "shall only use scripts identified by [Lifewatch] as approved");

FTC-LW09-1193-96 (7/25/12 email from Worldwide to Steinmetz and Sirlin enclosing Phillips script);

FTC-LW09-1198 (8/1/12 email from Boling at Worldwide to Sirlin stating "we have made recent modifications in the script per your request" and pulling recordings to send directly to Sirlin);

FTC-LW09-1199 (8/1/12 email from Sirlin to Worldwide and Steinmetz making detailed changes in script);

FTC-LW09-1200 (8/2/12 email from Boling at Worldwide to Sirlin email confirming script changes);

FTC-LW09-1201 (8/2/12 email from Sirlin to Worldwide, copying Steinmetz, confirming that he forwarded script to Connect America);

FTC-LW09-1202 (8/5/12 email from Steinmetz to Hilgar at Worldwide, and Sirlin, confirming telephone call to finalize script for First Street/Phillips);

FTC-LW09-1205 - 9 (8/6/12 email from Steinmetz forwarding First Street/Phillips script to Worldwide and Sirlin);

FTC-LW09-1212 – 1215 (8/6/12 email from Sirlin to Worldwide and Steinmetz sending sample Lifewatch script for Connect America, including claim that system is free, that "billing cycle doesn't start until you receive the system and activate it," and instruction that telemarketer "PITCH UPSELL");

FTC-LW09-1219 (8/7/12 email from Steinmetz to Worldwide and Sirlin, instructing Worldwide to remove word "free" from script);

FTC-LW09-1220-1236 (same, dated 8/9/12);

FTC-LW09-1237 – 1255 (7/9/12 email from Worldwide enclosing signed version of Worldwide Telemarketing Agreement stating that "all contact between the Telemarketer and any person on behalf of [Lifewatch] shall be primarily by outbound telemarketing" and Worldwide "shall only use scripts identified by [Lifewatch] as approved.");

FTC-LW09-1282 – 85 (8/23/12 email from Worldwide to Sirlin forwarding proposed script, including claim that their system is "recommended by over 65,000 healthcare professionals");

FTC-LW09-1287 - 1293 (8/27/12 email from Sirlin to Worldwide detailing program for Phillips, attaching "whole script," including claim that their system is "recommended by over 65,000 healthcare professionals," and confirmation script);

FTC-LW09-1297 (8/28/12 email from Sirlin to Worldwide asking whether script still says Lifewatch, Lifewatch-Connect America, or Medical Alarm company, and whether it still says device is free; states that Worldwide should stop telemarketing in Pennsylvania because of complaints);

FTC-LW09-1298 (8/28/12 Sirlin email to Worldwide asking about recording he listened to, and whether script had been changed);

FTC-LW09-1302 (9/10/12 email from Worldwide to Sirlin responding to request for script relating to grocery coupon upsell);

FTC-LW09-1303 (9/10/12 email from Sirlin to Worldwide requesting script relating to grocery coupon upsell);

FTC-LW09-1304 (9/11/12 email from Worldwide email to Sirlin, Steinmetz, Baker, and another Lifewatch employee, proposing script relating to grocery coupon upsell);

FTC-LW09-1305 (9/11/12 email from Lifewatch to Boling of Worldwide, copying Sirlin, Steinmetz, and Baker of Lifewatch, responding to proposed script);

FTC-LW09-1361 – 1378 (9/25/12 email from Baker to Worldwide, copying Sirlin, enclosing Telemarketing Services Agreement, providing that "all contact between the Telemarketer and any person on behalf of [Lifewatch] shall be primarily by outbound telemarketing," and requiring Worldwide to "only use scripts identified by [Lifewatch] as approved, which approval shall be in the company's sole discretion");

FTC-LW09-1435 (11/6/12 email from Baker to Worldwide stating she and Evan need Worldwide to change script regarding 30 day trial);

FTC-LW09-1481 – 91 (3/13/13 email from Baker to Worldwide enclosing Safe Home Security script, "coverage areas Roman," and details of services);

FTC-LW09-1492 (3/19/13 email from Baker to Boling at Worldwide, changing script to remove "you won't be billed until you activate," and reference to "i've fallen and i can't get up");

72

FTC-LW09-1493 (3/22/13 email from Baker to Boling at Worldwide instructing Worldwide to immediately start "pitching Hydroxatone" as upsell. "The company is ready to start working with us on this");

FTC-LW09-1515- 20 (4/16/13 email from Baker to Worldwide, providing information and script for Hydroxatone upsell);

FTC-LW09-1530 – 31 (5/15/13 email from Sirlin to Worldwide  forwarding complaint tied to Worldwide (US Affiliates) of customer being told family member had given product to him);

FTC-LW09-2004-5 (8/26/11 email from Baker to broker, copying telemarketers, approving Call Center Welcome Package and scripts, after stating in 8/24/11 email that Sirlin "definitely wants to get this rolling. What else are you needing/missing from us that I can help with?");

FTC-LW09-2026 (10/13/11 email from Baker to broker, copying telemarketer, asking for copy of script that Lifewatch had approved on 8/26/11);

FTC-LW09-2044 (7/2/12 email from Baker to broker, Modugno, discussing 6/29/12 edits to script by Sirlin);

FTC-LW09-2057-2059 (5/20/13 email from Lifewatch employee to broker, Modugno, copying Sirlin, May, and another Lifewatch employee, announcing script change required of all telemarketing rooms);





PX 91, Robinson Dec. ¶ 6 (former telemarketer and telemarketing supervisor stating that Vandewater, May and Sirlin discussed script changes with them);
PX 93, Boling Dec. ¶ 35 ("Lifewatch provided all of the original telemarketing scripts to Worldwide, and Worldwide had to get Lifewatch's approval before making any changes. At various times the call centers suggested edits and modifications to the scripts, but Lifewatch would not allow the call centers to use any language until Lifewatch approved it.").

**60.** **Defendants uniquely promote certain attributes of their PERS, including being a company with 30+ years of experience in the industry, offering a PERS with a 1500 foot range, providing a 5 day battery backup, exclusively employing an EMT-certified monitoring center, conducting periodic test calls, offering a MediLok lockbox, providing an Away from Home card, offering a Daily Wellness Check, or employing Dick Van Patten as spokesman.**

Dkt. 22-1 at 5, Dkt. 22-2 at 29-32, PX 4 Velez Dec. ¶ 5, Att. C (advertisements provided by Lifewatch to FDACS, including claims of monthly live test calls and offer of Medilok, Dick Van Patten as spokesman);
Dkt. 87-1 at 3, DX 1, Declaration of Sirlin (states Lifewatch has "30-plus years of experience in the personal emergency response service industry);
FTC-01074, 01077-01079, 01081, 01086-01088, 01092-01111, 01114, 01116, 01119-01126, 01128-01133, 01136-01139, 01142, 01146-01147, 01152-01158, 01160-01162, 01164-01166, 01169-01173, 01177-01179, 01183-01186, 01190-01191, 01200, 01203-01208, 01210-01215, (advertisements submitted by Lifewatch pursuant to Civil Investigative Demand, touting 1500' range, 5 day battery back up, only EMT-certified monitoring center in the country, periodic test calls, MediLok Key Lockbox, Away from Home Card, and/or Daily Wellness Check, Dick Van Patten as spokesman);





[redacted]

PX 98, Transcript of Deposition of Sirlin on July 25, 2017, at 68-69 (Sirlin testifying that he owns and invented Medi-Lok);

PX 100, Transcript of Deposition of Mitchel May on July 26, 2017, at 28 (May testifying that Sirlin told him that Dick Van Patten was the company spokesperson).

**61.      Scripts filed by telemarketers for licensing, or found on their premises, have contained the product attributes Defendant-specific product descriptions.**

Dkt. 14-2 at 2, 3, 12, 30, 33, 45, PX 1 Menjivar Att. A (Worldwide scripts found at premises containing references to EMT-certified monitoring center, away from home "Protection Card," has been in business since 1977);

Dkt. 22-1 at 5, Dkt. 22-2 at 9-20, 36-38, PX 4 Velez Dec. ¶ 5 & Atts. B & E (scripts Lifewatch provided to FDACS containing references to EMT-certified monitoring center, being in business for 30 years, 1500' range, daily wellness check);

Dkt. 22-2 at 88-105, Velez Dec. Att. L (scripts provided by US Digest LLC to FDACS including references to EMT-certified monitoring center, Medilok, being in business for 30 years, 1500' range, daily wellness check);

Dkt. 22-3 at 22-24, Velez Dec. Att. Q (script provided by Direct Agent Response, Inc. to FDACS containing references to EMT-certified monitoring center, 1500 foot range, away from home Protection Card, daily wellness check);

Dkt. 22-3 at 49-52, Velez Dec. Att. T (script provided by Senior Medical Alert Systems to FDACS containing references to EMT-certified monitoring center, 1500 foot range, away from home Protection Card);

Dkt. 22-3 at 94-104, 117-123. Velez Dec. Att. DD & FF (scripts provided by TMI Marketing Group to FDACS containing references to being in business more than 30 years);

Dkt. 22-3 at 124-130, Velez Dec. Att. GG (script recovered at premises of Oasis Money Group by FDACS containing refernces to EMT-certified monitoring center, 1500 foot range, away from home Protection Card, being in business over 30 years);

Dkt. 22-3 at 153-157, Velez Dec. Att. KK (script provided by Payless Solutions Enterprises to FDACS containing references to EMT-certified monitoring center, 1500 foot range, away from home Protection Card, daily wellness check);

Dkt. 22-3 at 170-173, Dkt. 23-1 at 1-22, Velez Dec. Atts. MM-NN (scripts provided by Miranda Money Group to FDACS containing references to EMT-certified monitoring center, 1500 foot range, away from home Protection Card, being in business over 30 years);

Dkt. 23-1 at 157-162, Velez Dec. Atts. GGG, HHH (scripts provided by Live Response Agent to FDACS containing references to Dick Van Patten as spokesperson, EMT certified monitoring center, "1500ft" range, away from home Protection Card);

Dkt. 23-1 at 21-47, Velez Dec. Att. RR (script provided by Personal Security Shopper to FDACS containing references to EMT-certified monitoring center, Dick Van Patten as spokesman, Medilok, daily wellness check, "1500ft" range, being in business over 30 years); Dkt. 23-1 at 63-89, Velez Dec. Atts. UU & VV (script provided by Total Security Vision to FDACS containing references to certified EMT monitoring center, 1500 foot range, away from home Protection Card, being in business over 30 years);

Dkt. 23-1 at 98-101, 105-110, 123-145, Velez Dec. Atts. XX, ZZ, CCC, DDD (scripts provided by Alertlink to FDACS and recovered on premises of Alertlink by FDACS containing references to EMT certified monitoring center, Medilok, away from home Protection Card, being in business over 30 years);

Dkt. 26-2 at 10-30, PX 66 Lancaster Dec. Atts. A & B (scripts provided by former Worldwide employee containing references to certified EMT monitoring center, away from home "Protection Card," being in business over 30 years);

Dkt. 26-3 at 8-27, PX 67 Rowells Dec. Att. A (scripts provided by former employee of Payless containing references to certified EMT monitoring center, 1500 foot range, away from home Protection Card, being in business over 30 years);

Dkt. 26-4 at 9-32, PX 68 Shultz Dec. Atts. A & B (scripts provided by former employee of Worldwide containing references to EMT certified monitoring center, away from home "Protection Card," being in business over 30 years);

Dkt. 26-5 at 10-30, PX 69 Stenger Dec. Atts. A & B (scripts provided by former employee of Worldwide containing references to EMT certified monitoring center, away from home "Protection Card," being in business over 30 years);

Dkt. 26-6 at 14-34, PX 70 Stevens Dec. Atts. B & C (scripts provided by former employee of Worldwide containing references to EMT certified monitoring center, away from home "Protection Card," being in business over 30 years);

Dkt. 26-16 at 9, PX 80 Einikis Dec. Att. A (Royal Holdings of America/Payless script with handwritten notations "Lifewatch" and "No Indiana");

Dkt. 26-16 at 9-22, PX 80 Einikis Dec. Att. A (Royal Holdings of America/Payless script containing references to certified EMT facility,1500 foot range , away from home Protection Card, being in business over 30 years);

Dkt. 26-16 at 24-56, Att. B (Global Marketing Enterprise/Payless script containing references to certified EMT facility,1500 foot range , away from home Protection Card, being in business over 30 years);

Dkt. 26-16 at 65-82, Att. D (Payless script containing references to certified EMT facility,1500 foot range , being in business over 30 years, away from home Protection Card);

Dkt. 94-2 at 57, 64-83, PX 87, Menjivar Dec. ¶ 8, Att. B (Agent Med Alert application stating it is attaching all sales scripts but including only scripts describing Lifewatch product and service, and Lifewatch subscriber forms);

Dkt. 94-2 at 124, 128-150, PX 87, Menjivar Dec. ¶ 8, Att. B (Source One Consumer Solutions application stating it is attaching all scripts but including only scripts describing Lifewatch product and service);

Dkt. 94-2 at 152, 157, 170- PX 87, Menjivar Dec. ¶ 8, Att. B (Constant Connectivity application states it is an affiliate of only  company, Lifewatch; application stating it is attaching all scripts but including only Lifewatch Call Center Welcome Package and Lifewatch subscriber forms);

FTC-LW09-1001-13 (3/2/12 email from broker, Modugno, to Worldwide and Regal Marketing, copying Steinmetz, enclosing script containing references to Dick Van Patten as spokesperson, EMT-certified monitoring center, "1500ft" range, Medilok, being in business over 30 years); FTC-LW09-1029-40 (4/5/12 email from broker, Modugno, to all call centers, copying Baker and other Lifewatch employee, enclosing script containing references to Dick Van Patten as spokesperson, EMT-certified monitoring center, "1500ft" range, Medilok, Away from Home "Protection Card," daily wellness check, being in business over 30 years); FTC-LW09-1043-55 (4/20/12 email from broker, Modugno, to all call centers, copying Lifewatch employee, enclosing script containing references to Dick Van Patten as spokesperson, EMT-certified monitoring center, "1500ft" range, Medilok, Away from Home "Protection Card," daily wellness check, being in business over 30 years); FTC-LW09-1067-78 (5/2/12 email from broker, Modugno, to all call centers, copying Lifewatch employee, enclosing script containing references to Dick Van Patten as spokesperson, EMT-certified monitoring center, "1500ft" range, Medilok, Away from Home "Protection Card," daily wellness check, being in business over 30 years); FTC-LW09-1103-1114 (5/10/12 email from broker, Modugno, to all marketing companies, copying Lifewatch employee, enclosing script containing references to Dick Van Patten as spokesperson, EMT-certified monitoring center, "1500ft" range, Medilok, Away from Home "Protection Card," daily wellness check, being in business over 30 years); FTC-LW09-1117-1128 (5/22/12 email from broker, Modugno, to all marketing partners, copying Lifewatch employee, enclosing script containing references to Dick Van Patten as spokesperson, EMT-certified monitoring center, "1500ft" range, Medilok, Away from Home "Protection Card," daily wellness check, being in business over 30 years); FTC-LW09-1132-1143 (5/31/12 email from broker, Modugno, to all, copying Lifewatch employee, enclosing script containing references to Dick Van Patten as spokesperson, EMT-certified monitoring center, "1500ft" range, Medilok, Away from Home "Protection Card," daily wellness check, being in business over 30 years); FTC-LW09-1153-1168 (7/5/12 email from broker, Modugno, copying Lifewatch employee and Steinmetz, enclosing script containing references to Dick Van Patten as spokesperson, EMT-certified monitoring center, "1500ft" range, Medilok, daily wellness check, being in business over 30 years); FTC-LW09-1212- (8/6/12 email from Sirlin to Worldwide and Steinmetz, enclosing script containing references to certified EMT monitoring center, 1500 ft., daily wellness check, Medilok, away from home "Protection Card"); FTC-LW09-1220-1234 (8/9/12 email from broker, Modugno, to Boling at Worldwide, enclosing script containing references to Dick Van Patten as spokesperson, EMT-certified monitoring center, "1500ft" range, Medilok, Away from Home "Protection Card," daily wellness check, being in business over 30 years);



**62.    Telemarketers have promoted Defendant-specific product descriptions in their sales calls to consumers.**

Dkt. 18-2 at 6-7 (Senior Life Support telemarketer touting Medilok),

Dkt. 18-2 at 34 (Senior Life Support telemarketer touting certified EMT, away from home protection card);

Dkt. 19-1 at 6 (Senior Life Support telemarketer touting certified EMT),

Dkt. 19-1 at 39 (Senior Life Support telemarketer touting certified EMT, 1500 foot range),

Dkt. 19-1 at 63-64 (Senior Life Savings telemarketer touting certified EMT, away from home protection card);

Dkt. 19-2 at 17 (Senior Life Savers telemarketer touting 1500 foot range),

Dkt. 19-2 at 45-46 (Senior Life Savers telemarketer touting certified EMT, 1500 foot range, away from home protection card);

Dkt. 20-1 at 16-17 (Nationwide Life Response/Nationwide Ventures telemarketer touting certified EMT, 1500 foot range, away from home protection card),

Dkt. 20-1 at 35-36 (Senior Life Support telemarketer touting away from home protection card, certified EMT, 1500 foot range);

Dkt. 20-1 at 66-67 (Senior Life Support telemarketer touting certified EMT, 1500 foot range, away from home protection card);

Dkt. 21-2 at 12-13, Tyndall Dec. Att. A (Rapid Response Alert telemarketer touting certified EMT operator, 1500 foot range, away from home protection card),

Dkt. 21-2 at 42, 52, Att. B (same);

Dkt. 22-1 at 17, PX 2 France Dec. Att. A (Senior Life Support telemarketer claiming certified EMT operator will handle calls),

Dkt. 22-1 at 57, Att. F (same),

Dkt. 22-1 at 69, Att. G (same);

Dkt. 24-1 at 132, Bradley Dec. Att. D (Senior Benefits/Safeline telemarketer touting certified EMT, 1500 foot range, company operating for over 30 years, away from home protection card, daily wellness check);

Dkt. 24-2 at 3-4, PX 6, Smith Dec. ¶¶ 6, 7 (BBB identified Lifewatch as company behind robocalls because it was the only company that matched the telemarketer's description of product, including 1500' range);

Dkt. 24-2 at 4, PX 6, Smith Dec. ¶ 7 (Dkt. 24-2 at 3-4) (BBB identified Lifewatch as company behind robocalls because it was the only company that matched the telemarketer's description);

Dkt. 24-1 at 137, PX 5, Bradley Dec. ¶ 5, Att. D at 8-9 (transcript of sales call identifying Lifewatch as company selling product and describing telemarketer as part of "Life Watch" family, and providing Lifewatch customer service number);

Dkt. 24-21 at 3, PX 25 Cattie Dec. ¶ 3 ("Med Alert" telemarketer gave Lifewatch customer service number);

Dkt. 24-27 at 6, Dkt. 17-1 at 56, 69-71, PX 31 deLoca Dec. ¶ 15. ("Senior Life Support" telemarketer states that Lifewatch makes the medical alert device and transfers call to Medical Alarms);

Dkt. 24-27 at 7, PX 31 deLoca Dec. ¶ 8, Dkt. 17-1 at 6,7 (Senior Assistance telemarketer touting certified EMT, in business over 30 years, away from home protection card),

Dkt. 24-27 at 35 (Senior Medical Alert Systems telemarketer touting 1500 feet range),

Dkt. 24-27 at 55-57 (Senior Life Support telemarketer touting away from home protection card, certified EMT, 1500 foot range);

Dkt. 24-27 at 6, PX 31 deLoca Dec. ¶ 17 ("Medical Alarm Systems" telemarketer left message with Lifewatch customer service number);

Dkt. 24-28 at 5, PX 32, Eden Dec. ¶¶ 7, 10, 14 (two telemarketing calls "Medical Alert System", both representatives said they were calling from Lifewatch; "Senior Alert" telemarketer referred to Lifewatch as the company's "corporate office");

Dkt. 25-1 at 3, PX 33, Featherston Dec. ¶ 4 ("Senior Medical Benefits" telemarketer gave Lifewatch customer service number and stated was calling from "LifeWatch Connect America");

Dkt. 25-3 at 3, PX 35, Gates Dec. ¶ 6 (telemarketer initially said he was calling from "Senior Life Watch," but admitted it was Lifewatch USA later in call);

Dkt. 25-4 at 3, PX 36, Girard Dec. ¶ 5 ("Medical Alert" telemarketer gave Lifewatch customer service number);

Dkt. 25-9 at 4, Dkt. 17-2 at 74-75, PX 41, James Dec. ¶ 7 ("Medical Alarms" telemarketer gave Lifewatch customer service number);

Dkt. 25-9 at 4, Dkt. 18-1 at 26, PX 41, James Dec. ¶ 8 ("Medical Alarms" telemarketer transferred call for confirmation to Medical Alarms, a Lifewatch dba);

Dkt. 25-9, PX 41 James Dec., Dkt. 18-1 at 39-41 (Endless Medical Alert telemarketer touting certified EMT, 1500 foot range, away from home protection card);

Dkt. 25-9 at 4-5, Dkt. 18-1 at 53-54, PX 41, James Dec. ¶ 9 ("Endless Medical Alert" telemarketer gave Lifewatch customer service number);

Dkt. 25-18, PX 50 Mey Dec., Dkt. 18-1 at 64 (Senior Life Support telemarketer touting certified EMT);

Dkt. 25-18 at 10, Dkt. 19-2 at 52-53, PX 50, Mey Dec. ¶ 29 ("Senior Life Saver" telemarketer said company operates out of Lynbrook, New York, and recently changed company name from Lifewatch);

Dkt. 25-18 at 10, Dkt. 19-2 at 67, 68, 74, PX 50, Mey Dec. ¶ 30 (Senior Life Savers "regional manager" said company name recently changed from Lifewatch; "package that you receive…it's going to say Lifewatch on it. That's what our medical alert system is registered under"; "head corporation is out of Lynbrook, New York," but have 17 call centers in the United States and 4 in Canada );

Dkt. 25-18 at 11, Dkt. 20-1 at 24, PX 50, Mey Dec. ¶ 32 ("Nationwide Life Response/Nationwide Ventures" telemarketer gave Lifewatch customer service number and said Lifewatch is "our parent company");

Dkt. 25-18 at 11, Dkt. 20-1 at 45, PX 50, Mey Dec. ¶ 33 ("Senior Life Support" manager said Lifewatch is name of the product they sell);

Dkt. 25-18 at 12, Dkt. 20-1 at 71, PX 50, Mey Dec. ¶ 35 ("Senior Life Support" telemarketer said Senior Life Support is "branch company…but the main company is Lifewatch");

Dkt. 25-18 at 3, Dkt. 12-2 at 10, PX 50, Mey Dec. ¶ 7 ("Senior Life Support" telemarketer said company's corporate office is in Lynbrook, New York);

Dkt. 25-18 at 3, PX 50, Mey Dec. ¶ 4 ("Senior Life Alarm" telemarketer said Lifewatch would charge credit card);

Dkt. 25-18 at 6, PX 50, Mey Dec. ¶ 16 ("Senior Life Support" telemarketer said "all of products they sold were from Lifewatch");

Dkt. 25-18 at 9, Dkt. 19-2 at 5, 8-9, PX 50, Mey Dec. ¶ 24 ("Senior Life Savers" telemarketer said "we work under Lifewatch" and company recently changed name but head of company was Lifewatch);

Dkt. 25-18 at 9, PX 50, Mey Dec. ¶ 23 ("Senior Life Savers" telemarketer said Lifewatch would charge credit card and that "Senior Life Savers was just a small branch of Lifewatch");

Dkt. 25-19 at 3, PX 51 Miller Dec. ¶ 6 ("Just for Seniors" telemarketer gave Lifewatch customer service number);

Dkt. 25-27 at 2, Thill Dec. ¶ 4 (return phone call to customer service number given by telemarketer connected to Lifewatch);

Dkt. 25-28 at 2, PX 60 Veysey Dec. ¶ 3 (telemarketer gave Lifewatch customer service number);

Dkt. 25-29 at 3, PX 61 Wagler Dec. ¶ 4 ("Senior Safe Alert" telemarketer gave Lifewatch customer service number);

Dkt. 26-8 at 7-8, 11, PX 72 Levine Dec. (Just for Seniors telemarketer touting certified EMT, away from home protection card, daily wellness check),

Dkt. 26-8 at 16-17 (Just for Seniors telemarketer touting certified EMT, in business over 30 years, away from home protection card, daily wellness check),

Dkt. 26-8 at 25-26 (Just for Seniors telemarketer touting certified EMT, in business over 30 years, away from home protection card, daily wellness check);

Dkt. 51-1 at 8, PX 81 Braver Dec. Att. A (Senior Alert Systems telemarketer touting certified EMT, 1500 foot range, in business over 30 years, Medilok, away from home protection card, daily wellness check);

Dkt. 51-1 at 42, PX 81 Braver Dec. Att. D (Senior Alert Systems telemarketer touting 1500 foot range);

Dkt. 51-1 at 3, PX 81, Braver Dec. ¶ 8 ("Senior Alert Systems" telemarketer gave Lifewatch customer service number);

Dkt. 51-3 at 28, PX 83, Mey Dec. Att. B (call from Lifewatch telemarketer, Med Alert Assistance, on 7/29/15 touted certified EMT monitoring, away from home protection card);

Dkt. 51-3 at 28-29, PX 83 Mey Dec. Att. B (Med Alert Assistance telemarketer touting certified EMT, away from home protection card);

Dkt. 51-3 at 40-41, PX 83, Mey Dec. Att. B (telemarketer on 7/29/15, stated that Lifewatch was company charging consumer's credit card; says company name is "Medical Alarms…But we still go by Lifewatch as well.");

Dkt. 77-1 at 36, PX 86, Mey Dec. Att. D (telemarketer on 8/21/15, stated that Lifewatch was company charging consumer's credit card);

Dkt. 77-1 at 43, PX 86 Mey Dec. Att. E (Med Alert telemarketer touting certified EMT);

Dkt. 77-1 at 42, 54, PX 86 Mey Dec. Att. E (consumer received robocall from Lifewatch telemarketer on 9/10/15, telemarketer trusted by "thousands of doctors and hospitals around the country" and company has been in business for more than 30 years);

Dkt. 77-1 at 66-67, PX 86 Mey Dec. Att. F (representative on 9/10/15 stated "We … are Medical Alarms and Lifewatch," says telemarketer is "not in the same building. That's our ordering department.");

Dkt. 77-1 at 80, PX 86 Mey Dec. Att. G (Agent Med Alert telemarketer on 9/11/15 confirms that they only send their sales to Lifewatch, "They're the only company we use.");

Dkt. 100-2 at 32, Transcript of November 12, 2015 Deposition of William Smith (same);

PX 92, James Dec. Att. E at 5 (Medical Alert telemarketer touting certified EMT, in business for over 30 years).

**63.    Defendants have  provided financing for various telemarketers.**

Dkt. 20-1 at 84, PX 1, Menjivar Dec. Att. DDD (12/16/11 email from Lifewatch Accounting Manager, copying Sirlin, explaining to monitoring company that Lifewatch advanced $6000 to telemarketer "to help ease their cash flow");

Dkt. 96-1 at 23, PX 89, Einikis Dec. Att. A (11/12/14 email from Lifewatch Accounting Manager, copying Sirlin, confirming $10,000 advance provided by Lifewatch to Mayhem Innovations, d/b/a Payless);

FTC-LW09-1571 – 74 (6/20/13 email from Sirlin to Worldwide forwarding complaint from North Dakota Attorney General's office, "Do you info to give outside for worldwide-I know doesn't exist anymore but if you can find original info that be great");

FTC-LW09-2151 (6/27/13 email from Sirlin to broker, Modugno, copying May and Lifewatch accountant, agreeing to not withhold payment to telemarketer for chargebacks "to help them get back on their feet");

FTC-LW17-419 - 420, Deposition Transcript of Housein Karachopan (Lifewatch broker, Eggen's partner, describing telemarketing manager, Josh Zigich, terminated for excessive complaints, but being rehired to manage another call center);

PX 93, Boling Dec. ¶ 47, 48, 50 (Lifewatch gave $200,000 to Worldwide to pay for predictive dialer; "overpaid" Worldwide by $900,000 – 1.2 million to return to Sirlin and May in cash; broker, Matt Eggen, given money to set up at least five new call centers after Worldwide shut down).

PX 99, Transcript of Deposition of Roman on July 31, 2017, at 63 (Lifewatch provided advance funding to its call centers).

**64.    Defendants have encouraged telemarketers to set up new telemarketing companies and call centers after increased scrutiny by law enforcement and financial institutions.**

Dkt. 22-1 at 11-13, PX 4, Velez Dec. ¶¶ 35, 38 & 40 (after cease and desist order entered by Florida agency against telemarketer for Lifewatch, another company began selling for Lifewatch at same location and suite number; two other corporations began selling for Lifewatch in same suite within six months);

Dkt. 24-10 at 4, PX 14, Hilgar Dec. ¶¶ 10-11 (describing new company names created and after Worldwide named in lawsuit brought by Indiana Attorney General and after Worldwide was shut down by FTC and Florida Attorney General, to continue telemarketing for Lifewatch);



███████

FTC-LW17-313 – 314, Deposition Transcript of Matthew Eggen by the Texas Attorney General (broker describing "investment" by Sirlin and Hing-Tack Chen, owner of Harmonious Enterprises d/b/a Medwatch USA, a Lifewatch "affiliate");

FTC-LW17-450 – 452, Deposition Transcript of Housein Karachopan (Lifewatch broker, Eggen's partner, describing "investment" and loans by Sirlin and Chen in broker, lead generator, and dialer);

PX 93, Boling Dec. ¶ 32 (when chargebacks became excessive, Worldwide entities would "rebrand" with new corporate identity and Lifewatch would then agree to work with new entity);

PX 100, Transcript of Deposition of May on July 26, 2017, at 35-36 (May testifying that Boling and Sirlin discussed Lifewatch buying into Worldwide);

PX 98, Transcript of Deposition of Sirlin on July 25, 2017, at 88-90 (Sirlin testifying that he encouraged Roman to do "a lot of stuff" with Boling "routing business through another dealer to bypass chargebacks").

**65.     Defendants have continued to work with telemarketers even after learning of the telemarketers' deceptive and abusive practices.**

Dkt. 94-2 at 4-7, 200-203, PX 87, Menjivar Dec. ¶¶ 10-16, Atts. D, E (more than 10,000 DNC complaints against the telemarketers Lifewatch identified as their current telemarketers prior to the preliminary injunction hearing: Senior Assist Network, Rescue Me Alert, and Agent Med Alert).

FTC-LW09-1332 - 33 (9/14/12 email from Sirlin to Worldwide reporting complaints from subscribers of "'scam' calls" and asking to be informed as to what "would appear on caller id – so we can legitimize these calls");

FTC-LW09-1390 – 94 (10/3/12 email from Sirlin to Worldwide, "Guys I know this sounds dramatic," forwarding complaints from Connect America about calls to consumers on National Do Not Call list);

FTC-LW09-1459 – 60 (12/12/12 email from Boling of Worldwide to Baker, copying Sirlin and other Lifewatch employee, stating he has "pulled HUNDREDS of recording (sic) for you guys");

FTC-LW09-1495 (4/11/13 email from May email to Worldwide, Sirlin, Baker, and other Lifewatch employee, agreeing with Sirlin that they should use 2 or more credit card processors going forward "to spread chargebacks out," which would require Worldwide agents to log in from different companies);

FTC-LW09-1532 (5/20/13 email from Vandewater to Worldwide complaining that she has "asked for a lot of recordings and I never get them or get a response");

FTC-LW09-1533 – 35 (5/20/13 email from Baker to Boling at Worldwide, copying Sirlin and May, seeking recording and forwarding Vandewater emails complaining that "They never answer me on recordings");

FTC-LW09-1536 – 37 (5/22/13 email from Boling at Worldwide responding to Lifewatch complaint about Worldwide failing to forward recording, which stated: "Still nothing …….. PLEASE!!!!!!!!!! !!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!! !!!!!!!!!!!!!! We are out of time !!!!!!!!!!!!!!!!!!!!!!!!!");

FTC-LW09-1538 (5/22/13 email from Sirlin to Worldwide instructing Worldwide "Also Wisconsin is giving us trouble-I would not sell there," and forwarding email from Lifewatch

customer service to Sirlin, May, and Baker, about "John" robocalls from 5 spoofed caller IDs; "We, at Lifewatch USA, do not make cold calls, do not call out to anyone. Blah blah blah-He finally believed me.");

FTC-LW09-1546 - 1550 (6/10/13 email from Sirlin to Worldwide, forwarding 6/10/13 email from Connect America CEO to Sirlin and Roman, regarding 2 lawsuits and additional BBB inquiries related to robocalling tied to Lifewatch; ordering Lifewatch "to put a stop to these illegal calls . . . These reckless actions by this call center are costing us money in legal and labor fees and damaging the industry.");

FTC-LW09-1560 – 62 (6/18/13 email from Sirlin to Worldwide asking for "outgoing message" consumer would have heard, and forwarding 6/18/13 email from Lifewatch customer service representative to Sirlin, May, and Baker regarding consumer's complaint about Lifewatch DNC violations);

FTC-LW09-1565 – 70 (6/20/13 email from Sirlin to Worldwide requesting that "someone blast seo on internt about scam lifewatch and medical alerts etc etc- So real stupid stuff below goes low down," and forwarding emails from Baker to Sirlin and May with links to nationwide news reports of government alerts and private actions tying Lifewatch to widespread robocall "scam," including false claims that device is free, caller ID spoofing, "trades on the well-known brand of Life Alert," false claims about easy cancellations, false endorsement by American Diabetes Association, violations of DNC registry, and unauthorized use of BBB name and logo in promotional materials.");

FTC-LW09-1571 – 74 (6/20/13 email from Sirlin to Worldwide forwarding complaint from North Dakota Attorney General's office, "Do you info to give outside for worldwide-I know doesn't exist anymore but if you can find original info that be great");

FTC-LW16-230 – 231 (4/2/12 email from Sirlin to Steinmetz, responding to email from Steinmetz to Sirlin, Baker, Modugno, and other Lifewatch employees, following Baker email to Modugno stating that Lifewatch "continue(s) to get the same complaints as before…But it's never good when the staff members at Lifewatch come across an account that has something wrong with it or the customer called to say they were told something bizarre and everyone says 'Ohhhhh…that must be a Worldwide customer!!!' That tells me there is a definite issue!!!");





PX 91, Robinson Dec. ¶ 22 (former telemarketer and telemarketing supervisor stating that Lifewatch paid a large portion of a $192,000 fine imposed on Lifewatch telemarketer for time-share scam telemarketing violations, so he was obligated to run call centers selling Lifewatch medical alert devices to repay the money);

PX 93, Boling Dec. ¶ 36 ("Lifewatch was well aware of the representations the Worldwide telemarketers made because every week Lifewatch required Worldwide to send up to 100 recordings of full telemarketing calls for completed sales.");

PX 93, Boling Dec. ¶ 37 (Sirlin frequently requested that Worldwide edit troubling content from sales recordings before sending them to Lifewatch).

**66.     Defendants' October 2014 Quality Control Program did not curb the illegal conduct of Defendants' telemarketers.**

Dkt. 51-1 at 21, PX 81 Braver Dec. Att. C (robocall from Lifewatch telemarketer received on 8/10/15 stating "Because you were referred by your doctor or primary care physician, your medical alert system has already been paid for"; to opt out of the call, the robocall states "Press five to notify your health care provider you have refused shipment");

Dkt. 51-2 at 2-3, 8, PX 82, deLoca Dec. ¶ 4, Att. A (robocall received on 6/25/15 from Lifewatch telemarketer to consumer on DNC Registry and who had made repeated requests to be put on internal DNC list);

Dkt. 51-3 at 2-3, PX 83, Mey Dec. ¶¶ 3-5 (robocalls received from Lifewatch telemarkter on 7/14/15, 7/29/15, 8/20/15, 9/10/15 to consumer on DNC Registry and who repeatedly requested to be put on Lifewatch's internal DNC list);

Dkt. 51-3 at 28, PX 83, Mey Dec. Att. B (telemarketer on 7/29/15, stated  "There's no cancellation fees and no contract.");

Dkt. 77-1 at 42, 45, PX 86 Mey Dec. Att. E (consumer received robocall from Lifewatch telemarketer on 9/10/15 stating "Since you've already been referred to by a friend or family member, we have a system waiting to be shipped out to you"; telemarketer stated device was recommended by AARP and trusted by "thousands of doctors and hospitals around the country" and "there are no cancellation fees, and you may cancel at any time that you choose");

Dkt. 96-1 at 8-10, PX 89, Einikis Dec. Att. A (5/18/15 email from Vandewater at Lifewatch to undisclosed call centers stating "A rep cannot tell a customer that 'billing starts once you activate the system' or you wont (sic) be billed until you test the unit…These are all things that have been coming up lately and the reps need to be reminded that they cannot do that. This is a general email that is going to everybody so please go over this information with your sales/verification/CS reps.");



PX 91, Robinson Dec. ¶ 15 (former telemarketer and telemarketing supervisor for Lifewatch stating that Lifewatch never rejected a single sale from the 5 call centers he worked at for Lifewatch from April 2014 until June 2016, except for when consumer gave post office box for their address, or when address or telephone number was incorrect);

PX 91, Robinson Dec. ¶ 18 (former telemarketer and telemarketing supervisor for Lifewatch stating that Lifewatch never requested or received recordings of actual telemarketing calls, only the verification portion of the call).

**67.** **Roman has formulated business strategies and set the corporate agenda for the Corporate Defendants.**

FTC-LW16-5321 (11/11/14 email from Roman to May, Sirlin, Cleasby setting the meeting agenda);

FTC-LW16-5816 (6/16/15 email exchange between Roman, Cleasby, Laura Roman, Sirlin, and May where Roman sets the agenda for the annual meetings for Medguard and Lifewatch);

PX 98, Transcript of Deposition of Sirlin on July 25, 2017, at 58 (Sirlin testifying that Roman "ran the business after he took it over.");

PX 98, Transcript of Deposition of Sirlin on July 25, 2017, at 71 (Sirlin testifying that "once [Roman] took over the company he had control.");

PX 98, Transcript of Deposition of Sirlin on July 25, 2017, at 85-86 (Sirlin testifying that after Roman "took over" the business, Sirlin had "no power to do anything");

PX 98, Transcript of Deposition of Sirlin on July 25, 2017, at 95-97 (Sirlin testifying that after Roman purchased the majority of Lifewatch, he has "control" and "authority over everything.");

PX 100, Transcript of Deposition of May on July 26, 2017, at 31 (May testifying after Roman purchased majority of Lifewatch, "[h]e could make any decision" for the Lifewatch).

**68. Roman has supervised employees and all personnel decisions for the Corporate Defendants.**

[redacted]

PX 100, Transcript of Deposition of May on July 26, 2017, at 31 (May testifying that Roman could fire any Lifewatch employee "at will").

**69. Roman has supervised marketing and telemarketing for the Corporate Defendants.**

[redacted]







[redacted]

[redacted]

PX 98, Transcript of Deposition of Sirlin on July 25, 2017, at 69-70 (Sirlin testifying that although Lifewatch had distinguished itself in the market was by not requiring customers to sign long-term contracts because such "contracts with seniors [cause] a lot of issues," Roman wanted to offer bonuses to telemarketers for signing up customers to 36-month contracts).

**70. Roman has closely monitored Defendants' telemarketers.**

[redacted]













[redacted]

[redacted]

[redacted]

[redacted]

[redacted] dealer payouts);



[redacted]

PX 98, Transcript of Deposition of Sirlin on July 25, 2017, at 51-52 (Sirlin testifying that he visited the Worldwide call center, with May and Roman, at least once, and that Boling met visited Lifewatch headquarters at least once).

**71. Roman has supervised customer service for the Corporate Defendants.**

[redacted]

**72. Roman has supervised provision of services and back office support for the Corporate Defendants.**

[redacted]



[redacted]

**73. Roman has supervised payments, collections, chargebacks, and refunds for the Corporate Defendants.**

[redacted]





[redacted]

**74. Roman has supervised all financial decisions for the Corporate Defendants.**

[redacted]









[redacted]

[redacted]

[redacted]

PX 99, Transcript of Roman Deposition at 63, lines 17 – 22 (Lifewatch provided advance funding to its call centers).

**75. Roman knew of regulatory actions against Lifewatch prior to his purchase.**

[redacted]

**76. Roman knows that Defendants' telemarketers have engaged in deceptive acts and practices.**

[redacted]







[redacted]

[redacted]

**77. Roman knows that Defendants' telemarketers have engaged in abusive acts and practices.**

FTC-LW09-1546 - 1550 (6/10/13 email from Sirlin to Worldwide, forwarding 6/10/13 email from Connect America CEO to Sirlin and Roman, regarding 2 lawsuits and additional BBB inquiries related to robocalling tied to Lifewatch; ordering Lifewatch "to put a stop to these illegal calls . . . These reckless actions by this call center are costing us money in legal and labor fees and damaging the industry.");

[redacted]





[redacted]

**78. Roman managed Defendants' response to Worldwide being shut down.**

[redacted]



**79. Roman knows Defendants' illegal activity continued after Worldwide was shut down.**

[redacted]



**80.    Sirlin devised the strategy for Lifewatch to rely on telemarketing.**

FTC-LW09-1191 (7/18/12 email from Boling at Worldwide to Sirlin and Steinmetz regarding details of residuals, back payments, and upcoming wire transfer; promising followup email confirming that Worldwide will work exclusively for Lifewatch);

 FTC-LW09-1192 (7/18/12 email from Boling at Worldwide to Sirlin and Steinmetz confirming "express written commitment" to working exclusively with Lifewatch on medical alerts for three years);

FTC-LW09-1429 (10/16/12 email from Sirlin to Worldwide, copying Baker, coaching Boling on how to answer questions bank will ask in connection with their telemarketing for Lifewatch);

FTC-LW09-1542 (5/31/13 email from Sirlin to Worldwide, copying May, suggesting upsells and possible pricing options; "Dave doesn't need the extra cash- I am just trying to think of ways to make more upfront money for you guys with out the pressure of increasing sales");

FTC-LW09-2004-5 (8/26/11 email from Baker to broker, copying telemarketers, approving Call Center Welcome Package and scripts, after stating in 8/24/11 email that Sirlin "definitely wants to get this rolling. What else are you needing/missing from us that I can help with?");

FTC-LW09-2021 (9/29/11 email from Sirlin responding to broker email to Sirlin, copying lead generators and telemarketers, asking "if there are any states that LIFEWatch is not allowed to/or does not wish to market in utilizing outbound telemarketing?"; Sirlin responds "Absolutely every state and Canada.");

FTC-LW09-2151 (6/27/13 email from Sirlin to broker, Modugno, copying May and Lifewatch accountant, agreeing to not withhold payment to telemarketer for chargebacks "to help them get back on their feet");

FTC-LW09-2237-2238 (9/10/13 email from Sirlin to broker, Modugno, copying May, stating that it would be a conflict for broker to work for any other seller of medical alert sales, even if not telemarketing);



FTC-LW17-450 – 452, Deposition Transcript of Housein Karachopan (Lifewatch broker, Eggen's partner, describing "investment" and loans by Sirlin and Chen in broker, lead generator, and dialer);

PX 93, Boling Dec. ¶ 47, 48, 50 (Lifewatch gave $200,000 to Worldwide to pay for predictive dialer; "overpaid" Worldwide by $900,000 – 1.2 million to return to Sirlin and May in cash; broker, Matt Eggen, given money to set up at least five new call centers after Worldwide shut down);

PX 98, Transcript of Deposition of Sirlin on July 25, 2017, at 68-69 (Sirlin testifying that he owns and invented Medi-Lok);

PX 98, Transcript of Deposition of Sirlin on July 25, 2017, at 87-89 (Sirlin testifying that even at the time Worldwide was shut down, he believed Boling "was known as one of the most knowledgeable, best, creative, smart that every company in America was dealing with him … I felt he was the best expert in the world … and Dave should work with him.").

## 81. Sirlin has formulated Defendants' telemarketing practices.

Dkt. 100-4 at 65, 77, 81, Deposition Transcript of Leslie Steinmetz (Lifewatch approved all scripts used by Worldwide; "Sirlin and I would look at scripts, and he would do the final approval"; Sirlin provided scripts to Steinmetz and "used to write scripts as well").

Dkt. 96-1 at 23, PX 89, Einikis Dec. Att. A (11/12/14 email from Lifewatch Accounting Manager, copying Sirlin, confirming $10,000 advance provided by Lifewatch to Mayhem Innovations, d/b/a Payless);

Dkt. 96-1 at 54 (PX 89, Einikis Dec. Att. A) (3/28/14 email from Lifewatch employee forwarding Sirlin 3/26/14 email, copying May and Baker, to telemarketer instructing telemarketing room on upsells, including restaurant.com, grocery coupons, pharmacy discount cards, and smoke alarms);

FTC-LW09-1146 (6/14/12 email from Sirlin to Lifewatch employee and Worldwide, ordering Lifewatch's "whole customer service department" to help Worldwide try to prevent cancellations);

FTC-LW09-1152 (7/2/12 email from Sirlin to Worldwide and Steinmetz noting rise in returns when they discontinued follow-up calls after orders, promising further discussion, and suggesting solutions);

FTC-LW09-1198 (8/1/12 email from Boling at Worldwide to Sirlin stating "we have made recent modifications in the script per your request" and pulling recordings to send directly to Sirlin);

FTC-LW09-1199 (8/1/12 email from Sirlin to Worldwide and Steinmetz making detailed changes in script);

FTC-LW09-1200 (8/2/12 email from Boling at Worldwide to Sirlin email confirming script changes, and noting that Worldwide is no longer using particular pseudonym at Lifewatch's request);

FTC-LW09-1280 (8/11/12 email from Sirlin to Boling at Worldwide asking whether they have discontinued particular upsell, offering change in commissions relating to upsell, and suggesting change in script);

FTC-LW09-1297 (8/28/12 email from Sirlin to Worldwide asking whether script still says Lifewatch, Lifewatch-Connect America, or Medical Alarm company, and whether it still says device is free; states that Worldwide should stop telemarketing in Pennsylvania because of complaints);

FTC-LW09-1298 (8/28/12 Sirlin email to Worldwide asking about recording he listened to, and whether script had been changed);

FTC-LW09-1302 (9/10/12 email from Worldwide to Sirlin responding to request for script relating to grocery coupon upsell);

FTC-LW09-1303 (9/10/12 email from Sirlin to Worldwide requesting script relating to grocery coupon upsell);

FTC-LW09-1304 (9/11/12 email from Worldwide email to Sirlin, Steinmetz, and other Lifewatch employees, proposing script relating to grocery coupon upsell);

FTC-LW09-1435 (11/6/12 email from Baker to Worldwide stating she and Sirlin need Worldwide to change script regarding 30 day trial);

FTC-LW09-1538 (5/22/13 email from Sirlin to Worldwide instructing Worldwide "Also Wisconsin is giving us trouble-I would not sell there," and forwarding email from Lifewatch customer service to Sirlin, May, and Baker, about "John" robocalls from 5 spoofed caller IDs; "We, at Lifewatch USA, do not make cold calls, do not call out to anyone. Blah blah blah-He finally believed me.");

FTC-LW09-1564 (6/19/13 Sirlin email to Worldwide suggesting upsells and pricing opportunity);

FTC-LW09-1571 – 74 (6/20/13 email from Sirlin to Worldwide forwarding complaint from North Dakota Attorney General's office, "Do you info to give outside for worldwide-I know doesn't exist anymore but if you can find original info that be great");

FTC-LW09-2269 (12/5/13 email from Sirlin to broker, Modugno, copying another Lifewatch employee, noting that Lifewatch is no longer supplying telemarketing leads to US Digest);





[redacted]

FTC-LW17-313 – 314, Deposition Transcript of Matthew Eggen by the Texas Attorney General (broker describing "investment" by Sirlin and Hing-Tack Chen, owner of Harmonious Enterprises d/b/a Medwatch USA, a Lifewatch "affiliate");
PX 93, Boling Dec. ¶ 37 (Sirlin frequently requested that Worldwide edit troubling content from sales recordings before sending them to Lifewatch).

**82. Sirlin has supervised Defendants' telemarketers.**

FTC-LW09-1065 (4/25/12 email from Steinmetz to Worldwide, copying multiple Lifewatch employees, including Sirlin, offering incentive from Lifewatch for top sales person at call center, and promising to gather information from "our other call centers");
FTC-LW09-1148 (6/26/12 email from Sirlin to Worldwide, forwarding earlier email in which Sirlin describes Worldwide to accountant as "our biggest marketing partner");
FTC-LW09-1212 – 1215 (8/6/12 email from Sirlin to Worldwide and Steinmetz sending sample Lifewatch script for Connect America, including claim that system is free, that "billing cycle

doesn't start until you receive the system and activate it," and instruction that telemarketer "PITCH UPSELL");
FTC-LW09-1306 (9/11/12 email from Worldwide email to Sirlin, Baker, and Steinmetz, with proposed letter going to grocery coupon upsell customers of Lifewatch);
FTC-LW09-1436 – 39 (11/19/12 email from Medguard to Boling at Worldwide and Baker, copying Sirlin, enclosing quality control script to Worldwide for live transfers);
FTC-LW09-1462 – 63 (2/8/13 email from Baker email to Worldwide, copying Sirlin, enclosing Activation Script);
FTC-LW09-1530 – 31 (5/15/13 email from Sirlin to Worldwide forwarding complaint tied to Worldwide (US Affiliates) of customer being told family member had given product to him);
[redacted]





PX 98, Transcript of Deposition of Sirlin on July 25, 2017, at 50 (Sirlin testifying that he met Boling at Worldwide in person at least two times);
PX 98, Transcript of Deposition of Sirlin on July 25, 2017, at 51-52 (Sirlin testifying that he visited the Worldwide call center, with May and Roman, at least once, and that Boling met visited Lifewatch headquarters at least once).

**83.     Sirlin has managed the telemarketing for customer accounts being sold to third-parties.**

FTC-LW09-1147 (6/26/12 email from Sirlin to Boling at Worldwide stating that he will handle Connect America "billing issues," and directing customer service director to work with Worldwide on customer retention);
FTC-LW09-1150-1 (6/27/12 email from Sirlin to Boling at Worldwide promising discussion with Worldwide and Steinmetz the following day "about all things," Connect America deals, billing issues, and high returns);
FTC-LW09-1286 (8/23/12 email from Sirlin to Worldwide, copying Steinmetz and Baker, detailing program for Phillips, including price, volume, terms, procedures, payment, and confirmations);
FTC-LW09-1287 - 1293 (8/27/12 email from Sirlin to Worldwide detailing program for Phillips);
FTC-LW09-1358 (9/20/12 email from Sirlin to Worldwide, copying Baker and another Lifewatch employee, regarding order taking, prices, timing of charges, limiting volume of sales, and payment from Phillips);
FTC-LW09-1384 – 85 (9/30/12 email from Sirlin to Worldwide forwarding request from Connect America COO to Sirlin and Steinmetz for list of customers promised grocery vouchers);
FTC-LW09-1427 (10/16/12 email from Steinmetz to Boling at Worldwide, Sirlin, and Baker, describing problems with grocery coupon upsells);
FTC-LW09-1428 (10/16/12 email from Boling at Worldwide to Sirlin, Steinmetz, and Baker, providing detailed explanation of grocery coupon upsell);
FTC-LW09-1430 – 32 (10/20/12 Sirlin email to Boling at Worldwide, copying Baker, regarding recordings for Phillips sales indicating problems with gift card vouchers and robocalls);
FTC-LW09-1433 (10/22/12 email from Sirlin to Worldwide regarding Phillips sales, Phillips capping sales at "a little over" 4000 orders);
FTC-LW09-1461 (1/9/13 email from Sirlin to May and Boling at Worldwide regarding Connect America retaining "no good deals" but "still charge us back – WTF").

**84.     Sirlin knows that Defendants' telemarketers have engaged in deceptive acts and practices.**

Dkt. 14-3 at 46, PX 1, Menjivar Dec. Att. B (8/20/13 email from Sirlin to Baker and Worldwide, responding to 8/20/13 email from Baker to Sirlin and May stating "here is a dispute where customer was told she wouldn't have to pay until she activates it. i have gotten others like this. was rick told to remove this from his pitch?");

Dkt. 14-3 at 46, PX 1, Menjivar Dec. Att. B (8/20/13 email from Sirlin to Baker and Worldwide, responding to 8/20/13 email from Baker to Sirlin and May stating "here is a dispute where customer was told she wouldn't have to pay until she activates it. i have gotten others like this. was rick told to remove this from his pitch?");

Dkt. 15-2 at 24, PX 1, Menjivar Dec. Att. O (5/3/12 email from Lifewatch to Worldwide, copying Sirlin and Baker, discussing the "growing" problem of customers being told that they would not be charged until a later time);

Dkt. 51-1 at 15-17, PX 81 Braver Dec. Att. B (5/7/12 letter from consumer to Sirlin informing him of three robocalls he received on behalf of Lifewatch, with spoofed caller IDs,that his number was registered on the DNC list, that the calls claimed endorsement by American Heart Association and American Diabetic Association, that the telemarketer eventually admitted he was working for Lifewatch, and that the robocalls failed to disclose the seller, purpose of the call, or the nature of the goods or services offered);

FTC-LW09-1212 – 1215 (8/6/12 email from Sirlin to Worldwide and Steinmetz sending sample Lifewatch script for Connect America, including claim that "billing cycle doesn't start until you receive the system and activate it");

FTC-LW09-1219 (8/7/12 email from Steinmetz to Worldwide and Sirlin, instructing Worldwide to remove word "free" from script);

FTC-LW09-1258 (8/10/12 email from Worldwide response to Sirlin, copying Steinmetz forwarding complaint from consumer who was told that government program providing medical alert device, "You guys have heard 20 of our pitches");

FTC-LW09-1279 (8/10/12 email from Worldwide email to Sirlin and Steinmetz including certificates and directions on how to redeem grocery coupon upsells);

FTC-LW09-1297 (8/28/12 email from Sirlin to Worldwide asking whether script still says Lifewatch, Lifewatch-Connect America, or Medical Alarm company, and whether it still says device is free; states that Worldwide should stop telemarketing in Pennsylvania because of complaints);

FTC-LW09-1435 (11/6/12 email from Baker to Worldwide stating she and Evan need Worldwide to change script regarding 30 day trial);

FTC-LW09-1459 – 60 (12/12/12 email from Boling of Worldwide to Baker, copying Sirlin and other Lifewatch employee, stating he has "pulled HUNDREDS of recording (sic) for you guys");

FTC-LW09-1473 (3/12/13 email from Worldwide to Baker, copying Sirlin, responding to 3/11/13 Baker email stating that, based on recordings Lifewatch has listened to, confirmation call should no longer say "'you will not be billed until your unit is activated'" because that "doesn't create the sense of urgency that we want our customers to have.");

FTC-LW09-1495 (4/11/13 email from May email to Worldwide, Sirlin, Baker, and other Lifewatch employee, agreeing with Sirlin that they should use 2 or more credit card processors going forward "to spread chargebacks out," which would require Worldwide agents to log in from different companies);

FTC-LW09-1528 (5/9/13 Sirlin email to Worldwide, forwarding 5/9/13 email from Baker saying Lifewatch is "still getting complaints and cancels due to customers being told by reps that their

'loved one' recommended the product"; threatening to go BBB and sue "because we're lying and tricking them into something.");

FTC-LW09-1530 – 31 (5/15/13 email from Sirlin to Worldwide forwarding complaint tied to Worldwide (US Affiliates) of customer being told family member had given product to him);

FTC-LW09-1533 – 35 (5/20/13 email from Baker to Boling at Worldwide, copying Sirlin and May, seeking recording and forwarding Vandewater emails complaining that "They never answer me on recordings");

FTC-LW09-1538 (5/22/13 email from Sirlin to Worldwide instructing Worldwide "Also Wisconsin is giving us trouble-I would not sell there," and forwarding email from Lifewatch customer service to Sirlin, May, and Baker, about "John" robocalls from 5 spoofed caller IDs; "We, at Lifewatch USA, do not make cold calls, do not call out to anyone. Blah blah blah-He finally believed me.");

FTC-LW09-1544 – 45 (6/6/13 email from Sirlin to Worldwide regarding complaint tied to Worldwide and forwarded to Sirlin and May, in which customer was "told the same things as previous accounts," that "'a family member paid 400 for unit'");

FTC-LW09-1546 - 1550 (6/10/13 email from Sirlin to Worldwide, forwarding 6/10/13 email from Connect America CEO to Sirlin and Roman, regarding 2 lawsuits and additional BBB inquiries related to robocalling tied to Lifewatch; ordering Lifewatch "to put a stop to these illegal calls . . . These reckless actions by this call center are costing us money in legal and labor fees and damaging the industry.");

FTC-LW09-1555 (6/14/13 email from Sirlin forwarding complaint to Worldwide from consumer complaining that he was told someone had paid for his device);

FTC-LW09-1556 – 59 (6/18/13 email from Sirlin to Worldwide, asking for information and to add a number to DNC, forwarding customer service email to Sirlin and May from customer who received robocall tied to Lifewatch, and noting she found 24 similar complaints, stating that someone had purchased device for her; customer service representative stated she told customer "Of course I said all the right things—we have nothing to do with them, blah blah blah, and she believes me and feels 'bad' for our company that this will damage our reputation if this other company keeps making these calls lol!");

FTC-LW09-1560 – 62 (6/18/13 email from Sirlin to Worldwide asking for "outgoing message" consumer would have heard, and forwarding 6/18/13 email from Lifewatch customer service representative to Sirlin, May, and Baker regarding consumer's complaint about Lifewatch DNC violations);

FTC-LW09-1563 (6/19/13 email from Sirlin to Worldwide forwarding complaint sent to Sirlin and May from consumer told device was already paid for);

FTC-LW09-1565 – 70 (6/20/13 email from Sirlin to Worldwide requesting that "someone blast seo on internt about scam lifewatch and medical alerts etc etc- So real stupid stuff below goes low down," and forwarding emails from Baker to Sirlin and May with links to nationwide news reports of government alerts and private actions tying Lifewatch to widespread robocall "scam," including false claims that device is free, caller ID spoofing, "trades on the well-known brand of Life Alert," false claims about easy cancellations, false endorsement by American Diabetes Association, violations of DNC registry, and unauthorized use of BBB name and logo in promotional materials.");

FTC-LW09-1571 – 74 (6/20/13 email from Sirlin to Worldwide forwarding complaint from North Dakota Attorney General's office, "Do you info to give outside for worldwide-I know doesn't exist anymore but if you can find original info that be great");

113

FTC-LW09-2019-20 (9/26/11 email from Sirlin to broker and telemarketer confirming that consumers are not billed for their second month until 30 days after they activate the device, and they can get their money back if they never activate the device);

[redacted]







[redacted]

PX 93, Boling Dec. ¶ 37 (Sirlin frequently requested that Worldwide edit troubling content from sales recordings before sending them to Lifewatch).

**85.     Sirlin knows that Defendants' telemarketers have engaged in abusive acts and practices.**

Dkt. 26-12 at 4-5, PX 76, Steinmetz Dec. ¶ 8 (Lifewatch broker stating that "Mr. Sirlin knew that LifeWatch was using telemarketers and that robo-calls were being used by its telemarketers to sell LifeWatch's medical alert systems. Indeed, he and I frequently discussed these issues during the time I worked with LifeWatch. Mr. Sirlin indicated to me that LifeWatch would continue to employ telemarketers that were using robo-calls as long as it could so.");

Dkt. 51-1 at 15-17, PX 81 Braver Dec. Att. B (5/7/12 letter from consumer to Sirlin informing him of three robocalls he received on behalf of Lifewatch, with spoofed caller IDs, that his number was registered on the DNC list, that the calls claimed endorsement by American Heart Association and American Diabetic Association, that the telemarketer eventually admitted he was working for Lifewatch, and that the robocalls failed to disclose the seller, purpose of the call, or the nature of the goods or services offered);

Dkt. 96-1 at 54 (PX 89, Einikis Dec. Att. A) (3/28/14 email from Lifewatch employee forwarding Sirlin 3/26/14 email, copying May and Baker, to telemarketer instructing telemarketing room on upsells, including restaurant.com, grocery coupons, pharmacy discount cards, and smoke alarms);

Dkt. 100-4 at 70, 86, Deposition Transcript of Leslie Steinmetz (volume of sales Worldwide was doing for Lifewatch "were impossible without robo-dialing"; confirming conversation in which Sirlin said Lifewatch would continue to use robocalls.);

FTC-LW09-1279 (8/10/12 email from Worldwide email to Sirlin and Steinmetz including certificates and directions on how to redeem grocery coupon upsells);

FTC-LW09-1280 (8/11/12 email from Sirlin to Boling at Worldwide asking whether they have discontinued particular upsell, offering change in commissions relating to upsell, and suggesting change in script);

FTC-LW09-1297 (8/28/12 email from Sirlin to Worldwide asking whether script still says Lifewatch, Lifewatch-Connect America, or Medical Alarm company, and whether it still says device is free; states that Worldwide should stop telemarketing in Pennsylvania because of complaints);

FTC-LW09-1302 (9/10/12 email from Worldwide to Sirlin responding to request for script relating to grocery coupon upsell);

116

FTC-LW09-1303 (9/10/12 email from Sirlin to Worldwide requesting script relating to grocery coupon upsell);

FTC-LW09-1304 (9/11/12 email from Worldwide email to Sirlin, Steinmetz, and other Lifewatch employees, proposing script relating to grocery coupon upsell);

FTC-LW09-1306 (9/11/12 email from Worldwide email to Sirlin, Baker, and Steinmetz, with proposed letter going to grocery coupon upsell customers of Lifewatch);

FTC-LW09-1307 – 31 (9/17/12 email from Sirlin to Worldwide and Baker at Lifewatch, forwarding 12 complaints from Pennsylvania Attorney General, including multiple robocall complaints, DNC violations, inaccurate caller ID information, violations of DNC requests);

FTC-LW09-1332 - 33 (9/14/12 email from Sirlin to Worldwide reporting complaints from subscribers of "'scam' calls" and asking to be informed as to what "would appear on caller id – so we can legitimate these calls");

FTC-LW09-1333 – 57 (9/17/12 email from Baker to Worldwide, copying Sirlin, instructing Worldwide to "PLEASE STOP CALLING PENNSYLVANIA IMMEDIATELY!!!!; attaching 12 complaints to Worldwide on 9/17/12 from Pennsylvania Attorney General, including multiple robocall complaints, DNC violations, inaccurate caller ID information, violations of DNC requests);

FTC-LW09-1379 - 80 (9/25/12 Sirlin email to Worldwide stating "please stop the coupons for NOW-we can't determine which go to them etc etc-so for all," forwarding threat from Connect America president that they will "terminate" program because of complaints);

FTC-LW09-1381 – 82 (9/28/12 email from Sirlin to Worldwide suggesting alternative upsell, and forwarding email from Connect America president to Sirlin and Steinmetz saying that "NO matter what you say Les, people interpret the offer differently");

FTC-LW09-1383 (9/28/12 email from Sirlin to Worldwide, copying Steinmetz and Modugno, informing them of lawsuit for robocalling by Worldwide to consumer on National Do-Not-Call Registry in New Jersey, who complained of 5 robocalls and went through order process to identify Lifewatch; Sirlin offered $5000, but consumer demanded $30,000);

FTC-LW09-1384 – 85 (9/30/12 email from Sirlin to Worldwide forwarding request from Connect America COO to Sirlin and Steinmetz for list of customers promised grocery vouchers);

FTC-LW09-1389 (10/3/12 email from Sirlin to Worldwide stating that they should change upsell until Connect America is "comfortable with coupons");

FTC-LW09-1390 – 94 (10/3/12 email from Sirlin to Worldwide, "Guys I know this sounds dramatic," forwarding complaints from Connect America about calls to consumers on National Do Not Call list);

FTC-LW09-1404 – 8 (10/9/12 email from Sirlin to Worldwide forwarding complaint from Tennessee Regulatory Authority enclosing 43 violations of state Do-Not-Call Register);

FTC-LW09-1427 (10/16/12 email from Steinmetz to Boling at Worldwide, Sirlin, and Baker, describing problems with grocery coupon upsells);

FTC-LW09-1428 (10/16/12 email from Boling at Worldwide to Sirlin, Steinmetz, and Baker, providing detailed explanation of grocery coupon upsell);

FTC-LW09-1430 – 32 (10/20/12 Sirlin email to Boling at Worldwide, copying Baker, regarding recordings for Phillips sales indicating problems with gift card vouchers and robocalls);

FTC-LW09-1434 (10/26/12 email from Sirlin to Worldwide, copying Steinmetz, saying must stop grocery coupon upsell for Connect America because they are "giving us shit");

FTC-LW09-1521 – 22 (4/22/13 email from Sirlin to Worldwide forwarding 4/22/13 email from Connect America CEO accusing Sirlin of lying about robodialing and misrepresentations

117

resulting in "countless customer complaints," and "found that this was Lifewatch in all cases"; demanding immediate stop);

FTC-LW09-1523 – 24 (4/22/13 email from Sirlin to Worldwide forwarding 4/22/13 email from Connect America CEO to Lifewatch stating "This just keeps getting worse?");

FTC-LW09-1526 (5/7/13 email from Sirlin to Worldwide forwarding 5/7/13 Medical Alarm Monitoring Association (MAMA) "consumer alert" regarding "illegal and fraudulent telemarketing including . . . 'robo-calling'" targeting seniors in sale of medical alert devices);

FTC-LW09-1538 (5/22/13 email from Sirlin instructing Worldwide "Also Wisconsin is giving us trouble-I would not sell there," and forwarding email from Lifewatch customer service to Sirlin, May, and Baker, about "John" robocalls from 5 spoofed caller IDs; customer service representative stated she told customer that "We, at Lifewatch USA, do not make cold calls, do not call out to anyone. Blah blah blah-He finally believed me.");

FTC-LW09-1542 (5/31/13 email from Sirlin to Worldwide, copying May, suggesting upsells and possible pricing options; "Dave doesn't need the extra cash- I am just trying to think of ways to make more upfront money for you guys with out the pressure of increasing sales");

FTC-LW09-1546 - 1550 (6/10/13 email from Sirlin to Worldwide, forwarding 6/10/13 email from Connect America CEO to Sirlin and Roman, regarding 2 lawsuits and additional BBB inquiries related to robocalling tied to Lifewatch; ordering Lifewatch "to put a stop to these illegal calls . . . These reckless actions by this call center are costing us money in legal and labor fees and damaging the industry.");

FTC-LW09-1556 – 59 (6/18/13 email from Sirlin to Worldwide, asking for information and to add a number to DNC, forwarding customer service email to Sirlin and May from customer who received robocall tied to Lifewatch, and noting she found 24 similar complaints, stating that someone had purchased device for her; customer service representative stated she told customer "Of course I said all the right things—we have nothing to do with them, blah blah blah, and she believes me and feels 'bad' for our company that this will damage our reputation if this other company keeps making these calls lol!");

FTC-LW09-1560 – 62 (6/18/13 email from Sirlin to Worldwide asking for "outgoing message" consumer would have heard, and forwarding 6/18/13 email from Lifewatch customer service representative to Sirlin, May, and Baker regarding consumer's complaint about Lifewatch DNC violations);

FTC-LW09-1564 (6/19/13 Sirlin email to Worldwide suggesting upsells and pricing opportunity;

FTC-LW09-1565 – 70 (6/20/13 email from Sirlin to Worldwide requesting that "someone blast seo on internt about scam lifewatch and medical alerts etc etc- So real stupid stuff below goes low down," and forwarding emails from Baker to Sirlin and May with links to nationwide news reports of government alerts and private actions tying Lifewatch to widespread robocall "scam," including false claims that device is free, caller ID spoofing, "trades on the well-known brand of Life Alert," false claims about easy cancellations, false endorsement by American Diabetes Association, violations of DNC registry, and unauthorized use of BBB name and logo in promotional materials.");

FTC-LW09-1571 – 74 (6/20/13 email from Sirlin to Worldwide forwarding complaint from North Dakota Attorney General's office, "Do you info to give outside for worldwide-I know doesn't exist anymore but if you can find original info that be great");

█████████████████████████████████████████████████████████
████████████████████████████████████████████







[redacted]

[redacted]

[redacted]

PX 93, Boling Dec. ¶ 3 ("Lifewatch was aware of the pre-recorded message because Settecase uploaded Sirlin and May's cell phone numbers to the predictive dialer so it would call them and they could hear the pre-recorded message.");

PX 93, Boling Dec. ¶ 39-40 (Lifewatch instructed call centers to never use Lifewatch's name, "so Lifewatch could deny a connection between it and the call centers if a consumer inquired…[d]uring multiple telephone conversations, Sirlin expressed his view that Worldwide telemarketing on behalf of Lifewatch was structured to, in his words, "insulate" Lifewatch from any legal liability for the violations.");

PX 93, Boling Dec. ¶ 41 (Lifewatch aware that caller ID number "was not the actual callback number for Worldwide or Lifewatch. I participated in several telephone conversations with Sirlin and other Lifewatch personnel during which they said they did not care what description appeared on the caller identification for Worldwide telemarketing calls as long as it did not trace back to Lifewatch.");

PX 93, Boling Dec. ¶ 46 (“I had multiple conversations with Sirlin and May about call center operations including the use of predictive dialers and pre-recorded messages also called ‘voice broadcasting’ or ‘robocalling.’”).

**86. Sirlin knew that Worldwide was shut down.**

[redacted]

PX 98, Transcript of Deposition of Sirlin on July 25, 2017, at 87-89 (Sirlin testifying that even at the time Worldwide was shut down, he believed Boling “was known as one of the most knowledgeable, best, creative, smart that every company in America was dealing with him … I felt he was the best expert in the world … and Dave should work with him.”);

**87. Sirlin knows Defendants’ illegal acts and practices continued after Worldwide was shut down.**

Dkt. 96-1 at 54 (PX 89, Einikis Dec. Att. A) (3/28/14 email from Lifewatch employee forwarding Sirlin 3/26/14 email, copying May and Baker, to telemarketer instructing telemarketing room on upsells, including restaurant.com, grocery coupons, pharmacy discount cards, and smoke alarms);

[redacted]





**88.     May has formulated the business practices of Lifewatch and Medguard.**

Dkt. 96-1 at 54 (PX 89, Einikis Dec. Att. A) (3/28/14 email from Lifewatch employee forwarding Sirlin 3/26/14 email, copying May and Baker, to telemarketer instructing telemarketing room on upsells, including restaurant.com, grocery coupons, pharmacy discount cards, and smoke alarms);

FTC-LW09-1538 (5/22/13 email from Sirlin to Worldwide instructing Worldwide "Also Wisconsin is giving us trouble-I would not sell there," and forwarding email from Lifewatch customer service to Sirlin, May, and Baker, about "John" robocalls from 5 spoofed caller IDs; "We, at Lifewatch USA, do not make cold calls, do not call out to anyone. Blah blah blah-He finally believed me.");

FTC-LW09-1542 (5/31/13 email from Sirlin to Worldwide, copying May, suggesting upsells and possible pricing options; "Dave doesn't need the extra cash- I am just trying to think of ways to make more upfront money for you guys with out the pressure of increasing sales");

FTC-LW09-1564 (6/19/13 Sirlin email to Worldwide suggesting upsells and pricing opportunity);

FTC-LW09-2237-2238 (9/10/13 email from Sirlin to broker, Modugno, copying May, stating that it would be a conflict for broker to work for any other seller of medical alert sales, even if not telemarketing);



PX 93, Boling Dec. ¶¶ 47, 48, 50 (Lifewatch gave $200,000 to Worldwide to pay for predictive dialer; "overpaid" Worldwide by $900,000 – 1.2 million to return to Sirlin and May in cash; broker, Matt Eggen, given money to set up at least five new call centers after Worldwide shut down).

**89.     May has supervised the day-to-day business activities of Lifewatch and Medguard.**

FTC-LW09-1461 (1/9/13 email from Sirlin to May and Boling at Worldwide regarding Connect America retaining "no good deals" but "still charge us back – WTF");
FTC-LW09-1495 (4/11/13 email from May email to Worldwide, Sirlin, Baker, and other Lifewatch employee, agreeing with Sirlin that they should use 2 or more credit card processors going forward "to spread chargebacks out," which would require Worldwide agents to log in from different companies);
FTC-LW09-2151 (6/27/13 email from Sirlin to broker, Modugno, copying May and Lifewatch accountant, agreeing to not withhold payment to telemarketer for chargebacks "to help them get back on their feet");
[redacted]





PX 100, Transcript of Deposition of May on July 26, 2017, at 17 (May testifying that one of his roles at Lifewatch was "to plan out inventory" and to be involved with "ordering and purchasing the equipment");
PX 100, Transcript of Deposition of May on July 26, 2017, at 33 (May testifying that he visited Worldwide call centers on 2-4 occasions");
PX 98, Transcript of Deposition of Sirlin on July 25, 2017, at 51-52 (Sirlin testifying that he visited the Worldwide call center, with May and Roman, at least once, and that Boling met visited Lifewatch headquarters at least once).

**90.    May knew of regulatory actions against Lifewatch prior to his joining.**

PX 100, Transcript of Deposition of May on July 26, 2017, at 15 (May testifying that in 2012 he knew about Indiana AG lawsuit against Lifewatch for DNC violations).

**91.    May knows that Defendants' telemarketers have engaged in deceptive acts and practices.**

Dkt. 14-3 at 46, PX 1, Menjivar Dec. Att. B (8/20/13 email from Sirlin to Baker and Worldwide, responding to 8/20/13 email from Baker to Sirlin and May stating "here is a dispute where customer was told she wouldn't have to pay until she activates it.  i have gotten others like this. was rick told to remove this from his pitch?");
FTC-LW09-1459 – 60 (12/12/12 email from Boling of Worldwide to Baker, copying Sirlin and other Lifewatch employee, stating he has "pulled HUNDREDS of recording (sic) for you guys");
FTC-LW09-1495 (4/11/13 email from May email to Worldwide, Sirlin, Baker, and other Lifewatch employee, agreeing with Sirlin that they should use 2 or more credit card processors going forward "to spread chargebacks out," which would require Worldwide agents to log in from different companies);
FTC-LW09-1533 – 35 (5/20/13 email from Baker to Boling at Worldwide, copying Sirlin and May, seeking recording and forwarding Vandewater emails complaining that "They never answer me on recordings");

FTC-LW09-1538 (5/22/13 email from Sirlin to Worldwide instructing Worldwide "Also Wisconsin is giving us trouble-I would not sell there," and forwarding email from Lifewatch customer service to Sirlin, May, and Baker, about "John" robocalls from 5 spoofed caller IDs; "We, at Lifewatch USA, do not make cold calls, do not call out to anyone. Blah blah blah-He finally believed me.");

FTC-LW09-1544 – 45 (6/6/13 email from Sirlin to Worldwide regarding complaint tied to Worldwide and forwarded to Sirlin and May, in which customer was "told the same things as previous accounts," that "'a family member paid 400 for unit'");

FTC-LW09-1546 - 1550 (6/10/13 email from Sirlin to Worldwide, forwarding 6/10/13 email from Connect America CEO to Sirlin and Roman, regarding 2 lawsuits and additional BBB inquiries related to robocalling tied to Lifewatch; ordering Lifewatch "to put a stop to these illegal calls . . . These reckless actions by this call center are costing us money in legal and labor fees and damaging the industry.");

FTC-LW09-1556 – 59 (6/18/13 email from Sirlin to Worldwide, asking for information and to add a number to DNC, forwarding customer service email to Sirlin and May from customer who received robocall tied to Lifewatch, and noting she found 24 similar complaints, stating that someone had purchased device for her; customer service representative stated she told customer "Of course I said all the right things—we have nothing to do with them, blah blah blah, and she believes me and feels 'bad' for our company that this will damage our reputation if this other company keeps making these calls lol!");

FTC-LW09-1565 – 70 (6/20/13 email from Sirlin to Worldwide requesting that "someone blast seo on internt about scam lifewatch and medical alerts etc etc- So real stupid stuff below goes low down," and forwarding emails from Baker to Sirlin and May with links to nationwide news reports of government alerts and private actions tying Lifewatch to widespread robocall "scam," including false claims that device is free, caller ID spoofing, "trades on the well-known brand of Life Alert," false claims about easy cancellations, false endorsement by American Diabetes Association, violations of DNC registry, and unauthorized use of BBB name and logo in promotional materials.");





[redacted]

**92.     May knows that Defendants' telemarketers have engaged in abusive acts and practices.**

Dkt. 96-1 at 54 (PX 89, Einikis Dec. Att. A) (3/28/14 email from Lifewatch employee forwarding Sirlin 3/26/14 email, copying May and Baker, to telemarketer instructing telemarketing room on upsells, including restaurant.com, grocery coupons, pharmacy discount cards, and smoke alarms);

FTC-LW09-1538 (5/22/13 email from Sirlin instructing Worldwide "Also Wisconsin is giving us trouble-I would not sell there," and forwarding email from Lifewatch customer service to Sirlin, May, and Baker, about "John" robocalls from 5 spoofed caller IDs; customer service representative stated she told customer that "We, at Lifewatch USA, do not make cold calls, do not call out to anyone. Blah blah blah-He finally believed me.");

FTC-LW09-1542 (5/31/13 email from Sirlin to Worldwide, copying May, suggesting upsells and possible pricing options; "Dave doesn't need the extra cash- I am just trying to think of ways to make more upfront money for you guys with out the pressure of increasing sales");

FTC-LW09-1546 – 1550 (6/10/13 email from Sirlin to Worldwide, forwarding 6/10/13 email from Connect America CEO to Sirlin and Roman, regarding 2 lawsuits and additional BBB inquiries related to robocalling tied to Lifewatch; ordering Lifewatch "to put a stop to these illegal calls . . . These reckless actions by this call center are costing us money in legal and labor fees and damaging the industry.");

FTC-LW09-1556 – 59 (6/18/13 email from Sirlin to Worldwide, asking for information and to add a number to DNC, forwarding customer service email to Sirlin and May from customer who received robocall tied to Lifewatch, and noting she found 24 similar complaints, stating that someone had purchased device for her; customer service representative stated she told customer "Of course I said all the right things—we have nothing to do with them, blah blah blah, and she believes me and feels 'bad' for our company that this will damage our reputation if this other company keeps making these calls lol!");

FTC-LW09-1560 – 62 (6/18/13 email from Sirlin to Worldwide asking for "outgoing message" consumer would have heard, and forwarding 6/18/13 email from Lifewatch customer service representative to Sirlin, May, and Baker regarding consumer's complaint about Lifewatch DNC violations);

FTC-LW09-1565 – 70 (6/20/13 email from Sirlin to Worldwide requesting that "someone blast seo on internt about scam lifewatch and medical alerts etc etc- So real stupid stuff below goes low down," and forwarding emails from Baker to Sirlin and May with links to nationwide news reports of government alerts and private actions tying Lifewatch to widespread robocall "scam," including false claims that device is free, caller ID spoofing, "trades on the well-known brand of Life Alert," false claims about easy cancellations, false endorsement by American Diabetes Association, violations of DNC registry, and unauthorized use of BBB name and logo in promotional materials.");





[redacted]

PX 93, Boling Dec. ¶ 3 ("Lifewatch was aware of the pre-recorded message because Settecase uploaded Sirlin and May's cell phone numbers to the predictive dialer so it would call them and they could hear the pre-recorded message.");

PX 93, Boling Dec. ¶ 46 ("I had multiple conversations with Sirlin and May about call center operations including the use of predictive dialers and pre-recorded messages also called 'voice broadcasting' or 'robocalling.'").

**93.      May knows Defendants' illegal activities continued after Worldwide was shut down.**

Dkt. 96-1 at 54 (PX 89, Einikis Dec. Att. A) (3/28/14 email from Lifewatch employee forwarding Sirlin 3/26/14 email, copying May and Baker, to telemarketer instructing telemarketing room on upsells, including restaurant.com, grocery coupons, pharmacy discount cards, and smoke alarms);



**94.      Lifewatch, Medguard, and Safe Home Security are jointly owned and controlled by a small circle of the same people.**



**95.      Individuals identifying themselves as SHS employees have managed Lifewatch's and MedGuard's business activities.**



130







[redacted]

[redacted]

[redacted]

PX 101, Transcript of Deposition of Hallowell on August 1, 2017, at 7, 11-12 (Hallowell testifying that while he is not employed by Lifewatch, Safe Home Security, or MedGuard Alert, he oversees customer service, collections, confirmation, and shipping for MedGuard).

**96. The Corporate Defendants share employees.**

[redacted] www.safehomesecurityinc.com [redacted] www.safehomesecurityinc.com [redacted] www.safehomesecurityinc.com [redacted]







[redacted] www.safehomesecurityinc.com [redacted]

www.safehomesecurityinc.com [redacted]

[redacted] KCarducci@safehomesecurityinc.com [redacted] SWeaver@safehomesecurityinc.com [redacted]

www.safehomesecurityinc.com [redacted]

[redacted] www.safehomesecurityinc.com [redacted]

www.safehomesecurityinc.com [redacted]

PX 101, Transcript of Deposition of Hallowell on August 1, 2017, at 7, 11-12 (Hallowell testifying that while he is not employed by Lifewatch, Safe Home Security, or MedGuard Alert, he oversees MedGuard managers for customer service, collections, confirmation, and shipping, including Kevin Carducci and Cathy Hernandez).

**97.     The Corporate Defendants share office space.**

Dkt. 25-9 at 3, PX 41, James Dec. ¶¶ 5-6, Dkt. 17-2 at 25 (Lifewatch customer service representative stating that office is at 975 Middle St., Middletown, Connecticut);
Dkt. 25-9 at 3, Dkt. 17-2 at 39-40 (Lifewatch customer service department phone number playing recorded message thanking caller for calling Safe Home Security);
Dkt. 25-18, PX 50, Mey Dec. at ¶¶ 31, 34, Dkt. 20-1 at 7 (Lifewatch's customer service representative stating office in Connecticut);
Dkt. 25-18, PX 50, Mey Dec. at ¶¶ 31, 34, Dkt. 20-1 at 56 (same);



*Bank v. Lifewatch Inc., et al.*, No. 1:15-cv-2278 (E.D.N.Y. filed Apr. 22, 2015) (complaint alleging telemarketer gave SHS's address as the headquarters for the seller of the medical alert device being offered).

**98.     The business operations and activities of the Corporate Defendants are intertwined.**



135



[redacted]

██████████

PX 98, Transcript of Deposition of Sirlin on July 25, 2017, at 48 (Sirlin testifying that while he does not believe Lifewatch "merged" with SHS, the purpose of Roman's equity investment was to combine the companies' "operations, customer service, etcetera, etcetera, CRM database, health benefits.");

PX 101, Transcript of Deposition of Hallowell on August 1, 2017, at 13 (Hallowell testifying that MedGuard does none of its own marketing);

Transcript of Deposition of Hallowell on August 1, 2017, at 1 (Hallowell testifying that MedGuard customer service representatives answer telephone by saying "Medical Alarms," Lifewatch's d/b/a);

PX 101, Transcript of Deposition of Hallowell on August 1, 2017, at 17-18 (Hallowell testifying that the PERS devices sent to MedGuard's customers have a sticker with the telephone number is (800) 716-1433 on them);

Dkt. 20-2 at 32, PX 1 Menjivar Dec. Att. III (Lifewatch website contact page showing customer service telephone number as 800.716.1433);

PX 101, Transcript of Deposition of Hallowell on August 1, 2017, at 22 (Hallowell testifying that he still personally reviews BBB complaints directed at Lifewatch);

PX 101, Transcript of Deposition of Hallowell on August 1, 2017, at 25 (Hallowell testifying that he keeps tracks of Attorney General's complaints against MedGuard; would "probably" keep track of Attorney General complaints against Lifewatch, but "(w)e don't really get any.").

**99.** **The Corporate Defendants interchangeably bill the same customers for the same services.**

Dkt. 21, PX 3, Tyndall Dec. ¶ 8, Att. E (undercover account billed by both Lifewatch and MedGuard for same purchase);

Dkt. 24-22 at 2, PX 26, Cavic Dec. ¶¶ 4, 5 (Lifewatch customer billed by MedGuard Alert);

Dkt. 25-2 at 3 PX 34, Felker Dec. ¶ 6 (both Lifewatch and MedGuard Alert billed same customer; MedGuard representative said MedGuard was an "affiliate" of Lifewatch);

Dkt. 25-18, PX 50, Mey Dec. at ¶ 34; Dkt. 20-1 at 59 (Lifewatch customer service representative says Lifewatch is Safe Home Security as well, just a "different department" of "the same company.");

Dkt. 25-27 at 4, PX 59, Thill Dec. ¶ 8 (customer billed by both Lifewatch and MedGuard);

FTC-LW16-1330-1331 (1/21/13 email from SHS employee to Baker, copying Roman, stating that SHS will not send letter to Lifewatch customers informing them of the change in billing/monitoring to SHS, that Lifewatch can give out SHS's toll free number to customers, and that the invoice will use Lifewatch-USA header, but the debiting will be done using the name Medguard Alert);

███████████





[redacted]

[redacted]

**100. The Corporate Defendants perform customer service for the same customers.**

[redacted]



LW-FTC-1467-1469 (Lifewatch customer service record for Barry Gates, who testified to call and purchase from Lifewatch-Connect America, Dkt. 25-3, PX 35, and Dkt. 100-6, Deposition of Barry Gates; Lifewatch record shows 11 customer service call handled by "Safe Home" employees; one call was transferred to Kevin Carducci, Lifewatch's Customer Service Manager);
LW-FTC-1476-1483 (Lifewatch customer service record for Diana Mey, who testified to calls and purchases from Lifewatch, Dkt. 25-18, PX 50, Dkt. 51-3, PX 83, and Dkt. 77-1, PX 86; Lifewatch record shows 4 customer service calls handled by "Safe Home" employees);
LW-FTC-1488-1489 (Lifewatch customer service record for Claude Westbrook, who testified at Dkt. 25-30 at 2, PX 62, that he was charged and received equipment from Lifewatch; Lifewatch record shows 3 customer service calls handled by "Safe Home cbello");
Transcript of Preliminary Injunction Hearling dated December 14, 2015, at 79, 82-83, 118 (Baker describing verification calls made by Medguard);
Transcript of Preliminary Injunction Hearling dated December 14, 2015, at 146, 173 (Sirlin describing how Medguard aids fulfillment by Lifewatch);
PX 101, Transcript of Deposition of Hallowell on August 1, 2017, at 16 (Hallowell testifying that MedGuard's customer service telephone number is (800) 716-1433);
Dkt. 20-2 at 32, PX 1 Menjivar Dec. Att. III (Lifewatch website contact page showing customer service telephone number as 800.716.1433).

**101.    The Corporate Defendants collectively market products and services.**





**102. Employees of the Corporate Defendants use the same CRM databases.**

LW-FTC-1467-1469 (Lifewatch customer service record for Barry Gates, who testified to call and purchase from Lifewatch-Connect America, Dkt. 25-3, PX 35, and Dkt. 100-6, Deposition of Barry Gates; Lifewatch record shows 11 customer service call handled by "Safe Home" employees; one call was transferred to Kevin Carducci, Lifewatch's Customer Service Manager); LW-FTC-1476-1483 (Lifewatch customer service record for Diana Mey, who testified to calls and purchases from Lifewatch, Dkt. 25-18, PX 50, Dkt. 51-3, PX 83, and Dkt. 77-1, PX 86; Lifewatch record shows 4 customer service calls handled by "Safe Home" employees); LW-FTC-1488-1489 (Lifewatch customer service record for Claude Westbrook, who testified at Dkt. 25-30 at 2, PX 62, that he was charged and received equipment from Lifewatch; Lifewatch record shows 3 customer service calls handled by "Safe Home cbello").

**103. The Corporate Defendants commingle funds.**

Dkt. 66 at 16, 23, PX 1, Declaration of Roberto Menjivar, Att. V (redacted) (Lifewatch financial statements listing more than $34 million in sales of customer contracts to SHS.)











[redacted]

[redacted]

[redacted]

**104. Defendants marketed customer accounts at 30-50 times the monthly rate ("RMR") paid by consumers.**

Dkt. 24-8 at 5, PX 12, Hendricksen Dec. ¶ 13 (president of PERS company that sells to consumers and also monitors accounts for its own customers and other PERS companies, including Lifewatch, stating that the average PERS account lasts 3 ½ years);

[redacted]





[redacted]

**105. Medguard's purchases of Lifewatch customer accounts were below market rate.**

[redacted]

**106. Defendants' revenue from the sale of PERS was $[redacted] in 2011, and at least $[redacted], $[redacted] in 2013, $38.1 million in 2014, $[redacted] in 2015, and $[redacted] in 2016..**

[redacted]



Respectfully Submitted,

Dated: January 1, 2018

 /s/David A. O'Toole
DAVID A. O'TOOLE
SAMANTHA GORDON
Federal Trade Commission, Midwest Region
55 West Monroe Street, Suite 1825
Chicago, Illinois 60603
Telephone: (312) 960-5634
Facsimile: (312) 960-5600
Email: sgordon@ftc.gov

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

PAMELA JO BONDI
Attorney General
State of Florida

 /s/Denise Beamer
DENISE BEAMER
Assistant Attorney General
Office of the Attorney General
Consumer Protection Division
135 W. Central Blvd., Suite 670
Orlando, Florida 32801
Telephone:  (407) 316-4840
Facsimile:  (407) 245-0365

Attorneys for Plaintiff
STATE OF FLORIDA
OFFICE OF THE ATTORNEY GENERAL