**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

FEDERAL TRADE COMMISSION, )
STATE OF FLORIDA, OFFICE OF THE )
ATTORNEY GENERAL, DEPARTMENT )
OF LEGAL AFFAIRS, )        Case No. 15cv5781
                                      )
            Plaintiffs, )
                                      )        Judge Gary Feinerman
             v. )
                                        )
 LIFEWATCH INC., a New York corporation, )
also d/b/a LIFEWATCH USA and MEDICAL )
ALARM SYSTEMS, )
                                        )
SAFE HOME SECURITY, INC., a )
Connecticut corporation, )
                                        )
MEDGUARD ALERT, INC., a Connecticut )
corporation, )
                                        )
EVAN SIRLIN, individually and as an officer )
or manager of Lifewatch Inc., )
                                        )
MITCHEL MAY, individually and as an officer or )
manager of Lifewatch Inc., and )
                                        )
DAVID ROMAN, individually and as an officer )
or manager of Lifewatch Inc., Safe Home Security, )
Inc., and MedGuard Alert, Inc. )
                          Defendants. )
_____)

**DEFENDANTS' JOINT ADDITIONAL STATEMENTS OF FACT**

1

Pursuant to Local Rule 56.1(b)(3)(C), defendants submit the following statement of additional facts that require the denial of summary judgment:

1. **Lifewatch's customer origination was not accomplished solely through outbound telemarketing.**

- Ex. A, Att. 1 (American MD Today Aff.), ¶ 6 (compliant with Stipulated Judgment and Permanent Injunction); ¶ 7 (no accounts sold to Lifewatch originated with outbound telemarketing).
- Ex. A, Att. 2 (Bevan Enterprises Inc. Aff.), ¶ 6 (compliant with Stipulated Judgment and Permanent Injunction); ¶ 7 (no accounts sold to Lifewatch originated with outbound telemarketing).
- Ex., Att. 3 (Constant Connectivity Inc. Aff.), ¶ 6 (compliant with Stipulated Judgment and Permanent Injunction); ¶ (3% of accounts sold to Lifewatch originated with outbound telemarketing).
- Ex. A, Att. 4 (Deal Direct Marketing Consultants Aff.), ¶ 6 (compliant with Stipulated Judgment and Permanent Injunction); ¶ 7 (zero to 50% of accounts sold to Lifewatch originated with outbound telemarketing).
- Ex. A, Att. 5 (G Energy Solutions LLC Aff.), ¶ 6 (compliant with Stipulated Judgment and Permanent Injunction); ¶ 7 (no accounts sold to Lifewatch originated with outbound telemarketing).
- Ex. A, Att. 6 (Live Stress Free 24 7 LLC Aff.), ¶ 6 (compliant with Stipulated Judgment and Permanent Injunction); ¶ 7 (no accounts sold to Lifewatch originated with outbound telemarketing).
- Ex. A, Att. 7 (Dennis Michael LLC Aff.), ¶ 6 (compliant with Stipulated Judgment and Permanent Injunction); ¶ 7 (40% of accounts sold to Lifewatch originated with outbound telemarketing).
- Ex. A, Att. 8 (MLA International, Inc. Aff.), ¶ 6 (compliant with Stipulated Judgment and Permanent Injunction); ¶ 7 (10% of accounts sold to Lifewatch originated with outbound telemarketing).
- Ex. A, Att. 9 (Music City Ventures, Inc. Aff.), ¶ 6 (compliant with Stipulated Judgment and Permanent Injunction); ¶ 7 (no accounts sold to Lifewatch originated with outbound telemarketing).
- Ex. A, Att. 10 (Nationwide Venture Inc. Aff.), ¶ 6 (compliant with Stipulated Judgment and Permanent Injunction); ¶ 7 (3% of accounts sold to Lifewatch originated with outbound telemarketing).
- Ex. A, Att. 11 (Source One Consumer Solutions LLC Aff.), ¶ 6 (compliant with Stipulated Judgment and Permanent Injunction); ¶ 7 (35% of accounts sold to Lifewatch originated with outbound telemarketing).
- Ex. A, Att. 12 (Prodigy Consulting Group LLC Aff.), ¶ 6 (compliant with Stipulated Judgment and Permanent Injunction); ¶ 7 (no accounts sold to Lifewatch originated with outbound telemarketing).
- Ex. A, Att. 13 (Rescue Me Alert Aff.), ¶ 6 (compliant with Stipulated Judgment and Permanent Injunction); ¶ 7 (no accounts sold to Lifewatch originated with outbound telemarketing).

- Ex. A, Att. 14 (Rescue Medical Alert LLC Aff.), ¶ 6 (compliant with Stipulated Judgment and Permanent Injunction); ¶ 7 (no accounts sold to Lifewatch originated with outbound telemarketing).
- Ex. A, Att. 15 (Senior Alert Specialist Aff.), ¶ 6 (compliant with Stipulated Judgment and Permanent Injunction); ¶ 7 (15% of accounts sold to Lifewatch originated with outbound telemarketing).
- Ex. A, Att. 16 (Senior Assist Network Aff.), ¶ 6 (compliant with Stipulated Judgment and Permanent Injunction); ¶ 7 (26% of accounts sold to Lifewatch originated with outbound telemarketing).
- Ex. A, Att. 17 (Senior Benefits Specialist Aff.), ¶ 6 (compliant with Stipulated Judgment and Permanent Injunction); ¶ 7 (15% of accounts sold to Lifewatch originated with outbound telemarketing).
- Ex. A, Att. 18 (Senior Medical Alerts Systems LLC Aff.), paragraph 6 (compliant with Stipulated Judgment and Permanent Injunction); paragraph 7 (20% of accounts sold to Lifewatch originated with outbound telemarketing).
- Ex. A, Att. 19 (Telecommunications America Inc. Aff.), ¶ 6 (compliant with Stipulated Judgment and Permanent Injunction); ¶ 7 (6% of accounts sold to Lifewatch originated with outbound telemarketing).
- Ex. A, Att. 20 (Tele America Response Inc. Aff.), ¶ 6 (compliant with Stipulated Judgment and Permanent Injunction); ¶ 7 (3% of accounts sold to Lifewatch originate with outbound telemarketing).
- Ex. B, Sirlin Affidavit, paragraphs 6 and 7.

**2. Lifewatch spent significant money on non-outbound telemarketing and opt-in leads and generated a measurable portion of its customer pool through these efforts.**

- Ex. B, Sirlin Affidavit, paragraphs 6 and 7.
- Dkt. 66 at 19-20, 26-27, PX 1, Menjivar Dec. Att. V (Redacted); (Lifewatch Profit & Loss statements for 2013 and January – August 2014, showing amount Lifewatch spent on advertising);
- FTC-LW17-402 - 405, Housein Karachopan Dep. (Lifewatch broker, stating that Lifewatch purchased leads)
- Ex. F, Houssein Karachopan Aff., ¶¶ 1-3 (purchased an opt-in lead and called)
- FTC-LW17-292 - 293, Matthew Eggen Dep. by the Texas Attorney General (stating that Lifewatch purchased leads);
- FTC-LW16-150-153 (3/16/12 emails to Sirlin says he has leads);
- FTC-LW16-59 – 60 (11/28/11 email noting that customer leads would be sent to Lifewatch that day);
- Dkt. 296-4, Sirlin Aff., ¶ 25 (Lifewatch received inbound calls from TV advertising);
- Dkt. 22-1, Att. W, indicating that Senior Medical Alert received lead-generated, inbound calls to Lifewatch.

3. **Lifewatch entered into hundreds of purchase agreements with outside sellers and generated revenue as a result of accounts originated by these outside sellers.**
   - Dkt. 15-1 at 10-11, 18, 21-22, PX 1, Menjivar Dec. Att. I (Lifewatch response to CID identifying more than 100 call centers Lifewatch had employed by June 5, 2014);
   - Ex. C, Report of Kevin Flaherty, Schedule A.

4. **Chargeback rate varied among Lifewatch's outside sellers**
   - Ex. C, Report of Kevin Flaherty, Schedule A.

5. **Lifewatch's relationships with its outside sellers were not exclusive.**
   - Doc. 19-1 at 68-69 ("During one sales call, a telemarketer explained to the consumer that "[t]here's three different alert systems. We have ADP, Life Alert, and then this—our company does Medical Alert, which is medical alarm system.");
   - Doc. 22-1 at ¶ 32 (Lifewatch outside seller reporting to the FDACS that it sells for three medical alert providers);
   - FTC-LW-09-1193-96 (WWIS identifies its script for sales of Philips Lifeline medical alert devices (800 foot range, absolutely free, live operators are fully trained EMTs), not Lifewatch's devices.
   - FTC-LW09-1202-1205 (WWIS identifies scripts for sales of Philips Lifeline medical alert devices and First Street medical alert devices);
   - FTC-LW09-1300 (Communications between Worldwide and First Street's Tim Hague, Jennifer Hancock, and Jo Hayden about getting paid for First Street sales);
   - PX 91, Declaration of Michael Robinson ¶¶ 3-5, 7 (worked for telemarketers who sold PERS for Lifewatch, Medical Guardian and a Chinese company);
   - Exhibit L, LW-FTC-01413 – 1439 (12/1/15 email from Isaac Cohen of Rescue Med Alert, outside seller for Lifewatch attaching his PERS customer origination contracts with Medical Guardian and Connect America);
   - Exhibit M, LW-FTC-1440 (Communication from Lifewatch outside seller, TMI, indicating that they sell for PERS companies, Lifestation, Life Monitor, Trust One, and Advantage Alert.

6. **Lifewatch sent out costly medical alert equipment to customers and only charged the customer for monthly monitoring.**
   - Dkt. 296-5, p. 147-149, Sirlin testifying about the business model.
   - Dkt. 296-16, Sirlin Aff.
   - Dkt. 296-12, Flaherty Report; Flaherty Report, Exhibit C, generally.

7. **Lifewatch often cancelled accounts upon request and refunded customers without charging for the equipment or receiving the equipment.**
   - Exhibit D, Cohen Declaration.
   - Dkt. 296-16, Sirlin Declaration.
   - Dkt. 296-12, Flaherty Report

8. **In originating customer accounts for Lifewatch, outside sellers did not state that a friend, family member, health care provider, or other acquaintance of the consumer referred the consumer to Defendants, or purchased the medical alert system for the consumer.**

- Ex. E, Att. 1 (Agent Med Alert Aff.), ¶ 11 (no misrepresentations); ¶ 15 (complies with Lifewatch requirements); ¶ 16 (no use of autodialer, robocalling, or call-spoofing); ¶ 17 (does not call DNC registrants).
- Ex. E, Att. 2 (American MD Today Aff.), ¶ 11 (no misrepresentations); ¶ 15 (complies with Lifewatch requirements); ¶ 16 (no use of autodialer, robocalling, or call-spoofing); ¶ 19 (does not call DNC registrants).
- Ex. E, Att. 3 (Asian Global Creation Phils., Inc. Declaration), ¶¶ 8-11 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 12 (no robocalling); ¶ 13 (does not call DNC registrants); ¶ 15 (does not use scripts with the words "Life Alert").
- Ex. E, Att. 4 (Beltrami Caduceus, Inc. Aff.), ¶¶ 8-11 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 12 (no robocalling); ¶ 13 (does not call DNC registrants); ¶ 15 (does not use scripts with the words "Life Alert").
- Ex. E, Att. 5 (Better Be Healthy Aff.), ¶¶ 8-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 11 (no misrepresentations, complies with Lifewatch requirements, no robocalling or call spoofing, and does not call DNC registrants).
- Ex. E, Att. 6 (Bevin Enterprises Inc. Aff.), ¶¶ 8-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 11 (no misrepresentations); ¶ 15 (complies with Lifewatch requirements); ¶ 16 (no use of autodialer, robocalling, or call-spoofing); ¶ 19 (does not call DNC registrants).
- Ex. E, Att. 7 (Constant Connectivity Inc. Aff.), ¶¶ 8-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 11 (no misrepresentations); ¶ 15 (complies with Lifewatch requirements); ¶ 16 (no use of autodialer, robocalling, or call-spoofing); ¶ 19 (does not call DNC registrants).
- Ex. E, Att. 8 (Direct Agent Response Aff.), ¶¶ 7-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 12 (no robocalling); ¶ 13 (does not call DNC registrants); ¶ 15 (does not use scripts with the words "Life Alert").
- Ex. E, Att. 9 (Fresh Fruit & Marketing first Aff.), ¶¶ 7-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 12 (no robocalling); ¶ 13 (does not call DNC registrants); ¶ 15 (does not use scripts with the words "Life Alert").
- Ex. E, Att. 10 (Fresh Fruit & Marketing, second Aff.), ¶¶ 4 (no use of trademarks); ¶ 6 (no initiation of robocalls).
- Ex. E, Att. 11 (G Energy Solutions Aff.), ¶¶ 8-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 11 (no misrepresentations); ¶ 15 (complies with Lifewatch requirements); ¶ 16 (no use of autodialer, robocalling, or call-spoofing); ¶ 19 (does not call DNC registrants).
- Ex. E, Att. 12 (The Guardian Card Aff.), ¶¶ 8-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 11 (no misrepresentations); ¶ 15 (complies with Lifewatch requirements); ¶ 16 (no use of autodialer, robocalling, or call-spoofing); ¶ 17 (does not call DNC registrants).
- Ex. E, Att. 13 (InService America Aff.), ¶¶ 7-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 12 (no robocalling); ¶ 13 (does not call DNC registrants); ¶ 15 (does not use scripts with the words "Life Alert").

- Ex. E, Att. 14 (Instinctive Edge Aff.), ¶¶ 7-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 12 (no robocalling); ¶ 13 (does not call DNC registrants); ¶ 15 (does not use scripts with the words "Life Alert").
- Ex. E, Att. 15 (JAMP Promotions Aff.), ¶¶ 7-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 12 (no robocalling); ¶ 13 (does not call DNC registrants); ¶ 15 (does not use scripts with the words "Life Alert").
- Ex. E, Att. 16 (SMA Aff.), ¶¶ 8-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 11 (no misrepresentations); ¶ 15 (complies with Lifewatch requirements); ¶ 16 (no use of autodialer, robocalling, or call-spoofing); ¶ 19 (does not call DNC registrants).
- Ex. E, Att. 17 (Live Stress Free 24 7 LLC Aff.), ¶¶ 8-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 11 (no misrepresentations); ¶ 15 (complies with Lifewatch requirements); ¶ 16 (no use of autodialer, robocalling, or call-spoofing); ¶ 19 (does not call DNC registrants).
- Ex. E, Att. 18 (Master TMI Aff.), ¶¶ 8-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 11 (no misrepresentations); ¶ 15 (complies with Lifewatch requirements); ¶ 16 (no use of autodialer, robocalling, or call-spoofing); ¶ 17 (does not call DNC registrants).
- Ex. E, Att. 19 (Mayhem Innovations LLC first Aff.), ¶ 5 (compliant with all state and federal laws); ¶ 6 (compliant with Stipulated Judgement and Permanent Injunction).
- Ex. E, Att. 20 (Mayhem Innovations LLC second Aff.), ¶¶ 8-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 11 (no misrepresentations); ¶ 15 (complies with Lifewatch requirements); ¶ 16 (no use of autodialer, robocalling, or call-spoofing); ¶ 17 (does not call DNC registrants).
- Ex. E, Att. 21 (Med Alert 2 Aff.), ¶¶ 8-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 11 (no misrepresentations); ¶ 15 (complies with Lifewatch requirements); ¶ 16 (no use of autodialer, robocalling, or call-spoofing); ¶ 19 (does not call DNC registrants).
- Ex. E, Att. 22 (Med Alert 3 Aff.), ¶¶ 8-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 11 (no misrepresentations); ¶ 15 (complies with Lifewatch requirements); ¶ 16 (no use of autodialer, robocalling, or call-spoofing); ¶ 19 (does not call DNC registrants).
- Ex. E, Att. 23 (Med Alert 4 Aff.), ¶¶ 8-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 11 (no misrepresentations); ¶ 15 (complies with Lifewatch requirements); ¶ 16 (no use of autodialer, robocalling, or call-spoofing); ¶ 19 (does not call DNC registrants).
- Ex. E, Att. 24 (Dennis Michael LLC Aff.), ¶¶ 8-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 11 (no misrepresentations); ¶ 15 (complies with Lifewatch requirements); ¶ 16 (no use of autodialer, robocalling, or call-spoofing); ¶ 19 (does not call DNC registrants).
- Ex. E, Att. 25 (MLA International Aff.), ¶¶ 8-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 11 (no misrepresentations); ¶ 15 (complies with Lifewatch requirements); ¶ 16 (no use of autodialer, robocalling, or call-spoofing); ¶ 19 (does not call DNC registrants).

- Ex. E, Att. 26 (Motivated Marketing Declaration), ¶¶ 7-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 12 (no robocalling); ¶ 13 (does not call DNC registrants); ¶ 15 (does not use scripts with the words "Life Alert").
- Ex. E, Att. 27 (Music City Ventures, Inc. Aff.), ¶¶ 8-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 11 (no misrepresentations); ¶ 15 (complies with Lifewatch requirements); ¶ 16 (no use of autodialer, robocalling, or call-spoofing); ¶ 19 (does not call DNC registrants).
- Ex. E, Att. 28 (Nationwide Ventures Aff.), ¶¶ 8-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 11 (no misrepresentations); ¶ 15 (complies with Lifewatch requirements); ¶ 16 (no use of autodialer, robocalling, or call-spoofing); ¶ 19 (does not call DNC registrants).
- Ex. E, Att. 29 (Nationwide Ventures, Inc. Aff.) (Lifewatch does not control, supervise or oversee telemarketing, no misrepresentations made, complies with Lifewatch requirements, does not use of autodialer, robocalling, or call-spoofing, and does not call DNC registrants).
- Ex. E, Att. 30 (Nick-USA Declaration), ¶¶ 7-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 12 (no robocalling); ¶ 13 (does not call DNC registrants); ¶ 15 (does not use scripts with the words "Life Alert").
- Ex. E, Att. 31 (Source One Consumer Solutions LLC Aff.), ¶¶ 8-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 11 (no misrepresentations); ¶ 15 (complies with Lifewatch requirements); ¶ 16 (no use of autodialer, robocalling, or call-spoofing); ¶ 19 (does not call DNC registrants).
- Ex. E, Att. 32 (Payless Solutions first Aff.), ¶¶ 7-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 12 (no robocalling); ¶ 13 (does not call DNC registrants); ¶ 15 (does not use scripts with the words "Life Alert").
- Ex. E, Att. 33 (Payless Solutions second Aff.), ¶ 3 (no use of trademarks).
- Ex. E, Att. 34 (Preferred Data Management Inc. Aff.), ¶¶ 8-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 11 (no misrepresentations); ¶ 15 (complies with Lifewatch requirements); ¶ 16 (no use of autodialer, robocalling, or call-spoofing); ¶ 19 (does not call DNC registrants).
- Ex. E, Att. 35 (Prium Plans Aff.), ¶¶ 8-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 11 (no misrepresentations); ¶ 15 (complies with Lifewatch requirements); ¶ 16 (no use of autodialer, robocalling, or call-spoofing); ¶ 19 (does not call DNC registrants).
- Ex. E, Att. 36 (Prodigy Consulting Group LLC Aff.), ¶¶ 8-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 11 (no misrepresentations); ¶ 15 (complies with Lifewatch requirements); ¶ 16 (no use of autodialer, robocalling, or call-spoofing); ¶ 19 (does not call DNC registrants).
- Ex. E, Att. 37 (Provative Options Aff.), ¶¶ 8-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 11 (no misrepresentations); ¶ 15 (complies with Lifewatch requirements); ¶ 16 (no use of autodialer, robocalling, or call-spoofing); ¶ 19 (does not call DNC registrants).
- Ex. E, Att. 38 (Quality Services Network Aff.), ¶¶ 8-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 11 (no misrepresentations); ¶ 15 (complies with Lifewatch requirements); ¶ 16 (no use of autodialer, robocalling, or call-spoofing); ¶ 19 (does not call DNC registrants).

- Ex. E, Att. 39 (Rescue Me Alert Aff.), ¶¶ 8-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 11 (no misrepresentations); ¶ 15 (complies with Lifewatch requirements); ¶ 16 (no use of autodialer, robocalling, or call-spoofing); ¶ 19 (does not call DNC registrants).
- Ex. E, Att. 40 (Rescue Medical Alert LLC Aff.), ¶¶ 8-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 11 (no misrepresentations); ¶ 15 (complies with Lifewatch requirements); ¶ 16 (no use of autodialer, robocalling, or call-spoofing); ¶ 19 (does not call DNC registrants).
- Ex. E, Att. 41 (S2 Ventures Aff.), ¶¶ 8-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 11 (no misrepresentations); ¶ 15 (complies with Lifewatch requirements); ¶ 16 (no use of autodialer, robocalling, or call-spoofing); ¶ 19 (does not call DNC registrants).
- Ex. E, Att. 42 (SafeGuard Security Aff.), ¶¶ 8-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 11 (no misrepresentations); ¶ 15 (complies with Lifewatch requirements); ¶ 16 (no use of autodialer, robocalling, or call-spoofing); ¶ 19 (does not call DNC registrants).
- Ex. E, Att. 43 (Security Alert, Inc. Aff.), ¶¶ 7-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 12 (no robocalling); ¶ 13 (does not call DNC registrants); ¶ 15 (does not use scripts with the words "Life Alert").
- Ex. E, Att. 44 (Senior Alert Specialist Aff.), ¶¶ 8-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 11 (no misrepresentations); ¶ 15 (complies with Lifewatch requirements); ¶ 16 (no use of autodialer, robocalling, or call-spoofing); ¶ 19 (does not call DNC registrants).
- Ex. E, Att. 45 (Senior Assist Network Aff.), ¶¶ 8-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 11 (no misrepresentations); ¶ 15 (complies with Lifewatch requirements); ¶ 16 (no use of autodialer, robocalling, or call-spoofing); ¶ 19 (does not call DNC registrants).
- Ex. E, Att. 46 (Senior Beneficial Network Aff.), ¶¶ 8-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 11 (no misrepresentations); ¶ 15 (complies with Lifewatch requirements); ¶ 16 (no use of autodialer, robocalling, or call-spoofing); ¶ 19 (does not call DNC registrants).
- Ex. E, Att. 47 (Senior Benefit Specialists Aff.), ¶¶ 8-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 11 (no misrepresentations); ¶ 15 (complies with Lifewatch requirements); ¶ 16 (no use of autodialer, robocalling, or call-spoofing); ¶ 19 (does not call DNC registrants).
- Ex. E, Att. 48 (SHMS Marketing Solutions LLC Aff.), ¶¶ 8-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 11 (no misrepresentations); ¶ 15 (complies with Lifewatch requirements); ¶ 16 (no use of autodialer, robocalling, or call-spoofing); ¶ 19 (does not call DNC registrants).
- Ex. E, Att. 49 (The Solution Center Declaration), ¶¶ 7-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 12 (no robocalling); ¶ 13 (does not call DNC registrants); ¶ 15 (does not use scripts with the words "Life Alert").
- Ex. E, Att. 50 (Tele America Response Inc. Aff.), ¶¶ 8-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 11 (no misrepresentations); ¶ 15 (complies with Lifewatch requirements); ¶ 16 (no use of autodialer, robocalling, or call-spoofing); ¶ 19 (does not call DNC registrants).

- Ex. E, Att. 51 (Telecommunications America Inc. Aff.), ¶¶ 8-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 11 (no misrepresentations); ¶ 15 (complies with Lifewatch requirements); ¶ 16 (no use of autodialer, robocalling, or call-spoofing); ¶ 19 (does not call DNC registrants).
- Ex. E, Att. 52 (Ultino Communications Group Aff.), ¶¶ 8-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 11 (no misrepresentations); ¶ 15 (complies with Lifewatch requirements); ¶ 16 (no use of autodialer, robocalling, or call-spoofing); ¶ 17 (does not call DNC registrants).
- Ex. E, Att. 53 (Worldwide Info Services Declaration) ¶¶ 6-9 (Lifewatch does not control, supervise or oversee telemarketing).
- See, e.g. Dkt 23-1 at 65 (script).
- Dkt. 23-1 at 125, Att. CCC (script);
- Dkt. 23-1, Att. HHH (script);
- Dkt. 23-1, Att. NNN (script);
- Dkt. 23-1, Att. OOO (script);
- Dkt. 23-1, Att. WWW (script);
- Dkt. 23-1, Att. BBBB (script);
- Dkt 22-3, Att. Q, T, and GG, MM (script);
- Dkt. 23-1, Att. UU, CCC, HHH, NNN, OOO, WWW, and BBBB (scripts);
- Dkt. 22-2, Att. E. Att. K, Q, T, DD, FF, GG,II, MM (scripts);
- Dkt. 21-1, Att. A., B, C, F, G (call recording transcript);
- Dkt. 21-2, Att. A (call recording transcript);
- Dkt. 19-1, Att. NN, Att. PP, RR (call recording transcript);
- Dkt. 26-8, Att. A, B, and C (call recording transcript);
- Dkt.51-1, 7-13 (call recording transcript);
- Dkt 51-2, P. 6-10 (call recording transcript);
- PX1, Attachment AA, (the telemarketer does not mention an endorsement; explicitly indicates that the equipment itself is provided at no cost but that the consumer pays the monthly monitoring fee and would be charged for a failure to return the equipment after cancellation; does not mention that the device has been purchased by a friend or family member; and does not indicate that the consumer must activate before he is charged).
- PX1, Attachment ZZ and PX2, Attachments A-G, and PX3 (the telemarketer does not mention an endorsement; explicitly indicates that the equipment itself is provided at no cost but that the consumer pays the monthly monitoring fee; does not mention that the device has been purchased by a friend or family member; and does not indicate that the consumer must activate before she is charged).

9. **In originating customer accounts for Lifewatch, outside sellers did not state that Lifewatch's medical alert system is endorsed by reputable organizations, including, but not limited to, the American Heart Association, the American Diabetes Association, the National Institute on Aging, the AARP, and the American Red Cross.**

- Dkt. 22-3 at 50, Att. T at 1;
- Dkt 22-3 at 125, Att. GG;
- Dkt 22-3 at 140, Att. II;
- Dkt. 22-3 at 171, Att. MM;

- Dkt. 23-1 at 64, Att. UU;
- Dkt. 23-1 at 99, Att. XX;
- Dkt 23-1 at 124, Att. CCC;
- Dkt 26-16 at 9;
- Dkt 26-16 AT 65, Att. D ("script").
- Dkt. 21-2, p. 43
- PX1, Attachment AA, (the telemarketer does not mention an endorsement; explicitly indicates that the equipment itself is provided at no cost but that the consumer pays the monthly monitoring fee and would be charged for a failure to return the equipment after cancellation; does not mention that the device has been purchased by a friend or family member; and does not indicate that the consumer must activate before he is charged).
- PX1, Attachment ZZ and PX2, Attachments A-G, and PX3 (the telemarketer does not mention an endorsement; explicitly indicates that the equipment itself is provided at no cost but that the consumer pays the monthly monitoring fee; does not mention that the device has been purchased by a friend or family member; and does not indicate that the consumer must activate before she is charged).

10. **In originating customer accounts for Lifewatch, outside sellers did not state that consumers will not be charged the first monitoring fee until they have received and activated the medical alert system**
- PX1, Att. A, indicates that the device is free and indicates that "you pay absolutely nothing for the system…the only thing you are responsible for *today* is the emergency medical monitoring fee."
- PX1, Att. AA, (the telemarketer does not mention an endorsement; explicitly indicates that the equipment itself is provided at no cost but that the consumer pays the monthly monitoring fee and would be charged for a failure to return the equipment after cancellation; does not mention that the device has been purchased by a friend or family member; and does not indicate that the consumer must activate before he is charged).
- PX1, Att. ZZ and PX2, Attachments A-G, and PX3 (the telemarketer does not mention an endorsement; explicitly indicates that the equipment itself is provided at no cost but that the consumer pays the monthly monitoring fee; does not mention that the device has been purchased by a friend or family member; and does not indicate that the consumer must activate before she is charged).
- Dkt. 23-1 at 65 includes the statement: "Now this is just a reminder the $34.95 will be charged *TODAY* and EVERY month after as long as you decide to keep the system but you can cancel at any time with no cancellation fees you just have to send back the equipment and you will never be charged again."
- Dkt. 23-1 at 125, Att. CCC indicates that the device is free and indicates that "you pay absolutely nothing for the system…the only thing you are responsible for *today* is the emergency medical monitoring fee."
- Dkt. 23-1, Att. HHH indicates that the device is free and indicates that "you pay absolutely nothing for the system…the only thing you are responsible for *today* is the emergency medical monitoring fee."
- Dkt. 23-1, Att. NNN indicates that the device is free and indicates that "you pay absolutely nothing for the system…the only thing you are responsible for *today* is the emergency medical monitoring fee."

- Dkt. 23-1, Att. OOO indicates that the device is free and indicates that "you pay absolutely nothing for the system…the only thing you are responsible for *today* is the emergency medical monitoring fee."
- Dkt. 23-1, Att. WWW indicates that the device is free and indicates that "you pay absolutely nothing for the system…the only thing you are responsible for *today* is the emergency medical monitoring fee."
- Dkt. 23-1, Att. BBBB indicates that the device is free and indicates that "you pay absolutely nothing for the system…the only thing you are responsible for *today* is the emergency medical monitoring fee."
- Dkt 22-3, Att. Q, T, and GG, MM indicate that the device is free and indicates that "you pay absolutely nothing for the system…the only thing you are responsible for *today* is the emergency medical monitoring fee."
- Dkt. 23-1, Att. UU, CCC, HHH, NNN, OOO, WWW, and BBBB indicate that the device is free and indicates that "you pay absolutely nothing for the system…the only thing you are responsible for *today* is the emergency medical monitoring fee.
- Dkt. 19-2, p. 50, (call transcript) the system itself is free but that you have to pay a monthly monitoring fee "today."

**11. In originating customer accounts for Lifewatch, outside sellers did not state that consumers may cancel the monitoring service at any time without any further financial obligation.**
- See Dkt. 23-1 at 66 ("you can cancel at any time with no cancellation fees you just have to send back the equipment and you will never be charged again.");
- Dkt. 23-1 at 37-38 ("There will be no contract, and you can cancel at any time. If you are ever dissatisfied with our service, simply send us back the monitoring equipment and you will never be billed again).
- PX2, Attachments F and G, (the telemarketer indicates that the customer has to ship back the unit and the telemarketer indicates that if the customer cancels the service but keeps the equipment, the customer will be charged for the equipment.)
- PX1, Attachment AA, (the telemarketer does not mention an endorsement; explicitly indicates that the equipment itself is provided at no cost but that the consumer pays the monthly monitoring fee and would be charged for a failure to return the equipment after cancellation; does not mention that the device has been purchased by a friend or family member; and does not indicate that the consumer must activate before he is charged).
- PX1, Attachment ZZ and PX2, Attachments A-G, and PX3 (the telemarketer does not mention an endorsement; explicitly indicates that the equipment itself is provided at no cost but that the consumer pays the monthly monitoring fee; does not mention that the device has been purchased by a friend or family member; and does not indicate that the consumer must activate before she is charged).

**12. In originating customer accounts for Lifewatch, outside sellers did not engage in violative telemarketing practices.**
- Ex. E, Att. 1 (Agent Med Alert Aff.), ¶ 11 (no misrepresentations); ¶ 15 (complies with Lifewatch requirements); ¶ 16 (no use of autodialer, robocalling, or call-spoofing); ¶ 17 (does not call DNC registrants).

- Ex. E, Att. 2 (American MD Today Aff.), ¶ 11 (no misrepresentations); ¶ 15 (complies with Lifewatch requirements); ¶ 16 (no use of autodialer, robocalling, or call-spoofing); ¶ 19 (does not call DNC registrants).
- Ex. E, Att. 3 (Asian Global Creation Phils., Inc. Declaration), ¶¶ 8-11 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 12 (no robocalling); ¶ 13 (does not call DNC registrants); ¶ 15 (does not use scripts with the words "Life Alert").
- Ex. E, Att. 4 (Beltrami Caduceus, Inc. Aff.), ¶¶ 8-11 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 12 (no robocalling); ¶ 13 (does not call DNC registrants); ¶ 15 (does not use scripts with the words "Life Alert").
- Ex. E, Att. 5 (Better Be Healthy Aff.), ¶¶ 8-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 11 (no misrepresentations, complies with Lifewatch requirements, no robocalling or call spoofing, and does not call DNC registrants).
- Ex. E, Att. 6 (Bevin Enterprises Inc. Aff.), ¶¶ 8-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 11 (no misrepresentations); ¶ 15 (complies with Lifewatch requirements); ¶ 16 (no use of autodialer, robocalling, or call-spoofing); ¶ 19 (does not call DNC registrants).
- Ex. E, Att. 7 (Constant Connectivity Inc. Aff.), ¶¶ 8-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 11 (no misrepresentations); ¶ 15 (complies with Lifewatch requirements); ¶ 16 (no use of autodialer, robocalling, or call-spoofing); ¶ 19 (does not call DNC registrants).
- Ex. E, Att. 8 (Direct Agent Response Aff.), ¶¶ 7-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 12 (no robocalling); ¶ 13 (does not call DNC registrants); ¶ 15 (does not use scripts with the words "Life Alert").
- Ex. E, Att. 9 (Fresh Fruit & Marketing first Aff.), ¶¶ 7-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 12 (no robocalling); ¶ 13 (does not call DNC registrants); ¶ 15 (does not use scripts with the words "Life Alert").
- Ex. E, Att. 10 (Fresh Fruit & Marketing, second Aff.), ¶¶ 4 (no use of trademarks); ¶ 6 (no initiation of robocalls).
- Ex. E, Att. 11 (G Energy Solutions Aff.), ¶¶ 8-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 11 (no misrepresentations); ¶ 15 (complies with Lifewatch requirements); ¶ 16 (no use of autodialer, robocalling, or call-spoofing); ¶ 19 (does not call DNC registrants).
- Ex. E, Att. 12 (The Guardian Card Aff.), ¶¶ 8-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 11 (no misrepresentations); ¶ 15 (complies with Lifewatch requirements); ¶ 16 (no use of autodialer, robocalling, or call-spoofing); ¶ 17 (does not call DNC registrants).
- Ex. E, Att. 13 (InService America Aff.), ¶¶ 7-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 12 (no robocalling); ¶ 13 (does not call DNC registrants); ¶ 15 (does not use scripts with the words "Life Alert").
- Ex. E, Att. 14 (Instinctive Edge Aff.), ¶¶ 7-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 12 (no robocalling); ¶ 13 (does not call DNC registrants); ¶ 15 (does not use scripts with the words "Life Alert").
- Ex. E, Att. 15 (JAMP Promotions Aff.), ¶¶ 7-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 12 (no robocalling); ¶ 13 (does not call DNC registrants); ¶ 15 (does not use scripts with the words "Life Alert").

- Ex. E, Att. 16 (SMA Aff.), ¶¶ 8-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 11 (no misrepresentations); ¶ 15 (complies with Lifewatch requirements); ¶ 16 (no use of autodialer, robocalling, or call-spoofing); ¶ 19 (does not call DNC registrants).
- Ex. E, Att. 17 (Live Stress Free 24 7 LLC Aff.), ¶¶ 8-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 11 (no misrepresentations); ¶ 15 (complies with Lifewatch requirements); ¶ 16 (no use of autodialer, robocalling, or call-spoofing); ¶ 19 (does not call DNC registrants).
- Ex. E, Att. 18 (Master TMI Aff.), ¶¶ 8-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 11 (no misrepresentations); ¶ 15 (complies with Lifewatch requirements); ¶ 16 (no use of autodialer, robocalling, or call-spoofing); ¶ 17 (does not call DNC registrants).
- Ex. E, Att. 19 (Mayhem Innovations LLC first Aff.), ¶ 5 (compliant with all state and federal laws); ¶ 6 (compliant with Stipulated Judgement and Permanent Injunction).
- Ex. E, Att. 20 (Mayhem Innovations LLC second Aff.), ¶¶ 8-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 11 (no misrepresentations); ¶ 15 (complies with Lifewatch requirements); ¶ 16 (no use of autodialer, robocalling, or call-spoofing); ¶ 17 (does not call DNC registrants).
- Ex. E, Att. 21 (Med Alert 2 Aff.), ¶¶ 8-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 11 (no misrepresentations); ¶ 15 (complies with Lifewatch requirements); ¶ 16 (no use of autodialer, robocalling, or call-spoofing); ¶ 19 (does not call DNC registrants).
- Ex. E, Att. 22 (Med Alert 3 Aff.), ¶¶ 8-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 11 (no misrepresentations); ¶ 15 (complies with Lifewatch requirements); ¶ 16 (no use of autodialer, robocalling, or call-spoofing); ¶ 19 (does not call DNC registrants).
- Ex. E, Att. 23 (Med Alert 4 Aff.), ¶¶ 8-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 11 (no misrepresentations); ¶ 15 (complies with Lifewatch requirements); ¶ 16 (no use of autodialer, robocalling, or call-spoofing); ¶ 19 (does not call DNC registrants).
- Ex. E, Att. 24 (Dennis Michael LLC Aff.), ¶¶ 8-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 11 (no misrepresentations); ¶ 15 (complies with Lifewatch requirements); ¶ 16 (no use of autodialer, robocalling, or call-spoofing); ¶ 19 (does not call DNC registrants).
- Ex. E, Att. 25 (MLA International Aff.), ¶¶ 8-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 11 (no misrepresentations); ¶ 15 (complies with Lifewatch requirements); ¶ 16 (no use of autodialer, robocalling, or call-spoofing); ¶ 19 (does not call DNC registrants).
- Ex. E, Att. 26 (Motivated Marketing Declaration), ¶¶ 7-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 12 (no robocalling); ¶ 13 (does not call DNC registrants); ¶ 15 (does not use scripts with the words "Life Alert").
- Ex. E, Att. 27 (Music City Ventures, Inc. Aff.), ¶¶ 8-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 11 (no misrepresentations); ¶ 15 (complies with Lifewatch requirements); ¶ 16 (no use of autodialer, robocalling, or call-spoofing); ¶ 19 (does not call DNC registrants).

- Ex. E, Att. 28 (Nationwide Ventures Aff.), ¶¶ 8-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 11 (no misrepresentations); ¶ 15 (complies with Lifewatch requirements); ¶ 16 (no use of autodialer, robocalling, or call-spoofing); ¶ 19 (does not call DNC registrants).
- Ex. E, Att. 29 (Nationwide Ventures, Inc. Aff.) (Lifewatch does not control, supervise or oversee telemarketing, no misrepresentations made, complies with Lifewatch requirements, does not use of autodialer, robocalling, or call-spoofing, and does not call DNC registrants).
- Ex. E, Att. 30 (Nick-USA Declaration), ¶¶ 7-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 12 (no robocalling); ¶ 13 (does not call DNC registrants); ¶ 15 (does not use scripts with the words "Life Alert").
- Ex. E, Att. 31 (Source One Consumer Solutions LLC Aff.), ¶¶ 8-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 11 (no misrepresentations); ¶ 15 (complies with Lifewatch requirements); ¶ 16 (no use of autodialer, robocalling, or call-spoofing); ¶ 19 (does not call DNC registrants).
- Ex. E, Att. 32 (Payless Solutions first Aff.), ¶¶ 7-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 12 (no robocalling); ¶ 13 (does not call DNC registrants); ¶ 15 (does not use scripts with the words "Life Alert").
- Ex. E, Att. 33 (Payless Solutions second Aff.), ¶ 3 (no use of trademarks).
- Ex. E, Att. 34 (Preferred Data Management Inc. Aff.), ¶¶ 8-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 11 (no misrepresentations); ¶ 15 (complies with Lifewatch requirements); ¶ 16 (no use of autodialer, robocalling, or call-spoofing); ¶ 19 (does not call DNC registrants).
- Ex. E, Att. 35 (Prium Plans Aff.), ¶¶ 8-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 11 (no misrepresentations); ¶ 15 (complies with Lifewatch requirements); ¶ 16 (no use of autodialer, robocalling, or call-spoofing); ¶ 19 (does not call DNC registrants).
- Ex. E, Att. 36 (Prodigy Consulting Group LLC Aff.), ¶¶ 8-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 11 (no misrepresentations); ¶ 15 (complies with Lifewatch requirements); ¶ 16 (no use of autodialer, robocalling, or call-spoofing); ¶ 19 (does not call DNC registrants).
- Ex. E, Att. 37 (Provative Options Aff.), ¶¶ 8-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 11 (no misrepresentations); ¶ 15 (complies with Lifewatch requirements); ¶ 16 (no use of autodialer, robocalling, or call-spoofing); ¶ 19 (does not call DNC registrants).
- Ex. E, Att. 38 (Quality Services Network Aff.), ¶¶ 8-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 11 (no misrepresentations); ¶ 15 (complies with Lifewatch requirements); ¶ 16 (no use of autodialer, robocalling, or call-spoofing); ¶ 19 (does not call DNC registrants).
- Ex. E, Att. 39 (Rescue Me Alert Aff.), ¶¶ 8-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 11 (no misrepresentations); ¶ 15 (complies with Lifewatch requirements); ¶ 16 (no use of autodialer, robocalling, or call-spoofing); ¶ 19 (does not call DNC registrants).
- Ex. E, Att. 40 (Rescue Medical Alert LLC Aff.), ¶¶ 8-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 11 (no misrepresentations); ¶ 15 (complies with

Lifewatch requirements); ¶ 16 (no use of autodialer, robocalling, or call-spoofing); ¶ 19 (does not call DNC registrants).

- Ex. E, Att. 41 (S2 Ventures Aff.), ¶¶ 8-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 11 (no misrepresentations); ¶ 15 (complies with Lifewatch requirements); ¶ 16 (no use of autodialer, robocalling, or call-spoofing); ¶ 19 (does not call DNC registrants).

- Ex. E, Att. 42 (SafeGuard Security Aff.), ¶¶ 8-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 11 (no misrepresentations); ¶ 15 (complies with Lifewatch requirements); ¶ 16 (no use of autodialer, robocalling, or call-spoofing); ¶ 19 (does not call DNC registrants).

- Ex. E, Att. 43 (Security Alert, Inc. Aff.), ¶¶ 7-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 12 (no robocalling); ¶ 13 (does not call DNC registrants); ¶ 15 (does not use scripts with the words "Life Alert").

- Ex. E, Att. 44 (Senior Alert Specialist Aff.), ¶¶ 8-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 11 (no misrepresentations); ¶ 15 (complies with Lifewatch requirements); ¶ 16 (no use of autodialer, robocalling, or call-spoofing); ¶ 19 (does not call DNC registrants).

- Ex. E, Att. 45 (Senior Assist Network Aff.), ¶¶ 8-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 11 (no misrepresentations); ¶ 15 (complies with Lifewatch requirements); ¶ 16 (no use of autodialer, robocalling, or call-spoofing); ¶ 19 (does not call DNC registrants).

- Ex. E, Att. 46 (Senior Beneficial Network Aff.), ¶¶ 8-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 11 (no misrepresentations); ¶ 15 (complies with Lifewatch requirements); ¶ 16 (no use of autodialer, robocalling, or call-spoofing); ¶ 19 (does not call DNC registrants).

- Ex. E, Att. 47 (Senior Benefit Specialists Aff.), ¶¶ 8-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 11 (no misrepresentations); ¶ 15 (complies with Lifewatch requirements); ¶ 16 (no use of autodialer, robocalling, or call-spoofing); ¶ 19 (does not call DNC registrants).

- Ex. E, Att. 48 (SHMS Marketing Solutions LLC Aff.), ¶¶ 8-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 11 (no misrepresentations); ¶ 15 (complies with Lifewatch requirements); ¶ 16 (no use of autodialer, robocalling, or call-spoofing); ¶ 19 (does not call DNC registrants).

- Ex. E, Att. 49 (The Solution Center Declaration), ¶¶ 7-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 12 (no robocalling); ¶ 13 (does not call DNC registrants); ¶ 15 (does not use scripts with the words "Life Alert").

- Ex. E, Att. 50 (Tele America Response Inc. Aff.), ¶¶ 8-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 11 (no misrepresentations); ¶ 15 (complies with Lifewatch requirements); ¶ 16 (no use of autodialer, robocalling, or call-spoofing); ¶ 19 (does not call DNC registrants).

- Ex. E, Att. 51 (Telecommunications America Inc. Aff.), ¶¶ 8-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 11 (no misrepresentations); ¶ 15 (complies with Lifewatch requirements); ¶ 16 (no use of autodialer, robocalling, or call-spoofing); ¶ 19 (does not call DNC registrants).

- Ex. E, Att. 52 (Ultino Communications Group Aff.), ¶¶ 8-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 11 (no misrepresentations); ¶ 15 (complies with

Lifewatch requirements); ¶ 16 (no use of autodialer, robocalling, or call-spoofing); ¶ 17 (does not call DNC registrants).

- Ex. E, Att. 53 (Worldwide Info Services Declaration) ¶¶ 6-9 (Lifewatch does not control, supervise or oversee telemarketing).
- Aff. of Housein Karachopan, responding directly to PX 95, Declaration of Forest Horne

**13. Lifewatch's quality control program successfully curtailed customer origination through violative practices.**

- FTC-LW16-5402-5406 (December 2014 emails indicating outside seller "shut down") for violations);
- Ex. G, Baker Declaration, 2/24/18 indicating that in 2014 and 2015 Lifewatch terminated the following sellers as part of the quality control program:
  - Ariston Marketing, Colonial Group, Constant Connection, First Choice Marketing, InterFace, Inc., Call Center Partnership, Mayhem Innovations, Payless Solutions, Premium Marketing, Prium Plans, Security Alert, Senior Alert Systems, Sterling Sales of Virginia, United Life Care of Georgia, Virtue Point Marketing, Music City Ventures, Provative, Quality Services Network, S2 Ventures, VP Enterprises Group, TMI, Nationwide, Telecommunications America, Total Security Vision.
- Dkt. 296-5, Preliminary Injunction Transcript, Baker Testimony, pp. 78-83 (testifying about compliance program); 88-91 (testifying about role of Lauren Vandewater).
- Ex. C, Flaherty Supplemental Expert Report, Schedule Summary, showing dealer chargebacks decline year-over-year as follows: 2014: 31%; 2015: 25.6%; 2016: 14.27%.; See also Ex. H, page 40 (indicating that dealer chargebacks are also for failing to provide recordings);
- FTC 16-2966 and FTC-LW16-008075-8080, which Lifewatch's Ms. Vandewater sends to all outside sellers:

  "DNC – Attached you will find the most recent internal DNC list.  Lifewatch does not tolerate outside sellers calling numbers that have asked be placed on the Internal DNC list or if they are already on the National Do Not Call Registry…make sure your lists are scrubbed for any phone numbers on the National Do Not Call Registry and the Internal DNC List.  You will receive a monthly updated internal DNC list from me and also any additions…to it.  If it is found that a number was called and they are on the National DNC registry, CRM access will be revoked immediately and you will be…asked to provide proof of how that sale[] was obtained…

  Misrepresentations – This is very important.  At no time should any misrepresentation about the company or the products and services occur…Any of these quality control issue will result in access to the CRM being revoked.

  - Stating the product is free…
  - Stating the unit was referred by someone (friend, family, or doctor) can never be used.
  - Stating that the unit is endorsed by an organization or individual

- Stating that the customer will be billed when the unit is activated. The customer will be charged before receiving the unit. This way when the customer opens the box and plugs in the unit, we can ensure that they will be protected. We add additional time (approx. 10 days) to the next billing date to compensate for shipping so they will have the unit for a month before being charged again…

- Dkt. 296-2, Baker Aff., ¶¶ 16-28 (describing quality control and seller affidavits)
- Dkt. 87-3 at 2-3, Vandewater Declaration, (describing quality control process);
- LW16-8010 – Lifewatch email chain with outside seller complaining about having to send recordings with respect to compliance issues and complaining about not receiving Lifewatch's findings ("we look into it, if it's not true we don't do anything about it, I notify upper management that nothing misleading was said. If I hear something I tell them…and then I am told to address it with you so it doesn't happen again")
- Ex. H, Sample of emails in which Lifewatch employees and individual defendants respond to customer complaints, reprimand outside sellers, direct that violative outside sellers be "shut down," and request recordings.
  - Page 1-4 (April 28, 2015 email with Mitchel May, Sarai Baker, and Evan Sirlin discussing customer complaint and May indicating "shut them down.");
  - Page 5-8 (December 2014 emails with outside seller including May, Baker, Sirlin, and Vandewater reprimanding outside seller for DNC violations and discussing transitioning to TV and Radio instead);
  - Page 12 (January 8, 2014 emails between Mitchel May, Evan Sirlin, Sarai Baker, and Pam Cohen about surveilling outside seller regarding accurate product statements);
  - Page 13, September 14, 2015 emails from Lifewatch to outside seller, Bill Ferrante about revoking access to CRM for failure to send recordings);
  - Pages 14-17 (June 2015 emails with outside sellers from Lauren Vandwater discussing sales call and verification call and whether the outside seller is compliant);
  - Pages 18-19 (August 5, 2014 emails between Mitchel May, Evan Sirlin, Pam Cohen, and Sarai Baker in which May indicates "shut them down" in response to complaints);
  - Pages 20-22 (August 31, 2015 emails between Lauren Vandewater, Pam Cohen, and other Lifewatch employee indicating that customer service is working with a client who heard "AARP" and outside seller is "shut down");
  - Pages 23 (August 2014 emails with Mitchel May, Lauren Vandewater, Evan Sirlin, Sarai Baker, and Pam Cohen in which May discusses ("limit[ing] or eliminate[ing] [rebate] program after Vandewater brings issues to his attention following listening to calls);
  - Pages 26 (April 2015 emails between Evan Sirlin and Pam Cohen in

which Evan Sirlin states: "shut them down" in response to DNC complaint.

-Pages 32-35 (December 30, 2014 email in which Sirlin states "they have been shut down this am…good catch" in response to a DNC complaint).

-Page 36 (February 10, 2016 email from Lauren Vandewater to outside sellers requesting sale recordings);

-Page 37 (August 15, 2016 email from Vandewater to outside seller wherein "30 day free trial" is statement is handled with outside seller acknowledging it is "against policy" and indicating that it will be addressed immediately).

-Page 38 (August 19, 2015 email between Baker and Vandewater discussing revoked CRM access to outside seller);

-Page 39 (January 2015 email from Lauren Vandewater to Sarai Baker and other Lifewatch employee indicating which outside sellers were compliant after listening to weekly recordings);

-Page 40 (August 2015 emails from Lauren Vandewater requesting audited recordings and reminding that "you could be charged back for any deal I requested the recording for and it not being provided");

-Page 41 (September 2015 emails between Lauren Vandewater and outside seller requesting and receiving recordings);

-Page 42 (February 2, 2016 email between Lauren Vandewater, outside seller, Evan Sirlin, and Mitchel May directing outside seller to provide recordings)

**14. Lifewatch maintained and distributed an internal DNC List**

- Ex. G, 15-16, Baker Declaration (2/24/18)
- Dkt. 296-5, Preliminary Injunction Hearing, Baker testimony, page 86

  Q. So, let me ask you, my question pertained to Do Not Call. What does Lifewatch do presently, if anything, to ensure that its outside sellers are not making calls to individuals on the Do Not Call List?

  A. Lifewatch does circulate the internal Do Not Call List, compiled in part by information from the outside sellers, and will immediately terminate any seller if it is determined that they called someone on the DNC list.

- Dkt, 22-2, FTC-LW-16-7961
- Dkt. 96-1 at 19 (December 23, 2014 email from Vandewater to outside seller acknowledging she added an outside sellers' DNC numbers to the internal DNC: "I also got your DNC list from Sarai which was a lot more then (sic) what I had so I added yours to mine and I am going to send out an email to add them…")

15. **Of the consumer declarants disclosed by plaintiffs, only 14 were customers (or were linked to customers) and thus appeared in Lifewatch's customer data base (i.e. 0.02%). 14 accounts were originated by approximately 4 outside sellers (out of the hundreds used by Lifewatch) including Worldwide Info Services or its d/b/a/ companies.**
   - Ex. G, Baker Aff., 2/24/18; LW-FTC-1445-1496;
   - Dkt. 296-4, Sirlin Declaration, ¶ 3.

16. **Lifewatch sent out a refund letter to 8,000 customers obtained through the Worldwide defendants.  0.68% requested and received refunds.**
   - Ex. G, Baker Aff., 2/24/18;
   - Dkt. 296-2, Baker Aff., ¶¶ 8-15,
   - Dkt. 296-4, Ex. B, ¶¶ 15, 17, 18.

17. **Lifewatch often sent shipping labels to customers, upon request, so they would not have to pay for return shipping.**
   - Ex. D, Pam Cohen declaration (Lifewatch sent pre-paid shipping labels to customers who could not or would not pay to ship it back);
   - Dkt. 296-5, p. 175-176 (Lifewatch pays for return shipping several times);
   - Ex. E, Roman Aff. (indicating that Lifewatch spent $374,528.09 in return shipping between 2014-2016).
   - PX 56, Lifewatch paid for return shipping;

18. **Mitchel May refined the quality control program to ensure that violative customer origination did not occur.**
   - LW16-8010 – Lifewatch email chain with outside seller complaining about having to send recordings with respect to compliance issues and complaining about not receiving Lifewatch's findings ("[w]e look into it, if it's not true we don't do anything about it, I notify upper management that nothing misleading was said.  If I hear something I tell them…and then I am told to address it with you so it doesn't happen again.")
   - Dkt. 296-2, Baker Aff., ¶¶ 16-28 (describing quality control and seller Aff.s)
   - Dkt. 87-3 at 2-3, Vandewater Declaration, (describing quality control process);
   - Ex. I, May Aff., 2/24/18
   - Ex. G, Baker Aff., 2/24/18
   - Ex. H, Sample of emails in which Lifewatch employees and individual defendants respond to customer complaints, reprimand outside sellers, direct that violative outside sellers be "shut down," and request recordings
          Page 1, May email from April 28, 2015: "Let's find out what center and shut them down…"
          Page 9, May email to Sarai Baker from December 30, 2014 saying "Great" in response to forwarded email from Lauren Vandewater reminding outside seller about how, among other things, "scrubbing DNC lists" should be taken very seriously and failure to do so will result in termination.
          Page 12, May email from January 2014 asking "what call center"

regarding a call center that Lifewatch's Pam Cohen surveilled to see if the product information was being communicated properly Page 18, May email from August 2014 stating "…we need to shut them down…" in response to emails about a violative call center. Page 23, May email from August 2014 indicating "we need to limit or eliminate this program" in response to recordings.

- Ex. E, Att. 1 (Agent Med Alert Aff.), ¶ 11 (no misrepresentations); ¶ 15 (complies with Lifewatch requirements); ¶ 16 (no use of autodialer, robocalling, or call-spoofing); ¶ 17 (does not call DNC registrants).

- Ex. E, Att. 2 (American MD Today Aff.), ¶ 11 (no misrepresentations); ¶ 15 (complies with Lifewatch requirements); ¶ 16 (no use of autodialer, robocalling, or call-spoofing); ¶ 19 (does not call DNC registrants).

- Ex. E, Att. 3 (Asian Global Creation Phils., Inc. Declaration), ¶¶ 8-11 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 12 (no robocalling); ¶ 13 (does not call DNC registrants); ¶ 15 (does not use scripts with the words "Life Alert").

- Ex. E, Att. 4 (Beltrami Caduceus, Inc. Aff.), ¶¶ 8-11 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 12 (no robocalling); ¶ 13 (does not call DNC registrants); ¶ 15 (does not use scripts with the words "Life Alert").

- Ex. E, Att. 5 (Better Be Healthy Aff.), ¶¶ 8-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 11 (no misrepresentations, complies with Lifewatch requirements, no robocalling or call spoofing, and does not call DNC registrants).

- Ex. E, Att. 6 (Bevin Enterprises Inc. Aff.), ¶¶ 8-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 11 (no misrepresentations); ¶ 15 (complies with Lifewatch requirements); ¶ 16 (no use of autodialer, robocalling, or call-spoofing); ¶ 19 (does not call DNC registrants).

- Ex. E, Att. 7 (Constant Connectivity Inc. Aff.), ¶¶ 8-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 11 (no misrepresentations); ¶ 15 (complies with Lifewatch requirements); ¶ 16 (no use of autodialer, robocalling, or call-spoofing); ¶ 19 (does not call DNC registrants).

- Ex. E, Att. 8 (Direct Agent Response Aff.), ¶¶ 7-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 12 (no robocalling); ¶ 13 (does not call DNC registrants); ¶ 15 (does not use scripts with the words "Life Alert").

- Ex. E, Att. 9 (Fresh Fruit & Marketing first Aff.), ¶¶ 7-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 12 (no robocalling); ¶ 13 (does not call DNC registrants); ¶ 15 (does not use scripts with the words "Life Alert").

- Ex. E, Att. 10 (Fresh Fruit & Marketing, second Aff.), ¶¶ 4 (no use of trademarks); ¶ 6 (no initiation of robocalls).

- Ex. E, Att. 11 (G Energy Solutions Aff.), ¶¶ 8-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 11 (no misrepresentations); ¶ 15 (complies with Lifewatch requirements); ¶ 16 (no use of autodialer, robocalling, or call-spoofing); ¶ 19 (does not call DNC registrants).

- Ex. E, Att. 12 (The Guardian Card Aff.), ¶¶ 8-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 11 (no misrepresentations); ¶ 15 (complies with Lifewatch requirements); ¶ 16 (no use of autodialer, robocalling, or call-spoofing); ¶ 17 (does not call DNC registrants).

- Ex. E, Att. 13 (InService America Aff.), ¶¶ 7-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 12 (no robocalling); ¶ 13 (does not call DNC registrants); ¶ 15 (does not use scripts with the words "Life Alert").
- Ex. E, Att. 14 (Instinctive Edge Aff.), ¶¶ 7-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 12 (no robocalling); ¶ 13 (does not call DNC registrants); ¶ 15 (does not use scripts with the words "Life Alert").
- Ex. E, Att. 15 (JAMP Promotions Aff.), ¶¶ 7-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 12 (no robocalling); ¶ 13 (does not call DNC registrants); ¶ 15 (does not use scripts with the words "Life Alert").
- Ex. E, Att. 16 (SMA Aff.), ¶¶ 8-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 11 (no misrepresentations); ¶ 15 (complies with Lifewatch requirements); ¶ 16 (no use of autodialer, robocalling, or call-spoofing); ¶ 19 (does not call DNC registrants).
- Ex. E, Att. 17 (Live Stress Free 24 7 LLC Aff.), ¶¶ 8-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 11 (no misrepresentations); ¶ 15 (complies with Lifewatch requirements); ¶ 16 (no use of autodialer, robocalling, or call-spoofing); ¶ 19 (does not call DNC registrants).
- Ex. E, Att. 18 (Master TMI Aff.), ¶¶ 8-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 11 (no misrepresentations); ¶ 15 (complies with Lifewatch requirements); ¶ 16 (no use of autodialer, robocalling, or call-spoofing); ¶ 17 (does not call DNC registrants).
- Ex. E, Att. 19 (Mayhem Innovations LLC first Aff.), ¶ 5 (compliant with all state and federal laws); ¶ 6 (compliant with Stipulated Judgement and Permanent Injunction).
- Ex. E, Att. 20 (Mayhem Innovations LLC second Aff.), ¶¶ 8-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 11 (no misrepresentations); ¶ 15 (complies with Lifewatch requirements); ¶ 16 (no use of autodialer, robocalling, or call-spoofing); ¶ 17 (does not call DNC registrants).
- Ex. E, Att. 21 (Med Alert 2 Aff.), ¶¶ 8-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 11 (no misrepresentations); ¶ 15 (complies with Lifewatch requirements); ¶ 16 (no use of autodialer, robocalling, or call-spoofing); ¶ 19 (does not call DNC registrants).
- Ex. E, Att. 22 (Med Alert 3 Aff.), ¶¶ 8-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 11 (no misrepresentations); ¶ 15 (complies with Lifewatch requirements); ¶ 16 (no use of autodialer, robocalling, or call-spoofing); ¶ 19 (does not call DNC registrants).
- Ex. E, Att. 23 (Med Alert 4 Aff.), ¶¶ 8-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 11 (no misrepresentations); ¶ 15 (complies with Lifewatch requirements); ¶ 16 (no use of autodialer, robocalling, or call-spoofing); ¶ 19 (does not call DNC registrants).
- Ex. E, Att. 24 (Dennis Michael LLC Aff.), ¶¶ 8-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 11 (no misrepresentations); ¶ 15 (complies with Lifewatch requirements); ¶ 16 (no use of autodialer, robocalling, or call-spoofing); ¶ 19 (does not call DNC registrants).
- Ex. E, Att. 25 (MLA International Aff.), ¶¶ 8-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 11 (no misrepresentations); ¶ 15 (complies with Lifewatch

requirements); ¶ 16 (no use of autodialer, robocalling, or call-spoofing); ¶ 19 (does not call DNC registrants).

- Ex. E, Att. 26 (Motivated Marketing Declaration), ¶¶ 7-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 12 (no robocalling); ¶ 13 (does not call DNC registrants); ¶ 15 (does not use scripts with the words "Life Alert").
- Ex. E, Att. 27 (Music City Ventures, Inc. Aff.), ¶¶ 8-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 11 (no misrepresentations); ¶ 15 (complies with Lifewatch requirements); ¶ 16 (no use of autodialer, robocalling, or call-spoofing); ¶ 19 (does not call DNC registrants).
- Ex. E, Att. 28 (Nationwide Ventures Aff.), ¶¶ 8-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 11 (no misrepresentations); ¶ 15 (complies with Lifewatch requirements); ¶ 16 (no use of autodialer, robocalling, or call-spoofing); ¶ 19 (does not call DNC registrants).
- Ex. E, Att. 29 (Nationwide Ventures, Inc. Aff.) (Lifewatch does not control, supervise or oversee telemarketing, no misrepresentations made, complies with Lifewatch requirements, does not use of autodialer, robocalling, or call-spoofing, and does not call DNC registrants).
- Ex. E, Att. 30 (Nick-USA Declaration), ¶¶ 7-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 12 (no robocalling); ¶ 13 (does not call DNC registrants); ¶ 15 (does not use scripts with the words "Life Alert").
- Ex. E, Att. 31 (Source One Consumer Solutions LLC Aff.), ¶¶ 8-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 11 (no misrepresentations); ¶ 15 (complies with Lifewatch requirements); ¶ 16 (no use of autodialer, robocalling, or call-spoofing); ¶ 19 (does not call DNC registrants).
- Ex. E, Att. 32 (Payless Solutions first Aff.), ¶¶ 7-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 12 (no robocalling); ¶ 13 (does not call DNC registrants); ¶ 15 (does not use scripts with the words "Life Alert").
- Ex. E, Att. 33 (Payless Solutions second Aff.), ¶ 3 (no use of trademarks).
- Ex. E, Att. 34 (Preferred Data Management Inc. Aff.), ¶¶ 8-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 11 (no misrepresentations); ¶ 15 (complies with Lifewatch requirements); ¶ 16 (no use of autodialer, robocalling, or call-spoofing); ¶ 19 (does not call DNC registrants).
- Ex. E, Att. 35 (Prium Plans Aff.), ¶¶ 8-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 11 (no misrepresentations); ¶ 15 (complies with Lifewatch requirements); ¶ 16 (no use of autodialer, robocalling, or call-spoofing); ¶ 19 (does not call DNC registrants).
- Ex. E, Att. 36 (Prodigy Consulting Group LLC Aff.), ¶¶ 8-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 11 (no misrepresentations); ¶ 15 (complies with Lifewatch requirements); ¶ 16 (no use of autodialer, robocalling, or call-spoofing); ¶ 19 (does not call DNC registrants).
- Ex. E, Att. 37 (Provative Options Aff.), ¶¶ 8-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 11 (no misrepresentations); ¶ 15 (complies with Lifewatch requirements); ¶ 16 (no use of autodialer, robocalling, or call-spoofing); ¶ 19 (does not call DNC registrants).
- Ex. E, Att. 38 (Quality Services Network Aff.), ¶¶ 8-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 11 (no misrepresentations); ¶ 15 (complies with

Lifewatch requirements); ¶ 16 (no use of autodialer, robocalling, or call-spoofing); ¶ 19 (does not call DNC registrants).

- Ex. E, Att. 39 (Rescue Me Alert Aff.), ¶¶ 8-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 11 (no misrepresentations); ¶ 15 (complies with Lifewatch requirements); ¶ 16 (no use of autodialer, robocalling, or call-spoofing); ¶ 19 (does not call DNC registrants).

- Ex. E, Att. 40 (Rescue Medical Alert LLC Aff.), ¶¶ 8-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 11 (no misrepresentations); ¶ 15 (complies with Lifewatch requirements); ¶ 16 (no use of autodialer, robocalling, or call-spoofing); ¶ 19 (does not call DNC registrants).

- Ex. E, Att. 41 (S2 Ventures Aff.), ¶¶ 8-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 11 (no misrepresentations); ¶ 15 (complies with Lifewatch requirements); ¶ 16 (no use of autodialer, robocalling, or call-spoofing); ¶ 19 (does not call DNC registrants).

- Ex. E, Att. 42 (SafeGuard Security Aff.), ¶¶ 8-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 11 (no misrepresentations); ¶ 15 (complies with Lifewatch requirements); ¶ 16 (no use of autodialer, robocalling, or call-spoofing); ¶ 19 (does not call DNC registrants).

- Ex. E, Att. 43 (Security Alert, Inc. Aff.), ¶¶ 7-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 12 (no robocalling); ¶ 13 (does not call DNC registrants); ¶ 15 (does not use scripts with the words "Life Alert").

- Ex. E, Att. 44 (Senior Alert Specialist Aff.), ¶¶ 8-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 11 (no misrepresentations); ¶ 15 (complies with Lifewatch requirements); ¶ 16 (no use of autodialer, robocalling, or call-spoofing); ¶ 19 (does not call DNC registrants).

- Ex. E, Att. 45 (Senior Assist Network Aff.), ¶¶ 8-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 11 (no misrepresentations); ¶ 15 (complies with Lifewatch requirements); ¶ 16 (no use of autodialer, robocalling, or call-spoofing); ¶ 19 (does not call DNC registrants).

- Ex. E, Att. 46 (Senior Beneficial Network Aff.), ¶¶ 8-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 11 (no misrepresentations); ¶ 15 (complies with Lifewatch requirements); ¶ 16 (no use of autodialer, robocalling, or call-spoofing); ¶ 19 (does not call DNC registrants).

- Ex. E, Att. 47 (Senior Benefit Specialists Aff.), ¶¶ 8-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 11 (no misrepresentations); ¶ 15 (complies with Lifewatch requirements); ¶ 16 (no use of autodialer, robocalling, or call-spoofing); ¶ 19 (does not call DNC registrants).

- Ex. E, Att. 48 (SHMS Marketing Solutions LLC Aff.), ¶¶ 8-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 11 (no misrepresentations); ¶ 15 (complies with Lifewatch requirements); ¶ 16 (no use of autodialer, robocalling, or call-spoofing); ¶ 19 (does not call DNC registrants).

- Ex. E, Att. 49 (The Solution Center Declaration), ¶¶ 7-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 12 (no robocalling); ¶ 13 (does not call DNC registrants); ¶ 15 (does not use scripts with the words "Life Alert").

- Ex. E, Att. 50 (Tele America Response Inc. Aff.), ¶¶ 8-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 11 (no misrepresentations); ¶ 15 (complies with

Lifewatch requirements); ¶ 16 (no use of autodialer, robocalling, or call-spoofing); ¶ 19 (does not call DNC registrants).

- Ex. E, Att. 51 (Telecommunications America Inc. Aff.), ¶¶ 8-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 11 (no misrepresentations); ¶ 15 (complies with Lifewatch requirements); ¶ 16 (no use of autodialer, robocalling, or call-spoofing); ¶ 19 (does not call DNC registrants).
- Ex. E, Att. 52 (Ultino Communications Group Aff.), ¶¶ 8-10 (Lifewatch does not control, supervise or oversee telemarketing); ¶ 11 (no misrepresentations); ¶ 15 (complies with Lifewatch requirements); ¶ 16 (no use of autodialer, robocalling, or call-spoofing); ¶ 17 (does not call DNC registrants).
- Ex. E, Att. 53 (Worldwide Info Services Declaration) ¶¶ 6-9 (Lifewatch does not control, supervise or oversee telemarketing).

**19. David Roman refined the quality control program to ensure that violative customer origination did not occur.**

- Ex. J, Roman Affidavit, paragraphs 4-8.
- FTC-LW-16-0003387, August 13, 2013 email to Evan Sirlin and Mitchel May indicates Roman conducted an internal review and found unacceptably high customer cancellation rates associated with Lifewatch customers acquired through outside sellers, explains that Lifewatch would need to: a) take "corrective action with [outside sellers] using [improper] sales tactics;" b) "police customer call backs;" c) "strengthen confirmation process and sales ethics;" and d) "implement a live transfer confirmation."
- LW16-8010 – Lifewatch email chain with outside seller complaining about having to send recordings with respect to compliance issues and complaining about not receiving Lifewatch's findings ("we look into it, if it's not true we don't do anything about it, I notify upper management that nothing misleading was said. If I hear something I tell them…and then I am told to address it with you so it doesn't happen again")
- Dkt. 296-2, Baker Aff. , ¶¶ 16-28 (describing quality control and seller Aff. s)
- Dkt. 87-3 at 2-3, Vandewater Declaration, (describing quality control process);
- Ex. I, May Aff., 2/24/18
- Ex. G, Baker Aff., 2/24/18
- Ex. H, Sample of emails in which Lifewatch employees and individual defendants respond to customer complaints, reprimand outside sellers, direct that violative outside sellers be "shut down," and request recordings.

   -Page 1-4 (April 28, 2015 email with Mitchel May, Sarai Baker, and Evan Sirlin discussing customer complaint and May indicating "shut them down.");
   -Page 5-8 (December 2014 emails with outside seller including May, Baker, Sirlin, and Vandewater reprimanding outside seller for DNC violations and discussing transitioning to TV and Radio instead);
   -Page 12 (January 8, 2014 emails between Mitchel May, Evan Sirlin, Sarai Baker, and Pam Cohen about surveilling outside seller regarding accurate product statements);
   -Page 13, September 14, 2015 emails from Lifewatch to outside seller, Bill Ferrante about revoking access to CRM for failure to send recordings);
   -Pages 14-17 (June 2015 emails with outside sellers from Lauren

Vandwater discussing sales call and verification call and whether the outside seller is compliant);
-Pages 18-19 (August 5, 2014 emails between Mitchel May, Evan Sirlin, Pam Cohen, and Sarai Baker in which May indicates "shut them down" in response to complaints);
-Pages 20-22 (August 31, 2015 emails between Lauren Vandewater, Pam Cohen, and other Lifewatch employee indicating that customer service is working with a client who heard "AARP" and outside seller is "shut down");
-Pages 23 (August 2014 emails with Mitchel May, Lauren Vandewater, Evan Sirlin, Sarai Baker, and Pam Cohen in which May discusses ("limit[ing] or eliminate[ing] [rebate] program after Vandewater brings issues to his attention following listening to calls);
-Pages 26 (April 2015 emails between Evan Sirlin and Pam Cohen in which Evan Sirlin states: "shut them down" in response to DNC complaint.
-Pages 32-35 (December 30, 2014 email in which Sirlin states "they have been shut down this am…good catch" in response to a DNC complaint).
-Page 36 (February 10, 2016 email from Lauren Vandewater to outside sellers requesting sale recordings);
-Page 37 (August 15, 2016 email from Vandewater to outside seller wherein "30 day free trial" is statement is handled with outside seller acknowledging it is "against policy" and indicating that it will be addressed immediately).
-Page 38 (August 19, 2015 email between Baker and Vandewater discussing revoked CRM access to outside seller);
-Page 39 (January 2015 email from Lauren Vandewater to Sarai Baker and other Lifewatch employee indicating which outside sellers were compliant after listening to weekly recordings);
-Page 40 (August 2015 emails from Lauren Vandewater requesting audited recordings and reminding that "you could be charged back for any deal I requested the recording for and it not being provided");
-Page 41 (September 2015 emails between Lauren Vandewater and outside seller requesting and receiving recordings);
-Page 42 (February 2, 2016 email between Lauren Vandewater, outside seller, Evan Sirlin, and Mitchel May directing outside seller to provide recordings).

**20. Defendants generated revenue by selling customer accounts to third party entities**
- Dkt. 296-5, p. 178-179;
- May Affidavit, Dkt. 296-13, ¶ 12;
- PX 94, Gross Suppl. Dec., ¶ 3 (Connect America purchased accounts from Lifewatch).
- PX 79, Brenda Vere Dec., paragraphs 2, 3, and 5
- Dkt. 296-13, paragraphs 10, 12, May Declaration (describing sales of Lifewatch customer accounts to MedGuard and sales of customer accounts to Connect America, Philips, VRI, First Street, and Security Partners);

- Dkt. 293-14, paragraphs 13 and 15, (Roman Declaration (describing sales of Lifewatch customer accounts to MedGuard and sales of customer accounts to Connect America, Philips, VRI, First Street, and Security Partners).

**21. Defendants have an inability to pay the amounts requested.**
- Ex. B, Sirlin Aff.
- Ex. I, May Aff.
- Ex. J, Roman Aff.

**22. Safe Home Security has not sold personal emergency response systems**
- Dkt. 293-14, Roman Aff., ¶ 3
- PX 99, Roman Deposition Transcript. p. 19

**23. Roman is the only individual defendant that has ever held an ownership interest in Safe Home Security, Inc. or that has ever been an officer or employee of Safe Home Security, Inc.**
- Dkt. 293-14, Roman Aff., ¶ 5;
- Dkt. 293-14, Ex. R, filed under seal.

**24. Safe Home Security, Inc. did not share office space, officers, or personnel with Lifewatch at any time before May 31, 2013.**
- Dkt. 293-14, Roman Aff., ¶ 5.

**25. Safe Home Security, Inc. and Lifewatch Inc. have not shared or co-mingled operating accounts. (Roman Affidavit, Exhibit M).**
- Dkt. 293-14, Roman Aff., ¶ 19.

**26.  Safe Home Security, Inc. and Lifewatch Inc. have always filed separate tax returns. (Roman Affidavit, Exhibit M).**
- Dkt. 293-14, Roman Aff., ¶ 19.

**27.  Safe Home Security, Inc. and Lifewatch Inc. have always maintained separate payrolls.**
- Dkt. 293-14, Roman Aff., ¶ 19.

**28. Safe Home Security Inc. and MedGuard Alert Inc. did not share personnel between 2013 and 2016.**
- Dkt. 293-14, Ex. R.

**29. Medguard Alert, Inc. had a pool of customers beginning in approximately January 2013, after having purchased those customer accounts, in bulk, from a non-party entity.**
- Dkt. 293-14, Roman Aff., ¶ 19;
- Roman Aff., (2/24/18), setting forth details about revenue generated from these and other accounts not obtained from Lifewatch.

30. **After the May 31, 2013 Share Purchase Agreement, Medguard Alert, Inc. also purchased customer accounts in 2014 from non-party entities.**
   - Dkt. 293-14, Roman Aff., ¶ 19
   - Roman Aff., (2-24-18) setting forth details about revenue generated from these and other accounts not obtained from Lifewatch.

31. **MedGuard Alert, Inc.'s offices have always been in Connecticut.**
   - Dkt. 293-14, Roman Aff., ¶ 18

32. **Up until May 31, 2013, MedGuard Alert, Inc. did not share office space, officers, or personnel with Lifewatch. (Exhibit M, Roman Affidavit).**
   - Dkt. 293-14, Roman Aff., ¶ 18

33. **Medguard Alert, Inc. and Lifewatch Inc. have not shared or co-mingled operating accounts.**
   - Dkt. 293-14, Roman Aff., ¶ 19

34. **Medguard Alert, Inc. and Lifewatch Inc. have always filed separate tax returns.**
   - Dkt. 293-14, Roman Aff., ¶ 19

35. **Medguard Alert, Inc. and Lifewatch Inc. have maintained separate payrolls.**
   - Dkt. 293-14, Roman Aff., ¶ 19


Respectfully submitted,

   */s/ Joseph Lipari*                             */s/ Joelle M. Shabat*
Jason Sultzer, Esq.                            Brian W. Bell, Esq.
Joseph Lipari, Esq.                            Joelle M. Shabat, Esq.
The Sultzer Law Group                          Swanson, Martin & Bell, LLP
14 Wall Street, 20th Floor                     330 North Wabash Avenue, Suite 3300
New York, New York 10005                       Chicago, Illinois 60611
(212) 618-1938                                 (312) 321-9100
sultzerj@thesultzerlawgroup.com                bbell@smbtrials.com
liparij@thesultzerlawgroup.com                 jshabat@smbtrials.com
*Attorneys for Lifewatch, Inc., Evan Sirlin, and*   *Attorneys for Safe Home Security, Inc.;*
*Mitchel May*                                  *MedGuard Alert, Inc.; and David Roman*