UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION, STATE OF FLORIDA, OFFICE OF THE ATTORNEY GENERAL, DEPARTMENT OF LEGAL AFFAIRS, <br><br> Plaintiffs, <br><br> v. <br><br> LIFEWATCH INC., a New York corporation, also d/b/a LIFEWATCH USA and MEDICAL ALARM SYSTEMS, <br><br> SAFE HOME SECURITY, INC., a Connecticut corporation, <br><br> MEDGUARD ALERT, INC., a Connecticut corporation, <br><br> EVAN SIRLIN, individually and as an officer or manager of Lifewatch Inc., <br><br> MITCHEL MAY, individually and as an officer or manager of Lifewatch Inc., and <br><br> DAVID ROMAN, individually and as an officer or manager of Lifewatch Inc., Safe Home Security, Inc., and Medguard Alert, Inc. <br> Defendants. | Case No. 15cv5781 <br><br> **AFFIDAVIT OF MITCHEL MAY** |

I, Mitchel May, of full age and being duly sworn, say:

1. I am a New York resident and I am over the age of 18. I have personal knowledge of the facts set forth herein and if called as a witness, I could and would competently testify to the facts set forth herein.

2. As I indicated in a prior affidavit, on May 31, 2013, May Trust 2013, of which I am executor, administrator, or trustee, acquired a 10% stake in Lifewatch pursuant to a Share Purchase Agreement. As such, I have never had an individual ownership interest in Lifewatch. Pursuant to the Agreement, 125 shares (out of 1250) in Medguard Alert, Inc. were provided to May Trust 2013, of which I am executor, administrator, or trustee. As such, I have never had an individual ownership interest in Medguard Alert, Inc.

3. I have not received equitable distributions from Lifewatch or MedGuard Alert. I only received a salary from Lifewatch, up until the time I left the company in mid-2016.

4. I was not involved in the formation of Lifewatch's relationship with Worldwide Info Services, which began selling customer accounts to Lifewatch before my involvement with Lifewatch. I did not sign the agreements between Lifewatch and Worldwide Info Services, Inc. or any of the entities alleged by the FTC to be related to Worldwide Info Services, Inc.

5. I was not involved in drafting scripts or developing any of the marketing or sales materials to be used by Worldwide or the other outside sellers.

6. At no point during my time with Lifewatch did I have any ability or authority to terminate Lifewatch's relationship with Worldwide or it affiliated entities. After the May 31, 2013 share purchase agreement wherein Dave Roman acquired a 72% interest in the company, I had no authority to formulate business practices, make executive decisions, or

otherwise alter or modify Lifewatch's practice of originating customer accounts through outside sellers.

7. While I was copied on some emails related to Worldwide and their affiliated entities, I did not have knowledge that the specific activities and alleged misrepresentations attributed to Worldwide were occurring or being used in connection with customer acquisitions. And, I understood that Lifewatch's customer service department was issuing refunds to all customers who had complained.

8. As a matter of course, I did not open or review all emails that I received during my time at Lifewatch. And, on most occasions, when I noticed that the email was directed to someone else (i.e. I was cc'd or included along with others), I would not review the email or its contents. Of the emails cited by plaintiffs, I know there are many that I did not open or review.

9. While I was at Lifewatch, I did not formulate any of the business practices, nor could I have formulated them. I simply never had the authority. Nor did I or could I have formulated any of MedGuard's business practices. Again, I never had the authority.

10. In 2013 and early 2014, I was instrumental in refining Lifewatch's quality control program to try to ensure that customers were not being originated through violative conduct.

11. This quality control program included, among other things: a) formally communicating with outside sellers and providing clear guidelines about prohibited conduct; b) obtaining affidavits from the outside sellers to ensure compliance; c) requesting and reviewing audiotapes of sales and confirmation calls; d) terminating telemarketers who did not

comply; and e) calling customers to correct any problems with the sales calls and confirm that the customers still wanted to proceed with the order.

12. It was within this context (i.e. the quality control program) that I would be provided with information about compliance issues. Per the quality control program, outside sellers found to have violated our policy would have their CRM log-in credentials terminated or revoked and they would no longer be allowed to originate customer accounts for Lifewatch. On multiple occasions, when I heard that Lifewatch employees tasked with carrying out the quality control program had identified or received notice of any violations, I emphasized that they should be "shut down."

13. Contrary to assertions by an individual named Michael Robinson, whom I don't know, I have not spoken to Mr. Robinson and I have not directed him or others to change "autodialer or server caller identification numbers" or "outgoing electronic messages."

14. Further, I have not accessed "Vicidialer" information or listened in on active calls.

15. Contrary to assertions by the apparent felon and FBI-informant, Roderic Boling, I did not provide Mr. Boling or Mr. Hilgar with $2500 to sign a declaration, nor did I accept "overpayments" or "collect cash from Worldwide," or tell Boling I was "afraid of consumers who could bring attention to call centers." I did not have an awareness of an individual named Joseph Settecase using pre-recorded messages.

16. To be clear, I have no ability to pay the damages amount being sought by the FTC. I am presently an at-will consultant for a small company that provides vehicles to companies. In that capacity I am earning $255,000 per year. I have a dependent wife and 4 dependent children. Further financial information showing inability to pay is available to be submitted.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated: February 23, 2018

Mitchel May