UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION, ) <br> STATE OF FLORIDA, OFFICE OF THE ) <br> ATTORNEY GENERAL, DEPARTMENT ) <br> OF LEGAL AFFAIRS, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> LIFEWATCH INC., a New York corporation, ) <br> also d/b/a LIFEWATCH USA and MEDICAL ) <br> ALARM SYSTEMS, ) <br> ) <br> SAFE HOME SECURITY, INC., a ) <br> Connecticut corporation, ) <br> ) <br> MEDGUARD ALERT, INC., a Connecticut ) <br> corporation, ) <br> ) <br> EVAN SIRLIN, individually and as an officer ) <br> or manager of Lifewatch Inc., ) <br> ) <br> MITCHEL MAY, individually and as an officer or ) <br> manager of Lifewatch Inc., and ) <br> ) <br> DAVID ROMAN, individually and as an officer ) <br> or manager of Lifewatch Inc., Safe Home Security, ) <br> Inc., and MedGuard Alert, Inc. ) <br> Defendants. ) <br> ) | Case No. 15cv5781 <br><br> Judge Gary Feinerman |

## DEFENDANTS' MOTION TO STRIKE CERTAIN MATERIALS AND STATEMENTS SUBMITTED BY PLAINTIFFS IN SUPPORT OF <u>SUMMARY JUDGMENT</u>

Defendants, jointly through their counsel, request that this Court strike certain materials and statements submitted by plaintiffs in support of their motion for summary judgment. In support of their motion, defendants state as follows:

1

## INTRODUCTION

Plaintiffs' Motion for Summary Judgment is predicated on many declarations that lack foundation and rest on hearsay or unsworn statements offered for the truth of the matters asserted. In many instances, supporting declarations are made which are not predicated on personal knowledge of the subject matter contained in the affidavit, rest entirely on speculation or conjecture, and are unverified. Many of plaintiffs' supporting declarations also contain allegations from witnesses who lack credibility and who have evaded defendant's subpoenas. And, many of plaintiffs' statements are unsupported or are supported by improperly identified documents that prevent Defendants from responding. Defendants ask this Court to strike inadmissible or misidentified exhibits in whole, or to strike inadmissible portions of the exhibits.

## ARGUMENT

**A.     Inadmissible Hearsay Due to Affiant's Lack of Personal Knowledge**

Rule 56(e) of the Federal Rules of Civil Procedure states that "affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e); *AKW Const. and Environmental Services*, 2000 WL 1809976 at *1 (N.D. Ill. Dec. 11, 2000). If an affidavit submitted in support of or in opposition to summary judgment contains statements beyond the affiant's personal knowledge, those statements must be excluded. *Id.; see also Stagman v. Ryan*, 175 F.3d 986, 995 (7th Cir. 1999). Statements that result from speculation or conjecture, or that are conclusory, likewise do not satisfy Rule 56(e), and a court should not consider them. *Id.*

Moreover, a party may not rely on inadmissible hearsay in supporting or opposing summary judgment, just as it may not introduce hearsay evidence at trial. *Malec v. Sanford,* 191

2

F.R.D. 581, 585 (N.D. Ill. 2000). Thus, a court should not consider statements in an affidavit or deposition submitted in connection with summary judgment that constitute inadmissible hearsay. *AKW Const. and Environmental Services*, 2000 WL 1809976 at *1.

As the party opposing plaintiffs' motion for summary judgment, defendants object to: PX 61 (Dkt. 25-29) (affiant reports what her mother told her); PX 6 (Dkt. 24-2) (affiant reports content of customer inquiries and conversations with employees of Lifewatch and Senior Medical Alarm); PX 7 (Dkt. 24-7) (attaching consumer complaints with no personal knowledge of the events described therein); PX 19 (Dkt. 24-15) (affiant reports what his father told him); PX 29 (Dkt. 24-25) (affiant reports what her client told her); PX 36 (Dkt. 25-4) (affiant reports what her mother told her); PX 57 (affiant reports what his father told him); PX 65 (Dkt. 26-1) (affiant's basis of knowledge is conversations with her husband and fellow employees, as well as reports from customers, not personal knowledge); PX56 (Dkt. 25-24) (affiant reports what her mother told her); PX 10 (Lancaster says that "from what I could piece together based on what customers told me, it seemed like…"); PX 1 (Dkt. 14-1, 14-3) Menjivar Dec Att B at 2,3,5,35, and 36 (logs of calls with customers which report what Worldwide representatives told the customers); PX 76 (Dkt. 26-12) ("I was told by a telemarketer that the telemarketing company he worked for was contacted by Rick Silver and his colleagues and asked to sell for the LifeWatch campaign. I was also informed about a new call center in Florida that was selling LifeWatch's medical alert systems through robo-calling."); PX 48 (Dkt. 25-16) (affiant reports contents of conversation with telemarketer); PX 26 (Dkt. 24-22) (affiant reports what her mother told her); PX 66 (Dkt. 26-2) (affiant reports content of conversations with employees and supervisors of Arcagen, Inc., as well as conversations with customers, without first-hand knowledge of the events described therein); PX 67 (Dkt. 26-3) (affiant reports content of conversations with employees and supervisors of Senior Life Support,

3

as well as conversations with customers, without first-hand knowledge of the events described therein); PX 68 (Dkt. 26-4) (affiant reports content of conversations with employees and supervisors of Senior Emergency Care, as well as conversations with customers, without first-hand knowledge of the events described therein); PX 69 (Dkt. 26-5) (affiant reports content of conversations with employees and supervisors of Senior Safe Alert, as well as conversations with customers, without first-hand knowledge of the events described therein); PX 70 (Dkt-26-6) (affiant reports content of conversations with employees and supervisors of Senior Alert Care, as well as conversations with customers, without first-hand knowledge of the events described therein); and the complaint allegation in *Bank v Lifewatch*, 15-cv-2278 regarding a conversation non-party Todd Bank had with a telemarketer (unverified and unsworn).

The information contained in these documents is not based on personal knowledge, and they are thus based on facts that are not admissible in evidence. This Court may strike an unsupported assertion of fact, or otherwise issue any other appropriate order to address the deficiency. *See* Fed. R. Civ. P. 56(c)(2), 56(e). Testimony regarding what an affiant believes to be true, but does not know from personal observations and experience to be true, are inadmissible and should be stricken. *See* Fed. R. Civ. P. 56(c)(4); *Automatic Radio Mfg. Co. v. Hazeltine Research*, 339 U.S. 827, 831 (1952) (overruled on other grounds); *Lear, Inc. v. Adkins*, 395 U.S. 653 (1969). The aforementioned statements all constitute unreliable, inadmissible hearsay and, as such, are not to be considered on summary judgment. Moreover, the statements lack the requisite foundation to be admissible. The testimony, if admissible, must emanate from the declarants themselves, not by way of filter through plaintiffs.

To be admissible at summary judgment, the exhibits must be presented in a form that would be admissible at trial, and there must be competent witnesses through whom the documents can be

received as evidence. Fed. R. Civ. P. 56(c)(2). Because the above-listed documents and exhibits do not meet one of the exceptions to the bar against hearsay, they are inadmissible as evidence in this matter. *See* Fed. R. Evid. 802 & 803.

Chris Hendrikson (PX 12) has not been proffered as an expert witness, and thus his testimony is necessarily limited to that of a lay witness.[1] However, within their motion for summary judgment, plaintiffs are attempting to use Mr. Hendrikson's affidavit to compare defendants' chargeback and customer attrition rates to the "industry average" and "industry norm," even through Mr. Hendrikson does not use these terms and does not offer opinions in this regard. Setting aside plaintiffs' mischaracterization of the Hendrikson's statement, statements and testimony about industry averages requires an expert opinion.[2] Thus, to the extent plaintiffs rely

---

[1] Rule 701 of the Federal Rules of Evidence provides that "[i]f a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determine a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." In other words, "lay testimony results from a process of reasoning familiar in everyday life, while expert testimony results from a process of reasoning which can be mastered only by specialists in the field." *United States v. Christian*, 673 F.3d 702, 708 (7th Cir. 2012) (citing Fed. R. Evid. 701 advisory committee's note (2000 amends.). As such, lay testimony is not admissible when the "witness's reasoning process [is] not that of an average person in everyday life'" but, rather, relies on the witness's' considerable specialized training[,] . . . experience, and knowledge." *United States v. Fenzl*, 670 F.3d 778, 782 (7th Cir. 2012) (internal quotations omitted). That means lay testimony is not admissible to "'provide specialized explanations or interpretations that an untrained layman could not make if perceiving the same acts or events.'" *United States v. Conn*, 297 F.3d 548, 554 (7th Cir. 2002) (quoting *United States v. Peoples*, 250 F.3d 630, 641 (8th Cir. 2001)).

[2] Establishing industry averages is the domain of expert, rather than lay witnesses because it requires specialized knowledge and training beyond that of the average person. *See e.g. Std. Iron Works v. ArcelorMittal (In re Steel Antitrust Litig.),* No. 08-cv-5214, 2015 U.S. Dist. LEXIS 119652 at * 30 (N. D. Ill. Sep. 9, 2015) (expert used to calculate average index of demand for construction and automobile manufacturing); *Andy Mohr Truck Ctr., Inc. v. Volvo Trucks N. Am.,* No. 1:12-cv-448-WTL-DKL, 2015 U.S. Dist. LEXIS 11560 at * 13 (S.D. IN. Feb 2, 2015) (expert used to calculate the average market share of Volvo trucks in a specific region); *Susman v. Lincoln American Corp.,* 578 F. Supp. 1041, 1047 (N.D. Ill. 1984) (expert economists calculated industry averages to opine on the value of plaintiff's stock shares); *Tri Cnty. Wholesale Distribs. v. Labatt USA Operating Co*., LLC, 112 F. Supp. 3d 639, 655 (S.D. OH. 2015) (expert testimony was permitted to opine on the average capital structure in the beer distribution industry). Indeed, the specialized experience needed to calculate industry averages is such that courts have rejected expert testimony regarding industry averages as unreliable when based on speculation or faulty assumptions. *See e.g. Loeffel Steel Prods. v. Delta Brands, Inc.*, 387 F. Supp. 2d 794 (N.D. Ill. 2005) (rejecting expert testimony regarding lost profits where the plaintiff's expert calculated industry averages using business that were not comparable); *EEOC v. New Prime, Inc.*, No. 6:11-CV-03367-MDH, 2015 U.S. Dist. LEXIS 167496 at ** 9-13 (W.D. Mo. Aug. 31, 2015) (rejecting expert calculations of the attrition rate in the trucking industry as speculative and unreliable)

on Mr. Hendrikson's affidavit to support their arguments pertaining to industry averages, such materials should be stricken from the record on summary judgment.

### B. Affirmations and Testimony Lacking in Credibility

Defendants have presented evidence which raises serious questions as to the credibility of Roderic Boling (PX 93), and Michael Hilgar (PX 14, 90).

These credibility issues undermine the entirety of the witnesses' testimony, not only the portions that have been directly called into question by the defendants' own evidence. Where, as here, the credibility of the witnesses is partially undermined in a material way by the non-moving party's evidence, the court can strike the testimony as to all claims to which that witness's testimony is relevant. *See Charles v. County of Nassau*, No. CV 11-2709 (MKB) (GRB), 2015 U.S. Dist. LEXIS 98427, *32-34, (E.D.N.Y. Feb 20, 2015) (rejecting the argument that perjury by a police officer falsely implicating other individuals did not affect the truthfulness of a subsequent sworn statement); *Chem. Bank v. Hartford Accident & Indem. Co.,* 82 F.R.D. 376, 378-79 (S.D.N.Y. 1979) (denying summary judgment on all claims where defendant submitted evidence that some of the leases at issue were forged, because the credibility issues extended to all the leases).

Courts in this Circuit adhere to the notion of *falsus in uno, falsus in omnibus*, in accordance with which jurors are frequently provided with the following instruction: If you believe that a witness has given false testimony with respect to a material fact, you may disregard the testimony of the witness in whole or in part. *See, e.g. Brown v. Blanchard*, 31 F. Supp. 3d 1003, 1010 (E.D. Wisc. 2014) (the trier of fact may consider whether falsehoods in witness's testimony so undermine his credibility as to warrant disbelieving the rest of his

testimony or a crucial part of such testimony) (citing *United States v. Edwards*, 581 F.3d 604, 612 (7th Cir. 2009).

Here the statements of the FTC's witnesses have been consistently and seriously contradicted by credible evidence. As to Boling at PX 93, May and Sirlin have denied his allegations[3], and Boling explicitly acknowledges use of aliases, pleading guilty to a crime, and that his cooperation with the FTC was a factor considered during his sentencing. (PX 93, paragraphs 59-60). Finally, as to Hilgar (PX 14 and 90), the court previously noted in its preliminary injunction opinion:

> Hilgar now disavows that earlier declaration, claiming that he "did not closely review [it] at the time that [he] signed it." *Id.* at ¶ 12. Plaintiffs imply that the earlier declaration should be disregarded because Lifewatch paid Hilgar to sign it. Doc. 97 at ¶ 9; Doc. 101 at 13. Ultimately, Hilgar's declarations are a wash. The fact that Hilgar once swore to the opposite of what he now asserts to be true severely undermines his credibility. In reaching its decision on the present motion, the court has opted not to consider Hilgar's declarations. *FTC v. Lifewatch Inc.,* 176 F. Supp. 3d 757, 778 (N.D. Ill. 2016)

For this same reason, Hilgar's declarations should not be considered for purposes of the plaintiffs' summary judgment motion.

The credibility of these witnesses has been undermined to such a degree that the veracity of all of their statements are in doubt. Each of their statements and the supporting exhibits should thus be stricken.

---

[3] PX 98, Transcript of Deposition of Sirlin, paragraph 53; Exhibit 2, Sirlin Declaration, paragraph 10. PX 100, Transcript of Deposition of Mitchel May, p. 37; Exhibit 1, May Declaration, paragraph 15

### C. Witnesses who Evaded Subpoena

The declarations of Roderic Boling (PX 93), Michael Hilgar (PX 14 and 90), and Joseph Settecase (PX 15) should also be stricken because each of these witnesses evaded service of defendants' subpoena.[4] Even setting aside Boling's serious credibility issues (discussed above), the Court should not consider the averments contained in Mr. Boling's affidavit because, among other things, Mr. Boling repeatedly evaded defendants' subpoena. The same is true of Mr. Hilgar and Mr. Settecase. As consequence, the defendants have been unable to cross-examine these witnesses or obtain necessary discovery from them. *See Yarus v. Walgreen Co.*, No. 14-16562015, U.S. Dist. LEXIS 86247 at n. 9 (E.D. Pa. 2015) "it seems fundamentally unfair to allow a third party witness to dodge service of (or simply ignore) discovery subpoenas, and then magically appear and testify in response to a trial subpoena." *See also, Van Beek v. Robinson*, No. 11-cv-10514, 2013 U.S. Dist. LEXIS 13708 at * 11 (E.D. Mich. Feb. 1, 2013) (precluding witnesses who were not produced for deposition and holding that making those witnesses available following the close of discovery was an insufficient remedy); *Scozzari v. City of Clare*, No. 08-10997-BC, 2012 U.S. Dist. LEXIS 77030 at * 5 (E.D. Mich. June 4, 2012) (precluding plaintiff's witness from testifying at trial when he refused to be deposed while discovery was still open and defendants were diligent in attempting to pursue the witness's deposition); *JAT, Inc. v. Nat'l City Bank of the Midwest*, No. 06-CV-11937-DT, 2008 U.S. Dist. LEXIS 32759 *11 (E.D. Mich. April 22, 2008) (E.D. Mich. April 22, 2008) " 'A court surely can bar the testimony of a witness who refuses to submit to a deposition or to produce the materials he reviewed prior to testifying.' " (quoting *Northbrook Excess and Surplus Insurance Co. v. The Procter and Gamble Co.*, No. 83 C 3150, 1988 U.S. Dist LEXIS 14895, *3-4 (N.D. Ill. Dec. 28, 1988).

---

[4] Exhibit 3, Affidavits of Nonservice for Boling, Hilgar, Settecase

### D. Improper Citation to the Record and Improper Allegations

It is well-established that citations in a memorandum's statement of facts should only be to the Rule 56.1 (a) statement of undisputed facts, not directly to the record. *Daoust v. Abbott Labs,* No. 5 C 6018, 2006 WL 2711844 at *2 (N.D. Ill. Sept. 19, 2006); *Malec v. Sanford,* 191 F.R.D. 581, 586 (N.D. Ill. 2000). "Providing additional facts in one's memorandum is insufficient to put those facts before the Court." *Id.* at 584. Plaintiffs reference facts in their Memorandum of Law that are not properly contained in their Rule 56.1(a) statement, including: "Lifewatch's illegal practices continued through other telemarketers" (R. Doc. 243, p. 4); "When consumers answered a call from one of Defendants' telemarketers, they heard a prerecorded message, often sounding as if were a live person" (Id); "The robocalls never identified who was making the call, that Defendants were trying to sell something to consumers, or anything about how much consumers would end up paying for Defendants' offer" (Id); "Once connected to a live telemarketer, consumers received a high-pressure sales pitch that reinforced the statements made in the deceptive robocall message" (R. Doc. 243, p. 5); "Almost immediately after Lifewatch began implementing its telemarketing scheme in early 2012, consumer complaints about Lifewatch's deceptive and abusive telemarketing practices began to pour in to the local better Business Bureau, State Attorneys General, the media, trade organizations, the FTC, Lifewatch's business partners, and Lifewatch itself" (Id); "Consumer complaints and lawsuits continued, and Defendants failed to take any steps to ensure that the telemarketers did not engage in deceptive and abusive telemarketing practices" (R. Doc. 243, p. 10); "Evidence adduced during the intervening eighteen months of discovery has strengthened Plaintiffs' case and further revealed that Defendants knew exactly what their telemarketers were up to, and indeed, that Defendants themselves were orchestrating the scheme" (Id); "the deceptive and abusive telemarketing practices were far from

9

the work of a rare rogue telemarketer of call center, but depended on Defendants' active participation, encouragement, and coordination." (R. Doc. 243, p. 11).

Local Rule 56.1(a) requires that each numbered paragraph in the moving party's statement of material facts include "specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph," including proper page and paragraph numbers. LR 56.1(a); *Barth v. Vill. of Mokena*, 2006 WL 862673 at *3 (N.D. Ill. Mar. 31, 2006); *Malec*, 191 F.R.D. at 583. Failure to submit such a statement constitutes grounds for denial of the motion. *Id.* Plaintiffs' Local Rule 56.1(a) fact paragraphs, *inter alia*, 9, 10, 13, 15, 16, 19, 20, 21, 24, 31, 32, 33, 34, 43, 44, 46, 51, 59, 63, 65, 91, and 97 cite to evidence/depositions/affidavits that are completely unrelated to the paragraphs' factual assertions. As noted in Defendants' Opposition to Plaintiffs' Rule 56.1(a) Statement of Undisputed Facts, in many instances, these documents, on their face, do not stand for the propositions for which they are offered. Because these fact statements are unsupported by record evidence, and do not contain admissible or relevant evidence, Defendants request that they be stricken.

Moreover, Plaintiffs' Statement 106 (pertaining to a revenue calculation) is based on documents that have been improperly cited or do not exist. Accordingly, these documents must be stricken (and thus Plaintiff's Statement 106 must be deemed unsupported or controverted). Specifically, plaintiffs rely on bates numbers (FTC-LW-7499-7501 and FTC–LW-16-7502-7508), which correspond to part of a "Telemarketing Services Agreement" and do not correspond to any documents showing sales figures, refunds, or receipts. Moreover, after a review of the voluminous e-discovery, a document fitting this description has not been located.

## **CONCLUSION**

For the reasons stated herein, Defendants respectfully request that this Court grant their Motion to Strike Certain Materials and Statements Submitted by Plaintiffs in Support of Cross-Motions for Summary Judgment, and for any other relief this Court deems just and proper.

Respectfully submitted,

| | |
|---|---|
| */s/ Jason Sultzer* | */s/ Joelle M. Shabat* |
| Jason Sultzer, Esq. | Brian W. Bell, Esq. |
| Joseph Lipari, Esq. | Joelle M. Shabat, Esq. |
| The Sultzer Law Group | Swanson, Martin & Bell, LLP |
| 14 Wall Street, 20th Floor | 330 North Wabash Avenue, Suite 3300 |
| New York, New York 10005 | Chicago, Illinois 60611 |
| (212) 618-1938 | (312) 321-9100 |
| sultzerj@thesultzerlawgroup.com | bbell@smbtrials.com |
| liparij@thesultzerlawgroup.com | jshabat@smbtrials.com |
| ***Attorneys for Lifewatch, Inc., Evan Sirlin, and Mitchel May*** | ***Attorneys for Safe Home Security, Inc.; MedGuard Alert, Inc.; and David Roman*** |