| Plaintiffs' Statement of Material Fact | Plaintiffs' Supporting Documents to Which Defendants Have Not Objected | Plaintiffs' Supporting Documents to Which Defendants Have Objected | Plaintiffs' Response |
|---|---|---|---|
| **9. Defendants and their telemarketers have told consumers that they can receive a medical alert system for free because a friend, family member, health care provider, or acquaintance referred the consumer to Defendants, or because a friend, family member, health care provider, or acquaintance purchased the medical alert system for the consumer.** | Dkt. 24-18 at 3, PX 22, Bourne Dec. ¶ 4 (telemarketer said "friends and family had gotten together and pre-paid for a medical alert device on my behalf"); Dkt. 24-19 at 2, PX 23, Bristow Dec. ¶ 4 (doctor, friend or family member recommended consumer get the device, and no charge because it had already been paid for); Dkt. 24-20 at 3, PX 24, Carson Dec. ¶ 4 (telemarketer said "a friend or relative probably ordered the device on my behalf"); Dkt. 24-21 at 2, PX 25, Cattie Dec. ¶ 3 ("I repeated that I did not want a medical alert device, but the man told me that the person giving the gift would lose their money if I did not accept . . . ."); Dkt. 24-23 at 2, PX 27, Clawson Dec. ¶ 3 ("you have been referred by a friend or relative to receive a free medical alert system"); Dkt. 24-26 at 2, PX 30, Daniel Dec. ¶ 3 (multiple calls in which telemarketer said "a friend or family member had purchased a medical alert device as a gift for me"); Dkt. 24-27 at 5, Dkt. 17-1 at 29, PX 31, deLoca Dec. ¶¶ 12, 13, 18, 19, 20 (received robocalls stating "Since you've already been referred by a medical professional, you are eligible for a personal medical alert system at no cost to you."); Dkt. 25-5 at 2-3, PX 37, Gordon Dec. ¶¶ 4,5 (multiple robocalls saying "family member or friend" ordered device for me and telemarketer said company had gotten consumer's name from a family member); Dkt. 25-7 at 2, PX 39, Grigorian Dec. ¶ 3 ("medical professional had recommended me, or someone in my family, for a medical alert device…device was already paid for"); Dkt. 25-9 at 4, Dkt. 18-1 at 5, PX 41, James Dec. ¶ 8 ("Since you've already been referred by a friend or family member, we have a system waiting to be shipped out to you."); Dkt. 25-9 at 4-5, Dkt. 18-1 at 38, PX 41, James Dec. ¶ 9 (same); Dkt. 25-10 at 3, PX 42, Jensen Dec. ¶¶ 5-6 (system already paid for); Dkt. 25-11 at 3, PX 43, Jones Dec. ¶ 5 ("device already has been ordered…and paid for by a friend or family member"); Dkt. 25-17 at 3, PX 49, Meehl Dec. ¶ 5 (telemarketer said friend or family member gave company my information); Dkt. 25-18 at 11, Dkt. 20-1 at 15, PX 50, Mey Dec. ¶ 32 ("Since you've already been referred by a medical professional, you're eligible for a personal medical alert system at no cost to you."); Dkt. 25-18 at 11, Dkt. 20-1 at 15, PX 50, Mey Dec. ¶ 33 (same); | Dkt. 21-2 at 41, PX 3, Tyndall Dec. Att. B ("…already referred by a friend or family member, we have a system waiting to be shipped to you") *Defendants' objection: "does not refer to receiving a medical alert system for free because a friend, family member, health care provider, or acquaintance referred the consumer to Defendants, or because a friend, family member, health care provider, or acquaintance purchased the medical alert system for the consumer"*; Dkt. 24-2 at 2-3, PX 6, Smith Dec. ¶ 4 (consumers reported that messages indicated device had already been purchased for consumer) *Defendants' objection: "constitutes inadmissible hearsay (move to strike)"*; Dkt. 24-3 at 32, PX 7, Cuomo Dec. ¶ 5, Att. A at 28 (elderly father told that "a family member wanted him to have this alarm unit") *Defendants' objection: "constitutes inadmissible hearsay (move to strike)"*; Dkt. 24-15 at 2, PX 19, Beyer Dec. ¶ 4 (elderly consumer convinced to purchase device because telemarketer claimed his doctor said he needed it) *Defendants' objection: "constitutes inadmissible hearsay (move to strike)"*; Dkt. 24-25 at 3, PX 29, D'Addario Dec. ¶¶ 5-7 (telemarketer said system already paid for) *Defendants' objection: "constitutes inadmissible hearsay (move to strike)"*; Dkt. 25-4 at 2, PX 36, Girard Dec. ¶ 4 (telemarketer said someone had already paid for device) *Defendants' objection: "constitutes inadmissible hearsay (move to strike)"*; Dkt. 25-25 at 2, PX 57, Rivard Dec. ¶ 3 (dad told that someone had signed him up) *Defendants' objection: "constitutes inadmissible hearsay (move to strike)"*; Dkt. 25-28 at 4, PX 60, Veysey Dec. ¶ 8 (telemarketer claimed to have gotten consumer's name from family member or friend) *Defendants' objection: "constitutes inadmissible hearsay (move to strike)"*; Dkt. 25-29 at 2, PX 61, Wagler Dec. ¶ 4 (same) *Defendants' objection: "constitutes inadmissible hearsay (move to strike)"*; | Dkt. 21-2 at 41, PX 3, Tyndall Dec. Att. B ("…already referred by a friend or family member, we have a system waiting to be shipped to you") *Plaintiffs' response: while the affidavit does not use the word "free" the implication from the language contained in the parenthetical is that the consumer would not have to pay for the device because someone referred him.* Dkt. 24-2 at 2-3, PX 6, Smith Dec. ¶ 4 (consumers reported that messages indicated device had already been purchased for consumer) *Plaintiffs' response: admissible under the residual hearsay exception, FRE 807.* Dkt. 24-3 at 32, PX 7, Cuomo Dec. ¶ 5, Att. A at 28 (elderly father told that "a family member wanted him to have this alarm unit") *Plaintiffs' response: admissible as a business record, FRE 803(6), under the residual hearsay exception, FRE 807 and as an admission of a party opponent, FRE 801(d)(2)(D).* Dkt. 24-15 at 2, PX 19, Beyer Dec. ¶ 4 (elderly consumer convinced to purchase device because telemarketer claimed his doctor said he needed it) *Plaintiffs' response: admissible under the residual hearsay exception, FRE 807 and as an admission of a party opponent, FRE 801(d)(2)(D).* Dkt. 24-25 at 3, PX 29, D'Addario Dec. ¶¶ 5-7 (telemarketer said system already paid for) *Plaintiffs' response: admissible under the residual hearsay exception, FRE 807 and as an admission of a party opponent FRE 801(d)(2)(D).* Dkt. 25-4 at 2, PX 36, Girard Dec. ¶ 4 (telemarketer said someone had already paid for device) *Plaintiffs' response: admissible under the residual hearsay exception, FRE 807 and as an admission of a party opponent, FRE 801(d)(2)(D).* Dkt. 25-25 at 2, PX 57, Rivard Dec. ¶ 3 (dad told that someone had signed him up) *Plaintiffs' response: admissible under the residual hearsay exception, FRE 807 and as an admission of a party opponent FRE 801(d)(2)(D);* Dkt. 25-28 at 4, PX 60, Veysey Dec. ¶ 8 (telemarketer claimed to have gotten consumer's name from family member or friend) *Plaintiffs' response: admissible as* |

| Plaintiffs' Statement of Material Fact | Plaintiffs' Supporting Documents to Which Defendants Have Not Objected | Plaintiffs' Supporting Documents to Which Defendants Have Objected | Plaintiffs' Response |
|---|---|---|---|
| | Dkt. 25-18 at 12-13, PX 50, Mey Dec. ¶¶ 36-42 (same); Dkt. 25-20 at 3-4, PX 52, Monaghan Dec. ¶¶ 5 & 7 (calls stating system already paid for); Dkt. 25-22 at 3, PX 54, Pierce Dec. ¶ 5 (same); Dkt. 25-24 at 2-4, PX 56, Rench Dec. ¶¶ 3-6 (telemarketer said that somebody had purchased it, and then specifically that hospice had paid for it); Dkt. 25-26 at 2-3, PX 58, Savagian Dec. ¶¶ 4,5 ("a medical alert device had been ordered and paid for by a friend or family member" and telemarketer said device already paid for by a friend or family member); Dkt. 51-1 at 21, PX 81 Braver Dec. Att. C (robocall from Lifewatch telemarketer received on 8/10/15 stating "Because you were referred by your doctor or primary care physician, your medical alert system has already been paid for"; to opt out of the call, the robocall states "Press five to notify your health care provider you have refused shipment"); Dkt. 77-1 at 42, PX 86 Mey Dec. Att. E (consumer received robocall from Lifewatch telemarketer on 9/10/15 stating "Since you've already been referred to by a friend or family member, we have a system waiting to be shipped out to you."). | | *an admission of a party opponent FRE 801(d)(2)(D).* Dkt. 25-29 at 2, PX 61, Wagler Dec. ¶ 4 (same) *Plaintiffs' response: admissible as an admission of a party opponent, FRE 801(d)(2)(D).* |
| **10. No friend, family member, health care provider, or acquaintance paid for a device or referred consumers to Defendants.** | Dkt. 24-18 at 3, PX 22, Bourne Dec. ¶ 4 (telemarketer said "friends and family had gotten together and pre-paid for a medical alert device on my behalf"; consumer knew it was not true); Dkt. 24-21 at 2-3, PX 25, Cattie Dec. ¶¶ 3-4 (not true that someone referred consumer); Dkt. 24-23 at 2, PX 27, Clawson Dec. ¶ 3 (could not have been referred to the company as a senior because he is not one); Dkt. 24-26 at 2-3, PX 30, Daniel Dec. ¶ 4 (contacted all family member and nobody had referred consumer); Dkt. 24-27 at 5, Dkt. 17-1 at 29, PX 31, deLoca Dec. ¶¶ 12, 13, 18, 19, 20 (never referred); Dkt. 25-5 at 3, PX 37, Gordon Dec. ¶ 5 (not true that company had gotten consumer's name from a family member); Dkt. 25-7 at 2-3, PX 39, Grigorian Dec. ¶¶ 3,4 (not true that consumer had been referred); Dkt. 25-9 at 4-5, PX 41, James Dec. ¶¶ 8, 9 (falsely told consumer had been referred); Dkt. 25-11 at 3-4, PX 43, Jones Dec. ¶ 6 (misleading to say it has already been ordered and paid for by a friend or family member); Dkt. 25-17 at 3, PX 49, Meehl Dec. ¶ 5 (not true that friend or | Dkt. 21-2 at 41, PX 3, Tyndall Dec. Att. B (undercover call recorded by FTC investigator) *Defendants' objection: "does not refer to receiving a medical alert system for free because a friend, family member, health care provider, or acquaintance referred the consumer to Defendants, or because a friend, family member, health care provider, or acquaintance purchased the medical alert system for the consumer";* Dkt. 24-15 at 2, PX 19, Beyer Dec. ¶ 4 (elderly consumer convinced to purchase device because telemarketer falsely claimed his doctor said he needed it) *Defendants' objection: "constitutes inadmissible hearsay (move to strike)";* Dkt. 24-25 at 3, PX 29, D'Addario Dec. ¶ 6 (nobody referred consumer) *Defendants' objection: "constitutes inadmissible hearsay (move to strike)";* Dkt. 25-4 at 2-3, PX 36, Girard Dec. ¶¶ 4, 5 (consumer's daughter had already signed consumer up for different medical alert service) *Defendants' objection: "constitutes inadmissible hearsay (move to* | Dkt. 21-2 at 41, PX 3, Tyndall Dec. Att. B ("...already referred by a friend or family member, we have a system waiting to be shipped to you") *Plaintiffs' response: while the declaration does not use the word "free" the implication from the statement contained in the parenthetical is that the consumer would not have to pay for the device because someone referred him.* Dkt. 24-15 at 2, PX 19, Beyer Dec. ¶ 4 (elderly consumer convinced to purchase device because telemarketer claimed his doctor said he needed it) *Plaintiffs' response: admissible under the residual hearsay exception, FRE 807 and as an admission of a party opponent, FRE 801(d)(2)(D).* Dkt. 24-25 at 3, PX 29, D'Addario Dec. ¶¶ 5-7 (telemarketer said system already paid for) *Plaintiffs' response: admissible under the residual hearsay exception, FRE 807 and as an admission by a party opponent FRE 801(d)(2)(D).* Dkt. 25-4 at 2, PX 36, Girard Dec. ¶ 4 (telemarketer said someone had already paid for device) *Plaintiffs'* |

| Plaintiffs' Statement of Material Fact | Plaintiffs' Supporting Documents to Which Defendants Have Not Objected | Plaintiffs' Supporting Documents to Which Defendants Have Objected | Plaintiffs' Response |
|---|---|---|---|
| | family member gave company my information); Dkt. 25-18 at 11, PX 50, Mey Dec. ¶¶ 32, 33, 36-42 (not true that consumer had been referred); Dkt. 25-24 at 3, PX 56, Rench Dec. ¶ 6 (hospice had not paid for or referred consumer as telemarketer had said); Dkt. 25-26 at 2-3, PX 58, Savagian Dec. ¶ 4 (same); Dkt. 96-1 at 8-10, PX 89, Einikis Dec. Att. A (5/18/15 email from Vandewater at Lifewatch to undisclosed call centers stating "[Y]ou know that a doctor or family member did not refer them to get the system, so you should not be telling customers that...These are all things that have been coming up lately and the reps need to be reminded that they cannot do that. This is a general email that is going to everybody so please go over this information with your sales/verification/CS reps."); Dkt. 96-1 at 6, PX 89, Einikis Dec. Att. A (5/29/15 email from Vandewater at Lifewatch to undisclosed call centers stating "They say they are getting a call that they were referred by a doctor or friend…Please make sure that these numbers are not called and that you are not telling customers a friend or family or ANYBODY referred the unit for them because thats [sic] not true and misleading."); Dkt. 96-1 at 27, PX 89, Einikis Dec. Att. A (10/13/14 email from Vandewater at Lifewatch to undisclosed call centers stating "I have been hearing a lot of complaints lately from the customer service dept that customers are being told that 'the billing does not start until you plug in and activate the unit.' I know I have said NUMEROUS times that the reps under NO circumstance can say that to customers but it is still being done."); FTC-LW09-1528 (5/9/13 Sirlin email to Worldwide, forwarding 5/9/13 email from Baker saying Lifewatch is "still getting complaints and cancels due to customers being told by reps that their 'loved one' recommended the product"; threatening to go BBB and sue "because we're lying and tricking them into something."). | strike)"; Dkt. 25-25 at 3, PX 57, Rivard Dec. ¶ 4 (nobody had signed consumer up) *Defendants' objection: "constitutes inadmissible hearsay (move to strike)"*; Dkt. 25-29 at 3, PX 61, Wagler Dec. ¶ 5 (same) *Defendants' objection: "constitutes inadmissible hearsay (move to strike)"*; | response: admissible as a residual hearsay exception, FRE 807 and as an admission of a party opponent, FRE 801(d)(2)(D). Dkt. 25-25 at 2, PX 57, Rivard Dec. ¶ 3 (dad told that someone had signed him up) *Plaintiffs' response: admissible under the residual hearsay exception, FRE 807 and as an admission of a party opponent, FRE 801(d)(2)(D).* Dkt. 25-28 at 4, PX 60, Veysey Dec. ¶ 8 (telemarketer claimed to have gotten consumer's name from family member or friend) *Plaintiffs' response: admissible as an admission of a party opponent, FRE 801(d)(2)(D).* Dkt. 25-29 at 3, PX 61, Wagler Dec. ¶ 4 (same) *Plaintiffs' response: admissible as an admission of a party opponent, FRE 801(d)(2)(D).* |
| **13. Defendants and their telemarketers have told consumers that Defendants' medical alert system has been recommended by the American Heart Association, the American Diabetes Association, the National Institute on Aging, the AARP, the American Red Cross,** | Dkt. 24-1 at 132, PX 5, Bradley Dec. ¶ 5, Att. D (telemarketer said "our device has been recommended by the American Heart Association, the American Diabetes Association, the National Institute of Aging…"); Dkt. 24-27 at 3, Dkt. 16-2 at 27, PX 31 deLoca Dec. ¶ 7 (telemarketer said "our device has been recommended by the American Heart Association, the American Diabetes Association, | Dkt. 21-1 at 14, PX 2, France Dec. Att. A (telemarketer states "our device is trusted by more than 65,000 health care professionals." *Defendants' objection: "does not, on its face, support the statement."*; Dkt. 21-2 at 12, 42, PX 3, Tyndall Dec. Att. A (telemarketer states "our device is actually trusted by thousands of hospitals and 65,000 health care | Dkt. 21-1 at 14, PX 2, France Dec. Att. A (telemarketer states "our device is trusted by more than 65,000 health care professionals"); Dkt. 21-2 at 12, 42, PX 3, Tyndall Dec. Att. A (telemarketer states "our device is actually trusted by thousands of hospitals and 65,000 health care professionals") & Att. B (telemarketer states device recommended by 65,000 health care professionals) ; |

| Plaintiffs' Statement of Material Fact | Plaintiffs' Supporting Documents to Which Defendants Have Not Objected | Plaintiffs' Supporting Documents to Which Defendants Have Objected | Plaintiffs' Response |
|---|---|---|---|
| other reputable organizations, and/or health care providers. | the National Institute of Aging, and is trusted by thousands of hospitals and more than 65,000 health care professionals"); Dkt. 24-27 at 3-4, Dkt. 17-1 at 7, PX 31 deLoca Dec. ¶ 8 , (same); Dkt. 25-3 at 3, PX 35, Gates Dec. ¶ 5 (telemarketer said endorsed by American Heart Association); Dkt. 25-10 at 3, 10, PX 42, Jensen Dec. ¶ 6, Att. A (robocall states system has "been recommended by thousands of hospitals and medical professionals"); Dkt. 25-15 at 4, PX 47, McCourt ¶ 8 (telemarketer mentioned American Heart Association); Dkt. 25-18 at 8-9, Dkt. 19-1 at 64, PX 50 Mey Dec. ¶ 23 (telemarketer said trusted by thousands of hospitals and more than 65,000 health care professionals); Dkt. 25-18 at 10, Dkt. 19-2 at 4, PX 50 Mey Dec. ¶ 29 (same); Dkt. 25-18 at 11, Dkt. 20-1 at 17, PX 50 Mey Dec. ¶ 32 (same); Dkt. 25-18 at 12, Dkt. 20-1 at 67, PX 50 Mey Dec. ¶ 35 (same); Dkt. 25-20 at 3-4, PX 52, Monaghan Dec. ¶¶ 5, 7 ("recommended by thousands of hospitals and medical professionals"); Dkt. 25-23 at 2, PX 55, Primm Dec. ¶¶ 3, 4 (robocalls and telemarketers claim endorsement by American Heart Association); Dkt. 26-8 at 8, PX 72, Levine Dec. Ex. B (telemarketer stated "our device has been recommended by the American Heart Association, the American Diabetes Association, the National Institute of Aging, and is trusted by thousands of hospitals and more than 65,000 health care professionals"); Dkt. 26-8 at 17, PX 72, Levine Dec. Att. C (same); Dkt. 51-1 at 15-17, PX 81 Braver Dec. Att. B (5/7/12 letter from consumer to Sirlin informing him of three robocalls he received on behalf of Lifewatch, with spoofed caller IDs, that his number was registered on the DNC list, that the calls claimed endorsement by American Heart Association and American Diabetic Association, that the telemarketer eventually admitted he was working for Lifewatch, and that the robocalls failed to disclose the seller, purpose of the call, or the nature of the goods or services offered); Dkt. 77-1 at 42, PX 86 Mey Dec. Att. E (consumer received robocall from Lifewatch telemarketer on 9/10/15, telemarketer stated recommended by AARP and trusted by "thousands of doctors and hospitals around the country"). | professionals") & Att. B (telemarketer states device recommended by 65,000 health care professionals) *Defendants' objection:* "*does not, on its face, support the statement.*"; Dkt. 25-9 at 4-5, Dkt. 18-1 at 40, PX 41 James Dec. ¶ 9 (telemarketer said trusted by thousands of hospitals and more than 65,000 health care professionals) *Defendants' objection:* "*does not, on its face, support the statement.*"; | Dkt. 25-9 at 4-5, Dkt. 18-1 at 40, PX 41 James Dec. ¶ 9 (telemarketer said trusted by thousands of hospitals and more than 65,000 health care professionals) ; *Plaintiffs' response:* Defendants' appear to argue that the statement "trusted by" is somehow fundamentally different than "recommended by." Plaintiff disagrees. |
| **15. Defendants are aware that their telemarketers have told consumers that Defendants' medical alert system has been** | Dkt. 51-1 at 15-17, PX 81 Braver Dec. Att. B (5/7/12 letter from consumer to Sirlin informing him of three robocalls he received on behalf of Lifewatch, with spoofed caller IDs, that his number | FTC-LW16-2900 – 2903 (5/8/13 email from Sirlin to Lifewatch website developer suggesting website state that Lifewatch device has been "Referred by | FTC-LW16-2900 – 2903 (5/8/13 email from Sirlin to Lifewatch website developer suggesting website state that Lifewatch device has been "Referred by |

| Plaintiffs' Statement of Material Fact | Plaintiffs' Supporting Documents to Which Defendants Have Not Objected | Plaintiffs' Supporting Documents to Which Defendants Have Objected | Plaintiffs' Response |
|---|---|---|---|
| **recommended by the American Heart Association, the American Diabetes Association, the National Institute on Aging, the AARP, the American Red Cross, other reputable organizations, and/or health care providers.** | was registered on the DNC list, that the calls claimed endorsement by American Heart Association and American Diabetic Association, that the telemarketer eventually admitted he was working for Lifewatch, and that the robocalls failed to disclose the seller, purpose of the call, or the nature of the goods or services offered); FTC-LW16-373 (6/12/12 email from Sirlin to Steinmetz, forwarding email from Lifewatch customer service representative regarding complaint about Worldwide robocalling and misrepresentation regarding American Heart Association endorsement; Sirlin says Worldwide should change recorded message and instead tout "medical alarm equipment for free from a 30 year old leading medical alert provider"); FTC-LW16-8010 – 8014 (2/4/15 email from Vandewater to telemarketer re consumer told of AARP affiliation); FTC-LW16-8049 – 8050 (7/6/15 email from Vandewater to Karachopan and Eggen, brokers, and telemarketer re customer told AARP was calling and her doctor had recommended unit for her); FTC-LW16-8062 – 8064 (8/31/15 emails between Vandewater and Lifewatch Member Services representative re consumer who was told by call center that they worked for AARP and AARP recommended unit for her). | hospitals/social workers/org's/7000 pharmacies/groups/govt orgs/Dr's/Physical therapists/") *Defendants' objection: "does not, on its face support this statement."* | hospitals/social workers/org's/7000 pharmacies/groups/govt orgs/Dr's/Physical therapists/") *Plaintiffs' response: shows that Sirlin was aware of, and conveying the "referral" message.* |
| **16. Defendants' scripts say that Defendants' medical alert system has been recommended by the American Heart Association, the American Diabetes Association, the National Institute on Aging, the AARP, the American Red Cross, other reputable organizations, and/or health care providers.** | Dkt. 14-2 at 2, PX 1, Menjivar Dec. Att. A (Arcagen inbound script stating "Our device has been recommended by the American Heart Association, the American Diabetes Association, the National Institute of Aging, and is trusted by thousands of hospitals and more than 65,000 health care professionals"); Dkt. 22-2 at 11, PX 4, Velez Dec. Att. B (script from Lifewatch USA Call Center Welcome Package provided to Florida Department of Agriculture and Consumer Services by Lifewatch, stating recommended by American Diabetes Association, National Institute of Aging, and "many hospitals and healthcare organizations"); Dkt. 22-2 at 76, Att. K (US Digest script stating recommended by American Diabetes Association and national Institute of Aging); Dkt. 22-2 at 94 Att. L (script provided by U.S. Digest stating recommended by American Diabetes Association); Dkt. 22-3 at 22, PX 4, Velez Dec. Att. Q (Direct Agent Response script stating "Our device has been recommended by AARP, the American Red Cross, the National Institute of Aging and is trusted | FTC-LW16-4818-4819, 4812-14 (8/1/14 email from Vandewater at Lifewatch to Lifewatch accountant saying that attached script is "fine," including endorsement misrepresentations) *Defendants' objection: "does not include an endorsement misrepresentation but refers generally to medical alert devices."* FTC-LW16-2900 – 2903 (5/8/13 email from Sirlin to Lifewatch website developer suggesting website state that Lifewatch device has been "Referred by hospitals/social workers/org's/7000 pharmacies/groups/govt orgs/Dr's/Physical therapists/") *Defendants' objection: "does not, on its, face support the statement.";* Dkt. 22-3 at 50, Att. T at 1 (Senior Medical Alert script stating thousands of hospitals and more than 65,000 healthcare professionals) *Defendants' objection: does "not support this statement ('trusted by …hospitals').";* | FTC-LW16-4818-4819, 4812-14 (8/1/14 email from Vandewater at Lifewatch to Lifewatch accountant saying that attached script is "fine," including endorsement misrepresentations) *Plaintiffs' response: The script was for the sale of Lifewatch's device, the fact that it does not specifically reference Lifewatch does not make the recommendation language any less misleading. Particularly given that the script refers to Medical Alert System as a proper name the script refers, then switches to "Medical Alarm systems" when discussing the recommendation which was clearly confusing.* FTC-LW16-2900 – 2903 (5/8/13 email from Sirlin to Lifewatch website developer suggesting website state that Lifewatch device has been "Referred by hospitals/social workers/org's/7000 pharmacies/groups/govt orgs/Dr's/Physical therapists/") *Plaintiffs' response: shows that Sirlin was aware of,* |

| Plaintiffs' Statement of Material Fact | Plaintiffs' Supporting Documents to Which Defendants Have Not Objected | Plaintiffs' Supporting Documents to Which Defendants Have Objected | Plaintiffs' Response |
|---|---|---|---|
| | by thousands of hospitals and more than 65,000 healthcare professionals"); Dkt. 22-3 at 154, Att. KK (script from Payless Solutions Enterprise stating "Our device has been recommended by the American Heart Association, the American Diabetes Association, the National Institute of Aging, and is trusted by thousands of hospitals and more than 65,000 health care professionals"); Dkt. 23-1 at 33, PX 4, Velez Dec. Att. RR (script from Lifewatch USA Call Center Welcome Package provided by Personal Security Shopper stating recommended by American Diabetes Association, the National Institute of Aging, "along with many hospitals and healthcare organizations"); Dkt. 23-1 at 160, Att. HHH (Live Response Agent script stating "Our device has been recommended by the American Heart Association, the American Diabetes Association, the National Institute of Aging, and is trusted by thousands of hospitals and more than 65,000 health care professionals"); Dkt. 23-1 at 189, Att. NNN (Worldwide script listing American Heart Association, American Diabetes Association, and National Institute of Aging); Dkt. 23-1 at 209, Att. OOO (Elite Information script stating "Our device has been recommended by the American Heart Association, the American Diabetes Association, the National Institute of Aging, and is trusted by thousands of hospitals and more than 65,000 health care professionals"); Dkt. 23-1 at 234, Att. RRR (Worldwide script stating recommended by American Heart Association and American Diabetics Association); Dkt. 23-1 at 245, Att. TTT (The Credit Voice script stating "Our device has been recommended by the American Heart Association, the American Diabetes Association, the National Institute of Aging, and is trusted by thousands of hospitals and more than 65,000 health care professionals"); Dkt. 23-1 at 262, Att. WWW (Live Agent Response "Inbound" Script stating "Our device has been recommended by the American Heart Association, the American Diabetes Association, the National Institute of Aging, and is trusted by thousands of hospitals and more than 65,000 health care professionals"); Dkt. 23-1 at 275, Att. ZZZ (Arcagen script stating "Our device has been recommended by the American Heart Association, the American Diabetes Association, the National Institute of Aging, and is trusted by thousands of hospitals and more than 65,000 | Dkt. 22-3 at 125, Att. GG (Oasis Money Group script stating thousands of hospitals and more than 65,000 healthcare professionals) *Defendants' objection: does "not support this statement ('trusted by …hospitals').";* Dkt. 22-3 at 140, Att. II (Payless Solutions script stating 65,000 healthcare professionals) *Defendants' objection: does "not support this statement ('trusted by …hospitals').";* Dkt. 22-3 at 171, Att. MM (Miranda Money Group script stating thousands of hospitals and more than 65,000 healthcare professionals) *Defendants' objection: does "not support this statement ('trusted by …hospitals').";* Dkt. 23-1 at 64, Att. UU (Total Security Vision script stating thousands of hospitals and more than 65,000 healthcare professionals) *Defendants' objection: does "not support this statement ('trusted by …hospitals').";* Dkt. 23-1 at 99, Att. XX (Alertlink script stating over 65,000 healthcare professionals) *Defendants' objection: does "not support this statement ('trusted by …hospitals').";* Dkt. 23-1 at 124, Att. CCC at 1 (Alertlink script stating thousands of hospitals and more than 65,000 healthcare professionals) *Defendants' objection: does "not support this statement ('trusted by …hospitals').";* Dkt. 26-16 at 9, PX 80 Einikis Dec. Att. A (Royal Holdings of America/Payless script stating "trusted by thousands of hospitals and more than 65,000 healthcare professionals") *Defendants' objection: does "not support this statement ('trusted by …hospitals').";* Dkt. 26-16 at 65, Att. D (Payless script stating "trusted by thousands of hospitals and more than 65,000 healthcare professionals") *Defendants' objection: does "not support this statement ('trusted by …hospitals').";* Dkt. 23-1 at 158, Att. GGG (Live Response Agent script stating recommended by American Diabetes Association) *Defendants' objection: "Contrary to plaintiffs' characterization this document refers generally to "medical alert devices have also been recommended…".;* Dkt. 21-2, p. 43 does not support this statement ("trusted and recommended by health care | *and conveying the "referral" message.* Dkt. 22-3 at 50, Att. T at 1 (Senior Medical Alert script stating thousands of hospitals and more than 65,000 healthcare professionals); Dkt. 22-3 at 125, Att. GG (Oasis Money Group script stating thousands of hospitals and more than 65,000 healthcare professionals); Dkt. 22-3 at 140, Att. II (Payless Solutions script stating 65,000 healthcare professionals); Dkt. 22-3 at 171, Att. MM (Miranda Money Group script stating thousands of hospitals and more than 65,000 healthcare professionals); Dkt. 23-1 at 64, Att. UU (Total Security Vision script stating thousands of hospitals and more than 65,000 healthcare professionals) ; Dkt. 23-1 at 99, Att. XX (Alertlink script stating over 65,000 healthcare professionals); Dkt. 23-1 at 124, Att. CCC at 1 (Alertlink script stating thousands of hospitals and more than 65,000 healthcare professionals); Dkt. 26-16 at 9, PX 80 Einikis Dec. Att. A (Royal Holdings of America/Payless script stating "trusted by thousands of hospitals and more than 65,000 healthcare professionals"); Dkt. 26-16 at 65, Att. D (Payless script stating "trusted by thousands of hospitals and more than 65,000 healthcare professionals"); *Plaintiffs' response: Defendants' appear to argue that the statement "trusted by" is somehow fundamentally different than "recommended by." Plaintiff disagrees.* Dkt. 23-1 at 158, Att. GGG (Live Response Agent script stating recommended by American Diabetes Association) *Plaintiffs' response: The script was for the sale of Lifewatch's device, the fact that it does not specifically reference Lifewatch does not make the recommendation language any less misleading. Particularly when it refers to Medical Alert System as the name of the product, then switches to "Medical Alarm Devices" when discussing the recommendation.* Dkt. 21-2, p. 43 does not support this statement ("trusted and recommended by health care professionals") *Plaintiffs' Response: Not cited in support of Statement 16.* |

| Plaintiffs' Statement of Material Fact | Plaintiffs' Supporting Documents to Which Defendants Have Not Objected | Plaintiffs' Supporting Documents to Which Defendants Have Objected | Plaintiffs' Response |
|---|---|---|---|
| | health care professionals"); Dkt. 23-1 at 286, Att. BBBB (American Innovative script stating "Our device has been recommended by the American Heart Association, the American Diabetes Association, the National Institute of Aging, and is trusted by thousands of hospitals and more than 65,000 health care professionals"); Dkt. 26-2 at 11, PX 66, Lancaster Dec. Att. A (Worldwide script stating "Our device has been recommended by the American Heart Association, the American Diabetes Association, the National Institute of Aging, and is trusted by thousands of hospitals and more than 65,000 health care professionals"); Dkt. 26-3 at 9, PX 67, Rowells Dec. Att. A ("Our device is trusted by thousands of hospitals and more than 65,000 healthcare professionals."); Dkt. 26-4 at 10, PX 68, Shultz Dec. Ex. A (Worldwide script stating "Our device has been recommended by the American Heart Association, the American Diabetes Association, the National Institute of Aging, and is trusted by thousands of hospitals and more than 65,000 health care professionals"); Dkt. 26-5 at 11, PX 69, Stenger Dec. Att. A (Worldwide script stating "Our device has been recommended by the American Heart Association, the American Diabetes Association, the National Institute of Aging, and is trusted by thousands of hospitals and more than 65,000 health care professionals"); Dkt. 26-16 at 25, Att. B (Global Marketing Enterprise/Payless script stating "trusted by thousands of hospitals and more than 65,000 healthcare professionals"); FTC-LW09-1029-41 (4/5/12 email from broker to Worldwide, copying Lifewatch, providing Call Center Welcome Package, including sales script, rebuttals, and Frequently Asked Questions script says Lifewatch USA and includes misrepresentations of endorsement by American Diabetes Association, American Hospital Association, and National Institute of Aging); FTC-LW09-1043-56 (same, dated 4/20/12); FTC-LW09-1067-80 (same, dated 5/2/12, including updated script); FTC-LW09-1103-16 (same, dated 5/10/12, updating script); FTC-LW09-1117-30 (same, dated 5/22/12, updating script); FTC-LW09-1132-1145 (same, dated 5/31/12); FTC-LW09-1153-1170 (same, dated 7/5/12); FTC-LW09-1220-1236 (same, dated 8/9/12); FTC-LW16-373 (6/12/12 email from Sirlin to Steinmetz, | professionals") *Defendants' objection: "does not support this statement ('trusted and recommended by health care professionals')."* Plaintiffs' Response: Not cited in support of Statement 16. | |

| Plaintiffs' Statement of Material Fact | Plaintiffs' Supporting Documents to Which Defendants Have Not Objected | Plaintiffs' Supporting Documents to Which Defendants Have Objected | Plaintiffs' Response |
|---|---|---|---|
| | forwarding email from Lifewatch customer service representative regarding complaint about Worldwide robocalling and misrepresentation regarding American Heart Association endorsement; Sirlin says Worldwide should change recorded message and instead tout "medical alarm equipment for free from a 30 year old leading medical alert provider"); FTC-LW16-569 -587 (8/10/12 email from broker to new call center, copying Sirlin, Baker, Steinmetz and other Lifewatch employees, including Call Center Welcome Package, sales script, rebuttals, and Frequently Asked Questions; script says LIFEWatch and includes endorsement misrepresentation); FTC-LW16-2566 – 2569 (4/10/13 email from Worldwide to May and Sirlin, enclosing script, claiming endorsed by American Heart Association, American Diabetes Association, National Institute of Aging, thousands of hospitals, and more than 65,000 healthcare professionals); | | |
| **19. Defendants are aware their telemarketers tell consumers that they will not be charged until they receive the device and activate it.** | Dkt. 14-3 at 46, PX 1, Menjivar Dec. Att. B (8/20/13 email from Sirlin to Baker and Worldwide, responding to 8/20/13 email from Baker to Sirlin and May stating "here is a dispute where customer was told she wouldn't have to pay until she activates it. i have gotten others like this. was rick told to remove this from his pitch?"); Dkt. 24-1 at 129, 138, PX 5, Bradley Dec. ¶ 5, Att. D (consumer billed same day as call); Dkt. 96-1 at 8-10, PX 89, Einikis Dec. Att. A (5/18/15 email from Vandewater at Lifewatch to undisclosed call centers stating "A rep cannot tell a customer that 'billing starts once you activate the system' or you wont (sic) be billed until you test the unit…These are all things that have been coming up lately and the reps need to be reminded that they cannot do that. This is a general email that is going to everybody so please go over this information with your sales/verification/CS reps."); Dkt. 96-1 at 27-28, PX 89, Einikis Dec. Att. A (10/13/14 email from Vandewater at Lifewatch to undisclosed call centers stating that ("I have been hearing lots of complaints lately from the customer service dept that customers are being told that 'the billing does not start until you plug in and activate the unit.' I know I have said NUMEROUS times that the reps under NO circumstance can (sic) say that to customers but it is still being done…It is false and misleading information and I am not sure why reps were saying it in the first place but it must stop | Dkt. 14-3 at 2 PX 1, Menjivar Dec. Att. B (notes of consumer complaint to Worldwide "Agent told customer's daughter she could activate the system months down the road and would not be charged.") *Defendant's objection: "constitute inadmissible hearsay and should be stricken."* Dkt. 14-3 at 3 (notes of consumer complaint to Worldwide that consumer "was told I don't pay until I receive it") *Defendant's objection: "constitute inadmissible hearsay and should be stricken."* Dkt. 14-3 at 35 (notes of consumer complaint to Worldwide "Customer was told that she didn't have to pay anything until after she tried out the system.") *Defendant's objection: "constitute inadmissible hearsay and should be stricken.",* Dkt. 14-3 at 36 (notes of consumer complaint to Worldwide "Rep told consumer that she didn't have to pay today only when activated") *Defendant's objection: "constitute inadmissible hearsay and should be stricken.";* Dkt. 24-3 at 5, PX 7, Cuomo Dec. ¶ 5, Att. A (consumer complaint that mom paid over $2000 for unused service) *Defendants' objection: "does not support the statement (i.e. there is no indication that the telemarketer indicated that customer will not be* | Dkt. 14-3 at 2 PX 1, Menjivar Dec. Att. B (notes of consumer complaint to Worldwide "Agent told customer's daughter she could activate the system months down the road and would not be charged.") *Plaintiffs' response: admissible under the residual hearsay exception, FRE 807 and as an admission of a party opponent, FRE 801(d)(2)(D).* Dkt. 14-3 at 3 (notes of consumer complaint to Worldwide that consumer "was told I don't pay until I receive it") *Plaintiffs' response: admissible under the residual hearsay exception, FRE 807 and as an admission of a party opponent,t FRE 801(d)(2)(D).* Dkt. 14-3 at 35 (notes of consumer complaint to Worldwide "Customer was told by Rep that she didn't have to pay anything until after she tried out the system.") *Plaintiffs' response: admissible under the residual hearsay exception, FRE 807 and as an admission of a party opponent, FRE 801(d)(2)(D).* Dkt. 14-3 at 36 (notes of consumer complaint to Worldwide "Rep told consumer that she didn't have to pay today only when activated") *Plaintiffs' response: admissible under the residual hearsay exception, FRE 807 and as an admission of a party opponent, FRE 801(d)(2)(D).* Dkt. 24-3 at 5, PX 7, Cuomo Dec. ¶ 5, Att. A |

| Plaintiffs' Statement of Material Fact | Plaintiffs' Supporting Documents to Which Defendants Have Not Objected | Plaintiffs' Supporting Documents to Which Defendants Have Objected | Plaintiffs' Response |
|---|---|---|---|
| | immediately."); <br> FTC-LW09-1473 (3/12/13 email from Worldwide to Baker, copying Sirlin, responding to 3/11/13 Baker email stating that, based on recordings Lifewatch has listened to, confirmation call should no longer say "'you will not be billed until your unit is activated'" because that "doesn't create the sense of urgency that we want our customers to have."); <br> FTC-LW09-2019-20 (9/26/11 email from Sirlin to broker and telemarketer confirming that consumers are not billed for their second month until 30 days after they activate the device, and they can get their money back if they never activate the device); <br> FTC-LW16-230 – 231 (4/2/12 email from Sirlin to Steinmetz, responding to email from Steinmetz to Sirlin, Baker, Modugno, and other Lifewatch employees, following Baker email to Modugno stating that Lifewatch "continue(s) to get the same complaints as before: …I was told I wouldn't be charged until I get the unit, etc."); <br> FTC-LW16-253 (4/13/12 email from Sirlin to Baker, forwarding email from Lifewatch employee to Worldwide relaying complaints from customers told they would not be billed until they received the unit); <br> FTC-LW16-513 – 514 (7/31/12 email from Lifewatch customer service manager to Baker and another Lifewatch employee stating "We are coming across more and more deals through Worldwide where the customers are telling us the Sales Agent told them they would be not be charged until the unit is connected. It is too many to assume that all these customers are misunderstanding."); <br> FTC-LW16-772 (10/5/12 email between Lifewatch employees, forwarding email to Worldwide, copying Sirlin, re customer who was told she would not be charged until activated); <br> FTC-LW16-3620-3622 (10/11/13 email from Sirlin responding to email from Baker to Sirlin and May, re customer told that billing would not start until unit was activated); <br> FTC-LW16-5220-5221 (10/13/14 email from Sirlin to Nonsant at Payless, asking him to address attached email from SHS employee to Vandewater, Baker, Roman, May, and Sirlin with complaint from customer told that she would not be charged until unit was activated); <br> FTC-LW16-8001 (1/9/15 email from Lifewatch telemarketer admitting they are having a "big issue" with their telemarketers telling consumers service would be free for first month or two); <br> FTC-LW16-8048 (7/1/15 email from Vandewater to telemarketer | *charged until they receive the device and activate it) and is, in any event refuted and explained by Dkt. 24-3 at 7";* <br> Dkt. 24-3 at 13, PX 7, Cuomo Dec. Att. A (consumer paid monthly fee for several months for unused service) *Defendants' objection: "does not support the statement (i.e. there is no indication that the telemarketer indicated that customer will not be charged until they receive the device and activate it) and is, in any event, refuted and explained by Dkt 24-3 at 14";* <br> Dkt. 24-3 at 15-16, PX 7, Cuomo Dec. Att. A (consumer's father paid over $130 for unused service) *Defendants' objection: "does not support the statement (i.e. there is no indication that the telemarketer indicated that customer will not be charged until they receive the device and activate it) and is, in any event, refuted and explained by Dkt 24-3 at 17";* <br> Dkt. 24-3 at 23, PX 7, Cuomo Dec. Att. A (consumer's mother paid monthly fee for over a year for unused service) *Defendants' objection: "does not support the statement (i.e. there is no indication that the telemarketer indicated that customer will not be charged until they receive the device and activate it) and is, in any event, refuted and explained by Dkt 24-3 at 24";* <br> Dkt. 24-3 at 35, PX 7, Cuomo Dec. Att. A (consumer's sister paid for 7 months of fees for unused service) *Defendants' objection: "does not support the statement (i.e. there is no indication that the telemarketer indicated that customer will not be charged until they receive the device and activate it) and is, in any event, refuted and explained by Dkt 24-3 at 36";* <br> Dkt. 24-3 at 38, PX 7, Cuomo Dec. Att. A (consumer's father paid monthly fee for several months of unused service) *Defendants' objection: "does not support the statement (i.e. there is no indication that the telemarketer indicated that customer will not be charged until they receive the device and activate it) and is, in any event, refuted and explained by Dkt 24-3* | (consumer complaint that mom paid over $2000 for unused service); Dkt. 24-3 at 13, PX 7, Cuomo Dec. Att. A (consumer paid monthly fee for several months for unused service); Dkt. 24-3 at 15-16, PX 7, Cuomo Dec. Att. A (consumer's father paid over $130 for unused service); Dkt. 24-3 at 23, PX 7, Cuomo Dec. Att. A (consumer's mother paid monthly fee for over a year for unused service); Dkt. 24-3 at 35, PX 7, Cuomo Dec. Att. A (consumer's sister paid for 7 months of fees for unused service);Dkt. 24-3 at 38, PX 7, Cuomo Dec. Att. A (consumer's father paid monthly fee for several months of unused service); Dkt. 24-3 at 40, PX 7, Cuomo Dec. Att. A (consumer's mother billed over $400 for unused service); Dkt. 24-3 at 42, PX 7, Cuomo Dec. Att. A (consumer's elderly parents paid approximately $700 for unused service) *Plaintiffs' response: all of these consumer complaints to the BBB represent that the they never activated the unit yet were charged. One can infer from their lack of activation, and surprise at being charged, that they were told they would not be charged until they activated.* <br> Dkt. 26-1 at 11-12, PX 65, Amberson Dec. ¶ 21 ("Almost every day we also heard from customers who would demand cancellations because of confusion over billing issues. Specifically, customers would complain about being billed the monthly monitoring fee before they had received or activated the medical alert systems. Based on what they had been told during the initial sales calls, they thought they would not be billed until they actually received and plugged in the system.") *Plaintiffs' response: admissible as an admission of a party opponent, FRE 801(d)(2)(D) and as non-hearsay notice.* |

| Plaintiffs' Statement of Material Fact | Plaintiffs' Supporting Documents to Which Defendants Have Not Objected | Plaintiffs' Supporting Documents to Which Defendants Have Objected | Plaintiffs' Response |
|---|---|---|---|
| | re customer told she would not be charged until she set up unit); FTC-LW16-8091 – 8092 (8/11/16 email from Vandewater to customer service representative re AG complaint re consumer told it was a free trial and would not be charged until activated); FTC-LW16-8093 (8/15/16 email from Vandewater to broker re consumer told she didn't have to pay until 7 days after she got the unit). | *at 39"*; Dkt. 24-3 at 40, PX 7, Cuomo Dec. Att. A (consumer's mother billed over $400 for unused service) *Defendants' objection: "does not support the statement (i.e. there is no indication that the telemarketer indicated that customer will not be charged until they receive the device and activate it), is inherently unreliable and includes false information (i.e. "[Lifewatch] has been fined $23 million by the FTC in 2014").;* Dkt. 24-3 at 42, PX 7, Cuomo Dec. Att. A (consumer's elderly parents paid approximately $700 for unused service) *Defendants' objection: "does not support the statement (i.e. there is no indication that the telemarketer indicated that customer will not be charged until they receive the device and activate it) and is, in any event, refuted and explained by Dkt 24-3 at 43"*; Dkt. 26-1 at 11-12, PX 65, Amberson Dec. ¶ 21 ("Almost every day we also heard from customers who would demand cancellations because of confusion over billing issues. Specifically, customers would complain about being billed the monthly monitoring fee before they had received or activated the medical alert systems. Based on what they had been told during the initial sales calls, they thought they would not be billed until they actually received and plugged in the system.") *Defendants' objection: "PX 65 constitutes inadmissible hearsay and should be stricken.";* | |
| **20. Defendants' scripts say consumers will not be charged until they receive the device and activate it.** | Dkt. 26-4 at 11, PX 68 Shultz Dec. Att. A (same); Dkt. 26-5 at 12, PX 69 Stenger Dec. Att. A (same); Dkt. 26-16 at 25, Att. B (Global Marketing Enterprise/Payless script stating "The billing cycle starts when you receive the system and activate it."); FTC-LW16-23 – 26, 14 - 22 (7/6/11 email from Baker to Steinmetz, copying Sirlin, responding to Steinmetz email informing telemarketer that he will provide him with the scripts and contract and instructing Baker to forward, attaching script dated 7/1/11, stating billing cycle will not begin until activated and service does not start until consumer receives device); FTC-LW16-252 (4/6/12 email from Sirlin to Steinmetz | Dkt. 14-3 at 8, PX 1 Menjivar Dec. Att. B at 7 (Rebuttal script found at Worldwide call center stating: "We charge your card or account TODAY for your first month's emergency medical monitoring fee, but your billing cycle does not start until you receive the system and activate it, which means you don't start using the money until you actually activate the system.") *Defendants' objection: "does not support the statement 'we charge you today' and it provides: If customer responds 'I don't have any money in my account today. Okay do you have another form of payment you would rather use today? Maybe another* | *Plaintiff's response: the cited sales scripts all contain the language included in the parentheticals stating that the billing cycle would not start until the consumer received the system and activated the device. At best, consumers were left with the impression that although they had to pay an initial $34.95 that day, they would pay nothing further until they received the device and activated it.* |

| Plaintiffs' Statement of Material Fact | Plaintiffs' Supporting Documents to Which Defendants Have Not Objected | Plaintiffs' Supporting Documents to Which Defendants Have Objected | Plaintiffs' Response |
|---|---|---|---|
| | responding to email from Steinmetz stating that Worldwide got new script which Lifewatch approved, responding to Sirlin email noting complaints that Worldwide was telling customers "billing starts when delivered"); | *credit/debit card? Wait for answer (if answer no) = or do you have a check book and we can use your checking or savings acct. If customer responds 'No' to all questions ask: 'Okay, no problem, we can do what is called a post date, just tell me what day you will have the first month's monitoring fee of $34.95 available in your account and we will not process the $34.95 payment until that day you tell us. So what day should we go ahead and process this?";* Dkt. 22-1 at 4-6, 22-2 at 37, PX 4, Velez Dec. ¶¶ 10 & 13, Atts. E & H (Lifewatch provided scripts to FDACS in November 2012 and January 2015 stating "billing cycle doesn't start until you receive the system and activate it.") *Defendants' objection: "does not support the statement. It provides: 'The only thing you would be responsible for TODAY is the Emergency Medical Technician monthly monitoring fee of just $34.95 (If hooked to a home phone) per month and the billing cycle doesn't start until you receive the system and activate it.'";* Dkt. 22-3 at 23, Att. Q (Direct Agent Response script stating "billing cycle doesn't start until you receive the system and activate it.") *Defendants' objection: "does not support the statement. It provides: 'today you pay absolutely nothing for the system. The only thing you would be responsible for **today** is the emergency medical monitoring fee of just $34.95 per month and the billing cycle doesn't start until you receive the system and activate it.' (emphasis added)";* Dkt. 22-3 at 172, Att. MM (Miranda Money Group script stating "billing cycle doesn't start until you receive the system and activate it.") *Defendants' objection: "does not support the statement. It provides: 'today you pay absolutely nothing for the system. The only thing you would be responsible for **today** is the emergency medical monitoring fee of just $34.95 per month and the billing cycle doesn't start until you receive the system and activate it.' (emphasis added)";* Dkt. 23-1 at 190, Att. NNN (Elite Information Systems script stating "billing cycle doesn't start until you receive the system and activate it.") *Defendants'* | |

| Plaintiffs' Statement of Material Fact | Plaintiffs' Supporting Documents to Which Defendants Have Not Objected | Plaintiffs' Supporting Documents to Which Defendants Have Objected | Plaintiffs' Response |
|---|---|---|---|
| | | *objection: "does not support the statement. It provides: 'today you pay absolutely nothing for the system. The only thing you would be responsible for today is the emergency medical monitoring fee of just $34.95 per month and the billing cycle doesn't start until you receive the system and activate it.' (emphasis added)";* Dkt. 23-1 at 287, Att. BBBB (American Innovative Concepts script stating "billing cycle doesn't start until you receive the system and activate it.") *Defendants' objection: "does not support the statement. It provides: 'today you pay absolutely nothing for the system. The only thing you would be responsible for today is the emergency medical monitoring fee of just $34.95 per month and the billing cycle doesn't start until you receive the system and activate it.' (emphasis added)";* Dkt. 26-2 at 12, PX 66, Lancaster Dec. Att. A (Worldwide script stating "billing cycle doesn't start until you receive the system and activate it.") *Defendants' objection: "does not support the statement. It provides: 'today you pay absolutely nothing for the system. The only thing you would be responsible for today is the emergency medical monitoring fee of just $34.95 per month and the billing cycle doesn't start until you receive the system and activate it.' (emphasis added)";* Dkt. 26-6 at 16, PX 70 Stevens Dec. Att. B (same) *Defendants' objection: "does not support the statement. It provides: 'today you pay absolutely nothing for the system. The only thing you would be responsible for today is the emergency medical monitoring fee of just $34.95 per month and the billing cycle doesn't start until you receive the system and activate it.' (emphasis added)";* Dkt. 26-16 at 65, Att. D (Payless script stating "The billing cycle doesn't start until you receive the system") *Defendants' objection: "does not support the statement. It provides: 'today you pay absolutely nothing for the system. The only thing you would be responsible for today is the emergency medical monitoring fee of just $34.95 per month and the billing* | |

| Plaintiffs' Statement of Material Fact | Plaintiffs' Supporting Documents to Which Defendants Have Not Objected | Plaintiffs' Supporting Documents to Which Defendants Have Objected | Plaintiffs' Response |
|---|---|---|---|
| | | *cycle doesn't start until you receive the system and activate it.' (emphasis added)"* FTC-LW09-1212 – 1215 (8/6/12 email from Sirlin to Worldwide and Steinmetz sending sample Lifewatch script for Connect America, including claim that "billing cycle doesn't start until you receive the system and activate it") *Defendants' objection: "does not support the statement. Rather the script says 'the only thing you would be responsible for today is the emergency medical monitoring fee of just $34.95 per month and the billing cycle doesn't start until you receive the system and activate it.'"*; FTC-LW16-660 – 679 (9/13/12 email from Sirlin to Lifewatch employee forwarding previous email to Steinmetz forwarding "proper scripts and rebuttals and confirmations" and asking Steinmetz to forward to call centers; script says billing doesn't start until consumer activates system) *Defendants' objection: "does not support the statement. Rather the script says 'the only thing you would be responsible for today is the emergency medical monitoring fee of just $34.95 per month and the billing cycle doesn't start until you receive the system and activate it.'"*; FTC-LW16-1447-1466, 1469-1485 (2/22/13 email from Sirlin to May, forwarding email from Lifewatch employee to telemarketer, copying Sirlin and Baker, attaching contract stating telemarketer "shall only use scripts identified by [Lifewatch] as approved," and sales scripts stating "billing cycle doesn't start until you receive the system and activate it") *Defendants' objection: "does not support the statement. Rather the script says 'the only thing you would be responsible for today is the emergency medical monitoring fee of just $34.95 per month and the billing cycle doesn't start until you receive the system and activate it.'"*; FTC-LW16-2417, 2121-2424, 2414-2416 (3/15/13 email from Lifewatch employee to telemarketer, copying Sirlin, enclosing, "as per Evan's request," sales scripts, FAQs, and a contract, responding to Sirlin email asking him to send the material to the call center; scripts say "billing cycle doesn't start until you receive the system and activate it") *Defendants' objection:* | |

| Plaintiffs' Statement of Material Fact | Plaintiffs' Supporting Documents to Which Defendants Have Not Objected | Plaintiffs' Supporting Documents to Which Defendants Have Objected | Plaintiffs' Response |
|---|---|---|---|
| | | *"does not support the statement. Rather the script says 'the only thing you would be responsible for today is the emergency medical monitoring fee of just $34.95 per month and the billing cycle doesn't start until you receive the system and activate it.'"*; Dkt. 23-1 at 161, Att. HHH (Live Response Agent script stating "billing cycle doesn't start until you receive the system and activate it.") *Defendants' objection: "does not support the statement. It provides: 'today you pay absolutely nothing for the system. The only thing you would be responsible for **today** is the emergency medical monitoring fee of just $34.95 per month and the billing cycle doesn't start until you receive the system and activate it.' (emphasis added)"*; Dkt. 23-1 at 210, Att. OOO (same) *Defendants' objection: "does not support the statement. It provides: 'today you pay absolutely nothing for the system. The only thing you would be responsible for **today** is the emergency medical monitoring fee of just $34.95 per month and the billing cycle doesn't start until you receive the system and activate it.' (emphasis added)"*; Dkt. 23-1 at 263, Att. WWW (Live Agent Response script stating "billing cycle doesn't start until you receive the system and activate it.") *Defendants' objection: "does not support the statement. It provides: 'today you pay absolutely nothing for the system. The only thing you would be responsible for **today** is the emergency medical monitoring fee of just $34.95 per month and the billing cycle doesn't start until you receive the system and activate it.' (emphasis added)"*; FTC-LW16-2911-2913, 2916-2932 (5/14/13 email from Sirlin to broker, Modugno, setting up call to review the attached scripts, responding to emails from Lifewatch employee that call centers cannot give out Lifewatch name; script says billing cycle begins "as soon as you receive it and activate the unit") *Defendants' objection: "does not support the statement. Rather the script says 'the only thing you would be responsible for today is the emergency* | |

| Plaintiffs' Statement of Material Fact | Plaintiffs' Supporting Documents to Which Defendants Have Not Objected | Plaintiffs' Supporting Documents to Which Defendants Have Objected | Plaintiffs' Response |
|---|---|---|---|
| | | *medical monitoring fee of just $34.95 per month and the billing cycle doesn't start until you receive the system and activate it.'"*. | |
| **21. Defendants and their telemarketers have told consumers they are under no obligation if they cancel Defendants' service.** | Dkt. 21-1 at 17-18, PX 2, France Dec. Att. A ("You can cancel at any time with no cancellation fees and no questions asked . . . because you're not under any contracts"); ("the only thing that you will be agreeing to today is just to try out the system for a month"; "return the equipment at no cost to you"); Dkt. 21-1 at 59, Att. F ("You understand there's no contract. You can cancel at any time…if you choose after that first month that you don't want to use it anymore, you just simply put it all back in the box, send it back and you would no longer have any charge."); Dkt. 21-2 at 44, PX 3, Tyndall Dec. Att. B ("They pay for the [return] shipping, don't worry.") & Att. G at 11 ("there's no shipping fee back"); Dkt. 24-1 at 133, PX 5, Bradley Att. D ("Also, there's no contract whatsoever and you can cancel at any time with no cancellation fees."); Dkt. 24-2 at 3, PX 6, Smith Dec. ¶ 6 (telemarketer said "the company even paid for return shipping."); Dkt. 24-27 at 3, Dkt. 16-2 at 29, 44, PX 31 deLoca Dec. ¶ 7 ("there is absolutely no contract whatsoever, and you can cancel at any time with no cancellation fee"; "[I]f you don't like the system you can always return it….And we'll pay for the shipping."); Dkt. 24-27 at 4, Dkt. 17-1 at 21, PX 31 deLoca Dec. ¶ 9 ("remember, you can cancel at any time with no – with no questions asked"); Dkt. 24-27 at 5, Dkt. 17-1 at 30, PX 31 deLoca Dec. ¶ 13 ("You're not signing any contracts.  There's no contracts to sign."); Dkt. 24-27 at 5-6, Dkt. 17-1 at 57, PX 31 deLoca Dec. ¶ 15 ("because there's no commitment, so you could send it back at any time… [t]he shipment's free"; "there is no contract, and you can cancel at any time with no cancellation fee"); Dkt. 25-2 at 4, PX 34, Felker Dec. ¶ 8 ("The representatives told me that I could only cancel our account with the company if I sent back the two devices at my own expense.  I was not told during the initial sales call that I would have to pay to ship the devices back."); Dkt. 25-9 at 3, Dkt. 17-2 at 6, PX 41 James Dec. ¶ 4 ("there's no contract against you or cancellation fees"); | *Defendants' objection:  "this statement is unsupported by the evidence which refers to 'no cancellation fees.'  PX 95, does not support the statement and does not include any reference to 'no obligation.'"* | *Plaintiffs' response:  the parenthetical statements leave the consumer with the impression that it would not cost them anything if they canceled.* |

| Plaintiffs' Statement of Material Fact | Plaintiffs' Supporting Documents to Which Defendants Have Not Objected | Plaintiffs' Supporting Documents to Which Defendants Have Objected | Plaintiffs' Response |
|---|---|---|---|
| | Dkt. 25-9 at 4, Dkt. 18-1 at 13, PX 41 James Dec. ¶ 8 ("There are absolutely no contracts. You can cancel at any time with no cancellation fees and everything else is completely free...there's no contract or cancellation fee."); Dkt. 25-9 at 4-5, Dkt. 18-1 at 41, PX 41 James Dec. ¶ 9 (same); Dkt. 25-18 at 3, Dkt. 18-1 at 62, PX 50, Mey Dec. ¶ 6 ("You're not on a contract, so you don't have to keep it all. If you don't like it for any reason, that's fine. You can simply call the 1-800 number and cancel."); Dkt. 25-18 at 4-5, Dkt. 18-2 at 34, 44, PX 50, Mey Dec. ¶ 10 ("absolutely no contracts whatsoever"; return label will come with package so "All you do is go ahead and put the label on there and ship it back to us, okay?"); Dkt. 25-18 at 6, Dkt. 19-1 at 7, PX 50, Mey Dec. ¶ 15 ("no contract, ma'am, no cancellation fees…You have the option to cancel at any given time you choose, no questions asked…We also send you out the return label, so that way you can do that."); Dkt. 25-18 at 7, PX 50, Mey Dec. ¶ 18 (told no contract); Dkt. 25-18 at 8, Dkt. 19-1 at 41, 42, PX 50, Mey Dec. ¶ 21 ("we're so confident with our services that we do not keep any contracts. This allows you to cancel at any time with no cancellation fees and with no penalties"; "you call us up, we pay for shipping, we send you the shipping labels and the shipping box, and you simply send it back completely free of charge…Would you like to go ahead and test out this system for one month, and if you're not satisfied, send it back, completely free of charge?"); Dkt. 25-18 at 5-6, Dkt. 19-1 at 65, PX 50, Mey Dec. ¶ 23 ("there ain't no contracts and it can be canceled at any given time with no cancellation fees"); Dkt. 25-18 at 11, Dkt. 20-1 at 18-19, PX 50, Mey Dec. ¶ 32 ("You can try it out for 30 days, and if you don't like it, you can send it back with no cancellation fee."); Dkt. 25-18 at 12, Dkt. 20-1 at 68, PX 50, Mey Dec. ¶ 32 ("the only thing you are agreeing with us today is to try it out for at least a month or two."); Dkt. 25-18 at 4, Dkt. 18-2 at 21, PX 50 Mey Dec. ¶ 8 (telemarketer said "as long as you keep the equipment, you're continuously going to be charged"); Dkt. 25-30 at 3, PX 62, Westerbrook Dec. ¶ 8 ("They never told me during the original sales call that I would have to pay to ship the equipment back to get the charges to stop."); | | |

| Plaintiffs' Statement of Material Fact | Plaintiffs' Supporting Documents to Which Defendants Have Not Objected | Plaintiffs' Supporting Documents to Which Defendants Have Objected | Plaintiffs' Response |
|---|---|---|---|
| | Dkt. 51-3 at 28, PX 83, Mey Dec. Att. B (telemarketer on 7/29/15, stated "There's no cancellation fees and no contract.");<br>Dkt. 77-1 at 45, PX 86 Mey Dec. Att. E (consumer received robocall from Lifewatch telemarketer on 9/10/15, telemarketer stated "there are no cancellation fees, and you may cancel at any time that you choose")<br>PX 95, Declaration of Forest Horne ¶ 3 (on 9/14/17, consumer received robocall to his cell phone from telemarketer who admitted he was working for Lifewatch, promising free medical alert device). | | |
| **24. Defendants' scripts say that consumers they are under no obligation if they cancel Defendants' service.** | Dkt. 14-2 at 2, PX 1, Menjivar Dec. Att. A (Arcagen inbound script found at Worldwide location promotes "FREE medical alert system package");<br>Dkt. 14-2 at 3, PX 1, Menjivar Dec. Att. A (Arcagen inbound script found at Worldwide location script states "Also, there is no contract whatsoever and you can cancel at any time with no cancellation fees.");<br>Dkt. 14-3 at 9, Menjivar Dec. Att. B (scripted rebuttal found at Worldwide location states "But if you and your (Son/daughter/husband/kids) decide you don't want to keep it, then there is no contract, no cancellation fees, and we will pay to ship it back to us.");<br>Dkt. 14-3 at 23, Att. Q (Direct Agent Response script states "Also, there is no contract whatsoever and you can cancel at any time with no cancellation fees.");<br>Dkt. 14-3 at 126, Att. GG (Oasis Money Group script states "There is no contract whatsoever and you can cancel at any time with no cancellation fees.");<br>Dkt. 14-3 at 172, Att. MM (Miranda Money Group script states "There absolutely no contracts. You can cancel at any time with no cancellation fees.");<br>Dkt. 23-1 at 65, Velez Dec. Att. UU (Total Security Vision script twice states "There absolutely no contracts. You can cancel at any time with no cancellation fees.");<br>Dkt. 23-1 at 125, Att. CCC (Alertlink script states "Also, there is no contract whatsoever and you can cancel at any time with no cancellation fees.");<br>Dkt. 23-1 at 161, Att. HHH (Live Response Agent script states "There absolutely no contracts. You can cancel at any time with no cancellation fees.");<br>Dkt. 23-1 at 190, Att. NNN (Elite Information Systems script | *Defendants' objection: "The cited documents do not support plaintiffs' statement. Specifically, none of the cited scripts say that consumers are under no obligation if they cancel Defendants' service."* | *Plaintiffs' response: the parenthetical statements leave the consumer with the impression that it would not cost them anything if they canceled.* |

| Plaintiffs' Statement of Material Fact | Plaintiffs' Supporting Documents to Which Defendants Have Not Objected | Plaintiffs' Supporting Documents to Which Defendants Have Objected | Plaintiffs' Response |
|---|---|---|---|
| | states "Also, there is no contract whatsoever and you can cancel at any time with no cancellation fees."); Dkt. 23-1 at 209-210, Att. OOO (Elite Information Systems script states "Also, there is no long term contract whatsoever and you can cancel at any time with no cancellation fees."); Dkt. 23-1 at 262-263, Att. WWW (Live Agent Response script states "Also, there is no long term contract whatsoever and you can cancel at any time with no cancellation fees."); Dkt. 23-1 at 286-287, Att. BBBB (American Innovative Concepts script states "Also, there is no long term contract whatsoever and you can cancel at any time with no cancellation fees."); Dkt. 22-3 at 2, PX 4, Velez Dec. Att. N (Multi Level Marketing script states "The entire unit is absolutely free"); Dkt. 22-3 at 23, Att. Q (Direct Agent Response script states "The system is COMPLETELY FREE"); Dkt. 22-3 at 51, Att. T (Senior Medical Alert script states "the equipment is at NO COST"); Dkt. 22-3 at 125-126, Att. GG (Oasis Money Group script twice states "at NO COST"); Dkt. 22-3 at 171-172, Att. MM (Miranda Money Group script twice states "at NO COST"); Dkt. 23-1 at 64-65, Velez Dec. Att. UU (Total Security Vision script twice states "at NO COST"); Dkt. 23-1 at 125, Att. CCC (Alertlink script states "The equipment is COMPLETELY FREE"); Dkt. 23-1 at 161-162, Att. HHH (Live Response Agent script says "NO COST" and "The equipment is COMPLETELY FREE"); Dkt. 23-1 at 189-190, Att. NNN (Elite Information Systems script states "FREE medical alert system package" and "The system is COMPLETELY FREE"); Dkt. 23-1 at 209-210, Att. OOO (same); Dkt. 23-1 at 262-263, Att. WWW (Live Agent Response script states "FREE medical alert system package" and "The system is COMPLETELY FREE"); Dkt. 23-1 at 286-287, Att. BBBB (American Innovative Concepts script states "FREE medical alert system package" and "The system is COMPLETELY FREE"); Dkt. 26-2 at 11-12, PX 66, Lancaster Dec. Ex. A (Worldwide script states "FREE medical alert system package" and "The system is COMPLETELY FREE"); Dkt. 26-2 at 12, PX 66, Lancaster Dec. Ex. A (Worldwide script states "Also, there is no contract whatsoever and you can cancel at | | |

| Plaintiffs' Statement of Material Fact | Plaintiffs' Supporting Documents to Which Defendants Have Not Objected | Plaintiffs' Supporting Documents to Which Defendants Have Objected | Plaintiffs' Response |
|---|---|---|---|
| | any time with no cancellation fees."); Dkt. 26-3 at 9-10, PX 67 Rowells Dec. Att. A (Payless script twice states "at NO COST"); Dkt. 26-3 at 10, PX 67, Rowells Dec., Att. A (Payless script stating: "There are absolutely NO contracts. You can cancel at any time with no cancellation fees."); Dkt. 26-4 at 10-11, PX 68, Shultz Dec. Ex. A (Worldwide script states "Also, there is no contract whatsoever and you can cancel at any time with no cancellation fees."); Dkt. 26-4 at 10-11, PX 68, Shultz Dec. Ex. A (Worldwide script states "FREE medical alert system package" and "The system is COMPLETELY FREE"); Dkt. 26-5 at 11-12, PX 69, Stenger Dec. Att. A (Worldwide script states "FREE medical alert system package" and "The system is COMPLETELY FREE"); Dkt. 26-5 at 12, PX 69, Stenger Dec. Ex. A (Worldwide script states "Also, there is no contract whatsoever and you can cancel at any time with no cancellation fees."); Dkt. 26-6 at 15-16, PX 70 Stevens Dec. Att. B (Worldwide script states "FREE medical alert system package" and "The system is COMPLETELY FREE"); Dkt. 26-6 at 16, PX 70 Stevens Dec. Ex. B (Worldwide script states "Also, there is no contract whatsoever and you can cancel at any time with no cancellation fees."); Dkt. 26-16 at 9, PX 80 Einikis Dec. Att. A (Royal Holdings of America/Payless script stating "There are absolutely NO contracts. You can cancel at any time with no cancellation fees."; "Medical Alert System at NO COST"); Dkt. 26-16 at 24, 25, Att. B (Global Marketing Enterprise/Payless script stating "Medical Alert System at NO COST" and "The system is AT NO COST"; "There are absolutely NO contracts. You can cancel at any time with no cancellation fees."); Dkt. 26-16 at 65, 66, Att. D (Payless script stating "Medical Alert System  at NO COST" and "The system is AT NO COST"; "There is no contract whatsoever and you can cancel at any time with no cancellation fees."). FTC-LW09-1212 – 1215 (8/6/12 email from Sirlin to Worldwide and Steinmetz sending sample Lifewatch script for Connect America, including claim that system is free, that "billing cycle doesn't start until you receive the system and activate it," and instruction that telemarketer "PITCH UPSELL"); FTC-LW09-1435 (11/6/12 email from Baker to Worldwide stating | | |

| Plaintiffs' Statement of Material Fact | Plaintiffs' Supporting Documents to Which Defendants Have Not Objected | Plaintiffs' Supporting Documents to Which Defendants Have Objected | Plaintiffs' Response |
|---|---|---|---|
| | she and Evan need Worldwide to change script regarding 30 day trial); FTC-LW16-23 – 26, 14-22 (7/6/11 email from Baker to Steinmetz, copying Sirlin, responding to Steinmetz email informing telemarketer that he will provide him with the scripts and contract and instructing Baker to forward, attaching script dated 7/1/11, stating can be cancelled at any time and "can cancel at any time with no obligation"); FTC-LW16-569 -587 (8/10/12 email from broker to new call center, copying Sirlin, Baker, Steinmetz and other Lifewatch employees, including Call Center Welcome Package, sales script, rebuttals, and Frequently Asked Questions; script says LIFEWatch and "can be cancelled at any time"); FTC-LW16-660 – 679 (9/13/12 email from Sirlin to Lifewatch employee forwarding previous email to Steinmetz forwarding "proper scripts and rebuttals and confirmations" and asking Steinmetz to forward to call centers; script says can cancel at any time with no cancellation fees); FTC-LW16-1447-1466, 1469-1485 (2/22/13 email from Sirlin to May, forwarding email from Lifewatch employee to telemarketer, copying Sirlin and Baker, attaching contract stating telemarketer "shall only use scripts identified by [Lifewatch] as approved," and sales scripts stating consumer can cancel at any time with no cancellation fees); FTC-LW16-2412-2413, 2397-2411 (3/15/13 email from Baker to Sirlin, setting up telephone call to discuss Call Center Welcome Package, scripts and FAQs to telemarketer provided by Lifewatch, copying May, and forwarding the Call Center Welcome Package, scripts, and FAQs, touting that equipment is free and can be cancelled at any time); FTC-LW16-2417, 2121-2424, 2414-2416 (3/15/13 email from Lifewatch employee to telemarketer, copying Sirlin, enclosing, "as per Evan's request," sales scripts, FAQs, and a contract, responding to Sirlin email asking him to send the material to the call center; scripts say "can cancel at any time with no cancellation fees"); PX 91, Robinson Dec. ¶ 19 (former telemarketer and telemarketing supervisor stating that robocall employed by Lifewatch call center said "You've recently been qualified to receive a medical alert system at no cost to you."). | | |
| 31. Defendants and their telemarketers have engaged in widespread caller | Dkt. 24 at 2-3, 6, PX 6, Smith Dec. ¶¶ 4 & 14 (BBB complaints about robocalls from local numbers); | *Defendants' objection: "The cited documents do not support the statement as they refer to "local numbers,"* | *Plaintiffs' response: "spoofing" refers to when a telephone number is different from the number that is* |

| Plaintiffs' Statement of Material Fact | Plaintiffs' Supporting Documents to Which Defendants Have Not Objected | Plaintiffs' Supporting Documents to Which Defendants Have Objected | Plaintiffs' Response |
|---|---|---|---|
| identification spoofing. | Dkt. 24-1 at 131, PX 5, Bradley Dec. ¶ 5, Att. E at 1 (Oklahoma resident's caller ID indicated local area code and the name "Oklahoma City OK"); Dkt. 24-11 at 3-4, PX 15, Settecase Dec. ¶ 8 (manipulated information that would appear on consumers' caller ID to display local telephone number; "It was common practice in the industry that consumers are more likely to answer telephone calls made from a local number"); Dkt. 24-13 at 3, PX 17 Bangasser Dec. ¶ 6 (appeared to be local number); Dkt. 24-18 at 2-3, PX 22, Bourne Dec. ¶ 4 (same); Dkt. 24-20 at 2, PX 24, Carson Dec. ¶ 3 (same); Dkt. 24-25 at 3, PX 29, D'Addario Dec. ¶ 7 (consumer "thought she could trust the caller because she saw the telephone number that appeared on the caller ID, and it was a local number"); Dkt. 24-27 at 3, PX 31, deLoca Dec. ¶ 5 (caller ID identified robocall displayed Katonah-Lewisboro School District name and telephone number); Dkt. 25-5 at 3-4, PX 37, Gordon Dec. ¶ 6 (same); Dkt. 25-7 at 3-4, PX 39, Grigorian Dec. ¶ 7 (called number back, notified number not in service); Dkt. 25-9 at 3, Dkt. 17-2 at 43, PX 41, James Dec. ¶ 6 (consumer called Caller ID number back and "the number is no good"); Dkt. 25-11 at 3-4, PX 43, Jones Dec. ¶ 6 (same); Dkt. 25-19 at 2, PX 51, Miller Dec. ¶ 3 (caller ID showed "FIA Card Serv"); Dkt. 25-22 at 2-5, PX 54, Pierce Dec. ¶¶ 4, 8 & 9 (caller ID appeared to be local number and later calls said "Walmart"); Dkt. 25-31 at 2, PX 63, Whaley Dec. ¶ 3 (caller ID said "Bank of America"); Dkt. 26-1 at 9-10, PX 65, Amberson Dec. ¶ 17 (consumers often complained of false caller ID information); PX 91, Robinson Dec. ¶ 19 (former telemarketer and telemarketing supervisor stating that all 5 call centers he worked at spoofed caller IDs on all calls, sometimes changing the caller ID at Lifewatch's insistence); PX 93, Boling Dec. ¶ 41 (Worldwide spoofed caller IDs); PX 95, Declaration of Forest Horne ¶¶ 3, 4 (on 9/14/17, consumer received robocall to his cell phone from telemarketer who admitted he was working for Lifewatch with spoofed caller ID). | *not to "spoofed numbers." The cited documents do not support the term "widespread." Further PX 95 does not support the statement and, contrary to plaintiffs' assertion, does not include any statement that the telemarketer admitted he was working for Lifewatch with a spoofed caller ID. PX 6 should be stricken as it constitutes inadmissible hearsay. PX 91, ¶ 9 is controverted by ¶¶ 16 of the Willie Thrasher and Miles Krodel Aff.s within Ex. E."* | *actually placing the call. Defendants' telemarketers were located in Florida. Thus, consumers' caller identification systems should all have displayed a Florida number. The cited consumers did not live in Florida. Therefore, seeing a "local" telephone number on their caller identification would have necessarily meant the telephone number was "spoofed." PX 95 at ¶ 3, Horne states he received a robocall from a North Carolina Number. Paragraph 5 he states that the representative told him the service was offered by Lifewatch. Paragraph 6 states that he received a call back from a Middletown, Connecticut number. PX 6 is admissible under the business records exception, FRE 803(6) and the residual hearsay exception, FRE 807.* |
| 32. Defendants are aware that their telemarketers have engaged in widespread | Dkt. 51-1 at 15-17, PX 81 Braver Dec. Att. B (5/7/12 letter from consumer to Sirlin informing him of three robocalls he received | *Defendants' objection: "The cited documents do not support the term 'widespread.' Further, PX 93 at ¶ 41* | *Plaintiffs' response: the cited documents show that multiple consumers received Defendants' robocalls,* |

| Plaintiffs' Statement of Material Fact | Plaintiffs' Supporting Documents to Which Defendants Have Not Objected | Plaintiffs' Supporting Documents to Which Defendants Have Objected | Plaintiffs' Response |
|---|---|---|---|
| **caller ID spoofing.** | on behalf of Lifewatch, with spoofed caller IDs, that his number was registered on the DNC list, that the calls claimed endorsement by American Heart Association and American Diabetic Association, that the telemarketer eventually admitted he was working for Lifewatch, and that the robocalls failed to disclose the seller, purpose of the call, or the nature of the goods or services offered); <br> FTC-LW16-722-723 (9/20/12 email from Sirlin to broker, Modugno, responding to email to Sirlin and Baker noting that Worldwide and another Lifewatch telemarketer were both using robocalls, using same dialing company with same recording and using multiple caller ids); <br> FTC-LW16-2835 (4/25/13 email from Connect America CEO to Sirlin, copying Roman and May, stating "The whole PERS industry is concerned over the sudden rise of consumer complaints due to telemarketing and robo dialing seniors. These tactics as you know are not something that we approve of and feel they will have a negative impact on the industry as a whole. We have made it clear that we cannot accept accounts that are derived from such tactics. We gave you notice in writing that we terminated our agreement on March 19, 2013. In addition we are hearing of misleading statements and false advertising within the script of these calls…Unfortunately due to the above mentioned information and circumstances, that effective immediately we can no longer accept even replacement accounts from Lifewatch."); <br> FTC-LW16-3430 – 3458 (8/29/13 letter and attachments from consumer to Sirlin threatening lawsuit against Lifewatch for 4 illegal robocalls to consumer on DNC Registry, which did not disclose identity of seller, and employed caller ID spoofing); <br> FTC-LW16-5597 (3/18/15 email from Kevin Carducci to Hallowell and Baker describing consumer complaint for robocalling and caller ID spoofing); <br> FTC-LW16-5655-5660 (4/28/15 email from Kevin Carducci to Hallowell and Baker, reporting spoofed caller ID); <br> FTC-LW16-5661-5662 (4/28/15 email from Kevin Carducci to Hallowell regarding customers complaining of spoofed caller IDs and robocalls); <br> PX 91, Robinson Dec. ¶ 19 (former telemarketer and telemarketing supervisor stating that all 5 call centers he worked at spoofed caller IDs on all calls, sometimes changing the caller ID at Lifewatch's insistence); <br> PX 93, Boling Dec. ¶ 41 (Lifewatch aware that caller ID number | *does not support the statement is merely speculates that 'Sirlin knew…'; PX 91 is controverted by ¶¶ 16 of the Willie Thrasher and miles Krodel Aff.s within Ex. E, Atts. 7, 28, 29, and 50.  FTC-LW-16-5661-5662 is an email indicating receipt of an anonymous complaint and Lauren Vandewater following up with outside sellers who confirmed that they did not call the individual."* | *telemarketers made robocalls, and that robocalling had gotten so bad that the entire medical alert community was concerned.  This is the very definition of widespread.* <br> *PX 93 at ¶ 41 is supported by Boling's personal observations relating to conversations he had with Sirlin about spoofing.* <br> *FTC-LW16-5661-5662 - this document supports Plaintiffs' statement because it describes telemarketers spoofing telephone numbers.  The language Defendant's point to refers to Do Not Call violations, not spoofing.* |

| Plaintiffs' Statement of Material Fact | Plaintiffs' Supporting Documents to Which Defendants Have Not Objected | Plaintiffs' Supporting Documents to Which Defendants Have Objected | Plaintiffs' Response |
|---|---|---|---|
| | "was not the actual callback number for Worldwide or Lifewatch. I participated in several telephone conversations with Sirlin and other Lifewatch personnel during which they said they did not care what description appeared on the caller identification for Worldwide telemarketing calls as long as it did not trace back to Lifewatch."). PX 95, Declaration of Forest Horne ¶¶ 3, 4 (on 9/14/17, consumer received robocall to his cell phone from telemarketer who admitted he was working for Lifewatch with spoofed caller ID). | | |
| 33. Defendants and telemarketers have employed widespread robocalling. | Dkt. 24-11 at 3, PX 15, Settecase Dec. ¶¶ 6, 7 (Worldwide telemarketing was exclusively outbound robocalls for Lifewatch, totaling 2 million calls per day at peak). Dkt. 24-13 at 2, PX 17 Bangasser Dec. ¶ 4; Dkt. 24-16 at 2, 4, PX  20 Bird Dec. ¶ 3, 9; Dkt. 24-17 at 2-3, PX 21 Bliss Dec. ¶¶ 3-4 (at least 15 robocalls); Dkt. 24-18 at 2-3, PX 22 Bourne Dec. ¶¶ 3, 4 (multiple robocalls); Dkt. 24-19 at 2, PX 23 Bristow Dec. ¶ 4 (at least 6 robocalls); Dkt. 24-20 at 3, PX 24 Carson Dec. ¶ 5 (at least 15 robocalls); Dkt. 24-21 at 2, PX 25 Cattie Dec. ¶ 3; Dkt. 24-23 at 2, PX 27 Clawson Dec. ¶ 3 (several calls a week, 2-3 calls a day for 6 months); Dkt. 24-24 at 2-4, PX 28 Cummings Dec. ¶¶ 4, 7-9 (multiple robocalls); Dkt. 24-27 at 2-7, PX 31 deLoca Dec. ¶¶ 3-20 (multiple robocalls); Dkt. 24-28 at 2, 6, PX 32 Eden Dec. ¶¶ 3, 16 (multiple calls over several months); Dkt. 25-1 at 2, PX 33 Featherston Dec. ¶ 3; Dkt. 25-3 at 2, PX 35 Gates Dec. ¶ 3; Dkt. 25-5 at 2, 5, PX 37 Gordon Dec. ¶¶ 3, 10 (multiple robocalls); Dkt. 25-7 at 2, PX 39 Grigorian Dec. ¶ 3; Dkt. 25-8 at 2, 4, PX 40 Haselbauer Dec. ¶¶ 3, 4, 9 (at least 3 robocalls); Dkt. 25-9 at 2, PX 41 James Dec. ¶ 3 (multiple robocalls); Dkt. 25-10 at 5, PX 42 Jensen Dec. ¶ 9 (at least 30 robocalls regarding medical alert devices from "John from the shipping department"); Dkt. 25-11 at 2, PX 43 Jones Dec. ¶ 3 (multiple calls for several months); Dkt. 25-16 at 2, 4, PX 48 McGraw Dec. ¶¶ 3, 9 (multiple calls); | *Defendants' objection:  "The cited documents do not support the term 'widespread.'"  PX 95 does not support the statement and, contrary to plaintiffs'' assertion, does not include any statement that the telemarketer admitted he was working for Lifewatch with a spoofed caller ID.  PX 93 does not support the statement as Boling does not say at ¶ 13 that the 15-25 million robocalls a day were for Lifewatch."* | *Plaintiffs' response:  the cited documents show that multiple consumers received multiple of Defendants' robocalls, telemarketers made robocalls, and that robocalling had gotten so bad that the entire medical alert community was concerned.  It is not only the contents of the evidence, but the volume of the evidence that support the term "widespread." PX 95 at ¶ 3 Horne states he received a robocall from a North Carolina Number.  Paragraph 5 he states that the representative told him the service was offered by Lifewatch. Paragraph 6 states that he received a call back from a Middletown, Connecticut number. PX 93 at ¶ 13 Boling states that WorldWide made 15-25 million robocalls per day.  And in ¶ 44 states that Lifewatch requested exclusivity.* |

| Plaintiffs' Statement of Material Fact | Plaintiffs' Supporting Documents to Which Defendants Have Not Objected | Plaintiffs' Supporting Documents to Which Defendants Have Objected | Plaintiffs' Response |
|---|---|---|---|
| | Dkt. 25-17 at 2-3, PX 49 Meehl Dec. ¶¶ 3, 4 (at least 2 robocalls); Dkt. 25-18 at 2-15, PX 50 Mey Dec. ¶¶ 4-42 (dozens of robocalls); Dkt. 25-20 at 2-5, PX 52 Monaghan Dec. ¶¶ 4-11 (more than 10 robocalls); Dkt. 25-22 at 3-5, PX 54 Pierce Dec. ¶¶ 4-9 (more than a dozen robocalls); Dkt. 25-23 at 2, PX 55 Primm Dec. ¶ 4; Dkt. 25-26 at 2-3, PX 58 Savagian Dec. ¶¶ 4-5 (multiple robocalls); Dkt. 25-31 at 2, PX 63 Whaley Dec. ¶ 3; Dkt. 51-2 at 2-3, 8, PX 82, deLoca Dec. ¶ 4, Att. A (robocall received on 6/25/15 from Lifewatch telemarketer to consumer on DNC Registry and who had made repeated requests to be put on internal DNC list); Dkt. 51-3 at 8, PX 83, Mey Dec. Att. A (robocall received from Lifewatch telemarketer on 7/14/15 to consumer on DNC Registry and who repeatedly requested to be put on Lifewatch's internal DNC list); Dkt. 51-3 at 27, PX 83, Mey Dec. Att. B (robocall received from Lifewatch telemarketer on 7/29/15 to consumer on DNC Registry and who repeatedly requested to be put on Lifewatch's internal DNC list); Dkt. 77-1 at 2-3, PX 86 Mey Dec. ¶¶ 3, 8 (consumer received robocall from Lifewatch telemarketer on 9/10/15, despite being on DNC Registry and making repeated requests to be put on Lifewatch's internal DNC List); PX 91, Robinson Dec. ¶ 9 (former telemarketer and telemarketing supervisor stating that all 5 call centers he worked at for Lifewatch from April 2014 to June 2016 exclusively used robocalls); PX 93, Boling Dec. ¶ 13 (Worldwide made 15-25 million robocalls a day for Lifewatch at its peak); PX 95, Declaration of Forest Horne ¶¶ 3, 5 (received robocall to his cell phone from telemarketer who admitted he was working for Lifewatch on 9/14/17; Lifewatch representative called him back when credit card did not process). | | |
| **34. Defendants are aware that their telemarketers have employed widespread robocalling.** | Dkt. 26-12 at 4-5, PX 76, Steinmetz Dec. ¶ 8 (Lifewatch broker stating that "Mr. Sirlin knew that LifeWatch was using telemarketers and that robo-calls were being used by its telemarketers to sell LifeWatch's medical alert systems. Indeed, he and I frequently discussed these issues during the time I worked with LifeWatch. Mr. Sirlin indicated to me that LifeWatch | *Defendants' objection: "The cited documents do not support the term 'widespread.'"* | *Plaintiffs' response: the cited documents show that Defendants' knew that multiple consumers received Defendants' robocalls, telemarketers made robocalls, that robocalling had gotten so bad that the entire medical alert community was concerned, and that Defendants' had received many complaints.* |

| Plaintiffs' Statement of Material Fact | Plaintiffs' Supporting Documents to Which Defendants Have Not Objected | Plaintiffs' Supporting Documents to Which Defendants Have Objected | Plaintiffs' Response |
|---|---|---|---|
| | would continue to employ telemarketers that were using robo-calls as long as it could so."); Dkt. 51-1 at 15-17, PX 81 Braver Dec. Att. B (5/7/12 letter from consumer to Sirlin informing him of three robocalls he received on behalf of Lifewatch, with spoofed caller IDs, that his number was registered on the DNC list, that the calls claimed endorsement by American Heart Association and American Diabetic Association, that the telemarketer eventually admitted he was working for Lifewatch, and that the robocalls failed to disclose the seller, purpose of the call, or the nature of the goods or services offered); Dkt. 100-4 at 70, 86, Deposition Transcript of Leslie Steinmetz (volume of sales Worldwide was doing for Lifewatch "were impossible without robo-dialing"; confirming conversation in which Sirlin said Lifewatch would continue to use robocalls.); FTC-LW09-1057-64 (4/24/12 email from broker to Boling at Worldwide transmitting 4/11/12 letter and Verified Complaint filed against Lifewatch for robocalling and failure to properly identify seller, in violation of Telephone Consumer Protection Act); FTC-LW09-1081-1099 (5/3/12 email from broker to Worldwide forwarding various lawsuits and threats to sue Lifewatch relating to robocalling, failure to identify seller, caller ID spoofing); FTC-LW09-1100 (5/3/12 email from Worldwide to broker responding to email forwarding various lawsuits and threats to sue Lifewatch relating to robocalling, failure to identify seller, caller ID spoofing); FTC-LW09-1307 – 31 (9/17/12 email from Sirlin to Worldwide and Baker at Lifewatch, forwarding 12 complaints from Pennsylvania Attorney General, including multiple robocall complaints, DNC violations, inaccurate caller ID information, violations of DNC requests); FTC-LW09-1333 – 57 (9/17/12 email from Baker to Worldwide, copying Sirlin, instructing Worldwide to "PLEASE STOP CALLING PENNSYLVANIA IMMEDIATELY!!!!; attaching 12 complaints to Worldwide on 9/17/12 from Pennsylvania Attorney General, including multiple robocall complaints, DNC violations, inaccurate caller ID information, violations of DNC requests); FTC-LW09-1383 (9/28/12 email from Sirlin to Worldwide, copying Steinmetz and Modugno, informing them of lawsuit for robocalling by Worldwide to consumer on National Do-Not-Call Registry in New Jersey, who complained of 5 robocalls and went | | |

| Plaintiffs' Statement of Material Fact | Plaintiffs' Supporting Documents to Which Defendants Have Not Objected | Plaintiffs' Supporting Documents to Which Defendants Have Objected | Plaintiffs' Response |
|---|---|---|---|
| | through order process to identify Lifewatch; Sirlin offered $5000, but consumer demanded $30,000); FTC-LW09-1404 – 8 (10/9/12 email from Sirlin to Worldwide forwarding complaint from Tennessee Regulatory Authority enclosing 43 violations of state Do-Not-Call Register); FTC-LW09-1523 – 24 (4/22/13 email from Sirlin to Worldwide forwarding 4/22/13 email from Connect America CEO to Lifewatch stating "This just keeps getting worse?"); FTC-LW09-1526 (5/7/13 email from Sirlin to Worldwide forwarding 5/7/13 Medical Alarm Monitoring Association (MAMA) "consumer alert" regarding "illegal and fraudulent telemarketing including . . . 'robo-calling'" targeting seniors in sale of medical alert devices); FTC-LW09-1538 (5/22/13 email from Sirlin instructing Worldwide "Also Wisconsin is giving us trouble-I would not sell there," and forwarding email from Lifewatch customer service to Sirlin, May, and Baker, about "John" robocalls from 5 spoofed caller IDs; customer service representative stated she told customer that "We, at Lifewatch USA, do not make cold calls, do not call out to anyone. Blah blah blah-He finally believed me."); FTC-LW09-1546 - 1550 (6/10/13 email from Sirlin to Worldwide, forwarding 6/10/13 email from Connect America CEO to Sirlin and Roman, regarding 2 lawsuits and additional BBB inquiries related to robocalling tied to Lifewatch; ordering Lifewatch "to put a stop to these illegal calls . . . These reckless actions by this call center are costing us money in legal and labor fees and damaging the industry."); FTC-LW09-1556 – 59 (6/18/13 email from Sirlin to Worldwide, asking for information and to add a number to DNC, forwarding customer service email to Sirlin and May from customer who received robocall tied to Lifewatch, and noting she found 24 similar complaints, stating that someone had purchased device for her; customer service representative stated she told customer "Of course I said all the right things—we have nothing to do with them, blah blah blah, and she believes me and feels 'bad' for our company that this will damage our reputation if this other company keeps making these calls lol!"); FTC-LW09-1560 – 62 (6/18/13 email from Sirlin to Worldwide asking for "outgoing message" consumer would have heard, and forwarding 6/18/13 email from Lifewatch customer service representative to Sirlin, May, and Baker regarding consumer's complaint about Lifewatch DNC violations); | | |

| Plaintiffs' Statement of Material Fact | Plaintiffs' Supporting Documents to Which Defendants Have Not Objected | Plaintiffs' Supporting Documents to Which Defendants Have Objected | Plaintiffs' Response |
|---|---|---|---|
| | FTC-LW09-1571 – 74 (6/20/13 email from Sirlin to Worldwide forwarding complaint from North Dakota Attorney General's office, "Do you info to give outside for worldwide-I know doesn't exist anymore but if you can find original info that be great"); FTC-LW16-337 (6/7/12 email from Lifewatch customer service representative to Sirlin and Baker reporting on conversation with television reporter regarding senior citizens in Virginia receiving robocalls on behalf of Lifewatch; consumers given Lifewatch customer service number, but customer service representative said "I played dumb, as if I did not know what that number was…"); FTC-LW16-385-386 (7/2/12 emails between Sirlin, Baker, and broker, Modugno, regarding complaint from Pennsylvania Attorney General, which they do not think involved Worldwide because the complaint did not mention pre-recorded message"); FTC-LW16-592 – 598 (8/14/12 email chain involving Sirlin, Baker, Modugno, broker, and new call center, forwarding "updated scripts," scheduling training by Sirlin and Baker re "the sales pitch and pricing," and discussing Lifewatch forwarding "sample" robocalls based on new script); FTC-LW16-680 – 681 (9/14/12 email from TMI to Sirlin, copying Baker, expressing alarm at cancellation rate of nearly 50% and expressing doubt about Lifewatch suggestion that they robodial); FTC-LW16-710 – 711 (9/17/12 email from Modugno, broker, to Sirlin, copying Baker, listing the call centers that have robodialed for Lifewatch, and which continue to robodial for Lifewatch); FTC-LW16-722-723 (9/20/12 email from Sirlin to broker, Modugno, responding to email to Sirlin and Baker noting that Worldwide and another Lifewatch telemarketer were both using robocalls, using same dialing company with same recording and using multiple caller ids); FTC-LW16-818 (10/22/12 email from Sirlin to TMI stating that Lifewatch will settle lawsuit on TMI's behalf because even if no misrepresentations made, initial call was through "robo"); FTC-LW16-820 – 828 (11/6/12 email from Sirlin to Seiden, Lifewatch CFO, forwarding mass email from trade association, noting that "licensing is not our issue – Robo is only major issue-and similar low settlements"; also notes associate's "best friend from college is director of FTC right now-LOL"); FTC-LW16-893 – 894 (11/27/12 email from Sirlin to call center President/CEO, says Lifewatch is working indirectly with offshore call center that employs "avatar" calls, which Sirlin acknowledges "are not legit-but some loopholes"); | | |

| Plaintiffs' Statement of Material Fact | Plaintiffs' Supporting Documents to Which Defendants Have Not Objected | Plaintiffs' Supporting Documents to Which Defendants Have Objected | Plaintiffs' Response |
|---|---|---|---|
| | FTC-LW16-904-909 (12/1/12 email from Sirlin to May, prior to May joining Lifewatch, describing Worldwide lawyer who "has gotten rid of 5 under 10k small consumer advocate DNC/robo hustlers – I agreed and was okay with all that"; describing Boling at Worldwide as "the robo expert/professional that will do any structure, shill, fall, company I want…no one likes them but I am comfortable and other than AG issues they are very valuable and I believe if we feed them another few months and make a deal for them to stop robo and try legit that is way to ease them down but a hard stop now they will be very upset and dangerous – With ag he will take responsibility all the way thru"); FTC-LW16-985, 895 (12/3/12 email from Sirlin to May, prior to May joining Lifewatch, attaching 11/29/12 letter from The Privatebank and Trust Company, confirming that the bank will not provide credit to Lifewatch because the Indiana AG lawsuit and other government actions against Lifewatch "represents an unacceptable credit risk for the Bank."); FTC-LW16-1058 – 1059 (12/8/12 email from Neil Seiden, Lifewatch CFO, to Sirlin and Baker, stating "With respect to World Wide, you note that you were unaware of their use of Robo-calls at the start of the relationship...We currently have enough problems with AGs and don't need additional baggage."); FTCLW16-1064 (12/10/12 email Neil Seiden, Lifewatch CFO, to Sirlin, stating that when Connect America realizes that 80% of Lifewatch's business is robocalls, Connect America will no longer consider buying Lifewatch, responding to 12/10/12 email from Sirlin stating that without sales from Worldwide, Connect America would not want Lifewatch); FTC-LW16-1107 – 1112 (1/7/13 email from consumer to Sirlin threatening lawsuit because of Lifewatch's robocalling him, violating DNC); FTC-LW16-1134 – 1135 (1/8/13 email from Sirlin to May and Baker discussing Steinmetz and Worldwide, states "I was informed he knew was frm robo from day one and played stupid with me"); FTC-LW16-1392 – 1393 (2/11/13 email from Sirlin to May forwarding complaint from Connect America re consumer who complained that Lifewatch "continues to flood us with robo-calls," despite being on DNC and asking to be put on internal DNC); FTC-LW16-1487 – 1488 (2/25/13 email from Sirlin to Baker asking her to send him the robocall message used by Worldwide); FTC-LW09-1521 – 22 (4/22/13 email from Sirlin to Worldwide | | |

| Plaintiffs' Statement of Material Fact | Plaintiffs' Supporting Documents to Which Defendants Have Not Objected | Plaintiffs' Supporting Documents to Which Defendants Have Objected | Plaintiffs' Response |
|---|---|---|---|
| | forwarding 4/22/13 email from Connect America CEO accusing Sirlin of lying about robodialing and misrepresentations resulting in "countless customer complaints," and "found that this was Lifewatch in all cases"; demanding immediate stop); FTC-LW16-2730 – 2731 (4/22/13 email from Sirlin to May and Baker, stating "WTF need help" and forwarding 4/22/13 email from Connect America CEO accusing Sirlin of lying about robodialing and misrepresentations resulting in "countless customer complaints," and "found that this was Lifewatch in all cases"; demanding immediate stop); FTC-LW16-2835 (4/25/13 email from Connect America CEO to Sirlin, copying Roman and May, stating "The whole PERS industry is concerned over the sudden rise of consumer complaints due to telemarketing and robo dialing seniors. These tactics as you know are not something that we approve of and feel they will have a negative impact on the industry as a whole. We have made it clear that we cannot accept accounts that are derived from such tactics. We gave you notice in writing that we terminated our agreement on March 19, 2013. In addition we are hearing of misleading statements and false advertising within the script of these calls…Unfortunately due to the above mentioned information and circumstances, that effective immediately we can no longer accept even replacement accounts from Lifewatch."); FTC-LW16-2874 – 2895 (5/6/13 email from Connect America lawyer to Sirlin, copying May, attaching letter demanding indemnification and immediate cessation of unlawful conduct. Letter states Lifewatch has engaged in telemarketing misrepresenting that device has already been paid for, calling people on DNC Registry, unlawful robocalling, caller ID spoofing, and that Lifewatch continued to engage in those activities after Connect America terminated agreement with Lifewatch on March 19, 2013.); FTC-LW16-3430 – 3458 (8/29/13 letter and attachments from consumer to Sirlin threatening lawsuit against Lifewatch for 4 illegal robocalls to consumer on DNC Registry, which did not disclose identity of seller, and employed caller ID spoofing); FTC-LW16-5398-5409 (12/30/14 email from Hallowell to Sirlin, May, and Baker, describing consumer complaining about daily robocalls for a month); FTC-LW16-5597 (3/18/15 email from Kevin Carducci to Hallowell and Baker describing consumer complaint for robocalling and caller ID spoofing); | | |

| Plaintiffs' Statement of Material Fact | Plaintiffs' Supporting Documents to Which Defendants Have Not Objected | Plaintiffs' Supporting Documents to Which Defendants Have Objected | Plaintiffs' Response |
|---|---|---|---|
| | FTC-LW16-5661-5662 (4/28/15 email from Kevin Carducci to Hallowell regarding customers complaining of spoofed caller IDs and robocalls); FTC-LW16-6079 – 6080 (10/8/15 email from Baker to Hallowell regarding consumer complaining he is getting robocalls); FTC-LW16-6879 – 6881 (9/7/16 email from Hallowell to Sirlin, May, and Roman regarding a consumer who received a robocall and was on the internal Do Not Call list); FTC-LW16-6995 – 6996 (10/26/16 email Hallowell to Sirlin, discussing a customer who complained of being robocalled); FTC-LW16-8037 (4/30/15 email from Vandewater to telemarketer and Eggen, broker, about consumer offered robocall promising grocery coupons, which Lifewatch is no longer sending); FTC-LW16-8039 (5/5/15 email from Vandewater to telemarketer about grocery coupon upsell complaints; told to take it off their robocall recording); FTC-LW16-8040 – 8045 (6/2/15 email from Vandewater to telemarketer re customer complaint about grocery coupon upsell, which Vandewater believes is on prerecorded robocall message); FTC-LW16-8056 – 8057 (8/20/15 email from telemarketer to Vandewater, asking her to forward to Sirlin and Baker the recording of the robocall message they use for LW); FTC-LW16-8058 (8/20/15 email from Vandewater to Baker forwarding robocall message telemarketer sent to her to forward to Sirlin and Baker); LW-FTC-1445-1447 (Lifewatch customer service record for Robert Braver, describing him as "Psycho called to say we will go to jail for one year under Oklahoma law" for illegal robocalls); PX 91, Robinson Dec. ¶ 20 (former telemarketer and telemarketing supervisor stating that all 5 call centers he worked at for Lifewatch, outgoing robocall message was changed on constant basis, often with changes ordered by Lifewatch); PX 93, Boling Dec. ¶ 3 ("Lifewatch was aware of the pre-recorded message because Settecase uploaded Sirlin and May's cell phone numbers to the predictive dialer so it would call them and they could hear the pre-recorded message."); PX 93, Boling Dec. ¶ 46 ("I had multiple conversations with Sirlin and May about call center operations including the use of predictive dialers and pre-recorded messages also called 'voice broadcasting' or 'robocalling.'"); PX 95, Declaration of Forest Horne ¶¶ 3, 5 (on 9/14/17, consumer received robocall to his cell phone from telemarketer who | | |

| Plaintiffs' Statement of Material Fact | Plaintiffs' Supporting Documents to Which Defendants Have Not Objected | Plaintiffs' Supporting Documents to Which Defendants Have Objected | Plaintiffs' Response |
|---|---|---|---|
| | admitted he was working for Lifewatch; Lifewatch representative called him back when credit card did not process); PX 96, Supplemental Declaration of Forest Horne ¶ 4 (consumer who received robocall to his cell phone on 9/14/17 from telemarketer who admitted he was working for Lifewatch never consented to receive robocalls from Lifewatch). | | |
| 43. Defendants' sales have been primarily as a result of telemarketing. | FTC-LW09-2021 (9/29/11 email from Sirlin responding to broker email to Sirlin, copying lead generators and telemarketers, asking "if there are any states that LIFEWatch is not allowed to/or does not wish to market in utilizing outbound telemarketing?"; Sirlin responds "Absolutely every state and Canada."); FTC-LW16-59 – 60 (11/28/11 email from Sirlin to Lifewatch employee responding to email from telemarketer to Sirlin and Baker, copying Steinmetz, noting that they would begin sending customer leads to Lifewatch that day; Sirlin suggests that if too many leads come through, Lifewatch could forward some to one of its call centers); FTC-LW16-76 – 77 (1/27/12 email from Baker to Steinmetz, copying Sirlin, listing 25 call centers that have or will sell for Lifewatch); FTC-LW16-78 - 119 (1/21/12 email from Sirlin to potential investors touting unique features of Lifewatch product and service, describing commitment to using "Outbound Call Centers" beginning in July 2011, noting that "Lifewatch dominates this channel in the PERS industry" and that LIfewatch hopes to increase this method if it receives additional financing; projects more than ten-fold increase in revenues in 3 years by utilizing telemarketing); FTC-LW16-143 – 144 (3/3/12 email from Sirlin to Seiden, Lifewatch's CFO, forwarding email from Lifewatch employee to Sirlin, Baker, and others, showing call center sales of over 100 a day two days in a row, including 130 on one day; "Shows how easy it will be to do 2000 plus- a month – crazy but ready."); FTC-LW16-150-153 (3/16/12 emails between Sirlin and telemarketer; Sirlin says he has "endless" leads and his partner has 30 million elderly sick names); FTC-LW16-7575 (2/20/13 email from May to potential lender, copying Roman and Sirlin, providing Worldwide contract in response to request for agreement with "outside firm" from whom "Lifewatch currently gets most of its customers."). | *Defendants' objection: "The evidence plainly does not support this statement. Indeed, FTC-LW16-7575 is an email from an attorney to Mr. May saying, 'I understand Lifewatch gets most of its new customers from marketing activities of an outside firm.' The cited evidence does not address any sales after February 2013."* | *Plaintiffs' response: FTC-LW16-7575 is an email attaching the WorldWide contract from June 2012 which the evidence shows only sold through telemarketing.* |
| 44. Defendants' "outside sellers" have been engaged almost exclusively in | Dkt. 87-2 at 6, DX 2, Declaration of Sarai Baker ¶ 20 (executed and filed on Nov. 10, 2015) (stating that Lifewatch does not | *Defendants' objection: "Moreover, the statement is not supported by the evidence: Dkt. 87-2 at 6, DX 2; LW-* | *Plaintiff's response: Dkt. 87-2 at 6, DX 2 (Baker Dec.) states that it required telemarketers to attest to the fact* |

| Plaintiffs' Statement of Material Fact | Plaintiffs' Supporting Documents to Which Defendants Have Not Objected | Plaintiffs' Supporting Documents to Which Defendants Have Objected | Plaintiffs' Response |
|---|---|---|---|
| telemarketing. | provide marketers with access to CRM database until after it has received signed and notarized affidavit from marketer); LW-FTC-00234-256 (Purchase Agreement and Insertion Order entered into between Lifewatch and Prodigy Consulting Group executed on 8/26/15, on same day Prodigy Consulting swears that 0% of the accounts they have sold to Lifewatch originated through outbound telemarketing); PX 91, Robinson Dec. ¶ 21 (former telemarketer and telemarketing supervisor stating that Lifewatch could listen to any active telemarketing call taking place at the call center, in addition to having access to real time reports); Transcript Preliminary Injunction Hearing dated December 14, 2015, at 103-7 (Baker testifying that affidavits submitted to Lifewatch by "outside sellers" stating the percentage of customer accounts they obtained through "outbound telemarketing" were executed simultaneously with Purchase Agreements prior to when they began selling for Lifewatch); PX 98, Transcript of Deposition of Sirlin on July 25, 2017, at 12-13 (Sirlin testifying that any customers purchasing Lifewatch medical alert devices or service as a result of television, radio, or internet advertising contact Lifewatch directly and not through outside marketers). | FTC-00234-256; PX 91, Dkt. 103-7, and PX 98 do not, on their face, indicate that outside sellers are engaged almost exclusively in telemarketing." | that they never telemarketed *prior to* their actually getting access to the CRM and working on Defendants' behalf. See e.g., LW-FTC-00234-256 (Purchase Agreement and Insertion Order entered into between Lifewatch and Prodigy Consulting Group executed on 8/26/15, the *same day* Prodigy Consulting swears that 0% of the accounts they have sold to Lifewatch originated through outbound telemarketing). PX 91 (Robinson Dec.) discussing nothing but the fact that he conducted outbound telemarketing on Defendants' behalf. Dkt. 103-7, Transcript of Preliminary Injunction Hearing dated December 14, 2015, confirms that the outside sellers swearing that 0% of their sales for Defendants' were through outbound telemarketing was done **contemporaneously** with their signing of Purchase Agreements and Insertion orders, **before they began selling**. |
| 46. At least 96.4% of Defendants' PERS sales since 2012 have resulted from telemarketing. | PX 97, Al-Najjar Dec. ¶ 12 (summarizing spreadsheet of Defendants' sales attached to FTC-LW16-8129 – 34, 11/10/15 email from Baker to Christopher Parisi, showing 96.4% of Defendants' sales were through outside call centers); Dkt. 66 at 19-20, 26-27, PX 1, Menjivar Dec. Att. V (Redacted) (Lifewatch Profit & Loss statements for 2013 and January – August 2014, showing 96% of the total amount Lifewatch spent on "Advertising" went to "Outside Sellers"); PX 98, Transcript of Deposition of Sirlin on July 25, 2017, at 12-13 (Sirlin testifying that any customers purchasing Lifewatch medical alert devices or service as a result of television, radio, or internet advertising contact Lifewatch directly and not through outside marketers). | Defendants' objection: "Moreover, the statement is not supported by the evidence: PX 97, PX 1, and PX 98 do not indicate that PERS sales since 2012 have resulted from telemarketing as opposed to some other marketing method." | Plaintiffs' response: PX 97 is a summary of a spreadsheet of all Defendants' current customers through November 10, 2015, showing that 96.4% of those customers were procured through outside call centers. PX 1 shows that 96% of the total amount Lifewatch spent on "Advertising" went to "Outside Sellers" PX 98 supports the statement because Sirlin testified that customers purchasing Lifewatch's medical alert devices or service as a result of television, radio, or internet advertising contact Lifewatch directly, not through outside marketers, ergo, outside marketers only used telemarketing. |
| 51. Defendants have managed the internal operations of their telemarketers. | FTC-LW09-1065 (4/25/12 email from Steinmetz to Worldwide, copying multiple Lifewatch employees, including Sirlin, offering incentive from Lifewatch for top sales person at call center, and promising to gather information from "our other call centers"); FTC-LW09-1150-1 (6/27/12 email from Sirlin to Boling at Worldwide promising discussion with Worldwide and Steinmetz the following day "about all things," Connect America deals, | Defendants' objection: "The evidence plaintiffs' cited in support of this fact does not show Lifewatch managing internal operations, and is largely limited to Worldwide Info Services. • FTC-LW09-1065, shows Leslie Steinmetz, the principal of third party, Designer Brands Inc. communicating from an AOL address about a | Plaintiffs' response: Plaintiffs' disagree with Defendants' interpretation of the documents. All of the cited emails show Lifewatch agents and employees managing the call centers. |

| Plaintiffs' Statement of Material Fact | Plaintiffs' Supporting Documents to Which Defendants Have Not Objected | Plaintiffs' Supporting Documents to Which Defendants Have Objected | Plaintiffs' Response |
|---|---|---|---|
| | billing issues, and high returns); FTC-LW09-1152 (7/2/12 email from Sirlin to Worldwide and Steinmetz noting rise in returns when they discontinued follow-up calls after orders, promising further discussion, and suggesting solutions); FTC-LW09-1191 (7/18/12 email from Boling at Worldwide to Sirlin and Steinmetz regarding details of residuals, back payments, and upcoming wire transfer); FTC-LW09-1237 – 1255 (7/9/12 email from Worldwide enclosing signed version of Worldwide Telemarketing Agreement stating that "all contact between the Telemarketer and any person on behalf of [Lifewatch] shall be primarily by outbound telemarketing" and Worldwide "shall only use scripts identified by [Lifewatch] as approved."); FTC-LW09-1429 (10/16/12 email from Sirlin to Worldwide, copying Baker, coaching Boling on how to answer questions bank will ask in connection with their telemarketing for Lifewatch); PX 91, Robinson Dec. ¶ 6 (former telemarketer and telemarketing supervisor stating that Vandewater, May and Sirlin discussed changing scripts, what states telemarketer should call, changing autodialer or caller ID, and changing outgoing robocall message). | *promo in which a flat screen TV is offered for 'annuals.' This email does not show defendants managing internal operations; FTC-LW09-1150 does not show defendants managing internal operations but refers to "deals…not going thru(sic)" and trying to figure out reasons for returns; FTC-LW09-1152 calls for a discussion about the rise in returns; FTC-LW09-1191 is an email from Worldwide regarding payment information and chargebacks; FTC-LW09-1237-1255 is a placeholder contract superseded by the contract that has been filed as R. Doc. 24-1, pp. 64-82; FTC-LW09-1429 is an email from Evan Sirlin to Worldwide regarding a call with Lifewatch's merchant processor; PX 91 is controverted by Ex. E, Atts. 7, 28, 29, and 50, Affs. Of Willie Thrasher and Miles Krodel, and by Affs. of Mitchel May (Ex. I) and Evan Sirlin (Ex. B).* | |
| **59. Defendants have drafted and edited the scripts used by their telemarketers in the sale of PERS.** | Dkt. 96-1 at 19, PX 89, Einikis Dec. Att. A (12/23/14 email from Vandewater responding "Not a problem, thank you," to email from Mark Nonsant, Director of Operations at Payless, in which Nonsant writes, "[W]e are revising our sales script.  As soon as it's done, I will send it to you for your approval.). FTC-LW09-1103-16 (same, dated 5/10/12, updating script) ; FTC-LW09-1200 (8/2/12 email from Boling at Worldwide to Sirlin email confirming script changes) ; FTC-LW09-1237 – 1255 (7/9/12 email from Worldwide enclosing signed version of Worldwide Telemarketing Agreement stating that "all contact between the Telemarketer and any person on behalf of [Lifewatch] shall be primarily by outbound telemarketing" and Worldwide "shall only use scripts identified by [Lifewatch] as approved.") ; FTC-LW09-1361 – 1378 (9/25/12 email from Baker to Worldwide, copying Sirlin, enclosing Telemarketing Services Agreement, providing that "all contact between the Telemarketer and any person on behalf of [Lifewatch] shall be primarily by outbound telemarketing," and requiring Worldwide to "only use scripts identified by [Lifewatch] as approved, which approval shall be in the company's sole discretion"); | Dkt. 14-3 at 52-53, PX1, Menjivar Dec. Att. B (6/10/13 email from Baker at Lifewatch to Worldwide attaching new script guidelines) *Defendants' objection: pertains only to Worldwide and is a pre-ship guideline that contains none of the alleged misrepresentations.;* Dkt. 26-11 at 3-4, 6, Small Dec. ¶ 6 and Ex. A (10/4/12 email from Lifewatch employee to Connect America, confirming that Lifewatch is "updating the script" for all its telemarketers) *Defendants' objection: pertains only to Worldwide and does not indicate that a script with alleged misrepresentations at issue was provided.* Dkt. 26-12 at 4, PX 76, Steinmetz Dec. ¶ 6 (Lifewatch broker stating that "LifeWatch reviewed and approved scripts that were used by its telemarketers.") *Defendants' objection: pertains only to Worldwide, constitutes inadmissible hearsay, and does not indicate that the scripts contained misrepresentations.;* Dkt. 96-1 at 46-47, PX 89, Einikis Dec. Att. A (6/5/14 email from Vandewater, attaching revised sales script for Payless, forwarding earlier email in which she explains "I took that one line out about billing but I* | Dkt. 14-3 at 52-53, PX1, Menjivar Dec. Att. B (6/10/13 email from Baker at Lifewatch to Worldwide attaching new script guidelines) *Plaintiff's response:  Plaintiffs' statement is not limited to scripts that contain misrepresentations.* Dkt. 26-11 at 3-4, 6, Small Dec. ¶ 6 and Ex. A (10/4/12 email from Lifewatch employee to Connect America, confirming that Lifewatch is "updating the script" for all its telemarketers)  *Plaintiff's response:  Plaintiffs' statement is  not limited to scripts that contain misrepresentations.* Dkt. 26-12 at 4, PX 76, Steinmetz Dec. ¶ 6 (Lifewatch broker stating that "LifeWatch reviewed and approved scripts that were used by its telemarketers.")  *Plaintiffs' response: to the extent that Defendants object to Steinmetz's declaration itself, it is admissible for purposes of summary judgment to the extent that Steinmetz could testify to what he asserts at trial, to the extent that they are objecting to out of court statements within the declaration, those statements are admissible as admissions of a party opponent under FRE* |

| Plaintiffs' Statement of Material Fact | Plaintiffs' Supporting Documents to Which Defendants Have Not Objected | Plaintiffs' Supporting Documents to Which Defendants Have Objected | Plaintiffs' Response |
|---|---|---|---|
| | FTC-LW16-09 - 13 (7/6/11 email from Sirlin to Baker, copying Steinmetz, instructing Baker to let him see call center script with update before forwarding to telemarketer, responding to Steinmetz email informing telemarketer that he will provide him with the scripts and contract and instructing Baker to forward); <br> FTC-LW16-2933 – 2934 (5/15/13 email from Lifewatch customer service representative to Sirlin, responding to email from May, copying Sirlin and Baker, regarding complaint tied to Worldwide (US Affiliates) of customer being told family member had given product to him; "When I first started hearing about these type of calls-family member purchased the equipment, I thought it was a few shady salespeople. I am no realizing it is part of the Script."); <br> PX 91, Robinson Dec. ¶ 6 (former telemarketer and telemarketing supervisor stating that Vandewater, May and Sirlin discussed script changes with them); <br> PX 93, Boling Dec. ¶ 35 ("Lifewatch provided all of the original telemarketing scripts to Worldwide, and Worldwide had to get Lifewatch's approval before making any changes. At various times the call centers suggested edits and modifications to the scripts, but Lifewatch would not allow the call centers to use any language until Lifewatch approved it."). | added a few things where they are saying its [sic] free (its [sic] free to use) so that avoids confusion with the customers and avoid compliance issues"; script repeats that system is FREE multiple times) *Defendants' objection: took out free to avoid confusion.*; <br> Dkt. 100-4 at 65, 77, 81, Deposition Transcript of Leslie Steinmetz (Lifewatch approved all scripts used by Worldwide; "Sirlin and I would look at scripts, and he would do the final approval"; Sirlin provided scripts to Steinmetz and "used to write scripts as well") *Defendants' objection: pertains only to Worldwide, constitutes inadmissible hearsay and does not indicate that the scripts contained misrepresentations.*; <br> FTC-LW09-1025-27 (3/27/12 Worldwide email to Modugno stating that "All of the scripts that we use were provided to us from Lifewatch") *Defendants' objection: pertains only to Worldwide, constitutes inadmissible hearsay and does not indicate that the scripts contained misrepresentations.*; <br> FTC-LW09-1026-27 (Worldwide email to broker stating that "All of the scripts that we use were provided to us from Lifewatch") *Defendants' objection: pertains only to Worldwide and does not indicate that the script contains misrepresentations.*; <br> FTC-LW09-1029-41 (4/5/12 email from broker to Worldwide, copying Lifewatch, providing Call Center Welcome Package, including sales script, rebuttals, and Frequently Asked Questions script says Lifewatch USA and includes endorsement misrepresentations; FAQ says equipment is provided "absolutely free"; new "Quality Control section" states "Scripts and Rebuttals must be approved by LifeWatch USA") *Defendants' objection: indicates "you pay nothing except the monthly service fee of $29.95";* <br> FTC-LW09-1043-56 (same, dated 4/20/12, including updated script stating "you can cancel at any time"); *Defendants objection: same as above.* <br> FTC-LW09-1067-80 (same, dated 5/2/12, including updated script) *Defendants' objection: same as above.*; <br> FTC-LW09-1117-30 (same, dated 5/22/12, updating script, adding upsells) *Defendants' objection: same as above.*; | *801(d)(2)(D), or are admissible as notice. Further, Plaintiffs' statement is not limited to scripts that contain misrepresentations.* <br> Dkt. 96-1 at 46-47, PX 89, Einkis Dec. Att. A (6/5/14 email from Vandewater, attaching revised sales script for Payless, forwarding earlier email in which she explains "I took that one line out about billing but I added a few things where they are saying its [sic] free (its [sic] free to use) so that avoids confusion with the customers and avoid compliance issues"; script repeats that system is FREE multiple times) *Plaintiffs' response: Plaintiffs' statement is not limited to scripts contain misrepresentations.* <br> Dkt. 100-4 at 65, 77, 81, Deposition Transcript of Leslie Steinmetz (Lifewatch approved all scripts used by Worldwide; "Sirlin and I would look at scripts, and he would do the final approval"; Sirlin provided scripts to Steinmetz and "used to write scripts as well") *Plaintiffs' response: to the extent that Defendants' are objecting to Steinmetz's deposition testimony itself, it is admissible for purposes of summary judgment to the extent that Steinmetz could testify to what he says at trial, to the extent that they are objecting to out of court statements within the deposition, those statements are admissible as admissions of a party opponent under FRE 801(d)(2)(D), and are admissible as notice. Further, Plaintiffs' statement is not limited to scripts contain misrepresentations.* <br> FTC-LW09-1025-27 (3/27/12 Worldwide email to Modugno stating that "All of the scripts that we use were provided to us from Lifewatch"); FTC-LW09-1043-56 (same, dated 4/20/12, including updated script stating "you can cancel at any time"); FTC-LW09-1067-80 (same, dated 5/2/12, including updated script); FTC-LW09-1117-30 (same, dated 5/22/12, updating script, adding upsells); FTC-LW09-1132-1145 (same, dated 5/31/12); FTC-LW09-1153-1170 (same, dated 7/5/12) *Plaintiffs' response: admissible as admissions by a party opponent, and Plaintiffs' statement is not limited to scripts contain misrepresentations.* <br> FTC-LW09-1193-96 (7/25/12 email from Worldwide to Steinmetz and Sirlin enclosing Phillips script) |

| Plaintiffs' Statement of Material Fact | Plaintiffs' Supporting Documents to Which Defendants Have Not Objected | Plaintiffs' Supporting Documents to Which Defendants Have Objected | Plaintiffs' Response |
|---|---|---|---|
| | | FTC-LW09-1132-1145 (same, dated 5/31/12) *Defendants' objection: same as above.*; FTC-LW09-1153-1170 (same, dated 7/5/12) *Defendants' objection: same as above.*; FTC-LW09-1171-1190 (7/8/12 email from Modugno to Boling, copying Sirlin, Baker, and Steinmetz, enclosing Telemarketing Agreement with Worldwide "drawn up by Lifewatch" stating that Worldwide "shall only use scripts identified by [Lifewatch] as approved") *Defendants' objection: superseded by Dkt. 296-2, ¶ 4, Ex. A.*; FTC-LW09-1193-96 (7/25/12 email from Worldwide to Steinmetz and Sirlin enclosing Phillips script) *Defendants' objection: Worldwide identifies its script for sales of Philips Lifeline medical alert devices – 800 foot range, absolutely free, live operators are fully trained EMTs—not Lifewatch's devices.*; FTC-LW09-1198 (8/1/12 email from Boling at Worldwide to Sirlin stating "we have made recent modifications in the script per your request" and pulling recordings to send directly to Sirlin) *Defendants' objection: does not indicate misrepresentations.*; FTC-LW09-1199 (8/1/12 email from Sirlin to Worldwide and Steinmetz making detailed changes in script) *Defendants' objection: this email does not include "script modifications," as plaintiffs' have stated, but rather includes an explanation about product*; FTC-LW09-1201 (8/2/12 email from Sirlin to Worldwide, copying Steinmetz, confirming that he forwarded script to Connect America) *Defendants' objection: does not indicate misrepresentations.*; FTC-LW09-1202 (8/5/12 email from Steinmetz to Hilgar at Worldwide, and Sirlin, confirming telephone call to finalize script for First Street/Phillips) *Defendants' objection: Worldwide identifies scripts for sales of Philips Lifeline medical alert devices and First Street medical alert devices.*; FTC-LW09-1205 - 9 (8/6/12 email from Steinmetz forwarding First Street/Phillips script to Worldwide and Sirlin) *Defendants' objection: Worldwide identifies scripts for sales of Philips Lifeline medical alert* | *Plaintiffs' response: Plaintiffs' statement not limited to scripts that pertain exclusively to Lifewatch's devices.* FTC-LW09-1198 (8/1/12 email from Boling at Worldwide to Sirlin stating "we have made recent modifications in the script per your request" and pulling recordings to send directly to Sirlin) *Plaintiffs' response: Plaintiffs' statement is not limited to scripts that contain misrepresentations.* FTC-LW09-1199 (8/1/12 email from Sirlin to Worldwide and Steinmetz making detailed changes in script) *Plaintiffs' response: Plaintiffs' statement is not limited to scripts with misrepresentations.* FTC-LW09-1201 (8/2/12 email from Sirlin to Worldwide, copying Steinmetz, confirming that he forwarded script to Connect America) *Plaintiffs' response: Plaintiffs' statement is not limited to scripts contain misrepresentations.* FTC-LW09-1202 (8/5/12 email from Steinmetz to Hilgar at Worldwide, and Sirlin, confirming telephone call to finalize script for First Street/Phillips) *Plaintiffs' response: Plaintiffs' statement not limited to scripts that pertain exclusively to Lifewatch's devices.* FTC-LW09-1205 - 9 (8/6/12 email from Steinmetz forwarding First Street/Phillips script to Worldwide and Sirlin) *Plaintiffs' response: Plaintiffs' statement is not limited to scripts that pertain exclusively to Lifewatch's devices.* FTC-LW09-1212 – 1215 (8/6/12 email from Sirlin to Worldwide and Steinmetz sending sample Lifewatch script for Connect America, including claim that system is free, that "billing cycle doesn't start until you receive the system and activate it," and instruction that telemarketer "PITCH UPSELL") *Plaintiffs' response: Plaintiffs' statement is not limited to scripts that pertain exclusively to Lifewatch's devices.* FTC-LW09-1219 (8/7/12 email from Steinmetz to Worldwide and Sirlin, instructing Worldwide to remove word "free" from script); FTC-LW09-1220-1236 (same, dated 8/9/12) ; FTC-LW09-1282 – 85 (8/23/12 email from Worldwide to Sirlin forwarding proposed script, including claim that their system is "recommended by over 65,000 healthcare |

| Plaintiffs' Statement of Material Fact | Plaintiffs' Supporting Documents to Which Defendants Have Not Objected | Plaintiffs' Supporting Documents to Which Defendants Have Objected | Plaintiffs' Response |
|---|---|---|---|
| | | *devices and First Street medical alert devices.*; FTC-LW09-1212 – 1215 (8/6/12 email from Sirlin to Worldwide and Steinmetz sending sample Lifewatch script for Connect America, including claim that system is free, that "billing cycle doesn't start until you receive the system and activate it," and instruction that telemarketer "PITCH UPSELL") *Defendants' objection: Connect America edits a script for Worldwide to sell their devices.*; FTC-LW09-1219 (8/7/12 email from Steinmetz to Worldwide and Sirlin, instructing Worldwide to remove word "free" from script) *Defendants' objection: does not indicate misrepresentations.*; FTC-LW09-1220-1236 (same, dated 8/9/12) *Defendants' objection: same as above.*; FTC-LW09-1282 – 85 (8/23/12 email from Worldwide to Sirlin forwarding proposed script, including claim that their system is "recommended by over 65,000 healthcare professionals") *Defendants' objection: same as above.*; FTC-LW09-1287 - 1293 (8/27/12 email from Sirlin to Worldwide detailing program for Phillips, attaching "whole script," including claim that their system is "recommended by over 65,000 healthcare professionals," and confirmation script) *Defendants' objection: does not include misrepresentations and pertains to Philips Lifeline.*; FTC-LW09-1297 (8/28/12 email from Sirlin to Worldwide asking whether script still says Lifewatch, Lifewatch-Connect America, or Medical Alarm company, and whether it still says device is free; states that Worldwide should stop telemarketing in Pennsylvania because of complaints) *Defendants' objection: does not include misrepresentations.*; FTC-LW09-1298 (8/28/12 Sirlin email to Worldwide asking about recording he listened to, and whether script had been changed) *Defendants' objection: does not include misrepresentations.*; FTC-LW09-1302 (9/10/12 email from Worldwide to Sirlin responding to request for script relating to grocery coupon upsell) *Defendants' objection: does not include misrepresentations.*; | professionals") *Plaintiffs'' response: Plaintiffs' statement is not limited to scripts that contain misrepresentations.* FTC-LW09-1287 - 1293 (8/27/12 email from Sirlin to Worldwide detailing program for Phillips, attaching "whole script," including claim that their system is "recommended by over 65,000 healthcare professionals," and confirmation script) *Plaintiffs' response: Plaintiffs' statement is not limited to scripts that pertain exclusively to Lifewatch's devices and is not limited to scripts that contain misrepresentations.* FTC-LW09-1297 (8/28/12 email from Sirlin to Worldwide asking whether script still says Lifewatch, Lifewatch-Connect America, or Medical Alarm company, and whether it still says device is free; states that Worldwide should stop telemarketing in Pennsylvania because of complaints) *Plaintiffs' response: Plaintiffs' statement is not limited to scripts that contain misrepresentations.* FTC-LW09-1298 (8/28/12 Sirlin email to Worldwide asking about recording he listened to, and whether script had been changed); FTC-LW09-1302 (9/10/12 email from Worldwide to Sirlin responding to request for script relating to grocery coupon upsell); FTC-LW09-1303 (9/10/12 email from Sirlin to Worldwide requesting script relating to grocery coupon upsell); FTC-LW09-1304 (9/11/12 email from Worldwide email to Sirlin, Steinmetz, Baker, and another Lifewatch employee, proposing script relating to grocery coupon upsell); FTC-LW09-1305 (9/11/12 email from Lifewatch to Boling of Worldwide, copying Sirlin, Steinmetz, and Baker of Lifewatch, responding to proposed script); FTC-LW09-1435 (11/6/12 email from Baker to Worldwide stating she and Evan need Worldwide to change script regarding 30 day trial); FTC-LW09-1481 – 91 (3/13/13 email from Baker to Worldwide enclosing Safe Home Security script, "coverage areas Roman," and details of services) *Plaintiffs' response: Plaintiffs' statement is not limited to scripts that contain misrepresentations.* FTC-LW09-1492 (3/19/13 email from Baker to Boling at Worldwide, changing script to remove "you won't be |

| Plaintiffs' Statement of Material Fact | Plaintiffs' Supporting Documents to Which Defendants Have Not Objected | Plaintiffs' Supporting Documents to Which Defendants Have Objected | Plaintiffs' Response |
|---|---|---|---|
| | | FTC-LW09-1303 (9/10/12 email from Sirlin to Worldwide requesting script relating to grocery coupon upsell) *Defendants' objection: does not include misrepresentations.*; FTC-LW09-1304 (9/11/12 email from Worldwide email to Sirlin, Steinmetz, Baker, and another Lifewatch employee, proposing script relating to grocery coupon upsell) *Defendants' objection: does not include misrepresentations.*; FTC-LW09-1305 (9/11/12 email from Lifewatch to Boling of Worldwide, copying Sirlin, Steinmetz, and Baker of Lifewatch, responding to proposed script) *Defendants' objection: does not include misrepresentations.*; FTC-LW09-1435 (11/6/12 email from Baker to Worldwide stating she and Evan need Worldwide to change script regarding 30 day trial) *Defendants' objection: does not include misrepresentations.*; FTC-LW09-1481 – 91 (3/13/13 email from Baker to Worldwide enclosing Safe Home Security script, "coverage areas Roman," and details of services) *Defendants' objection: does not include misrepresentations.*; FTC-LW09-1492 (3/19/13 email from Baker to Boling at Worldwide, changing script to remove "you won't be billed until you activate," and reference to "i've fallen and i can't get up") *Defendant's objection: this email is from Sarai Baker telling WWIS never to represent "you won't be billed until you active" and never to say "I've fallen and can't get up.";* FTC-LW09-1493 (3/22/13 email from Baker to Boling at Worldwide instructing Worldwide to immediately start "pitching Hydroxatone" as upsell. "The company is ready to start working with us on this") *Defendants' objection: does not include misrepresentations.*; FTC-LW09-1515- 20 (4/16/13 email from Baker to Worldwide, providing information and script for Hydroxatone upsell) *Defendants' objection: does not include misrepresentations.*; FTC-LW09-1530 – 31 (5/15/13 email from Sirlin to Worldwide forwarding complaint tied to Worldwide (US Affiliates) of customer being told family member | billed until you activate," and reference to "i've fallen and i can't get up") *Plaintiffs' response: Plaintiffs' statement is not limited to only making additions to scripts that contain misrepresentations.* FTC-LW09-1493 (3/22/13 email from Baker to Boling at Worldwide instructing Worldwide to immediately start "pitching Hydroxatone" as upsell. "The company is ready to start working with us on this"); FTC-LW09-1515- 20 (4/16/13 email from Baker to Worldwide, providing information and script for Hydroxatone upsell) ; FTC-LW09-2004-5 (8/26/11 email from Baker to broker, copying telemarketers, approving Call Center Welcome Package and scripts, after stating in 8/24/11 email that Sirlin "definitely wants to get this rolling. What else are you needing/missing from us that I can help with?"); FTC-LW09-2026 (10/13/11 email from Baker to broker, copying telemarketer, asking for copy of script that Lifewatch had approved on 8/26/11); FTC-LW09-2044 (7/2/12 email from Baker to broker, Modugno, discussing 6/29/12 edits to script by Sirlin); FTC-LW09-2057-2059 (5/20/13 email from Lifewatch employee to broker, Modugno, copying Sirlin, May, and another Lifewatch employee, announcing script change required of all telemarketing rooms); FTC-LW16-53 – 54 (10/18/11 email from Baker to broker thanking broker for offering to translate Lifewatch script into Spanish); FTC-LW16-120 (2/8/12 email from Sirlin to Seiden, Lifewatch's CFO, responding to emails also involving Baker and Steinmetz, requesting current versions of the sales scripts used by all Lifewatch call centers) *Plaintiffs' response: Plaintiffs' statement is not limited to scripts that contain misrepresentations.* FTC-LW16-548-49 (8/9/12 email from Sirlin to broker, Modugno, asking him to forward to Boling at Worldwide the "scripts we came up with-ASAP") *Plaintiffs' response: Plaintiffs' statement is not limited to scripts that contain misrepresentations.* FTC-LW16-592 – 598 (8/14/12 email chain involving Sirlin, Baker, Modugno, broker, and new call center, forwarding "updated scripts," scheduling training by Sirlin and Baker re "the sales pitch and pricing," and |

| Plaintiffs' Statement of Material Fact | Plaintiffs' Supporting Documents to Which Defendants Have Not Objected | Plaintiffs' Supporting Documents to Which Defendants Have Objected | Plaintiffs' Response |
|---|---|---|---|
| | | had given product to him) *Defendants' objection: does not pertain to script editing.*; FTC-LW09-2004-5 (8/26/11 email from Baker to broker, copying telemarketers, approving Call Center Welcome Package and scripts, after stating in 8/24/11 email that Sirlin "definitely wants to get this rolling. What else are you needing/missing from us that I can help with?") *Defendants' objection: does not include misrepresentations.*; FTC-LW09-2026 (10/13/11 email from Baker to broker, copying telemarketer, asking for copy of script that Lifewatch had approved on 8/26/11) *Defendants' objection: does not include misrepresentations.*; FTC-LW09-2044 (7/2/12 email from Baker to broker, Modugno, discussing 6/29/12 edits to script by Sirlin) *Defendants' objection: does not include misrepresentations.*; FTC-LW09-2057-2059 (5/20/13 email from Lifewatch employee to broker, Modugno, copying Sirlin, May, and another Lifewatch employee, announcing script change required of all telemarketing rooms) *Defendants' objection: does not include misrepresentations.*; FTC-LW16-53 – 54 (10/18/11 email from Baker to broker thanking broker for offering to translate Lifewatch script into Spanish) *Defendants' objection: does not include misrepresentations.*; FTC-LW16-120 (2/8/12 email from Sirlin to Seiden, Lifewatch's CFO, responding to emails also involving Baker and Steinmetz, requesting current versions of the sales scripts used by all Lifewatch call centers) *Defendants' objection: does not include misrepresentations.*; FTC-LW16-548-49 (8/9/12 email from Sirlin to broker, Modugno, asking him to forward to Boling at Worldwide the "scripts we came up with-ASAP") *Defendants' objection: does not include misrepresentations.*; FTC-LW16-592 – 598 (8/14/12 email chain involving Sirlin, Baker, Modugno, broker, and new call center, forwarding "updated scripts," scheduling training by Sirlin and Baker re "the sales pitch and pricing," and | discussing Lifewatch forwarding "sample" robocalls based on new script) *Plaintiffs' response: Plaintiffs' statement is not limited to scripts that contain misrepresentations and email refers to "recordings" based on new scripts. Only "recordings" used were for robocalling.* FTC-LW16-660 – 679 (9/13/12 email from Sirlin to Lifewatch employee forwarding previous email to Steinmetz forwarding "proper scripts and rebuttals and confirmations" and asking Steinmetz to forward to call centers; script says "NO CHARGE TO YOU," billing doesn't start until consumer activates system, can cancel at any time with no cancellation fees; FTC-LW16-722-723 (9/20/12 email from Sirlin to broker, Modugno, stating that Sirlin changed script to remove word "free") ; FTC-LW16-876 – 892 (11/21/12 email from Modugno, broker, to new call center, copying Sirlin, enclosing contracts, Call Center Welcome Package, scripts, and FAQs) *Plaintiffs' statement is not limited to scripts that contain misrepresentations.* FTC-LW16-1447-1466, 1469-1485 (2/22/13 email from Sirlin to May, forwarding email from Lifewatch employee to telemarketer, copying Sirlin and Baker, attaching contract stating telemarketer "shall only use scripts identified by [Lifewatch] as approved") *Plaintiffs' response: regardless of whether this contract was superseded, it originally called for Lifewatch approving all scripts.* FTC-LW16-2412-2413, 2397-2411 (3/15/13 email from Baker to Sirlin, setting up telephone call to discuss Call Center Welcome Package, scripts and FAQs to telemarketer provided by Lifewatch, copying May, and forwarding the Call Center Welcome Package, scripts, and FAQs); FTC-LW16-2417, 2121-2124, 2414-2416 (3/15/13 email from Lifewatch employee to telemarketer, copying Sirlin, enclosing, "as per Evan's request," sales scripts, FAQs, and a contract, responding to Sirlin email asking him to send the material to the call center; contract  says "Marketer shall only use scripts identified by [Lifewatch] as approved, which approval shall be [Lifewatch's] sole discretion"); FTC-LW16-2566 – 2569 (4/10/13 email |

| Plaintiffs' Statement of Material Fact | Plaintiffs' Supporting Documents to Which Defendants Have Not Objected | Plaintiffs' Supporting Documents to Which Defendants Have Objected | Plaintiffs' Response |
|---|---|---|---|
| | | discussing Lifewatch forwarding "sample" robocalls based on new script) *Defendants' objection: does not include misrepresentations; Plaintiffs' mischaracterize this email as discussing robocalls which it does not.*; FTC-LW16-660 – 679 (9/13/12 email from Sirlin to Lifewatch employee forwarding previous email to Steinmetz forwarding "proper scripts and rebuttals and confirmations" and asking Steinmetz to forward to call centers; script says "NO CHARGE TO YOU," billing doesn't start until consumer activates system, can cancel at any time with no cancellation fees) *Defendants' objection: does not include misrepresentations; the script provides "the only thing you are responsible for today is the monthly monitoring fee."*; FTC-LW16-722-723 (9/20/12 email from Sirlin to broker, Modugno, stating that Sirlin changed script to remove word "free") *Defendants' objection: does not include misrepresentations; the script provides "the only thing you are responsible for today is the monthly monitoring fee."*; FTC-LW16-876 – 892 (11/21/12 email from Modugno, broker, to new call center, copying Sirlin, enclosing contracts, Call Center Welcome Package, scripts, and FAQs) *Defendants' objection: does not include misrepresentations; the script provides "the only thing you are responsible for today is the monthly monitoring fee."*; FTC-LW16-1447-1466, 1469-1485 (2/22/13 email from Sirlin to May, forwarding email from Lifewatch employee to telemarketer, copying Sirlin and Baker, attaching contract stating telemarketer "shall only use scripts identified by [Lifewatch] as approved") *Defendants' objection:  superseded by the contract that has been filed as R. Doc. 24-1, pp. 64-82.*: FTC-LW16-2412-2413, 2397-2411 (3/15/13 email from Baker to Sirlin, setting up telephone call to discuss Call Center Welcome Package, scripts and FAQs to telemarketer provided by Lifewatch, copying May, and forwarding the Call Center Welcome Package, scripts, and FAQs) *Defendants' objection: does not include misrepresentations.*; | from Worldwide to May and Sirlin, enclosing script, containing references to certified EMT, being in business over 30 years, away from home "Protection Card," daily wellness check); FTC-LW16-2911-2913, 2916-2932 (5/14/13 email from Sirlin to broker, Modugno, setting up call to review the attached scripts, responding to emails from Lifewatch employee that call centers cannot give out Lifewatch name)  *Plaintiffs' response:  Plaintiffs' statement is not limited to scripts that contain misrepresentations.* |

| Plaintiffs' Statement of Material Fact | Plaintiffs' Supporting Documents to Which Defendants Have Not Objected | Plaintiffs' Supporting Documents to Which Defendants Have Objected | Plaintiffs' Response |
|---|---|---|---|
| | | FTC-LW16-2417, 2121-2124, 2414-2416 (3/15/13 email from Lifewatch employee to telemarketer, copying Sirlin, enclosing, "as per Evan's request," sales scripts, FAQs, and a contract, responding to Sirlin email asking him to send the material to the call center; contract says "Marketer shall only use scripts identified by [Lifewatch] as approved, which approval shall be [Lifewatch's] sole discretion") *Defendants' objection: does not include misrepresentations.*; FTC-LW16-2566 – 2569 (4/10/13 email from Worldwide to May and Sirlin, enclosing script, containing references to certified EMT, being in business over 30 years, away from home "Protection Card," daily wellness check) *Defendants' objection: does not include misrepresentations.*; FTC-LW16-2911-2913, 2916-2932 (5/14/13 email from Sirlin to broker, Modugno, setting up call to review the attached scripts, responding to emails from Lifewatch employee that call centers cannot give out Lifewatch name) *Defendants' objection: does not include misrepresentations.* | |
| **63. Defendants have provided financing for various telemarketers.** | Dkt. 20-1 at 84, PX 1, Menjivar Dec. Att. DDD (12/16/11 email from Lifewatch Accounting Manager, copying Sirlin, explaining to monitoring company that Lifewatch advanced $6000 to telemarketer "to help ease their cash flow"); Dkt. 96-1 at 23, PX 89, Einikis Dec. Att. A (11/12/14 email from Lifewatch Accounting Manager, copying Sirlin, confirming $10,000 advance provided by Lifewatch to Mayhem Innovations, d/b/a Payless); FTC-LW09-1571 – 74 (6/20/13 email from Sirlin to Worldwide forwarding complaint from North Dakota Attorney General's office, "Do you info to give outside for worldwide-I know doesn't exist anymore but if you can find original info that be great"); FTC-LW09-2151 (6/27/13 email from Sirlin to broker, Modugno, copying May and Lifewatch accountant, agreeing to not withhold payment to telemarketer for chargebacks "to help them get back on their feet"); FTC-LW16-3806 (12/9/13 email from Oliveri to Roman regarding cash receipts and Rick's loan); FTC-LW16-5322 (11/12/14 email from Sirlin to Lifewatch accountant confirming advance to Payless, explaining that "this is | *Defendants' objection: "On its face, the cited evidence does not pertain to 'financing' and only pertains to outside seller Worldwide Info Services, Payless, and Mayhem Innovations."* | *Plaintiffs' response: Plaintiffs' use the word "financing" to describe any money Defendants gave to the telemarketers to assist them in continuing their operations. All of these documents describe such money.* |

| Plaintiffs' Statement of Material Fact | Plaintiffs' Supporting Documents to Which Defendants Have Not Objected | Plaintiffs' Supporting Documents to Which Defendants Have Objected | Plaintiffs' Response |
|---|---|---|---|
| | a new room and they need a little help"); FTC-LW17-419 - 420, Deposition Transcript of Housein Karachopan (Lifewatch broker, Eggen's partner, describing telemarketing manager, Josh Zigich, terminated for excessive complaints, but being rehired to manage another call center); PX 93, Boling Dec. ¶ 47, 48, 50 (Lifewatch gave $200,000 to Worldwide to pay for predictive dialer; "overpaid" Worldwide by $900,000 – 1.2 million to return to Sirlin and May in cash; broker, Matt Eggen, given money to set up at least five new call centers after Worldwide shut down). PX 99, Transcript of Deposition of Roman on July 31, 2017, at 63 (Lifewatch provided advance funding to its call centers). | | |
| **65. Defendants have continued to work with telemarketers even after learning of the telemarketers' deceptive and abusive practices.** | Dkt. 94-2 at 4-7, 200-203, PX 87, Menjivar Dec. ¶¶ 10-16, Atts. D, E (more than 10,000 DNC complaints against the telemarketers Lifewatch identified as their current telemarketers prior to the preliminary injunction hearing: Senior Assist Network, Rescue Me Alert, and Agent Med Alert). FTC-LW09-1332 - 33 (9/14/12 email from Sirlin to Worldwide reporting complaints from subscribers of "'scam' calls" and asking to be informed as to what "would appear on caller id – so we can legitimize these calls"); FTC-LW09-1390 – 94 (10/3/12 email from Sirlin to Worldwide, "Guys I know this sounds dramatic," forwarding complaints from Connect America about calls to consumers on National Do Not Call list); FTC-LW09-1459 – 60 (12/12/12 email from Boling of Worldwide to Baker, copying Sirlin and other Lifewatch employee, stating he has "pulled HUNDREDS of recording (sic) for you guys"); FTC-LW09-1495 (4/11/13 email from May email to Worldwide, Sirlin, Baker, and other Lifewatch employee, agreeing with Sirlin that they should use 2 or more credit card processors going forward "to spread chargebacks out," which would require Worldwide agents to log in from different companies); FTC-LW09-1532 (5/20/13 email from Vandewater to Worldwide complaining that she has "asked for a lot of recordings and I never get them or get a response"); FTC-LW09-1533 – 35 (5/20/13 email from Baker to Boling at Worldwide, copying Sirlin and May, seeking recording and forwarding Vandewater emails complaining that "They never answer me on recordings"); FTC-LW09-1536 – 37 (5/22/13 email from Boling at Worldwide responding to Lifewatch complaint about Worldwide failing to | *Defendants' object that the following documents do not support the statement:* FTC-LW16-985, 895 (12/3/12 email from Sirlin to May, prior to May joining Lifewatch, attaching 11/29/12 letter from The Privatebank and Trust Company, confirming that the bank will not provide credit to Lifewatch because the Indiana AG lawsuit and other government actions against Lifewatch "represents an unacceptable credit risk for the Bank."); FTC-LW16-2393 (3/14/13 email from Sirlin to Baker and Vandewater, forwarding emails from Connect America to Roman, copying Sirlin and May, reporting that 34% of sales Lifewatch sent to Connect America were declined); FTC-LW16-3140-3143 (6/28/13 emails between Lifewatch customer service representatives complaining about telemarketers lying to customers and only providing recordings of confirmations, not of the actual sales, when Lifewatch requests recordings; "Isn't this what I have been complaining about for a year— since we started with these stupid call centers? The bottom line again is they give him a lot of business-that is all that matters, unfortunately."); FTC-LW16-4186-4190 (2/14/14 email from Hallowell to Sirlin stating that Boling at Worldwide "has done more damage to [Lifewatch] brand than anybody we employ ever could and you want him back."); FTC-LW16-8002 - 8005 (1/13/15 emails between Lifewatch customer service representatives noting that they only have recorded confirmation of sales call, not | *Plaintiffs' response: the documents support Plaintiffs' statement. Each of these documents represent that Defendants learned that their telemarketers were engaged in abusive and deceptive telemarketing practices.* |

| Plaintiffs' Statement of Material Fact | Plaintiffs' Supporting Documents to Which Defendants Have Not Objected | Plaintiffs' Supporting Documents to Which Defendants Have Objected | Plaintiffs' Response |
|---|---|---|---|
| | forward recording, which stated: "Still nothing …….. PLEASE!!!!!!!!!! !!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!! !!!!!!!!!!!!!!!! We are out of time !!!!!!!!!!!!!!!!!!!!!!!!!"); FTC-LW09-1538 (5/22/13 email from Sirlin to Worldwide instructing Worldwide "Also Wisconsin is giving us trouble-I would not sell there," and forwarding email from Lifewatch customer service to Sirlin, May, and Baker, about "John" robocalls from 5 spoofed caller IDs; "We, at Lifewatch USA, do not make cold calls, do not call out to anyone. Blah blah blah-He finally believed me."); FTC-LW09-1546 - 1550 (6/10/13 email from Sirlin to Worldwide, forwarding 6/10/13 email from Connect America CEO to Sirlin and Roman, regarding 2 lawsuits and additional BBB inquiries related to robocalling tied to Lifewatch; ordering Lifewatch "to put a stop to these illegal calls . . . These reckless actions by this call center are costing us money in legal and labor fees and damaging the industry."); FTC-LW09-1560 – 62 (6/18/13 email from Sirlin to Worldwide asking for "outgoing message" consumer would have heard, and forwarding 6/18/13 email from Lifewatch customer service representative to Sirlin, May, and Baker regarding consumer's complaint about Lifewatch DNC violations); FTC-LW09-1565 – 70 (6/20/13 email from Sirlin to Worldwide requesting that "someone blast seo on internt about scam lifewatch and medical alerts etc etc- So real stupid stuff below goes low down," and forwarding emails from Baker to Sirlin and May with links to nationwide news reports of government alerts and private actions tying Lifewatch to widespread robocall "scam," including false claims that device is free, caller ID spoofing, "trades on the well-known brand of Life Alert," false claims about easy cancellations, false endorsement by American Diabetes Association, violations of DNC registry, and unauthorized use of BBB name and logo in promotional materials."); FTC-LW09-1571 – 74 (6/20/13 email from Sirlin to Worldwide forwarding complaint from North Dakota Attorney General's office, "Do you info to give outside for worldwide-I know doesn't exist anymore but if you can find original info that be great"); FTC-LW16-230 – 231 (4/2/12 email from Sirlin to Steinmetz, responding to email from Steinmetz to Sirlin, Baker, Modugno, and other Lifewatch employees, following Baker email to Modugno stating that Lifewatch "continue(s) to get the same complaints as before…But it's never good when the staff | sale itself, but cannot play the call for consumer because of other "misleading BS"); | |

| Plaintiffs' Statement of Material Fact | Plaintiffs' Supporting Documents to Which Defendants Have Not Objected | Plaintiffs' Supporting Documents to Which Defendants Have Objected | Plaintiffs' Response |
|---|---|---|---|
| | members at Lifewatch come across an account that has something wrong with it or the customer called to say they were told something bizarre and everyone says 'Ohhhhh…that must be a Worldwide customer!!!' That tells me there is a definite issue!!!"); FTC-LW16-373 (6/12/12 email from Sirlin to Steinmetz, forwarding email from Lifewatch customer service representative regarding complaint about Worldwide robocalling and misrepresentation regarding American Heart Association endorsement; Sirlin says Worldwide should change recorded message and instead tout "medical alarm equipment for free from a 30 year old leading medical alert provider"); FTC-LW16-904-909 (12/1/12 email from Sirlin to May, prior to May joining Lifewatch, describing Worldwide lawyer who "has gotten rid of 5 under 10k small consumer advocate DNC/robo hustlers – I agreed and was okay with all that"; describing Boling at Worldwide as "the robo expert/professional that will do any structure, shill, fall, company I want…no one likes them but I am comfortable and other than AG issues they are very valuable and I believe if we feed them another few months and make a deal for them to stop robo and try legit that is way to ease them down but a hard stop now they will be very upset and dangerous – With ag he will take responsibility all the way thru"); FTC-LW16-911 (12/1/12 email from Sirlin to May, prior to May joining Lifewatch, forwarding email from Neil Seiden, Lifewatch CFO, to Sirlin stating that Worldwide's involvement with Lifewatch May make "bank deal .. dead"); FTC-LW16-2835 (4/25/13 email from Connect America CEO to Sirlin, copying Roman and May, stating "The whole PERS industry is concerned over the sudden rise of consumer complaints due to telemarketing and robo dialing seniors. These tactics as you know are not something that we approve of and feel they will have a negative impact on the industry as a whole. We have made it clear that we cannot accept accounts that are derived from such tactics. We gave you notice in writing that we terminated our agreement on March 19, 2013. In addition we are hearing of misleading statements and false advertising within the script of these calls…Unfortunately due to the above mentioned information and circumstances, that effective immediately we can no longer accept even replacement accounts from Lifewatch."); PX 91, Robinson Dec. ¶ 22 (former telemarketer and telemarketing supervisor stating that Lifewatch paid a large portion of a $192,000 fine imposed on Lifewatch telemarketer for | | |

| Plaintiffs' Statement of Material Fact | Plaintiffs' Supporting Documents to Which Defendants Have Not Objected | Plaintiffs' Supporting Documents to Which Defendants Have Objected | Plaintiffs' Response |
|---|---|---|---|
| | time-share scam telemarketing violations, so he was obligated to run call centers selling Lifewatch medical alert devices to repay the money); PX 93, Boling Dec. ¶ 36 ("Lifewatch was well aware of the representations the Worldwide telemarketers made because every week Lifewatch required Worldwide to send up to 100 recordings of full telemarketing calls for completed sales."); PX 93, Boling Dec. ¶ 37 (Sirlin frequently requested that Worldwide edit troubling content from sales recordings before sending them to Lifewatch). | | |
| **91. May knows that Defendants' telemarketers have engaged in deceptive acts and practices.** | Dkt. 14-3 at 46, PX 1, Menjivar Dec. Att. B (8/20/13 email from Sirlin to Baker and Worldwide, responding to 8/20/13 email from Baker to Sirlin and May stating "here is a dispute where customer was told she wouldn't have to pay until she activates it. i have gotten others like this. was rick told to remove this from his pitch?"); FTC-LW16-2914-2915 (5/14/13 email from May to Sirlin and Baker, forwarding earlier email from Lifewatch customer service sent to Sirlin, May, and Baker, regarding complaint that customer was told daughter had ordered unit for her. "I cannot begin to tell you how many of these I am hearing…that the Sales Agent is telling the Subscriber that a family member ordered the unit for them, so the unit is free."); FTC-LW16-2933 – 2934 (5/15/13 email from Lifewatch customer service representative to Sirlin, responding to email from May, copying Sirlin and Baker, regarding complaint tied to Worldwide (US Affiliates) of customer being told family member had given product to him; "When I first started hearing about these type of calls-family member purchased the equipment, I thought it was a few shady salespeople. I am no realizing it is part of the Script."); FTC-LW16-3387-3388 (8/13/13 email from Roman to Sirlin, May, Baker, and other Lifewatch and SHS personnel, describing his review of all calls coming in to Lifewatch customer service: 75% of all calls are from customers calling to cancel; "Most appear to be aggressive sales practices or customers with no recollection of buying anything," and stating that complaints about free trials and that a relative ordered the product for the customer "are undermining our reputation, adding to expenses, wasting call center time, and demoralizing our staff."); FTC-LW16-4397 – 4398 (4/9/14 email from Baker to May, copying Sirlin, saying she is "completely shocked" that May is agreeing with Hallowell to continue to bill consumers Lifewatch | *Defendants aver that generally the following documents do not support the statement:* FTC-LW09-1459 – 60 (12/12/12 email from Boling of Worldwide to Baker, copying Sirlin and other Lifewatch employee, stating he has "pulled HUNDREDS of recording (sic) for you guys"); FTC-LW09-1495 (4/11/13 email from May to Worldwide, Sirlin, Baker, and other Lifewatch employee, agreeing with Sirlin that they should use 2 or more credit card processors going forward "to spread chargebacks out," which would require Worldwide agents to log in from different companies); FTC-LW09-1533 – 35 (5/20/13 email from Baker to Boling at Worldwide, copying Sirlin and May, seeking recording and forwarding Vandewater emails complaining that "They never answer me on recordings"); FTC-LW09-1538 (5/22/13 email from Sirlin to Worldwide instructing Worldwide "Also Wisconsin is giving us trouble-I would not sell there," and forwarding Lifewatch customer service to Sirlin, May, and Baker, about "John" robocalls from 5 spoofed caller IDs; "We, at Lifewatch USA, do not make cold calls, do not call out to anyone. Blah blah blah-He finally believed me."); FTC-LW09-1544 – 45 (6/6/13 email from Sirlin to Worldwide regarding complaint tied to Worldwide and forwarded to Sirlin and May, in which customer was "told the same things as previous accounts," that "'a family member paid 400 for unit'"); FTC-LW09-1546 - 1550 (6/10/13 email from Sirlin to Worldwide, forwarding 6/10/13 email from Connect | *Plaintiffs' response:  Plaintiffs disagree that the cited documents do not support the statement.  May is a recipient of the emails discussing the telemarketers' deceptive and abusive telemarketing practices.* |

| Plaintiffs' Statement of Material Fact | Plaintiffs' Supporting Documents to Which Defendants Have Not Objected | Plaintiffs' Supporting Documents to Which Defendants Have Objected | Plaintiffs' Response |
|---|---|---|---|
| | knows have not activated their devices; states "You both understand this is where disputes/charge backs, BBB, AG complaints come from, right???????"); FTC-LW16-5220-5221 (10/13/14 email from Sirlin to Nonsant at Payless, asking him to address attached email from SHS employee to Vandewater, Baker, Roman, May, and Sirlin with complaint from customer told that she would not be charged until unit was activated); FTC-LW16-7370 – 7371 (8/1/13 email from Roman to May and Sirlin, attaching link to 7/30/13 press release from Connecticut Office of Attorney General, Department of Consumer Protection, warning seniors about rampant robocalls using spoofed caller IDs to false promise "free" medical alert devices to seniors, and asking why Worldwide sales are down). | America CEO to Sirlin and Roman, regarding 2 lawsuits and additional BBB inquiries related to robocalling tied to Lifewatch; ordering Lifewatch "to put a stop to these illegal calls . . . These reckless actions by this call center are costing us money in legal and labor fees and damaging the industry."); FTC-LW09-1556 – 59 (6/18/13 email from Sirlin to Worldwide, asking for information and to add a number to DNC, forwarding customer service email to Sirlin and May from customer who received robocall tied to Lifewatch, and noting she found 24 similar complaints, stating that someone had purchased device for her; customer service representative stated she told customer "Of course I said all the right things—we have nothing to do with them, blah blah blah, and she believes me and feels 'bad' for our company that this will damage our reputation if this other company keeps making these calls lol!"); FTC-LW09-1565 – 70 (6/20/13 email from Sirlin to Worldwide requesting that "someone blast seo on internt about scam lifewatch and medical alerts etc etc-So real stupid stuff below goes low down," and forwarding emails from Baker to Sirlin and May with links to nationwide news reports of government alerts and private actions tying Lifewatch to widespread robocall "scam," including false claims that device is free, caller ID spoofing, "trades on the well-known brand of Life Alert," false claims about easy cancellations, false endorsement by American Diabetes Association, violations of DNC registry, and unauthorized use of BBB name and logo in promotional materials."); FTC-LW16-911 (12/1/12 email from Sirlin to May, forwarding email from Neil Seiden, Lifewatch CFO, to Sirlin stating that Worldwide's involvement with Lifewatch May make "bank deal .. dead"); FTC-LW16-985, 895 (12/3/12 email from Sirlin to May, prior to May joining Lifewatch, attaching 11/29/12 letter from The Privatebank and Trust Company, confirming that the bank will not provide credit to Lifewatch because the Indiana AG lawsuit and other government actions against Lifewatch "represents | |

| Plaintiffs' Statement of Material Fact | Plaintiffs' Supporting Documents to Which Defendants Have Not Objected | Plaintiffs' Supporting Documents to Which Defendants Have Objected | Plaintiffs' Response |
|---|---|---|---|
| | | an unacceptable credit risk for the Bank."); FTC-LW16-1447-1466, 1469-1485 (2/22/13 email from Sirlin to May, forwarding email from Lifewatch employee to telemarketer, copying Sirlin and Baker, attaching contract stating telemarketer "shall only use scripts identified by [Lifewatch] as approved," and sales scripts stating "billing cycle doesn't start until you receive the system and activate it" and stating consumer can cancel at any time with no cancellation fees); FTC-LW16-2393 (3/14/13 email from Sirlin to Baker and Vandewater, forwarding emails from Connect America to Roman, copying Sirlin and May, reporting that 34% of sales Lifewatch sent to Connect America were declined); FTC-LW16-2499 – 2500 (4/1/13 emails between Connect America CEO and Sirlin, May, and Roman relating to 3/28/13 email from Connect America controller noting that "chargebacks from last week exceed the sales from last week" by $37,918.46); FTC-LW16-2566 – 2569 (4/10/13 email from Worldwide to May and Sirlin, enclosing script, claiming endorsed by American Heart Association, American Diabetes Association, National Institute of Aging, thousands of hospitals, and more than 65,000 healthcare professionals); FTC-LW16-2835 (4/25/13 email from Connect America CEO to Sirlin, copying Roman and May, stating "The whole PERS industry is concerned over the sudden rise of consumer complaints due to telemarketing and robo dialing seniors. These tactics as you know are not something that we approve of and feel they will have a negative impact on the industry as a whole. We have made it clear that we cannot accept accounts that are derived from such tactics. We gave you notice in writing that we terminated our agreement on March 19, 2013. In addition we are hearing of misleading statements and false advertising within the script of these calls…Unfortunately due to the above mentioned information and circumstances, that effective immediately we can no longer accept even replacement accounts from Lifewatch."); | |

| Plaintiffs' Statement of Material Fact | Plaintiffs' Supporting Documents to Which Defendants Have Not Objected | Plaintiffs' Supporting Documents to Which Defendants Have Objected | Plaintiffs' Response |
|---|---|---|---|
| **97. The Corporate Defendants share office space.** | *Bank v. Lifewatch Inc., et al.*, No. 1:15-cv-2278 (E.D.N.Y. filed Apr. 22, 2015) (complaint alleging telemarketer gave SHS's address as the headquarters for the seller of the medical alert device being offered). <br> Dkt. 25-9 at 3, PX 41, James Dec. ¶¶ 5-6, Dkt. 17-2 at 25 (Lifewatch customer service representative stating that office is at 975 Middle St., Middletown, Connecticut); <br> Dkt. 25-9 at 3, PX 41, Dkt. 17-2 at 39-40 (Lifewatch customer service department phone number playing recorded message thanking caller for calling Safe Home Security); <br> Dkt. 25-18, PX 50, Mey Dec. at ¶¶ 31, 34, Dkt. 20-1 at 7 (Lifewatch's customer service representative stating office in Connecticut); <br> Dkt. 25-18, PX 50, Mey Dec. at ¶¶ 31, 34, Dkt. 20-1 at 56 (same); <br> FTC-LW16-3387-3388 (8/13/13 email from Roman to Sara Weaver, Wajdowicz, Baker, Hallowell, Sirlin, and May regarding Roman's observations from his time spent at Lifewatch Middletown); <br> FTC-LW16-6586-6591 (4/5/16 email from Hallowell to Baker instructing Baker to use his name and address at Sebethe as contact person for Medguard) | *Defendants' objections:* <br> • *"The evidence cited by plaintiffs only involves time periods after the May 31, 2013 share purchase agreement."* <br> • *Bank v. Lifewatch complaint is hearsay;* <br> • *"PX 41 and PX 50 pertain to events in January and March 2015."* <br> • *FTC-LW16-6586, which is a 2016 email, is mischaracterized and does not support the statement.;* <br> • *FTC-LW16-3387 does not support the statement and is mischaracterized.* | *Plaintiffs' response: Plaintiffs' statement does not refer to a particular time that the Defendants' shared office space. Plaintiffs' do not agree that they have mischaracterized the contents of FTC-LW16-6586 and 3387.* |