**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

_____
)
FEDERAL TRADE COMMISSION, and )
)
STATE OF FLORIDA, OFFICE OF THE )
ATTORNEY GENERAL, DEPARTMENT )
OF LEGAL AFFAIRS, )    Case No. 15cv5781
)
    Plaintiffs, )    Judge Gary Feinerman
)
    v. )    Magistrate Judge Jeffrey T. Gilbert
)
LIFEWATCH, INC., a New York corporation, )
also d/b/a LIFEWATCH USA and MEDICAL )
ALARM SYSTEMS, )
)
SAFE HOME SECURITY, INC., a )
Connecticut corporation, )
)
MEDGUARD ALERT, INC., a Connecticut )
corporation, )
)
EVAN SIRLIN, individually and as an officer )
or manager of Lifewatch Inc., )
)
MITCHEL MAY, individually and as an officer or )
manager of Lifewatch Inc., and )
)
DAVID ROMAN, individually and as an officer )
or manager of Lifewatch Inc., Safe Home Security, )
Inc., and Medguard Alert, Inc. )
)
    Defendants. )
_____)

## PLAINTIFFS' RESPONSE TO DEFENDANTS' JOINT ADDITIONAL STATEMENT OF FACTS

    1.    Lifewatch's customer origination was not accomplished solely through outbound telemarketing.

    **PLAINTIFFS' REPONSE TO STATEMENT 1**: Undisputed.

1

2.　　Lifewatch spent significant money on non-outbound telemarketing and opt-in leads and generated a measurable portion of its customer pool through these efforts.

**PLAINTIFFS' RESPONSE TO STATEMENT 2**:  Disputed.

As to the first clause of this paragraph, Plaintiffs' object to the use of the term "significant."  Further, other than Dkt. 66, none of Defendants' cited evidence provides support for Defendants' assertion.  None of the evidence discusses the actual amount of money Lifewatch spent on non-outbound telemarketing and opt-in leads.  Dkt. 66 shows the following:

Dkt. 66 at 19-20, 26-27, PX 1, Menjivar Dec. Att. V (Redacted) (Lifewatch Profit & Loss statements for 2013, and January – August 2014) shows that Lifewatch spent $25,453,600.82 on "Advertising" in 2013 of which $24,272,672.15 or 95.4% was paid to "Sellers" such as WorldWide and shows that Lifewatch spent $12,630,019.39 on "Advertising" from January – August 2014 of which $12,144,142.51 or 96.2% was paid to "Sellers."

With respect to the second clause of this statement, this is not an additional fact, but a response to Plaintiffs' Statement of Undisputed Material Facts ("PSMF") at ¶ 46, which Plaintiffs' supported with the following evidence:

- PX 97, Al-Najjar Dec. ¶ 12 (summarizing spreadsheet of Defendants' sales attached to FTC-LW16-8129 – 34, 11/10/15 email from Baker to Christopher Parisi, showing 96.4% of Defendants' sales were through outside call centers);

- Dkt. 66 at 19-20, 26-27, PX 1, Menjivar Dec. Att. V (Redacted) (Lifewatch Profit & Loss statements for 2013 and January – August 2014, showing 96% of the total amount Lifewatch spent on "Advertising" went to "Outside Sellers");

- PX 98, Transcript of Deposition of Sirlin on July 25, 2017, at 12-13 (Sirlin testifying that any customers purchasing Lifewatch medical alert devices or service as a result of television, radio, or internet advertising contact Lifewatch directly and not through outside marketers).

Finally, none of the evidence Defendants' cite in support of this statement quantifies what Defendants mean by a "measurable portion." And FTC-LW16-150-153, FTC-LW16-59-60 should not be considered by the court because they are inadmissible hearsay.

3.      Lifewatch entered into hundreds of purchase agreements with outside sellers and generated revenue as a result of accounts originated by these outside sellers.

**PLAINTIFFS' RESPONSE TO STATEMENT** 3:  Undisputed.

4.      Chargeback rate varied among Lifewatch's outside sellers

**PLAINTIFFS' RESPONSE TO STATEMENT 4**:  Undisputed.

However, Plaintiffs take issue with Defendants' use of the word "chargeback." "Chargeback" is a term of art used by the financial industry to describe a demand by a credit card provider for a retailer to make good on the loss associated with a fraudulent or disputed credit card transaction.  *See* www.chasepaymentech.com/chargebacks.html.  In this context, Defendants are using the term to describe amounts deducted from the outside sellers' compensation for consumers who cancelled their account with 90 days.  *See e.g.*, Dkt. 244, PSMF at ¶ 70 (containing citations to numerous emails from Paule Oliveri to David Roman showing outside sellers' chargebacks).

5.      Lifewatch's relationships with its outside sellers were not exclusive.

**PLAINTIFFS' RESPONSE TO STATEMENT 5**:  Disputed.

This is not an additional fact, but a response to PSMF at ¶¶ 56 and 58, which Plaintiffs' supported with the following evidence:

- Dkt. 24-10 at 4-5, PX 14, Hilgar Dec. ¶ 11 (all of the telemarketing conducted by Worldwide and its related entities was on behalf of Lifewatch);

- Dkt. 24-11 at 2-3, PX 15, Settecase Dec. ¶ 5 (Worldwide medical alert telemarketing was exclusively on behalf of Lifewatch);

- Dkt. 24-12 at 3, PX 16, Kane Dec. ¶ 4 (court-appointed Receiver concluded that Lifewatch was the only medical alert service provider that ever paid Worldwide);

- Dkt. 101-3 at 8-9 (Transcript of December 2, 2015 Deposition of Brick Kane) (court-appointed Receiver found no evidence showing Worldwide worked for any medical alert provider other than Lifewatch);

- FTC-LW09-1042 (4/16/12 email from Boling at Worldwide to Steinmetz confirming that Worldwide has and will continue to work exclusively for Lifewatch);

- FTC-LW09-1148 (6/26/12 email from Sirlin to Worldwide, forwarding earlier email in which Sirlin describes Worldwide to accountant as "our biggest marketing partner");

- FTC-LW09-1191 (7/18/12 email from Boling at Worldwide to Sirlin and Steinmetz regarding details of residuals, back payments, and upcoming wire transfer; promising followup email confirming that Worldwide will work exclusively for Lifewatch);

- FTC-LW09-1192 (7/18/12 email from Boling at Worldwide to Sirlin and Steinmetz confirming "express written commitment" to working exclusively with Lifewatch on medical alerts for three years);

- FTC-LW16-238 (4/4/12 email from Baker to Lifewatch customer service representatives providing dedicated 800 number Worldwide maintains for Lifewatch customer service calls);

- FTC-LW16-252 (4/6/12 email from Sirlin to Steinmetz responding to email from Steinmetz stating that Worldwide got new script which Lifewatch approved, responding to Sirlin email expressing concern that Worldwide might not be exclusive);

- FTC-LW16-511-512 (7/28/12 emails between Sirlin, Baker, and Seiden, Lifewatch CFO, forwarding Boling's 7/18/12 email promising Worldwide exclusivity, discussing getting the commitment in writing on letterhead so Lifewatch "can send it to the bank");

- FTC-LW16-967 – 984 (12/2/12 email from Sirlin to May, enclosing 6/1/12 telemarketing agreement between Worldwide and Lifewatch; Sirlin states that "Worldwide is one of ricks company-again they signed whatever we asked including indemnification – but they have nothing to lose");

- FTC-LW16-2489-2490 (3/28/13 email from Sirlin to May and Baker, forwarding emails between Worldwide and Lifewatch employees about mistakes Worldwide has been making in running credit card charges themselves);

- PX 93, Declaration of Roderic Boling ¶ 44 ("Lifewatch requested that Worldwide telemarket exclusively for Lifewatch.").

- Dkt. 22-1 at 6, PX 4, Velez Dec. ¶¶ 16 - 17, Atts. J-L, Dkt. 22-2 at 67-105 (U.S. Digest LLC application stating it is attaching all sales scripts but including only Lifewatch Call Center Welcome Packages);

- Dkt. 22-1 at 7, PX 4, Velez Dec. ¶¶ 19-21, Atts. M-O, Dkt. 22-2 at 106-112, 22-3 at 1-8 (Multilevel Marketing LLC application listing Life Watch as a fictitious name it uses and stating it is attaching all sales scripts but including only Lifewatch script);

- Dkt. 22-1 at 8, PX 4, Velez Dec. ¶ 22, Atts. P-R, Dkt. 22-3 at 9-33 (Direct Agent Response, Inc. application stating it is attaching all sales scripts and information sent to purchaser, but including only Senior Life Alarm script describing Lifewatch product and service, and Lifewatch subscriber forms and contract);

- Dkt. 22-1 at 8-9, PX 4, Velez Dec. ¶¶ 25-29, Atts. S-AA, Dkt. 22-3 at 34-77 (Senior Medical Alert systems application stating it is attaching all sales scripts but including only scripts describing Lifewatch product and service, including Lifewatch's dba, Medical Alarm, in confirmation script, employees confirming that calls were all on behalf of Lifewatch, and license being changed to include Sirlin and May as officers);

- Dkt. 22-1 at 10-11, PX 4, Velez Dec. ¶¶ 30-33, Atts. BB-FF, Dkt. 22-3 at 78-123 (TMI Marketing Group application stating it is attaching all sales scripts but only including multiple scripts identifying seller as Lifewatch, and listing Lifewatch as only company for which it would telemarket);

- Dkt. 22-1 at 11-12, PX 4, Velez Dec. ¶¶ 34-36, Att. GG, Dkt. 22-3 at 124-130 (Oasis Money Group LLC operating from same location as at least three other Lifewatch telemarketers, Payless Solutions Inc., Payless Soutions Enterprises LLC, and Miranda Money Group LLC, using script describing Lifewatch product and service, and principal and employees admitted to telemarketing for Lifewatch);

- Dkt. 22-1 at 12, PX 4, Velez Dec. ¶¶ 37-39, Atts. HH-II, Dkt. 22-3 at 131-141 (Payless Solutions Inc., a/k/a Global Marketing Enterprises, Inc., operating out of same location as at least three other Lifewatch telemarketers, Oasis Money Group LLC, Payless Solutions Enterprises LLC, and Miranda Money Group LLC; application stating it is attaching all sales scripts but including only one script for medical alert devices describing Lifewatch product and service);

- Dkt. 22-1 at 12-13, PX 4, Velez Dec. ¶¶ 40-41, Atts. JJ-KK, Dkt. 22-3 at 142-157 (Payless Solutions Enterprises LLC operating out of same location as at least three other Lifewatch telemarketers, Oasis Money Group LLC, Payless Solutions Inc., and Miranda Money Group LLC; application stating it is attaching all sales scripts but including only one script for medical alert devices describing Lifewatch product and service);

- Dkt. 22-1 at 13, PX 4, Velez Dec. ¶¶ 42-43, Atts. LL-PP, Dkt. 22-3 at 158-173, Dkt. 23-1 at 1-22 (Miranda Money Group LLC operating out of same location as at least three other Lifewatch telemarketers, Oasis Money Group LLC, Payless Solutions Inc., and Payless Solutions Enterprises LLC; application stating it is affiliated with Lifewatch Inc., and that "All fulfillments are done by Lifewatch Inc."; application states it is attaching all sales scripts but includes only one script for medical alert devices describing Lifewatch product and service; FAQs describe Lifewatch product and service; only ACH payment authorization script specifies Lifewatch Inc. as entity making debit);

- Dkt. 22-1 at 14, PX 4, Velez Dec. ¶¶ 44-45, Atts. QQ-RR, Dkt. 23-1 at 23-47 (Personal Security Shopper Inc., d/b/a MD24/7.com, application states it uses Life Watch as a fictitious name; application stating it is attaching all sales scripts but only including Lifewatch Call Center Welcome Package);

- Dkt. 22-1 at 14-15, PX 4, Velez Dec. ¶¶ 46-48, Atts. SS-VV, Dkt. 23-1 at 48-89 (Total Security Vision Inc. application stating it is attaching all sales scripts but including only scripts and FAQs describing Lifewatch product and service);

- Dkt. 22-1 at 15-17, PX 4, Velez Dec. ¶¶ 49-54, Atts. WW-EEE, Dkt. 23-1 at 90-150 (Alertlink application stating it is attaching all sales scripts but including only scripts and FAQs describing Lifewatch product and service; parent company's admission that it is "Affiliated with Lifewatch-USA" and listing Lifewatch's address as its principal place of business);

- Dkt. 22-1 at 17, PX 4, Velez Dec. ¶¶ 55-58, Atts. FFF-HHH, Dkt. 23-1 at 151-162 (Live Response Agent Inc. application stating that Life Watch USA is its parent and its fictitious name, and stating it is attaching all sales scripts but including only scripts describing Lifewatch product and service);

- Dkt. 94-3 at 2, PX 88, Hall Dec. ¶ 3 (QCSS never did business with any other medical alert company);

- FTC-LW09-2237-2238 (9/10/13 email from Sirlin to broker, Modugno, copying May, stating that it would be a conflict for broker to work for any other seller of medical alert sales, even if not telemarketing);

- FTC-LW17-114, Deposition Transcript of Alberto Montes by Office of Texas Attorney General (owner of call center Medco Networks testifying that they sold medical alert devices exclusively for Lifewatch);

- PX 91, Declaration of Michael Robinson ¶¶ 3-5, 7 (former telemarketer and telemarketing supervisor stating that Alertlink in Margate, Florida, Agent Answering Assistance and Better Life Systems in Fort Lauderdale, Florida, and Nationwide Ventures in Las Vegas, sold medical alert devices exclusively for Lifewatch; Constant Connectivity in Altamonte Springs, Florida, sold for a different company also, but alternated weeks so they were never marketing for both during the same week).

Moreover, the evidence Defendants' cite does not support the inference that Lifewatch's relationship with all of its outside sellers was not exclusive – the evidences relates to only six of the hundreds of telemarketers that Lifewatch worked with. Finally, the Court should not consider FTC-LW-09-1193-96, FTC-LW09-1202-1205, FTC-LW09-1300, LW-FTC-01413-

1439, and LW-FTC-1440 because these documents constitute inadmissible hearsay. In any event, the documents cited that reference WorldWide, when read in their entirety, show that Philips Lifeline and First Street had hired Lifewatch to telemarket on their behalf, and that the telemarketing relationship was between WorldWide and Lifewatch. *See* FTC-LW-09-1193-96; FTC-LW09-1202-1205; FTC-LW09-1300.

6.     Lifewatch sent out costly medical alert equipment to customers and only charged the customer for monthly monitoring.

**PLAINTIFFS' RESPONSE TO STATEMENT 6**: Disputed.

This is not an additional fact, but a response to PSMF at ¶¶ 18 and 22, which Plaintiffs' supported with the following evidence:

- Dkt. 24-1 at 129, 138, PX 5, Bradley Dec. ¶ 5, Att. D (consumer billed same day as call);

- Dkt. 24-3 at 5, PX 7, Cuomo Dec. ¶ 5, Att. A (consumer complaint that mom paid over $2000 for unused service);

- Dkt. 24-3 at 5-7, PX 7, Cuomo Dec. Att. A (Lifewatch refused to cancel account of woman with dementia because son cannot find device to return it; demanding $475 as alternative);

- Dkt. 24-3 at 11, PX 7, Cuomo Dec. Att. A (consumer could not afford to pay return postage);

- Dkt. 24-3 at 13, PX 7, Cuomo Dec. Att. A (consumer paid monthly fee for several months for unused service);

- Dkt. 24-3 at 15-16 , PX 7, Cuomo Dec. Att. A (consumer's father paid over $130 for unused service);

- Dkt. 24-3 at 23, PX 7, Cuomo Dec. Att. A (consumer's mother paid monthly fee for over a year for unused service);

- Dkt. 24-3 at 35, PX 7, Cuomo Dec. Att. A (consumer's sister paid for 7 months of fees for unused service);

- Dkt. 24-3 at 38, PX 7, Cuomo Dec. Att. A (consumer's father paid monthly fee for several months of unused service);

- Dkt. 24-3 at 40, PX 7, Cuomo Dec. Att. A (consumer's mother billed over $400 for unused service);

- Dkt. 24-3 at 42, PX 7, Cuomo Dec. Att. A (consumer's elderly parents paid approximately $700 for unused service);

- Dkt. 24-22 at 3, PX 26, Cavic Dec. ¶ 8 (mother charged for unactivated device for nearly a year);

- Dkt. 25-2 at 3, PX 34, Felker Dec. ¶ 6 (charged monthly fees for a system that was never received);

- FTC-LW16-4397 – 4398 (4/9/14 email from Baker to May, copying Sirlin, saying she is "completely shocked" that they are agreeing with Hallowell to continue to bill consumers Lifewatch knows have not activated their devices; states "You both understand this is where disputes/charge backs, BBB, AG complaints come from, right???????");

- FTC-LW16-4786 (7/2/14 email from Roman to Hallowell, May, and Sirlin showing the weekly percentage of Lifewatch customers paying despite not having activated their system ranging from 15-24.6%);

- FTC-LW16-4833-4838 (8/11/14 email from Cohen to Kevin Carducci, Baker, Hallowell, and Sara Weaver regarding giving a partial refund to consumers who had PERS unit for 7 months, paid for it, but never activated it);

- FTC-LW16-4861 – 4862 (8/21/14 email from Baker to Roman, Hallowell, and May, excited that "working hard!" had resulted in lower the number of Lifewatch PERS customers who had not activated their units to 11%);

- FTC-LW16-4984-4985 (9/4/14 email exchange between Roman, Hallowell, May and Baker noting that number of paying Lifewatch customers who had not activated their medical alert units had increased again);

- FTC-LW16-4999-5001 (9/5/14 email exchange between Kevin Carducci, Cohen, Sirlin, Roman, Hallowell, Baker, and May about consumers complaining that they were being told that they would not be charged until they activated the unit);

- FTC-LW16-6602 – 6603 (4/7/16 email from May to monitoring company, copying Roman, Sirlin, and Hallowell regarding the 50% of Defendants' accounts that were not sending any signal);

- FTC-LW16-6612 (4/11/16 email from Hallowell to Wajdowicz, SHS Chief Information Officer, copying Roman, attaching email from monitoring company showing 4367 out of 9312 active paying accounts had no signal).

- Dkt. 25-14 at 3, PX 46, Lifshitz Dec. ¶ 6 ("He also said that [Lifewatch] would only cancel my account after I mailed the device back at my own expense. I had previously been told that there would be no cost to returning the device.");

- Dkt. 25-18 at 6, Dkt. 19-1 at 28, PX 50 Mey Dec. ¶ 16 (if do not return device, charged $475);

- Dkt. 25-18 at 11, Dkt. 20-1 at 6, PX 50, Mey Dec. ¶ 31 ("Well, then, you know, we can't close out the account unless we get the equipment back…I said the collection efforts will continue.");

- Dkt. 25-24 at 4, PX 56, Rench Dec. ¶ 7 (consumer told he was responsible for paying return shipping until consumer threatened to "trash the device");

- FTC-LW16-4397 – 4398 (4/9/14 email from Baker to May, copying Sirlin, saying she is "completely shocked" that they are agreeing with Hallowell to continue to bill consumers Lifewatch knows have not activated their devices; states "You both understand this is where disputes/charge backs, BBB, AG complaints come from, right???????")

- FTC-LW16-4786 (7/2/14 email from Roman to Hallowell, May, and Sirlin showing the weekly percentage of Lifewatch customers paying despite not having activated their system ranging from 15-24.6%)

- FTC-LW16-4833-4838 (8/11/14 email from Cohen to Kevin Carducci, Baker, Hallowell, and Sara Weaver regarding giving a partial refund to consumers who had PERS unit for 7 months, paid for it, but never activated it)

- FTC-LW16-4861 – 4862 (8/21/14 email from Baker to Roman, Hallowell, and May, excited that "working hard!" had resulted in lower the number of Lifewatch PERS customers who had not activated their units to 11%)

- FTC-LW16-4984-4985 (9/4/14 email exchange between Roman, Hallowell, May and Baker noting that number of paying Lifewatch customers who had not activated their medical alert units had increased again)

- FTC-LW16-4999-5001 (9/5/14 email exchange between Kevin Carducci, Cohen, Sirlin, Roman, Hallowell, Baker, and May about consumers complaining that they were being told that they would not be charged until they activated the unit)

- FTC-LW16-6602 – 6603 (4/7/16 email from May to monitoring company, copying Roman, Sirlin, and Hallowell regarding the 50% of Defendants' accounts that were not sending any signal)

- FTC-LW16-6612 (4/11/16 email from Hallowell to Wajdowicz, SHS Chief Information Officer, copying Roman, attaching email from monitoring company showing 4367 out of 9312 active paying accounts had no signal)

- FTC-LW16-8036 (4/13/15 email from Vandewater to telemarketer re consumer told Lifewatch would pay return shipping if she cancelled, "which we wont do")

- Dkt. 96-1 at 8-10, PX 89, Einikis Dec. Att. A (5/18/15 email from Vandewater at Lifewatch to undisclosed call centers stating "I have heard on recordings reps telling customers that we will send a prepaid label to send the unit back, we will not be doing that even if you ask, so please do not offer it as an option...These are all things that have been coming up lately and the reps need to be reminded that they cannot do that. This is a general email that is going to everybody so please go over this information with your sales/verification/CS reps.")

- FTC-LW16-8067 (9/24/15 email from Vandewater to Karachopan and Eggen, brokers, and telemarketer re consumer falsely promised Lifewatch would send send return label if they cancelled).

    7.      Lifewatch often cancelled accounts upon request and refunded customers without charging for the equipment or receiving the equipment.

**PLAINTIFFS' RESPONSE TO STATEMENT 7**:  Disputed.

This is not an additional fact, but a response to PSMF at ¶ 22 in support of which Plaintiffs' cited the following evidence:

- Dkt. 24-3 at 25-29, PX 7, Cuomo Dec. Att. A (mother never agreed to service or received device, but told must return it or pay $475 to cancel service);

- Dkt. 24-3 at 38, PX 7, Cuomo Dec. Att. A (cannot find device supposedly sent to elderly father, but told must return it or pay $425 to stop monthly charges);

- Dkt. 24-3 at 43, PX 7, Cuomo Dec. Att. A (Lifewatch claimed it did not receive returned device, continued billing);

- Dkt. 25-14 at 3, PX 46, Lifshitz Dec. ¶ 6 ("He also said that [Lifewatch] would only cancel my account after I mailed the device back at my own expense.  I had previously been told that there would be no cost to returning the device.");

- Dkt. 25-18 at 6, Dkt. 19-1 at 28, PX 50 Mey Dec. ¶ 16 (if do not return device, charged $475);

- Dkt. 25-18 at 11, Dkt. 20-1 at 6, PX 50, Mey Dec. ¶ 31 ("Well, then, you know, we can't close out the account unless we get the equipment back…I said the collection efforts will continue.");

- Dkt. 25-24 at 4, PX 56, Rench Dec. ¶ 7 (consumer told he was responsible for paying return shipping until consumer threatened to "trash the device");

- FTC-LW16-8036 (4/13/15 email from Vandewater to telemarketer re consumer told Lifewatch would pay return shipping if she cancelled, "which we wont do")

- Dkt. 96-1 at 8-10, PX 89, Einikis Dec. Att. A (5/18/15 email from Vandewater at Lifewatch to undisclosed call centers stating "I have heard on recordings reps telling customers that we will send a prepaid label to send the unit back, we will not be doing that even if you ask, so please do not offer it as an option...These are all things that have been coming up lately and the reps need to be reminded that they cannot do that. This is a general email that is going to everybody so please go over this information with your sales/verification/CS reps.")

- FTC-LW16-8067 (9/24/15 email from Vandewater to Karachopan and Eggen, brokers, and telemarketer re consumer falsely promised Lifewatch would send send return label if they cancelled)

- Dkt. 66 at 8 (Lifewatch 2012 Profit & Loss statement shows total refunds, chargebacks, and other adjustments for all Lifewatch customers for entire year at only $329,833.05)

- Dkt. 66 at 16 (Lifewatch 2013 Profit & Loss statement shows total refunds, chargebacks, and other adjustments for all Lifewatch customers for entire year at only $1,557,909.22)

- Dkt. 66 at 8 (Lifewatch Profit & Loss statement for 2012 showing total equipment not returned as 50,018.13)

- Dkt. 66 at 16 (Lifewatch Profit & Loss statement for 2013 showing total equipment not returned as $101,157.70)

- FTC-LW16-3474 9/5/13 email from Sarai Baker email to Katie Sylvers, a manager at WWIS (and Roderick Boling's wife) reminding her that customer accounts could not be canceled until they returned their devices. Baker copied Sirlin and May on the email and concluded the email by saying "As always you guys do a great job." Sirlin subsequently forward the email to Roderick Boling.)

- FTC-LW16-3672-3673 10/30/13 email from Katie Sylvers to Doug Hallowell and other Lifewatch and Safe Home Security employees on October 30, 2013, which Baker forwarded to Sirlin and May. Stating that customer accounts could not be canceled until customers returned their devices)..

8.     In originating customer accounts for Lifewatch, outside sellers did not state that a friend, family member, health care provided, or other acquaintance of the consumer referred the consumer to Defendants, or purchased the medical alert system for the consumer.

**PLAINTIFFS' RESPONSE TO STATEMENT 8**:  Disputed.

This is not an additional fact, but a response to Plaintiffs Statement of Material Facts at ¶

9, which Plaintiffs' supported with the following evidence:

- Dkt. 21-2 at 41, PX 3, Tyndall Dec. Att. B ("…already referred by a friend or family member, we have a system waiting to be shipped to you");

- Dkt. 24-2 at 2-3, PX 6, Smith Dec. ¶ 4 (consumers reported that messages indicated device had already been purchased for consumer);

- Dkt. 24-3 at 32, PX 7, Cuomo Dec. ¶ 5, Att. A at 28 (elderly father told that "a family member wanted him to have this alarm unit");

- Dkt. 24-15 at 2, PX 19, Beyer Dec. ¶ 4 (elderly consumer convinced to purchase device because telemarketer claimed his doctor said he needed it);

- Dkt. 24-18 at 3, PX 22, Bourne Dec. ¶ 4 (telemarketer said "friends and family had gotten together and pre-paid for a medical alert devic on my behalf");

- Dkt. 24-19 at 2, PX 23, Bristow Dec. ¶ 4 (doctor, friend or family member recommended consumer get the device, and no charge because it had already been paid for);

- Dkt. 24-20 at 3, PX 24, Carson Dec. ¶ 4 (telemarketer said "a friend or relative probably ordered the device on my behalf");

- Dkt. 24-21 at 2, PX 25, Cattie Dec. ¶ 3 ("I repeated that I did not want a medical alert device, but the man told me that the person giving the gift would lose their money if I did not accept . . . .");

- Dkt. 24-23 at 2, PX 27, Clawson Dec. ¶ 3 ("you have been referred by a friend or relative to receive a free medical alert system");

- Dkt. 24-25 at 3, PX 29, D'Addario Dec. ¶¶ 5-7 (telemarketer said system already paid for);

- Dkt. 24-26 at 2, PX 30, Daniel Dec. ¶ 3 (multiple calls in which telemarketer said "a friend or family member had purchased a medical alert device as a gift for me");

- Dkt. 24-27 at 5, Dkt. 17-1 at 29, PX 31, deLoca Dec. ¶¶ 12, 13, 18, 19, 20 (received robocalls stating "Since you've already been referred by a medical professional, you are eligible for a personal medical alert system at no cost to you.");

- Dkt. 25-4 at 2, PX 36, Girard Dec. ¶ 4 (telemarketer said someone had already paid for device);

- Dkt. 25-5 at 2-3, PX 37, Gordon Dec. ¶¶ 4,5 (multiple robocalls saying "family member or friend" ordered device for me and telemarketer said company had gotten consumer's name from a family member);

- Dkt. 25-7 at 2, PX 39, Grigorian Dec. ¶ 3 ("medical professional had recommended me, or someone else in my family, for a medical alert device…device was already paid for");

- Dkt. 25-9 at 4, Dkt. 18-1 at 5, PX 41, James Dec. ¶ 8 ("Since you've already been referred by a friend or family member, we have a system waiting to be shipped out to you.");

- Dkt. 25-9 at 4-5, Dkt. 18-1 at 38, PX 41, James Dec. ¶ 9 (same);

- Dkt. 25-10 at 3, PX 42, Jensen Dec. ¶¶ 5-6 (system already paid for);

- Dkt. 25-11 at 3, PX 43, Jones Dec. ¶ 5 ("device already has been ordered…and paid for by a friend or family member");

- Dkt. 25-17 at 3, PX 49, Meehl Dec. ¶ 5 (telemarketer said friend or family member gave company my information);

- Dkt. 25-18 at 11, Dkt. 20-1 at 15, PX 50, Mey Dec. ¶ 32 ("Since you've already been referred by a medical professional, you're eligible for a personal medical alert system at no cost to you.");

- Dkt. 25-18 at 11, Dkt. 20-1 at 15, PX 50, Mey Dec. ¶ 33 (same);

- Dkt. 25-18 at 12-13, PX 50, Mey Dec. ¶¶ 36-42 (same);

- Dkt. 25-20 at 3-4, PX 52, Monaghan Dec. ¶¶ 5 & 7 (calls stating system already paid for);

- Dkt. 25-22 at 3, PX 54, Pierce Dec. ¶ 5 (same);

- Dkt. 25-24 at 2-4, PX 56, Rench Dec. ¶¶ 3-6 (telemarketer said that somebody had purchased it, and then specifically that hospice had paid for it);

- Dkt. 25-25 at 2, PX 57, Rivard Dec. ¶ 3 (dad told that someone had signed him up);

- Dkt. 25-26 at 2-3, PX 58, Savagian Dec. ¶¶ 4,5 ("a medical alert device had been ordered and paid for by a friend or family member" and telemarketer said device already paid for by a friend or family member);

- Dkt. 25-28 at 4, PX 60, Veysey Dec. ¶ 8 (telemarketer claimed to have gotten consumer's name from family member or friend);

- Dkt. 25-29 at 2, PX 61, Wagler Dec. ¶ 4 (same);

13

- Dkt. 51-1 at 21, PX 81 Braver Dec. Att. C (robocall from Lifewatch telemarketer received on 8/10/15 stating "Because you were referred by your doctor or primary care physician, your medical alert system has already been paid for"; to opt out of the call, the robocall states "Press five to notify your health care provider you have refused shipment");

- Dkt. 77-1 at 42, PX 86 Mey Dec. Att. E (consumer received robocall from Lifewatch telemarketer on 9/10/15 stating "Since you've already been referred to by a friend or family member, we have a system waiting to be shipped out to you.").

Moreover, the evidence Defendants' cite does not support their statement. The outside sellers affidavits are not probative. Of the 187 telemarketers Defendants admit to hiring, they submit affidavits from only 53. (*See* Dkt. 332-5.) Further, conclusory denials in an affidavit, without more, do not create an issue of fact. *See Brown v. Soc'y for the Pres. & Encouragement of Barber Shop Quartet Singing in Am., Inc.*, 13 Fed. Appx. 377, 380 (7th Cir. 2001) (affidavit containing conclusory, unsupported denials are not sufficient to raise genuine issues of fact for trial). Moreover, because the telemarketers were required to execute the affidavits <u>before</u> they made any sales for Defendants, the affidavits cannot create a dispute of fact about sales calls that occurred after they were signed.[1]

Further, the remaining evidence Defendants' cite in support of ¶ 8 does not overcome Plaintiffs' overwhelming evidence that the telemarketers made the misrepresentation. It only shows that certain scripts and certain calls did not contain the misrepresentation.

---

[1] (Tr. at 103:3 – 104:4. *See, e.g.*, Dkt. 87-2 at 24-42, 43-47 (contract executed 10/16/15, affidavit executed 10/19/15); Dkt. 87-2 at 48-65, 66-69 (contract executed 10/14/15, affidavit executed 10/15/15); Dkt. 87-2 at 70-87, 88 (contract executed 10/8/15, affidavit executed 10/9/2015); Dkt. 87-2 at 112-29, 130-33 (contract executed 9/15/15, affidavit 9/17/15); Dkt. 332-5 at 20-22 (contract executed 3/15/16, affidavit executed 3/16/16); Dkt. 332-5 at 57- 59 (contract executed 10/8/15, affidavit executed 10/9/15); Dkt. 332-5 at 81-83 (contract executed 10/16/15, affidavit executed 10/19/15); Dkt. 332-5 at 93-95 (contract executed 7/6/15, affidavit executed 7/14/15); Dkt. 332-5 at 118-120 (contract executed 1/27/17, affidavit executed 1/30/17); Dkt. 332-5 at 126-129 (contract executed 8/18/15, affidavit executed 8/26/15); Dkt. 332-5 at 138-140 (contract executed 7/10/15, affidavit executed 7/15/15); Dkt. 332-5 at 144-146 (contract executed 12/17/15, affidavit executed 12/18/15); Dkt. 332-5 at 174-176 (contract executed 8/27/15, affidavit executed 8/28/15); Dkt. 332-5 at 184-186 (contract executed 9/15/15, affidavit executed 9/17/15).

14

9.     In originating customer accounts for Lifewatch, outside sellers did not state that Lifewatch's medical alert system is endorsed by reputable organizations, including, but not limited to, the American Heart Association, the American Diabetes Association, and National Institute on Aging, the AARP, and the American Red Cross.

**PLAINTIFFS' RESPONSE TO STATEMENT 9**:  Disputed.

This is not an additional fact, but a response to Plaintiffs' Statement of Facts at ¶ 13, which Plaintiffs' supported with the following evidence:

- Dkt. 21-1 at 14, PX 2, France Dec. Att. A (telemarketer states "our device is trusted by more than 65,000 health care professionals");

- Dkt. 21-2 at 12, 42, PX 3, Tyndall Dec. Att. A (telemarketer states "our device is actually trusted by thousands of hospitals and 65,000 health care professionals") & Att. B (telemarketer states device recommended by 65,000 health care professionals);

- Dkt. 24-1 at 132, PX 5, Bradley Dec. ¶ 5, Att. D (telemarketer said "our device has been recommended by the American Heart Association, the American Diabetes Association, the National Institute of Aging…");

- Dkt. 24-27 at 3, Dkt. 16-2 at 27, PX 31 deLoca Dec. ¶ 7 (telemarketer said "our device has been recommended by the American Heart Association, the American Diabetes Association, the National Institute of Aging, and is trusted by thousands of hospitals and more than 65,000 health care professionals");

- Dkt. 24-27 at 3-4, Dkt. 17-1 at 7, PX 31 deLoca Dec. ¶ 8 , (same);

- Dkt. 25-3 at 3, PX 35, Gates Dec. ¶ 5 (telemarketer said endorsed by American Heart Association);

- Dkt. 25-9 at 4-5, Dkt. 18-1 at 40, PX 41 James Dec. ¶ 9 (telemarketer said trusted by thousands of hospitals and more than 65,000 health care professionals);

- Dkt. 25-10 at 3, 10, PX 42, Jensen Dec. ¶ 6, Att. A (robocall states system has "been recommended by thousands of hospitals and medical professionals");

- Dkt. 25-15 at 4, PX 47, McCourt ¶ 8 (telemarketer mentioned American Heart Association); Dkt. 25-18 at 8-9, Dkt. 19-1 at 64, PX 50 Mey Dec. ¶ 23 (telemarketer said trusted by thousands of hospitals and more than 65,000 health care professionals);

- Dkt. 25-18 at 10, Dkt. 19-2 at 4, PX 50 Mey Dec. ¶ 29 (same);

- Dkt. 25-18 at 11, Dkt. 20-1 at 17, PX 50 Mey Dec. ¶ 32 (same);

- Dkt. 25-18 at 12, Dkt. 20-1 at 67, PX 50 Mey Dec. ¶ 35 (same);

- Dkt. 25-20 at 3-4, PX 52, Monaghan Dec. ¶¶ 5, 7 ("recommended by thousands of hospitals and medical professionals");

- Dkt. 25-23 at 2, PX 55, Primm Dec. ¶¶ 3, 4 (robocalls and telemarketers claim endorsement by American Heart Association);

- Dkt. 26-8 at 8, PX 72, Levine Dec. Ex. B (telemarketer stated "our device has been recommended by the American Heart Association, the American Diabetes Association, the National Institute of Aging, and is trusted by thousands of hospitals and more than 65,000 health care professionals");

- Dkt. 26-8 at 17, PX 72, Levine Dec. Att. C (same);

- Dkt. 51-1 at 15-17, PX 81 Braver Dec. Att. B (5/7/12 letter from consumer to Sirlin informing him of three robocalls he received on behalf of Lifewatch, with spoofed caller IDs,that his number was registered on the DNC list, that the calls claimed endorsement by American Heart Association and American Diabetic Association, that the telemarketer eventually admitted he was working for Lifewatch, and that the robocalls failed to disclose the seller, purpose of the call, or the nature of the goods or services offered);

- Dkt. 77-1 at 42, PX 86 Mey Dec. Att. E (consumer received robocall from Lifewatch telemarketer on 9/10/15, telemarketer stated recommended by AARP and trusted by "thousands of doctors and hospitals around the country").

Further, the evidence Defendants' cite in support of ¶ 9 does not overcome Plaintiffs' overwhelming evidence that the telemarketers made the misrepresentation. It only shows that certain scripts and certain calls did not contain the misrepresentation.

10.     In originating customer accounts for Lifewatch, outside sellers did not state that consumers will not be charged the first monitoring fee until they have received and activated the medical alert system.

**PLAINTIFFS' RESPONSE TO STATEMENT 10**: Disputed.

This is not an additional fact, but a response to Plaintiffs' Statement of Facts at ¶ 17, which Plaintiffs' supported with the following evidence:

- Dkt. 21-2 at 43, PX 3, Tyndall Dec. Att. B at 6 ("the billing cycle, it doesn't start until you receive your equipment");

- Dkt. 14-3 at 2 PX 1, Menjivar Dec. Att. B (notes of consumer complaint to Worldwide "Agent told customer's daughter she could activate the system months down the road and would not be charged.");

- Dkt. 14-3 at 3 (notes of consumer complaint to Worldwide that consumer "was told I don't pay until I receive it");

- Dkt. 14-3 at 35 (notes of consumer complaint to Worldwide "Customer was told by Rep that she did not have to pay anything until after she tried out the system.");

- Dkt. 14-3 at 36 (notes of consumer complaint to Worldwide "Rep told consumer that she didn't have to pay today only when activated");

- Dkt. 15-2 at 24, PX 1, Menjivar Dec. Att. O (5/3/12 email from Lifewatch to Worldwide, copying Sirlin and Baker, discussing the "growing" problem of customers being told that they would not be charged until a later time);

- Dkt. 24-3 at 13, PX 7, Cuomo Dec. Att. A (consumer never received device, but told must return it or pay $475 to cancel service);

- Dkt. 24-27 at 3, Dkt. 16-2 at 29, PX 31, deLoca Dec. ¶ 7, (telemarketer said "billing cycle doesn't start until you receive the system and activate it.");

- Dkt. 25-16 at 3, PX 48, McCraw Dec. ¶ 5 (understanding was that she would only be charged after activation);

- Dkt. 25-18 at 4-5, Dkt. 18-2 at 38, Mey Dec. ¶ 10 ("your billing cycle would start when you receive it and activate it");

- Dkt. 25-18 at 11, Dkt. 20-1 at 17-18, Mey Dec. ¶ 32 ("The … medical system is free. The only thing we do is need to have your card on file so once you get it, you can talk to our representative and let you know, give you the confirmation number and tracking number and it will be right there.");

- Dkt. 25-18 at 47-48, Mey Dec. ¶ 33 ("The first month does not start until you receive [the device] and activate it.");

- Dkt. 25-19 at 2, PX 51, Miller ¶ 4 (told he would not be charged until received and activated device);

- Dkt. 26-8 at 8, PX 72, Levine Dec. Exs. B (telemarketer said "billing cycle does not start until you receive this system and activate it");

- Dkt. 26-8 at 17, Att. C ("your billing cycle does not statrt until you receive your system and activate it");

- Dkt. 26-8 at 28, Att. D ("[W]e just send out the system to you right now and then when you are financially ready to pay for it, ma'am, you can plug it in and that's when the activation fee starts to do [sic].").

Further, the evidence Defendants' cite in support of ¶ 10 does not overcome Plaintiffs' overwhelming evidence that the telemarketers made the misrepresentation. It only shows that certain scripts and certain calls did not contain the misrepresentation.

11. In originating customer accounts for Lifewatch, outside sellers did not state that consumers may cancel the monitoring service at any time without any further financial obligation.

**PLAINTIFFS' RESPONSE TO STATEMENT 11**: Disputed.

This is not an additional fact, but a response to Plaintiffs' Statement of Facts at ¶ 21, which Plaintiffs' supported with the following evidence:

- Dkt. 21-1 at 17-18, PX 2, France Dec. Att. A ("You can cancel at any time with no cancellation fees and no questions asked . . . because you're not under any contracts"; ("the only thing that you will be agreeing to today is just to try out the system for a month"; "return the equipment at no cost to you");

- Dkt. 21-1 at 59, Att. F ("You understand there's no contract. You can cancel at any time…if you choose after that first month that you don't want to use it anymore, you just simply put it all back in the box, send it back and you would no longer have any charge.");

- Dkt. 21-2 at 44, PX 3, Tyndall Dec. Att. B ("They pay for the [return] shipping, don't worry.") & Att. G at 11 ("there's no shipping fee back");

- Dkt. 24-1 at 133, PX 5, Bradley Att. D ("Also, there's no contract whatsoever and you can cancel at any time with no cancellation fees.");

- Dkt. 24-2 at 3, PX 6, Smith Dec. ¶ 6 (telemarketer said "the company even paid for return shipping.");

- Dkt. 24-27 at 3, Dkt. 16-2 at 29, 44, PX 31 deLoca Dec. ¶ 7 ("there is absolutely no contract whatsoever, and you can cancel at any time with no cancellation fee"; "[I]f you don't like the system you can always return it….And we'll pay for the shipping.");

18

- Dkt. 24-27 at 4, Dkt. 17-1 at 21, PX 31 deLoca Dec. ¶ 9 ("remember, you can cancel at any time with no – with no questions asked");

- Dkt. 24-27 at 5, Dkt. 17-1 at 30, PX 31 deLoca Dec. ¶ 13 ("You're not signing any contracts. There's no contracts to sign.");

- Dkt. 24-27 at 5-6, Dkt. 17-1 at 57, PX 31 deLoca Dec. ¶ 15 ("because there's no commitment, so you could send it back at any time…

- [t]he shipment's free"; "there is no contract, and you can cancel at any time with no cancellation fee");

- Dkt. 25-2 at 4, PX 34, Felker Dec. ¶ 8 ("The representatives told me that I could only cancel our account with the company if I sent back the two devices at my own expense. I was not told during the initial sales call that I would have to pay to ship the devices back.");

- Dkt. 25-9 at 3, Dkt. 17-2 at 6, PX 41 James Dec. ¶ 4 ("there's no contract against you or cancellation fees");

- Dkt. 25-9 at 4, Dkt. 18-1 at 13, PX 41 James Dec. ¶ 8 ("There are absolutely no contracts. You can cancel at any time with no cancellation fees and everything else is completely free...there's no contract or cancellation fee.");

- Dkt. 25-9 at 4-5, Dkt. 18-1 at 41, PX 41 James Dec. ¶ 9 (same);

- Dkt. 25-18 at 3, Dkt. 18-1 at 62, PX 50, Mey Dec. ¶ 6 ("You're not on a contract, so you don't have to keep it all. If you don't like it for any reason, that's fine. You can simply call the 1-800 number and cancel.");

- Dkt. 25-18 at 4-5, Dkt. 18-2 at 34, 44, PX 50, Mey Dec. ¶ 10 ("absolutely no contracts whatsoever"; return label will come with package so "All you do is go ahead and put the label on there and ship it back to us, okay?");

- Dkt. 25-18 at 6, Dkt. 19-1 at 7, PX 50, Mey Dec. ¶ 15 ("no contract, ma'am, no cancellation fees…You have the option to cancel at any given time you choose, no questions asked…We also send you out the return label, so that way you can do that.");

- Dkt. 25-18 at 7, PX 50, Mey Dec. ¶ 18 (told no contract);

- Dkt. 25-18 at 8, Dkt. 19-1 at 41, 42, PX 50, Mey Dec. ¶ 21 ("we're so confident with our services that we do not keep any contracts. This allows you to cancel at any time with no cancellation fees and with no penalties"; "you call us up, we pay for shipping, we send you the shipping labels and the shipping box, and you simply send it back completely free of charge…Would you like to go ahead and test out this system for one month, and if you're not satisfied, send it back, completely free of charge?");

- Dkt. 25-18 at 5-6, Dkt. 19-1 at 65, PX 50, Mey Dec. ¶ 23 ("there ain't no contracts and it can be canceled at any given time with no cancellation fees");

- Dkt. 25-18 at 11, Dkt. 20-1 at 18-19, PX 50, Mey Dec. ¶ 32 ("You can try it out for 30 days, and if you don't like it, you can send it back with no cancellation fee.");

- Dkt. 25-18 at 12, Dkt. 20-1 at 68, PX 50, Mey Dec. ¶ 32 ("the only thing you are agreeing with us today is to try it out for at least a month or two.");

- Dkt. 25-18 at 4, Dkt. 18-2 at 21, PX 50 Mey Dec. ¶ 8 (telemarketer said "as long as you keep the equipment, you're continuously going to be charged");

- Dkt. 25-30 at 3, PX 62, Westerbrook Dec. ¶ 8 ("They never told me during the original sales call that I would have to pay to ship the equipment back to get the charges to stop.");

- Dkt. 51-3 at 28, PX 83, Mey Dec. Att. B (telemarketer on 7/29/15, stated "There's no cancellation fees and no contract.");

- Dkt. 77-1 at 45, PX 86 Mey Dec. Att. E (consumer received robocall from Lifewatch telemarketer on 9/10/15, telemarketer stated "there are no cancellation fees, and you may cancel at any time that you choose");

- PX 95, Declaration of Forest Horne ¶ 3 (on 9/14/17, consumer received robocall to his cell phone from telemarketer who admitted he was working for Lifewatch, promising free medical alert device).

Further, the remaining evidence Defendants' cite in support of ¶ 11 does not overcome Plaintiffs' overwhelming evidence that the telemarketers made the misrepresentation. It only shows that certain scripts and certain calls did not contain the misrepresentation.

12. In originating customer accounts for Lifewatch, outside sellers did not engage in violative telemarketing practices.

**PLAINTIFFS' RESPONSE TO STATEMENT 12**: Disputed.

This is not an additional fact, but a response to Plaintiffs' Statement of Facts at ¶¶ 9, 13, 17, 21, 26, 29, 31, 33, 35, 36, 37, and 39, which Plaintiffs' supported with voluminous evidences. *See* Dkt. 244, PSMF ¶¶ 9, 13, 17, 21, 26, 29, 31, 33, 35, 36, 37, and 39. Further, the outside sellers affidavits are not probative. Of the 187 telemarketers Defendants admit to hiring,

20

they submit affidavits from only 53.  (*See* Dkt. 332-5.)  Further, conclusory denials in an affidavit, without more, do not create an issue of fact.  *See Brown v. Soc'y for the Pres. & Encouragement of Barber Shop Quartet Singing in Am., Inc.*, 13 Fed. Appx. 377, 380 (7th Cir. 2001)  (affidavit containing conclusory, unsupported denials are not sufficient to raise genuine issues of fact for trial).  Moreover, because the telemarketers were required to execute the affidavits <u>before</u> they made any sales for Defendants, the affidavits cannot create a dispute of fact about sales calls that occurred after they were signed.[2]

13.    Lifewatch's quality control program successfully curtailed customer origination through violative practices.

**PLAINTIFFS' RESPONSE TO STATEMENT 13**:  Disputed.

First, the Court should not consider FTC-LW16-5402-06, FTC-LW16-2966, FTC-LW16-008075-80, FTC-LW16-8010, and Ex. H, because these documents are inadmissible hearsay. Moreover, the remaining documents do not support the statement that any purported quality control program successfully curtailed customer origination through violative practices.  Indeed, the evidence shows the opposite.  *See* Dkt. 244, PSMF ¶¶ 9, 13, 17, 21, 26, 29, 31, 33, 35, 36, 37, and 39.

14.    Lifewatch maintained and distributed an internal DNC List.

---

[2] (Tr. at 103:3 – 104:4.  *See, e.g.*, Dkt. 87-2 at 24-42, 43-47 (contract executed 10/16/15, affidavit executed 10/19/15); Dkt. 87-2 at 48-65, 66-69 (contract executed 10/14/15, affidavit executed 10/15/15); Dkt. 87-2 at 70-87, 88 (contract executed 10/8/15, affidavit executed 10/9/2015); Dkt. 87-2 at 112-29, 130-33 (contract executed 9/15/15, affidavit 9/17/15); Dkt. 332-5 at 20-22 (contract executed 3/15/16, affidavit executed 3/16/16); Dkt. 332-5 at 57- 59 (contract executed 10/8/15, affidavit executed 10/9/15); Dkt. 332-5 at 81-83 (contract executed 10/16/15, affidavit executed 10/19/15); Dkt. 332-5 at 93-95 (contract executed 7/6/15, affidavit executed 7/14/15); Dkt. 332-5 at 118-120 (contract executed 1/27/17, affidavit executed 1/30/17); Dkt. 332-5 at 126-129 (contract executed 8/18/15, affidavit executed 8/26/15); Dkt. 332-5 at 138-140 (contract executed 7/10/15, affidavit executed 7/15/15); Dkt. 332-5 at 144-146 (contract executed 12/17/15, affidavit executed 12/18/15); Dkt. 332-5 at 174-176 (contract executed 8/27/15, affidavit executed 8/28/15); Dkt. 332-5 at 184-186 (contract executed 9/15/15, affidavit executed 9/17/15).

**PLAINTIFFS' RESPONSE TO STATEMENT 14**:  Undisputed.

15.     Of the customer declarations disclosed by plaintiffs, only 14 were customers (or were linked to customers) and thus appeared in Lifewatch's customer data base (i.e. 0.02%).  14 accounts were originated by approximately 4 outside sellers (out of the hundreds used by Lifewatch) including Worldwide Info Services or its d/b/a/ companies.

**PLAINTIFFS' RESPONSE TO STATEMENT 15**:  Undisputed.

16.     Lifewatch sent out a refund letter to 8,000 customers obtained through the Worldwide defendants.  0.68% requested and received refunds.

**PLAINTIFFS' RESPONSE TO STATEMENT 16**:  Disputed.

- FTC-LW16-4498-4500 (4/28/14 email from Baker to Roman stating that they had received only 12 calls from first 500 letters sent to consumers)

- FTC-LW16-4578-4580 (5/20/14 email from Baker to Roman reporting that they had received only 16 calls from first 1000 letters sent)

- FTC-LW16-4833-4838 (8/11/14 email chain between various Lifewatch and Safe Home Security customer service personnel, Baker, and Hallowell, discussing how letter sent to WWIS customers did not specify how much of a refund consumers would receive and concluding that customer would only get refund for 3 months)

- FTC-LW16-4866-4873 (8/24/14 emails between Baker and Lifewatch customer service manager discussing limiting refunds to 2-3 months).

17.     Lifewatch often sent shipping labels to customers, upon request, so they would not have to pay return shipping.

**PLAINTIFFS' RESPONSE TO STATEMENT 17**:  Undisputed.

18.     Mitchel May refined the quality control program to ensure that violative customer origination did not occur.

**PLAINTIFFS' RESPONSE TO STATEMENT 18**:  Undisputed in part and disputed in part.  Plaintiffs do not dispute that Defendant May refined the quality control program.  However, Plaintiffs dispute the implication that the quality control program was effective.  That

the quality control program was ineffective is demonstrated by the fact that violative conduct continued. *See* Dkt. 244, PSMF ¶¶ 9, 13, 17, 21, 26, 29, 31, 33, 35, 36, 37, and 39.

Further, the Court should not consider documents LW16-8010 and Exh. H because these documents are inadmissible hearsay. Additionally, outside sellers affidavits are not probative. Of the 187 telemarketers Defendants admit to hiring, they submit affidavits from only 53. (*See* Dkt. 332-5.) Further, conclusory denials in an affidavit, without more, do not create an issue of fact. *See Brown v. Soc'y for the Pres. & Encouragement of Barber Shop Quartet Singing in Am., Inc.*, 13 Fed. Appx. 377, 380 (7th Cir. 2001) (affidavit containing conclusory, unsupported denials are not sufficient to raise genuine issues of fact for trial). Moreover, because the telemarketers were required to execute the affidavits <u>before</u> they made any sales for Defendants, the affidavits cannot create a dispute of fact about sales calls that occurred after they were signed.[3] Finally, the affidavits of the telemarketers do not support the statement because none of the affidavits mention Defendant May.

19.    David Roman refined the quality control program to ensure that violative customer origination did not occur.

**PLAINTIFFS' RESPONSE TO STATEMENT 19**: Undisputed in part and disputed in part. Plaintiffs do not dispute that Defendant Roman refined the quality control program.

---

[3] (Tr. at 103:3 – 104:4. *See, e.g.*, Dkt. 87-2 at 24-42, 43-47 (contract executed 10/16/15, affidavit executed 10/19/15); Dkt. 87-2 at 48-65, 66-69 (contract executed 10/14/15, affidavit executed 10/15/15); Dkt. 87-2 at 70-87, 88 (contract executed 10/8/15, affidavit executed 10/9/2015); Dkt. 87-2 at 112-29, 130-33 (contract executed 9/15/15, affidavit 9/17/15); Dkt. 332-5 at 20-22 (contract executed 3/15/16, affidavit executed 3/16/16); Dkt. 332-5 at 57- 59 (contract executed 10/8/15, affidavit executed 10/9/15); Dkt. 332-5 at 81-83 (contract executed 10/16/15, affidavit executed 10/19/15); Dkt. 332-5 at 93-95 (contract executed 7/6/15, affidavit executed 7/14/15); Dkt. 332-5 at 118-120 (contract executed 1/27/17, affidavit executed 1/30/17); Dkt. 332-5 at 126-129 (contract executed 8/18/15, affidavit executed 8/26/15); Dkt. 332-5 at 138-140 (contract executed 7/10/15, affidavit executed 7/15/15); Dkt. 332-5 at 144-146 (contract executed 12/17/15, affidavit executed 12/18/15); Dkt. 332-5 at 174-176 (contract executed 8/27/15, affidavit executed 8/28/15); Dkt. 332-5 at 184-186 (contract executed 9/15/15, affidavit executed 9/17/15).

However, Plaintiffs dispute the implication that the quality control program was effective. That the quality control program was ineffective is demonstrated by the fact that violative conduct continued. *See* Dkt. 244, PSMF ¶¶ 9, 13, 17, 21, 26, 29, 31, 33, 35, 36, 37, and 39.

Further, the Court should not consider documents FTC-LW-16-0003387, LW16-8010, and Exh. H because these documents are inadmissible hearsay.

20.      Defendants generated revenue by selling customer accounts to third party entities.

**PLAINTIFFS' RESPONSE TO STATEMENT 20**:  Undisputed.

21.      Defendants have an inability to pay the amounts requested

**PLAINTIFFS' RESPONSE TO STATEMENT 21**:  Disputed.

This is not a material fact. Unlike all cases cited by Defendants in their legal briefs in this matter, there is no authority to support claim that inability to pay is a valid defense to a restitution claim under the FTC Act or FDUTPA. *See, e.g., U.S. v. Peden*, 872 F.2d 1303, 1310-1311 (7th Cir. 1989) (criminal restitution statute requires consideration of defendant's financial needs and earning ability); *U.S. v. Dish Network LLC*, 256 F. Supp. 3d 810, 943 (C.D. Ill. 2017) (ability to pay may be considered in civil penalty calculation). After the Court enters a monetary judgment against Defendants, their inability to pay may be a valid defense to a contempt action for failing to pay such judgment. *See, e.g., In re Gallo*, 573 F.3d 433, 4414 (7th Cir. 2009). But even in those limited contexts in which courts will consider a defendants' inability to pay, the defendant bears the burden of production in establishing such a claim, and a bare affidavit without extensive supporting documentation, does not satisfy that burden. *See Central States, Southeast & Southwest Areas Health & Welfare Fund v. Lewis*, 745 F.3d 283, 287 (7th Cir. 2014) ("The defendants may think that a mere assertion of inability to pay made in an affidavit (and thus under oath) precludes a finding of contempt. Not so.") (parentheses in original); *FTC v.*

24

*Trudeau*, No. 03 C 3904, 2013 U.S. Dist. LEXIS 30106, at *3 (N.D. Ill. March 6, 2013) ("Self-serving statements of financial hardship or indigence, absent corroboration by third parties or financial records including tax returns, bank statements and cancelled checks do not satisfy this burden of production."); *CFTC v. Lake Shore Asset Management*, No. 07 C 3598, 2007 U.S. Dist. LEXIS 90963, at *22 (N.D. Ill. Dec. 10, 2007) ("the court is not required to accept [defendant's] bald assertion that it lacks the financial ability to pay any fine.").

22.     Safe Home Security has not sold personal emergency response systems.

**PLAINTIFFS' RESPONSE TO STATEMENT 22**:  Disputed.

Plaintiffs dispute this fact to the extent that Defendants are implying that Safe Home Security is not a "seller" as that term is defined in the Telemarketing Sales Rule16 C.F.R. § 310.02(ee).

23.     Roman is the only individual defendant that has ever held an ownership interest in Safe Home Security, Inc. or that has ever been an officer or employee of Safe Home Security, Inc.

**PLAINTIFFS' RESPONSE TO STATEMENT 23**:  Disputed.

Plaintiffs asked for documents identifying all owners, officers, and employees, of Safe Home Security, Inc., none were ever produced.

24.     Safe Home Security, Inc. did not share office space, officers, or personnel with Lifewatch at any time before May 31, 2013.

**PLAINTIFFS' RESPONSE TO STATEMENT 24**:  Disputed.

This is not an additional fact, but a response to PSMF at ¶¶ 95, 96, and 97, which Plaintiffs' supported with the following evidence:

- FTC-LW16-2338-2340 (3/7/13 email from Hallowell to Lifewatch dictating how Lifewatch's collection letters need to be changed)

25

- FTC-LW16-3167-3169 (7/5/13 email from Hallowell to Roman informing Roman of the telemarketers using a 30 day free trial);

- FTC-LW16-3247-3248 (7/29/13 email from Hallowell to Oliveri and Baker regarding "us generating the invoices or making the process simpler" in response to Baker's email about the high cost of generating paper invoices);

- FTC-LW16-3250-3324 (8/1/13 email from Oliveri to Hallowell and Baker, attaching Lifewatch's delinquent account and disputed accounts reports in anticipation of a their call);

- FTC-LW16-3369 (8/7/13 email from Hallowell to Baker and Oliveri ordering staffing changes in Lifewatch's collections department);

- FTC-LW16-3371-3376 (8/3/13 email from Hallowell, on Roman's behalf, to Oliveri ordering changes in Lifewatch's prorated refund policy);

- FTC-LW16-3378-3380 (8/8/13 email from Hallowell to Baker, Oliveri, Alex Lindsley, Kevin Carducci, Sara Weaver, and May, copying Roman, instructing Lifewatch on how prorated refunds should be handled);

- FTC-LW16-3381-3382 (8/9/13 email from Hallowell to Oliveri stating that directive that the collections employee be terminated comes directly from Roman)

- FTC-LW16-3384-3386 (8/12/13 email from Hallowell to Baker stating that Lifewatch policy of increasing prices without notice are illegal and may invite state AG scrutiny);

- FTC-LW16-3393 (8/14/13 email from Hallowell to Oliveri dictating collections procedures);

- FTC-LW16-3414-3415 (8/27/13 email from Hallowell to Oliveri instructing her on collection methods);

- FTC-LW16-3423-3425 (8/29/13 email from Wajdowicz to Oliveri stating that the collection phones for Lifewatch are on their way);

- FTC-LW16-3461-3464 (8/30/13 email from Wajdowicz to Oliveri regarding new delivery of collection phones);

- FTC-LW16-3472-3473 (9/4/13 email from exchange between Wajdowicz to Oliveri, Hallowell, and Baker setting up training on a new phone system);

- FTC-LW16-3555-3559 (9/23/13 email from Hallowell to Sirlin and Baker regarding Hallowell reassigning Lifewatch's customer service supervisor, Cohen);

- FTC-LW16-3561-3562 (9/24/13 email from Baker to Hallowell regarding Hallowell's closing Lifewatch's collections department);

- FTC-LW16-3582-3583 (10/2/13 email from monitoring company to Baker stating that any request for dealer contacts needs to come from Safe Home Security);

- FTC-LW16-3626-3627 (10/16/13 email from Hallowell to Sirlin stating that "we do not wish to continue any intro rate pricing of any kind.");

- FTC-LW16-3633 (10/17/13 email from Sirlin implementing Hallowell's discontinuation of special pricing);

- FTC-LW16-3655 (10/23/13 email from Hallowell to Alex Lindsley and Baker stating customer service and final decision making authority will rest with Hallowell);

- FTC-LW16-3658 (10/24/13 email from Hallowell to Cohen telling Cohen to write up an employee and to tell the employee next time she'll be fired);

- FTC-LW16-3672-3673 (10/30/13 email from Katie Sylvers at Worldwide to Hallowell regarding the call centers handling their own refund requests);

- FTC-LW16-3676-3677 (10/30/13 email from Oliveri to Hallowell enclosing an A/R aging report for Lifewatch);

- FTC-LW16-3682 – 3685 (11/1/13 email from Hallowell to Sirlin, May, Roman, and Baker, complaining about Boling not returning Hallowell's calls);

- FTC-LW16-3691-3695 (11/1/13 email from Hallowell to Baker, Sirlin, May, and Roman complaining that his call to Boling was not returned);

- FTC-LW16-3698-3701 (11/14/13 email from Hallowell to Baker dated November 14, 2013, stating that Roman says that call centers to handle their own chargebacks every day);

- FTC-LW16-3712 (11/7/13 email from Hallowell to Sirlin, complaining that Long Island employees are not making collection calls);

- FTC-LW16-3721-3724 (11/11/13 email from Hallowell to Sirlin questioning whether consumers have complained about possibly deceptive pricing);

- FTC-LW16-3725-3726 (11/12/13 email from Hallowell to Oliveri stating that Roman wants the offices to split collection efforts);

- FTC-LW16-3727-3729 (11/12/13 email from Hallowell to Oliveri, copying May and Roman ordering the termination of certain Lifewatch employees);

- FTC-LW16-3752 (11/15/13 email from Hallowell to Alex Lindsley, Sara Weaver, Kevin Carducci, May, Sirlin, Baker, and Roman dictating buyout policy on Lifewatch contracts);

- FTC-LW16-3763-3764 (11/18/13 email from Hallowell to Roman, Sirlin, and Baker, recommending contract terms to Lifewatch);

- FTC-LW16-3876-3879 (1/7/14 email from Sirlin to Roman, copying May, noting that Lifewatch employees are reporting directly to Hallowell, that Hallowell is managing Lifewatch collections and customer service, and Wajdowicz is managing Lifewatch CRM and shipping);

- FTC-LW16-3880-81 (1/7/14 email from Hallowell to May, Roman, Sirlin, and Oliveri, noting that he had transferred a Lifewatch employee from working for Oliveri to Lifewatch customer service);

- FTC-LW16-4126-4128 (2/4/14 email from Hallowell to Lifewatch employees announcing change in customer service management);

- FTC-LW16-4151 (2/11/14 email from Wajdowicz Oliveri to Lifewatch employees, May, Sirlin, Roman, and Cleasby stating that he has arranged for all Lifewatch e-check transactions to go through an SHS/Medguard processor);

- FTC-LW16-4182 – 4185 (2/14/14 email from Kevin Carducci to Cohen, arranging for SHS to install PERS equipment);

- FTC-LW16-4186-4190 (2/14/14 email exchange between Sirlin and Hallowell regarding Lifewatch personnel changes ordered by Hallowell, and Hallowell describing Lifewatch as "we" in discussing the bad press created regarding the closing down of Worldwide);

- FTC-LW16-4204 (2/17/14 email from Hallowell to Cohen, Baker, Sara Weaver, Kevin Carducci, and Christopher Knight referring to Lifewatch as "our Company.");

- FTC-LW16-4231-4234 (2/20/14 email from Hallowell to Duran regarding how to code SHS referrals);

- FTC-LW16-4235 – 4238 (2/20/14 email from Hallowell to Roman and Sirlin stating that he will now review BBB Complaints);

- FTC-LW16-4257-4260 (2/28/14 email from Hallowell to Baker and Sirlin, stating that Lifewatch should stop sending pre-paid envelopes to consumers);

- FTC-LW16-4395-4396 (4/7/14 email from Wajdowicz to Lifewatch and Medguard representatives, including Roman, May, Hallowell, and others, setting up telephone conference to discuss roll out of new product signed as "Chief Information Officer, Safe Home Security");

- FTC-LW16-4397 – 4398 (4/9/14 email from Baker to May, copying Sirlin, saying she is "completely shocked" that they are agreeing with Hallowell to continue to bill consumers Lifewatch knows have not activated their devices; states "You both understand this is where disputes/charge backs, BBB, AG complaints come from, right???????");

- FTC-LW16-4420-4431 (4/10/14 email chain involving Christine Witzgall (Safe Home Security Accounting), Wajdowicz (SHS CIO), Duran, Lifewatch CRM Analyst, Nicole Simeona, Lifewatch Accounting Supervisor, Jeanie Gallagher, Lifewatch Chargeback/Dispute Coordinator, May, Hallowell, and Cleasby, re coordinated review of "Medguard disputes and chargebacks");

- FTC-LW16-4449-4450 (4/14/14 email from Hallowell to Sirlin, May, and Baker, stating that their processor says they cannot answer the phone or have a message that says "Lifewatch");

- FTC-LW16-4657-4659 (6/27/14 email from Hallowell to Baker, copying May and Roman, stating that Roman wants to move Lifewatch employees to be on the same commission schedule as "we are");

- FTC-LW16-4774 – 4775 (7/23/14 email from Hallowell to Baker and Cohen, copying Roman and SHS employees, attaching his revised Lifewatch scripts);

- FTC-LW16-4796 (7/29/14 email from Hallowell to SHS Payroll manager, informing her that he suspended a Lifewatch employee);

- FTC-LW16-4808 (7/31/14 email from Hallowell to all users@safehomesecurityinc.com, Baker, Cohen and Sirlin ordering Lifewatch staffing reassignments);

- FTC-LW16-4820 – 4822 (8/1/14 email from Hallowell to Baker. Copying Wajdowicz, making change to Lifewatch script);

- FTC-LW16-6351 – 6355 (12/2/15 email from Lifewatch accounting supervisor to Wajdowicz, SHS CIO, asking why Lifewatch customer was billed in advance of their due date);

- FTC-LW16-6410 – 6412 (12/15/15 email from Hallowell to Oliveri, reassigning Lifewatch billing responsibilities);

- FTC-LW16-6438-6446 (12/17/15 email exchange between Wajdowicz, Roman, Baker, and Oliveri regrding Wajdowicz doing Lifewatch's billing);

- FTC-LW16-6887 – 6889 (9/20/16 email exchange between Hallowell, Sirlin, and Cohen regarding Hallowell responding to Lifewatch BBB complaints);

- FTC-LW16-6964 – 6968 (10/14/16 email from Hallowell to Cohen stating that he should review all BBB complaints);

- PX 101, Transcript of Deposition of Hallowell on August 1, 2017, at 7, 11-12 (Hallowell testifying that while he is not employed by Lifewatch, Safe Home Security, or MedGuard Alert, he oversees customer service, collections, confirmation, and shipping for MedGuard).

- FTC-LW16-3053 (6/14/13 email from Kevin Carducci, with signature block "Account Manager, MedGuard Alert, but but with email address @safehomesecurityinc.com, and lists website www.safehomesecurityinc.com, to Cohen, asking that only billing and cancel calls be sent to him);

- FTC-LW16-3167-69 (7/5/13 email from Roman to Sirlin and May, relating to list of refunds for consumers falsely promised a "30 day free trial," including emails from Sara Weaver and Myles Tripp, both of whom have signature blocks stating "Lifewatch," but have email addresses @safehomesecurityinc.com, and list website www.safehomesecurityinc.com,);

- FTC-LW16-3211-3213 (7/11/13 email from Kevin Carducci, with signature block "Customer Service Manager, Lifewatch," but with email address @safehomesecurityinc.com, and lists website of www.safehomesecurityinc.com, to Baker relaying his conversation with a call center and giving her instruction on how to handle the call center);

- FTC-LW16-3219 (7/17/13 email from Lisa Benzola to all Lifewatch employees stating that Lifewatch recently merged with Safe Home Security and signing it "Management");

- FTC-LW16-3403-3407 (8/23/13 email from Vandewater to Catherine Gechran, who has signature block stating "Lifewatch," but has email address @safehomesecurityinc.com, and lists website www.safehomesecurityinc.com, and is described in attached CRM printout notes for Worldwide customer whose unit was shipped by Lifewatch, as SHS employee);

- FTC-LW16-3470-71 (9/14/13 email from Sirlin to Baker, including emails relating to Worldwide customer, who was told that her children ordered device for her, including emails from Sara Weaver and Natalia Iwanczuk, both of whome include signature block stating "Lifewatch," but have email addresses @safehomesecurityinc.com, and list website www.safehomesecurityinc.com,);

- FTC-LW16-3620-3622 (10/11/13 email from Sirlin responding to email from Baker to Sirlin and May, regarding customer told that billing would not start until unit was activated, reported by Kevin Carducci, describing self as Lifewatch Customer Service Manager but with email address of KCarducci@safehomesecurityinc.com, to Sara Weaver, who describes herself as working for Lifewatch in signature block, but has email address of SWeaver@safehomesecurityinc.com, who reported issue to Hallowell);

- FTC-LW16-3620-3622 (10/12/13 email from Baker to May, copying Sirlin, regarding customer who "was definitely confused and shouldnever have been sent the system," including emails from Sara Weaver, Kevin Carducci, and Jeffrey Schweiger, all of whom have signature blocks stating "Lifewatch," but have email addresses @safehomesecurityinc.com, and list website www.safehomesecurityinc.com,);

- FTC-LW16-3624-25 (10/16/13 email from Hallowell to Sirlin relating to Lifewatch customer promised a gift card, including emails from Sara Weaver and Christoher

Knight, both of whom have signature blocks stating "Lifewatch," but have email addresses @safehomesecurityinc.com, and list website www.safehomesecurityinc.com,);

- FTC-LW16-4708-4709 (7/8/14 email from Hallowell to Baker, enclosing list of Lifewatch employees being billed on SHS's dental insurance);

- FTC-LW16-5509-12 (3/3/15 email from Carmello Bello, whose signature block says "Lifewatch Confirmation," but has has email address @safehomesecurityinc.com, and lists website www.safehomesecurityinc.com, to Hallowell, Sirlin, and other Lifewatch employees, explaining that 5-10 customers per day complain to Bello that they did not know there would be a monthly charge);

- FTC-LW16-5584-85 (1/27/15 email from consumer to Lifewatch customer relations manager,noting he spoke to Sara Emond, who described herself as Lifewatch "confirmer," but has email address @safehomesecurityinc.com);

- FTC-LW16-6614, 6617-6618 (4/13/16 email from Roman to Gladys Santiago and Oliveri dictating that SHS employee, who is working at Lifewatch office in Lynbrook, be moved to either Lifewatch or Medguard payroll);

- FTC-LW16-7438-7449 (7/9/15 email from Lifewatch Director of Human Resources to Oliveri, enclosing weekly payroll journal for Lifewatch, including only 4 of the 36 Lifewatch employees listed on FTC-LW16-7438 as Lifewatch-Middle Street employee list, 2 of which were also listed on Lifewatch-Long Island employee list; all 48 employees on Lifewatch-Long Island employee list included in payroll journal);

- FTC-LW16-7450-52 (7/17/15 email from Cohen to various Lifewatch employees, enclosing phone lists for Lifewatch-Middle Street and Lifewatch-Long Island, showing 31 out of 36 employees at Middle Street with email addresses @safehomesecurityinc.com);

- FTC-LW16-7464, 7472 (1/6/16 email from Cleasb to Oliveri and Christopher Parisi, enclosing payroll statements for MedGuard Alert, including for period 12/6/14 through 12/19/14, listing the following employees who have Lifewatch signature blocks and email addresses @safehomesecurityinc.com: Kevin Carducci, Emily Duda, Sara Emond, Megan Gibbons, Vanessa Green, Kathleen Hernandez, Susan Hill, Emanuela R. Imme, Magaly Infante, Kathleen Larocque, Flavio Mastrodomeico, Valdez Reid, Ivana Schulman, Jeffrey Schweiger, Larry Tucker, Sara Weaver);

- MG 0001 – MG0006 MedGuard Employee List (MedGuard Employee Lists 2013 – 2016 show the following employees who have Lifewatch signature blocks, and email addresses @safehomesecurityinc.com: Kevin Carducci, Sara Emond, Catherine Gecheran, Natalia Iwanczuk, Christopher Knight, Valdez Reid, Jeffrey Schweiger, Myles Tripp, Sara Weaver, Carmello Bello, Vanessa Brillant, Emily Duda, Jenn Groff);

- PX 101, Transcript of Deposition of Hallowell on August 1, 2017, at 7, 11-12 (Hallowell testifying that while he is not employed by Lifewatch, Safe Home Security, or MedGuard

Alert, he oversees MedGuard managers for customer service, collections, confirmation, and shipping, including Kevin Carducci and Cathy Hernandez).

- Dkt. 25-9 at 3, PX 41, James Dec. ¶¶ 5-6, Dkt. 17-2 at 25 (Lifewatch customer service representative stating that office is at 975 Middle St., Middletown, Connecticut);

- Dkt. 25-9 at 3, Dkt. 17-2 at 39-40 (Lifewatch customer service department phone number playing recorded message thanking caller for calling Safe Home Security);

- Dkt. 25-18, PX 50, Mey Dec. at ¶¶ 31, 34, Dkt. 20-1 at 7 (Lifewatch's customer service representative stating office in Connecticut);

- Dkt. 25-18, PX 50, Mey Dec. at ¶¶ 31, 34, Dkt. 20-1 at 56 (same);

- FTC-LW16-3387-3388 (8/13/13 email from Roman to Sara Weaver, Wajdowicz, Baker, Hallowell, Sirlin, and May regarding Roman's observations from his time spent at Lifewatch Middletown);

- FTC-LW16-6586-6591 (4/5/16 email from Hallowell to Baker instructing Baker to use his name and address at Sebethe as contact person for Medguard);

- *Bank v. Lifewatch Inc., et al.*, No. 1:15-cv-2278 (E.D.N.Y. filed Apr. 22, 2015) (complaint alleging telemarketer gave SHS's address as the headquarters for the seller of the medical alert device being offered) corroborated by Bank Declaration filed in support of Plaintiffs' Memorandum in Opposition to Defendants' Motion to Strike (Dkt. 336-2).

25.     Safe Home Security, Inc. and Lifewatch Inc. have not shared or co-mingled

operating accounts.

**PLAINTIFFS' RESPONSE TO STATEMENT 25**:  Disputed.

This is not an additional fact, but a response to Plaintiffs' Statement of Facts at ¶ 103,

which Plaintiffs' supported with the following evidence:

- Dkt. 66 at 16, 23, PX 1, Declaration of Roberto Menjivar, Att. V (redacted) (Lifewatch financial statements listing more than $34 million in sales of customer contracts to SHS.)

- FTC-LW16-3696-3697 (11/4/13 email from Cleasby to Oliveri providing Medguard's banking information to allow Oliveri to set up MedGuard's ACH processing);

- FTC-LW16-3801-3802 (12/6/13 email from Roman to credit card processor, May and Sirlin, attaching application, stating that he did not put a company name because he was not sure which company name they will "decide to use");

32

- FTC-LW16-4020-4024 (1/16/14 email from Roman to Oliveri and May ordering transfer of Lifewatch customers paying $1.1 million monthly to MedGaurd for total payment of $300,000);

- FTC-LW16-4077-4078 (1/21/14 email from Oliveri to Cleasby, asking how Lifewatch payments processed through MedGuard's account would be transferred back to Lifewatch);

- FTC-LW16-4152-4154 (2/11/14 email from Roman to Wajdowicz, Oliveri, and Cleasby stating that Lifewatch's merchant processor has capped the dollar amount of transactions Lifewatch can process each month so most existing Lifewatch customers have to be moved to MedGuard processor);

- FTC-LW16-4210 – 4212 (2/19/14 email from insurance broker to Oliver confirming adding Lifewatch to SHS insurance);

- FTC-LW16-4230 (2/19/14 email from Roman to Oliveri and Cleasby instructing Cleasby to transfer $150K from MedGuard to Safe Home Monitoring and then wire $150K from Safe Home Monitoring to Lifewatch);

- FTC-LW16-4587-4589 (5/28/14 email exchange between Laura Roman and Oliveri discussing weekly wire transfers from SHS to Lifewatch);

- FTC-LW16-4596-4599 (6/4/14 email from Roman to Oliveri instructing her to not to reimburse SHS for Lifewatch's insurance payment because SHS will "log" it);

- FTC-LW16-4645 (6/24/14 email from May to Hallowell, copying Sirln, Roman, and Baker, confirming that Lifewatch has funded deals for smoke detectors);

- FTC-LW16-4708-4709 (7/8/14 email from Hallowell to Baker, enclosing list of Lifewatch employees being billed on SHS's dental insurance);

- FTC-LW16-5488 (2/12/15 email from Roman to Cleasby and Oliveri about getting medical insurance on SHS policy for Sirlin, May, and Oliveri);

- FTC-LW16-5705-6 (5/16/15 email exchange from Oliveri to Roman and Cleasby explaining how MedGuard revenue is described on Lifewatch's books);

- FTC-LW16-5805 – 5806 (6/12/15 email from Roman to Oliveri, stating that he is not sure if invoice credit is for Lifewatch or SHS);

- FTC-LW16-5865-5867 (7/10/15 email from Roman to TD Bank, copying Oliveri and Cleasby, stating that Safe Home Security would guarantee any losses to TD Bank for Lifewatch's merchant processing account);

- FTC-LW16-5894 (7/21/15 email from Oliveri to Deirdre Aquino, copying Cleasby, Roman, Sirlin, and May asking her to apply for a dba for Lifewatch as Medguard);

- FTC-LW16-5900 – 5901 (7/21/15 email exchange between Baker and Hallowell regarding uncertainty as to whether money should go into Lifewatch or Medguard bank accounts);

- FTC-LW16-5954 (8/5/15 email from Oliveri to Cleasby, copying Roman, confirming Lifewatch is booking funds from SHS under Income on P&L statement as "Management Fee" and the revenue collected by Medguard as "Other Income");

- FTC-LW16-6010 – 6012 (8/31/15 email from Laura Roman instructing Oliveri to no longer show payments from SHS and MedGuard as revenue on Lifewatch's books);

- FTC-LW16-6013-6014 (9/1/15 email from Laura Roman instructing Oliveri to reclassify SHS payments to Lifewatch as loans and not revenue);

- FTC-LW16-6021 – 6039 (9/14/15 email from Cleasby to Sirlin, May, Oliveri, and Roman enclosing combined financial statements for Lifewatch and Medguard);

- FTC-LW16-6051 (9/22/15 email from Oliveri to Cleasby, forwarding Roman's suggestion of redirecting Medguard revenue into the Lifewatch account to bring down the chargeback rate);

- FTC-LW16-6094 – 6098 (10/12/15 email exchange between Oliveri, May, and potential Lifewatch investor, during which both May and Oliveri tell the investor that the money Lifewatch received from SHS was not a loan);

- FTC-LW16-6295-6300 (10/27/15 email from Oliveri to Christopher Parisi discussing Lifewatch and Medguard's consolidated financials, during which Oliveri explains that MedGuard financials do not include advertising expense because MedGuard does not pay call centers, that MedGuard had been paying monitoring costs only recently, and that MedGuard paid Lifewatch employee health insurance costs for prior months);

- FTC-LW16-6362-6364 (12/15/15 email from Cleasby to Christopher Parisi, Laura Roman, and Oliveri, discussing Lifewatch and Medguard's financial relationship, and noting that accounts purchased by MedGuard from Lifewatch for 18 times RMR were valued at 30 times RMR);

- FTC-LW16-6435 – 6436 (12/16/15 email from May to Oliveri, copying Roman and Sirlin, suggesting they move Meguard accounts to Lifewatch's merchant processor to lower Lifewatch's chargeback rate, like they had done in the past);

- FTC-LW16-6475 – 6483 (1/29/16 email from Roman instructing Oliveri to move all Lifewatch accounts to MedGuard immediately);

- FTC-LW16-6535 – 6542 (4/16 TD Bank Account Statement shows that Safe Home Security and Medguard shared a merchant processing account);

- FTC-LW16-6615 – 6616 (4/13/16 email from Oliveri to Roman explaining that Lifewatch was using an ACH processor under Medguard's name that was going to Medguard's bank account);

- FTC-LW16-6619-6620 (4/14/16 email from Baker to Roman noting that several monitoring companies send Lifewatch invoices directly to SHS for payment);

- FTC-LW16-6621 – 6629 (4/15/16 email exchange between Roman, Oliveri, and Cleasby dated April 15, 2016, regarding a remediation plan for Medguard due to excessive chargebacks - Remediation Plan lists the Merchant's legal name as Safe Home Monitoring and its dba as Medguard Alert);

- FTC-LW16-6653 – 6654 (4/19/16 email from Cleasby Oliveri confirming booking Lifewatch payment to vendor as an expense for MedGuard);

- FTC-LW16-6707 – 6708 (5/23/16 email exchange between Laura Roman and Oliveri, Cleasby, and Roman, regarding combining Lifewatch financial reporting and accounts with Medguard/SHS);

- FTC-LW16-6735-6741 (7/16 email exchange between Roman, Laura Roman, and Oliveri, discussing charges to SHS's credit card for Lifewatch);

- FTC-LW16-6820 – 6823 (7/30/16 email from Sirlin to Wadjowicz, asking if processor uses Medguard name and whether SHS has separate Medguard accounts that are not part of Lifewatch);

- FTC-LW16-6956 – 6957 (10/11/16 email from Wajodwicz to May, questioning existence of a lease agreement between SHS and Lifewatch regarding SHS providing servers and email hosting to Lifewatch, stating "this had to do with the FTC stuff and the no-name change to the CRM");

- FTC-LW16-7015 – 7016 (11/12/16 email from Hallowell to Sirlin, copying Wajdowicz, stating that all charges now say Medguard Alert and that won't change);

- FTC-LW16-7052 -7053 (11/15/16 email from Hallowell to Sirlin and Wajdowicz, confirming that Medguard Alert is the name on all credit card statements);

- FTC-LW16-7173-7174 (2/3/17 email from Cleasby to Oliveri providing post hoc interest rates Oliveri should on Lifewatch's books for SHS "loans");

- FTC-LW16-8105-6, 8113-14 (5/3/16 email from Oliveri to Sirlin asking if Lifewatch is supposed to pay invoices sent to Lifewatch but billed to SHS, for services apparently provided to both Lifewatch and SHS, from Call Center Partnerships in Chicago, with bank account at JP Morgan Chase in Chicago);

- FTC-LW16-8107-10 (5/29/14 email from Baker to Sirlin and May, complaining about payments sent to Lifewatch being sent to SHS bank account in Chicago, forwarding

5/29/13 email from Lifewatch Accounts Receivable Coordinator to Hallowell and Lifewatch, Medguard, and SHS employees, regarding trouble finding a check);

- FTC-LW16-8111-8114 (5/2/16 email from Call Center Partnerships in Chicago, to Cleasby, Hallowell, and Roman, addressed to SHS, attaching invoices for services apparently provided to both Lifewatch and SHS, requesting payment to be sent to bank account at JP Morgan Chase in Chicago.);

- FTC-LW16-8123-25 (12/4/15 email from Christopher Parisi to Sirlin, forwarding email exchange with Cleasby, Laura Roman, and Oliveri, regarding MedGuard's below market purchases of accounts from Lifewatch, stating that Roman has "line of credit against Safe Home that he uses to fund LW/MG.");

- FTC-LW16-8126-28 (12/4/15 email from Oliveri to Christopher Parisi, Sirlin and May, forwarding email exchange with Cleasby, Laura Roman, and Oliveri, regarding MedGuard's below market purchases of accounts from Lifewatch, stating that her understanding is the line of credit "was secured by Safe Home naming Medguard").

26. Safe Home Security, Inc. and Lifewatch Inc. have always filed separate tax returns.

**PLAINTIFFS' RESPONSE TO STATEMENT 26**:  Disputed.

Federal Rule of Evidence 1002 requires that an original writing is required to prove its contents.  Thus, to support this fact, Defendants Medguard and Lifewatch are required to produce all of Defendant Medguard and Lifewatch's tax returns.

27. Safe Home Security, Inc. and Lifewatch Inc. have always maintained separate payrolls.

**PLAINTIFFS' RESPONSE TO STATEMENT 27**:  Disputed.

This is not an additional fact, but a response to Plaintiffs' Statement of Facts at ¶ 96, which Plaintiffs' supported with the following evidence:

- FTC-LW16-7464, 7472 (1/6/16 email from Cleasby to Oliveri and Christopher Parisi, enclosing payroll statements for MedGuard Alert, including for period 12/6/14 through 12/19/14, listing the following employees who have Lifewatch signature blocks and email addresses @safehomesecurityinc.com: Kevin Carducci, Emily Duda, Sara Emond, Megan Gibbons, Vanessa Green, Kathleen Hernandez, Susan Hill, Emanuela R. Imme, Magaly Infante, Kathleen Larocque, Flavio Mastrodomeico, Valdez Reid, Ivana Schulman, Jeffrey Schweiger, Larry Tucker, Sara Weaver).

36

Plaintiffs further state that they requested payroll records from Defendants during discovery and none were produced.

28.     Safe Home Security, Inc. and MedGuard Alert Inc. did not share personnel between 2013 and 2016.

**PLAINTIFFS' RESPONSE TO STATEMENT 28**:  Disputed.

This is not an additional fact, but a response to Plaintiffs' Statement of Facts at ¶¶ 95 and 96, which Plaintiffs' supported with the following evidence:

- FTC-LW16-2338-2340 (3/7/13 email from Hallowell to Lifewatch dictating how Lifewatch's collection letters need to be changed)

- FTC-LW16-3167-3169 (7/5/13 email from Hallowell to Roman informing Roman of the telemarketers using a 30 day free trial);

- FTC-LW16-3247-3248 (7/29/13 email from Hallowell to Oliveri and Baker regarding "us generating the invoices or making the process simpler" in response to Baker's email about the high cost of generating paper invoices);

- FTC-LW16-3250-3324 (8/1/13 email from Oliveri to Hallowell and Baker, attaching Lifewatch's delinquent account and disputed accounts reports in anticipation of a their call);

- FTC-LW16-3369 (8/7/13 email from Hallowell to Baker and Oliveri ordering staffing changes in Lifewatch's collections department);

- FTC-LW16-3371-3376 (8/3/13 email from Hallowell, on Roman's behalf, to Oliveri ordering changes in Lifewatch's prorated refund policy);

- FTC-LW16-3378-3380 (8/8/13 email from Hallowell to Baker, Oliveri, Alex Lindsley, Kevin Carducci, Sara Weaver, and May, copying Roman, instructing Lifewatch on how prorated refunds should be handled);

- FTC-LW16-3381-3382 (8/9/13 email from Hallowell to Oliveri stating that directive that the collections employee be terminated comes directly from Roman)

- FTC-LW16-3384-3386 (8/12/13 email from  Hallowell to Baker stating that Lifewatch policy of increasing prices without notice are illegal and may invite state AG scrutiny);

- FTC-LW16-3393 (8/14/13 email from Hallowell to Oliveri dictating collections procedures);

- FTC-LW16-3414-3415 (8/27/13 email from Hallowell to Oliveri instructing her on collection methods);

- FTC-LW16-3423-3425 (8/29/13 email from Wajdowicz to Oliveri stating that the collection phones for Lifewatch are on their way);

- FTC-LW16-3461-3464 (8/30/13 email from Wajdowicz to Oliveri regarding new delivery of collection phones);

- FTC-LW16-3472-3473 (9/4/13 email from exchange between Wajdowicz to Oliveri, Hallowell, and Baker setting up training on a new phone system);

- FTC-LW16-3555-3559 (9/23/13 email from Hallowell to Sirlin and Baker regarding Hallowell reassigning Lifewatch's customer service supervisor, Cohen);

- FTC-LW16-3561-3562 (9/24/13 email from Baker to Hallowell regarding Hallowell's closing Lifewatch's collections department);

- FTC-LW16-3582-3583 (10/2/13 email from monitoring company to Baker stating that any request for dealer contacts needs to come from Safe Home Security);

- FTC-LW16-3626-3627 (10/16/13 email from Hallowell to Sirlin stating that "we do not wish to continue any intro rate pricing of any kind.");

- FTC-LW16-3633 (10/17/13 email from Sirlin implementing Hallowell's discontinuation of special pricing);

- FTC-LW16-3655 (10/23/13 email from Hallowell to Alex Lindsley and Baker stating customer service and final decision making authority will rest with Hallowell);

- FTC-LW16-3658 (10/24/13 email from Hallowell to Cohen telling Cohen to write up an employee and to tell the employee next time she'll be fired);

- FTC-LW16-3672-3673 (10/30/13 email from Katie Sylvers at Worldwide to Hallowell regarding the call centers handling their own refund requests);

- FTC-LW16-3676-3677 (10/30/13 email from Oliveri to Hallowell enclosing an A/R aging report for Lifewatch);

- FTC-LW16-3682 – 3685 (11/1/13 email from Hallowell to Sirlin, May, Roman, and Baker, complaining about Boling not returning Hallowell's calls);

- FTC-LW16-3691-3695 (11/1/13 email from Hallowell to Baker, Sirlin, May, and Roman complaining that his call to Boling was not returned);

- FTC-LW16-3698-3701 (11/14/13 email from Hallowell to Baker dated November 14, 2013, stating that Roman says that call centers to handle their own chargebacks every day);

- FTC-LW16-3712 (11/7/13 email from Hallowell to Sirlin, complaining that Long Island employees are not making collection calls);

- FTC-LW16-3721-3724 (11/11/13 email from Hallowell to Sirlin questioning whether consumers have complained about possibly deceptive pricing);

- FTC-LW16-3725-3726 (11/12/13 email from Hallowell to Oliveri stating that Roman wants the offices to split collection efforts);

- FTC-LW16-3727-3729 (11/12/13 email from Hallowell to Oliveri, copying May and Roman ordering the termination of certain Lifewatch employees);

- FTC-LW16-3752 (11/15/13 email from Hallowell to Alex Lindsley, Sara Weaver, Kevin Carducci, May, Sirlin, Baker, and Roman dictating buyout policy on Lifewatch contracts);

- FTC-LW16-3763-3764 (11/18/13 email from Hallowell to Roman, Sirlin, and Baker, recommending contract terms to Lifewatch);

- FTC-LW16-3876-3879 (1/7/14 email from Sirlin to Roman, copying May, noting that Lifewatch employees are reporting directly to Hallowell, that Hallowell is managing Lifewatch collections and customer service, and Wajdowicz is managing Lifewatch CRM and shipping);

- FTC-LW16-3880-81 (1/7/14 email from Hallowell to May, Roman, Sirlin, and Oliveri, noting that he had transferred a Lifewatch employee from working for Oliveri to Lifewatch customer service);

- FTC-LW16-4126-4128 (2/4/14 email from Hallowell to Lifewatch employees announcing change in customer service management);

- FTC-LW16-4151 (2/11/14 email from Wajdowicz Oliveri to Lifewatch employees, May, Sirlin, Roman, and Cleasby stating that he has arranged for all Lifewatch e-check transactions to go through an SHS/Medguard processor);

- FTC-LW16-4182 – 4185 (2/14/14 email from Kevin Carducci to Cohen, arranging for SHS to install PERS equipment);

- FTC-LW16-4186-4190 (2/14/14 email exchange between Sirlin and Hallowell regarding Lifewatch personnel changes ordered by Hallowell, and Hallowell describing Lifewatch as "we" in discussing the bad press created regarding the closing down of Worldwide);

- FTC-LW16-4204 (2/17/14 email from Hallowell to Cohen, Baker, Sara Weaver, Kevin Carducci, and Christopher Knight referring to Lifewatch as "our Company.");

- FTC-LW16-4231-4234 (2/20/14 email from Hallowell to Duran regarding how to code SHS referrals);

- FTC-LW16-4235 – 4238 (2/20/14 email from Hallowell to Roman and Sirlin stating that he will now review BBB Complaints);

- FTC-LW16-4257-4260 (2/28/14 email from Hallowell to Baker and Sirlin, stating that Lifewatch should stop sending pre-paid envelopes to consumers);

- FTC-LW16-4395-4396 (4/7/14 email from Wajdowicz to Lifewatch and Medguard representatives, including Roman, May, Hallowell, and others, setting up telephone conference to discuss roll out of new product signed as "Chief Information Officer, Safe Home Security");

- FTC-LW16-4397 – 4398 (4/9/14 email from Baker to May, copying Sirlin, saying she is "completely shocked" that they are agreeing with Hallowell to continue to bill consumers Lifewatch knows have not activated their devices; states "You both understand this is where disputes/charge backs, BBB, AG complaints come from, right???????");

- FTC-LW16-4420-4431 (4/10/14 email chain involving Christine Witzgall (Safe Home Security Accounting), Wajdowicz (SHS CIO), Duran, Lifewatch CRM Analyst, Nicole Simeona, Lifewatch Accounting Supervisor, Jeanie Gallagher, Lifewatch Chargeback/Dispute Coordinator, May, Hallowell, and Cleasby, re coordinated review of "Medguard disputes and chargebacks");

- FTC-LW16-4449-4450 (4/14/14 email from Hallowell to Sirlin, May, and Baker, stating that their processor says they cannot answer the phone or have a message that says "Lifewatch");

- FTC-LW16-4657-4659 (6/27/14 email from Hallowell to Baker, copying May and Roman, stating that Roman wants to move Lifewatch employees to be on the same commission schedule as "we are");

- FTC-LW16-4774 – 4775 (7/23/14 email from Hallowell to Baker and Cohen, copying Roman and SHS employees, attaching his revised Lifewatch scripts);

- FTC-LW16-4796 (7/29/14 email from Hallowell to SHS Payroll manager, informing her that he suspended a Lifewatch employee);

- FTC-LW16-4808 (7/31/14 email from Hallowell to all users@safehomesecurityinc.com, Baker, Cohen and Sirlin ordering Lifewatch staffing reassignments);

- FTC-LW16-4820 – 4822 (8/1/14 email from Hallowell to Baker. Copying Wajdowicz, making change to Lifewatch script);

- FTC-LW16-6351 – 6355 (12/2/15 email from Lifewatch accounting supervisor to Wajdowicz, SHS CIO, asking why Lifewatch customer was billed in advance of their due date);

- FTC-LW16-6410 – 6412 (12/15/15 email from Hallowell to Oliveri, reassigning Lifewatch billing responsibilities);

- FTC-LW16-6438-6446 (12/17/15 email exchange between Wajdowicz, Roman, Baker, and Oliveri regrding Wajdowicz doing Lifewatch's billing);

- FTC-LW16-6887 – 6889 (9/20/16 email exchange between Hallowell, Sirlin, and Cohen regarding Hallowell responding to Lifewatch BBB complaints);

- FTC-LW16-6964 – 6968 (10/14/16 email from Hallowell to Cohen stating that he should review all BBB complaints);

- PX 101, Transcript of Deposition of Hallowell on August 1, 2017, at 7, 11-12 (Hallowell testifying that while he is not employed by Lifewatch, Safe Home Security, or MedGuard Alert, he oversees customer service, collections, confirmation, and shipping for MedGuard).

- FTC-LW16-3053 (6/14/13 email from Kevin Carducci, with signature block "Account Manager, MedGuard Alert, but but with email address @safehomesecurityinc.com, and lists website www.safehomesecurityinc.com, to Cohen, asking that only billing and cancel calls be sent to him);

- FTC-LW16-3167-69 (7/5/13 email from Roman to Sirlin and May, relating to list of refunds for consumers falsely promised a "30 day free trial," including emails from Sara Weaver and Myles Tripp, both of whom have signature blocks stating "Lifewatch," but have email addresses @safehomesecurityinc.com, and list website www.safehomesecurityinc.com,);

- FTC-LW16-3211-3213 (7/11/13 email from Kevin Carducci, with signature block "Customer Service Manager, Lifewatch," but with email address @safehomesecurityinc.com, and lists website of www.safehomesecurityinc.com, to Baker relaying his conversation with a call center and giving her instruction on how to handle the call center);

- FTC-LW16-3219 (7/17/13 email from Lisa Benzola to all Lifewatch employees stating that Lifewatch recently merged with Safe Home Security and signing it "Management");

- FTC-LW16-3403-3407 (8/23/13 email from Vandewater to Catherine Gechran, who has signature block stating "Lifewatch," but has email address @safehomesecurityinc.com, and lists website www.safehomesecurityinc.com, and is described in attached CRM printout notes for Worldwide customer whose unit was shipped by Lifewatch, as SHS employee);

- FTC-LW16-3470-71 (9/14/13 email from Sirlin to Baker, including emails relating to Worldwide customer, who was told that her children ordered device for her, including emails from Sara Weaver and Natalia Iwanczuk, both of whome include signature block stating "Lifewatch," but have email addresses @safehomesecurityinc.com, and list website www.safehomesecurityinc.com,);

- FTC-LW16-3620-3622 (10/11/13 email from Sirlin responding to email from Baker to Sirlin and May, regarding customer told that billing would not start until unit was activated, reported by Kevin Carducci, describing self as Lifewatch Customer Service Manager but with email address of KCarducci@safehomesecurityinc.com, to Sara Weaver, who describes herself as working for Lifewatch in signature block, but has email address of SWeaver@safehomesecurityinc.com, who reported issue to Hallowell);

- FTC-LW16-3620-3622 (10/12/13 email from Baker to May, copying Sirlin, regarding customer who "was definitely confused and shouldnever have been sent the system," including emails from Sara Weaver, Kevin Carducci, and Jeffrey Schweiger, all of whom have signature blocks stating "Lifewatch," but have email addresses @safehomesecurityinc.com, and list website www.safehomesecurityinc.com,);

- FTC-LW16-3624-25 (10/16/13 email from Hallowell to Sirlin relating to Lifewatch customer promised a gift card, including emails from Sara Weaver and Christoher Knight, both of whom have signature blocks stating "Lifewatch," but have email addresses @safehomesecurityinc.com, and list website www.safehomesecurityinc.com,);

- FTC-LW16-4708-4709 (7/8/14 email from Hallowell to Baker, enclosing list of Lifewatch employees being billed on SHS's dental insurance);

- FTC-LW16-5509-12 (3/3/15 email from Carmello Bello, whose signature block says "Lifewatch Confirmation," but has has email address @safehomesecurityinc.com, and lists website www.safehomesecurityinc.com, to Hallowell, Sirlin, and other Lifewatch employees, explaining that 5-10 customers per day complain to Bello that they did not know there would be a monthly charge);

- FTC-LW16-5584-85 (1/27/15 email from consumer to Lifewatch customer relations manager,noting he spoke to Sara Emond, who described herself as Lifewatch "confirmer," but has email address @safehomesecurityinc.com);

- FTC-LW16-6614, 6617-6618 (4/13/16 email from Roman to Gladys Santiago and Oliveri dictating that SHS employee, who is working at Lifewatch office in Lynbrook, be moved to either Lifewatch or Medguard payroll);

- FTC-LW16-7438-7449 (7/9/15 email from Lifewatch Director of Human Resources to Oliveri, enclosing weekly payroll journal for Lifewatch, including only 4 of the 36 Lifewatch employees listed on FTC-LW16-7438 as Lifewatch-Middle Street employee list, 2 of which were also listed on Lifewatch-Long Island employee list; all 48 employees on Lifewatch-Long Island employee list included in payroll journal);

- FTC-LW16-7450-52 (7/17/15 email from Cohen to various Lifewatch employees, enclosing phone lists for Lifewatch-Middle Street and Lifewatch-Long Island, showing 31 out of 36 employees at Middle Street with email addresses @safehomesecurityinc.com);

- FTC-LW16-7464, 7472 (1/6/16 email from Cleasb to Oliveri and Christopher Parisi, enclosing payroll statements for MedGuard Alert, including for period 12/6/14 through 12/19/14, listing the following employees who have Lifewatch signature blocks and email addresses @safehomesecurityinc.com: Kevin Carducci, Emily Duda, Sara Emond, Megan Gibbons, Vanessa Green, Kathleen Hernandez, Susan Hill, Emanuela R. Imme, Magaly Infante, Kathleen Larocque, Flavio Mastrodomeico, Valdez Reid, Ivana Schulman, Jeffrey Schweiger, Larry Tucker, Sara Weaver);

- MG 0001 – MG0006 MedGuard Employee List (MedGuard Employee Lists 2013 – 2016 show the following employees who have Lifewatch signature blocks, and email addresses @safehomesecurityinc.com: Kevin Carducci, Sara Emond, Catherine Gecheran, Natalia Iwanczuk, Christopher Knight, Valdez Reid, Jeffrey Schweiger, Myles Tripp, Sara Weaver, Carmello Bello, Vanessa Brillant, Emily Duda, Jenn Groff);

- PX 101, Transcript of Deposition of Hallowell on August 1, 2017, at 7, 11-12 (Hallowell testifying that while he is not employed by Lifewatch, Safe Home Security, or MedGuard Alert, he oversees MedGuard managers for customer service, collections, confirmation, and shipping, including Kevin Carducci and Cathy Hernandez).

29. MedGuard Alert, Inc. had a pool of customers beginning in approximately January 2013, after having purchased those customer accounts, in bulk, from a non-party entity.

**PLAINTIFFS' RESPONSE TO STATEMENT 29**: Undisputed.

30. After the May 31, 2013 Share Purchase Agreement, Medguard Alert, Inc. also purchased customer accounts in 2014 from non-party entities.

**PLAINTIFFS' RESPONSE TO STATEMENT 30**: Undisputed.

31. MedGuard Alert, Inc.'s offices have always been in Connecticut.

**PLAINTIFFS' RESPONSE TO STATEMENT 31**: Undisputed.

32. Up until May 31, 2013, MedGuard Alert, Inc. did not share office space, officers, or personnel with Lifewatch.

**PLAINTIFFS' RESPONSE TO STATEMENT 32**: Disputed.

This is not an additional fact, but a response to Plaintiffs' Statement of Facts at ¶¶ 96 and

97, which Plaintiffs' supported with the following evidence:

- FTC-LW16-3053 (6/14/13 email from Kevin Carducci, with signature block "Account Manager, MedGuard Alert, but but with email address @safehomesecurityinc.com, and lists website www.safehomesecurityinc.com, to Cohen, asking that only billing and cancel calls be sent to him);

- FTC-LW16-3167-69 (7/5/13 email from Roman to Sirlin and May, relating to list of refunds for consumers falsely promised a "30 day free trial," including emails from Sara Weaver and Myles Tripp, both of whom have signature blocks stating "Lifewatch," but have email addresses @safehomesecurityinc.com, and list website www.safehomesecurityinc.com,);

- FTC-LW16-3211-3213 (7/11/13 email from Kevin Carducci, with signature block "Customer Service Manager, Lifewatch," but with email address @safehomesecurityinc.com, and lists website of www.safehomesecurityinc.com, to Baker relaying his conversation with a call center and giving her instruction on how to handle the call center);

- FTC-LW16-3219 (7/17/13 email from Lisa Benzola to all Lifewatch employees stating that Lifewatch recently merged with Safe Home Security and signing it "Management");

- FTC-LW16-3403-3407 (8/23/13 email from Vandewater to Catherine Gechran, who has signature block stating "Lifewatch," but has email address @safehomesecurityinc.com, and lists website www.safehomesecurityinc.com, and is described in attached CRM printout notes for Worldwide customer whose unit was shipped by Lifewatch, as SHS employee);

- FTC-LW16-3470-71 (9/14/13 email from Sirlin to Baker, including emails relating to Worldwide customer, who was told that her children ordered device for her, including emails from Sara Weaver and Natalia Iwanczuk, both of whome include signature block stating "Lifewatch," but have email addresses @safehomesecurityinc.com, and list website www.safehomesecurityinc.com,);

- FTC-LW16-3620-3622 (10/11/13 email from Sirlin responding to email from Baker to Sirlin and May, regarding customer told that billing would not start until unit was activated, reported by Kevin Carducci, describing self as Lifewatch Customer Service Manager but with email address of KCarducci@safehomesecurityinc.com, to Sara Weaver, who describes herself as working for Lifewatch in signature block, but has email address of SWeaver@safehomesecurityinc.com, who reported issue to Hallowell);

- FTC-LW16-3620-3622 (10/12/13 email from Baker to May, copying Sirlin, regarding customer who "was definitely confused and shouldnever have been sent the system," including emails from Sara Weaver, Kevin Carducci, and Jeffrey Schweiger, all of whom

have signature blocks stating "Lifewatch," but have email addresses
@safehomesecurityinc.com, and list website www.safehomesecurityinc.com,);

- FTC-LW16-3624-25 (10/16/13 email from Hallowell to Sirlin relating to Lifewatch
  customer promised a gift card, including emails from Sara Weaver and Christoher
  Knight, both of whom have signature blocks stating "Lifewatch," but have email
  addresses @safehomesecurityinc.com, and list website www.safehomesecurityinc.com,);

- FTC-LW16-4708-4709 (7/8/14 email from Hallowell to Baker, enclosing list of
  Lifewatch employees being billed on SHS's dental insurance);

- FTC-LW16-5509-12 (3/3/15 email from Carmello Bello, whose signature block says
  "Lifewatch Confirmation," but has has email address @safehomesecurityinc.com, and
  lists website www.safehomesecurityinc.com, to Hallowell, Sirlin, and other Lifewatch
  employees, explaining that 5-10 customers per day complain to Bello that they did not
  know there would be a monthly charge);

- FTC-LW16-5584-85 (1/27/15 email from consumer to Lifewatch customer relations
  manager,noting he spoke to Sara Emond, who described herself as Lifewatch
  "confirmer," but has email address @safehomesecurityinc.com);

- FTC-LW16-6614, 6617-6618 (4/13/16 email from Roman to Gladys Santiago and Oliveri
  dictating that SHS employee, who is working at Lifewatch office in Lynbrook, be moved
  to either Lifewatch or Medguard payroll);

- FTC-LW16-7438-7449 (7/9/15 email from Lifewatch Director of Human Resources to
  Oliveri, enclosing weekly payroll journal for Lifewatch, including only 4 of the 36
  Lifewatch employees listed on FTC-LW16-7438 as Lifewatch-Middle Street employee
  list, 2 of which were also listed on Lifewatch-Long Island employee list; all 48
  employees on Lifewatch-Long Island employee list included in payroll journal);

- FTC-LW16-7450-52 (7/17/15 email from Cohen to various Lifewatch employees,
  enclosing phone lists for Lifewatch-Middle Street and Lifewatch-Long Island, showing
  31 out of 36 employees at Middle Street with email addresses
  @safehomesecurityinc.com);

- FTC-LW16-7464, 7472 (1/6/16 email from Cleasb to Oliveri and Christopher Parisi,
  enclosing payroll statements for MedGuard Alert, including for period 12/6/14 through
  12/19/14, listing the following employees who have Lifewatch signature blocks and
  email addresses @safehomesecurityinc.com: Kevin Carducci, Emily Duda, Sara Emond,
  Megan Gibbons, Vanessa Green, Kathleen Hernandez, Susan Hill, Emanuela R. Imme,
  Magaly Infante, Kathleen Larocque, Flavio Mastrodomeico, Valdez Reid, Ivana
  Schulman, Jeffrey Schweiger, Larry Tucker, Sara Weaver);

- MG 0001 – MG0006 MedGuard Employee List (MedGuard Employee Lists 2013 – 2016
  show the following employees who have Lifewatch signature blocks, and email addresses
  @safehomesecurityinc.com: Kevin Carducci, Sara Emond, Catherine Gecheran, Natalia

Iwanczuk, Christopher Knight, Valdez Reid, Jeffrey Schweiger, Myles Tripp, Sara Weaver, Carmello Bello, Vanessa Brillant, Emily Duda, Jenn Groff);

- PX 101, Transcript of Deposition of Hallowell on August 1, 2017, at 7, 11-12 (Hallowell testifying that while he is not employed by Lifewatch, Safe Home Security, or MedGuard Alert, he oversees MedGuard managers for customer service, collections, confirmation, and shipping, including Kevin Carducci and Cathy Hernandez).

- Dkt. 25-9 at 3, PX 41, James Dec. ¶¶ 5-6, Dkt. 17-2 at 25 (Lifewatch customer service representative stating that office is at 975 Middle St., Middletown, Connecticut);

- Dkt. 25-9 at 3, Dkt. 17-2 at 39-40 (Lifewatch customer service department phone number playing recorded message thanking caller for calling Safe Home Security);

- Dkt. 25-18, PX 50, Mey Dec. at ¶¶ 31, 34, Dkt. 20-1 at 7 (Lifewatch's customer service representative stating office in Connecticut);

- Dkt. 25-18, PX 50, Mey Dec. at ¶¶ 31, 34, Dkt. 20-1 at 56 (same);

- FTC-LW16-3387-3388 (8/13/13 email from Roman to Sara Weaver, Wajdowicz, Baker, Hallowell, Sirlin, and May regarding Roman's observations from his time spent at Lifewatch Middletown);

- FTC-LW16-6586-6591 (4/5/16 email from Hallowell to Baker instructing Baker to use his name and address at Sebethe as contact person for Medguard);

- *Bank v. Lifewatch Inc., et al.*, No. 1:15-cv-2278 (E.D.N.Y. filed Apr. 22, 2015) (complaint alleging telemarketer gave SHS's address as the headquarters for the seller of the medical alert device being offered) corroborated by Bank Declaration filed in support of Plaintiffs' Memorandum in Opposition to Defendants' Motion to Strike (Dkt. 336-2).

   33.    Medguard Alert, Inc. and Lifewatch Inc. have not shared or co-mingled operating accounts.

**PLAINTIFFS' RESPONSE TO STATEMENT 33**:  Disputed.

This is not an additional fact, but a response to Plaintiffs' Statement of Facts at ¶ 103, which Plaintiffs' supported with the following evidence:

- Dkt. 66 at 16, 23, PX 1, Declaration of Roberto Menjivar, Att. V (redacted) (Lifewatch financial statements listing more than $34 million in sales of customer contracts to SHS.)

- FTC-LW16-3696-3697 (11/4/13 email from Cleasby to Oliveri providing Medguard's banking information to allow Oliveri to set up MedGuard's ACH processing);

- FTC-LW16-3801-3802 (12/6/13 email from Roman to credit card processor, May and Sirlin, attaching application, stating that he did not put a company name because he was not sure which company name they will "decide to use");

- FTC-LW16-4020-4024 (1/16/14 email from Roman to Oliveri and May ordering transfer of Lifewatch customers paying $1.1 million monthly to MedGaurd for total payment of $300,000);

- FTC-LW16-4077-4078 (1/21/14 email from Oliveri to Cleasby, asking how Lifewatch payments processed through MedGuard's account would be transferred back to Lifewatch);

- FTC-LW16-4152-4154 (2/11/14 email from Roman to Wajdowicz, Oliveri, and Cleasby stating that Lifewatch's merchant processor has capped the dollar amount of transactions Lifewatch can process each month so most existing Lifewatch customers have to be moved to MedGuard processor);

- FTC-LW16-4210 – 4212 (2/19/14 email from insurance broker to Oliver confirming adding Lifewatch to SHS insurance);

- FTC-LW16-4230 (2/19/14 email from Roman to Oliveri and Cleasby instructing Cleasby to transfer $150K from MedGuard to Safe Home Monitoring and then wire $150K from Safe Home Monitoring to Lifewatch);

- FTC-LW16-4587-4589 (5/28/14 email exchange between Laura Roman and Oliveri discussing weekly wire transfers from SHS to Lifewatch);

- FTC-LW16-4596-4599 (6/4/14 email from Roman to Oliveri instructing her to not to reimburse SHS for Lifewatch's insurance payment because SHS will "log" it);

- FTC-LW16-4645 (6/24/14 email from May to Hallowell, copying Sirln, Roman, and Baker, confirming that Lifewatch has funded deals for smoke detectors);

- FTC-LW16-4708-4709 (7/8/14 email from Hallowell to Baker, enclosing list of Lifewatch employees being billed on SHS's dental insurance);

- FTC-LW16-5488 (2/12/15 email from Roman to Cleasby and Oliveri about getting medical insurance on SHS policy for Sirlin, May, and Oliveri);

- FTC-LW16-5705-6 (5/16/15 email exchange from Oliveri to Roman and Cleasby explaining how MedGuard revenue is described on Lifewatch's books);

- FTC-LW16-5805 – 5806 (6/12/15 email from Roman to Oliveri, stating that he is not sure if invoice credit is for Lifewatch or SHS);

- FTC-LW16-5865-5867 (7/10/15 email from Roman to TD Bank, copying Oliveri and Cleasby, stating that Safe Home Security would guarantee any losses to TD Bank for Lifewatch's merchant processing account);

- FTC-LW16-5894 (7/21/15 email from Oliveri to Deirdre Aquino, copying Cleasby, Roman, Sirlin, and May asking her to apply for a dba for Lifewatch as Medguard);

- FTC-LW16-5900 – 5901 (7/21/15 email exchange between Baker and Hallowell regarding uncertainty as to whether money should go into Lifewatch or Medguard bank accounts);

- FTC-LW16-5954 (8/5/15 email from Oliveri to Cleasby, copying Roman, confirming Lifewatch is booking funds from SHS under Income on P&L statement as "Management Fee" and the revenue collected by Medguard as "Other Income");

- FTC-LW16-6010 – 6012 (8/31/15 email from Laura Roman instructing Oliveri to no longer show payments from SHS and MedGuard as revenue on Lifewatch's books);

- FTC-LW16-6013-6014 (9/1/15 email from Laura Roman instructing Oliveri to reclassify SHS payments to Lifewatch as loans and not revenue);

- FTC-LW16-6021 – 6039 (9/14/15 email from Cleasby to Sirlin, May, Oliveri, and Roman enclosing combined financial statements for Lifewatch and Medguard);

- FTC-LW16-6051 (9/22/15 email from Oliveri to Cleasby, forwarding Roman's suggestion of redirecting Medguard revenue into the Lifewatch account to bring down the chargeback rate);

- FTC-LW16-6094 – 6098 (10/12/15 email exchange between Oliveri, May, and potential Lifewatch investor, during which both May and Oliveri tell the investor that the money Lifewatch received from SHS was not a loan);

- FTC-LW16-6295-6300 (10/27/15 email from Oliveri to Christopher Parisi discussing Lifewatch and Medguard's consolidated financials, during which Oliveri explains that MedGuard financials do not include advertising expense because MedGuard does not pay call centers, that MedGuard had been paying monitoring costs only recently, and that MedGuard paid Lifewatch employee health insurance costs for prior months);

- FTC-LW16-6362-6364 (12/15/15 email from Cleasby to Christopher Parisi, Laura Roman, and Oliveri, discussing Lifewatch and Medguard's financial relationship, and noting that accounts purchased by MedGuard from Lifewatch for 18 times RMR were valued at 30 times RMR);

- FTC-LW16-6435 – 6436 (12/16/15 email from May to Oliveri, copying Roman and Sirlin, suggesting they move Meguard accounts to Lifewatch's merchant processor to lower Lifewatch's chargeback rate, like they had done in the past);

- FTC-LW16-6475 – 6483 (1/29/16 email from Roman instructing Oliveri to move all Lifewatch accounts to MedGuard immediately);

- FTC-LW16-6535 – 6542 (4/16 TD Bank Account Statement shows that Safe Home Security and Medguard shared a merchant processing account);

- FTC-LW16-6615 – 6616 (4/13/16 email from Oliveri to Roman explaining that Lifewatch was using an ACH processor under Medguard's name that was going to Medguard's bank account);

- FTC-LW16-6619-6620 (4/14/16 email from Baker to Roman noting that several monitoring companies send Lifewatch invoices directly to SHS for payment);

- FTC-LW16-6621 – 6629 (4/15/16 email exchange between Roman, Oliveri, and Cleasby dated April 15, 2016, regarding a remediation plan for Medguard due to excessive chargebacks - Remediation Plan lists the Merchant's legal name as Safe Home Monitoring and its dba as Medguard Alert);

- FTC-LW16-6653 – 6654 (4/19/16 email from Cleasby Oliveri confirming booking Lifewatch payment to vendor as an expense for MedGuard);

- FTC-LW16-6707 – 6708 (5/23/16 email exchange between Laura Roman and Oliveri, Cleasby, and Roman, regarding combining Lifewatch financial reporting and accounts with Medguard/SHS);

- FTC-LW16-6735-6741 (7/16 email exchange between Roman, Laura Roman, and Oliveri, discussing charges to SHS's credit card for Lifewatch);

- FTC-LW16-6820 – 6823 (7/30/16 email from Sirlin to Wadjowicz, asking if processor uses Medguard name and whether SHS has separate Medguard accounts that are not part of Lifewatch);

- FTC-LW16-6956 – 6957 (10/11/16 email from Wajodwicz to May, questioning existence of a lease agreement between SHS and Lifewatch regarding SHS providing servers and email hosting to Lifewatch, stating "this had to do with the FTC stuff and the no-name change to the CRM");

- FTC-LW16-7015 – 7016 (11/12/16 email from Hallowell to Sirlin, copying Wajdowicz, stating that all charges now say Medguard Alert and that won't change);

- FTC-LW16-7052 -7053 (11/15/16 email from Hallowell to Sirlin and Wajdowicz, confirming that Medguard Alert is the name on all credit card statements);

- FTC-LW16-7173-7174 (2/3/17 email from Cleasby to Oliveri providing post hoc interest rates Oliveri should on Lifewatch's books for SHS "loans");

- FTC-LW16-8105-6, 8113-14 (5/3/16 email from Oliveri to Sirlin asking if Lifewatch is supposed to pay invoices sent to Lifewatch but billed to SHS, for services apparently provided to both Lifewatch and SHS, from Call Center Partnerships in Chicago, with bank account at JP Morgan Chase in Chicago);

- FTC-LW16-8107-10 (5/29/14 email from Baker to Sirlin and May, complaining about payments sent to Lifewatch being sent to SHS bank account in Chicago, forwarding 5/29/13 email from Lifewatch Accounts Receivable Coordinator to Hallowell and Lifewatch, Medguard, and SHS employees, regarding trouble finding a check);

- FTC-LW16-8111-8114 (5/2/16 email from Call Center Partnerships in Chicago, to Cleasby, Hallowell, and Roman, addressed to SHS, attaching invoices for services apparently provided to both Lifewatch and SHS, requesting payment to be sent to bank account at JP Morgan Chase in Chicago.);

- FTC-LW16-8123-25 (12/4/15 email from Christopher Parisi to Sirlin, forwarding email exchange with Cleasby, Laura Roman, and Oliveri, regarding MedGuard's below market purchases of accounts from Lifewatch, stating that Roman has "line of credit against Safe Home that he uses to fund LW/MG.");

- FTC-LW16-8126-28 (12/4/15 email from Oliveri to Christopher Parisi, Sirlin and May, forwarding email exchange with Cleasby, Laura Roman, and Oliveri, regarding MedGuard's below market purchases of accounts from Lifewatch, stating that her understanding is the line of credit "was secured by Safe Home naming Medguard").

34.     Medguard Alert, Inc. and Lifewatch Inc. have always filed separate tax returns.

**PLAINTIFFS' RESPONSE TO STATEMENT 34**:  Disputed.

Federal Rule of Evidence 1002 requires that an original writing is required to prove its

contents.  Thus, to support this fact, Defendants Medguard and Lifewatch are required to

produce all of Defendant Medguard and Lifewatch's tax returns.

35.     Medguard Alert, Inc. and Lifewatch Inc. have maintained separate payrolls.

**PLAINTIFFS' RESPONSE TO STATEMENT 35**: Disputed.

This is not an additional fact, but a response to Plaintiffs' Statement of Facts at ¶ 96,

which Plaintiffs' supported with the following evidence:

- FTC-LW16-7464, 7472 (1/6/16 email from Cleasby to Oliveri and Christopher Parisi, enclosing payroll statements for MedGuard Alert, including for period 12/6/14 through 12/19/14, listing the following employees who have Lifewatch signature blocks and email addresses @safehomesecurityinc.com: Kevin Carducci, Emily Duda, Sara Emond,

Megan Gibbons, Vanessa Green, Kathleen Hernandez, Susan Hill, Emanuela R. Imme, Magaly Infante, Kathleen Larocque, Flavio Mastrodomeico, Valdez Reid, Ivana Schulman, Jeffrey Schweiger, Larry Tucker, Sara Weaver).

Plaintiffs further state that they requested payroll records from Defendants during

discovery and none were produced.

Dated:  March 19, 2018                    /s/David A. O'Toole
                                          DAVID A. O'TOOLE
                                          SAMANTHA GORDON
                                          Federal Trade Commission, Midwest Region
                                          230 South Dearborn Street, Suite 3030
                                          Chicago, Illinois 60604
                                          Telephone: (312) 960-5634
                                          Facsimile: (312) 960-5600

                                          Attorneys for Plaintiff
                                          FEDERAL TRADE COMMISSION

                                          PAMELA JO BONDI
                                          Attorney General
                                          State of Florida

                                          /s/Denise Beamer
                                          DENISE BEAMER
                                          Assistant Attorney General
                                          Florida Bar # 69369
                                          Office of the Attorney General
                                          Consumer Protection Division
                                          135 W. Central Blvd., Suite 1000
                                          Orlando, Florida 32801
                                          Telephone:  (407) 245-0833
                                          Facsimile:  (407) 245-0365

                                          Attorney for Plaintiff
                                          STATE OF FLORIDA
                                          OFFICE OF THE ATTORNEY GENERAL

<u>**CERTIFICATE OF SERVICE**</u>

I, David A. O'Toole, hereby certify that on March 19, 2018, I electronically filed

**PLAINTIFFS' RESPONSE TO DEFENDANTS' JOINT ADDITIONAL STATEMENTS**

**OF FACT**, with the Court using the CM/ECF system, which will automatically send copies to

any attorney of record in the case.

Respectfully Submitted,

<u>/s/ David A. O'Toole</u>
DAVID A. O'TOOLE
Federal Trade Commission
Midwest Region
230 S. Dearborn St., Room 3030
Chicago, Illinois 60603
Voice: (312) 960-5634
Fax:   (312) 960-5600
email: dotoole@ftc.gov