UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION, )<br>STATE OF FLORIDA, OFFICE OF THE )<br>ATTORNEY GENERAL, DEPARTMENT )<br>OF LEGAL AFFAIRS, )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>LIFEWATCH INC., a New York corporation, )<br>also d/b/a LIFEWATCH USA and MEDICAL )<br>ALARM SYSTEMS, )<br>)<br>SAFE HOME SECURITY, INC., a )<br>Connecticut corporation, )<br>)<br>MEDGUARD ALERT, INC., a Connecticut )<br>corporation, )<br>)<br>EVAN SIRLIN, individually and as an officer )<br>or manager of Lifewatch Inc., )<br>)<br>MITCHEL MAY, individually and as an officer or )<br>manager of Lifewatch Inc., and )<br>)<br>DAVID ROMAN, individually and as an officer )<br>or manager of Lifewatch Inc., Safe Home Security, )<br>Inc., and MedGuard Alert, Inc. )<br>Defendants. )<br>) | Case No. 15cv5781<br><br>Judge Gary Feinerman |

**DEFENDANTS' MEMORANDUM ADDRESSING EVIDENTIARY OBJECTIONS
MADE BY PLAINTIFFS IN THEIR RESPONSE TO DEFENDANTS' JOINT
ADDITIONAL STATEMENT OF FACTS (DKT. 349)**

1

**Introduction**

In plaintiffs' Response to Defendants' Joint Additional Statement of Facts (Dkt. 349), plaintiffs assert in a conclusory manner that the following documents constitute "inadmissible hearsay" and "should not be considered:"

- FTC-LW16-150-153 (3/16/12 emails to Sirlin says he has leads);
- FTC-LW16-59-60 (11/28/11 email noting that customer leads would be sent to Lifewatch that day)
- FTC-LW-09-1193-96 (WWIS identifies its script for sales of Philips Lifeline medical alert devices (800 foot range, absolutely free, live operators are fully trained EMTs), not Lifewatch's devices)
- FTC-LW09-1202-1205 (WWIS identifies scripts for sales of Philips Lifeline medical alert devices and First Street medical alert devices).
- FTC-LW09-1300 (Communications between Worldwide and First Street's Tim Hague, Jennifer Hancock, and Jo Hayden about getting paid for First Street sales)
- LW-FTC-01413- 1440 (Contracts between Medical Guardian and SafeGuard and between Connect America and Rescue Medical Alert)
- FTC-LW16-5402-06 (December 2014 emails indicating outside seller "shut down") for violations).
- FTC-LW16-2966 (Vandewater quality control email sent to outside sellers)
- FTC-LW16-008075-80 (Vandewater quality control email sent to outside sellers)
- FTC-LW16-8010 (Lifewatch email chain with outside seller complaining about having to send recordings with respect to compliance issues and complaining about not receiving Lifewatch's findings ("we look into it, if it's not true we don't do anything about it, I notify upper management that nothing misleading was said. If I hear something I tell them…and then I am told to address it with you so it doesn't happen again")
- FTC-LW-16-0003387 (August 13, 2013 email to Evan Sirlin and Mitchel May indicates Roman conducted an internal review and found unacceptably high customer cancellation rates associated with Lifewatch customers acquired through outside sellers, explains that Lifewatch would need to: a) take "corrective action with [outside sellers] using [improper] sales tactics;" b) "police customer call backs;" c) "strengthen confirmation process and sales ethics;" and d) "implement a live transfer confirmation.")
- Exh. H or Dkt. 332-8 (Sample of emails in which Lifewatch employees and individual defendants respond to customer complaints, reprimand outside sellers, direct that violative outside sellers be "shut down," and request recordings).

As set forth below, plaintiffs' evidentiary objections should be overruled. Plaintiffs also assert that the outside seller affidavits (Dkt. 332-5 and 332-1) are "not probative" because some of the affidavits were signed around the same time the outside sellers signed the purchase agreements.

2

As set forth below, the affidavits are highly probative and plaintiffs' argument is baseless and should also be rejected because, *inter alia*, in most instances a large amount of time (i.e., weeks, months, and even years) elapsed between the purchase agreement date and the affidavit signature date.[1]

**Legal Arguments**

    **1. The Documents are not Inadmissible Hearsay**

The documents at issue are admissible under Fed. R. Evid. 803(6), i.e. the business records exception, which allows the admission into evidence of information contained in business records that were (1) made at or near the time of the event recorded (2) by a person with knowledge (3) if they were kept in the course of a regularly conducted business activity and (4) if it was the regular practice of that business activity to make the record. Courts have recognized, however, that neither a qualified witness nor a certification is necessary to provide the foundation for admission in all instances. Instead, "the requirements for qualification as a business record can be met by documentary evidence, affidavits, or admissions of the parties, *i.e.*, by circumstantial evidence, or by a combination of direct and circumstantial evidence." Courts have also acknowledged that foundation for admissibility may at times be predicated on judicial notice of the nature of the business and the nature of the records as observed by the court. *Chevron Corp. v. Donziger*, 974 F. Supp. 2d 362, 691 (S.D.N.Y. 2014). In any event, as set forth in the attached declaration of Sarai Baker (Exhibit A), the documents at issue fall within the business records exception. See *Makor Issues & Rights, Ltd. v. Tellabs, Inc.,* 735 F. Supp. 2d

---

[1] Within plaintiffs' Response to Joint Additional Statement of Facts, plaintiffs makes various conclusory assertions, e.g. "this is not a material fact," "this is not an additional fact," "the evidence does not support the statement;" "documents were not produced." Defendants disagree with these and other such assertions and submit that they are improper, inaccurate, and should not be considered. Inasmuch as these assertions are not evidentiary objections and the court's Order (Dkt. 353) confined the parties to briefing evidentiary objections only in response to non−movant's Rule 56.1(b)(3)(C) statement, defendants have addressed only plaintiffs' hearsay objections and arguments as to the "probative" nature of the outside seller affidavits (Dkt. 332-5).

856 (N.D. Ill. 2010), (A party establishes a foundation for admission of business records when it demonstrates through a qualified witness that the records were kept in the course of regularly conducted business activity, and that it was the regular practice of that business to make such records).

Further, FTC-LW-16-0003387, FTC-LW16-5402-06, FTC-LW16-2966; FTC-LW16-008075-80; FTC-LW16-8010 and the documents within Exhibit H are not hearsay as defined in FRE 801(c) insofar as they are offered and considered, not for the truths of the assertions contained therein, but rather with respect to showing: 1) the context within which the defendants were being notified (i.e. knowledge of violative practices by the defendants were within the context of the quality control program, which led to outside sellers being terminated; 2) the effect the complaints had on the defendants[2]; and 3) that the quality control program was in place and was effectively curtailing any customer origination through violative practices. See *United States v. Hanjuan Jin*, 833 F. Supp. 2d 957 (N.D. Ill. 2011) ("[i]t is well settled that statements that are offered for context, and not for the truth of the matter asserted, are not hearsay"). See also *United States v. Inglese*, 282 F.3d 528, 538 (7th Cir. 2002) (a statement is not hearsay where it is offered to show its effect on a witness); *United States EEOC v. Olsten Staffing Servs. Corp.*, 657 F. Supp. 2d 1029 (W.D. Wis. 2009) (same). See *Jewett v. Anders*, 521 F.3d 818, 827 (7th

---

[2] This is particularly relevant as to the individual defendants given that, as set forth in *FTC v. Amy Travel Serv., Inc.,* 875 F.2d 564, 574 (7th Cir. 1989) individual liability for corporate acts or practices may be imposed only if, after the corporate defendant is found liable under the FTC Act, the individual defendant is found to have: (1) participated in the underlying violative acts or had authority to control the corporate defendant and (2) knew of the violative acts or practices.  In order to hold an individual liable for restitution as a result of corporate misconduct, plaintiffs must show (1) the individual had knowledge that the corporation engaged in dishonest or fraudulent conduct, (2) that the misrepresentations were the type upon which a reasonable and prudent person would rely, and (3) that consumer injury resulted*." FTC v. Publ'g Clearing House, Inc*., 104 F.3d 1168, 1170–71 (9th Cir. 1997) quoting *FTC v. Am. Standard Credit Sys., Inc.*, 874 F. Supp. 1080, 1089 (C.D. Cal. 1994). Further, with respect to "knowledge," plaintiff cannot prevail simply by showing that an individual defendant knew about a violative act.  Rather, plaintiff must show "awareness plus failure to act." *FTC v. Amy Travel Serv.,* 1988 U.S. Dist. LEXIS 13371, at *52 (N.D. Ill. Feb. 10, 1988).

Cir. 2008) (statements "offered to demonstrate the effect of [the] information on person who heard statement to explain a person's actions are not inadmissible hearsay").

FTC-LW-16-0003387, FTC-LW16-5402-06 and the documents within Exhibit H also fall within FRE 803(1), i.e., the present sense impression exception, which is "a statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter." There are three elements that must be met for this hearsay exception to apply: (1) the declarant must have personally perceived the event that is described in the statement; (2) the statement must be a simple explanation or description of the event perceived; and (3) the declaration and the event described must be contemporaneous. *United States v. Santos*, 65 F. Supp. 2d 802, 823 (N.D. Ill. 1999). Present sense impressions are considered trustworthy because the near simultaneous expression of the explanation or description of the event with its perception militates against any memory deficiency, or opportunity to intentionally misstate what occurred. Id.; FED. R. EVID. 803(1) advisory committee's note ("The underlying theory of Exception (1) is that substantial contemporaneity of event and statement negate the likelihood of deliberate or conscious misrepresentation."). Here, as set forth in the Roman declaration (Dkt. 332-10) and the May declaration (Dkt. 332-9) and as revealed by a plain review of the emails themselves, the emails were sent immediately after perceiving events regarding complaints and Lifewatch's practices. *Canatxx Gas Storage Ltd. v. Silverhawk Capital Partners, LLC,* No. H-06-1330, 2008 U.S. Dist. LEXIS 37803, at *37-38 (S.D. Tex. May 8, 2008) (corporate email held admissible under the present-sense impression exception to the hearsay rule and the court noting that precise contemporaneity is not required).

Additionally, FTC-LW-16-0003387, FTC-LW16-5402-06, FTC-LW16-2966; FTC-LW16-008075-80; FTC-LW16-8010**,** and the documents within Exhibit H also qualify as "not

5

hearsay" under FRE 801 (d)(1)(B), which provides that a statement is not hearsay if the declarant testifies and is subject to cross-examination about a prior statement, and the statement is consistent with the declarant's testimony and is offered: (i) to rebut an express or implied charge that the declarant recently fabricated it or acted from a recent improper influence or motive in so testifying; or (ii) to rehabilitate the declarant's credibility as a witness when attacked on another ground.  Here, insofar as plaintiffs are arguing that the defendants cannot demonstrate that they prevented violative conduct and that their declarations and deposition testimony on this point are conclusory, self-serving, or fabricated, these documents rebut plaintiffs' arguments and demonstrate that the averments by the defendants are accurate.

FRE Rule 807(a) provides that a court may admit any out-of-court statement that: (1) has equivalent circumstantial guarantees of trustworthiness; (2) is offered as evidence of a material fact; (3) is more probative on the point for which it is offered than any other evidence that can be procured through reasonable efforts; and (4) best serves the general purposes of the Federal Rules of Evidence and the interests of justice. Fed. R. Evid. 807(a).  See *Parker v. Four Seasons Hotels, Limited*, 2014 U.S. Dist. LEXIS 43870, 2014 WL 1292858, *3 (N.D. Ill. 2014) (finding email was admissible under Fed. R. Evid. 807, and stating "courts have long recognized that the prohibition on hearsay is not intended to be a mechanical bar on otherwise reliable evidence").

FTC-LW-16-0003387, FTC-LW16-5402-06, FTC-LW16-2966; FTC-LW16-008075-80; FTC-LW16-8010 and the documents within Exhibit H fall within the Rule 807 (a) exception.  In *Parker*, the court allowed email documents under this exception after finding "the [email is] highly probative to the case and, indeed, more probative than any other evidence on the issue...[m]oreover, there is nothing to indicate that the [email] is somehow unreliable or otherwise inaccurate."  Id. at * 11.  Here, the subject emails are highly probative as to the

6

following material issues: 1) the context within which the defendants were being notified (i.e. knowledge of violative practices by the defendants were within the context of the quality control program which led to outside sellers being terminated; 2) the effect the complaints had on the defendants; and 3) that the quality control program was in place and was effectively curtailing customer origination through violative practices. Further, there is no indication that the emails are unreliable or inaccurate, and the record evidence (including declarations and testimony about defendants' quality control program) shows that the emails are trustworthy.[3] Moreover, admitting these emails best serves the interests of justice inasmuch as it allows for consideration of reliable, probative evidence on material points.

## 2. **Plaintiffs' Assertions pertaining to the Outside Seller Affidavits (Dkt. 332-5 and 332-1) are Incorrect and Unsupported**

Rule 56(c) permits the use of affidavits in support of or in opposition to a motion for summary judgment. Nevertheless, plaintiffs generally criticize the outside seller affidavits and argue that an "affidavit containing conclusory, unsupported denials is not sufficient to raise genuine issues of fact for trial." (Dkt. 349, page 13). But, for this proposition, plaintiffs cite only to *Brown v. Soc'y for the Pres. & Encouragement of Barber Shop Quartet Singing in Am., Inc.*, 13 F. App'x 377 (7th Cir. 2001), which relied solely on *Albiero v. City of Kankakee*, 246 F.3d 927 (7th Cir. 2001). As such plaintiffs' argument is explicitly premised on *Albiero*, which was overruled by *Hill v. Tangherlini,* 724 F.3d 965 (7th Cir. 2013). Indeed, an affidavit used to oppose a summary judgment motion need only "be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4); *White v. Campanelli*, No. 1:14-cv-7215,

---

[3] See Dkt. 332, JSAF 13

2017 U.S. Dist. LEXIS 18525, at *25 (N.D. Ill. Feb. 9, 2017). See also *Rouei v. Vill. of Skokie*, 61 F. Supp. 3d 765, 774 (N.D. Ill. 2014), (discussing Hill and declaring: "an affidavit… based on personal knowledge that sets forth specific facts is sufficient to show a genuine factual dispute for summary judgment purposes."). Here, the outside seller affidavits meet these requirements. As such, plaintiffs' argument that the affidavits do not create a genuine issue of material fact is simply incorrect.

Plaintiffs also argue "because the telemarketers were required to execute the affidavits before they made any sales for defendants, the affidavits cannot create a dispute of fact about sales calls that occurred after they were signed." (Dkt. 349, pp 14, 21, and 23). First, there is no legal or logical support for this general proposition, particularly given the specific, detailed averments in the affidavits. Second, and notwithstanding plaintiffs' false characterizations, a plain review of the affidavits indicates that in most instances a large amount of time (i.e., weeks, months, and even years) elapsed between the original purchase agreement date and the affidavit signature date.[4] For example, 332-5, exhibit 18 indicates that the affidavit was signed more than

---

[4] See also Dkt. 332-5, Exhibit 2, Purchase Agreement signed on 6/25/15 and Affidavit executed on July 14, 2015; Exhibit 3, Purchase Agreement signed on 9/24/13 and Affidavit executed on 4/7/14; Exhibit 4, Purchase Agreement signed on 4/29/13 and Affidavit executed on 4/3/14; Exhibit 5, Purchase Agreement signed on 4/13/15 and Affidavit executed on 6/20/15; Exhibit 7, Purchase Agreement signed on 12/18/14 and Affidavit executed on 6/5/15; Exhibit 8, Purchase Agreement signed on 1/22/14 and Affidavit executed on 4/3/14; Exhibit 9, Purchase Agreement signed on 12/18/13 and Affidavit executed on 4/4/14; Exhibit 10, Purchase Agreement signed on 6/30/14 and Affidavit executed on 8/8/14; Exhibit 11, Purchase Agreement signed on 7/9/14 and Affidavit executed on 6/3/15; Exhibit 12, Purchase Agreement signed on 2/15 and Affidavit executed on 3/20/15; Exhibit 13, Purchase Agreement executed on 10/7/13 and Affidavit signed on April 4, 2014; Exhibit 16, Purchase Agreement signed on 7/7/14 and Affidavit executed on 6/4/15; Exhibit 18, Purchase Agreement executed 6/10 and Affidavit signed 3/18/15; Exhibit 19, Purchase Agreement signed 10/14 and Affidavit signed 6/15; Exhibit 21, Purchase Agreement signed 1/16/15, and Affidavit signed on 6/2/15; Exhibit 22, Purchase Agreement signed 1/16/15, and Affidavit signed on 6/2/15; Exhibit 23, Purchase Agreement signed 1/16/15, and Affidavit signed on 6/2/15; Exhibit 25, Purchase Agreement signed on 8/18/14 and Affidavit signed on 6/4/15; Exhibit 26, Purchase Agreement signed on 11/20/13 and Affidavit executed on 4/3/14; Exhibit 28, Purchase Agreement signed on 12/18/14 and Affidavit executed on 6/5/15; Exhibit 29, Purchase Agreement signed on 12/14 and Affidavit executed on 3/20/15; Exhibit 30, Purchase Agreement signed on 7/27/13 and Affidavit executed on 4/7/14; Exhibit 31, Purchase Agreement signed on 6/10/15 and Affidavit signed on 7/17/15; Exhibit 32, Purchase Agreement signed on 3/18/14 and Affidavit executed on 4/4/14; Exhibit 34, Purchase Agreement signed on 3/26/15 and Affidavit executed on 6/12/15; Exhibit 37, Purchase Agreement signed on 3/18/15 and Affidavit executed on 6/2/15; Exhibit 38, Purchase Agreement signed on 2/19/15 and Affidavit executed on 6/2/15; Exhibit 41, Purchase Agreement signed on 6/1/15 and Affidavit executed on 7/17/15; Exhibit

four years after the purchase agreement. Third, as set forth in the affidavit of Sarai Baker, at the time Lifewatch implemented this policy, Lifewatch also had existing and ongoing relationships with many outside sellers who were already originating customer accounts for Lifewatch. Those outside sellers who had already been originating customer accounts for Lifewatch also signed affidavits. (Exhibit A, Paragraph 8).

Accordingly, the affidavits create genuine issues of material fact and are highly probative[5] with respect to showing, *inter alia:* customer origination was not accomplished solely through outbound telemarketing; in originating customer accounts for Lifewatch violative telemarketing practices were not employed; and, the alleged misrepresentations at issue in this case were not made to prospective customers. Thus, while Plaintiffs used their dispositive motion briefing to conflate all marketing methods and all outside sellers in an effort to inaccurately portray Lifewatch's sales methods as homogeneous and uniformly fraudulent over a five year period, competent and probative evidence shows that Lifewatch obtained customers from outside sellers who have not been shown to have engaged in violative marketing practices and who signed affidavits indicating that violative telemarketing practices were not employed.

---

42, Purchase Agreement signed on 12/16/13 and Affidavit executed on 6/4/14; Exhibit 43, Purchase Agreement signed on 1/7/14 and Affidavit Executed on 4/4/14; Exhibit 45, Purchase Agreement signed on 6/1/15 and Affidavit executed on 7/15/15; Exhibit 46, Purchase Agreement signed on 1/8/15 and Affidavit executed on 6/5/15; Exhibit 47, Purchase Agreement signed on 3/26/15 and Affidavit executed on 6/2/15; Exhibit 49, Purchase Agreement signed on 11/19/13 and Affidavit executed on 8/4/14; Exhibit 51, Purchase Agreement signed on 12/18/14 and Affidavit executed on 6/5/15.

See also, Dkt. 332-1, Exhibit 1, Purchase Agreement signed on 6/25/15 and Affidavit executed on 7/27/15; Exhibit 4, Purchase Agreement signed on 7/22/15 and Affidavit executed on 8/15/15; Exhibit 8, Purchase Agreement signed on 8/14 and Affidavit executed on 6/15; Exhibit 11, Purchase Agreement signed on 6/10/15 and Affidavit signed on 7/28/15; Exhibit 15, Purchase Agreement signed on 6/19/15 and Affidavit signed on 7/16/15; Exhibit 16, Purchase Agreement executed on 6/1/15 and Affidavit signed on 7/15/15; and Exhibit 17, Purchase Agreement signed on 3/24/15 and Affidavit executed on 6/10/15.

[5] Insofar as Plaintiffs are invoking FRE R. 403, there is no basis to conclude that the probative value of this evidence is substantially outweighed by unfair prejudice, confusion, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

**Conclusion**

For the reasons set forth herein, Defendants respectfully request that the Court overrule and reject Plaintiffs' evidentiary objections and arguments.

Respectfully submitted,

| | |
|---|---|
| */s/ Joseph Lipari* | */s/ Joelle M. Shabat* |
| Jason Sultzer, Esq. | Brian W. Bell, Esq. |
| Joseph Lipari, Esq. | Joelle M. Shabat, Esq. |
| The Sultzer Law Group | Swanson, Martin & Bell, LLP |
| 14 Wall Street, 20th Floor | 330 North Wabash Avenue, Suite 3300 |
| New York, New York 10005 | Chicago, Illinois 60611 |
| (212) 618-1938 | (312) 321-9100 |
| sultzerj@thesultzerlawgroup.com | bbell@smbtrials.com |
| liparij@thesultzerlawgroup.com | jshabat@smbtrials.com |
| ***Attorneys for Lifewatch, Inc., Evan Sirlin, and Mitchel May*** | ***Attorneys for Safe Home Security, Inc.; MedGuard Alert, Inc.; and David Roman*** |